**PORTER & HEDGES** LLP
ATTORNEYS AT LAW

Charles S. Baker
Partner
(713) 226-6676 Phone
(713) 226-6276 Fax
cbaker@porterhedges.com

RELIANT ENERGY PLAZA
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000 TEL
(713) 228-1331 FAX
porterhedges.com

May 24, 2007

<u>**Arista Records LLC, et al. v. Lime Wire LLC, et al.**</u>
<u>**06 CV 5936 (GEL)**</u>

*Via Hand Delivery*
The Honorable Gerard E. Lynch
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Dear Judge Lynch:

  We represent Defendant/Counter-plaintiff Lime Wire LLC ("LW") and Defendants Lime Group LLC, Mark Gorton and Greg Bildson in the above-referenced case. In response to Plaintiff/Counter-defendant Record Labels' ("Labels") May 22, 2007 letter brief regarding the Supreme Court's recent decision in *Bell Atlantic v. Twombly*, 550 U.S. ___ (2007), LW respectfully submits that *Twombly* does not support the Labels' position that LW has insufficiently pled a Sherman Act §1 claim:

  1. As an initial matter, *Twombly* recognizes the general rule that although a §1 complaint challenged by a Rule 12(b)(6) motion cannot rely only on labels and conclusions, it need not contain "detailed factual allegations." *Twombly*, slip op. at 8. The pleading should, however, allege plausible—not necessarily probable—grounds for a conspiracy. Alleging plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 9. Indeed, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* (citation omitted).

  2. The focus of *Twombly*, however, is the pleading standards applicable in a conspiracy case based on conscious parallelism. *See Twombly* slip op. at 1, 6. Applying the general pleading standards to such a case, the Court held that an allegation of parallel conduct, without more, is insufficient. *Id.* at 10. Instead, "when allegations of parallel conduct are set out in order to make a §1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* The Court clarified that it does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 24. Because the *Twombly* plaintiffs had "not nudged their claims across the line from conceivable to plausible," that is, because the complaint there did not plead facts that made it plausible that the conduct was the result of conspiratorial conduct rather than truly independent or merely consciously parallel conduct, the Supreme Court held that their complaint was properly dismissed. *Id.*

The Honorable Gerald E. Lynch
May 24, 2007
Page 2

The standards articulated by *Twombly* do not dictate dismissal of LW's §1 claim. First, the *Twombly* plaintiffs affirmatively relied on consciously parallel conduct to plead their claims. *See Twombly*, slip op. at 4. The Court explained that the *Twombly* complaint "leaves no doubt that that plaintiffs rest their §1 claim on descriptions of parallel conduct and not on any independent allegation of actual agreement among the [defendants]" and that the "nub of the complaint, then, is the [defendants'] parallel behavior." *Id.* at 18-19. Contrarily, LW's First Amended Complaint ("FAC") does not rest on allegations of parallel conduct, but on the existence of a conspiracy based on agreements among the Labels. The FAC alleges specific joint actions by the Labels to suppress competition from LW. For instance, the FAC alleges that certain of the Labels combined to form two captive joint ventures to operate as the Labels' exclusive vehicles for licensing and making music available for online distribution. *See* LW's Memorandum opposing the Motion to Dismiss ("LW's Brief") at 4-5, 19-23. Additionally, the FAC alleges that the Labels agreed, through their trade association, the RIAA, on uniform terms for permitting competition that effectively prohibited LW from doing business. These specific joint actions include the Labels' collective, anticompetitive agreements on a requirement to purchase licenses from Altnet to obtain hashes, iMesh's "authorization" as the only RIAA-sanctioned peer-to-peer company, and the promotion of pet company Audible Magic's "preferred" filtering method. *See id.* at 5-7.

