UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTA RECORDS LLC; ATLANTIC
RECORDING CORPORATION; BMG MUSIC;
CAPITOL RECORDS, INC.; ELEKTRA
ENTERTAINMENT GROUP INC.;
INTERSCOPE RECORDS; LAFACE
RECORDS LLC; MOTOWN RECORD
COMPANY, L.P.; PRIORITY RECORDS LLC;
SONY BMG MUSIC ENTERTAINMENT;          CIVIL ACTION NO. 06 CV. 5936
UMG RECORDINGS, INC.; VIRGIN          (GEL)
RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,

                                Plaintiffs,

                    v.

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; and GREG BILDSON, and M.J.G.
LIME WIRE FAMILY LIMITED
PARTNERSHIP

                                Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
GREG BILDSON, MARK GORTON, LIME GROUP LLC,
AND M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Of counsel:

Charles S. Baker (CB1365)
Lauren E. Handler                    Joseph D. Cohen (JC3017)
SDNY (LEH 6908)                      Susan K. Hellinger (SH8148)
PORZIO, BROMBERG &                   PORTER & HEDGES, LLP
NEWMAN, P.C.                         1000 Main Street, 36th Floor
100 Southgate Parkway                Houston, TX 77002
P.O. Box 1997                        (713) 226-6000 (Telephone)
Morristown, NJ 07962-1997           (713) 228-1331 (Facsimile)
(973) 538-5146 (Facsimile)          cbaker@porterhedges.com
(973) 889-4326 (Telephone)          jcohen@porterhedges.com
lehandler@pbn.com                   shellinger@porterhedges.com

                                    *Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................iii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................................1

FACTUAL BACKGROUND..........................................................................................3

ARGUMENT AND AUTHORITIES.............................................................................

I.      STANDARD OF REVIEW ................................................................................5

II.     THE TERTIARY DEFENDANTS ARE ENTITLED TO THE PROTECTION OF THE SONY/BETAMAX SAFE HARBOR FROM LIABILITY FOR CONTRIBUTORY AND VICARIOUS INFRINGEMENT.................................6

III.    PLAINTIFFS' CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM FAILS BECAUSE PLAINTIFFS CANNOT SHOW THAT ANY OF THE TERTIARY DEFENDANTS MATERIALLY CONTRIBUTED TO OR PARTICIPATED IN ANY LIMEWIRE USER'S ALLEGED COPYRIGHT INFRINGEMENT OR LW'S ALLEGED INFRINGING ACTIVITIES ...........................................................6

        A.      BILDSON HAS NOT MATERIALLY CONTRIBUTED TO OR PARTICIPATED IN ANY DIRECT OR INDIRECT INFRINGEMENT AND THUS, IS NOT LIABLE FOR CONTRIBUTORY INFRINGEMENT ...............................................................9

        B.      LIME GROUP HAS NOT MATERIALLY CONTRIBUTED TO OR PARTICIPATED IN ANY DIRECT OR INDIRECT INFRINGEMENT AND THUS, IS NOT LIABLE FOR CONTRIBUTORY INFRINGEMENT ...........................................................10

        C.      GORTON HAS NOT MATERIALLY CONTRIBUTED TO OR PARTICIPATED IN ANY DIRECT OR INDIRECT INFRINGEMENT AND THUS, IS NOT LIABLE FOR CONTRIBUTORY INFRINGEMENT ...........................................................11

IV.     PLAINTIFFS' VICARIOUS COPYRIGHT INFRINGEMENT CLAIM FAILS BECAUSE PLAINTIFFS CANNOT SHOW THAT THE TERTIARY DEFENDANTS HAD THE RIGHT AND ABILITY TO SUPERVISE THE ACTIVITIES OF LIMEWIRE USERS OR LW ITSELF .................................................12

        A.      ACTUAL ABILITY TO CONTROL OR SUPERVISE THE DIRECT INFRINGER IS REQUIRED .........................................................................................12

        B.      THE MERE EXISTENCE OF A CORPORATE RELATIONSHIP OR POSITION ON A CORPORATION'S BOARD OF DIRECTORS WILL NOT SUFFICE...................................14

i

C. NONE OF THE TERTIARY DEFENDANTS HAVE HAD THE ABILITY TO CONTROL OR SUPERVISE THE ALLEGED INFRINGING ACTIVITIES OF LIMEWIRE USERS OR LW ITSELF ......................................................................................................16

    1. Bildson .................................................................................................16
    2. Gorton .................................................................................................17
    3. Lime Group ..........................................................................................17

V. PLAINTIFFS' INDUCEMENT OF INFRINGEMENT CLAIM FAILS BECAUSE PLAINTIFFS CANNOT SHOW THAT THE TERTIARY DEFENDANTS TOOK ANY AFFIRMATIVE STEPS TO INDUCE INFRINGEMENT .....................................18

VI. PLAINTIFFS' COMMON LAW CLAIMS FOR COPYRIGHT INFRINGEMENT AND UNFAIR COMPETITION AS TO PRE-1972 RECORDINGS ARE MERITLESS ....................................................................................................20

VII. PLAINTIFFS' FRAUDULENT CONVEYANCE CLAIM AGAINST GORTON AND THE FLP FAILS BECAUSE PLAINTIFFS CANNOT SHOW WITH CLEAR AND CONVINCING EVIDENCE AN ACTUAL INTENT TO HINDER, DELAY, OR DEFRAUD FUTURE CREDITORS ......................................................22

A. PLAINTIFFS CANNOT ESTABLISH THAT GORTON AND THE FLP HAD AN ACTUAL INTENT TO HINDER, DELAY, OR DEFRAUD FUTURE CREDITORS ...........................23

    1. Clear and Convincing Evidence Is Required to Prove Actual Intent ....................................................................................................23
    2. Consideration of the "Badges of Fraud" Do Not Give Rise to an Inference of Fraudulent Intent .................................................24

        a. Adequacy of consideration ...........................................................25
        b. Relationship between transferor and transferee ...........................26
        c. Insolvency as a result of the transfer ............................................26
        d. Transfer not in the ordinary course of business ...........................27
        e. Secrecy in transfer ........................................................................27
        f. Retention of control by transferor ................................................27
        g. Cumulative effect of a pattern or series of transactions ...............28
        h. General chronology of events .......................................................30

    3. Consideration of the badges of fraud does not support an inference of actual fraudulent intent. ..........................................................31

CONCLUSION ....................................................................................................34

# TABLE OF AUTHORITIES

**Cases**             **Page**

*Abernathy-Thomas Eng'g Co. v. Pall Corp.*,
  103 F. Supp. 2d 582 (E.D.N.Y. 2000) ..............................................................24

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................23

*Arista Records, Inc. v. Mp3Board, Inc.*,
  No. 00 CIV. 4660(SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) ..........20

*Artists Music, Inc. v. Reed Publishing (USA), Inc.*,
  31 U.S.P.Q.2d 1623 (S.D.N.Y. 1994) ..............................................................14

*Banff, Ltd. v. Limited, Inc.*,
  869 F. Supp. 1103 (S.D.N.Y. 1994) ............................................13. 14, 15, 17

*Bennett v. America Online, Inc.*,
  No. 06-13221, 2007 WL 2178317 (E.D. Mich. 2007)...............................15, 17

*BFP Resolution Trust Corp.*,
  511 U.S. 531 (1994) ........................................................................................24

*Burdick v. Koerner*,
  988 F. Supp. 1206 (E.D. Wis. 1998) ................................................................15

*Capitol Records, Inc. v. Naxos of Amer., Inc.*,
  830 N.E.2d 250 (N.Y. Ct. App. 2005) .............................................................20

*Capitol Records, Inc. v. Naxos of Amer., Inc.*,
  372 F.3d 471 (2d Cir. 2004) ...........................................................................20

*Case v. Fargnoli*
  702 N.Y.S.2d 764 (N.Y. Sup. 1999) ................................................................32

*Cavallo v. American Skandia Life Assurance Corp.*,
  94 Civ. 2908 (CSH), 1997 WL 251538 (S.D.N.Y. May 13, 1997). ................24

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..........................................................................................5

*Demetriades v. Kaufmann*,
  690 F. Supp. 289 (S.D.N.Y. 1988) .......................................................6, 7, 13

*Do It Best Corp. v. Passport Software, Inc.*,
No. 01 C 7674, 2004 WL 1660814 (N.D. Ill. July 23, 2004) ...........................................14

*E Beats Music v. Andrews*,
433 F. Supp. 2d 1322 (M.D. Ga. 2006) ...........................................13

*Edrei v. Copenhagen Handelsbank A/S*,
104 F.3d 355 (table), No. 96-7514, 1996 WL 730466 (2d Cir. Dec. 19, 1996) ..............23

