UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.,

Plaintiffs,

v.

LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,

Defendants.

Case No. 06 CV 5936 (KMW)

ECF Case

**DEFENDANTS LIME GROUP LLC'S AND MARK GORTON'S MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER MAY 11, 2010 ORDER AS AMENDED ON MAY 25, 2010**

Michael S. Sommer
Tonia Ouellette Klausner
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
msommer@wsgr.com; tklausner@wsgr.com

Colleen Bal (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Tel: (415) 947-2000
Fax: (415) 947-2099
cbal@wsgr.com

*Attorneys for Defendants Lime Group LLC and Mark Gorton*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND .......................................................................................................... 2

III. ARGUMENT ................................................................................................................ 3

    A. The Court Improperly Applied the Legal Theory it Invoked ................................ 3

        1. The evidence relied upon by the Court did not demonstrate that Lime Group had a right and ability to supervise the LW conduct the Court found induced infringement ................................................................................ 4

        2. The Court erroneously found that Lime Group and Gorton received a direct financial benefit from LW's infringing activity based solely on Lime Group's majority ownership of LW and Gorton's ownership of Lime Group ............................................................................................................ 6

    B. The Court Erroneously Construed the Evidence, Overlooked Evidence Submitted by Lime Group, and Failed to Resolve All Inferences in The Light Most Favorable to Lime Group ............................................................................ 7

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*Badian v. Brandaid Communications Corp.*, No. 03 Civ. 2424 (DC), 2005 WL 1083807 (S.D.N.Y. May 9, 2005) .................................................................................................... 3

*Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103 (S.D.N.Y. 1994) ..................................................... 3

*Brady v. Town of Colchester*, 863 F.2d 205 (2d Cir. 1988) ........................................................... 7

*Broadvision Inc., v. General Elec. Co.*, No. 08 CIV. 1478 (WHP), 2009 WL 1392059 (S.D.N.Y. May 5, 2009) .................................................................................................. 4, 6

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696 (S.D.N.Y. 2001) .............. 3

*Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29 (2d Cir. 1994) .................................................... 7

*Dauman v. Hallmark Card, Inc.*, No. 96 Civ. 3608 (JFK), 1998 WL 54633 (S.D.N.Y. Feb. 9, 1998) ........................................................................................................... 4, 6

*In re Currency Conversion Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) ....................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................................... 7

*Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 693 (2d Cir. 1998) ............................ 4

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ............................... 6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2871 (June 2, 2008) ........................................................................................ 4

*Rose v. Barnhart*, No. 01 CIV 1645 KMWRLE, 2007 WL 549419 (S.D.N.Y. Feb. 16, 2007) ................................................................................................................................ 3

*Scott v. Harris*, 550 U.S. 372 (2007) ............................................................................................. 7

*Shady Records, Inc. v. Source Enter., Inc.*, No. 03 Civ. 9944 (GEL), 2005 WL 14920 (S.D.N.Y. Jan. 3, 2005) .................................................................................................... 4

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963) ....................... 2, 3, 4, 6

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955 (2d Cir. 1997) ............... 7

*Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 778 F.2d 89 (2d Cir. 1985) .................. 3, 4


# TABLE OF AUTHORITIES

## CASES
### (continued)

Page(s)

*UMG Recordings, Inc. v. Veoh Networks Inc.*, No. CV 07-5744 AHM (AJWx), 2009 WL 334022 (C.D. Cal. Feb. 2, 2009) .................................................................................... 6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ............... 3

**Rules**

Federal Rule of Civil Procedure 60(b) ............................................................................. 1, 3

Local Civil Rule 6.3 ........................................................................................................ 1, 3

**DEFENDANTS LIME GROUP LLC'S AND MARK GORTON'S MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER MAY 11, 2010 ORDER AS AMENDED ON MAY 25, 2010**

On May 11, 2010, the Court granted summary judgment against Defendants Lime Group LLC ("Lime Group") and Mark Gorton ("Gorton"), finding them liable for the conduct of Lime Wire LLC ("LW").[1] Pursuant to Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3, Lime Group and Gorton respectfully seek reconsideration of the Court's determination.

