UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTA RECORDS LLC; ATLANTIC
RECORDING CORPORATION; BMG MUSIC;
CAPITOL RECORDS, INC.; ELEKTRA
ENTERTAINMENT GROUP INC.; INTERSCOPE
RECORDS; LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY
RECORDS LLC; SONY BMG MUSIC
ENTERTAINMENT; UMG RECORDINGS, INC.;
VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,

        Plaintiffs,

v.

LIME WIRE LLC; LIME GROUP LLC; MARK
GORTON; GREG BILDSON; and M.J.G. LIME
WIRE FAMILY LIMITED PARTNERSHIP,

        Defendants.

Case No. 06 CV 5936 (KMW)

ECF Case

# DEFENDANTS LIME WIRE LLC, LIME GROUP LLC, AND MARK GORTON'S MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER THE COURT'S MAY 11, 2010 ORDER AS AMENDED ON MAY 25, 2010

Michael S. Sommer
Tonia Ouellette Klausner
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
msommer@wsgr.com; tklausner@wsgr.com

Colleen Bal (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Tel: (415) 947-2000
Fax: (415) 947-2099
cbal@wsgr.com

*Attorneys for Defendants Lime Wire LLC, Lime Group LLC, Mark Gorton, and M.J.G. Lime Wire Family Limited Partnership*

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 3 |
| | A. The Court's Order | 3 |
| |    1. The Hard Drives and "Electronic Evidence" | 3 |
| |    2. The Hash Analysis | 4 |
| |    3. Dr. Waterman's Analysis | 6 |
| III. | ARGUMENT | 7 |
| | A. Reconsideration Is Appropriate Because the Court Made Errors and Overlooked Factual Issues in Its Analysis of Direct Infringement | 7 |
| | B. Summary Judgment Is Improper Because Plaintiffs Failed to Establish that Users Infringed Plaintiffs' Copyrights Using LimeWire | 8 |
| | C. The Court Improperly Drew Inferences in Plaintiffs' Favor | 10 |
| IV. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

## CASES

Page

*Amnesty Am. v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004)..................................10

*Arista Records, Inc. v. Mp3Board, Inc.*, No. 00-4660, 2002 WL 1997918
  (S.D.N.Y. Aug. 29, 2002).................................................................................................7, 8

*Arista Records LLC v. Usenet.com*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009)................................6

*Brady v. Town of Colchester, Inc.*, 863 F.2d 205 (2d Cir. 1988)................................................7

*Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29 (2d Cir. 1994)................................................7

*Columbia Pictures Inds., Inc. v. Fung*, No. 06-5578, 2009 WL 6355911 (C.D.
  Cal. Dec. 21, 2009).............................................................................................................6

*In re Currency Conversion Antitrust Litigation*, 361 F. Supp. 2d 237 (S.D.N.Y.
  2005)...................................................................................................................................7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, 545 U.S. 912 (2005).....................................1

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 259 F. Supp. 2d 1029 (C.D.
  Cal. 2003)............................................................................................................................1

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 380 F.3d 1154 (9th Cir.
  2004)...................................................................................................................................1

*R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54 (2d Cir. 1997)........................................................10

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992).......................7

## RULES

Federal Rule of Civil Procedure 60(b)......................................................................................1, 7

Local Civil Rule 6.3....................................................................................................................1, 7

# DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER THE COURT'S MAY 11, 2010 ORDER AS AMENDED ON MAY 25, 2010

On May 11, 2010, the Court granted summary judgment in favor of Plaintiffs on their claims that Defendants Lime Wire LLC ("LW"), Lime Group LLC ("LG"), and Mark Gorton ("Gorton"; collectively "Defendants") induced users of the LimeWire software to infringe Plaintiffs' copyrights in thirty sound recordings.[1] Pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 6.3, Defendants respectfully seek reconsideration of that ruling, as well as the Court's denial of Defendants' noninfringement motions, on the ground that the Court made clear errors in its determination that there were no genuine issues of fact as to whether LimeWire software users engaged in direct copyright infringement of Plaintiffs' works.[2]

