UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, INC.; ELECTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE <br><br> [PROPOSED] PERMANENT INJUNCTION AGAINST LIME WIRE LLC; LIME GROUP LLC; AND MARK GORTON |

By Opinion and Order entered May 11, 2010, and amended on May 25, 2010 ("Order"), this Court found defendants Lime Group LLC, Lime Wire LLC, and Mark Gorton (collectively, "Lime Wire") liable for inducing copyright infringement on a "massive scale." (Order at 33.) The Court now enters a Permanent Injunction in favor of the Plaintiffs, and against Lime Wire pursuant to 17 U.S.C. § 502 and Federal Rule of Civil Procedure 65, and in accordance with the following terms.

## I. PERMANENT INJUNCTIVE RELIEF IS WARRANTED

In its Order, the Court held Lime Wire liable for inducement of copyright infringement, as well as for common law copyright infringement and unfair competition as to Plaintiffs' protected pre-1972 works. The evidence showed as a matter of law that:

- Lime Wire "intentionally encouraged direct infringement" by Lime Wire users. (Order at 29.)

- The LimeWire client software is used "overwhelmingly for infringement," and allows for infringement on a "massive scale." (*Id*. at 31, 33.)
- Lime Wire knew about "the substantial infringement being committed" by Lime Wire users. (*Id*. at 32.)
- Lime Wire marketed itself to Napster users, who were known copyright infringers, and promoted Lime Wire's infringing capabilities. (*Id*. at 33-34.)
- Lime Wire "actively assisted infringing users" in their infringement efforts and tested the LimeWire client software by searching for copyrighted material. (*Id*. at 35-36.)
- Lime Wire failed to implement any meaningful technological barriers or design choices aimed at diminishing infringement. (*Id*. at 38.)
- Lime Wire's business model depends on mass infringement, relying on a "massive user population generated by" the LimeWire software's "infringement-enabling features." (*Id*. at 37.)

The result of this and other acts evidencing Plaintiffs' intent has been infringement of Plaintiffs' works on a "massive scale." (*Id*. at 33.) Lime Wire has an "enormous user base." (*Id*. at 36.) In June of 2005, Lime Wire proclaimed itself the "industry standard" for peer-to-peer file-sharing, and estimated that more than 3 billion songs were downloaded through peer-to-peer file-sharing every month. (Plaintiffs' Statement of Undisputed Facts ("SUF") ¶ 90.) "[N]early all of the files shared and downloaded by LimeWire users are copyrighted, and not authorized for free distribution through LimeWire." (Order at 31-32.) Plaintiffs' evidence at summary judgment further showed that 98.8% of all download requests among LimeWire users are for unauthorized files, and many of those files contain one of Plaintiffs' protected works. (SUF ¶¶ 109-110.)

In the nearly two years since the parties filed their respective summary judgment motions, LimeWire has continued to be a tool of choice for rampant infringement of Plaintiffs' works. Since July 2008, the LimeWire client software has been downloaded from the

download.com website more than *50 million times*, bringing the total downloads of the client from just that one website – *i.e.*, exclusive of downloads from Lime Wire's own website - to more than 200 million (and counting). In short, Lime Wire's already enormous installed base has only gotten bigger in the last two years.

The LimeWire client software not only continues to be downloaded, but also continues to be used for the widespread infringements that Lime Wire intended to induce. Lime Wire is still in operation today, affording its user base unlimited access to the millions of unauthorized files available for download. Lime Wire's liability was established based on a subset of 30 Recordings, in accordance with Judge Lynch's instructions. (*See* Order at 5 n.7.) Every one of those 30 Recordings is still fully available for download through Lime Wire. (Declaration of Jillian Song ("Song Decl.") ¶ 4.) Plaintiffs also submitted evidence that hundreds of recordings currently on Billboard Magazine's charts of Top 40 hits for Country, Rock, Pop, Latin Pop, as well as the years 2008 and 2009 are also available for immediate download through the LimeWire System and Software. (Song Decl. ¶¶ 5-6.)

