UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br>                               Plaintiffs,<br><br>                  v.<br><br>LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,<br><br>                               Defendants. | 06 Civ. 05936 (KMW)<br>ECF CASE |

**OPPOSITION TO DEFENDANTS LIME WIRE LLC, LIME GROUP LLC, AND MARK GORTON'S MOTION TO RECONSIDER THE COURT'S MAY 11, 2010 ORDER AS AMENDED ON MAY 25, 2010**

Glenn D. Pomerantz (*pro hac vice*)
Kelly M. Klaus (*pro hac vice*)
Melinda E. LeMoine (ML0930)
Jonathan H. Blavin (*pro hac vice*)
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100

*Attorneys for Plaintiffs*

June 9, 2010

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 5

A. Reconsideration Is An Extraordinary Remedy ................................................. 5

B. Defendants Do Not – And Cannot – Show Any Clear Error In The Court's Holding That There Was Uncontroverted Evidence Of Direct Infringement Of Plaintiffs' Copyrighted Works By LimeWire Users ........................................... 6

    1. The Court Properly Relied On Uncontroverted Evidence Of LimeWire Users Sharing And Downloading Sound Recordings Without Authorization ........................................................................................ 7

    2. The Court Correctly Relied On Plaintiffs' Hash Analysis As Evidence That LimeWire Users Unlawfully Downloaded Copyrighted Recordings From LimeWire ................................................................................... 10

    3. The Court Properly Cited Dr. Waterman's Report In Support Of The Substantial Evidence Of Direct Infringement By LimeWire Users ..... 11

    4. Judgments Obtained Against LimeWire Users Present Additional Uncontroverted Evidence of Direct Infringement ............................... 13

III. CONCLUSION ............................................................................................................... 14

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*A & M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ...................................................................................................6

*Arista Records, Inc. v. Mp3Board, Inc.*,
    No. 00 CIV. 4660(SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) .................................6

*Arista Records LLC v. Usenet.com, Inc.*,
    633 F. Supp. 2d 124 (S.D.N.Y. 2009)................................................................................ passim

*Atlantic Recording Corp. v. Howell*,
    554 F. Supp. 2d 976 (D. Ariz. 2008) .......................................................................................10

*Berk v. St. Vincent's Hosp. and Med. Ctr.*,
    380 F. Supp. 2d 334 (S.D.N.Y. 2005)..................................................................................5, 11

*BMG Music v. Gonzalez*,
    430 F.3d 888 (7th Cir. 2005) ....................................................................................................6

*Borochoff v. GlaxoSmithKline PLC*,
    No. 07 Civ. 5574(LLS), 2008 WL 3466400 (S.D.N.Y. Aug. 12, 2008) ...................................5

*Bravado Int'l Group Merchandising Services, Inc. v. Ninna, Inc.*,
    655 F. Supp. 2d 177 (E.D.N.Y. 2009) .....................................................................................13

*Caban Hernandez v. Philip Morris USA, Inc.*,
    486 F.3d 1 (1st Cir. 2007).........................................................................................................5

*Capitol Records, Inc. v. Thomas*,
    579 F. Supp. 2d 1210 (D. Minn. 2008)................................................................................9, 10

*Carney v. City and County of Denver*,
    534 F.3d 1269 (10th Cir. 2008) ................................................................................................5

*Casciani v. Nesbitt*,
    659 F. Supp. 2d 427 (W.D.N.Y. 2009) .....................................................................................5

*Columbia Pictures Industries, Inc. v. Fung*,
    No. CV 06-5578 SVW(JCx), 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009)................9, 10, 12

## TABLE OF AUTHORITIES

Page

*Elektra Entertainment Group Inc. v. Martin*,
    No. 07-0073-WS-B, 2007 WL 1975482 (S.D. Ala. July 2, 2007) ........................................ 13,14

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
    973 F.2d 155 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993) ........................................ 13

*In re Aimster Copyright Litigation*,
    334 F.3d 643 (7th Cir. 2003) ........................................................................................ 6, 9

*In re Health Mgmt. Sys. Inc. Sec. Litig.*,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000) ........................................................................... 5

*Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..................................................................................................... 6

*Microsoft Corp. v. Rechanik*,
    249 Fed. Appx. 476 (7th Cir. 2007) .............................................................................. 10

