UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.,<br><br>        Plaintiffs,<br><br>      v.<br><br>LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,<br><br>        Defendants. | 06 Civ. 05936 (KMW)<br>ECF CASE |

**OPPOSITION TO MOTION FOR RECONSIDERATION OF MAY 11, 2010 ORDER AS AMENDED ON MAY 25, 2010 FILED BY LIME GROUP, LLC AND MARK GORTON**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine (ML0930)
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson, LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100

*Attorneys for Plaintiffs*

June 9, 2010

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 3

    A. Lime Group And Gorton Fail To Meet Their Heavy Burden To Justify Reconsideration. 3

    B. Defendants' Motion Ignores the Court's Application of The Second Circuit's Controlling Test For Corporate And Individual Liability...................................................... 5

    C. Lime Group And Gorton's Remaining Arguments For Reconsideration Are Meritless .... 8

        1. The Court Found A Financial Benefit Based On All Defendants' Significant Financial Interests In Infringing Activity, *Not* Based On Mere Status As Owners Of Lime Wire ........................................................................................................................ 8

        2. Lime Group Controlled Ownership Of Lime Wire And Gorton Owned Them Both..... 9

    D. The Court Correctly Considered And Relied On The Undisputed Evidence That Gorton Ran Lime Group And Lime Wire As One Company ........................................................ 12

III. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Cass County Music Co. v. Khalifa*,
   914 F. Supp. 30 (N.D.N.Y. 1996) .................................................................................. 11

*Cobalt Multifamily Investors I, LLC v. Shapiro*,
   No. Civ. 6468(KMW)(MHD), 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009) ................... 3

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*,
   749 F.2d 154 (3d Cir. 1984) ............................................................................................ 6

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ....................................................................................... 8, 10

*Gershwin Publ'g Co. v. Columbia Artists Mgmt., Inc.*,
   443 F.2d 1159 (2d Cir. 1971) .................................................................................... 8, 10

*Gross v. Van Dyk Gravure Co.*,
   230 F. 412 (2d Cir. 1916) ................................................................................................ 5

*In re Health Mgmt. Sys. Inc. Sec. Litig.*,
   113 F. Supp. 2d 613 (S.D.N.Y. 2000) .............................................................................. 3

*JPMorgan Chase Bank v. Cook*,
   322 F. Supp. 2d 353 (S.D.N.Y. 2004) ........................................................................ 3, 4

*Little Mole Music v. Spike Investment, Inc.*,
   720 F. Supp. 751 (W.D. Mo. 1989) ................................................................................. 6

*Montanile v. Nat'l Broad. Co.*,
   216 F. Supp. 2d 341 (S.D.N.Y. 2002) .............................................................................. 3

*Nieves v. New York City Police Dep't.*,
   No. 07 Civ. 5751(SAS), 2010 WL 2010879, at *2 (S.D.N.Y. May 18, 2010) ................... 3

*Playboy Enters., Inc. v. Webbworld, Inc.*,
   991 F. Supp. 543 (N.D. Tex. 1997) ................................................................................ 10

*Playboy Enters., Inc. v. Webbworld, Inc.*,
   168 F.3d 486 (5th Cir. 1999) .......................................................................................... 11

# TABLE OF AUTHORITIES
## (continued)

Page

*RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*,
   845 F.2d 773 (8th Cir. 1988) ................................................................................................. 6

*Samet & Wells, Inc. v. Shalom Toy Co.*,
   429 F. Supp. 895 (E.D.N.Y. 1977) ......................................................................................... 6

*Samet & Wells, Inc. v. Shalom Toy Co.*,
   578 F.2d 1369 (2d Cir. 1978)................................................................................................. 6

*Shamis v. Ambassador Factors Corp.*,
   187 F.R.D. 148 (S.D.N.Y. 1999) ............................................................................................ 3

*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
   316 F.2d 304 (2d Cir. 1963)............................................................................................. 8, 10

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
   118 F.3d 955 (2d Cir. 1997)........................................................................................... 4, 8, 9

*Sygma Photo News, Inc. v High Society Magazine, Inc.*,
   778 F.2d 89  (2d Cir. 1985).......................................................................................... passim

*Transgo, Inc. v. AJAC Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1985) ................................................................................................ 6

*United States v. BestFoods*,
   524 U.S. 51 (1998).................................................................................................................. 6

**OTHER AUTHORITIES**

*Goldstein on Copyright*, § 8.2 at 8:25 (3d ed. 2005) ..................................................................... 11

I.      **INTRODUCTION**

The Court's Opinion and Order held Mark Gorton and Lime Group LLC (herein "Defendants") liable along with Lime Wire LLC under the alternative tests of the Second Circuit's longstanding standard for joint and several copyright liability:

> All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers.

