# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.,

Plaintiffs,

v.

LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,

Defendants.

Case No. 06 CV 5936 (KMW)

ECF Case

**PUBLIC VERSION**

---

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION FREEZING DEFENDANTS' ASSETS

Michael S. Sommer
Tonia Ouellette Klausner
Jessica L. Margolis
Michael S. Winograd
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
msommer@wsgr.com; tklausner@wsgr.com;
jmargolis@wsgr.com; mwinograd@wsgr.com

Colleen Bal *(pro hac vice)*
WILSON SONSINI GOODRICH & ROSATI, P.C.
Spear Tower, Suite 3300
San Francisco, California 94105
Tel: (415) 947-2000
Fax: (415) 947-2099
cbal@wsgr.com

*Attorneys for Defendants Lime Wire LLC,
Lime Group LLC, Mark Gorton and M.J.G
Lime Wire Family Limited Partnership*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 4

ARGUMENT ...................................................................................................................... 5

I.      PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION
FREEZING DEFENDANTS' ASSETS ............................................................................. 5

      A.    Plaintiffs Have Not Shown Irreparable Harm ........................................... 6

      B.    Plaintiffs Have Not Demonstrated a Probability of Success on the Merits that
Would Justify A Preliminary Injunction Freezing Assets ................................... 10

      C.    The Balance of Hardships Does Not Tip Decidedly in Plaintiffs' Favor ............. 12

      D.    The Public Interest Does Not Support an Injunction ........................................... 14

      E.    Plaintiffs Would Be Required to Post a Significant Security if A Preliminary
Injunction Were Granted ..................................................................................... 15

II.     THE SCOPE OF THE PRELIMINARY INJUNCTION PLAINTIFFS SEEK GOES
BEYOND THE COURT'S EQUITABLE POWERS, IS OVERBROAD AND LACKS
THE REQUIRED SPECIFICITY .................................................................................... 16

      A.    A Preliminary Injunction to Freeze Assets Is Only Available with Respect to
the Profits of Lime Wire that Plaintiffs Seek to Disgorge from Defendants ........ 16

      B.    The Proposed Injunction is Overly Broad and Lacks the Required Specificity ... 21

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

Page(s)

*1800Postcards, Inc. v. Morel*,
   153 F. Supp. 2d 359 (S.D.N.Y. 2001)..................................................................18

*Additive Controls & Measurements Sys. Inc. v. Flowdata, Inc.*,
   96 F.3d 1390 (Fed. Cir. 1996)........................................................................22

*Algonquin Power Corp., Inc. v. Trafalgar Power Inc.*,
   No. CIVA5:00CV1246,
   2000 WL 33963085 (N.D.N.Y. Nov. 8, 2000) ...........................................16

*Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*,
   143 F.3d 688 (2d Cir. 1998)........................................................................17,19

*Am.Cyanamid Co. v. U.S. Surgical Corp.*,
   833 F. Supp. 92 (D. Conn. 1992)................................................................15

*Arch Assocs., Inc. v. Hedeya Bros., Inc.*,
   No. 93 CIV. 4267 (RWS),
   1993 WL 426888 (S.D.N.Y. Oct. 21, 1993) .............................................11

*Arista Records LLC v. Usenet.com, Inc.*,
   No. 07-CV-8822 (HB) (THK) (S.D.N.Y. Feb. 2, 2010)........................9, 10

*Bascom Food Prods. Corp. v. Reese Finer Foods, Inc.*,
   715 F. Supp. 616 (D.N.J. 1989) .................................................................10

*Citibank, N.A. v. Citytrust*,
   756 F.2d 273 (2d Cir. 1985)..........................................................................7

*Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*,
   94 N.Y.2d 541 (2000) ...................................................................................20

*Dreier v. Music Makers Group, Inc.*,
   No. 73 Civ. 1470,
   1973 WL 399 (S.D.N.Y. June 20, 1973) ....................................................10

*Dystar Corp. v. Canto*,
   1 F. Supp. 2d 48 (D. Mass. 1997) ..............................................................22

*E.A. Renfroe & Co., Inc. v. Moran*,
   338 Fed. Appx. 836 (11th Cir. 2009)..........................................................22

*Echostar Satellite LLC v. Rollins*,
   No. 5:07-CV-00096,
   2008 WL 314145 (S.D.W.Va. Feb. 4, 2008) .............................................15

# TABLE OF AUTHORITIES

## CASES
### (continued)

**Page(s)**

*ESPN, Inc. v. Quiksilver, Inc.,*
586 F. Supp. 2d 219 (S.D.N.Y. 2008)..........................................................................10

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
559 F.3d 110 (2d Cir. 2009)...............................................................................21, 24

*Fonar Corp. v. Deccaid, Inc.,*
983 F.2d 427 (2d Cir. 1993)....................................................................................21

*Freedom Holdings, Inc. v. Spitzer,*
408 F.3d 112 (2d Cir. 2005).......................................................................................6

*Giraldo v. Rosen,*
355 F. Supp. 54 (S.D.N.Y. 1973) ............................................................................11

*Great Earth Int'l. Franchising Corp. v. Milks Devs., Inc.,*
302 F. Supp. 2d 248 (S.D.N.Y. 2004)..................................................................12, 14

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
527 U.S. 308 (1999)........................................................................................ *passim*

*In re Amaranth Natural Gas Commodities Litig.,*
__ F. Supp. 2d __, No. 07 CIV. 6377 (SAS),·
2010 WL 1838718 (S.D.N.Y. May 3, 2010) ...........................................................20

*In re Baldwin-United Corp.,*
770 F.2d 328 (2d Cir. 1985).....................................................................................23

*In re Feit & Drexler, Inc.,*
760 F.2d 406 (2d Cir. 1985).....................................................................................19

*In re Manshull Const. Corp.,*
No. 96B44079 (JHG), No. 96B44080 (JHG),
No. 97 CIV. 8851 (JGK), No. 99 CIV. 2825 (JGK),
2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000).....................................................11, 12

*Joneil Fifth Ave. Ltd. v. Ebeling & Reuss Co.,*
458 F. Supp. 1197 (S.D.N.Y. 1978)..........................................................................14

*JSC Foreign Econ. Ass'n. Technostroyexport v.*
*Int'l Dev. and Trade Servs.,*
295 F. Supp. 2d 366 (S.D.N.Y. 2003).........................................................................7

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan*
*Gas Bumi Negara,*
500 F.3d 111 (2d Cir. 2007),
*cert. denied,* 128 S. Ct. 2958 (2008) ........................................................................17

# TABLE OF AUTHORITIES

## CASES
### (continued)

Page(s)

*Kraft Gen. Foods, Inc. v. Del Monte Corp.*,
No. 93 CV 4413,
1993 WL 557864 (S.D.N.Y. Sept. 22, 1993)...............................................14

*L.G.B. Inc. v. Gitano Group, Inc.*,
769 F. Supp. 1236 (S.D.N.Y. 1991).............................................................7

*Leone Indus. v. Associated Packaging, Inc.*,
795 F. Supp. 117 (D.N.J. 1992) ............................................................24, 25

*Majorica, S.A. v. R.H. Macy & Co., Inc.*,
762 F.2d 7 (2d Cir. 1985)...........................................................................7

