**REDACTED VERSION
-COMPLETE VERSION FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION FREEZING DEFENDANTS' ASSETS**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100

*Attorneys for Plaintiffs*

July 7, 2010

I.     **INTRODUCTION**

For all the sound and fury in their Opposition, Defendants say *nothing* about Gorton's admission that he transferred Lime Group's 87.1% ownership interest in Lime Wire to his Lime Wire FLP because he was "highly concerned about being sued" and wanted to "protect the assets in the event of a legal judgment against me personally." Defendants also ignore the fact that Falco and Bildson each independently corroborated Gorton's deceitful intent. Lime Wire already has made at least ▮▮▮▮▮▮▮▮▮▮ to Gorton's Lime Wire FLP. A forensic accountant and ignoring the critical facts will not make Gorton's demonstrated intent to shield assets to frustrate a legal judgment disappear. Under settled law, Gorton's undisputed fraudulent intent alone is sufficient to warrant the freezing of Defendants' assets.

The arguments that Defendants do make in their Opposition are meritless. Defendants are wrong that the freeze must be limited to Lime Wire's profits instead of its potential statutory damages liability. The cases are clear that Plaintiffs are entitled to an asset freeze that secures the funds necessary to cover, even in small part, the *total* potential statutory award. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999) – Defendants' showpiece case – is inapposite because Plaintiffs *have* a judgment that Defendants are liable.

Defendants also are wrong that the Proposed Order would block *legitimate* expenditures in the proper course of business to true third parties. The Order allows Defendants to make ordinary course payments, but provides procedures (including a fiscal agent) to ensure the payments are in fact legitimate. Based on the evidence of Gorton's transfers to Lime Wire FLP, there is strong reason to fear that shuffling assets among "Lime" entities is subterfuge for trying to evade a judgment. Notably, Lime Brokerage, which told the Court it wanted to participate in this Motion to show why it could not be used as a conduit for improper asset transfers, will not seek to file a brief at all. On the day it had to produce the communications with Gorton that were a prerequisite to its motion, *see* Doc. No. 258, Lime Brokerage announced it would not produce any documents or a witness. Klaus Reply Decl. ¶ 6. Legitimate payees have nothing to fear from the Proposed Order's transparency requirements. This Motion should be granted.

## II. THE COURT HAS AMPLE AUTHORITY TO FREEZE THE ASSETS OF DEFENDANTS TO SECURE A STATUTORY DAMAGES AWARD

The Court has broad authority to freeze Defendants' assets to secure a potential statutory damages award. Defendants' contention that under *Grupo Mexicano* "at most Plaintiffs would be entitled to a freeze order limited" to equitable relief, *i.e.*, "the profits of LW from its distribution of the LimeWire Software," Opp. at 12, is wrong.

*Grupo Mexicano* involved an "unsecured" creditor's "rights at law or in equity" in a debtor's property "*before judgment (or its equivalent)[.]*" 527 U.S. at 330 (emphasis added). Here, in contrast, the Court has entered summary judgment of liability. *Motorola, Inc. v. Abeckaser*, 2009 WL 1362833 (E.D.N.Y. May 14, 2009), is squarely on point. The district court granted Motorola summary judgment on two trademark claims. *Id*. at *1. Like Plaintiffs here, Motorola then moved for an order under Rule 65 to restrict the transfer of the defendants' assets necessary for Motorola's potential statutory damages award. *Id*. The court granted the relief, noting that Motorola was "entitled to some portion of the $16,000,000 statutory damages award it seeks," and "'*even where the ultimate relief sought is money damages*, federal courts have found preliminary injunctions appropriate where it has been shown that the defendants intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction . . . .'" *Id*. at *3-4 (quoting *In re Feit & Drexler*, 760 F.2d 406, 416 (2d Cir. 1985)) (emphasis added). The court rejected defendants' argument that *Grupo Mexicano* barred the injunction. It held that Motorola had "already prevailed" on its claims, and its "entitlement to judgment in an amount yet to be determined is certain rather than speculative." *Id*. at *4 n.4. *Accord S.E.C. v. Cavanagh*, 2004 WL 1594818, at *30 (S.D.N.Y. July 16, 2004) ("distinguish[ing] *Grupo Mexicano*" where the "SEC has shown that it is entitled to summary judgment against Hantges"); *Iantosca v. Benistar Admin Servs., Inc.*, 2009 WL 2382750, at *10 (D. Mass. July 30, 2009) (*Grupo Mexicano* distinguishable because, *inter alia*, plaintiffs "obtained a judgment against some of the defendants").

