UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.,

    Plaintiffs,

v.

LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,

    Defendants.

Case No. 06 CV 5936 (KMW)

**ECF Case**

### DECLARATION OF GEORGE SEARLE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION FREEZING DEFENDANTS' ASSETS

I, George Searle, the undersigned, hereby declare:

1. I am over twenty-one (21) years of age and am of sound mind. I have personal knowledge of the facts stated herein, I am competent to testify thereto, and if called to testify, I could and would testify to the following.

2. I am the Chief Executive of defendant Lime Wire LLC and am familiar with its business and operations.

3. Pre-approval for ordinary course expenditures would cause Lime Wire significant hardship. It would be cumbersome and time-consuming, and depending on the time required for the pre-approval cycle, it could negatively impact and delay required payments such as payroll, rent, royalty payments for licensed music, and other large expenditures. For example, in May, 2010 there were 147 separate outflows from our primary cash account, including thirty-two

royalty payments for licensed music in the LimeWire Store, four automatic transfers to our payroll company (of which we were notified only between two and four days in advance), in amounts varying from about $200,000 to $300,000, a rent check for $130,103.58, and significant legal bills.

4. Other outflows relating to ongoing business operations and development include royalty advances and delivery fees for licensed music, facilities maintenance, hardware and software purchases, and contractor and vendor payments – many of which are negotiated, entered into, and paid based on business judgment and under circumstances where time is of the essence.

5. Many of these expenditures support aspects of Lime Wire's business not challenged by Plaintiffs. For example, approximately one-third of the 147 outflows in May were for the LimeWire Store. Lime Wire is also actively working to develop an updated version of its software that would drastically increase the efficacy of filtering to protect against the future downloading of copyrighted works. Requiring pre-authorization for all payments by Lime Wire could severely burden Lime Wire's ability to operate even the unchallenged aspects of its business and slow down its development work on a filtering mechanism for the software.

6. It would also be a significant burden to Lime Wire if it could not continue making ordinary course payments by credit card. In May alone, there were approximately 30 Lime Wire credit card holders who, in aggregate, made approximately 375 separate business-related charges, including hardware, software, internet services, travel, food and office supplies. Forcing Lime Wire to completely change its method of payment would cause significant disruption to Lime Wire's business, and any delays in or refusals of payment could have a negative impact on its vendor relationships.

7. I have reviewed the most recent (May 31, 2010) balance sheet of Lime Wire, and it reflects approximately $7.3 million cash in the bank, and fixed assets with a current book value of approximately $3.8 million.

I HEREBY DECLARE and certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed this 30th day of June 2010 in New York, New York.

George Searle