Second, to the extent the FAC is read to rely on the Labels' lockstep behavior, it meets the *Twombly* standard. The FAC does not make bare bones allegations of parallel conduct without showing that the Labels' conduct was contrary to their self-interests. The *Twombly* complaint was different. The defendants in that case were the major telecommunications providers with previously-sanctioned government monopolies. *See Twombly*, slip op. at 20-21. Those defendants' alleged refusal to compete with one another or to cooperate with new market entrants was plausibly the result of each defendant's independent decision and action. *See id.* at 20-23. Significantly, the *Twombly* defendants did not need to conspire to maintain their market power. BellSouth, for instance, had a perfect motive to preserve its historic monopoly in the Southeast by not competing in another monopolist's territory (and, thus, inviting competition) and by challenging each new entrant in its own territory. *See id.* Importantly, BellSouth could pursue this strategy—feasibly and economically—on its own. The cooperation of the other regional monopolists was not necessary to the success of its scheme.

In this case, contrarily, the FAC shows that the Labels had to conspire to achieve their goal of excluding the competitive threat posed by the new electronic distributors like LW. For instance, the Labels all refused to do business with LW despite the fact that they are in the business of licensing copyrighted music and LW offers a low cost, superior method to distribute music to consumers. *See* LW's Brief at 2, 4-8, 23 n. 10. Refusing to do business with LW, and others like it, is only an effective business strategy if the other Labels also forego the opportunity to make available licenses to LW. If even one major record company made its catalog of music available to LW, LW would become a more effective competitor, threatening the market share and profits of all of the Labels. *See id.* at 4. Thus, the Labels' similar conduct is plausibly the result of a conspiracy. Likewise, the Labels claim that LW's software permits its users to

The Honorable Gerald E. Lynch
May 24, 2007
Page 3

infringe on the Labels' copyrights to the Labels' detriment. Despite that, the Labels refused to cooperate with LW in its efforts to institute a hash-based filter to prevent users from downloading copyrighted material without a license. *See id.* at 6, 22-23, 23 n. 10. Refusing to take simple, reasonable steps to inhibit infringement is contrary to each Label's separate competitive interest in protecting its library of music, if acting alone. *See id.* Acting as a block, the refusal to take these steps to inhibit infringement serves as a means of driving competition from the market. *See id.* Again, the Labels' tandem conduct is plausibly conspiratorial. Therefore, the FAC's allegations are sufficient to "raise a reasonable expectation that discovery will reveal evidence of an illegal agreement." *See Twombly* slip. op. at 9.

   3. The *Twombly* Court recalled that courts must be cautious before dismissing an antitrust complaint prior to discovery, but must be mindful that "antitrust discovery can be expensive." *Twombly*, slip. op at 11. This case does not pose the same danger as *Twombly*. *Twombly* was a class action involving a putative class of at least 90% of all subscribers to local telephone or high-speed Internet service in the continental United States. *Id.* Not only does the present case involve significantly fewer parties, but the Labels also do not face the extensive discovery that was looming in *Twombly*. In fact, much of the discovery in this case involves the production to LW of documents already collected, reviewed and produced to the Department of Justice and the New York Attorney General's Office. Thus, the *Twombly* Court's warning to consider the expense of antitrust litigation is a less significant consideration here. Plus, the allegations in the FAC "reach the level suggesting conspiracy" such that there is a "reasonably founded hope" that discovery "will reveal relevant evidence." *See id.* at 13.

   4. Finally, as explained in LW's Brief, should this Court determine that LW's FAC is inadequate, LW respectfully seeks the opportunity to replead pursuant to Fed. R. Civ. P. 15(a) and *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See* LW Brief at 29-30. The holdings in *Twombly* provide further basis for leave to replead. For example, *Twombly* revised the long-followed Rule 12(b)(6) standard of *Conley v. Gibson* on which all proceedings in this case have been based to date. *Twombly*, slip op. at 16-17; *see* Plaintiffs' Memorandum at 8; LW's Brief at 8. Because *Twombly* provides new authority on the applicable 12(b)(6) and pleading standards, if the Court finds LW's FAC to be deficient, LW should be afforded an opportunity to replead.

   Accordingly, LW respectfully submits that its Sherman Act conspiracy claims should not be dismissed or, alternatively, that it should be granted leave to replead to state its claims with greater specificity, consistent with the *Twombly* standards, and with the benefit of discovery.

Respectfully submitted,

Charles S. Baker, *pro hac vice*

cc:  Katherine Forrest, *via e-mail*