*Gener-Villar v. Adcom Group, Inc.*,
509 F. Supp. 2d 117 (D.P.R. 2007) ...........................................13

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
443 F.2d 1159 (2d Cir. 1971) ...........................................7, 12, 13

*Goes Lithography Co. v. Banta Corp.*,
26 F. Supp. 2d 1042 (N.D. Ill 1998) ...........................................15, 17

*Harris v. Thomas*,
No. Civ. A. 02-0518, 2004 WL 2584966 (E.D. La. 2004) ...........................................13

*HBE Leasing Corp. v. Frank*,
48 F.3d 623 (2d Cir. 1995) ...........................................23

*Hecke v. Clear Channel Communications, Inc.*,
No. 04 Civ. 1583(JSR), 2005 WL 975837 (S.D.N.Y. 2005) ...........................................14

*In re Kaiser*,
722 F.2d 1574 (2d Cir. 1983) ...........................................24

*In re Napster, Inc. Copyright Litig.*,
377 F. Supp. 2d 796 (N.D. Cal. 2005) ...........................................n. 4

*Lippe v. Bairnco Corp.*,
249 F. Supp. 2d 357 (S.D.N.Y. 2003), *aff'd*,
9 Fed. Appx. 274 (2d Cir. 2004) ...........................................24, 25, 27, 31

*Livnat v. Lavi*,
No. 96 CIV. 4967(RWS), 1998 WL 43221 (S.D.N.Y. Feb. 2 1998) ...........................................7

*Lowendahl v. Baltimore & Ohio R. Co.*,
287 N.Y.S. 62 (1st Dept.), *aff'd*, 6 N.E.2d 56 (N.Y. Ct. App. 1936) ...........................................25

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ...........................................5

iv

*Matthew Bender & Co. v. West Publ'g Co.*,
   158 F.3d 693 (2d Cir. 1998) ...............................................................7

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   259 F. Supp. 2d 1029 (C.D. Cal. 2003), *aff'd*,
   380 F.3d 1154 (9th Cir. 2004), *vacated on other grounds*, 545 U.S. 913 (2005) ..............8

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   487 F.3d 701 (9th Cir. 2007) .........................................................12

*Perfect 10, Inc. v. Visa Int'l Servs. Ass'n*,
   No. C 04-0371 JW, 2004 WL 1773349 (N.D. Cal. Aug. 5, 2004) ...................................11

*Rosenthal v. Rochester Button Co.*,
   539 N.Y.S.2d 11 (1st Dept. 1989) ......................................................25

*Roy Export Co. v. CBS*,
   672 F.2d 1095 (2d Cir. 1982) .........................................................21

*RSO Records, Inc. v. Peri*,
   596 F. Supp. 849 (S.D.N.Y. 1984) ......................................................9

*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
   316 F.2d 304 (2d Cir. 1963) .......................................................12, 13

*Shelly v. Doe*,
   660 N.Y.S.2d 937 (N.Y. Co. Ct. 1997) ..........................................n. 23, 33

*Softel, Inc. v. Dragon Med. & Scientific Communities, Inc.*,
   118 F.3d 955 (2d Cir. 1997) ..........................................................12

*Sony Corp. of America v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ............................................................n. 2, 6, 7, 8

*Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*,
   778 F.2d 89 (2d Cir. 1985) ...........................................................14

*United States v. McCombs*,
   30 F.3d 310 (2d Cir. 1994) ...........................................................23

1381991v1

## STATUTES

FED. R. CIV. P. 56 ................................................................................................5

N.Y. DEBTOR & CREDITOR LAW, § 276 ...................................................23

17 U.S.C. § 301(c) ..........................................................................................20

17 U.S.C. § 501(a) ............................................................................................8

## MISCELLANEOUS

Courtney Lieb, Comment, *The IRS Wages War on the Family Limited Partnership: How to Establish a Family Limited Partnership That Will Withstand Attack*, 71 U. Mo. K.C. L. REV. 887, 887 (Summer 2003) .............................................................................28

Roy S. Geiger, 3 Bankruptcy Litigation § 17.56. .........................................29

3 David Nimmer & Melville B. Nimmer, *Nimmer on Copyright* (1993) ........9

3 Melville B. Nimmer, David Nimmer, *Nimmer on Copyright* (1996) ...........7

Memorandum and Order, dated July 9, 2001, entered by the United States District Court for the Northern District of California in *In re Napster, Inc. Copyright Litigation*, Nos. C 00-1369 MHP and C 00-4725 MHP ................................................................n.1

# INTRODUCTION AND SUMMARY OF THE ARGUMENT

As part of their aggressive campaign to stifle technology that they cannot control, Plaintiffs continue to surf for new legal theories by which to expand liability for infringement beyond that of direct infringers. In their latest gambit, Plaintiffs seek to hold a former shareholder, a former CEO and board member, and a software developer at Lime Wire LLC ("LW") liable for infringement by users of the LimeWire software application ("LimeWire"), even though these defendants did not directly or materially assist in any acts of direct infringement, and lacked the ability to supervise or control the alleged direct infringers. Undeterred, Plaintiffs advance a novel "tertiary liability" theory,[1] seeking to hold these defendants liable for copyright infringement solely by virtue of their involvement with an entity that may be secondarily liable for infringement. This giant leap of liability is, of course, unprecedented. If the Court were to accept Plaintiffs' far-fetched, novel theory, it would allow Plaintiffs to expand copyright infringement liability well beyond what Congress has authorized and what the Copyright Act contemplates.

---

[1] This theory was advanced early on in the *Napster* litigation by Matthew Katz, a music producer. Katz asserted numerous claims, including claims for copyright infringement, against Napster and numerous individuals. The district court flatly rejected Plaintiffs' infringement claims against the individuals:

> Katz asks this Court to adopt what is best described as a "tertiary theory" of liability for contributory infringement. He argues that defendants are liable for contributory infringement on the basis of their relationship to Napster. Katz does not allege that Napster is a direct infringer, but would hold Napster liable for contributory infringement on the basis of the service Napster provides to its users. Under this formulation, Napster users are the direct infringers, Napster is the secondary infringer and the individual defendants are tertiary infringers. The court finds no support for this proposition. Rather, courts have consistently held that liability for contributory infringement requires substantial participation in a specific act of direct infringement.

Memorandum and Order, dated July 9, 2001, entered by the United States District Court for the Northern District of California in *In re Napster, Inc. Copyright Litigation*, Nos. C 00-1369 MHP and C 00-4725 MHP (internal citations omitted). *See* Declaration of Charles S. Baker ("Baker Decl.") at Ex. 31.

1381991v1

The record evidence establishes that Greg Bildson, Mark Gorton, and Lime Group LLC (collectively, the "Tertiary Defendants") have not had any involvement with, control over, or ability to control or supervise, the activities – infringing or not – of LimeWire users. Their only involvement has been with LW, not users of the LimeWire software. Plaintiffs are thus left arguing that the Tertiary Defendants are liable as officers of or investors in the target company that has been accused of secondary copyright infringement. The law, however, simply does not allow liability to attach merely because of a defendant's service as an officer or role as a passive investor. Accepting either of these theories would upend decades of law on both copyright infringement and common law theories of secondary liability. Apart from the fact that this tertiary theory of copyright infringement liability is unprecedented, Plaintiffs lack any competent evidence showing that any of the Tertiary Defendants had the "right and ability to supervise" or "materially contributed" to the infringing activity of which Plaintiffs complain. The Tertiary Defendants, therefore, are entitled to summary adjudication of Plaintiffs' vicarious and contributory liability claims, regardless of the applicability of the *Sony/Betamax* safe harbor.[2]

Additionally, Plaintiffs' common law claims for copyright infringement and unfair competition as to pre-1972 recordings lack merit. There is no legitimate factual basis – indeed none is even alleged – for these claims. The Court should summarily dismiss these claims.

---

[2] Because the LimeWire software application has substantial noninfringing uses, LW and the Tertiary Defendants are entitled to the protection of the safe harbor the Supreme Court established in *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984).

Finally, Plaintiffs' poorly pled and undeveloped fraudulent conveyance claim against Mark Gorton and the M.J.G. Lime Wire Family Limited Partnership ("the FLP") fails. Plaintiffs' claim is based largely on the coincidence of timing and little more. Plaintiffs cannot show with the requisite clear and convincing evidence that Mark Gorton and the FLP possessed the actual intent to defraud that is an essential element of their claim. The Court should grant summary judgment on Plaintiffs' fraudulent conveyance claim.

## FACTUAL BACKGROUND[3]

The Tertiary Defendants all have some relationship to LW, the main defendant in this case. Mark Gorton ("Gorton") founded LW, and he is its former CEO and current Chairman. SoF ¶¶ 23, 24. He is not an employee of LW, and has never drawn a salary from LW. SoF ¶ 25.