## I.   INTRODUCTION

Reconsideration is warranted because the Court made clear errors in its analysis of Lime Group's and Gorton's liability for the conduct of LW that the Court found to induce infringement.[2] *First*, the Court incorrectly applied the test it articulated for determining the liability of Lime Group and Gorton. It failed to consider whether Lime Group had the ability to supervise the particular LW actions that the Court found to induce infringement, and it improperly found a direct financial benefit from the purported infringing activity based solely on Lime Group's status as a majority owner. The Court similarly misapplied the Second Circuit standard when it found that Gorton had a direct financial benefit from the inducing activity based solely on Gorton's financial interest in Lime Group. *Second*, the Court misconstrued certain evidence and misapplied the standard for summary judgment by overlooking evidence submitted by the non-moving party, and failing to draw all inferences in favor of Lime Group. These errors materially influenced the Court's May 11, 2010 Order as amended by the May 25, 2010 Order (the "Order"), and the holdings contained therein would have been altered had the errors been avoided.

---

[1] On May 25, 2010, the Court amended its May 11, 2010 Order in part. Throughout this Motion, Defendants cite to the pagination of the Amended Order ("Am. Order") [Docket 233].

[2] The Court found LW liable for inducement of infringement under federal copyright law, as well as common law copyright and unfair competition law. *See* Am. Order at 49-51. If the Court grants this Motion for Reconsideration, which is based on federal copyright law, then summary judgment of common law copyright and unfair competition should also be denied to Plaintiffs since the Court based its findings of liability under the common law theories on its finding of inducement under federal copyright law.

## II. BACKGROUND

In its Order, the Court held that Lime Group and Gorton were each individually liable for the LW conduct that the Court found to induce infringement by LW users, and therefore granted summary judgment against Lime Group and Gorton. Am. Order at 51. Although Plaintiffs moved for summary judgment against Lime Group and Gorton on contributory and inducement theories of liability, they did not move for summary judgment on their vicarious liability claim, and they did not argue in their motion that Lime Group and/or Gorton should be found liable based on a theory of vicarious liability for LW's alleged inducement of infringement. *See, e.g.,* Pls. Mem. in Support of Summary Judgment at 2 ("This motion addresses whether defendants have either induced or knowingly contributed to such infringement by users of the LimeWire software."); *id.* at 4 n.2 ("Gorton and Bildson personally participated in the acts that induced and contributed to infringement using the LimeWire client . . . and thus are personally liable. . . . Lime Group . . . also was directly responsible for acts that induced and contributed to infringement . . . , and thus is also liable."). Despite Plaintiffs' seeking summary judgment against Lime Group and Gorton only on the basis that they allegedly participated in the acts underlying Plaintiffs' contributory infringement and inducement claims, this Court applied a theory of vicarious liability for inducement of infringement, based upon a defendant's ability to exercise of control over and direct financial benefit from the infringing activity. *See Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir. 1963). While the Second Circuit appears to have only applied this theory in the context of claims for direct copyright infringement, the Court relied upon a single case from the Eastern District of New York to conclude that the theory also applies to claims for secondary liability. Am. Order at 52.[3]

---

[3] Lime Group and Gorton respectfully disagree that the joint and several liability theory applied by the Court, which is a test of vicarious liability, *see Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 308 (2d Cir. 1963), properly can be applied to a claim for secondary infringement (in essence creating a claim for secondary liability for secondary liability). However, because this is a legal issue and there is no controlling authority, Lime Group and Gorton will address the issue on appeal.

In its Order, the Court found the ability to control prong satisfied with respect to Lime Group based on the interconnected relationship between Lime Group and LW. *Id.* at 53-54. It found the direct financial interest prong satisfied with respect to Lime Group solely because at one time it was a majority owner of LW until 2005. *Id.* at 54. And it found the direct financial benefit prong satisfied with respect to Gorton solely because Gorton owned 100% of Lime Group. *Id.*

## III. ARGUMENT

A motion for reconsideration is authorized under both Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3. Although it is an extraordinary remedy, reconsideration is appropriate where there is a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790). Reconsideration is proper where the court overlooked controlling decisions or factual matters which, if considered, might have altered the result or materially influenced the earlier decision. *See In re Currency Conversion Antitrust Litig.*, 361 F. Supp. 2d 237, 246 (S.D.N.Y. 2005); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001). "While Rule 60(b) is not meant to act as a 'substitute for appeal,' it does 'encompass judicial mistake in applying the appropriate law.'" *Rose v. Barnhart*, No. 01 CIV 1645 KMWRLE, 2007 WL 549419, at *1 (S.D.N.Y. Feb. 16, 2007) (M.J. Ellis) (quoting *Badian v. Brandaid Communications Corp.*, No. 03 Civ. 2424 (DC), 2005 WL 1083807, at *2 (S.D.N.Y. May 9, 2005)).