## I.  INTRODUCTION

To prevail on their claims for secondary liability of copyright infringement, Plaintiffs were required to provide undisputed evidence that users employed the LimeWire software to directly infringe the thirty sound recording copyrights at issue. As stated by the Court, the relevant question was whether "LimeWire users employed LimeWire to share and download the Recordings without authorization." May 25, 2010 Order ("Am. Order") [Docket 223] at 27. Plaintiffs failed to make the required showing. Instead, they provided evidence purporting to demonstrate that (1) there were unauthorized audio files *available* and *requested* for download on the Gnutella network through Gnutella-compatible software, (2) users of the LimeWire

---

[1] On May 25, 2010, the Court amended its May 11, 2010 Order in part. Throughout the Memorandum, Defendants cite to the May 25, 2010 Order ("Am. Order") [Docket 223].

[2] The Court's finding of inducement liability against Lime Wire relies heavily on the Supreme Court's decision in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, 545 U.S. 912 (2005). *See, e.g.*, Am. Order at 29-31. Notably, direct infringement was expressly *not* contested in the Grokster case. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 380 F.3d 1154, 1160 (9th Cir. 2004) ("The element of direct infringement is undisputed in this case."); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 259 F. Supp. 2d 1029, 1034 (C.D. Cal. 2003) ("It is undisputed that at least some of the individuals who use Defendants' software are engaged in direct copyright infringement of Plaintiffs' copyrighted works."). Accordingly, the *Grokster* case does not directly address the issues on this motion, and does not support a finding of direct infringement here.

software have on their computers audio files of the relevant sound recordings that are *available* to be downloaded, and (3) multiple users have identical files, as indicated by identical hash values. From this, the Plaintiffs theorized that users with identical files might have copied the files from each other using the LimeWire software. Plaintiffs' theory, however, is but one among many. As Defendants' expert explained, there are numerous reasons why users could have files on their computers with identical hash values, including that the users all downloaded the files from the same authorized source (such as by paid download from the Internet) or that the users copied the file from each other using countless other possible non-LimeWire software programs. At the summary judgment stage, the Court should not have concluded that Plaintiffs' circumstantial evidence, susceptible to numerous interpretations, demonstrated direct infringement through use of the LimeWire software.

The Court's opinion reflects clear error regarding Plaintiffs' alleged evidence of direct infringement. The Court acknowledges the cases holding that circumstantial evidence of "availability" and "request" of unauthorized files is insufficient to establish direct infringement, but distinguishes those cases on the mistaken belief that Plaintiffs provided "direct" evidence of direct infringement here. Am. Order at 28. They did not. The Court incorrectly believed that Plaintiffs' analysis of hash values could provide "[a] conclusive determination of whether a particular audio file was downloaded through LimeWire." Am. Order at 27 n.21. But even Plaintiffs argued no more than that identical hash values *could* reflect infringement by Lime Wire, not that they were conclusive evidence of infringement.[3] Likewise, Plaintiffs' evidence that audio files were *available* from the computers of LimeWire users did not "establish[ ] that the Recordings were downloaded by LimeWire users without authorization," as the Court found. *Id.* at 27. The Plaintiffs provided no direct evidence of direct infringement, and their circumstantial evidence could not eliminate all genuine issues of material fact.

---

[3] *See* 11/7/08 Plaintiffs' Reply Brief at 24 (never addressing or denying possibility that allegedly identical files were obtained from various authorized or non-LimeWire sources); Kempe Decl. ¶ 6 (same).

The Court's various errors concerning Plaintiffs' purported evidence of direct infringement were fundamental to its finding that LimeWire users directly infringed the Plaintiffs' copyrights. Absent these errors, there could be no finding of direct infringement and consequently, no finding of secondary liability. Accordingly, Defendants respectfully request that the Court reconsider its ruling of direct infringement.