Based on this record of both proven intentional inducement of infringement, and continued inducement of infringement even after the Court found it liable, the evidence warrants injunctive relief for Plaintiffs. Indeed, in analogous cases where courts have found defendants liable on summary judgment for inducing infringement, the same courts have held that the plaintiff copyright owners are entitled to a permanent injunction, notwithstanding that further litigation (including on the issue of damages) remains. *See e.g., Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1241 (C.D. Cal. 2007) ("*Grokster Remand*"); *Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW (JCx) (Doc. No. 426) (C.D. Cal., May 20, 2010) (Declaration of Kelly Klaus ("Klaus Decl."), Ex. 2); *Arista Records, et. al. v. Usenet.com, Inc.*, No. 07-CV-8822 (HB) (Doc. No. 284) (S.D.N.Y., Oct. 8, 2009) (Klaus Decl., Ex. 1).[1]

---

[1] In the well-known cases involving two other of Lime Wire's predecessors – Napster and Aimster – the courts issued injunctions against the defendants even without a summary judgment

To obtain a permanent injunction, Plaintiffs must show:

> (1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Salinger v. Colting*, ____ F. 3d. _____, 2010 WL 1729126, at *7 (2d Cir. April 30, 2010) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Each of the four factors weighs in favor of a permanent injunction.

### A. Plaintiffs Have Suffered Irreparable Harm And Will Continue To Do So Absent An Injunction

Plaintiff's have suffered – and will continue to suffer – irreparable harm from Lime Wire's inducement of widespread infringement of their works. "Irreparable harm" is an "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999); *see also Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). As a direct result of Lime Wire's intentionally inducing widespread infringement, Plaintiffs are continuing to suffer at least three forms of harm judicially recognized to be irreparable.

*First*, Plaintiffs face irreparable harm because it is virtually certain that they will be entitled to an enormous damage award after trial that will far exceed Lime Wire's ability to pay. *See Grokster Remand*, 518 F. Supp. 2d at 1217 ("Because it is extremely unlikely that [defendants] will be able to compensate Plaintiffs monetarily for the infringements it has induced in the past, or the infringements it could induce in the future . . . Plaintiffs have and will continue to suffer irreparable harm."); *Aimster*, 334 F.3d at 655.

---

of liability. *See A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002) (affirming District Court's order to shut down the Napster service); *In re Aimster Copyright Litigation*, 334 F.3d 643, 656 (7th Cir. 2003) (affirming injunction against Aimster).

As in *Grokster* and *Aimster*, Plaintiffs have been and will be irreparably harmed because Lime Wire will most likely be liable for more in damages than it will ever be able to pay. *See Grokster Remand*, 518 F. Supp. 2d at 1217. As they are entitled to do, Plaintiffs seek statutory damages under the Copyright Act as a remedy for Lime Wire's unlawful conduct. (First Amended Complaint ¶¶ 74, 87, 99). Where the defendant's conduct is willful, the range of statutory damages runs from $750 to *$150,000*. *See* 17 U.S.C. § 504(a)(2)-(c). "[I]n order to prove willfulness, a plaintiff must show that the defendant knew or should have known that its conduct constituted copyright infringement." *Branch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359, 1364 (S.D.N.Y. 1991). Plaintiffs' uncontroverted evidence has proven "that LW intended to encourage infringement by distributing LimeWire" given in part "LW's awareness of substantial infringement by users"; "that LW knew that LimeWire users were committing copyright infringement"; and that "[t]he massive scale of infringement committed by LimeWire users, and LW's knowledge of that infringement, supports a finding that LW intended to induce infringement." (Order at 31-33.) This evidence, along with numerous other items detailed in the summary judgment record, shows Lime Wire almost certainly will be liable for statutory damages where the upward limit for each statutory award is $150,000. *See Grokster Remand*, 518 F. Supp. 2d at 1217 (noting the "potential relationship between inducement and a finding of willfulness").

Multiplied by the many thousands of works at issue—the other component in a calculation of statutory damages—it is clear that, as in *Grokster*, the amount of potential statutory damages at issue here "is so staggering" that it "would very probably be well beyond" Lime Wire's "anticipated resources." *Grokster Remand*, 518 F. Supp. 2d at 1217.

*Second*, Plaintiffs are being subjected to a different, but no less irreparable, type of injury from the nature of the infringement that Lime Wire has induced, specifically from the continued infringement of their works through Lime Wire's viral system. Plaintiffs have the exclusive right to reproduce and distribute their copyrighted works. 17 U.S.C. § 106. Even if a full damages award were somehow satisfied, Lime Wire's large-scale unauthorized distribution of

digital copies of Plaintiffs' copyrighted works will continue to facilitate generations of infringement. *See Grokster Remand*, 518 F. Supp. 2d at 1217. Each time an illegal copy of one of Plaintiffs' copyrighted works is downloaded through the LimeWire software, that copy may then be used to spawn countless derivative infringing copies. This inflicts exponential harm on Plaintiffs' exclusive rights. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072, 1073 n.2 (D. Ariz. 2006) (every user "who receives one of the copyrighted works [through the peer-to-peer service] is in turn capable of also transmitting perfect copies of the works. . . . Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright."). Because damages cannot address this continued vulnerability, Lime Wire's induced infringement causes irreparable harm. *See Forest City Daly Hous. Inc.*, 175 F.3d at 153 (harm that cannot be remedied by damages award is irreparable).