*Montanile v. Nat'l Broad. Co.*,
    216 F. Supp. 2d 341 (S.D.N.Y. 2002) ........................................................................... 5

*Motown Record Co. v. DePietro*,
    No. 04-CV-2246, 2007 WL 576284 (E.D. Pa. Feb. 16, 2007) ........................................ 6

*Olan Mills, Inc. v. Linn Photo Co.*,
    23 F.3d 1345 (8th Cir. 1994) ........................................................................................ 10

*Reed v. City of St. Charles, Mo.*,
    561 F.3d 788 (8th Cir. 2009) ........................................................................................ 6

*Scotto v. Almenas*,
    143 F.3d 105 (2d Cir. 1998) ......................................................................................... 6

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) ........................................................................................... 5

*Sony BMG Music Entertainment v. Lee*,
    No. CV 306-099, 2007 WL 1221313 (S.D. Ga. 2007) ................................................... 13

*Sony Music Entertainment Inc. v. Does 1-40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) ........................................................................... 6

*U2 Home Entm't, Inc. v. Fu Shun Wang*,
    482 F. Supp. 2d 314 (E.D.N.Y. 2007) ........................................................................... 10

## TABLE OF AUTHORITIES
(continued)

**Page**

*Universal City Studios Prods. LLLP v. Bigwood*,
 441 F. Supp. 2d 185 (D. Me. 2006) ...........................................................................................6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
 956 F.2d 1245 (2d Cir. 1992)......................................................................................................5

**STATUTES AND RULES**

17 U.S.C. § 106(1) .........................................................................................................................2, 9

17 U.S.C. § 106(3) .........................................................................................................................2, 9

I.  **INTRODUCTION**

Defendants' Motion for Reconsideration on the issue of direct infringement is as audacious as it is unfounded.[1] In its 58-page Opinion and Order holding Defendants liable as a matter of law for the inducement of copyright infringement, the Court found that LimeWire's entire business model was premised upon an "enormous user base" of "millions" committing copyright "infringement" on a "massive scale." (May 25, 2010 Amended Opinion & Order ("Order") at 32, 36-37.) This fact is so undeniable that Defendants' own internal documents openly acknowledge that *100%* of LimeWire users have engaged in some level of music piracy, and refer to 25% of LimeWire users as "hardcore pirates." (Ex. 59; Ex. 60 at LW DE 383421.[2]) Nonetheless, Defendants now have the temerity to argue that the Court committed "clear error" in reaching the unquestionably correct conclusion that at least *one* of Plaintiffs' copyrights has been directly infringed by at least *one* LimeWire user, which is all that the Court's granting of summary judgment required.

In fact, Plaintiffs' evidence was uncontroverted as to the direct infringement of far more than just a single copyrighted recording by a single LimeWire user. The Court found that Plaintiffs "submitted substantial direct and circumstantial evidence showing infringement by LimeWire users." (Order at 28.) That finding is supported by abundant evidence, and there is no conceivable legal universe in which the Court's making that finding was "clear error," as is required on a motion for reconsideration. Defendants' attempt to reargue this issue is based entirely on deliberately ignoring or falsely characterizing the evidence that Plaintiffs submitted:

---

[1] This motion was filed by Defendants Lime Wire LLC, Lime Group LLC and Mark Gorton ("Mot."), all of whom have been adjudicated liable for intentionally inducing the infringement of Plaintiffs' copyrighted sound recordings and for the analogous state law violations that apply to Plaintiffs' pre-1972 recordings.

[2] Documents (or excerpts) cited herein ("Ex. _") are contained in Volumes I - XIV of the Exhibits to the Declarations of Katherine B. Forrest. Excerpts from deposition testimony ("Tr. _") and Declarations ("Decl. _") cited herein are arranged alphabetically by the witness or expert's last name and are contained in Volumes VI, VII and X, respectively, of the Exhibits to the Forrest Declarations. References to Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, dated July 18, 2008, and Statement of Additional Material Facts, dated September 26, 2008, are cited as "SUF ¶ _."