*Sygma Photo News, Inc. v High Society Magazine, Inc*., 778 F.2d 89, 92 (2d Cir. 1985), quoted and applied in the May 25, 2010 Amended Order & Opinion ("Order") at 52.

Defendants' Motion ignores the overwhelming and undisputed evidence that supported the Court's holding that they satisfied the first prong of this test, *i.e.*, that they *participated* in Lime Wire's conduct intended to induce mass infringement of Plaintiffs' copyrighted works. As the Court found, the evidence was uncontroverted that Gorton, who at the pertinent, critical times was the chief officer of *both* Lime Group *and* Lime Wire, "directed and approved" LimeWire's design and development. In Gorton's own words: he "ran" Lime Wire. (Order at 53; Gorton (Vol. VII) Tr. 11:2-5[1].) He was its "ultimate decisionmaker" who had a "veto" over not only Lime Wire's day-to-day decisions – but over the actual *design* of the LimeWire software itself. (Order at 53; Bildson Decl. 9/10/08 ¶ 25.) Gorton made decisions aimed at ensuring the LimeWire software could continue to be a tool for infringement. (Order at 53.) And, Gorton led the Lime Wire marketing efforts aimed at converting Napster users into LimeWire users once

---

[1] Documents (or excerpts) cited herein ("Ex. _") are contained in Volumes I - XIV of the Exhibits to the Declarations of Katherine B. Forrest. Excerpts from deposition testimony ("Tr. _") and Declarations ("Decl. _") cited herein are arranged alphabetically by the witness or expert's last name and are contained in Volumes VI, VII and X, respectively, of the Exhibits to the Forrest Declarations. References to Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, dated July 18, 2008, and Statement of Additional Material Facts, dated September 26, 2008, are cited as "SUF ¶ _." The Declaration of Gregory L. Bildson was submitted as Exhibit 1 to the Declaration of Katherine B. Forrest, Dated December 5, 2008, in Opposition to Defendants' Motion to Strike the Bildson Declaration, for a Protective Order and for a Stay ("Bildson Decl. 9/10/08 ¶ __").

Napster was shuttered by the courts. (*Id.*; SUF ¶¶ 149-161.) As the Court held, Lime Group is "intimately involved" in Lime Wire's operations. The two companies share a host of services and employees – including office space, computer services, support staff. Lime Group performed Lime Wire's financial services, investor relations, public relations, employee benefits work, systems administration, and customer support functions. Indeed, Lime Group employees designed and developed the original LimeWire software, including drafting user guides for the program. (Order at 53-54; Bildson 9/10/08 Decl. ¶¶ 31-33; Bildson (Vol. X) Tr. 340:19-21, 25:3-16; Ex. 403.) This evidence conclusively establishes Lime Group and Gorton's joint and several liability with Lime Wire under the long-established Second Circuit Law the Court correctly applied. *Sygma Photo*, 778 F.2d at 92.

Defendants' Motion ignores the applicable law and overwhelming evidence detailing their *own* involvement in the Lime Wire enterprise. Defendants could not avoid summary judgment – and they cannot obtain reconsideration – by ignoring the Second Circuit's binding test for joint and several liability and the Court's application of it. In short, Defendants' Motion fails to address the Court's actual decision, and the Motion can and should be denied on that ground alone.

Defendants' Motion also fails as to the alternative prongs of the Second Circuit test that this Court also applied and found satisfied. Defendants create standards for "financial benefit" and "right and ability to supervise" that are contrary to controlling Second Circuit case law. Defendants also ignore the uncontroverted evidence that establishes their joint and several liability along with Lime Wire under the alternative prong of *Sygma Photo*.