*Mason Tenders Dist. Council Pension Fund v. Messera*,
No. 95 CIV. 9341 (RWS),
1997 WL 223077 (S.D.N.Y. May 7, 1997) ...............................................19

*Mazurek v. Armstrong*,
520 U.S. 968 (1997).....................................................................................6

*Merit Capital Group, LLC v. Trio Indus. Mgm't, LLC*,
No. 04 Civ. 7690 (RCC),
2005 WL 53283 (S.D.N.Y. Jan. 10, 2005) ...............................................10

*Motorola, Inc. v. Abeckaser*,
No. 07-CV-3963 (CPS)(SMG),
2009 WL 1362833 (E.D.N.Y. May 14, 2009) ............................................9

*Newby v. Enron Corp.*,
188 F. Supp. 2d 684 (S.D. Tex. 2002) .....................................................17

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
16 F.3d 1032 (9th Cir. 1994) ....................................................................15

*OSRecovery, Inc. v. One Groupe Int'., Inc.*,
305 F. Supp. 2d 340 (S.D.N.Y. 2004)........................................................17

*Pashaian v. Eccelston Properties, Ltd.*,
88 F.3d 77 (2d Cir. 1996)...........................................................................19

*Peregrine Myanmar Ltd. v. Segal*,
89 F.3d 41 (2d Cir. 1996)...........................................................................21

*Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va.*,
144 F. Supp. 241 (S.D.N.Y. 2001) .........................................................9, 19

# TABLE OF AUTHORITIES

## CASES
### (continued)

Page(s)

*Republic of Phil. v. Marcos,*
   806 F.2d 344 (2d Cir. 1986)....................................................................19

*Republic of Phil. v. N.Y. Land Co.,*
   852 F.2d 33 (2d Cir. 1988)......................................................................23

*Rodriguez v. DeBuono,*
   175 F.3d 227 (2d Cir. 1999).....................................................................6

*S.E.C. v. Cavanagh,*
   445 F.3d 105 (2d Cir. 2006)....................................................................14

*Salinger v. Colting,*
   __F.3d__, No. 09-2878-cv,
   2010 WL 1729126 (2d Cir. Apr. 30, 2010) ............................................12

*Sanders v. Air Line Pilots Association,*
   473 F.2d 244 (2d Cir.1972)....................................................................23

*Sanofi-Synthelabo v. Apotex Inc.,*
   488 F. Supp. 2d 317 (S.D.N.Y.),
   *aff'd*, 470 F.3d 1368 Fed. Cir. 2006) ....................................................15

*SEC v. ETS Payphones, Inc.,*
   408 F.3d 727 (11th Cir. 2005) ......................................................17, 18, 20

*SEC v. Hickey,*
   322 F.3d 1123 (9th Cir. 2003) ................................................................22

*SEC v. Zubkis,*
   No. 97 CIV. 8086 (JGK),
   2003 WL 22118978 (S.D.N.Y. Sept. 11, 2003) ....................................22

*Serio v. Black, Davis & Shue Agency, Inc.,*
   No. 05 Civ. 15 (MHD),
   2005 WL 3642217 (S.D.N.Y. Dec. 30, 2005) ...............................*passim*

*Shred-It Am., Inc. v. Haley Sales Inc.,*
   No. 01-CV-0041E(SR),
   2001 WL 209906 (W.D.N.Y. Feb. 26, 2001) .......................................16

*Sussman v. Crawford,*
   488 F.3d 136 (2d Cir. 2007)......................................................................5

*United States ex rel. Rahman v. Oncology Assocs., P.C.,*
   198 F.3d 489 (4th Cir. 1999) ..................................................................18

# TABLE OF AUTHORITIES

## CASES
### (continued)

**Page(s)**

*Winter v. Natural Res. Def. Counsel,*
    129 S. Ct. 365 (2008)........................................................................6, 13, 15

*Zepeda v. United States I.N.S.,*
    753 F.2d 719 (9th Cir. 1985) ........................................................................21

## STATUTES

C.P.L.R. § 6201................................................................................................20

C.P.L.R. § 6301................................................................................................20

DEL. CODE ANN. tit. 6, §§ 18-703(a) and (e) (2010)................................................23

N.Y. LTD. LIAB. CO. LAW §§ 607(a) and (b) (McKinney 2010)................................23

NEV. REV. STAT. §§ 87A.480(1) and (5) (West 2009)..............................................23

## RULES

Fed. R. Civ. P. 64..............................................................................................20

Fed. R. Civ. P. 65....................................................................................... *passim*

## OTHER SOURCES

13 Moore's Federal Practice ................................................................................20

Defendants Lime Wire LLC ("LW"), Mark Gorton, Lime Group LLC ("LG") and the M.J.G. Lime Wire Family Limited Partnership ("LWFLP"), respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction Freezing Assets. For the following reasons, Plaintiffs' motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Relying solely upon the Court's summary judgment ruling on secondary liability with respect to thirty works, Plaintiffs ask this Court to grant them relief that they are not entitled to—a pre-judgment freeze of "all" of Defendants' assets. Plaintiffs' request flies in the face of Supreme Court authority, is unprecedented in its overbreadth, and is premised upon purported fraudulent conveyances as to which the Court has *denied* summary judgment. The Court should reject the absurdly broad and punitive "asset freeze" which threatens to have a devastating impact on businesses, non-profit organizations and other entities that have nothing to do with the conduct at issue in this copyright litigation.

Plaintiffs have made clear that they intend to elect statutory damages. The United States Supreme Court has made clear that a pre-judgment asset freeze is not an available remedy in connection with a damages claim, *even where* there is evidence that the defendant is dissipating assets (which is not the case here, as confirmed by the affidavits of a third party forensic accountant and Mr. Gorton). Even if Plaintiffs were to forego statutory damages and seek disgorgement of LW's profits from the distribution of the LimeWire Software, then Plaintiffs are limited to an asset freeze restricted to the total of such profits retained by LW and paid out to the three other Defendants. That sum is significantly less than "all" of Defendants' assets. More importantly, even then, Plaintiffs would have to make the requisite "clear showing" that they are entitled to the drastic remedy of a preliminary injunction, which Plaintiffs have not even come close to doing here.

Plaintiffs have not shown — much less "clearly" — that they will suffer actual and imminent irreparable harm in the absence of injunctive relief. Aside from the inexplicable three year delay in seeking injunctive relief, which alone justifies its denial, Plaintiffs' assertion that there exists an "actual and imminent threat" that Defendants are dissipating LW's profits in order to frustrate a potential judgment is without basis in fact. As we show below, the evidence is clear: The Defendants are not engaged, have never engaged, and have no intent to engage, in any effort to dissipate their assets. ███████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████ An independent accounting expert has conducted a comprehensive and detailed review of historical financial data for LW, LG and LWFLP and found absolutely *no evidence whatsoever* that Defendants were attempting to hide, dissipate or otherwise shield assets from potential judgment creditors. The expert concluded that there were no suspicious transfers from LW to investors, vendors or any other party. Although Plaintiffs make much of LW's capital distributions to its investors ██████████████████ between ████████, there is nothing suspicious or untoward about these distributions. The independent accounting expert found that these distributions – as with all of LW's capital distributions to investors – ███████████ ██████████████████████████████████████████████

███████ Indeed, although Plaintiffs speculate that ██████████████ must have flowed from LW to Mr. Gorton and his family in the years since ████, the fact is that █████████ ██████████████████████████████████ ██████████████████████████████. In short, there is simply no basis to conclude that Defendants *ever* attempted to shield assets in order to avoid

a potential monetary judgment, let alone that Defendants would suddenly begin engaging in such conduct in the absence of a freeze order.