*Grupo Mexicano* also is inapplicable because Plaintiffs assert a claim for fraudulent

conveyance under §§ 276 and 279(a) of the N.Y. Debt. & Cred. Law, and seek an "order restraining" Gorton "from further disposing of property." First Am. Compl. ("FAC") ¶ 119. Courts repeatedly have held that *Grupo Mexicano,* which "does not involve a claim of fraudulent conveyance," 527 U.S. at 324 n.7, does nothing to restrict such relief. *See Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 350 (N.D.N.Y. 2001) ("*Grupo Mexicano* . . . easily distinguishable" where plaintiff seeks "relief to which it is entitled under Debtor and Creditor Law § 279 should it prevail on its section 273 or 276 claims"); *In re Focus Media Inc.,* 387 F.3d 1077, 1085 (9th Cir. 2004) (*Grupo Mexicano* "exempts from its proscription against preliminary injunctions freezing assets cases involving . . . fraudulent conveyances"). This is true even though Plaintiffs' underlying claims are legal in nature. *See Capital Distributions Services, Ltd. v. Ducor Express Airlines, Inc.*, 440 F. Supp. 2d 195, 210 (E.D.N.Y. 2006) ("claim of fraudulent conveyance . . . is essentially a claim for money damages . . . . [A] preliminary injunction is appropriate to prevent . . . actions to frustrate a judgment").[1]

### III. THE TRADITIONAL EQUITABLE FACTORS ALL FAVOR ISSUANCE OF AN ASSET FREEZE INJUNCTION

#### A. Plaintiffs Have Established Irreparable Harm

All that is required to establish irreparable harm is "evidence show[ing] that a party intends to frustrate any judgment on the merits by making it uncollectible." *Pashaian v. Eccelston Properties*, Ltd., 88 F.3d 77, 87 (2d Cir. 1996). *See also Encore Credit Corp. v. LaMattina*, 2006 WL 148909, at *5 (E.D.N.Y. Jan. 18, 2006) ("a demonstration of intent to frustrate a judgment will satisfy the requirement of a showing of irreparable harm"); *Sea Carriers Corp. v. Empire Programs, Inc.*, 2006 WL 3354139, at *5 (S.D.N.Y. Nov. 20, 2006) (same). With Gorton's admission of his fraudulent intent, corroborated by the Falco and Bildson

---

[1] Plaintiffs' assertion of equitable relief claims in the alternative, *see* FAC ¶ 75, also means that *Grupo Mexicano*'s rule is inapplicable, notwithstanding the fact that the relief Plaintiffs ultimately seek is legal in nature. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (even though plaintiff elected actual damages rather than equitable relief, "a restraint on assets was still proper if a suit sought equitable relief" in the "alternative in its initial complaint").

declarations, Plaintiffs have more than met that burden. Defendants' responses do not withstand scrutiny.

First, Plaintiffs did not "delay" in bringing the Motion (Opp. at 7), which was immediately filed following the Court's summary judgment order. If Plaintiffs had moved before the Court's summary judgment ruling, Defendants undoubtedly would have argued that the Court could not enter an asset-freeze consistent with *Grupo Mexicano*, because their liability had not been established. More important, Defendants show *no* prejudice from the passage of time; any prejudice would be "ameliorated by the fact that plaintiffs have established more than a likelihood of success on the merits-they have sought and been granted summary judgment[.]" *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1094 (C.D. Cal. 2006).

Defendants' submission of a declaration from Anthony Lendez, a forensic accountant, to show that Defendants did not "intend to dissipate LW's assets or otherwise evade potential judgment creditors" (Opp. at 7-9) simply ignores Gorton's sworn *admission* that he transferred assets to protect them from a judgment. Specifically, Gorton testified at his deposition that he conveyed Lime Group's 87.1% ownership interests in Lime Wire to Lime Wire FLP (the sole beneficiaries of which are Gorton, his wife and his two children) because he was "highly concerned about being sued" and "to protect the assets in the event of a legal judgment against me personally." Mot. at 5 (citing Gorton (Vol. VII) Tr. 77:4-78:4). As a result of such transfers, Lime Wire FLP received ███████████████ from Lime Wire between ███████████ ███████████. *Id.* at 5-6 (citing Ex. 465; Klaus Decl., Ex. 4 (Gorton Tr. at 127:3-11)). Even if Lendez is correct that these and subsequent cash payments to Lime Wire FLP are ████████████████████████████████████████████████████ Lendez Decl. ¶ 11, that says nothing about whether the initial transfer of ownership interests to the partnership, which facilitated these payments in the first place, was fraudulent. Even without Gorton's admissions, Lendez's opinions as to whether Defendants "intend[ed] to dissipate" assets are inadmissible: "Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y.