Greg Bildson ("Bildson") is the Chief Technology Officer and former Chief Operations Officer of LW. SoF ¶ 1. He is but one of many software developers at LW that have assisted in the development of the LimeWire software program. SoF ¶ 3.

Lime Group LLC ("LG") is a separate company that at one time owned 87 percent of LW. SoF ¶¶ 32, 41. In the past, LG has provided some very basic management services to LW and other companies, such as accounting and the maintenance of books and records. SoF ¶¶ 31, 38. LG, however, has always been a separate company from LW, with its own employees, books, and records. SoF ¶¶ 41, 42.

---

[3] A detailed factual background is in LW's Memorandum of Law in Support of Partial Motion for Summary Judgment, which is incorporated in its entirety herein by reference, along with the evidence cited therein. Additional material facts are set forth in the Statement of Material Facts Pursuant to Local Rule 56.1(a) in Support of Defendants Greg Bildson, Mark Gorton, Lime Group LLC, and M.J.G. Lime Wire Family Limited Partnership's Motion for Summary Judgment ("SoF"), which is incorporated in its entirety herein by reference, along with the evidence cited therein.

LG has had no involvement in the day-to-day management or operations of LW, nor has it ever been anything other than a silent investor in LW. SoF ¶ 35. LG had no role whatsoever in the development of the LimeWire software. SoF ¶ 47. Nor has LG participated in any significant management decision relating to the development of LimeWire or otherwise at LW. SoF ¶¶ 35, 47.

Not only do the Tertiary Defendants not make any material contribution to LW's business, none of them have ever knowingly assisted any person to commit copyright infringement, including any LimeWire user. SoF ¶¶ 17, 28, 48. Likewise, none of the Tertiary Defendants have ever had any involvement in what LimeWire users use the software for, nor do any of the Tertiary Defendants possess the right or ability to personally control what LimeWire users do with the software. SoF ¶¶ 18, 19, 27-29, 48. The Tertiary Defendants have no knowledge of what LimeWire users are searching for or downloading at any particular moment in time. SoF ¶¶ 22, 27-29.

The Tertiary Defendants' only connection to this lawsuit is their relationship and involvement with LW, not LimeWire users. Plaintiffs do not contend that LW is a direct infringer, only LimeWire users. *See* First Amended Complaint for Federal Copyright Infringement, Common Law Copyright Infringement, Unfair Competition, Conveyance Made with Intent to Defraud and Unjust Enrichment ("FAC") at ¶¶ 66-102. There is no direct nexus between the Tertiary Defendants and the allegedly infringing conduct of some of LimeWire's users. Any connection between them is too remote to justify the unprecedented imposition of tertiary infringement liability on the Tertiary Defendants for LW's alleged secondary infringement liability. No controlling, or even compelling,

4

precedent exists to support expanding the concept of contributory or vicarious liability to defendants such as these with faint connections to direct infringers.

<u>**ARGUMENT AND AUTHORITIES**</u>

## I. STANDARD OF REVIEW

Summary judgment must be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of setting out the basis for its motion and identifying those portions of the record that "demonstrate the absence of a genuine issue of material fact." *Id*. at 323. In order to establish its entitlement to summary judgment, the movant does not need to negate the nonmovant's claims. It only needs to "point[] out . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmovant to produce evidence sufficient to create a genuine issue of material fact for trial. FED. R. CIV. P. 56(e)(2); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986). The nonmovant must present evidence that is not "merely colorable," but is "sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. THE TERTIARY DEFENDANTS ARE ENTITLED TO THE PROTECTION OF THE *SONY/BETAMAX* SAFE HARBOR FROM LIABILITY FOR CONTRIBUTORY AND VICARIOUS INFRINGEMENT

As set forth in LW's Motion for Partial Summary Judgment ("LW's Motion"), LW is entitled to the protection of the safe harbor from liability for vicarious and contributory copyright infringement that the Supreme Court established in *Sony Corporation of America v. Universal City Studios, Inc.*, 464 U.S. 417, 422 (1984). This is because, as explained in detail in LW's Motion, the LimeWire software application is capable of substantial noninfringing use. The law, facts, and policies set forth in LW's Motion on the application of the *Sony/Betamax* safe harbor to this case apply with equal force to Plaintiffs' claims for vicarious and contributory infringement against the Tertiary Defendants. Accordingly, the Tertiary Defendants adopt LW's Motion, along with the evidence cited therein, in its entirety.

## III. PLAINTIFFS' CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM FAILS BECAUSE PLAINTIFFS CANNOT SHOW THAT ANY OF THE TERTIARY DEFENDANTS MATERIALLY CONTRIBUTED TO OR PARTICIPATED IN ANY LIMEWIRE USER'S ALLEGED COPYRIGHT INFRINGEMENT OR LW'S ALLEGED INFRINGING ACTIVITIES

Even if the Tertiary Defendants were not entitled to the protection of the *Sony/Betamax* safe harbor, Plaintiffs' contributory infringement claim against them fails because Plaintiffs cannot establish an essential of that claim – namely, that the Tertiary Defendants materially contributed to or participated in any LimeWire user's direct infringement of the Plaintiffs' copyrights or in LW's activities that allegedly amount to secondary infringement.

Contributory infringement is "founded on the tort concept of enterprise liability." *Demetriades v. Kaufmann*, 690 F. Supp. 289, 292 (S.D.N.Y. 1988). "[A] party 'who, with knowledge of the infringing activity, induces, causes, or materially contributes to the

6

infringing conduct of another may be held liable as a 'contributory infringer.'" *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). "[K]nowledge and participation [are] the touchstones of contributory infringement." *Demetriades*, 690 F. Supp. at 293.[4]

In *Demetriades*, a case involving the unauthorized copying of architectural plans, the plaintiffs sued the real estate broker and its employee, the builder, and the purchasers of a house that infringed the architectural design of their home. 690 F. Supp. at 291. The court held that the real estate broker and its employee were not liable for contributory infringement, because "they cannot fairly be said to have participated in that infringement – *i.e.*, 'induce[d], cause[d], or materially contribute[d]' to the [infringement]." *Id.* at 293. As the court explained:

> We are familiar with no concept of justice that would permit extension of third-party liability in this case on so attenuated a basis. ***Something more – deriving from one's substantial involvement – is needed. . . . To hold otherwise would, in our view, flatly contradict the plain law of this circuit.***

*Id.* at 294 (emphasis added) (granting summary judgment for broker and its employee).

Thus, an alleged contributory infringer "must make more than a 'mere quantitative contribution' to the primary infringement." *Livnat v. Lavi*, No. 96 CIV. 4967(RWS), 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2 1998) (citing *Gershwin*, 443 F.2d at 1162). The contribution must also "bear a direct relationship to the infringing acts, and the contributory infringer ***must have acted in concert with*** the direct infringer." *Id.* (emphasis added) (citing 3 Melville B. Nimmer, David Nimmer, *Nimmer on Copyright*, §

---

[4] Of course, "proof of direct infringement by the primary infringer is a necessary precondition to establishing both contributory and vicarious liability under the Copyright Act." *In re Napster, Inc. Copyright Litig.*, 377 F. Supp. 2d 796, 801 (N.D. Cal. 2005).

12.04[A][2][a] at 12-75 (1996)). Participation in infringement sufficient to impose liability "may not consist of merely providing the 'means to accomplish an infringing activity.'" *Livnat*, 1998 WL 43221, at *3 (quoting *Sony*, 464 U.S. at 435 n. 17). Material contribution is not present, for example, when the only contact between the defendant and the primary infringer occurs at the time of sale. *See Sony*, 464 U.S. at 438. Subsequent minimal contact is also insufficient. For instance, providing technical assistance and other incidental services to alleged primary infringers is not a material contribution to the alleged infringement. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 259 F. Supp. 2d 1029, 1042 (C.D. Cal. 2003), *aff'd*, 380 F.3d 1154 (9th Cir. 2004), *vacated on other grounds*, 545 U.S. 913 (2005) (stating "handful of isolated technical support e-mails" was not sufficient to create a fact issue on material contribution to infringement).