### A. The Court Improperly Applied the Legal Theory it Invoked

The vicarious liability theory invoked by the Court in holding Lime Group and Gorton liable for LW's conduct required a two part showing: (1) that each of these defendants had "'the right and ability to supervise'" the conduct found to induce infringement; and (2) that each had "'a direct financial interest' in the profits from the infringing activity." *Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1107 (S.D.N.Y. 1994) (laying out two part test based on *Shapiro*, 316 F.2d at 307). *See also Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 778 F.2d 89, 92

-3-

(2d Cir. 1985) (citing *Shapiro*). The Order cited only district court cases and failed to consider the test as articulated by the Second Circuit in *Shapiro* and subsequent Second Circuit cases. Had the Court properly applied the test as articulated by the Second Circuit, it would, at minimum, have found a genuine issue of material fact as to the joint and several liability of both Lime Group and Gorton.

### 1. The evidence relied upon by the Court did not demonstrate that Lime Group had a right and ability to supervise the LW conduct the Court found induced infringement

First, the evidence cited by the Court did not establish that Lime Group had the right and ability to supervise or actually exercised control over the conduct of LW that the Court found to induce infringement by LW users. In *Shapiro*, the Second Circuit held that the defendant department store had the right and ability to supervise the sale of infringing records by a record department within the store operated by a third-party because the lease between the two parties specifically gave the defendant the authority to promulgate rules that the record concessionaire was legally obligated to follow. *Shapiro*, 316 F.2d at 306. In *Sygma Photo News*, 778 F.2d at 91-92, the Second Circuit found that a parent corporation had the requisite control of a subsidiary's infringing activities where employees of the parent company actually administered the publication of the magazine at issue on behalf of its shell subsidiary. In contrast, a mere investor or parent/subsidiary relationship alone is insufficient to establish the control prong. *See, e.g., Broadvision Inc., v. General Elec. Co.*, No. 08 CIV. 1478 (WHP), 2009 WL 1392059, at *4 (S.D.N.Y. May 5, 2009); *Shady Records, Inc. v. Source Enter., Inc.*, No. 03 Civ. 9944 (GEL), 2005 WL 14920, at *26 (S.D.N.Y. Jan. 3, 2005); *Dauman v. Hallmark Card, Inc.*, No. 96 Civ. 3608 (JFK), 1998 WL 54633, at *6 (S.D.N.Y. Feb. 9, 1998). *See also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2871 (June 2, 2008) (No. 07-1026). Rather, the defendant must possess the right and ability to supervise the infringing conduct. *See Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 693, 707 n.22 (2d Cir. 1998) (interpreting *Shapiro* as requiring "that defendant possess the right and ability to supervise the infringing conduct"). *See also Dauman*, 1998 WL 54633, at *6 ("a parent

corporation can be liable only if there is a substantial continuing involvement by the parent specifically with the respect to the allegedly infringing activity of the subsidiary").

Here, the Court did not base its finding of Lime Group's right and ability to supervise or control the conduct of LW on a legal relationship that gave Lime Group the authority to promulgate rules for LW, or Lime Group's actual exercise of control over the conduct found to induce infringement. Instead the Court relied upon evidence of shared offices, computer services, support staff and the like, and Lime Group's having provided services to LW such as handling employee benefits and system support. Am. Order at 53-54. These facts simply do not establish that Lime Group had the ability to or in fact did control the conduct that the Court found to induce infringement—efforts by LW to attract users who were known infringers, the optimization of LW's features to ensure users can download digital recordings, the provision by LW of assistance to its users in committing infringement, or LW's decisions with respect to filtering.[4]

Accepting Plaintiffs' statement of facts without regard to the contradictory evidence submitted by Lime Group (a point addressed below), the Court also relied upon its factual findings that Lime Group employees developed much of LW's original technology, and developed certain user guides, FAQ guides, and merchandising for LW. Am. Order at 54. But the Court did not find LW liable for inducement of infringement based on this development work by Lime Group employees. For instance, the Court did not find LW liable for inducement of infringement based on the LW technology in general. Rather, the Court focused on specific features of the technology as supporting inducement, such as the ability to search for specific artists or albums, or to search by music genre. *See* Am. Order at 35-36. While certain of the individuals involved in the development of the software may have originally been employed by Lime Group before Lime Wire was established, the Court made no finding that the particular features the Court found to induce infringement were developed at that time. *See id.* at 54-55.

---

[4] Defendants vigorously dispute these factual findings of purported inducement of infringement by LW, and preserve this issue for appeal.