## II. BACKGROUND

### A. The Court's Order

In its Amended Order, the Court ruled that there were no genuine issues of material fact as to direct infringement, specifically finding that "LimeWire users infringed Plaintiffs' copyrights by sharing unauthorized digital copies of the Recordings through LimeWire." Am. Order at 27-28. The Court identified three bases for its finding:

- Plaintiffs' submission of hard drives containing "electronic evidence" that the Court found "establishe[d]" that the relevant audio files had been downloaded by LimeWire users without authorization. *Id.* at 27.

- Plaintiffs' hash analysis, which the Court found "conclusively" established that the audio files had been downloaded through LimeWire. *Id.* at 27 n.21.

- An analysis conducted by Plaintiffs' designated expert Dr. Richard Waterman, which the Court understood as analyzing the rate at which sample unauthorized files were "requested for download by LimeWire users." *Id.* at 28. The Court found that "Dr. Waterman's report supports this evidence [of infringement by LimeWire users], and provides context as to the scope of the infringement." *Id.*

#### 1. The Hard Drives and "Electronic Evidence"

The Court ruled that the "electronic evidence" submitted with Plaintiffs' hard drives provided direct evidence of infringement by users of LimeWire software:

> Plaintiffs have provided hard drives that contain digital copies of the Recordings, with electronic evidence that establishes that the Recordings were downloaded by LimeWire users without authorization.

-3-

Am. Order at 27. By "electronic evidence," the Court was presumably referring to the "packet capture" data Plaintiffs submitted in connection with each recording stored on the hard drives. The "packet capture" data consist of a series of electronic information, incomprehensible to a lay person, and which require a technical expert to explain. *See* Ex. 466. Plaintiffs, however, did not submit any declarations, or provide any explanations in their briefing, regarding the purported significance of this data. Instead, they merely asserted their view of the data in their statement of facts. *See* Ex. 466; Pl. SUF ¶ 119.

Even if one were to accept Plaintiffs' unexplained contention of what the packet data showed, the data do not support the Court's finding that "the Recordings were downloaded by LimeWire users without authorization." The Plaintiffs contended only that the packet capture data showed that LimeWire users possessed copies of the audio files that were *available* to be downloaded by Plaintiffs' attorneys. *See* Pl. SUF §§ 119, 120 (stating that "packet capture show[s] the audio file was downloaded from a LimeWire user for each sound recording" and explaining that "plaintiffs' investigators" performed the downloads). Even if users of LimeWire software possessed the relevant audio files on their computers, it would not evidence that the LimeWire software was ever used to download those files by anyone other than Plaintiffs' counsel. Further, even Plaintiffs do not claim that the "packet capture" data show the origin of the files, the manner by which LimeWire users obtained them, or their authorization status.

### 2. The Hash Analysis

The Court ruled that Plaintiffs' hash analysis was conclusive evidence of direct infringement:

> A conclusive determination of whether a particular audio file was downloaded through LimeWire may be made through analysis of its "hash" . . . Based on a hash-based analysis, it is clear that copyrighted digital recordings downloaded through LimeWire by Plaintiffs' investigators, were previously digitally shared and downloaded by other LimeWire users.

Am. Order at 27 n.21.

The ruling reflects a misunderstanding of what a file hash designates and what information it can provide. A file hash is simply a numeric representation of the audio file. Horowitz Rep. ¶ 23. Because hash values themselves do not provide information regarding whether a file has been shared, which software has been used to transfer the file over the network, or the authorization status of the file, a "conclusive determination of whether a particular audio file was downloaded through LimeWire" simply *cannot* be made through hash analysis. *See id.* ¶ 103 (discussing generation of hashes when audio files are first "produc[ed]").