*Third*, Plaintiffs face irreparable harm because Lime Wire facilitates the unauthorized, free distribution of Plaintiffs' copyrighted works — precisely the same product that Plaintiffs pay millions to market and sell to consumers. *Salinger*, 2010 WL 1729126, at *9-10. "[T]he availability of free infringing copies of Plaintiffs' works" through Lime Wire "irreparably undermines the growing legitimate market for consumers to purchase access to the same works." *Fung*, No. CV 06-5578 SVW(JCx) at 3-4 (Klaus Decl., Ex. 2). As a result of Lime Wire's inducement, generations of potential purchasers of Plaintiffs' products have instead grown up accustomed to downloading their music for free. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928-29 (2005) ("digital distribution of copyrighted material threatens copyright holders as never before, because every copy is identical to the original, copying is easy, and many people (especially the young) use file-sharing software to download copyrighted works"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1017 (9th Cir. 2001) (citing "Napster's deleterious effect on the present and future digital download market"). That harm can never be remedied in money damages; an injunction must issue.

### B. Plaintiffs Have No Adequate Remedy At Law

Where, as here, the defendants will be unable to pay the likely award of damages following trial, the adequacy-of-legal-remedy analysis mirrors the irreparable harm inquiry. *Grokster Remand*, 518 F. Supp. 2d 1219-20. Although the Copyright Act provides that Plaintiffs must receive an award of statutory damages based on the infringing conduct in this case, 17 U.S.C. § 504(c), that remedy at law almost certainly will be inadequate to compensate Plaintiffs for the infringements of copyright that Lime Wire intentionally induced. Lime Wire's widespread dissemination of the LimeWire software has left Plaintiffs' copyrighted works vulnerable to massive and continuing infringement by millions upon millions of users. Moreover, while damages will be part of the appropriate remedy for past infringement, they cannot protect Plaintiffs against future infringements. Only a permanent injunction can do so.

### C. The Balance Of Hardships Is Wholly In Plaintiffs' Favor

With respect to the balance of hardships, the "massive scale" of infringement through the LimeWire client has caused great and irreparable injury to Plaintiffs, and any hardship to Lime Wire by the injunction is far outweighed by that injury. (Order at 33.) Lime Wire cannot be heard to complain of injury, when its business is based on profiting from the copyright infringement that Lime Wire intentionally induced. (*Id*. at 36.)

### D. The Public Interest Favors an Injunction

The injunction will not harm, but rather will serve, the public interest. The public interest is served by upholding copyright protections and, given the harm caused by Lime Wire, a permanent injunction is necessary to preserve the integrity of those protections.

For all the foregoing reasons, the permanent injunction entered herein is appropriate.

## II. TERMS OF THE PERMANENT INJUNCTION

### A. Definitions

For purposes of this Permanent Injunction, capitalized words and phrases not otherwise defined shall have the meanings set forth below:

(a) "Lime Wire" means Lime Group LLC, Lime Wire LLC, and Mark Gorton, and each of them, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, distributors, corporations, parents, subsidiaries, affiliates, successors, assigns, and all those persons in active concert or participation with each or any of them who receive actual notice of this Permanent Injunction.

(b) "LimeWire System and Software" means:

(i) Any and all versions of the software program that Lime Wire has distributed under the names "LimeWire," "LimeWire BASIC," "LimeWire Extended PRO" or "LimeWire PRO" or any other program of comparable functionality regardless of the trade name under which Lime Wire has distributed;

(ii) The computer hardware and servers operated by or on behalf of Lime Wire;

(iii) The limewire.com and limewire.org websites operated by or on behalf of Lime Wire; and

(c) And any other technological system operated by or on behalf of Lime Wire, and any conduct by or on behalf of Lime Wire enabling users to connect to and use computer networks to reproduce and distribute unauthorized copies of digital files.

(d) "LimeWire Software" refers only to the software programs distributed by Lime Wire as defined above in paragraph (b)(i).