*"[T]he evidence demonstrates that LimeWire users employed LimeWire to share and download the Recordings without authorization."* (Order at 27.) The Court's consideration of this Motion can start – and end – with the uncontroverted evidence that supported this finding. Plaintiffs submitted hard drives containing copies of more than 3,000 copyrighted sound recordings at issue in this litigation that were downloaded from the files of LimeWire users. (SUF ¶ 119; RC 00001609; RC 00004264; RC 00004270; RC 00004271; RC 00004273.) While Defendants try to pretend otherwise, Plaintiffs submitted along with the hard drives a declaration from Katherine Forrest that verified and explained their contents. (*Compare* Mot. at 4 ("Plaintiffs, however, did not submit any declarations, or provide any explanations in their briefing, regarding the purported significance of this data.") *with* the November 7, 2008 Declaration of Katherine B. Forrest in Reply to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Evidentiary Motions ("11/07/08 Forrest Decl.") ¶¶ 3-4.) Plaintiffs also submitted declarations from three different investigators, establishing that they directly downloaded from LimeWire users the 30 "Recordings" that were the basis for Plaintiffs' summary judgment motion. (Sehested (Vol. X) Decl. ¶¶ 4-6; Kempe (Vol. X) Decl. ¶¶ 4-6; Minarovich (Vol. XIII) Decl. ¶¶ 3-4.) Defendants cannot create a fact issue by ignoring record evidence that belies their attorney arguments.

Defendants disingenuously claim that this uncontroverted evidence of downloading establishes nothing, because the people doing the *downloading* were Plaintiffs' lawyers or investigators, and Plaintiffs' agents cannot violate the exclusive right of *reproduction*. (*See* Mot. at 4.) In addition to other deficiencies, this argument ignores the fact that, in order for someone to have downloaded the recording, a LimeWire user first had to *upload* that recording – and the uploading, upon subsequent transmission to the downloader, indisputably violates Plaintiffs' exclusive right of *distribution*, 17 U.S.C. § 106(3), regardless of whether the download is made by a lawyer for Plaintiffs or a college student sitting in a dorm room. Moreover, it is settled law that the *downloading* of a work by a copyright owner's agent is legally "unauthorized" and independently violates the exclusive right of *reproduction*, 17 U.S.C. § 106(1). *See Arista*

- 2 -

*Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 150 & n.16 (S.D.N.Y. 2009) (collecting multiple cases on this point). Defendants cannot create a fact issue by ignoring evidence and legal authority that conclusively establish the direct infringement of Plaintiffs' copyrights.

The uncontroverted evidence in the hard drives, the Forrest Declaration, and Plaintiffs' investigators' declarations end this Motion. But they are hardly the only pieces of evidence supporting the uncontroverted fact that LimeWire users directly infringed Plaintiffs' copyrights:

"***Based on a hash-based analysis, it is clear that copyrighted digital recordings downloaded through LimeWire by Plaintiffs' investigators, were previously digitally shared and downloaded by other LimeWire users***." (Order at 27 n.21.) The evidence was undisputed that Plaintiffs' investigators found and submitted declarations concerning multiple LimeWire users having recording files that contained exactly the same unique "hash" identifiers. (Kempe (Vol. X) Decl. ¶ 6 & Ex. 2; Sehested (Vol. X) Decl. ¶ 6 & Ex. 1.) The uncontroverted evidence established that it was all but an absolute certainty that the reason two different LimeWire users would have files with identical hashes is that at least one (if not both) of them used *LimeWire* – not someone else's software, but *LimeWire* – to copy the file. (Kempe (Vol. X) Decl. ¶ 6 & n.1.) Defendants assert "clear error" in the Court's crediting of this uncontroverted evidence by asserting that the Court was required to credit any alternative explanation – no matter how remote or improbable – as to how two different LimeWire users could have obtained files with the same hash values. (Mot. at 5.) Nonsense. The non-moving party on summary judgment gets the benefit of *reasonable* inferences, not fanciful ones. The chances that some cause other than copying with LimeWire's software explains why two users have the same hash are one in $9.22337204 \times 10^{18}$ (1,000,000,000,000,000,000, or *one quintillion*). (Sehested (Vol. X) Decl. ¶ 5 & n.1; Kempe (Vol. X) Decl. ¶ 6 & n.1.) The odds underlying Defendants' "alternative" explanation only increased exponentially from there, because Plaintiffs did not submit evidence of two identical hashes but evidence of 30 identical sets of hashes across LimeWire users. This was further uncontroverted evidence of direct infringement.