Finally, in an attempt to dismiss inconvenient evidence, Lime Group (and only Lime Group) contends that the Court "overlooked" evidence of its formal status as a separate company from Lime Wire. In fact, the Court expressly *recognized* that Lime Group and Lime Wire are different entities. But the overwhelming undisputed evidence demonstrated that Lime Group

participated so extensively in Lime Wire's business that it is joint and severally liable with Lime Wire as a matter of law. Lime Group's nit-picking with the Court's Order changes none of that.

The Court applied the correct law, and properly found Lime Group and Gorton jointly and severally liable with Lime Wire for the inducement of infringement on a massive scale. The grounds asserted in Defendants' Motion do not come close to meeting the strict standard for reconsideration motions required in this District, much less give this Court any reason to reconsider its decision. Accordingly, the Motion should be denied.

## II.   ARGUMENT

### A.   Lime Group And Gorton Fail To Meet Their Heavy Burden To Justify Reconsideration

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "Where the movant fails to show that any controlling authority has been overlooked, and merely offers substantially the same arguments offered on the original motion, the motion for reconsideration must be denied." *Cobalt Multifamily Investors I, LLC v. Shapiro*, No. Civ. 6468(KMW)(MHD), 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009); *JPMorgan Chase Bank v. Cook*, 322 F. Supp. 2d 353, 356 (S.D.N.Y. 2004) (rearguing motion is "plainly improper"). A party "may not advance new facts, issues or arguments not previously presented to the court," *Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999), so as to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Nieves v. New York City Police Dep't.*, No. 07 Civ. 5751(SAS), 2010 WL 2010879, at *2 (S.D.N.Y. May 18, 2010) (internal quotations and citations omitted).

Subject to a single exception (easily disposed of below), Lime Group and Gorton do not argue that the Court overlooked any controlling authority.[2] Nor do Lime Group and Gorton cite any intervening change in the law. The Motion essentially argues that the Court "clearly erred" in two ways in granting summary judgment. *First*, Lime Group and Gorton contend that the Court "incorrectly applied the test it articulated" for determining Lime Group and Gorton's liability. (Mot. at 1.) The argument is meritless, as we demonstrate below; in fact, the argument attacks not the Order the Court wrote or the rationale it adopted, but a standard that Lime Group and Gorton challenge by deleting critical language from the Court's Order. But even if these Defendants were correct in their assertion that the Court misapplied the law – that would not be a proper basis for seeking reconsideration. An alleged misapplication of law does not charge the Court with overlooking authorities; it just reargues the Motion that these Defendants lost and is not a proper ground for reconsideration. *JPMorgan Chase Bank,* 322 F. Supp. 2d at 356.

*Second*, Lime Group alone – and *not* Mark Gorton – claims that the Court "misconstrued" and "overlook[ed]" evidence, and failed to draw all purported inferences in favor of Lime Group, the nonmoving party. All of the evidence the Court purportedly "overlooked" relates to Lime Group's formally separate status from Lime Wire. The Court did not overlook that evidence; it expressly recognized that the two companies are formally separate in its decision. (Order at 53.) But the Court then considered the overwhelming evidence of Lime Group's "intimate involvement" with Lime Wire and concluded that Lime Group nonetheless participated so extensively in Lime Wire's business that it must also be held liable for Lime Wire's misconduct. Lime Group essentially ignores that evidence – just as Lime Group, Lime

---

[2] Specifically, Lime Group and Gorton claim that the Court "overlooked" *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955 (2d Cir. 1997), in concluding that these Defendants – just like Lime Wire – had a significant financial interest in the illegal infringements that they intentionally induced. (*See* Mot. at 7.) As we explain in Section B.1, *infra*, *Softel* is completely inapposite: in that case, the plaintiff introduced no evidence of any financial benefit. *See Softel*, 118 F.3d at 971-72. Here, in contrast, there is abundant uncontroverted evidence that the financial success inuring to all three Defendants from their illegal business is dependent upon – and in fact has profited handsomely from – massive infringing activity. (*See* Order at 36-37.)