Plaintiffs also have not shown a likelihood of success or sufficiently serious questions going to the merits on their claims beyond the thirty works at issue on the summary judgment opinion. They have not presented the Court with a shred of evidence that they own any of the 3000+ other sound recordings identified in their Amended Complaint, or that any such work they do own has been infringed utilizing the LimeWire Software. A plaintiff simply may not obtain a preliminary injunction based on their pleadings and the arguments of counsel alone. And there are sharply disputed issues of fact with respect to Plaintiffs' claims.

Nor have Plaintiffs made a clear showing that the balance of hardships tips decidedly in their favor. Just the opposite is true. Plaintiffs readily admit that the only hardship they could suffer would be their inability to fully collect on a money judgment. But Defendants and other non-party businesses and not-for-profit organizations that have nothing to do with the conduct at issue in this case face potentially disastrous effects should the Court grant the extraordinary relief sought by Plaintiffs. Three third-party entities that rely on Mr. Gorton for funding would likely cease to exist, with dozens of employees losing their jobs.

Finally, the scope of the relief Plaintiffs request in their Proposed Order is unfounded. Plaintiffs seek to enjoin persons beyond those permitted by Rule 65. Other relief sought in their Proposed Order is no where mentioned, let alone justified in Plaintiffs' brief. For example, Plaintiffs' Proposed Order would prohibit Defendants from making any payments by credit card, even the ordinary course payments that are excluded from the proposed freeze. It also would require the appointment of a "fiscal agent" to pre-approve ordinary course payments, including the

daily living expenses of Mr. Gorton's family. There is no basis for such a draconian and punitive remedy.

Plaintiffs' motion should be denied. In the event, however, that the Court determines that some kind of asset freeze is appropriate, it must be carefully limited to persons who may properly be enjoined under Rule 65, and be "narrowly tailored" to provide only that relief Plaintiffs have demonstrated they are entitled to, and without which they will suffer imminent irreparable harm. Here, that could at most amount to a freeze over the assets of LW, LG and LWFLP (other than funds needed for ordinary course payments), plus a freeze of no more than ███████ of Mr. Gorton's assets.

## BACKGROUND

*Mark Gorton.* Mr. Gorton is a successful trader, investor and entrepreneur. With a background in engineering and an MBA, years before LW ever made a profit, he co-founded several large financial companies and founded a significant not-for-profit organization dedicated to green transportation, open government and open source mapping (Open Plans). *See* Declaration of Mark Gorton dated June 30, 2010 ("Gorton Decl."), ¶¶ 2-12, 18-20. ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████. Mr. Gorton continues to fund several entities and organizations, ███████████

███████████████████████████████████████████

████████████████████████████████ A freeze on all of Mr. Gorton's assets would cripple several of these entities, resulting in dozens of lost jobs, █████████████ and the loss to the public of the valuable work being done by OpenPlans. *See id.* ¶¶ 14, 16, 21, 35;

Declaration of John Enright ("Enright Decl."), ¶¶ 4-5; Declaration of Sunil Sreenivasan

("Sreenivasan Decl.) ¶¶ 2, 5; Declaration of Vanessa Hamer ("Hamer Decl."), ¶ 5.

*Lime Wire.* ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████

     *This Motion.*  Nearly four years after filing their Complaint, and more than three years since

learning of the only transfers on which Plaintiffs base their speculation that Defendants are engaged

in the dissipation of their assets, Plaintiffs filed the instant motion for preliminary injunction.  They

also filed a proposed order that contains extensive provisions well beyond any relief requested in

there brief.  For the reasons set forth below, the motion should be denied.

**ARGUMENT**

**I.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION FREEZING DEFENDANTS' ASSETS**

     Because a preliminary injunction is an "extraordinary and drastic remedy," it should not be

granted unless the movant, "by a *clear showing,* carries the burden of persuasion." *Sussman v.*

-5-

*Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (emphasis in original) (quoting *Mazurek v.*

*Armstrong*, 520 U.S. 968, 972 (1997)); *accord Winter v. Natural Res. Def. Counsel*, 129 S. Ct. 365,

375-76 (2008). Thus, to be entitled to the extraordinary remedy sought here, Plaintiffs must clearly

establish (i) irreparable harm; (ii) likelihood of success on the merits or sufficiently serious

questions going to the merits to make them fair ground for litigation; (iii) a balance of hardships

tipped in favor of Plaintiffs – decidedly so where there are serious questions going to the merits; and

(iv) that the injunction is in the public interest. *Id.* at 374.

**A.    Plaintiffs Have Not Shown Irreparable Harm**

Irreparable harm is "'the single most important prerequisite for the issuance of a preliminary

injunction.'" *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting

*Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999)). Accordingly, "the moving party must

first demonstrate that such injury is likely before the other requirements for the issuance of an

injunction will be considered." *Id.* at 234. To satisfy the irreparable harm requirement, Plaintiffs

must show that unless the injunction they request is entered, "they will suffer 'an injury that is

neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a

court waits until the end of trial to resolve the harm.'" *Id.* (citation omitted).

In an effort to satisfy this heavy burden, Plaintiffs argue that they will be irreparably harmed

absent an injunction because Defendants and, in particular, Mr. Gorton will attempt to dissipate

assets by transferring them from LW to private family partnerships or other family members. Pls.

Mem. at 17. In support of this assertion, Plaintiffs rely exclusively on the fact that, between ████

████████, LW distributed funds to LWFLP and other LW investors ████████████████████

████████. *Id.*

As an initial matter, Plaintiffs claim of irreparable harm should be rejected because Plaintiffs have known about these transfers but took no action for over three years. *See* Pls. Mem. in Support of Motion for Leave to File an Amended Complaint, at 7 (Dkt. No. 28). Courts in this Circuit have rejected claims of irreparable harm where the delay was far shorter than Plaintiffs' substantial delay in this case. *See, e.g., Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (internal quotations omitted) (ten weeks delay); *JSC Foreign Econ. Ass'n. Technostroyexport v. Int'l Dev. and Trade Servs.*, 295 F. Supp. 2d 366, 390 (S.D.N.Y. 2003) (six-week delay) (citing cases); *L.G.B. Inc. v. Gitano Group, Inc.*, 769 F. Supp. 1236, 1242 (S.D.N.Y. 1991) (four month delay); *see also Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985) (reversing grant of preliminary injunction where district court failed to consider effect of substantial delay on claim of irreparable harm and noting that "[l]ack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief").[1]