- 4 -

2004); *see Highland Capital Management, L.P. v. Schneider*, 551 F. Supp. 2d 173, 182 (S.D.N.Y. 2008).

Similarly misplaced is Defendants' argument that the authorities relied upon in the Motion involved more "egregious conduct" than that presented here. Opp. at 8-10. In those cases, the defendants had not *admitted under oath* that they dissipated their assets to protect them from legal judgment, and the courts had no choice but to infer such intent from the egregiousness of their conduct. Where, however, Defendants "have admitted" that they "undertook transfers" to "frustrate" a judgment, then "*[a] fortiori*, the irreparable harm requirement is satisfied" based upon Defendants' "completed actions to frustrate a judgment, rather than an inferred intention to take future such actions." *Pashaian*, 88 F.3d at 87.

Equally meritless is Defendants' suggestion that despite Gorton's past fraudulent intent, there is no "evidence of a *current intent* to dissipate assets." Opp. at 9 (emphasis added). Gorton's unequivocal admission of his fraudulent intent makes it highly likely that he will engage in such conduct again, and under settled law, an injunction should be issued to preclude that possibility. *See, e.g., Motorola,* 2009 WL 1362833, at *3 ("evidence that defendant . . . has already disposed of a substantial asset leads me to conclude that it is likely he will continue to dispose of other assets in an attempt to render a judgment against him uncollectible"); *S.E.C. v. Schiffer*, 1998 WL 307375, at *6 (S.D.N.Y. June 11, 1998) ("As stated by the Second Circuit, 'past illegal conduct is highly suggestive of the likelihood of future violations[.]'").

**B.     Plaintiffs Have Established A Likelihood of Success on the Merits or At the Very Least Serious Questions Going to the Merits**

Plaintiffs have demonstrated that they are overwhelmingly likely to succeed on the merits of their claims, or at the very least have raised sufficiently serious questions on the merits. With respect to Defendants Lime Wire, Lime Group, and Gorton, the Court already has found these Defendants liable as a matter of law for the inducement of copyright infringement, common law copyright infringement, and unfair competition. Defendants' only response is that the Court "decided liability only with respect to thirty sound recordings." Opp. at 10. Defendants' "only

30 Recordings" argument is as baseless here as it is in opposition to Plaintiffs' Permanent Injunction Motion against Defendants' ongoing infringing conduct. *See* Plaintiffs' Reply in Support of Permanent Injunction Motion at 1-2.

Plaintiffs also are very likely to succeed in proving that Gorton possessed an "actual intent" to defraud creditors under N.Y. Debt. & Cred. Law § 276 by transferring funds to Lime Wire FLP, and that the partnership has been unjustly enriched by these illegal conveyances. To succeed on a claim under § 276, a plaintiff need only show "actual intent to defraud creditors on the part of the transferor," which Gorton's admissions alone establish. *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 330 (E.D.N.Y. 2009). Similarly, Lime Wire FLP clearly was unjustly enriched because it received assets at Plaintiffs' expense, as any funds fraudulently conveyed to Lime Wire FLP cannot be used to satisfy a future judgment. *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983). Defendants argue that the Court denied summary judgment on these claims and found genuine issues of fact, Opp. at 11, but leave out that it was *Defendants'* summary judgment motion that was denied.[2] Defendants' contention that the Court must look at the "entire context" where "intrafamily transfers" are at issue continues to ignore the fact that Gorton already has *admitted* to the fraudulent nature of his conveyances. Although Defendants are correct that *In re Manshul Const. Corp.*, 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) found *some* asset transfers to be part of *bona fide* estate and tax planning, *id*. at 32-36, Defendants disregard the court's rejection of the defendant's claim that he made transfers to his wife as "part of an overall estate and tax plan" given his accountant's testimony that the defendant "told him he transferred funds because of the pending claims," *id*. at *47. Here, the Court not only has Falco and Bildson's testimony that Gorton told them that he had transferred assets to the partnership to frustrate a judgment, but Gorton's own admission to that fact.