There is no evidence that any of the Tertiary Defendants assisted or materially contributed in any direct infringement by any LimeWire user. Although pled with a stunning lack of clarity,[5] Plaintiffs appear to resort to arguing that LW itself is an infringer, and that the Tertiary Defendants can be held secondarily liable for LW's alleged acts of infringement. *See* FAC at ¶ 80 ("Defendants are liable as contributory infringers for the copyright infringement committed via LimeWire software and services."). That argument, however, lacks both a legal and factual basis. Under the Copyright Act, the term "infringer" is defined as "anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [of the Copyright Act]." 17 U.S.C. § 501(a). Plaintiffs concede this point, failing to make a

---

[5] Plaintiffs intentionally lump the "Defendants" together in the factual allegations throughout their FAC to avoid pleading specific facts relating to each of the individual Defendants, particularly the Tertiary Defendants.

single allegation against LW for direct infringement under the Copyright Act.  *See* FAC ¶¶ 1-126.  Clearly LW is not an "infringer" as that term is defined in the Copyright Act and as used by courts in determining liability for contributory infringement.  *See* 3 David Nimmer & Melville B. Nimmer, *Nimmer on Copyright* § 12.04[A][2][b], at 12-81 (1993) ("There can, by definition, be no contributory liability if that conduct which is aided by the putative contributory infringer is not itself infringing."); *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 853 (S.D.N.Y. 1984) (noting that although "contributory infringers" may be held liable for infringement, they are "not technically infringers").  As such, the Court should flatly reject Plaintiffs' attempt to improperly expand the reach of contributory infringement liability.

### A. BILDSON HAS NOT MATERIALLY CONTRIBUTED TO OR PARTICIPATED IN ANY DIRECT OR INDIRECT INFRINGEMENT AND THUS, IS NOT LIABLE FOR CONTRIBUTORY INFRINGEMENT.

Bildson is the current Chief Technology Officer and the former Chief Operations Officer[6] at LW.  SoF ¶ 1.   Except on extremely rare occasions, Bildson has never had any direct contact with any LimeWire user, nor has he ever provided any technical support or updates to any LimeWire user.  SoF ¶¶ 20, 21.  Bildson does not in any way assist, much less participate in, LimeWire users' searches and downloading of files.  SoF ¶¶ 17-22.  There is a complete lack of evidence to show that Bildson "acted in concert" with any LimeWire user, *i.e.*, any direct infringer, to commit infringement.  Nor is there any evidence that he encouraged direct infringement by a LimeWire user or anyone else.

Moreover, even if the Court were to consider the actions and relationships of Bildson with LW, as opposed to the LimeWire users who are direct infringers, the

---

[6] As set forth in Section IV(B), *infra*, Bildson may not be held liable for secondary or tertiary copyright infringement simply by virtue of his status as Chief Technology Officer and Chief Operations Officer of LW.

summary judgment evidence shows that Bildson has not materially contributed to any alleged acts of secondary infringement by LW. Although Bildson's titles seemingly imply authority and the power to control the happenings at LW, any such assumption is unfounded. SoF ¶¶ 3, 5, 9, 10, 14, 16. In short, there is no evidence that Bildson ever had control over LW and its operations. Plaintiffs' claim for contributory infringement against Bildson should be dismissed.

### B. LIME GROUP HAS NOT MATERIALLY CONTRIBUTED TO OR PARTICIPATED IN ANY DIRECT OR INDIRECT INFRINGEMENT AND THUS, IS NOT LIABLE FOR CONTRIBUTORY INFRINGEMENT.

The evidence as to LG's involvement with any acts of direct infringement by LimeWire users is literally nonexistent. There is no evidence that LG has had any direct contact with LimeWire users, nor ever assisted any LimeWire user in any way. LG has never provided any technical support or updates to LimeWire users. SoF ¶ 48. Nor does LG in any way assist, much less participate in, LimeWire users' searches and downloading of files. *Id.* There is a complete lack of evidence to show that LG materially contributed to or participated in any direct act of copyright infringement.

Nor can contributory liability be imposed upon LG based on LG's occasional provision of limited management services to LW. None of the limited services that LG provided to LW materially contributed in any way to LW's alleged secondary infringing activities.[7] SoF ¶¶ 31, 37-39. LG provides a variety of services to a host of companies with which Gorton is associated, such as accounting and the preparation of financial documents. SoF ¶¶ 31, 38. It is a separate company from LW, with its own books and records, employees, and bank accounts. SoF ¶¶ 41, 42. At best, its relationship with LW

---

[7] As set forth in Section IV(B), *infra*, LG's mere status as a shareholder of LW will not support the imposition of tertiary liability on LG for LW's secondary infringement.

could be characterized as that of a third-party contractor providing limited management services that did not materially contribute to LW and its operations, much less any act of infringement by LW, any LimeWire user, or anyone else.

Courts distinguish between providing services to an allegedly infringing company and providing support to the infringement itself. For example, in *Perfect 10, Inc. v. Visa Int'l Servs. Ass'n*, No. C 04-0371 JW, 2004 WL 1773349, at *4 (N.D. Cal. Aug. 5, 2004), the court dismissed a complaint against companies that provided credit card services to infringing websites. Although the court noted that "while Defendants may provide services that materially contribute to the functioning of the website businesses," the court found "no factual basis for the allegation that they materially contribute to the alleged *infringing activities* of the websites." *Id.* The summary judgment evidence in this case conclusively proves that LG has not materially contributed to any alleged infringement, and Plaintiffs' contributory infringement claim against LG should be dismissed.

## C. GORTON HAS NOT MATERIALLY CONTRIBUTED TO OR PARTICIPATED IN ANY DIRECT OR INDIRECT INFRINGEMENT AND THUS, IS NOT LIABLE FOR CONTRIBUTORY INFRINGEMENT.

To prove that Gorton is contributorily liable, Plaintiffs must show that Gorton was actively involved in the alleged acts of direct infringement by LimeWire users. Plaintiffs, however, cannot point to any evidence that Gorton did anything to encourage, assist, or induce any LimeWire user to commit infringement. Gorton has never had any direct contact with any LimeWire user, nor has he ever provided any technical support to any LimeWire user. SoF ¶ 27. Gorton has not in any way assisted, much less participated in, any LimeWire users' searches and downloading of files. SoF ¶ 28. There is a complete lack of evidence to establish that Gorton "materially contributed" to any alleged directly

infringing act by any LimeWire user.  Consequently, Plaintiffs' claim for contributory infringement against Gorton fails.

## IV. PLAINTIFFS' VICARIOUS COPYRIGHT INFRINGEMENT CLAIM FAILS BECAUSE PLAINTIFFS CANNOT SHOW THAT THE TERTIARY DEFENDANTS HAD THE RIGHT AND ABILITY TO SUPERVISE THE ACTIVITIES OF LIMEWIRE USERS OR LW ITSELF

Vicarious liability for copyright infringement is grounded in the agency doctrine of *respondeat superior. Gershwin,* 443 F.2d at 1162.  As a result, the tort focuses on the relationship between the direct infringer and the defendant and the ***degree to which the defendant can control the direct infringer***.  *See generally Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 306-09 (2d Cir. 1963).  It is well established that in order to prevail on a claim for vicarious liability for copyright infringement, a plaintiff must show that the defendant had a "'right and ability to supervise [the infringer] [that] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials.'"  *Softel, Inc. v. Dragon Med. & Scientific Communities, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (quoting *Shapiro*, 316 F.2d at 307)).

### A. ACTUAL ABILITY TO CONTROL OR SUPERVISE THE DIRECT INFRINGER IS REQUIRED.

The "control" element of the vicarious liability test concerns "the defendant's 'right and ability to supervise the direct infringer.'"  *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 730 (9th Cir. 2007) (quoting *Grokster*, 545 U.S. at 930 n.9)).  Thus, "a defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."  *Id.*

Courts analyzing the "control" element of vicarious liability have "repeatedly emphasized that some degree of control or supervision ***over the individuals directly***

**responsible for the infringement** is of crucial importance."[8] *Demetriades*, 690 F. Supp. at 292 (emphasis added) (finding "no meaningful evidence . . . suggesting that [the defendants] exercised any degree of control over the direct infringers"). *See, e.g., Banff, Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1109 (S.D.N.Y. 1994) ("[T]he formal relationship between parties is not the driving force behind liability; rather, the parties' paths must cross on a daily basis, and the character of this intersection must be such that the party against whom liability is sought is in a position to control the personnel and activities responsible for the direct infringement."); *E Beats Music v. Andrews*, 433 F. Supp. 2d 1322, 1326 (M.D. Ga. 2006) ("[T]he imposition of vicarious liability for copyright infringement on a controlling individual is premised on the belief that such a person is in a position to control the conduct of the 'primary' infringer.'"); *Gener-Villar v. Adcom Group, Inc.*, 509 F. Supp. 2d 117, 125 (D.P.R. 2007) ("Vicarious liability is based on a connection to the direct infringer (not necessarily to the infringing activity)."); *Harris v. Thomas*, No. Civ. A. 02-0518, 2004 WL 2584966, at * 2 (E.D. La. 2004) (granting summary judgment based on lack of evidence that defendants exercised any control over the production or contents of infringing CDs, and recognizing that "[c]ourts have found defendants liable for vicarious infringement only in cases where there is some right or ability to supervise or control a direct infringer.") (citing *Shapiro* and *Gershwin*)).