Similarly, the Court did not find Lime Group employees controlled the creation of any aspect of LW's user guides, FAQs and merchandising that led to the Court's finding of inducement by LW.[5]

### 2. The Court erroneously found that Lime Group and Gorton received a direct financial benefit from LW's infringing activity based solely on Lime Group's majority ownership of LW and Gorton's ownership of Lime Group

A general financial benefit from the success of a company in which a defendant has an interest is inadequate to show that the defendant had a "direct financial interest in the exploitation of copyrighted materials." *Shapiro*, 316 F.2d at 307 (direct financial interest shown by license entitling defendant to percentage of gross receipt from sale of records). If liability could be premised on mere general financial interest, then every investor and every parent corporation would always meet the financial benefit requirement. *See, e.g., Broadvision*, 2009 WL 1392059, at *4 (some financial benefit to parent corporation as a result of subsidiary's infringing activity insufficient to show direct financial interest in infringing activity); *Dauman*, 1998 WL 54633, at *6 ("fact that parent company benefits financially by virtue of its ownership of the subsidiary" is insufficient benefit to state infringement claim against parent based on conduct of subsidiary); *UMG Recordings, Inc. v. Veoh Networks Inc.*, No. CV 07-5744 AHM (AJWx), 2009 WL 334022, at *5-6 (C.D. Cal. Feb. 2, 2009) (allegation that value of investor defendants' financial interests in company increased as a result of increased infringement insufficient to plead direct financial interest in infringing activity). Indeed, applying *Shapiro*, the Second Circuit has held that the fact that a defendant is an officer and shareholder of an entity found liable for infringement is "is too attenuated to establish a sufficiently 'direct' financial

---

[5] Even if some of the search features were developed when the developers were employed by Lime Group, that fact standing alone would be an inadequate basis on which to hold Lime Group liable for controlling the acts of LW that the Court found collectively induced infringement by users; it was the combination of numerous facts, and not solely the software features that led to the Court's decision on inducement. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005) (holding that inducement is premised on active encouragement to infringe, not the mere act of making certain technology available to the public).

interest in the exploitation of copyrighted materials." *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 971-72 (2d Cir. 1997).

Yet here, the Court relied upon Lime Group's status as a majority owner of LW without more to find a direct financial interest in the LW conduct found to infringe. And it relied solely upon the even more attenuated "indirect[]" ownership interest of Gorton in LW through his ownership of Lime Group to hold that Gorton also received a direct financial benefit from the infringing conduct. Am. Order at 54. Because the Court overlooked *Softel* and misapplied the theory of liability it invoked, reconsideration is appropriate. Under the appropriate standard, summary judgment against Lime Group and Gorton is not warranted.

### B.   The Court Erroneously Construed the Evidence, Overlooked Evidence Submitted by Lime Group, and Failed to Resolve All Inferences in The Light Most Favorable to Lime Group

The Court's Order also is erroneous with respect to Lime Group because it was based on factual findings that were not supported by the record, failed to consider conflicting evidence, and failed to resolve all inferences in favor of Lime Group. On a motion for summary judgment, all ambiguities and inferences to be drawn from the underlying facts should be resolved in the light most favorable to the nonmoving party. *See, e.g., Scott v. Harris*, 550 U.S. 372, 378 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Second Circuit has explained this requirement as follows: "If reasonable minds could differ as to the import of the evidence, . . . if there is *any* evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain summary judgment." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) (emphasis added) (reversing grant of summary judgment because when inference was drawn in favor of nonmoving party, it demonstrated genuine issue of material fact). *See also Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 35 (2d Cir. 1994) (reversing grant of summary judgment because lower court inappropriately drew some inferences in favor of moving party and did not credit all inferences that could be drawn in favor of nonmoving party). Had the Court considered the evidence put forth by Lime Group and drawn all inferences in favor of

Lime Group, it would have at minimum concluded that there were material issues of fact as to whether Lime Group had the ability to control or participated in any of the conduct giving rise to LW's liability for inducement of infringement.

The Court concluded that Lime Group had the ability to supervise and control LW's acts amounting to inducement of infringement based on the following factual findings: (1) Gorton operated LW and Lime Group "as a single company"; (2) LW and Lime Group shared certain resources, such as office space and support staff; (3) employees moved between Lime Group and LW without changing titles or job responsibilities; (4) Lime Group employees developed "much of LimeWire's original technology"; (5) Lime Group provided certain services to LW, such as "systems administration support," managing of LW's financial operations, and "investor relations, public relations, and customer support"; and (6) Lime Group employees developed user guides, FAQ guides, and merchandising for LW. Am. Order at 53-54.