Plaintiffs did not contend that the hash analysis could determine whether an audio file was downloaded using LimeWire software, much less conclusively. Plaintiffs' witnesses who performed hash analyses (Andrew Kempe and Thomas Sehested) purported to identify multiple LimeWire users with the relevant audio files with identical file hashes. Kempe Decl. ¶ 4; Sehested Decl. ¶ 4. They concluded that these files were likely identical or "copies" of each other, to support Plaintiffs' theory that they might have been exchanged among LimeWire users. Kempe Decl. ¶ 6; Sehested Decl. ¶ 5. Notably, Plaintiffs' declarants did not address *how* the audio files had been copied, and neither concluded that the audio files had been reproduced using LimeWire. *See* Kempe Declaration; Sehested Declaration.

Defendants submitted an opposing declaration from its computer science expert, Dr. Steven Gribble. Dr. Gribble pointed out that the fact that two users have a file with the same hash *does* imply that the users likely possess a file with the same contents, but *does not* imply that those two users shared the file with each other, or that one copied the file from the other. 11/7/08 Gribble Decl. ¶ 4(b). Dr. Gribble explained there are many different ways that two users could have ended up with the same, identical file. For instance, they could have both obtained it from the same, non-P2P source (*e.g.*, they could have both downloaded the file from a web site, or possibly some other web sites that happen to have obtained the file some other way). *Id.* ¶ 4(c). Or they could have obtained it from some non-Gnutella-P2P network. *Id.* Or they could

have obtained it using some non-LimeWire Gnutella software. *Id.* Or the file could be available on all of these sources, and each user could have obtained it from a different source. *Id.*

### 3. Dr. Waterman's Analysis

The Court ruled that Dr. Waterman's report supported a finding of direct infringement. Am. Order at 28 ("Dr. Waterman's report supports this evidence [of infringement by LimeWire users], and provides context as to the scope of infringement."). As described in the Opinion:

> Dr. Waterman also analyzed the rate at which the sample files were requested for download by LimeWire users. Based on this analysis, he estimated that 98.8% of the files requested for download through LimeWire are copyright protected and not authorized for free distribution.

*Id.*

The Court's recitation of the analysis performed by Dr. Waterman is incorrect. Dr. Waterman never analyzed the rate at which *LimeWire users* were requesting files (Waterman Report at 8 ¶ 5), and Plaintiffs never claimed that Dr. Waterman's study indicated anything about the rate at which LimeWire users were requesting files. Instead, Dr. Waterman merely attempted to measure the rate at which unidentified users requested files. *See* Waterman Report at 6 ¶¶ 1-3; 8 ¶ 5). Dr. Waterman's analysis thus provided no indication of requests from LimeWire users, much less actual download activity using LimeWire.[4]

---

[4] The Court notes in its opinion that Dr. Waterman has previously conducted studies in other copyright cases and that "[c]ourts have approved and relied on his testimony in those cases." Am. Order at 7 n.8. In each of those cases, however, there was direct evidence of direct infringement, and the courts did not rely on Dr. Waterman's analysis as providing such evidence in their summary judgment analyses. In *Usenet.com*, the court discussed Dr. Waterman's analysis only in the context of evaluating inducement liability and inducement evidence. It did not rely on Dr. Waterman's analysis as purported evidence of direct infringement. *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 149-50 (S.D.N.Y. 2009) (identifying grounds for finding of direct infringement). Similarly, the court in *Fung* relied on "direct evidence of specific acts of infringement," and noted only that Dr. Waterman "corroborated" the direct evidence of "specific instances of downloads and transfers of copyrighted works throughout Defendants' websites." *Columbia Pictures Inds., Inc. v. Fung*, No. 06-5578, 2009 WL 6355911, at *8-9 (C.D. Cal. Dec. 21, 2009). In contrast, there is no corresponding direct evidence of direct infringement here.

## III. ARGUMENT

### A. Reconsideration Is Appropriate Because the Court Made Errors and Overlooked Factual Issues in Its Analysis of Direct Infringement

A motion for reconsideration is authorized under both Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3. Although it is an extraordinary remedy, reconsideration is appropriate where there is a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790). Courts consider whether the issues the moving party claims were overlooked would have altered the result. *See In re Currency Conversion Antitrust Litigation*, 361 F. Supp. 2d 237, 246 (S.D.N.Y. 2005).