(e) "Comparable System," "Comparable Software" and/or "Comparable System and Software" means

(i) any system or software that is substantially comparable to the LimeWire System and Software, including but not limited to FrostWire, Acquisition, BearFlix,

Cabos, Gnucleus/GnucDNA, Gtk-gnutella, KCeasy, MP3 Rocket, Phex, Poisoned, Shareaza, Symella, BitTorrent, uTorrent, Vuze/Azureus, BitComet, Transmission, Deluge, BitLord, KTorrent, eDonkey, eMule, aMule, MLDonkey, xMule, Ares Galaxy, MP2P, Manolito, isoHunt, or Piratebay, as those systems or software existed before or as of the date of this Permanent Injunction; and/or

(ii) any website, server, system, or software that has as a material purpose or a material use the unauthorized reproduction, distribution, communication to the public (whether by transmitting or making available), public performance, or other exploitation of any copyrighted files or works.

(f) "Copyrighted Works" means all copyrighted works (or portions thereof), whether now in existence or later created, in which any Plaintiff (including its parents, subsidiaries, affiliates, or distributed labels) owns or controls an exclusive right under Section 106 of the United States Copyright Act (17 U.S.C. § 106), or under state or common law.

(g) "Users" means any person or entity who or which uses the LimeWire System and Software, or any Comparable System and Software.

(h) "Legacy Users" means Users of LimeWire Software that was distributed prior to the date of this Permanent Injunction.

(i) "Legacy Software" means copies of the LimeWire Software in use by Legacy Users.

(j) "Copyright Filter" means a robust and secure means to exhaustively prevent Users of the LimeWire System and Software from using the LimeWire System and Software, and Users of any Comparable System and Software from using such Comparable System and Software, as applicable, to copy, reproduce, download, distribute, communicate to

the public (whether by transmitting or making available), upload, link to, transmit, publicly perform, or otherwise exploit any unauthorized or unlicensed audio or audio-visual Copyrighted Works.  Any such Copyright Filter must include the ability to filter both by text (i.e. artist and song title) and by the use of Fingerprinting Technology, as defined below.

   (k) "Fingerprinting Technology" refers to the most effective available means of content-recognition filtering based on recognizing the unique content of an underlying audio-visual work and detecting and preventing copying of that content no matter how the file containing the content was created (e.g. whether the file was ripped from a CD, DVD, or recorded from a radio or television, etc.), and which is available from commercial vendors such as Audible Magic.

  **B.** **Terms**

2. Lime Wire is permanently enjoined and restrained from infringing in any manner any copyright in any and all Copyrighted Works including without limitation by engaging in any of the following without written authority from the relevant Plaintiff:

   (a) copying, reproducing, downloading, distributing (which hereinafter shall include without limitation making a sound recording or work available for distribution by placing it in a computer file or folder that is accessible by others for downloading), communicating to the public, uploading, linking to, transmitting, publicly performing, or otherwise exploiting in any manner any of the Copyrighted Works; and

   (b) directly or indirectly enabling, facilitating, permitting, assisting, soliciting, encouraging or inducing any User to use the LimeWire System and Software or other Comparable System and/or Software

(i) to copy, reproduce, download, distribute, communicate to the public, upload, link to, transmit, publicly perform, or otherwise exploit in any manner any of the Copyrighted Works, or

(ii) to make available any of the Copyrighted Works for copying, reproduction, downloading, distributing, communicating to the public, uploading, linking to, transmitting, public performance, or any other exploitation.

(c) directly or indirectly operating or assisting in or supporting the operation of any computer server or website or distributing any software in any way related to the LimeWire System and Software, or any other Comparable System and Software that enables, facilitates, permits, assists, solicits, encourages, or induces the copying, reproduction, downloading, distributing, uploading, linking to, transmitting, public performance, or other exploitation of any of the Copyrighted Works.

(d) Lime Wire is further ordered to immediately cease and desist from displaying, or permitting to be displayed any advertising in, through or by means of the LimeWire Software, as well from displaying the source code for the LimeWire Software through the LimeWire System and Software or through any Comparable System and Software.

3. Lime Wire shall use all technologically possible means to immediately cease and desist the current infringement of the Copyrighted Works by Legacy Users through the LimeWire System and Software, and to prevent and inhibit future infringement of the Copyrighted Works by Legacy Users of the LimeWire System and Software, including without limitation by

(a) disabling the searching, downloading, uploading, file trading and/or file distribution functionality, and/or all functionality, of the Legacy Software;

(b) establishing default settings in the Legacy Software that block the sharing of unauthorized media files;

(c) providing all Users with a tool to uninstall the Legacy Software;

(d) including a Copyright Filter in the Legacy Software, including (to the extent necessary to comply with this Paragraph) creating a new version of the LimeWire System and Software that incorporates a Copyright Filter ("New Version"),

(e) before distributing any New Version, Lime Wire must obtain approval to do so from Plaintiffs and the Court. In order to obtain the necessary approvals, Lime Wire must provide the New Version to Plaintiffs and the Court, and Plaintiffs will report to the Court within 30 days of receipt of an operable New Version whether Plaintiffs consider the New Version to comply with the requirements of this Permanent Injunction. If Plaintiffs consider the New Version to violate any of the terms of this Permanent Injunction, Plaintiffs shall inform the Court of the reasons why; and

(f) if it is permitted to distribute a New Version, Lime Wire must use all reasonable lawful means to cause, encourage, persuade, and/or compel Legacy Users to upgrade from Legacy Software to the New Version.