***"The report from Plaintiffs' expert, Dr. Richard Waterman, also supports a finding of direct infringement."***  (Order at 28.)  Dr. Waterman concluded that 98.8% of the files requested through LimeWire, and approximately 93% of the files available on LimeWire, are copyrighted content unauthorized for free distribution, and that 43.6% of the files available on LimeWire are copies of Plaintiffs' recordings – none of which LimeWire or any of its users is authorized to distribute or reproduce.  (Waterman (Vol. VII) Report at 2-3, 7-8.)  Dr. Waterman's study at a minimum "supported" the other uncontroverted evidence of direct infringement.  Defendants claim that it was clear error for the Court to so conclude, because it is theoretically possible that, of the billions and billions of searches through LimeWire, the 98.8% that were for unauthorized content did not result in a single download of Plaintiffs' works, despite the fact that such works constitute nearly half of the content available on LimeWire.  Once again, Defendants' argument rests on the idea that the Court had to give them the benefit of any theoretically possible inference.  Defendants' proposed inferences are in no way reasonable, and are contradicted by, *inter alia*, internal Lime Wire documents conceding that *100%* of the LimeWire user base has engaged in some level of direct infringement.

***"Plaintiffs have sued more than 6,000 LimeWire users for direct copyright infringement.  They have obtained judgments against more than 700 users and settled claims against almost 4,000 users."***  (Order at 26 n.20.)  Plaintiffs submitted uncontroverted evidence consisting of 35 of these judgments, which collectively included irrefutable findings of direct infringement of the 30 of the Recordings at issue on the motions.  (Coggon (Vol. X) Decl. ¶¶ 4-5; Ex. 497.)  These judgments provide further indisputable proof of direct infringement.  Defendants, therefore, ignore them.  Once again, pretending that evidence does not exist does not create a disputed issue of fact.

The Court properly relied on this substantial evidence of direct infringement in holding Defendants liable for secondary copyright infringement.  Defendants' Motion for Reconsideration should be denied.

## II.   ARGUMENT

### A.   Reconsideration Is An Extraordinary Remedy

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  The "major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Borochoff v. GlaxoSmithKline PLC*, No. 07 Civ. 5574(LLS), 2008 WL 3466400, at *1 (S.D.N.Y. Aug. 12, 2008) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 C. Wright, A. Miller & E. Cooper, Fed. Practice & Procedure § 4478 at 790)).  "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

As noted in the Introduction, Defendants argue that the Court made "manifest errors" in its direct infringement analysis by failing to credit every single claimed "ambiguit[y] and inference[]" in the "light most favorable" to Defendants. (Mot. at 7, 10 (insisting Court was required to draw "*all* inferences in Defendants' favor") (emphasis added).)  That is not and never has been the law.  A party cannot "successfully oppose summary judgment on the basis of an *unreasonable view of the facts*." *Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (emphasis added); *see also Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 434 (W.D.N.Y. 2009) (summary judgment standard "does not simply require the court to draw *all* inferences in the nonmovant's favor, but all *reasonable* inferences.").[3]  As the Court put it:

---

[3] *See also, e.g., Carney v. City and County of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) ("Although our summary judgment standard requires us to view the facts in the light most favorable to the non-moving party, it does not require us to make unreasonable inferences in favor of the non-moving party") (internal quotation marks and alterations omitted); *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007) (on a motion for summary judgment, "we must draw all reasonable inferences in the light most favorable to the nonmovant.

- 5 -

the "non-moving party may not rely on 'conclusory allegations or unsubstantiated speculation,'" *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), or on mere denials or unsupported alternative explanations of its conduct. . . . . The non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986), and must set forth 'significant, probative evidence' on which a reasonable factfinder could decide in its favor." (Order at 25.) Defendants' Motion is premised upon an entirely unreasonable and speculative view of the facts and does not come close to satisfying the high bar for reconsideration.

> **B.      Defendants Do Not – And Cannot – Show Any Clear Error In The Court's Holding That There Was Uncontroverted Evidence Of Direct Infringement Of Plaintiffs' Copyrighted Works By LimeWire Users**

It is clear beyond cavil that the "use of P2P systems to download and distribute copyrighted music . . . constitute[s] copyright infringement." *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565-66 (S.D.N.Y. 2004); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013-14 (9th Cir. 2001); *BMG Music v. Gonzalez*, 430 F.3d 888, 889 (7th Cir. 2005); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003).[4]

---

That does not mean, however, that we ought to draw *unreasonable* inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective") (citation omitted); *Reed v. City of St. Charles, Mo.,* 561 F.3d 788, 791 (8th Cir. 2009) ("Although a district court must rule on a motion for summary judgment after viewing the facts in the light most favorable to the non-moving party, it is not required to accept unreasonable inferences or sheer speculation as fact") (internal quotation marks omitted).