Wire and Gorton ignore the evidence that belies their concurrently filed motion to reconsider on the finding of direct copyright infringement. Here, as on that motion, ignoring inconvenient evidence is not a ground for reconsideration.

### B. Defendants' Motion Ignores the Court's Application of The Second Circuit's Controlling Test For Corporate And Individual Liability

Defendants' Motion collapses at the outset because it is not directed to the Order that the Court actually issued. Defendants claim that this Court found them liable based on "a theory of vicarious liability for inducement of infringement, based upon a defendant's ability to exercise [] control over and direct financial benefit from the infringing activity." (Mot. at 2.) In fact, that is not the test the Court applied. This is what the Court actually stated under the "Legal Standard" governing the infringement claims against Lime Group and Gorton:

> It is well established that ***all persons and corporations who participate in***, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers.

Order at 52 (emphasis added) (quotations, alterations and citations omitted).

Contrary to Lime Wire's claim, the Court did not invent this test or borrow it from an outlier opinion from the Eastern District of New York. (*See* Mot. at 2.) It has been the controlling law in the Second Circuit for almost a century (and in other courts as well) that "***all united in infringing*** … are responsible for the damages resulting from infringement." *Gross v. Van Dyk Gravure Co.*, 230 F. 412, 414 (2d Cir. 1916) (emphasis added). As the Second Circuit has repeatedly stated:

> ***All persons and corporations who participate in***, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers.

- 5 -

*Sygma Photo News, Inc.*, 778 F.2d at 92 (emphasis added).  This standard has been applied numerous times, in case after case.  *See, e.g., Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160-61 (3d Cir. 1984); *Samet & Wells, Inc. v. Shalom Toy Co.*, 429 F. Supp. 895, 903-04 (E.D.N.Y. 1977) (collecting cases), *aff'd mem.*, 578 F.2d 1369 (2d Cir. 1978).  Lime Group and Gorton's suggestion that the Court's test was novel or unprecedented is fanciful, to say the least.[3]

The test that the Court enunciated and applied held Lime Group and Gorton liable because, *inter alia*, they participated in Lime Wire's tortious activity.  "The evidence establishes that Gorton directed and benefited from many of the activities that gave rise to LW's liability." (Order at 52-53.)  "The evidence further shows that Lime Group was intimately involved in LW's operations."  (*Id*. at 53.)  These conclusions are unassailable.

In Gorton's own words, he "ran" Lime Wire.  (Order at 53; Gorton (Vol. VII) Tr. 11:2-5.) He was its "ultimate decisionmaker" who had a "veto" over not only Lime Wire's day-to-day

---

[3] In a footnote, Lime Group and Gorton claim they will raise on appeal the argument that the Court erroneously created "a claim for secondary liability for secondary liability."  (*See* Mot. at 2 n.3.)  Lime Group and Gorton expressly *disclaim* this as a basis for seeking reconsideration here, so we need not belabor the point.  The Court should be aware, however, that Lime Group and Gorton's contention is baseless.  The Court did not find Lime Group and Gorton's liability to be derivative of Lime Wire's liability.  It found these Defendants liable for the same tort that Lime Wire was liable for.  It is firmly established in the law that a corporate "parent is directly liable for its own actions" where the wrongful conduct is "traced to the parent through the conduit of its own personnel and management and the parent is directly a participant in the wrong complained of."  *United States v. BestFoods*, 524 U.S. 51, 64-65 (1998) (quotations omitted). *See also, e.g., Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.") (internal quotations and citations omitted).  It is well established in copyright law that parent corporations and corporate officers may be liable along with their subsidiaries/corporate employers for infringement – even where the subsidiary/corporate employer is liable for secondary infringement.  *See RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 781-82 (8th Cir. 1988) (corporation's president vicariously liable, along with his company, for direct infringement committed by retailers); *Little Mole Music v. Spike Investment, Inc.*, 720 F. Supp. 751, 755-56 (W.D. Mo. 1989) ("In either context [direct or secondary liability], infringement can result in personal joint and several liability for all those directly or vicariously involved.").