Moreover, and perhaps more importantly, the transfers so heavily relied upon by Plaintiffs utterly fail to support their assertion that Mr. Gorton or the other Defendants intend to dissipate LW's assets or otherwise evade potential judgment creditors. To the contrary, a forensic accountant with the international account firm of BDO Seidman found that the distributions relied upon by Plaintiffs—as with all of LW's capital distributions to investors—████████████████ ████████████████████████████████████████████████ ██████████████████ In other words, there was nothing suspicious, unusual or otherwise

---

[1] *Serio v. Black, Davis & Shue Agency, Inc.*, No. 05 Civ. 15 (MHD), 2005 WL 3642217 (S.D.N.Y. Dec. 30, 2005), relied upon by Plaintiffs, is not to the contrary. In fact, the Court in that case confirmed that "[s]ignificant delay in seeking a preliminary injunction" weighs against a finding of irreparable harm. *Id.* at *18. In *Serio*, although the conduct at issue was over four years old, "Plaintiff apparently first learned of the diversion of moneys" seven months before filing his motion. *Id.* And although even that delay was "troubling," it was "attributable to plaintiff's efforts to obtain discovery as to the details of the transactions" used to divert the money. *Id.* at *18. The Court also noted the existence of other evidence upon which it substantially relied in finding irreparable harm. *Id.* at *17-18.

untoward about these transfers from LW.  Plaintiffs' further speculation that ████████████████

████████ must have flowed from LW to Mr. Gorton and his family members in the years since

████████████ (Pls. Mem. at 6) is similarly wrong. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████ More generally, the expert who reviewed detailed historical financial data for LW, LG,

and LWFLP in an effort to identify changes in disbursement patterns, unusual or suspicious

payment activity, irregular disbursement amounts or other potential indicia of dissipation, found "no

indication" that LW, LG, or LWFLP "is moving assets in an attempt to hide or protect them from a

potential judgment creditor" – whether through capital distributions or otherwise. *Id.* ¶¶ 10-11.  In

particular, Mr. Lendez identified no suspicious or unusual disbursements from LW to Mr. Gorton's

family members, vendors, investors, or other entities with which Mr. Gorton is involved. *Id.* ¶¶ 11,

17.

There similarly is no indication that Mr. Gorton is dissipating any profits of LW, which, as

explained below, are the only assets that could properly be subject to any asset freeze order. *See*

Gorton Decl. ¶¶ 25-26, 31-34. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Mr. Gorton's conduct ████████

████████████████████████████████████ belies any inference based on the establishment of the

LWFLP in 2005 that he is currently engaged in conduct intended to hide his assets from Plaintiffs.[2]

       The lack of any evidence of a current intent to dissipate assets here stands in stark contrast to

the facts at issue in the cases relied upon by Plaintiffs. In *Arista Records LLC v. Usenet.com, Inc.*,

No. 07-CV-8822 (HB) (THK) (S.D.N.Y. Feb. 2, 2010), plaintiffs presented evidence that the

defendant *was in the process* of dissipating his assets at that time, including purchasing a large

home in Florida protected from liens by Florida law, and making payments "to a third party

apparently located in Russia under highly suspicious circumstances." *Id.* Dkt. No. 255 (Prelim.

Injun. Order) at 1-2; *Id.*, Dkt. No. 302 (Pls. Perm. Inj. Mem.), at 2; Dkt. No. 306 (Am. Report and

Recommendations), at 11, 21.[3] In *Quantum Corporate Funding, Ltd. v. Assist You Home Health

Care Services of Va.*, 144 F. Supp. 241 (S.D.N.Y. 2001), a case repeatedly cited by Plaintiffs (Pls.

Mem. at 9, 10, 15, 18), the Court found an imminent threat where the defendant companies were

"wrought with accounting and payroll problems" and owned and controlled by individual defendant

who had "a history of making judgments uncollectible" by shutting down companies. *Id.* at 245-46,

248. And in *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963 (CPS)(SMG), 2009 WL 1362833

(E.D.N.Y. May 14, 2009), the defendant transferred his home *during the litigation* and *in violation*

of an express provision of the parties' agreement that prohibited the transfer. *Id.* at *1, *3. The

*Motorola* court also found an imminent threat of asset dissipation because there was evidence that

---

    [2] This point distinguishes *Serio*. In *Serio*, the Court concluded that transfers that took place several years before the asset freeze motion raised a concern "that defendant is continuing to drain those funds." 2005 WL 3642217, at *16. But there was no indication that the *Serio* defendant had submitted evidence (such as that which Defendants have presented here) reflecting conduct inconsistent with a current intent to dissipate assets.

    [3] The court in *Usenet* had already found defendants to have engaged in a pattern of egregious misconduct throughout the case. *Id.* at Dkt. No. 306, at 11, 21; Dkt. No. 240 (Opinion and Order), at 8-12, 15-16 (defendants sanctioned multiple times for widespread discovery misconduct).

the defendant was *then attempting* to transfer other assets, and that he was planning to leave the country. *Id.* at *3.

Here, there is simply no proof of any such egregious conduct or ongoing efforts to dissipate assets assets. Accordingly, the Court should deny Plaintiffs' motion. *See, e.g.*, *Merit Capital Group, LLC v. Trio Indus. Mgm't, LLC*, No. 04 Civ. 7690 (RCC), 2005 WL 53283, at *2 (S.D.N.Y. Jan. 10, 2005) ("Plaintiff's speculative and unsubstantiated assertions" failed to support finding of imminent dissipation of assets); *Dreier v. Music Makers Group, Inc.*, No. 73 Civ. 1470, 1973 WL 399, at *2 (S.D.N.Y. June 20, 1973) (denying motion for preliminary injury where allegation of imminent dissipation of assets was unsupported).

**B.    Plaintiffs Have Not Demonstrated a Probability of Success on the Merits that Would Justify A Preliminary Injunction Freezing Assets**

In order to obtain the extraordinary remedy of a preliminary injunction, the moving party must come forward with evidence that it is likely to succeed on the merits of its claims. *See, e.g.*, *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 229 (S.D.N.Y. 2008) ("On preliminary injunction motions, the plaintiff cannot rest on its pleadings, but must offer evidence showing that it is likely to prevail on the merits at trial."; contrasting obligation on motion to dismiss); *Bascom Food Prods. Corp. v. Reese Finer Foods, Inc.*, 715 F. Supp. 616, 624 n.14 (D.N.J. 1989) (plaintiff "must offer proof beyond the unverified allegations of the pleadings"); 13 Moore's Federal Practice § 65.23 [1] (3d ed. 2010) ("Allegations contained in an unverified complaint may not be considered in support of a motion for a preliminary injunction"). Here, Plaintiffs' two paragraph discussion of likelihood of success on the merits of their copyright claims (Pls. Mem. at 11-12) relies entirely on the Court's Amended Opinion and Order of May 25, 2010. But that Opinion decided liability only with respect to thirty sound recordings. Am. Order at 5. Plaintiffs have made no showing whatsoever — in this motion or elsewhere — as to the alleged infringement of the remaining

-10-

"thousands" of recordings for which they seek relief. Pls. Mem. at 8. They have come forward with no proof of ownership or infringement of any works beyond the 30 addressed in the Order. Plaintiffs' lack of proof dooms their request, since they do not and cannot contend that there is any risk Defendants would be unable to satisfy a disgorgement of profits judgment with respect to 30 works.