---

[2] If *Plaintiffs* had brought a summary judgment motion on these claims, Gorton's self-serving, post-deposition declaration statements would not have created a genuine issue with his sworn deposition testimony. *Hay v. Burns Cascade Co., Inc.*, 2009 WL 414117, at *6 (N.D.N.Y. Feb. 18, 2009) (it is "well settled in the Second Circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded" on summary judgment).

- 6 -

### C. The Balance of Hardships Decidedly Tips in Plaintiffs' Favor

The balance of hardships decidedly favors Plaintiffs. "Without an injunction," Plaintiffs are at risk of "not be[ing] paid monies that" that "are justly due and owed" as compensation for the vast harm Defendants' illegal conduct has caused them. *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of VA,* 144 F. Supp. 2d 241, 249 (S.D.N.Y. 2001).

By contrast, Defendants would suffer no material burdens by having the injunction issue. The injunction would simply preserve the status quo, and any remaining assets after a damages determination will be "unfrozen" for Defendants' use. Plaintiffs' Proposed Order *would* allow Defendants to pay reasonable, ordinary, and necessary living and business expenses and reasonable attorney's fees. *See Allstate Ins. Co. v. Davidson Medical Group*, 2004 WL 2357797, at *4 (E.D. Pa. Oct. 18, 2004) ("irreparable harm Plaintiffs would suffer in the absence" of asset freeze "outweighs the harm to [defendant] from the preliminary injunction" which "grants [defendant] an exception for ordinary living expenses").

Defendants fail to identify any real hardship they will suffer as a result of an asset freeze. Defendants completely misread and distort the Proposed Order in arguing that it would "prohibit" them "from making any payments by credit card," even "ordinary course payments." Opp. at 3-4, 13; Searle Decl. ¶ 6. In reality, the Order provides that "*[n]otwithstanding* the asset freeze provisions of Sections A-D above," including the freeze on "[i]ncurring charges" on credit cards in the Defendants' names, "Defendants *may pay* reasonable, usual, ordinary, and necessary living and business expenses, and reasonable attorney's fees, as authorized by a fiscal agent designated by the Court." I.E (emphases added). Obviously, the Court's agent can pre-authorize Defendants to make payments, including via credit card, for "reasonable, usual, ordinary, and necessary living and business expenses," and can do so through a procedure that will impose minimal burden. Indeed, all Defendants have to do is provide the agent with a transparent record of their legitimate living and business expenses. Beyond that, the *only* other purported burden on Defendants is that ████████████████████████████████████
████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████

       Defendants also contend that an injunction would harm ████████████████ and Open Plans, three entities which purportedly "rely upon Mr. Gorton's funding for their existence." Opp. at 13. But the declarations from these entities are a sideshow. Regardless of the type of work these organizations do, the fact is they have no entitlement to assets that are the subject of a potential damages award resulting from Defendants' widespread illegal conduct. *S.E.C. v. Byers*, 2009 WL 33434, at *4 (S.D.N.Y. Jan. 7, 2009) (holding that even if intervenors are "innocent third parties" they "should not be permitted to benefit from [defendant's] illegal activities"). Indeed, courts have granted preliminary injunctions *freezing* the assets of third parties which have received funds that are subject to a claim for relief in a pending action. *See S.E.C. v. Milan Capital Group, Inc.*, 2000 WL 520653, at *2 (S.D.N.Y. Apr. 28, 2000) (granting preliminary injunction freezing assets of third party where defendant-broker fraudulently deposited misappropriated investors' funds into the third party's business account). Moreover, there is nothing preventing these entities from seeking funding from other sources besides Gorton, which one would expect in the normal course. Finally, Defendants focus on the hypothetical job losses at these entities, yet ignore the real, substantial job losses Plaintiffs already have suffered as a result of Defendants' facilitation of mass piracy.[3]

       **D.**    **The Public Interest Weighs in Plaintiffs' Favor**

       The public interest would be served by the issuance of an injunction. First, contrary to Defendants' suggestion (Opp. at 14), courts routinely find the public interest advanced by asset freezes entered in litigation between private parties given the risks, clearly presented here, of fraud and unjust enrichment. *See Allstate*, 2004 WL 2357797, at *4 ("the prevention of unjust

---

[3] Even if such entities had legitimate claims to any of the funds that are the subject of this action, which they do not, the Court or its appointed agent, with the cooperation of the parties, can determine a proper level of legitimate funding for such parties.

enrichment by means of fraud or misappropriation, even that affecting only private entities, is in the general public interest."). Moreover, entering an asset freeze will serve to enforce the federal copyright laws, which likewise benefits the public interest. *See, e.g., Broadcast Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 543-44 (E.D. Pa. 2008) (an "injunction which enforces federal copyright laws, and protects the rights and responsibilities defined by them, is by definition in the public interest"); *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 155 (D.N.J. 1982) ("preliminary injunction will 'preserve the integrity of the copyright laws'"). Defendants have advanced no compelling countervailing public interest served by their ability to transfer funds without limitation.