A theoretical power to control the activity of a direct infringer will not satisfy the control element of a vicarious infringement claim. "[A]ctual control, rather than simply the power to control," is required to hold a defendant liable for vicarious infringement.

---

[8] Just as with a claim for contributory infringement, LW is not an "infringer" within the meaning of the Copyright Act and as used by the courts in determining liability for vicarious infringement. *See* § III, *supra*.

*Banff*, 869 F. Supp. at 1110 (citing *Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985)). The cost of policing potential direct infringers can also weigh against a finding of actual control. For example, in *Artists Music, Inc. v. Reed Publishing (USA), Inc.*, 31 U.S.P.Q.2d 1623, 1624 (S.D.N.Y. 1994), copyright holders sued a trade show organizer for the unauthorized performances of protected songs by vendors at the trade show. The court granted summary judgment for the defendant, holding that "[t]he mere fact that they ***could have*** policed the exhibitors at great expense is insufficient to impose vicarious liability." *Id.* at 1627 (emphasis added).

## B.    THE MERE EXISTENCE OF A CORPORATE RELATIONSHIP OR POSITION ON A CORPORATION'S BOARD OF DIRECTORS WILL NOT SUFFICE.

It is equally well established that the mere existence of a parent/subsidiary or other corporate affiliation will not suffice to impose contributory or vicarious liability on an entity for the infringing acts (or, as here, for secondary liability for infringing acts) of an affiliated entity. *See, e.g.*, *Banff*, 869 F. Supp. at 1108 (citing cases) ("[The mere potential to influence inherent in the parent-subsidiary relationship is inadequate to ground vicarious liability for infringement."). "[T]here must be indicia beyond the mere legal relationship showing that the [affiliated entity] is actually involved with the decisions, processes, or personnel directly responsible for the infringing activity." *Id.* at 1109; *see also Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL 1660814, at *15 (N.D. Ill. July 23, 2004) ("status as an officer of a corporation that has allegedly infringed a copyright, without more, is not a basis for liability as a contributory infringer").

Thus, there must be evidence of "some continuing connection between the two in regard to the infringing activity." *Banff*, 869 F. Supp. at 1110. *See also Hecke v. Clear*

14

*Channel Communications, Inc.*, No. 04 Civ. 1583(JSR), 2005 WL 975837, at * 2 (S.D.N.Y. 2005) (stating that a parent company's right and ability to supervise its subsidiary must be "evidenced by some continuing connection between the two in regard to the infringing activity," and granting summary judgment on the vicarious liability claims based on the "utter lack of any 'continuing connection'" between Clear Channel and its stations with respect to programming decisions); *Bennett v. America Online, Inc.*, No. 06-13221, 2007 WL 2178317, at *6 (E.D. Mich. 2007) ("The 'right and ability to supervise' means more than simply owning some or all of the shares of stock in a company.") (discussing cases); *Goes Lithography Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1045 (N.D. Ill 1998) (holding that naked allegations that infringer was a wholly-owned subsidiary of the parent were insufficient to impose vicarious liability on parent).

Likewise, a defendant's status as an officer or director of a corporation alone will not suffice to impose vicarious liability on that individual for the infringing acts of the corporation, and certainly not as here, for the corporation's secondary liability for the alleged infringing acts of others. For example, in *Burdick v. Koerner*, 988 F. Supp. 1206, 1209 (E.D. Wis. 1998), the plaintiffs argued that the fact that the defendants were directors of an infringing corporation established that they had the right and ability to supervise the alleged infringing actions of the corporation. The court rejected this argument, noting that courts "which have applied the general rule regarding vicarious liability of an individual board member for a corporation's copyright infringement have *not* predicated liability on mere membership on the board of directors. *Id.* at 1210 (discussing cases, including *Banff*'s requirement that the right and ability to supervise must be "evidenced by some continuing connection between [the defendant and the

infringer] in regard to the infringing activity"). The court concluded that the "better-reasoned case law demonstrates that in order to establish vicarious liability in the context of a claim for copyright infringement, a plaintiff must introduce evidence beyond a defendant's membership on a board of directors." *Id.*

### C. NONE OF THE TERTIARY DEFENDANTS HAVE HAD THE ABILITY TO CONTROL OR SUPERVISE THE ALLEGED INFRINGING ACTIVITIES OF LIMEWIRE USERS OR LW ITSELF.

#### 1. Bildson.

Plaintiffs cannot dispute that Bildson has never had the right and ability to control any infringing activity of a direct infringer. SoF ¶¶ 17-22. Likewise, Bildson has had no involvement whatsoever in what LimeWire users use the software for, nor does he have the right or ability to personally control what Lime Wire users do with the software. SoF ¶¶ 19, 22. Likewise, Bildson never possessed the ultimate right to control or supervise any of LW's actions or operations. SoF ¶ 16.

There is also insufficient evidence that Bildson had the right and ability to control the happenings at LW. While Bildson currently holds the title of Chief Technology Officer of LW, and previously held the title of Chief Operating Officer of LW for several years, those titles have little practical meaning inside LW. SoF ¶¶ 3, 5, 9-11, 14. Bildson is and always has been first and foremost a software developer at LW that shunned any true management responsibilities. With respect to the development of the LimeWire software, Bildson has never been more than just one of many software developers at LW that have assisted in its development. SoF ¶¶ 3, 5-13.

Bildson has not been involved in any material decisions involving LW's operations or the direction it should take. SoF ¶ 14. Bildson has never assisted in preparing any forecasts or budgets for LW. *See id.* Plaintiffs cannot show that Bildson

16

had the right and ability to supervise or control the allegedly infringing acts of LimeWire users or LW.

### 2. Gorton.

Gorton similarly cannot be held vicariously liable because, like Bildson, Gorton did not have any direct connection with any LimeWire user. Gorton has never had any direct contact with any LimeWire user, nor has he ever provided any technical support to any LimeWire user. SoF ¶¶ 27, 28. Gorton has never had any knowledge of what individual LimeWire users were searching for or downloading. SoF ¶ 29. Gorton lacked the right or ability to control what LimeWire users do with the software. SoF ¶ 27-29. Because Plaintiffs cannot show that Gorton ever had the right and ability to supervise or control any direct infringer of Plaintiffs' copyrights, Plaintiffs' vicarious infringement claim against him should be dismissed.

### 3. Lime Group.

LG is a former majority shareholder in LW. SoF ¶ 32. It is also a company that provides limited management services to other companies, including LW. SoF ¶¶ 31, 37-39. Plaintiffs suggest that this relationship alone is sufficient to impose tertiary liability on LG for any acts of secondary infringement committed by LW. It is well established, however, that the mere existence of a parent/subsidiary or other corporate affiliation will not suffice to impose contributory or vicarious liability on an entity for the infringing acts (or, as here, for secondary liability for infringing acts) of an affiliated entity. *See, e.g., Banff*, 869 F. Supp. at 1108-09; *Bennett*, 2007 WL 2178317, at *6; *Goes Lithography*, 26 F. Supp. 2d at 1045.

LG has never had any direct or indirect input or voice over any decision made at LW, and over the years it has acted strictly as a silent membership holder in LW. SoF ¶

17

35.  LG has 11 employees, none of whom have ever assisted in the development of the LimeWire software.  SoF ¶¶ 33, 47.  At most, LG has occasionally provided cursory non-management services, such as providing cleaning services, and management services such as accounting services, to LW and other companies.  SoF ¶¶ 37-39.  Simply put, LG has never had the right and ability to control the actions of LW.

Moreover, there is no evidence that any LG employee ever assisted any LimeWire user nor had any direct contact with any LimeWire user, including technical support.  SoF ¶ 48.  LG does not have a continuing relationship – or any relationship for that matter – with LimeWire users.  *See id.*  LG does not process LimeWire users' search requests or assist their searches, and LG does not know for which files LimeWire users are searching.  *See* SoF ¶¶ 46, 48.  LG has no contact with Lime Wire users either before or after the distribution of the LimeWire software.  SoF ¶ 48.  Given the complete absence of evidence that LG possessed the right and the ability to control – practically or actually – the manner in which users employ the LimeWire software, Plaintiffs' claim for vicarious infringement liability against LG should be dismissed.

## V.  PLAINTIFFS' INDUCEMENT OF INFRINGEMENT CLAIM FAILS BECAUSE PLAINTIFFS CANNOT SHOW THAT THE TERTIARY DEFENDANTS TOOK ANY AFFIRMATIVE STEPS TO INDUCE INFRINGEMENT

In *Grokster*, the Supreme Court announced a new theory of secondary copyright infringement, namely liability for inducing infringement.  Under the rule announced in *Grokster*, "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties."  545 U.S. at 936-37.  To be liable under this theory, a defendant must have taken "active steps . . . to

18

encourage direct infringement," such as "advertising an infringing use, or instructing how to engage in an infringing use" that demonstrate "an affirmative intent that the product be used to infringe." *Id.* at 915. In contrast, "mere knowledge of infringing potential or of actual infringing uses," or "ordinary acts incident to product distribution, such as offering customers technical support or product updates," will not support inducement liability, which must be based on "purposeful, culpable expression and conduct." *Id.* at 937.