Three of these factual findings are not supported by the evidence relied upon by the Court. First, the evidence cited does not reflect that "employees" moved between Lime Group and LW without changing titles or job responsibilities. Rather, the Bildson Declaration states only that Bildson was hired by Tower Research Capital, became an employee of Lime Group, and later was employed by Lime Peer Technologies, which became LW, and that these transitions had no bearing on his job duties; he says nothing regarding job titles, or any other employees changing employers without changing job responsibilities. Bildson Decl. ¶ 32. Additionally, other record evidence explains that Bildson became an employee of LW as soon as it came into existence. Gorton Reply Declaration of November 7, 2008 (Docket No. 174) ¶ 24. Thus, the evidence the Court relied upon does not support the conclusion that multiple employees moved between Lime Group and LW as found by the Court. Second, the evidence Plaintiffs cited to in support of their assertions in their statement of facts does not conclusively demonstrate that Lime Group performed investor relations, public relations, and customer support functions for LW. *See* Forrest Decl. Exs. 431 (draft form letter to potential LW investors

with no indication it was ever used); 94 (investor offering document from "Investor Representative Lime Wire LLC" with email address containing "@limegroup.com"); 432 (email from Lime Group associate seeking to set up meeting with P2P provider); 438 (reflecting at most that individual with Lime Group email address was copied on email from LW customer support representative to individual at LW). Finally, Bildson did not declare that Lime Group employees developed user guides, FAQ guides, and merchandising for LW. Rather, he stated that after a single Lime Group employee drafted the first user guide, an editor for LimeRadio took over the user guide, FAQ, and merchandising for LW. *Id.* ¶ 33.

Moreover, the Court's other factual findings failed to consider the following record evidence:

- Lime Group was a separate company from LW, and never had any direct or indirect input over, or even a voice in, any decision made at LW. Defendants' Statement of Facts in Support of Defendants Greg Bildson, Mark Gorton, Lime Group LLC, and M.J.G. Lime Wire Family Limited Partnership's Motion for Summary Judgment (Docket No. 102) ¶¶ 35, 41.
- Lime Group was formally maintained as a separate entity from LW, for example: Lime Group had its own books and records; Lime Group maintained its own checking account and did not commingle assets; Lime Group prepared its own financial statements; and Lime Group did not own or operate any servers associated with the use of the LW software applications. *Id.* ¶¶ 42-47.
- Lime Group's services to LW were generally limited to accounting, maintenance of books and records, and preparation of financial statements, and on the occasions that Lime Group employees provided services to LW, LW reimbursed Lime Group for the services. *Id.* ¶¶ 31, 38, 40.
- The LW software was developed by LW employees and all developers who had initially been hired by Tower Capital became employees of LW as soon as it was

formed in August 2000. Gorton Reply Declaration of November 7, 2008 (Docket No. 174) ¶ 24.

In light of this evidence, it was error for the Court to credit Bildson's Declaration testimony (submitted after he agreed to cooperate with the Plaintiffs in exchange for Plaintiffs' dismissing their claims against him) that Lime Group and LW were operated as a single company, and that the initial LW software was substantially developed by Lime Group employees. Drawing all inferences in favor of Lime Group, the Court should have concluded that there was a disputed issue of fact as to Lime Group's role in the day to day operations of LW, and a disputed issue as to whether any of the LW software was developed by Lime Group and if so, which features and functionalities. Because these findings were material to the Court's decision to grant summary judgment in favor of the Plaintiffs on their inducement claim against Lime Group, reconsideration is appropriate and the Court's decision should be reversed.

## **CONCLUSION**

For the foregoing reasons, Lime Group LLC and Mark Gorton respectfully request that the Court grant their Motion for Reconsideration, and upon reconsideration, deny summary judgment against Lime Group and Gorton on Plaintiffs' claims for inducement of copyright infringement, common law copyright infringement and unfair competition.

Respectfully submitted,

Dated: May 26, 2010
      New York, New York

By: s/ Michael S. Sommer
    Michael S. Sommer

Michael S. Sommer
Tonia Ouellette Klausner
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas
40th Floor
New York, New York 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
msommer@wsgr.com; tklausner@wsgr.com

Colleen Bal (pro hac vice)
WILSON SONSINI GOODRICH & ROSATI, P.C.
Spear Tower, Suite 3300
San Francisco, California 94105
Tel: (415) 947-2000
Fax: (415) 947-2099
cbal@wsgr.com

*Attorneys for Defendants Lime Wire LLC,
Lime Group LLC, Mark Gorton and M.J.G
Lime Wire Family Limited Partnership*