As outlined in Section II, the Court made manifest errors and overlooked fundamental issues in its direct infringement analysis. Because the Court was deciding a summary judgment motion, whether the issues for reconsideration would have altered the result turns on the summary judgment standard. On a summary judgment motion, all ambiguities and inferences to be drawn from the underlying facts should be resolved in the light most favorable to the nonmoving party. *See Brady v. Town of Colchester*, 863 F.2d 205, 217 (2d Cir. 1988) (reversing grant of summary judgment because, when inference was drawn in favor of nonmoving party, it demonstrated genuine issue of material fact). "If reasonable minds could differ as to the import of the evidence, . . . if there is *any* evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain summary judgment." *Id.* at 211(emphasis added); *see Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 35 (2d Cir. 1994) (reversing grant of summary judgment because lower court inappropriately drew some inferences in favor of moving party and did not credit all inferences that could be drawn in favor of nonmoving party).

Judge Stein's analysis in the *Mp3Board* case is instructive. *See Arista Records, Inc. v. Mp3Board, Inc.*, No. 00-4660, 2002 WL 1997918, at *3-4 (S.D.N.Y. Aug. 29, 2002). Mp3Board was a website which contained links to sites where users could download copyrighted music.

The plaintiff record companies sued Mp3Board for, among other things, contributory and vicarious copyright infringement. *Id.* at *1. On plaintiffs' motion for summary judgment on their copyright claims, the court found abundant evidence demonstrating the probability that Mp3Board's users were directly infringing the plaintiffs' copyrights: (a) Mp3Board admitted that its users were possibly infringing with the aid of its site; (b) Mp3Board admitted that it encouraged users to download and share music files and was aware that music files were probably infringing; (c) Mp3Board's principals testified that they were aware that some of Mp3Board's links connected to copyrighted works, and they assumed that those unauthorized copies were downloaded by users of the service through those links; and (d) there was evidence that Mp3Board personnel assisted users in obtaining unauthorized songs. *Id.* at *3. The Court also found that the structure of the site and the scale of operations gave rise to a "strong statistical inference" that users downloaded copyrighted music. *Id.* Nevertheless, the court declined to enter summary judgment in plaintiffs' favor since, by failing to provide direct evidence of direct infringement, plaintiffs had failed to eliminate all issues of material fact:

> [T]he record companies have not eliminated all issues of material fact by setting forth any direct evidence of infringement, such as user logs or other technical data showing the downloading of copyright and unauthorized files. At the summary judgment stage, the record companies cannot rely solely upon circumstantial evidence and admissions by Mp3Board officers that it is statistically "likely" that direct infringement occurred.

*Id.* at *3. The same reasoning applies here.

### B. Summary Judgment Is Improper Because Plaintiffs Failed to Establish that Users Infringed Plaintiffs' Copyrights Using LimeWire

In its opinion, the Court acknowledged authority, including the *Mp3Board* case, holding that purported evidence of the availability of unauthorized audio files and user requests for such files are insufficient to demonstrate direct infringement. Am. Order at 28. But the Court expressly distinguished the current case, on the mistaken belief that Plaintiffs had submitted "substantial direct and circumstantial evidence showing infringement by LimeWire users." *Id.*

("Plaintiffs, however, do not rely solely on evidence of 'requests' and 'availability' of the Recordings."). That was clear error.

In fact, the Plaintiffs provided no direct evidence of direct infringement by users of the LimeWire software. The Court correctly recognized that the relevant question was whether Plaintiffs had proven with undisputed facts that users "downloaded" infringing files, without authorization, using the LimeWire software. *See* Am. Order at 27. But it incorrectly believed that the evidence relied upon in its decision was direct evidence of such downloading. It was not.