4. Lime Wire shall give notice of this Permanent Injunction

(a) to each of Lime Wire's respective officers, agents, servants, employees, attorneys, principals, direct and indirect shareholders; and

(b) to all Users of the LimeWire System and Software, through any available means of communicating with Users, including but not limited to

(i) posting a message on the websites within the LimeWire System and Software giving notice of this injunction, and informing Users that it is illegal to upload and/or download unauthorized copies of copyrighted works;

(ii) sending the same message to any User who connects to the LimeWire System and Software;

(iii) emailing all of the Users of the LimeWire System and Software whose identities and e-mail addresses are known to Lime Wire; and

(c) to all persons with whom Lime Wire communicates regarding any actual or potential transfer (whether by sale, lease, license, assignment, conveyance, transfer without consideration, or otherwise) of any ownership interest in them or any interest in any of their significant assets (including without limitation any source code, object code, other technology, domain names, trademarks, brands, assets, or goodwill in any way related to the LimeWire System and Software); and to all successors, transferees, licensees, or other assignees, and all those persons in active concert or participation with each or any of them.

5. Lime Wire must file a report on its progress with the Court within 14 days of the entry of this Permanent Injunction. The required report must:

(a) certify that distribution, sales and advertising has stopped;

(b) identify what steps have been taken to comply with the requirements of Paragraph 2;

(c) quantify the precise effect of the identified steps on the ongoing infringement of the Copyrighted Works, including but not limited to identifying how many songs charting on the then-current Billboard Magazine Top 200 list are or remain available for download through the LimeWire System and Software; and

(d) identify what further steps are in the process of being made or will be made to combat ongoing infringement as required by Paragraph 2.

6. If Lime Wire (or any individual defendant) sells, leases, licenses, conveys, gives away, transfers or otherwise assigns all or any significant part of the business, equity, operations or assets of Lime Group LLC, Lime Wire LLC, or the Lime Wire System and Software (including without limitation any part of the source code, object code, other technology, domain names, trademarks, brands, assets, or goodwill in any way related to the LimeWire System and Software), it will require, as a condition of any such transaction, that each purchaser, lessee, or other transferee or assignee (each, a "Transferee") (a) submit to this Court's jurisdiction and venue and fully waive and relinquish any argument that venue or jurisdiction by this Court is improper or inconvenient, and (b) agree to be bound by the terms of this Permanent Injunction. Lime Wire shall not permit any such transaction to close unless and until the Court has entered such an order as to the Transferee.

7. Nothing in this Permanent Injunction shall limit the right of Plaintiffs to recover all moneys available under law on account of Lime Wire's violations of law, including without limitation all damages allowed under 17 U.S.C. § 504 for any and all infringements of Plaintiffs' copyrights for which Lime Wire is liable; all damages allowed under applicable state law; attorneys' fees, including without limitation attorneys' fees authorized under 17 U.S.C. § 505; and the costs of this suit.

8. Any person or entity found to be in violation of this Permanent Injunction shall be subject to all applicable penalties and punishments allowed by law, including without limitation for contempt of Court.

9. The Court shall maintain continuing jurisdiction over this action, including with respect to damages and costs, including attorneys' fees, for the purposes of enforcing this Permanent Injunction, for the purpose of entering final judgment against Lime Wire on the claims resolved by the Order, and for the purpose of resolving the issues and claims that remain open in the case.

IT IS SO ORDERED.

Dated: _____, 2010

                                        KIMBA M. WOOD
                                    United States District Judge

Dated: June 4, 2010                Respectfully submitted

                                      /s/ Kelly M. Klaus
                                      Kelly M. Klaus

                                Attorney for Plaintiffs
                                Munger, Tolles & Olson LLP
                              355 South Grand Avenue, 35th Floor
                                Los Angeles, CA 90071-1560
                                  (213) 683-9100
                                    (213) 687-3702 (Fax)
                                      Kelly.Klaus@mto.com