[4] Given the uncontroverted evidence of actual transfer of works using the LimeWire software, the Court did not have to decide whether making copyrighted sound recordings available for download, without proof of actual dissemination, is direct infringement of the distribution right, as several courts have held it is. *See Universal City Studios Prods. LLLP v. Bigwood*, 441 F. Supp. 2d 185, 190-91 (D. Me. 2006) ("by using KaZaA to make copies of the Motion Pictures available to thousands of people over the internet, Defendant violated Plaintiffs' exclusive right to distribute the Motion Pictures"); *Motown Record Co. v. DePietro*, No. 04-CV-2246, 2007 U.S. Dist. LEXIS 11626, at *12, 2007 WL 576284, at *3 (E.D. Pa. Feb. 16, 2007). The Court acknowledged authority to the contrary – including *Arista Records, Inc. v. Mp3Board, Inc*., No. 00 CIV. 4660(SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002), on which Defendants again rely extensively in this Motion – but ultimately did not have to take a position on this issue because of the overwhelming and uncontroverted evidence of actual transfers using the LimeWire software. (*See* Order at 28.)

The Court found as a matter of uncontroverted fact "that Lime Wire users have directly infringed Plaintiffs' copyrights." (Order at 28.) This finding is supported by abundant evidence, and Defendants' arguments to the contrary either ignore or mischaracterize that evidence.

### 1. The Court Properly Relied On Uncontroverted Evidence Of LimeWire Users Sharing And Downloading Sound Recordings Without Authorization

The Court properly relied on uncontroverted "evidence demonstrat[ing] that LimeWire users employed LimeWire to share and download the Recordings without authorization." (Order at 27.) As the Court noted in its Order, this evidence included hard drives submitted to the Court containing verified copies of 3,000 recordings at issue in this litigation downloaded from LimeWire users, in addition to multiple declarations from Plaintiffs' investigators who testified that they personally downloaded from LimeWire users copies of the 30 sound recordings at issue during the summary judgment phase. (*See* Order at 27 & n.21 (noting in addition to hard drives "documentation" showing that "LimeWire users share and download unauthorized digital copies of the Recordings through LimeWire" and evidence of "copyrighted digital recordings downloaded through LimeWire by Plaintiffs' investigators.").)

Defendants say nothing about these declarations and instead focus on the purportedly "incomprehensible" nature of the hard drive evidence. (Mot. at 4.) This argument is a red herring. Contrary to Defendants' statement that there are no "declarations" or "explanations" regarding this data, *id*., the November 7, 2008 Declaration of Katherine Forrest describes precisely what this data is, stating that the "electronic storage media" contain "copyrighted sound recordings listed in the revised Exhibits A and B to the First Amended Complaint downloaded from a LimeWire user," and that the data is "verified by the 'DownloadLog.txt' and 'RequestLog.txt' or 'packet capture.txt' file(s) accompanying each downloaded sound recording." (11/7/08 Forrest Decl. ¶¶ 3-4.) The meaning of these accompanying files is clear on their face. The file "DownloadLog.txt" for example, states "Download Info For: norah jones - Cold Cold Heart.mp3," and lists the "Server" as "LimeWire/4.9.37."

But more importantly, the declarations of Thomas Sehested, Andrew Kempe, and Siobhain Minarovich, each establish with unquestionable clarity that the *30* sound recordings at issue in the summary judgment stage were *downloaded directly* from LimeWire users.  Mr. Sehested of DtecNet Software ApS and Mr. Kempe of MediaSentry, both providers of online anti-piracy software and services, testified that they downloaded from LimeWire users copies of the 30 song recordings listed in Attachment A to Plaintiffs' July 18, 2008 Statement of Undisputed Material Facts.  (Sehested (Vol. X) Decl. ¶¶ 4-6; Kempe (Vol. X) Decl. ¶¶ 4-6; SUF ¶¶ 120, 712.)  Likewise, Siobhain Minarovich, a legal assistant at Cravath, Swaine & Moore, testified that using LimeWire she "downloaded" directly from LimeWire users "each of the 30 copyrighted sound recordings listed in Attachment A."  (Minarovich (Vol. XIII) Decl. ¶¶ 3-4.)  As Defendants themselves have suggested, evidence that "one individual used LimeWire to request the 30 songs at issue, find those 30 songs," and "download those 30 songs" would be sufficient to establish direct infringement.  (Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment at 9.)  That is precisely what Plaintiffs submitted and what Defendants now ignore.  Even if the Court were to disregard the submitted hard drive evidence, the Sehested, Kempe, and Minarovich declarations alone constitute uncontroverted, clear evidence of unauthorized sharing and downloading of copyrighted sound recordings through the LimeWire service.[5]