decisions – but over the actual *design* of the LimeWire software itself. (Order at 53; Bildson Decl. 9/10/08 ¶ 25.) He is responsible for LimeWire's decentralized, peer-to-peer approach, its so-called filtering system, its built-in audio player, and many other design features that facilitated the infringement. (Order at 53; Bildson Decl. 9/10/08 ¶ 26; SUF ¶ 667.) Gorton made the decision to set Lime Wire's purported filter to "off" by default. (*Id*.) He orchestrated in-depth analyses of the infringing habits of LimeWire users – including what percentage were "hardcore pirates." (Order at 53; Catillaz (Vol. VI) Tr. 268:2-21, 322:9-324:24; Exs. 278, 458-60; Gorton Decl. 9/26/08 ¶¶ 45-57; SUF ¶¶ 443-446.) And, he led the Lime Wire marketing efforts aimed at converting Napster users into LimeWire users once Napster was shuttered by the courts. (Order at 53; SUF ¶¶ 149-161.) In short: not only did Gorton personally participate in LimeWire's inducing activities, he was at the helm directing every major decision.

As for Lime Group, Gorton often conducted his day-to-day Lime Wire business from his position as Lime Group's sole owner, Chairman and CEO. (*See* SUF ¶¶ 627, 658-59 (listing host of emails re: Lime Wire's day-to-day operations sent and received by Gorton at limegroup.com email address).) Lime Group was Lime Wire's initial sole investor and overwhelming majority owner. (SUF ¶ 625.) As the Lime Group's sole owner, Gorton appointed himself Lime Wire's CEO, Chairman, and sole Director. Under Gorton's lead, Lime Group directly participated in Lime Wire's conduct that allowed for the massive induced infringement. Lime Group spawned the LimeWire software; Bildson and others developed it as Lime Group employees. (Bildson Decl. 9/10/08 ¶¶ 31-32; Bildson (Vol. X) Tr. 340:19-21, 25:3-16; Ex. 403.) Indeed, most of the developers responsible for the LimeWire software were, at one time or another, Lime Group employees – some well after Lime Wire launched in late 2000. (*See* Exs. 402, 403, 404, 405 (identifying Rohrs, Fisk, Soule and Singla by limegroup.com email addresses); *see also* Rohrs (Vol. X) Tr. 13:25-15:11; *see also* Mot. at 5 ("certain of the individuals involved in the development of the software may have originally been employed by Lime Group before Lime Wire was established" ).) Lime Group provided essential support directly for the software,

including handling the system administration for the LimeWire servers.  (Bildson Decl. 9/10/08 ¶ 33.)  A Lime Group employee wrote the user guide for the LimeWire software.  (*Id*.)   Later, another Lime Group company employee took on that responsibility, along with drafting FAQs and handling merchandising for LimeWire. (*Id*.).

Contrary to Lime Group and Gorton's claims, this Court's Order properly applied long-standing Second Circuit law and held Lime Group and Gorton accountable for the massive infringement based on the considerable, uncontroverted evidence of their own participation.

### C. Lime Group And Gorton's Remaining Arguments For Reconsideration Are Meritless

When Lime Group and Gorton do discuss *part* of the Court's application of *Sygma Photo*, they misstate the controlling authorities, ignore the uncontroverted evidence, or both.

#### 1. The Court Found A Financial Benefit Based On All Defendants' Significant Financial Interests In Infringing Activity, *Not* Based On Mere Status As Owners Of Lime Wire

We start with Defendants' arguments on "financial benefit," because that is the only argument they make as to both Lime Wire and Gorton.  Here, Defendants' primary argument is that the Court "overlooked" *Softel,* 118 F.3d at 971-72, and held that the element was satisfied as to Lime Group based on its ownership of Lime Wire, and as to Gorton based on his ownership of Lime Group.  (Mot. at 6-7.)[4]  The argument is flatly wrong.

---

[4] Lime Group and Gorton suggest that the financial benefit is not sufficiently "direct" unless it is expressly tied to a percentage of infringements, such as a percentage of gross receipts from selling infringing records, which happened to be the factual circumstance in *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963).  (Mot. at 6.)  The argument does not get much play in the Motion – as it should not, because that is not the law.  The pertinent question is whether the liable party "derive[s] substantial financial benefit from the actions of the primary infringers," as all three of the Defendants held liable here did.  *Gershwin Publ'g Co. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1163 (2d Cir. 1971).  *See generally Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, (9th Cir. 1996) (rejecting defendant swap meet operator's argument that financial benefit prong is "restrict[ed] . . . to the precise facts presented in *Shapiro*"; holding that defendant-operator derived "substantial financial benefits" from increased admission fees, concession sales, etc., that flowed from larger audience drawn by infringements).