Plaintiffs likewise have not shown a probability of success as to their fraudulent conveyance claim against Mr. Gorton or unjust enrichment claim against LWFLP. Nor could they; the Court has already held that a genuine issue of fact exists as to both claims. Am. Order at 57. Because there are sharply contested issues of fact with respect to these claims, there is no basis to find a likelihood of success. *See Giraldo v. Rosen*, 355 F. Supp. 54, 57 (S.D.N.Y. 1973) (court should not find probability of success for purposes of preliminary injunction where "sharply contested issues of fact exist"); *Arch Assocs., Inc. v. Hedeya Bros., Inc.*, No. 93 CIV. 4267 (RWS), 1993 WL 426888, at *5-6 (S.D.N.Y. Oct. 21, 1993) (no probability of success on merits where "[s]erious unresolved factual issues exist").

Plaintiffs' assertions concerning the timing of Mr. Gorton's establishment of the LWFLP in relation to the *Grokster* decision is rank speculation. The case-law makes clear that when intra-family transfers are at issue, courts must look to the entire context to determine whether a particular transfer constitute a fraudulent conveyance. *See, e.g.*, *In re Manshull Const. Corp.*, No. 96B44079 (JHG), No. 96B44080 (JHG), 97 CIV. 8851 (JGK), 99 CIV. 2825 (JGK), 2000 WL 1228866, at *48 (S.D.N.Y. Aug. 30, 2000). ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████ These chronological

facts belie Plaintiffs' speculation that Mr. Gorton established the LWFLP with the intent to defraud

Plaintiffs. *See, e.g., In re Manshull*, 2000 WL 1228866, at **32-36 (rejecting fraudulent

conveyance claim where chronological facts showed that the transfers at issue were made as part of

a *bona fide* estate plan).

### C.    The Balance of Hardships Does Not Tip Decidedly in Plaintiffs' Favor

Even if the Court concludes that Plaintiffs have demonstrated sufficiently serious questions

going to the merits of their claims, Plaintiffs have not demonstrated that the balance of hardships

tips "decidedly" in their favor. *See, e.g., Salinger v. Colting*, __ F.3d __ No. 09-2878-cv, 2010 WL

1729126, at *9 (2d Cir. Apr. 30, 2010) (where court relies upon showing of sufficiently serious

questions, balance of hardships must tip decidedly in plaintiff's favor). Before granting a

preliminary injunction, the Court "must balance the competing claims of injury and must consider

the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S. Ct. at

376 (citation omitted). The Court likewise should consider the impact on non-parties. Where

granting the preliminary injunction would injure non-parties, that weighs against granting the relief.

*See Great Earth Int'l. Franchising Corp. v. Milks Devs., Inc.*, 302 F. Supp. 2d 248, 255 (S.D.N.Y.

2004).

Plaintiffs readily admit that the only harm they might suffer would be the inability to fully

collect on a money judgment based on an award of statutory damages. Pls. Mem. at 18. But, as

explained below, because preliminary injunction freezing assets is not available in connection with

claims for monetary damages, at most Plaintiffs would be entitled to a freeze order limited to the

profits of LW from its distribution of the LimeWire Software, which Plaintiffs could seek to

-12-

disgorge.  Plaintiffs have made no showing that Defendants could not fully satisfy a judgment disgorging profits.

In contrast, the relief Plaintiffs request would lead to considerable harm to Defendants and third parties.  Plaintiffs seek to enjoin "all" of Defendants' assets.  Proposed Order at I.  If Mr. Gorton cannot continue funding ████████████████ and Open Plans—two ██████ and a not-for-profit entity that rely upon Mr. Gorton's funding for their existence, these entities will likely go out of business, resulting in the loss of dozens of jobs, ████████████████████████████ ████████████████████████████████████████████████.  Gorton Decl. ¶¶ 14, 16, 21, 35; Sreenivsan Decl. ¶5; Enright Decl. ¶¶ 4-5; Hamer Decl. ¶5.  Plaintiffs' Proposed Order also would prohibit Defendants from making even ordinary course payments without prior authorization by a fiscal agent designated by the Court, and would prohibit Defendants from making any payments (whether ordinary course or not) by credit card.  Proposed Order at I.C.E.  ████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████  Plaintiffs' argument that there is no harm to Mr. Gorton because he has no right to use the profits of LW (Pls. Mem. at 19) simply ignores the fact that ████████████████████████████████████████████ ████████████  Even Plaintiffs cannot seriously dispute that it would be a hardship for an individual to obtain pre-approval *for any payment of any kind* and to forgo all use of credit cards with respect to assets that cannot be enjoined.  ████████████████████████████████████ ████████████  He also has demonstrated that a freeze on his assets would otherwise result in hardship because ██████████████████████████████████████████████

███████████████████████████████

███████████████████.[4]

Far from clearly tipping decidedly in Plaintiffs' favor, the balance of hardships here tip decidedly the other way. Accordingly, the Court should deny Plaintiffs' requested preliminary injunction. *See Kraft Gen. Foods, Inc. v. Del Monte Corp.*, No. 93 CV. 4413, 1993 WL 557864, at *43 (S.D.N.Y. Sept. 22, 1993) (balance of hardships weighs against party whose only (prospective) injury would be money, while other party would suffer immediate injury to its business); *Joneil Fifth Ave. Ltd. v. Ebeling & Reuss Co.*, 458 F. Supp. 1197, 1201-02 (S.D.N.Y. 1978) (denying preliminary injunction that would harm third party's business); *Great Earth*, 302 F. Supp. 2d at 255 (denying preliminary injunction that would prevent third parties from taking steps to increase their business revenues).

### D. The Public Interest Does Not Support an Injunction

Plaintiffs must make a clear showing that the preliminary injunction they seek is in the public interest. *See Winter*, 129 S. Ct. at 374. This showing is particularly difficult where a case involves only private parties. *See, e.g., S.E.C. v. Cavanagh*, 445 F.3d 105, 118 n.29 (2d Cir. 2006). Plaintiffs have made no such showing here.

---

[4] Plaintiffs' proposed order purports to carve out from any asset freeze "purchases, sales or other investments of assets of third parties, or of assets of Defendants or Defendant Affiliates commingled with assets of third parties, by any Investment Affiliate pursuant to normal trading activities." (Proposed Order at I.A.3) Defendants understand that the intent of this carve-out is to allow third parties designated as Defendant Affiliates, including those whose operating funds may involve funds commingled with Defendants' funds, to carry on their normal business activities even if an asset freeze is entered in this action. Defendants' understanding is consistent with what Plaintiffs' counsel has previously represented to the Court. *See* Letter from Glenn D. Pomerantz to the Honorable Kimba M. Wood, dated June 15, 2010, at 2.

However, to the extent that it is Plaintiffs' position that their Proposed Order would freeze operating funds of any of the "affiliates" with operations other than normal trading activities and payments to third parties, without any exception for ordinary course payments (relief that as explained *infra* Plaintiffs are not entitled to), there would be an obvious, irreparable and severe hardship to these entities as well. *See* Gorton Decl. ¶ 35.