### IV. DEFENDANTS HAVE NOT MET THEIR BURDEN OF JUSTIFYING A SPECIFIC BOND AMOUNT

Defendants contend that Plaintiffs must post a bond if the injunction is granted (Opp. at 15), but ignore the fact that the "burden is on the party seeking security to establish a *rational basis for the amount* of the proposed bond." *Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006) (emphasis added). Defendants do not identify any bond amount, much less a "rational basis" for one, ██████████████████████████████████████████████████████████████████████ Opp. at 15. This is wildly speculative and lacks any "rational basis" warranting a bond. Defendants have not met their burden of establishing a specific bond amount, and a reasonable, detailed rational for that amount.

### V. THE PROPOSED INJUNCTION IS NARROWLY TAILORED AND SPECIFIC

Although Defendants argue that the injunction "exceeds the permissible scope of persons or entities who can be bound by an injunction," (Opp. at 21), a "number of courts have concluded that asset freezes, including asset freezes of third parties' assets, are within a court's equitable power to enforce contempt." *Steffen v. Gray, Harris & Robinson, P.A.*, 283 F. Supp. 2d 1272, 1282-83 (M.D. Fla. 2003). *See also S.E.C. v. Cavanagh*, 155 F.3d 129, 136-37 (2d Cir. 1998) (freezing spouse's bank account that received proceeds from other spouse's involvement

in securities fraud); *S.E.C. v. Pinez*, 989 F. Supp. 325 (D. Mass. 1997) ("Federal courts have jurisdiction . . . to freeze the assets of a wrongdoer in the possession of a non-party."). In *S.E.C. v. Hickey,* 322 F.3d 1123 (9th Cir. 2003), which Defendants rely upon, the Ninth Circuit held that the court had authorization to freeze a non-party's assets, even where there was no alter ego relationship between the defendant and the non-party. *Id*. at 1131.

Moreover, the proposed injunction is carefully circumscribed to reach only those third parties with assets (1) "in the actual or constructive possession of Defendants"; (2) "owned or controlled by, or held, in whole or in part, for the benefit of, or subject to access by, or belonging to, Defendants;" or (3) in the "possession of, or owned or controlled by, or subject to access by, or belonging to, any corporation, partnership, trust or any other entity directly or indirectly owned, managed, or controlled by, or under common control with, Defendants." I.A.1-3. To the extent that any of the third parties listed in the Proposed Order do *not* fall within this definition, they may seek an exemption from the Order. Moreover, the injunction does *not* restrict "assets of third parties (other than Defendants or Defendant Affiliates)" which are "owned, controlled or possessed by any Investment Affiliates" of the Defendants, such as Lime Brokerage, and *permits* "purchases, sales or other investments" of "assets of Defendants or Defendant Affiliates commingled with assets of third parties, by any Investment Affiliate" provided that such transactions "will be in exchange for assets of reasonably equivalent value."[4] I.F. Finally, the Order's definition of "assets" is sufficiently definite, covering "funds, real or personal property." I.A. To the extent Defendants believe that this or any other language in the order needs to be clarified or refined, Plaintiffs are amenable to meeting and conferring to address their concerns.

## VI. CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion.

---

[4] As noted, Lime Brokerage, which asked for permission to file an intervention motion after representing that it was "in no way involved in Defendants' music-sharing business," decided at the last minute not to produce its communications with Mr. Gorton, which the Court had ordered as a condition of Lime Brokerage's motion. Doc. No. 258. The timing of Lime Brokerage's about-face raises serious questions about what its documents would have shown.

- 11 -

Dated:  July 7, 2010            Respectfully submitted

                */s/ Kelly M. Klaus*
                Kelly M. Klaus

             Attorney for Plaintiffs
             Munger, Tolles & Olson LLP
             355 South Grand Avenue, 35th Floor
             Los Angeles, CA 90071-1560
             (213) 683-9100
             (213) 687-3702 (Fax)