Quick to seize on this new theory of liability, Plaintiffs allege that the Tertiary Defendants "design, promote, and market LimeWire as optimized for the unauthorized copying and transmission of copyrighted sound recordings." FAC at ¶ 67. The alleged factual bases of Plaintiffs' inducement of infringement claim underscore its weakness. According to the FAC, the Tertiary Defendants have induced infringement by "aiming to satisfy a known source of demand for copyright infringement," "failing to block or diminish access to infringing material," and "building and maintaining a business model to profit directly from a high volume of infringing use." FAC at ¶¶ 68-70.

None of Plaintiffs' allegations comes close to satisfying the Supreme Court's requirement that the Tertiary Defendants distributed LimeWire software (which they did not—LW did) with the object of promoting its use to infringe Plaintiffs' copyrights, as shown by "clear expression or other affirmative steps taken to foster infringement." Plaintiffs cannot point to any expressions made or affirmative actions taken by any of the Tertiary Defendants to establish that the Tertiary Defendants promoted the use of the LimeWire software to infringe Plaintiffs' copyrights. Accordingly, Plaintiffs' inducement of infringement claim against the Tertiary Defendants fails.

# VI. PLAINTIFFS' COMMON LAW CLAIMS FOR COPYRIGHT INFRINGEMENT AND UNFAIR COMPETITION AS TO PRE-1972 RECORDINGS ARE MERITLESS

With respect to recordings made prior to 1972, Plaintiffs assert claims for common law copyright infringement and unfair competition. FAC at ¶¶ 103-114. With respect to sound recordings fixed "before February 15, 1972, they are neither protected nor preempted by federal copyright law, and [Plaintiffs'] copyright claim therefore depends on state law protection until federal preemption occurs on February 15, 2067." *Capitol Records, Inc. v. Naxos of Amer., Inc.*, 372 F.3d 471, 477 (2d Cir. 2004) (citing 17 U.S.C. § 301(c)).

The elements of a common law claim for copyright infringement under New York law are not well established. In fact, just four years ago, the Second Circuit certified a question to the New York Court of Appeals as to the elements of such claim, specifically whether the elements of unfair competition must be shown. *Id.* at 481, 484. The New York Court of Appeals answered that "[a] copyright infringement cause of action in New York consists of two elements: (1) the existence of a valid copyright; and (2) unauthorized reproduction of the work protected by the copyright." *Capitol Records, Inc. v. Naxos of Amer., Inc.*, 830 N.E.2d 250, 266 (N.Y. Ct. App. 2005). The Court of Appeals further stated that a common law claim for copyright infringement is distinguishable from a common law claim for unfair competition, "which in addition to unauthorized copying and distribution requires competition in the marketplace or similar actions designed for commercial benefit." *Id. See also Arista Records, Inc. v. Mp3Board, Inc.*, No. 00 CIV. 4660(SHS), 2002 WL 1997918, *12 (S.D.N.Y. Aug. 29, 2002) ("'[a]n unfair competition claim involving misappropriation usually concerns the

taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property.'") (quoting *Roy Export Co. v. CBS*, 672 F.2d 1095, 1105 (2d Cir. 1982)).

Plaintiffs' common law copyright infringement claim fails as a matter of law because Plaintiffs cannot establish an essential element of that claim – namely, that the Tertiary Defendants made an "unauthorized reproduction of the work protected by the copyright." Indeed, the ***only*** factual allegation in Plaintiffs' claim for common law copyright infringement is that "[t]he creation and widespread dissemination through Lime Wire of unauthorized copies of Plaintiffs' Pre-1972 Recordings" constitutes copyright infringement. FAC at ¶ 106. Just as Plaintiffs cannot show and do not allege that the Tertiary Defendants directly infringed any of Plaintiffs' copyrights under federal copyright law, Plaintiffs cannot show that the Tertiary Defendants reproduced any of the Plaintiffs' pre-1972 recordings.

Likewise, Plaintiffs' unfair competition claim, which also requires an unauthorized distribution, fails as a matter of law. Plaintiffs also cannot show that any of the Tertiary Defendants took and used any of Plaintiffs' pre-1972 recordings in order "to compete against [Plaintiffs'] own use of the same property. Indeed, Plaintiffs cannot show that any of the Tertiary Defendants compete with Plaintiffs at all. There is also no evidence that any of Plaintiffs' works at issue has actually been distributed, as required to state a claim for infringement..

Plaintiffs cannot establish the essential elements of their common law claims against the Tertiary Defendants. The Court should summarily dispose of these claims.

## VII. PLAINTIFFS' FRAUDULENT CONVEYANCE CLAIM AGAINST GORTON AND THE FLP FAILS BECAUSE PLAINTIFFS CANNOT SHOW WITH CLEAR AND CONVINCING EVIDENCE AN ACTUAL INTENT TO HINDER, DELAY, OR DEFRAUD FUTURE CREDITORS

In early 2005, Gorton, at the repeated urging of his accountants, consulted with attorneys about estate planning matters. SoF ¶ 49. Pursuant thereto, on June 30, 2005, the FLP was formed, as part of a larger estate planning effort that began nearly a year before its formation. SoF ¶ 52.

Gorton is the general partner of the FLP. SoF ¶ 53. There are four limited partners in the FLP: Gorton, Jody Gorton, Mira Eve Gorton, and Zachary Kaleb Gorton. *Id.* Pursuant to a Bill of Sale and/or Assignment, dated June 30, 2005, LG transferred 87.1% of the membership interests in LW to the FLP, as consideration for an interest of equal value in the FLP received by Gorton. SoF ¶¶54, 55. Prior to this transfer, LG was the largest shareholder of LW and had received the bulk of the dividends that LW issued in the normal course of business. SoF ¶ 32. Subsequent to LG's transfer of the LW membership interests to the FLP, the FLP began to receive dividends issued by LW. SoF ¶ 56.

Plaintiffs contend that the transfer of LG's interest in LW to the FLP and the subsequent dividends LW paid to the FLP were fraudulent conveyances in violation of Section 276 of New York's Debtor and Creditor Law. Plaintiffs' claim is based on little more than the coincidence of timing and Plaintiffs' unsupported speculation that the FLP was formed to avoid liability to copyright holders in the wake of the Supreme Court's opinion in *Grokster*.[9]

---

[9] The *Grokster* opinion was issued on June 27, 2005.

## A.    PLAINTIFFS CANNOT ESTABLISH THAT GORTON AND THE FLP HAD AN ACTUAL INTENT TO HINDER, DELAY, OR DEFRAUD FUTURE CREDITORS.

Plaintiffs assert a fraudulent conveyance claim against Gorton and the FLP,[10] seeking recovery under Section 276 of the New York Debtor and Creditor Law ("DCL").[11]  Section 276, entitled "Conveyance made with intent to defraud," states:

> Every conveyance made and every obligation incurred with ***actual intent***, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. DEBTOR & CREDITOR LAW, § 276 (emphasis added).   Because Plaintiffs cannot show that Gorton and the FLP possessed the "actual intent" required by the statute, their claim fails as a matter of law.

### 1.    Clear and Convincing Evidence Is Required to Prove Actual Intent.

Under Section 276, a plaintiff must prove actual fraudulent intent by "clear and convincing evidence."  *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995); *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994); *Shelly v. Doe*, 660 N.Y.S.2d 937, 942 (N.Y. Co. Ct. 1997).  The "clear-and-convincing standard of proof is to be taken into account in ruling on summary judgment motions."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Thus, Gorton and the FLP are entitled to summary judgment if a reasonable factfinder could not find that Plaintiffs have proven actual fraud by clear and convincing evidence.  *Id.* at 254-56; *Edrei v. Copenhagen Handelsbank A/S*, 104 F.3d 355 (table), No. 96-7514, 1996 WL 730466, at *1, 3 (2d Cir. Dec. 19, 1996);

---

[10] Initially, Plaintiffs failed to assert their fraudulent conveyance claim against the FLP.  The FLP was added to that claim pursuant to a September 12, 2007 Stipulation and Order entered in this case.

[11] "New York adopted the Uniform Fraudulent Conveyance Act ["UFCA"] without change from the text of the uniform model statute."  *Shelly*, 660 N.Y.S.2d at 940.

*Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 595-97 (E.D.N.Y. 2000); *Cavallo v. American Skandia Life Assurance Corp.*, 94 Civ. 2908 (CSH), 1997 WL 251538, at *8, 12 (S.D.N.Y. May 13, 1997).

In order to avoid summary judgment on their fraudulent conveyance claim, Plaintiffs are required to come forward with "affirmative," "concrete evidence" that could constitute "clear and convincing" proof of Gorton's and the FLP's fraudulent intent. *Liberty Lobby*, 477 U.S. at 256, 257. Here, no reasonable jury could find clear and convincing evidence of actual fraudulent intent on either defendants' part.

### 2. Consideration of the "Badges of Fraud" Do Not Give Rise to an Inference of Fraudulent Intent.

"'[F]raudulent intent is rarely susceptible to direct proof.'" *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 374 (S.D.N.Y. 2003), *aff'd*, 99 Fed. Appx. 274 (2d Cir. 2004) (quoting *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983)). Consequently, plaintiffs in these cases repeatedly seek to prove intent to defraud circumstantially by proof of certain "badges of fraud" that courts have held may give rise to an inference of intent to defraud. *Id.* at 374-75 (citing *BFP Resolution Trust Corp.*, 511 U.S. 531, 540-41 (1994)). Among these "badges of fraud" are: (1) gross inadequacy of consideration; 2) a close relationship between transferor and transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the ordinary course of business; 5) secrecy in the transfer; and 6) retention of control of the property by the transferor after the conveyance. *Id.*; *see also Kaiser*, 722 F.2d at 1582-83 (stating badges of fraud may include: "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be

charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry").

"Of course, the flip side of these badges of fraud is that their absence – or evidence that fair consideration was paid, the parties dealt at arm's-length, the transferor was solvent, the transfer was not questionable or suspicious, the transfer was made openly, or the transferor did not retain control – would constitute evidence that there was no intent to defraud." *Lippe*, 249 F. Supp. 2d at 375. Moreover, actual intent to defraud "is never presumed, and intent to defraud cannot be found 'based merely on suspicion, conjecture, or doubtful inference.'" *Id.* (quoting *Lowendahl v. Baltimore & Ohio R. Co.*, 287 N.Y.S. 62, 76 (1st Dept.), *aff'd*, 6 N.E.2d 56 (N.Y. Ct. App. 1936). *See also Rosenthal v. Rochester Button Co.*, 539 N.Y.S.2d 11, 12-13 (1st Dept. 1989).

In their FAC, Plaintiffs allege merely two "badges of fraud." According to Plaintiffs, the transfer of LG's interest in LW to the FLP – "which, given the close relationship between the parties to the transaction and Mr. Gorton's retention of control of the property after the conveyance of these transfers – bear the 'badges of fraud' and, in fact, were made with the intent to defraud future creditors." FAC at ¶ 116. This falls far short of satisfying Plaintiffs' burden to establish actual intent to defraud with clear and convincing evidence.

### a.    Adequacy of consideration

LG's transfer of its majority interest in LW to the FLP was supported by adequate consideration. Pursuant to the Bill of Sale and/or Assignment, dated June 30, 2005, LG

transferred 87.1% of the membership interests in LW to the FLP, as consideration for an interest in the FLP of equal value received by Gorton. SoF ¶¶ 54-55. The transfer was not gratuitous – LG received consideration equal in value to that of the LW interest it sold or assigned to the FLP. Importantly, Plaintiffs have not challenged the consideration LG received in exchange for the LW interest.

Accordingly, the consideration exchanged for the transfer of the LW interest from LG to the FLP was adequate. The consideration supporting the transfer cannot properly be labeled a "badge of fraud." ***Consideration of this factor weighs against an inference of actual fraudulent intent.***

### b. <u>Relationship between transferor and transferee</u>

Concededly, a relationship existed between LG and the FLP. Gorton was a member of LG, and a general and limited partner of the FLP. SoF ¶¶ 23, 53. This factor alone, however, does not give rise to an inference of actual fraudulent intent – particularly when considered against the evidence demonstrating that the FLP was created as an estate planning device.

### c. <u>Insolvency as a result of the transfer</u>

Plaintiffs do not contend that LG became insolvent as a result of the transfer of LW interests from LG to the FLP. Nor is there any evidence to show that the transfer resulted in Gorton becoming insolvent. In fact, all of the evidence points to the opposite conclusion. SoF ¶ 57. ***Accordingly, consideration of this factor weighs against an inference of actual fraudulent intent.***

### d.     Transfer not in the ordinary course of business

Although the transfer of the majority interest in LW from LG to the FLP was not necessarily in the ordinary course of business, there was a legitimate business reason for it, namely estate planning, as described above and in Section VII(A)(g), *supra*.   In the ordinary course of LW's business, LW had periodically made distributions when LG owned the majority interest.   SoF ¶ 56.   LW continued to make periodic distributions after the transfer to the FLP.   *Id.*   As the court in *Lippe* recognized, "[e]ven assuming management's concern over [future litigation] was a motivating factor, there was nothing inappropriate about a company's management looking for lawful ways to reduce the adverse impact of [that] litigation.   249 F. Supp. 2d at 382-83.   Thus, ***consideration of this factor is neutral***, as it both supports and weighs against an inference of actual fraudulent intent.

### e.     Secrecy in transfer

Plaintiffs cannot show that the transfer of the LW interest and dividends paid pursuant thereto were done in secrecy, nor do they allege that there was anything furtive about the transfer and dividends.   The FLP publicly filed numerous partnership documents, including a Nevada Certificate of Limited Partnership, a New York Application for Authority, a New York Certificate of Publication, and an application for a federal Employee Identification Number.   SoF ¶ 52.   ***Accordingly, consideration of this factor weighs against an inference of actual fraudulent intent.***

### f.     Retention of control by transferor

Gorton does not dispute that he retained a significant amount of control over the shares in LW, both before and after the transfer to the FLP from LG.   Plaintiffs fail to

explain, however, how Gorton's "retention of control" of this membership interest was in any way fraudulent. *See* FAC at ¶ 116. As explained in Section IV(C)(3), *infra*, LG's only connection to the infringement in this case is as a shareholder in LW, which is not a legitimate basis for imposing secondary infringement liability. That LG is no longer a shareholder does not in any way suggest that the sale or assignment of its interest in LW to a new shareholder was fraudulent.[12] ***Accordingly, consideration of this factor weighs against an inference of actual fraudulent intent.***

### g. Cumulative effect of a pattern or series of transactions

Plaintiffs vaguely allege that the subject transfer and dividends "were part of Defendants' ongoing scheme to profit from the infringement of Plaintiffs' copyrights by insulating their ill-gotten gains from future recovery." FAC ¶ 64. Apart from their naked allegations, Plaintiffs cannot show that the transfers were part of a pattern or series of transactions or course of conduct sufficient to support an inference of actual fraudulent intent. To the contrary, the FLP was one of five family limited partnerships established at the same time as estate planning devices, which Gorton's advisors had been urging upon him for nearly a year. SoF ¶¶ 49-52.

Family limited partnerships have been used in estate planning for over forty years. Courtney Lieb, Comment, *The IRS Wages War on the Family Limited Partnership: How to Establish a Family Limited Partnership That Will Withstand Attack*, 71 U. Mo. K.C. L. Rev. 887, 887 (Summer 2003). As Gorton learned, one of the many benefits resulting from the use of a family limited partnership, as an estate planning device, is "asset

---

[12] Presumably, Plaintiffs could have attempted to assert a claim against the FLP as a shareholder, just as they did against LG, although such claim would suffer from the same lack of merit as Plaintiffs' claims against LG. As Plaintiffs' poorly pled fraudulent conveyance claim and unjust enrichment claim (which has been withdrawn) clearly demonstrate, Plaintiffs were unable to concoct a legal or factual basis for their claims against the FLP.

protection." *Id.* at 889. Among the other benefits of family limited partnerships are the benefit of post-mortem planning, tax advantages, and flexibility. *Id.*

There is nothing inherently sinister about estate planning and the desire to protect one's assets from future unidentified liabilities. As one commentator notes:

> We all make plans and take actions with the intent or effect of hindering or delaying creditors or even denying creditors access to at least part of our assets. We make gifts to family and friends, we set up trusts, we transfer assets to corporations, we form professional partnerships with limited liability. If we make such plans or take such actions when we are solvent and when there are no known creditors out there who have potential claims that would render us insolvent, creditors that come along in the future should not be given the right to set aside the transfers we made on the grounds that we intended to guard against the hazards of fortune.