- *The hard drive/packet capture data.* Even Plaintiffs did not claim that the hard drive/packet capture data provided direct evidence of direct infringement. Plaintiffs claimed only that the electronic evidence demonstrated that the audio files could be downloaded *by Plaintiffs* from LimeWire users. Pl. SUF ¶¶ 119, 120. As noted, the fact that the audio files were available for download from the computers of LimeWire users does not indicate whether those users acquired the files from an authorized source, how the users had previously obtained them, or whether users had used the LimeWire software to download them.

- *The hash analysis.* Plaintiffs also did not claim that their hash analysis provided direct evidence of direct infringement, nor could they. Kempe and Sehested opined only that multiple LimeWire users had identical audio files present on their computers. Kempe Decl. ¶ 6; Sehested Decl. ¶ 5. They presented no direct evidence that LimeWire users downloaded unauthorized audio files using the LimeWire software.

- *The Waterman Report.* Nor did the Waterman Report provide direct evidence of direct infringement. Even if one were to accept Dr. Waterman's analysis at face value, at most it demonstrates that: (1) there are abundant files on the computers of users of the Gnutella network that are available to be downloaded using Gnutella-compatible software, such as the LimeWire software; and (2) a significant percentage of requests

over the Gnutella network, by unidentified users using unidentified software, are for files not authorized to be distributed for free. Waterman Rep. ¶ 5.

Thus, the Court clearly erred when it misconstrued the nature and significance of the evidence submitted by Plaintiffs. Contrary to the Court's expressed understanding that the Plaintiffs had produced "substantial" direct evidence of direct infringement, the Plaintiffs did not provide any such evidence. Am. Order at 28. While the Court expressly believed that the Plaintiffs were not relying solely on evidence of "requests" and "availability" of the audio files (*id.*), that is precisely and exclusively the evidence upon which Plaintiffs relied.

### C. The Court Improperly Drew Inferences in Plaintiffs' Favor

Lacking any direct evidence of direct infringement, the Plaintiffs relied solely on circumstantial evidence. Based on their evidence purporting to show that (1) there are abundant files on the Gnutella network which can be downloaded using Gnutella-compatible software, such as the LimeWire software; (2) LimeWire users have relevant audio files on their computers; and (3) multiple users likely have identical files, as indicated by identical hash values, Plaintiffs asked the Court to conclude that users copied the files from each other using the LimeWire software. *See, e.g.*, 11/7/08 Plaintiffs' Reply Brief at 24. Such an inference in the moving party's favor is improper on a motion for summary judgment. *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (noting that the court is "not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments"); *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 58 (2d Cir. 1997) (on motion for summary judgment, court must construe "reasonable inferences in favor of the non-moving party," even in the face of "'implausible'" claims). The Court should have instead drawn all inferences in Defendants' favor; credited the possibility that users paid for the relevant audio files, obtained them in some other authorized manner, or obtained them using one of the myriad other software options besides LimeWire (*see supra* at Section II.A.2); denied summary

judgment of copyright infringement in Plaintiffs' favor; and granted Defendants' motions for summary judgment of noninfringement. Defendants respectfully request that the Court reconsider its rulings.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court should grant this Motion for Reconsideration, and upon reconsideration, should deny Plaintiffs' motion for summary judgment on their inducement, common law copyright, and unfair competition claims, and grant Defendants' motions of noninfringement.

Respectfully submitted,

Dated: May 26, 2010
New York, New York

By: /s/ Michael S. Sommer
Michael S. Sommer

Michael S. Sommer
Tonia Ouellette Klausner
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas
40th Floor
New York, New York 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
msommer@wsgr.com; tklausner@wsgr.com

Colleen Bal (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Tel: (415) 947-2000
Fax: (415) 947-2099
cbal@wsgr.com

*Attorneys for Defendants Lime Wire LLC, Lime Group LLC, Mark Gorton and M.J.G Lime Wire Family Limited Partnership*