Defendants nonetheless advance the meritless contention that direct infringement liability cannot exist because the individuals doing the *downloading* were Plaintiffs' lawyers or investigators, and Plaintiffs' agents cannot violate the exclusive right of *reproduction*.  (*See* Mot. at 4.)  Defendants entirely ignore that in order for someone to have downloaded the recording, a LimeWire user had to *upload* that recording – and the uploading indisputably violates Plaintiffs'

---

[5] Indeed, Greg Bildson, Lime Wire's Chief Technology Officer, had "no doubt that all these 30 works . . . have been infringed using LimeWire." (Bildson 9/10/08 Decl. ¶ 18; *see* SUF ¶ 713.) The Declaration of Gregory L. Bildson was submitted as Exhibit 1 to the Declaration of Katherine B. Forrest, Dated December 5, 2008, in Opposition to Defendants' Motion to Strike the Bildson Declaration, for a Protective Order and for a Stay ("Bildson Decl. 9/10/08 ¶ __").

exclusive right of *distribution*, 17 U.S.C. § 106(3), regardless of who downloaded the work. Indeed, the Court premised its finding of direct infringement on both the "*shar[ing] and download[ing]*" of "unauthorized digital copies of the Recordings through LimeWire." (Order at 27.) The "acts of uploading and downloading are each independent grounds of copyright infringement liability." *Columbia Pictures Industries, Inc. v. Fung*, No. CV 06-5578 SVW(JCx), 2009 WL 6355911, at *8 (C.D. Cal. Dec. 21, 2009); *see also Aimster*, 334 F.3d at 645 ("swap[ping] computer files containing popular music . . . involves making and transmitting a digital copy of the music" which "infringes copyright"). The LimeWire user who "[u]pload[s] a copyrighted content file to other users . . . violates the copyright holder's § 106(3) *distribution* right" upon the subsequent transmission of that file to the downloader. *Fung*, 2009 WL 6355911, at *8 (emphasis added). By "provid[ing] the copyrighted works for copying and plac[ing] them on a network specifically designed for easy, unauthorized copying," the LimeWire user directly infringes the "distribution" right when that file is transferred to another user. *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1216 (D. Minn. 2008).

Moreover, it is well settled that the *downloading* of a work violates the exclusive right of *reproduction*, 17 U.S.C. § 106(1), *Fung*, 2009 WL 6355911, at *8, even if that download is by a copyright owner's agent. In *Usenet.com*, for example, the major record companies brought suit against the defendants for widespread infringement of their copyrights through Defendants' "USENET" network of computers. Similar to the Court's ruling here, the *Usenet* court held that the "undisputed facts establish that Defendants' subscribers have committed direct infringement of the Plaintiffs' *exclusive right of reproduction* by downloading copies of Plaintiffs' works from Defendants' service . . . ." *Id.* at 149 (emphasis added). In so holding, the court relied in part on "direct evidence from [the plaintiffs'] forensic investigators [including Mr. Sehested] of downloads of Plaintiffs' copyrighted works from Defendants' service." *Id.* at 150.

The court rejected as "without merit" the argument that the investigators' "downloads are not proof of unauthorized copying," noting that "[c]ourts routinely base findings of infringement

- 9 -

on the actions of plaintiffs' investigators." *Id*. at 150 at n.16.[6]  Because the "recording companies obviously did not intend to license MediaSentry" or other agents to "authorize distribution or to reproduce copies of their works," as the "investigator's assignment" is "part of [the recording companies'] attempt to stop . . . infringement," the "copies obtained by" such agents "are unauthorized" and constitute direct infringement.  *Howell*, 554 F. Supp. 2d at 985.