The Court did not find that Lime Group and Gorton's financial interest flowed simply from their ownership of Lime Wire. What the Court actually held – and what Defendants conspicuously fail to quote – is that "Lime Group directly benefited from LW's inducement of infringement through LimeWire, which drove the company's success. Because he owned 100% of Lime Group, Gorton indirectly owned a majority share of LW, and thus also benefited from LW's infringing conduct." (Order at 54.) The Court discussed earlier in its Order the financial benefits that flowed from the astronomical amounts of infringement. These benefits included advertising revenue, sales of Lime Wire "Pro" and sales from the Lime Wire Store – all of which were based on a business predicated on infringement, and all of which flowed directly to Lime Group and Gorton.

*Softel*, upon which Lime Wire relies, is completely inapposite. There, the plaintiff argued that the defendant company's president (Hodge) should have been liable along with his company. The court rejected this contention because "*[t]he only evidence* that [plaintiff] adduced prior to the court's ruling relating to the issue of Hodge's supervisory capacities and financial interests was that Hodge was the president of [defendant] and a shareholder." *Softel*, 118 F.3d at 971 (emphasis added). The evidence concerning Lime Group and Gorton's conduct and financial interest, in contrast, is substantial and uncontroverted. *Softel* avails Lime Group and Gorton nothing.

### 2. Lime Group Controlled Ownership Of Lime Wire And Gorton Owned Them Both

Lime Group – but not Mark Gorton – also argues that the Court clearly erred in finding that Lime Group could have controlled (but did not control) the inducement of mass copyright infringement. Lime Group's argument ignores well-established and controlling Second Circuit law on this issue, as well as the uncontroverted (and indisputable) evidence that the two entities were controlled by the same person – Gorton – and that neither he nor Lime Group did anything to stop or limit conduct that served their own financial benefit.

Lime Group's legal argument tries to tease out of Second Circuit precedent a purported rule that a defendant may be liable only where it has specifically enumerated rights over, or actually involves itself in, the particular instances of conduct that give rise to liability. Hence, Lime Group points to the fact that, in *Shapiro,* the defendant's lease with the concessionaires "specifically gave the defendant the authority to promulgate rules that the record concessionaire was legally obligated to follow," and that, in *Sygma Photo*, the parent corporation "actually administered the publication of the magazine at issue on behalf of its shell subsidiary." (Mot. at 6.) Once again, Lime Group is trying to limit the legal rules to the particular facts of individual cases. *See* n. 4, *supra*.

Lime Group's argument fails because the law is clear that what counts is the defendant's *practical right and ability* to control the conduct that gives rise to liability – not whether there is a specific contractual provision covering the conduct. The defendant's formal right to control is not and never has been the test. This is clear from the Second Circuit's seminal decision in *Gershwin*. There the court held that a concert manager was vicariously liable (in addition to being a contributory infringer) for infringing performances, the audiences for which were generated by local community organizations. The court was clear that the defendant satisfied *Shapiro's* right and ability prong even though the defendant "*had no formal power to control* either the local associations or the artists for whom it served as agent." *Id*. at 1163 (emphasis added). What mattered for the "right and ability" prong was that the defendant "was in a position to police the infringing conduct of its artists." *Id*. at 1162-63. Courts have consistently focused on the defendant's *practical* right and ability to supervise the conduct that gives rise to liability – and not on the formal relationship as set forth in legal documents or whether the defendant actually involved itself in the underlying conduct. *Fonovisa*, 76 F.3d at 263 (defendant swap meet operator wielded practical control over sellers of infringing copies at swap meet); *Playboy Enters., Inc. v. Webbworld, Inc.,* 991 F. Supp. 543, 554 (N.D. Tex. 1997) (defendant vicariously liable despite lack of involvement in the day-to-day operations of the