Instead, Plaintiffs rely entirely for their public policy argument on two cases from outside of this Circuit that did not even address a request for an injunction *freezing assets. See Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.,* 16 F.3d 1032 (9th Cir. 1994); *Echostar Satellite LLC v. Rollins,* No. 5:07-CV-00096, 2008 WL 314145 (S.D.W.Va. Feb. 4, 2008). Moreover, in *Nintendo,* the Ninth Circuit held that public policy only supports entry of *permanent injunctions* in intellectual property suits, and *not* preliminary injunctions. *Nintendo,* 16 F.3d at 1038. A preliminary injunction freezing assets in this private dispute, which would result in, among other things, the loss of dozens of jobs and the crippling of a not-for-profit organization, plainly would not be in the public interest. *See Am. Cyanamid Co. v. U.S. Surgical Corp.,* 833 F. Supp. 92, 125 (D. Conn. 1992) (job loss, especially in "difficult economic times," is not in public interest).

### E.    Plaintiffs Would Be Required to Post a Significant Security if A Preliminary Injunction Were Granted

Plaintiffs concede that where hardship may result from the issuance of a preliminary injunction, the movant must post a bond. Pls. Mem. at 19. Rule 65(c) of the Federal Rules of Civil Procedure specifically requires that the movant post a bond in an amount determined by the Court to provide security for the payment of all "costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." *See also Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 340-41 (1999) (Ginsburg, J., dissenting) (noting bond requirement as important safeguard).

As explained above, the preliminary injunction Plaintiffs seek would likely cause several entities to go out of business, dozens of people to lose their jobs, and other serious hardships to Defendants, ███████████████████. Thus, if the Court enters the requested relief, Plaintiffs should be required to post bond of ███████████████. *See Sanofi-Synthelabo v. Apotex Inc.,* 488 F. Supp. 2d 317, 349 (S.D.N.Y.), *aff'd,* 470 F.3d 1368 (Fed. Cir.

2006) (requiring plaintiff to post $400 million injunction bond to adequately protect defendants

from "lost profits, lost market share and associated costs"); *Shred-It Am., Inc. v. Haley Sales Inc.*,

No. 01-CV-0041E(SR), 2001 WL 209906, at *4 (W.D.N.Y. Feb. 26, 2001) (injunction bond should

be sufficient to fully compensate party likely to be driven out of business by injunction); *Algonquin*

*Power Corp., Inc. v. Trafalgar Power Inc.*, No. CIVA5:00CV1246, 2000 WL 33963085, at *22

(N.D.N.Y. Nov. 8, 2000) (considering defendant's inability to reinvest frozen assets in determining

amount of bond for injunction).

## II.  THE SCOPE OF THE PRELIMINARY INJUNCTION PLAINTIFFS SEEK GOES BEYOND THE COURT'S EQUITABLE POWERS, IS OVERBROAD AND LACKS THE REQUIRED SPECIFICITY

### A.  A Preliminary Injunction to Freeze Assets Is Only Available with Respect to the Profits of Lime Wire that Plaintiffs Seek to Disgorge from Defendants

The scope of Plaintiffs' Proposed Order covering "all" of Defendants' assets seeks to defy

the clear edict of the United States Supreme Court and, at the same time, impermissibly penalize

Defendants (and third parties).  Plaintiffs emphasize how large any statutory damages award might

be in this action as justification for the broad injunctive relief they seek.  But under the seminal case

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), a

preliminary injunction to freeze assets pending judgment on claims for money damages — actual,

statutory or punitive — is only available with respect to assets in which the moving party has a

contemporaneous "lien or equitable interest."  *Id.* at 310, 333; *see, e.g., CSC Holdings Inc. v. Redisi*,

309 F.3d 988, 996 (7th Cir. 2002) (*Grupo Mexicano* bars preliminary injunction to protect potential

judgment for statutory and actual damages).  This is true regardless of whether a court is sitting in

law or equity:  "Even when sitting as a court in equity, we have no authority to craft a 'nuclear

weapon' of the law" restraining a civil defendants' assets in which the movant has no lien or

equitable interest.  *Grupo Mexicano,* 527 U.S. at 332.

-16-

In *Grupo Mexicano*, the Supreme Court reversed the Second Circuit's holding that "a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 143 F.3d 688, 696 (2d Cir. 1998) (internal quotations and citation omitted); *see* 527 U.S. at 333. Although it was a case where there was no defense, the plaintiffs would likely be unable to satisfy any judgment due to the defendant's ongoing transfer of its assets to preferred creditors, and there was other evidence that the defendant was actively concealing assets, *see* 527 U.S. at 341-42, the Court held that a party seeking a money judgment may not obtain a preliminary injunction freezing assets to ensure that they are available to pay a subsequent judgment, *id.* at 333. In so holding the Court explained: "[W]e suspect there is absolutely nothing new about debtors' trying to avoid paying their debts, or seeking to favor some creditors over others-or even about their seeking to achieve these ends through 'sophisticated ... strategies. *The law of fraudulent conveyances and bankruptcy was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not.*" *Id.* at 322 (emphasis added). To hold otherwise, would be a "dramatic departure" from longstanding principles. *Id.* at 329; *accord Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 117 n.8 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 2958 (2008). After *Grupo Mexicano*, a preliminary injunction freezing assets is available only where a movant has an equitable interest or lien in specific funds — for example, a claim for disgorgement of "ill-gotten" profits. *See, e.g., SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734-35 (11th Cir. 2005); *Serio*, 2005 WL 3642217, at *6; *OSRecovery, Inc. v. One Groupe Int'., Inc.*, 305 F. Supp. 2d 340, 348 (S.D.N.Y. 2004); *Newby v. Enron Corp.*, 188 F. Supp.

-17-

2d 684, 696 n.6 (S.D. Tex. 2002) ("District courts since *Grupo Mexicano* have consistently

recognized the requirement that a private plaintiff must allege a cognizable claim in equity, having a

sufficient nexus to the assets sought to be enjoined, before a court may issue a prejudgment

injunction freezing or limiting a defendant's use of his assets.") (citing cases).

The import of *Grupo Mexicano* here is clear: Plaintiffs may not obtain a preliminary

injunction freezing assets in order to protect a potential judgment for actual, statutory or punitive

damages, whether or not the potential judgment might be sizeable, and with or without any intent to

frustrate it. *See, e.g.*, 527 U.S. at 322, 328, 333; *1800Postcards, Inc. v. Morel*, 153 F. Supp. 2d 359,

366 (S.D.N.Y. 2001). Thus, the very basis on which Plaintiffs seek to justify an asset freeze here –

the supposed likelihood of a large damages award – is foreclosed by *Grupo Mexicano*. Plaintiffs

can seek an asset freeze with respect to profits they could elect to disgorge, but even then the

amount of the freeze would have to be limited to the amount Plaintiffs could potentially disgorge,

and no more. *See, e.g.*, *Serio*, 2005 WL 3642217, at *9; *ETS Payphones*, 408 F.3d at 734-35;

*United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 496-97 (4th Cir. 1999)

("This nexus between the assets sought to be frozen through an interim order and the ultimate relief

requested in the lawsuit is essential to the authority of a district court in equity to enter a

preliminary injunction freezing assets.").[5]

Although Plaintiffs request "a preliminary injunction imposing an immediate freeze on all of