Roy S. Geiger, 3 Bankruptcy Litigation § 17.56. Indeed, "[t]he proverbial floodgates would open wide if all transfers intended to limit or deny creditors' access to assets were vulnerable to attack by creditors with claims arising after the transfer, without regard to whether any such post transfer creditors were the intended victims of the debtor, either as individuals or as a part of a group of creditors the debtor was likely to do business with." *Id.*

The evidence shows that Gorton began his estate planning efforts well before the *Grokster* decision was handed down, and over a year before this lawsuit was filed. Plaintiffs cannot establish with the requisite clear and convincing evidence "the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors." *Kaiser*, 722 F.2d at 1578. ***Accordingly, consideration of this factor weighs against an inference of actual fraudulent intent.***

### h. **General chronology of events**

Plaintiffs attempt to capitalize on the timing of the *Grokster* decision to prop up their sagging fraudulent conveyance claim. The cornerstone of Plaintiffs' fraudulent conveyance claim is that "[i]n the wake of the Supreme Court's decision in *Grokster*, efforts were undertaken to insulate ill-gotten gains from creditors, including the Plaintiffs." FAC ¶ 64. Plaintiffs attempt to attribute specific intent to Gorton – "that the record companies would not be able to obtain his assets if Plaintiffs prevailed in a lawsuit against him" – without a shred of evidence to support that speculation. FAC ¶ 64.

The process of creating the FLP took over six months. SoF ¶¶ 49-52. Gorton had been working on estate planning matters well in advance of the *Grokster* decision. *Id.* Moreover, Plaintiffs did not file this lawsuit against him until August 4, 2006 – more than a year and a half after Gorton first began setting up the FLP as part of his estate planning efforts, and more than a year after the *Grokster* decision was handed down.

Plaintiffs would have the Court believe that the *Grokster* decision changed the entire landscape of contributory and vicarious infringement liability and sent anyone involved in P2P technology scurrying to protect their assets from certain liability. It did not. The *Sony/Betamax* safe harbor remained intact, and well-established theories of contributory and vicarious liability for infringement and the proof required to establish liability under these theories were not altered. *See Grokster*, 545 U.S. at 939 n.12. In fact, the Grokster decision actually bolstered the legitimacy of Gnutella-based P2P technology like LimeWire. While the new inducement theory of liability announced in *Grokster* was certainly something demanding attention, given that LW did not engage in any of the behaviors that the Court found so offensive in *Grokster*, the possibility that

LW could be liable for inducing infringement has been and always will be far-fetched. *See id.* at 938-39 (describing inducement behaviors).

**Accordingly, consideration of the general chronology of events does not support of inference of actual fraudulent intent.**

### 3. Consideration of the badges of fraud does not support an inference of actual fraudulent intent.

As shown above, the 'badges of fraud" that bear on the issue of actual fraudulent intent under Section 276 are mixed in this case. On balance, however, the great majority of the factors considered as badges of fraud weigh against an inference of fraudulent intent, and few, if any are supported by the clear and convincing evidence required to prove actual fraudulent intent.

*Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357 (S.D.N.Y. 2003), *aff'd*, 99 Fed. Appx. 274 (2d Cir. 2004), is instructive. In 1993, after having had more than 100,000 asbestos lawsuits brought against it, Keene Corporation filed for bankruptcy. *Id.* at 360. The bankruptcy Trustees contended that Keene knew more than a decade before it filed for bankruptcy, that it would eventually be financially ruined by asbestos personal injury cases. *Id.*

"At the end of the 1970s, Keene's management decided that the company should move away from being a large conglomerate." *Id.* at 367. The plaintiffs presented evidence showing that a consideration was also the company's increasing concern over the number of asbestos claims. The court assumed, for purposes of the motion, that Keene was seeking ways to minimize the adverse impact that the asbestos cases were having on its value and earnings. *Id.* Ultimately, the company restructured. Among many other things, it created Bairnco to serve as a holding company. *Id.* Keene paid

quarterly dividends to Bairnco from 1981 until 1990, in the amount of 45% of Keene's net income for the previous quarter. *Id.* at 373.

The Trustees challenged the transfers as fraudulent conveyances under Section 276. After careful consideration of the "badges of fraud," the court concluded that:

> No reasonable jury could find that there was anything suspicious or questionable about the transfers here. Although the transfers were not in the ordinary course of business, there were legitimate business reasons for them. Even assuming management's concern over the asbestos cases was a motivating factor, there was nothing inappropriate about a company's management looking for lawful ways to reduce the adverse impact of asbestos litigation.

*Id.* at 382-83. Accordingly, the court granted the defendants' motions for summary judgment dismissing the Trustees' complaint. *Id.* at 387. According to the court, on the record before it, "no reasonable jury could find that Keene and its officers, directors, lawyers, and auditors engaged in any scheme to defraud. Although the asbestos cases were a real concern to Keene as early as the 1970s, the evidence shows, as a matter of law, that there were no fraudulent conveyances here. Instead, a reasonable jury could only find that the transactions were legitimate." *Id.* at 360.

*Case v. Fargnoli*, 702 N.Y.S.2d 764 (N.Y. Sup. 1999) is also illustrative. In that case, the Department of Social Services brought an action against Fargnoli to recover Medicaid funds paid on behalf of Fargnoli's wife between 1990 and 1996, alleging that Fargnoli had available financial resources that should have been used to pay the Medicaid costs. *Id.* at 765. Fargnoli claimed that his assets were unavailable, having been transferred in 1987 to an irrevocable trust, in which two of his children were trustees. *Id.* at 765-66. Given Fargnoli's continued solvency after 1987, the plaintiff was required to show by clear and convincing evidence, that Fargnoli had an actual fraudulent intent in

creating the trust, in order to recover under Section 276. As in this case, the "badges of fraud" bearing on the issue of actual intent under Section 276 were "decidedly mixed."

> While the relationships between settlor and the trustees/remaindermen are close, there was no secrecy or duplicity in the 1987 creation of the trust and no evidence that settlor knew, at the time, that medical costs exceeding his capacity to pay would descend upon him in consequence of a future protracted illness of his spouse. . . . [W]e conclude, as a matter of law, that plaintiff has failed to show, by the required clear and convincing evidence, that the 1987 transfer was intentionally fraudulent.

*Id.* at 768. Accordingly, the court granted summary judgment in favor of Fargnoli with respect to the 1987 transfer of assets. *See also Shelly*, 660 N.Y.S.2d at 945 (where the only factors weighing in favor of an inference of fraudulent intent under Section 276 were an intra-family transfer and inadequate consideration, and respondent failed to show with "clear and convincing proof that [petitioner] knew he would be unable to pay an eventual judgment on an immature not-yet-sued, unliquidated claim," court held there was no justification for inference of actual intent to defraud).

Similarly, Plaintiffs cannot show with clear and convincing evidence that Gorton and the FLP possessed the intent to defraud that is an essential element of a claim for fraudulent conveyance under Section 276. The Court should grant summary judgment on Plaintiffs' fraudulent conveyance claim.

## CONCLUSION

For all of the foregoing reasons, Defendants Mark Gorton, Greg Bildson, Lime Group LLC, and M.J.G. Lime Wire Family Limited Partnership respectfully pray that this Court enter an order granting their motion for summary judgment on Plaintiffs' claims against them for contributory infringement, vicarious infringement, inducement of infringement, common law copyright infringement and unfair competition as to pre-1972 recordings, and fraudulent conveyance.

Dated: July 18, 2008.

Respectfully Submitted,

Of counsel:

_____/s/_____

Lauren E. Handler
SDNY (LEH 6908)
PORZIO, BROMBERG &
NEWMAN, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962-1997
(973) 538-5146 (Facsimile)
(973) 889-4326 (Telephone)
lehandler@pbn.com

Charles S. Baker (CB1365)
Joseph D. Cohen (JC3017)
Susan K. Hellinger (SH8148)
PORTER & HEDGES, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000 (Telephone)
(713) 228-1331 (Facsimile)
cbaker@porterhedges.com
jcohen@porterhedges.com
shellinger@porterhedges.com

*Attorneys for Defendants*

1381991v1

## CERTIFICATE OF SERVICE

This is to certify that the foregoing pleading was filed by means of the Court's ECF system on the 18th day of July, 2008. Accordingly, it is assumed that all counsel of record received notice of this filing from the ECF system. Lead counsel, listed below, will also receive a courtesy copy via Federal Express.

| | |
|---|---|
| Katherine B. Forrest | Kenneth L. Doroshow |
| Teena-Ann V. Sankoorikal | Karyn A. Temple |
| Cravath, Swaine & Moore, LLP | Recording Industry Association of America |
| Worldwide Plaza | 1025 F Street, NW, 10th Floor |
| 825 Eighth Avenue | Washington, DC 20004 |
| New York, NY  10019-7475 | (202) 775-0101 |
| (212) 474-1000 | (202) 775-7253 (fax) |
| (212) 474-3700 (fax) | |

_____
/s/
Charles S. Baker

1381991v1