### 2. The Court Correctly Relied On Plaintiffs' Hash Analysis As Evidence That LimeWire Users Unlawfully Downloaded Copyrighted Recordings From LimeWire

In support of its holding of direct infringement, the Court properly found, based on Plaintiffs' "hash" analysis, that "copyrighted digital recordings downloaded through LimeWire by Plaintiffs' investigators, were *previously digitally shared and downloaded* by other LimeWire users."  (Order at 27 n.21 (emphasis added).)  Plaintiffs' hash analysis constitutes an entirely independent basis supporting the Court's finding that the evidence of direct infringement is undisputed.  Plaintiffs submitted uncontroverted evidence showing that their investigators found multiple LimeWire users possessing recording files that contained exactly the same unique "hash" identifiers.  (Kempe (Vol. X) Decl. ¶ 6 & Ex. 2; Sehested (Vol. X) Decl. ¶ 6 & Ex. 1.)  This evidence established that the probability of two files having the same SHA-1 hash (the hash used by LimeWire) through any means *other* than directly copying that file via LimeWire is $2^{63}$, or one in $9.22337204 \times 10^{18}$ (1,000,000,000,000,000,000, or one quintillion); in other words, an infinitely small possibility.  (Sehested (Vol. X) Decl. ¶ 5 & n.1; Kempe (Vol. X) Decl. ¶ 6 & n.1; *see also* SUF ¶¶ 122, 712.)  The odds increased exponentially from there because Plaintiffs submitted not just two, but *30* identical sets of hashes across LimeWire users.

Despite these overwhelming figures, Defendants assert that the Court committed "clear error" because it was required to credit any alternative explanation – no matter how statistically

---

[6] Citing *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 317-18 (E.D.N.Y. 2007); *Microsoft Corp. v. Rechanik*, 249 Fed. Appx. 476, 478 (7th Cir. 2007); *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1347-48 (8th Cir. 1994); *Thomas*, 579 F. Supp. 2d at 1215; *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 978 (D. Ariz. 2008)).

improbable – as to how two different LimeWire users could have obtained files with the same hash identifiers, such as users "obtain[ing] it from the same, non-P2P source." (Mot. at 5.) This is meritless. As established, Defendants may only rely on *reasonable* factual inferences, not any far-fetched theory Defendants can concoct in opposing summary judgment. *Berk*, 380 F. Supp. 2d at 342. Given the near mathematical impossibility that Defendants' alternative explanations have any basis in reality, the Court acted well within its discretion in rejecting them as insufficient to withstand summary judgment.

Moreover, as demonstrated in the previous section, direct infringement liability exists for violation of the distribution and reproduction rights *irrespective* of whether LimeWire users lawfully acquired the sound recordings that they subsequently shared and downloaded through LimeWire. Thus, even if Defendants' argument had any merit, which it plainly does not, it would not demonstrate the absence of direct infringement liability for the *subsequent* sharing and downloading of files through LimeWire *after* those files were acquired.

### 3. The Court Properly Cited Dr. Waterman's Report In Support Of The Substantial Evidence Of Direct Infringement By LimeWire Users

The Court correctly held that the report from Plaintiffs' expert, Dr. Richard Waterman, "supports" the "substantial direct and circumstantial evidence showing infringement by LimeWire users" and "provides context as to the scope of infringement." (Order at 28.) As the Court noted, Dr. Waterman concluded that approximately 93% of the files available on LimeWire were protected or highly likely to be protected by copyright, 43.6% of the files are from Plaintiffs or their affiliates, and that 98.8% of the files requested for download through LimeWire are copyright protected and not authorized for free distribution. (*Id.*; *see also* SUF ¶¶ 108-109; Waterman (Vol. VII) Report at 2-3, 7-8.) Dr. Waterman concluded that based upon these statistical facts, the "vast majority of file transfers *executed* by the LimeWire client," *not* simply those files requested, "are for infringing files." (Waterman (Vol. VII) Report at 9 (emphasis added).)

Defendants nonetheless argue that it was "clear error" for the Court to rely on Dr. Waterman's analysis because it purportedly does not show "actual download activity using LimeWire" of Plaintiffs' copyrighted works. (Mot. at 6, 9.) In other words, Defendants contend that although nearly all (98.8%) of the billions and billions of searches through LimeWire are for unauthorized copyrighted content, such searches have not resulted in a single download of Plaintiffs' works, which constitute nearly *half* of the content on LimeWire.