infringing website: "Courts that have examined the issue of vicarious liability have focused not on actual exercise of control but rather on the right and ability to exercise control."), *aff'd mem.*,168 F.3d 486 (5th Cir. 1999); *Cass County Music Co. v. Khalifa*, 914 F. Supp. 30, 33-34 (N.D.N.Y. 1996) (defendant's "professed ignorance" of infringing performances, and fact that he delegated to someone else the job of hiring infringing performer, irrelevant to his liability where he managed the hall and "clearly had the right to supervise the activities conducted there"). Courts focus on the defendant's practical right and ability because, as one of the leading commentators on copyright puts it, "[l]egal control and actual control lend themselves too readily to strategic behavior to be a reliable measure of vicarious liability." 2 P. Goldstein, *Goldstein on Copyright*, § 8.2 at 8:25 (3d ed. 2005).

Lime Group, as it has for years, relies entirely on stratagems and constructs to try to evade liability. Emphasizing its formal, legal status, it insists the fact of its legal separation insulates it from Lime Wire's conduct absent proof of its ability to "promulgate rules" for Lime Wire. But that is simply not the law. Examining Lime Group's *practical right and ability* to control Lime Wire leads to the inescapable conclusion that it had the practical right and ability to control the inducement of infringement. Lime Group provided a "home" to Lime Wire, stating that it was responsible for "running" and "operat[ing]" Lime Wire. Lime Group wholly owned Lime Wire for several years, and remained its overwhelming majority investor well into Lime Wire's infringing life. Gorton, who was CEO of both companies, controlled a host of decisions as to Lime Wire's massive inducement of infringement, a ruling that is not challenged here. (SUF ¶¶ 631-32.) Gorton's ability to control Lime Wire cannot be cabined away from his role as the CEO of Lime Group. To the contrary, the undisputed evidence shows (as the Court found) that Gorton indiscriminately ran both businesses from one perch, communicating often about the day-to-day operations of the LimeWire business through his limegroup.com email address. (SUF ¶¶ 658-659.) At any moment, Gorton, in his role as the head of Lime Wire's majority

owner, Lime Group, could have pulled the plug on the inducement of massive infringement. That is obvious "ability to control", as the Second Circuit defines the test.

### D. The Court Correctly Considered And Relied On The Undisputed Evidence That Gorton Ran Lime Group And Lime Wire As One Company

Finally, Lime Group (but not Gorton) contends the Court relied on "unsupported" evidence or "failed to consider" evidence, and as a result erroneously granted summary judgment against Lime Group. Lime Group's claims of purportedly overlooked and inconclusive evidence do not come close to satisfying the strict standard required to bring a motion for reconsideration. Lime Group does not challenge many of the Court's core findings. Instead, it finds fault with details that it did not even dispute in the initial motion briefing. Those points do not now warrant reconsideration. For example, Lime Group now claims that the Court erred in concluding that Lime Group performed "investor relations, public relations, and customer support functions for Lime Wire," because the evidence did not "conclusively demonstrate" as much. But Lime Group did not dispute that it provided these services or any others for Lime Wire in the initial motion briefing. (*See* SUF ¶¶ 650-55.) Indeed, Lime Group *still* does not dispute that it provided those services, it just attacks the proof that it did. A motion for reconsideration is not the proper vehicle to assert claims for the first time.

Lime Group also challenges the Court's citation to Greg Bildson's declaration for the point that "employees moved between Lime Group and Lime Wire without changing titles and responsibilities." What is Lime Group's pressing concern warranting the extraordinary relief of reconsideration? Bildson's declaration, according to Lime Group, supports only that a single employee—Bildson —moved between Lime Group and Lime Wire without changing responsibilities. (Mot. at 8.) First, this is not so. The paragraph cited by the Court says that the lines between Lime Group and Lime Wire employees were "often blurry" or simply did not exist, and that Lime Group and Lime Wire employees sat at desks side by side. (Bildson Decl. 09/10/08) ¶ 32.) Second, evidence of employees moving between Lime Group and Lime Wire