Defendants' assets" (Pls. Mem. at 1), their brief suggests that they in fact well understand that the

most to which they could be entitled to enjoin would be the amount of LW's allegedly ill-gotten

---

[5] In addition to seeking disgorgement, Plaintiffs also seek to set aside transfers and restitution (regarding the subject of those transfers) based on claims that Mr. Gorton fraudulently conveyed assets from LW to LWFLP. *E.g.*, Pls. Mem. at 2, 3-6. To the extent assets subject to recovery under Plaintiffs' fraudulent conveyance and/or unjust enrichment claim could be frozen under *Grupo Mexicano*, all such assets would be subsumed as part of the allegedly "ill-gotten gains" from LW in any event. *See* Pls. Mem. at 5-6.

profits distributed to the other defendants or retained by LW. *See, e.g.*, Pls. Mem. at 1, 2-3. But

Plaintiffs try and confuse the Court into granting a freeze over assets beyond profits received from

LW by referencing the on-point Supreme Court authority in a footnote (Pls. Mem. at 10 n.5), and

citing extensively in the text of their brief to cases that were decided before *Grupo Mexicano* and

relied upon by the Second Circuit for its holding that was ultimately reversed by the Supreme Court.

*See* Pls. Mem. at 8-9 (citing *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77 (2d Cir. 1996);

*Republic of Phil. v. Marcos*, 806 F.2d 344 (2d Cir. 1986); *In re Feit & Drexler, Inc.*, 760 F.2d 406

(2d Cir. 1985)); *see Alliance Bond*, 143 F.3d at 692-93, 695, 697. The only two post-*Grupo*

*Mexicano* cases cited by Plaintiffs are entirely consistent with *Grupo Mexicano's* holding that a

movant must have a lien or equitable interest in the assets sought to be frozen on a motion for

preliminary injunction. *See Quantum*, 144 F. Supp. 2d at 249 (discussing *Grupo Mexicano* and

entering injunction of *specific assets* in which movant had *a security interest*); *Mason Tenders Dist.*

*Council Pension Fund v. Messera*, No. 95 CIV. 9341 (RWS), 1997 WL 223077 at *8 (S.D.N.Y.

May 7, 1997), at *8 (to obtain a preliminary injunction freezing assets plaintiff must show"(2) that

the final relief requested is equitable in nature; [and] (3) that the frozen assets are related to the

subject matter of the action").

   Although Plaintiffs concede as they must that any asset freeze must be limited to "*the direct*

*proceeds* of Defendants' illegal conduct that is the subject matter of this action" (Pls. Mem. at 11)

(emphasis added), Plaintiffs have failed to make any showing as to that amount. It is "incumbent on

a district court to match the scope of its injunction to the most probable size of the likely judgment,

thereby sparing the defendant from undue hardship." *Grupo Mexicano*, 527 U.S. at 340-41

(Ginsburg, J., dissenting) (internal quotations omitted). Thus, Plaintiffs have "the burden [of]

showing the amount of assets subject to disgorgement (and, therefore available for freeze)." *ETS*

*Payphones*, 408 F.3d at 735. In addition, the preliminary injunction "must perforce be limited to those proceeds not identified as having been dispersed to other entities and individuals, who are not parties to this litigation." *Serio*, 2005 WL 3642217, at \*9 (citations omitted).

Plaintiffs have made no showing as to the value of the assets in which they claim equitable interest, save a vague allegation that "Lime Wire has earned significant profits from its facilitation of enormous infringement." Pls. Mem. at 4. In fact, as determined by an independent accountant,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ Thus, at most, any asset freeze may only be entered with respect to the assets of LW, LG and LWLFLP, and any asset freeze with respect to Mr. Gorton must be limited to ████████.[6]

---

[6] Plaintiffs cursorily point out this Court's authority through Rule 64 of the Federal rules of Civil Procedure to issue a preliminary injunction under New York law (*i.e.*, N.Y. C.P.L.R. § 6301). Pls. Mem. at 9 n.4. But the standards governing injunctive relief under New York law are identical to those governing Rule 65 of the Federal Rules of Civil Procedure. *Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541, 547 (2000).

Without any discussion whatsoever, Plaintiffs also mention in a footnote New York's attachment statute, N.Y. C.P.L.R. § 6201. Pls. Mem. at 9 n.4. But Plaintiffs have neither moved for relief under that statute, complied with its formal requirements (including the required plaintiff's affidavit), nor offered any argument as to why they should be entitled to relief under it. They would not be. As Plaintiffs presumably are aware, "Plaintiffs' burden of proving the right to an attachment is 'high'" and "the New York attachment statutes are construed strictly against those who seek to invoke the remedy." *In re Amaranth Natural Gas Commodities Litig.*, __ F. Supp. 2d __, No. 07 CIV. 6377 (SAS) 2010 WL 1838718, at \*2 (S.D.N.Y. May 3, 2010). Indeed, Plaintiffs' motion makes no showing whatsoever as to certain elements required for attachment and falls well short of meeting other elements. Plaintiffs cannot do an end run around "complying with local attachment and garnishment statutes" simply by styling their request as one for a preliminary injunction. *Grupo Mexicano*, 527 U.S. at 330-31. To the extent Plaintiffs determine to move under N.Y. C.P.L.R. § 6201, Defendants reserve the right at that time to oppose any such motion.

**B.    The Proposed Injunction is Overly Broad and Lacks the Required Specificity**

Preliminary injunctive relief "should be 'narrowly tailored to fit specific legal violations' and to avoid 'unnecessary burdens on lawful commercial activity.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 119 (2d Cir. 2009) (citation omitted); *see also Zepeda v. United States I.N.S.*, 753 F.2d 719, 728 n.1 (9th Cir. 1985). Moreover, every restraining order must "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). An injunction order that is indefinite, vague or ambiguous will be vacated. *See, e.g., Fonar Corp. v. Deccaid Servs., Inc.*, 983 F.2d 427, 430 (2d Cir. 1993); *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 52 (2d Cir. 1996).

The scope of the relief Plaintiffs request is inordinate. Beyond seeking to enjoin *all* of the assets of *all* of the Defendants, Plaintiffs request a slew of relief in their Proposed Order that they do not mention anywhere else in their moving papers, much less provide any support for, and to which they are not entitled. They also have included language that is vague and ambiguous, making compliance with the Proposed Order uncertain.