Again, Defendants' argument is premised on a completely unreasonable view of the facts, and is contradicted by both common sense and the evidentiary record. Dr. Waterman's analysis demonstrates that it is overwhelmingly the case that LimeWire users repeatedly request and download unauthorized copyrighted content from LimeWire, including from Plaintiffs. Indeed, Defendants' own documents reveal that they themselves do not believe this absurd position. In several internal documents, Defendants acknowledge that 100% of the LimeWire user base has engaged in *some* level of direct infringement. (SUF ¶¶ 135, 445-446, 541; Ex. 59; Ex. 60 at LW DE 383421; *see also* Ex. 61 at LW DE 1932841-42.)

Finally, as the Court noted in its Order, several courts have found similar statistical analyses prepared by Dr. Waterman to be highly probative on the question of direct infringement. (Order at 7 n.8.) *See Fung*, 2009 WL 6355911, at *8 (in discussing direct infringement noting that "Plaintiffs' expert Richard Waterman conducted a study showing that more than 95% of files available through Defendants' websites are copyrighted or are highly likely to be copyrighted. . . . [S]uch overwhelming statistical evidence is sufficient to establish that Defendants' websites allowed third party users to access copyrighted material, and that users of Defendants' websites made copyrighted material available for others to access"); *Usenet.com*, 633 F. Supp. 2d at 131 (citing Waterman finding that "over 94% of all content files . . . were found to be infringing or highly likely to be infringing" in support of proposition that "[t]here can be no dispute that Defendants' services were used overwhelmingly for copyright infringement").

The Court plainly made no "clear error" in concluding that Dr. Waterman's study "supported" the other uncontroverted evidence of direct infringement.

### 4. Judgments Obtained Against LimeWire Users Present Additional Uncontroverted Evidence of Direct Infringement

In addition to the substantial evidence of direct infringement discussed above, Defendants also disregard the record evidence of hundreds of judgments obtained by Plaintiffs against individual LimeWire users for their direct infringement of Plaintiffs' copyrighted recordings, including the 30 works at issue in the summary judgment phase of the litigation. These judgments provide additional, undisputed evidence of direct infringement by LimeWire users.

As the Court noted in its Order, "Plaintiffs have sued more than 6,000 LimeWire users for direct copyright infringement. They have obtained judgments against more than 700 users and settled claims against almost 4,000 users." (Order at 26 n.20 (citing Coggon (Vol. X) Decl. ¶ 4); *see also* SUF ¶¶ 714-715; Ex. 497 (attaching various publicly filed judgments).) Of these judgments, Plaintiffs have submitted 35 of them to the Court which include irrefutable findings of direct infringement of the 30 Recordings at issue on the motions. (Coggon (Vol. X) Decl. ¶ 5; Ex. 497.)

By way of these judgments, LimeWire users, either by stipulation or default, have admitted to their direct infringement of Plaintiffs' copyrighted works. *See, e.g., Bravado Int'l Group Merchandising Services, Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) ("When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability") (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993)); *Sony BMG Music Entertainment v. Lee*, No. CV 306-099, 2007 WL 1221313, at *1 (S.D. Ga. April 23, 2007) ("According to the complaint, Defendant used an online media distribution system to copy and distribute five copyrighted sound recordings owned by Plaintiffs. . . . These admitted facts [by default] constitute direct copyright infringement"); *Elektra Entertainment Group Inc. v. Martin*, No. 07-0073-WS-B, 2007 WL 1975482, at *2 (S.D. Ala. July 2, 2007)

("These facts, which are deemed admitted by virtue of Martin's default, are sufficiently detailed and specific to give rise to a cognizable claim for direct copyright infringement").

These admissions constitute further indisputable evidence of direct infringement, providing an additional, independent basis for the Court's ruling. *See Usenet.com*, 633 F. Supp. 2d at 150 (finding direct infringement where users "admitted to downloading certain of Plaintiffs' works from Defendants' service").

### III.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Reconsideration.

Dated: June 9, 2010
Los Angeles, CA

Respectfully submitted

*/s/ Kelly M. Klaus*
Kelly M. Klaus

Attorney for Plaintiffs
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100
(213) 687-3702 (Fax)