without changing titles or responsibilities is *legion*, which explains why Lime Group challenges only the Court's citation and not the finding itself. (Mot. at 8.) Lime Group and Lime Wire shared their most senior employees: a CEO, a CFO, and a General Counsel. (SUF ¶ 647.) Lime Group employees developed the LimeWire software and then continued their development role at Lime Wire. (Bildson Decl. 9/10/08 ¶ 31; Bildson (Vol. X) Tr. 340:19-21; 25:3:16; Rohrs (Vol. X) 13:25-15:11; Exs. 402-405 (identifying five out of the undisputed seven primary developers of the LimeWire software as Lime Group employees).) Finally, even if Bildson were the only employee in the history of Lime Group and Lime Wire to have moved between the two companies without changing responsibilities, that is a substantial ground to find the two companies intimately involved in and of itself. Bildson is the architect of the LimeWire software and second only to Gorton himself as the most important person in the Lime Group/Lime Wire universe. (Bildson Decl. 9/10/08 ¶¶ 31-32; Nicponski, D. (Vol. X) Tr. 106:8-19.) The Court's citation to Bildson's declaration for this point of employees being shared between the two companies hardly warrants reconsideration.

   This is not the only fault that Lime Group finds with the Court's use of the plural "employees" rather than "employee." Lime Group chastises the Court for stating that "Lime Group employees . . . developed user guides, FAQ guides, and merchandising for the program." (Order at 54.) Instead, Lime Group contends that a Lime Group employee wrote the initial user guide, but later an employee of another Lime Group company took over the user guides, FAQ, and merchandising for LimeWire. This is not the sort of "clear error" that a reasonable person could expect would have made any difference in the Court's decision. Lime Group's complaint misses the point: Gorton ran the nominally separate Lime Group companies as one organization. (Bildson Decl. 9/10/08 ¶ 32.) The Court's finding to that effect is entirely consistent with this piece of evidence, even when one considers Lime Group's picayune point of clarification.

   Lime Group's claims of overlooked evidence coalesce around a central theme: the Court failed to consider the evidence that Lime Group is a separate company from Lime Wire. That is

not so. The Court's Order explicitly *recognizes* the companies' formal separation. (Order at 53 ("LW and Lime Group are formally separate companies. . . ").) But it properly analyzed their relationship based on the undisputed evidence of the companies' day to day reality, which could only yield one conclusion. Lime Group is and always has been "intimately involved in LW's operations," a finding that Lime Group cannot deny. (*Id*.) Indeed, Lime Group's Motion ignores reams of undisputed evidence supporting the Court's finding that the two companies are run as one, regardless of any theoretical, formal separation. (*Id.* at 53-54.)

The corporate formalities Lime Group points to (such as payment for shared services, etc.) cannot create a material issue of fact as to the practical, day-to-day involvement of Lime Group in Lime Wire's business. Lime Group does not bother to dispute (because it cannot) the bulk of the evidence supporting this Court's conclusion. It does not dispute that Lime Group and Lime Wire share offices, computer services, and support staff. (*Id.* at 54.) Nor does it dispute that Lime Group manages Lime Wire's financial operations (*id*.) and employee benefits. (*Id*.). It does not dispute that Lime Group hires Lime Wire's employees. (*Id*.) Nor does it dispute that Lime Group employees provided necessary system administration support for the LimeWire Client, or that a Lime Group employee wrote the LimeWire Client user guide, or that another Lime Group-company employee handles the FAQ and merchandising for the software. (*Id*.) This undisputed evidence of shared services, shared employees, and participation in the Lime Wire business more than conclusively demonstrates that Lime Group and Lime Wire are, as the Court found, "intimately involved." (*Id.* at 53.) Whatever the paper differences, the practical reality is that they were run as the same enterprise. That being the case, there is no genuine issue as to Lime Group's knowledge and participation in the inducement. Reconsideration should be denied.

**III.    CONCLUSION**

Lime Group and Gorton's Motion for Reconsideration should be denied.

Dated:  June 9, 2010
         Los Angeles, CA

Respectfully submitted

*/s/ Kelly M. Klaus*
Kelly M. Klaus

Attorney for Plaintiffs
Munger, Tolles & Olson, LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100
(213) 687-3702 (Fax)