First and foremost, Plaintiffs include within the sweep of their proposed enjoined persons not only the named Defendants, who are subject to this Court's jurisdiction, but also a long list of non-parties (Proposed Order at I.A) that far exceeds the permissible scope of persons or entities who can be bound by an injunction under Rule 65(d)(2) (limiting persons bound by an injunction to "the parties," and their "officers, agents, servants, employees, and attorneys" and "other person who are in active concert or participation with" any of those persons or entities). Plaintiffs have offered no explanation for their inclusion of additional persons such as "distributors," "corporations" and "affiliates" in their definition of persons to be bound by the order. The law does not permit it. Although a party that is "in active concert" with a defendant may be held in contempt for

facilitating a violation of an injunction, it is "axiomatic that courts may only enjoin parties before the court." *E.A. Renfroe & Co., Inc. v. Moran*, 338 Fed. Appx. 836, 839 (11th Cir. 2009) (per curiam); *see Additive Controls & Measurements Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996) ("Courts of equity have long observed the general rule that a court may not enter an injunction against a person who has not been made a party to the case before it."); *Dystar Corp. v. Canto*, 1 F. Supp. 2d 48, 57-58 (D. Mass. 1997) ("'Having a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the injunction, but does not justify granting injunctive relief against the non-party in its separate capacity.'"). Plaintiffs have made no showing, much less the showing of extraordinary circumstance that in rare instances has justified an exception to this rule. *See SEC v. Hickey*, 322 F.3d 1123, 1133 (9th Cir. 2003) (noting that "the mere fact of control over assets whose title belongs to a third party does not justify freezing the third party's assets" but ordering asset freeze against third party in SEC enforcement action after defendants failed to disgorge profits pursuant to court order); *SEC v. Zubkis,* No. 97 CIV. 8086 (JGK) 2003 WL 22118978, at * 6 (S.D.N.Y. Sept. 11, 2003) (same).

Plaintiffs also include a long, vague, and ambiguous description of the assets to be frozen, which again includes assets that Defendants do not own. *See* Proposed Order at I.A (proposing freeze over all "funds, real or personal property, or other asset" "in the actual or constructive possession of Defendants, "controlled by . . . or subject to access by" Defendants, or "in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belonging to, any corporation, partnership, trust or any other entity directly or indirectly owned, managed, or controlled by, or under common control with Defendants"). But Plaintiffs cannot freeze anything other than profits obtained from LW, and they certainly cannot, and have provided no basis to,

freeze assets that Defendants do not even own.  Plaintiffs' proposed order is also overbroad in that it

seeks to freeze interests and assets that Defendants hold in conjunction with other parties and

entities wholly unrelated to this litigation.  Multiple entities listed in Section I.A.3 of Plaintiffs'

proposed order are limited liability companies and limited partnerships with members and partners

whose interests and assets are not, and should not, be reachable by Defendants' judgment creditors

pursuant to applicable state law governing these entities.[7]  Plaintiffs have failed to articulate a basis

to extend the asset freeze order to cover the interests of non-parties to the litigation, especially when

these interests would be unavailable even in the event of judgment in Plaintiffs' favor.

Moreover, the wording of Plaintiffs' Proposed Order with respect to the entities Plaintiffs

have deemed "Defendant Affiliates," many of which no longer exist, Gorton Decl. ¶ 27, is

ambiguous.  It refers both to "any assets held by or for Defendants" at any financial institution

including any of the listed entities, but also includes earlier language regarding any funds "in the

possession of" the "Defendant Affiliates."[8]  Such vague and seemingly contradictory language

violates the requirement that the "specificity required for an injunction is that 'the party enjoined

must be able to ascertain from the four corners of the order precisely what acts' are forbidden." *In

re Baldwin-United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985) (quoting *Sanders v. Air Line Pilots

Ass'n*, 473 F.2d 244, 247 (2d Cir.1972)).  Moreover, Plaintiffs certainly have not met their burden

of showing that they are entitled to the relief they seek when they do not even address this provision

in their brief.  *Republic of Phil. v. N.Y. Land Co.*, 852 F.2d 33, 36 (2d Cir. 1988).

---

[7] *See* N.Y. LTD. LIAB. CO. LAW §§ 607(a) and (b) (McKinney 2010) (limiting judgment debtor
to charging order on LLC debtor member's interest and expressly prohibiting right to property of
LLC); DEL. CODE ANN. tit. 6, §§ 18-703(a) and (e) (2010) (same); *see also* NEV. REV. STAT.
§§ 87A.480(1) and (5) (West 2009) (limiting judgment creditor to exclusive remedy of charging
order on judgment debtor limited partner's interest).

[8] Section I E sets forth an exception for ordinary course payments that only applies to the named
Defendants.  So if Plaintiffs' Proposed Order does restrict assets of non-parties and it were adopted
by the Court, non-parties would be subject to a substantially harsher freeze than Defendants.  This
cannot possibly be what Plaintiffs had in mind.

-23-

They also do not address and could not justify their request for the appointment of a "fiscal agent" to authorize all payments of "reasonable, usual, ordinary, and necessary living and business expenses, and reasonable attorney's fees." Proposed Order at I.E. Preliminary injunctive relief must be "narrowly tailored" to avoid "unnecessary burdens on lawful commercial activity." *Faiveley Trans.*, 559 F.3d at 119. Thus, "there are few cases where a 'special fiscal agent' has been utilized." *Republic of Phil.*, 852 F.2d at 36. Plaintiffs have offered no evidence to suggest that were the Court to issue injunctive relief, the added burden of a fiscal agent would be "clearly necessary" to avoid irreparable harm. *Id.* There is no evidence that Defendants have ever violated or attempted to circumvent any previous order of this or any other court. *Cf. Leone Indus. v. Associated Packaging, Inc.*, 795 F. Supp. 117, 121 (D.N.J. 1992). The appointment of a fiscal agent is not warranted here.

Plaintiffs also seek to prohibit the incurring of any "charges on any credit card" issued in Defendants' names (Proposed Order at I.C), notwithstanding the burdens of dealing with automatic business payments made with those cards and the like, and the "repatriation" of "all documents and assets" located outside of the United States, without regard, for example, to whether any such assets are indirectly held through domestically purchased mutual or other funds (*Id.* at III). They have included a lengthy section on "Duties of Asset Holders" that requires affirmative creation of financial reports by third party financial institutes (*Id.* at II.C) and contains an exception that no financial institution could possibly implement (*Id.* at II.F). And they have included a provision requiring burdensome financial reports to be affirmatively created by the Defendants concerning *all* of Defendants' assets. *Id.* at IV. Plaintiffs have not provided any support that would permit entry of an order containing such unfounded and overly burdensome demands. Thus, there is no basis to

include any of them (or any of the other provisions for which Plaintiffs have failed to come forward with support) in any asset freeze order.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order DENYING Plaintiffs' Motion to Freeze Defendants' Assets. In the event the Court concludes that an Order should be entered freezing any assets, Defendants respectfully submit that any such Order must be limited to the assets of LW, LG and LWFLP, plus ███████ of Mr. Gorton's assets, representing the LW profits from the distribution of the LimeWire Software that he received. Additionally, the language of any such Order should be limited to a freeze with respect to persons who may be enjoined under Rule 65, and to allow for ordinary course payments.

Respectfully submitted,

Dated:  June 30, 2010
        New York, New York

Colleen Bal (*pro hac vice*)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
Spear Tower, Suite 3300
San Francisco, California 94105
Tel:  (415) 947-2000
cbal@wsgr.com

By: /s/ Tonia Ouellette Klausner
        Tonia Ouellette Klausner

Michael S. Sommer
Tonia Ouellette Klausner
Jessica L. Margolis
Michael S. Winograd
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel:  (212) 999-5800
msommer@wsgr.com; tklausner@wsgr.com;
jmargolis@wsgr.com; mwinograd@wsgr.com

*Attorneys for Defendants Lime Wire LLC,
Lime Group LLC, Mark Gorton and M.J.G.
Lime Wire Family Limited Partnership*