UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS LLC fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR EXPEDITED APPOINTMENT OF RECEIVER TO ENSURE COMPLIANCE WITH PERMANENT INJUNCTION**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100

*Attorneys for Plaintiffs*

Date: November 24, 2010

Defendants' protestations of good faith and pile of declarations do not and cannot overcome the fundamental points that require the immediate appointment of a receiver to ensure compliance with the Court's Injunction:

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  █████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ██████████████████

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████

- 1 -

██████████████████████ Defendants will tell the Court and Plaintiffs only what they want to tell them.  Respect for the Court's injunctive powers requires much more than this selective dribbling out of the results of a manifestly inadequate "investigation."

- Defendants' proposed "solution" — more meet-and-confers, back-and-forth haggling between counsel and experts, and numerous returns to Judge Freeman or this Court to settle the inevitable disputes — is unfair, unwarranted and unwise. Plaintiffs waited four years to obtain the Permanent Injunction, which Lime Wire allowed to be undone in just two weeks.  Plaintiffs should not have to wait any longer while they negotiate Defendants' compliance with the law.  And if Defendants are truly interested in getting to the bottom of what happened and coming up with a fix that complies with the Injunction, then they have nothing to fear from the appointment of a Receiver who is responsible only to the Court and the letter of its Injunction.

The bottom line is that further weeks of meet-and-confers, highly technical debate and adversary briefing — while only one party has true access to Lime Wire data and employees — is inappropriate and a waste of the Court's time and the parties' energy.  A neutral Receiver without loyalty to either party can gather information directly from Lime Wire, conduct a complete investigation, and apply independent technological knowledge to develop a solution to Defendants' violation of the Injunction swiftly and fairly.

## I.   DEFENDANTS HAVE NOT COMPLIED WITH THE PERMANENT INJUNCTION AND CANNOT BE TRUSTED TO COMPLY GOING FORWARD

████████████████████████████████████████

████████████████████████████████████████████████

12400953.1

███████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████        That not only demonstrates Defendants' breach of the express terms of

the Permanent Injunction, but establishes that they cannot be trusted to comply with the

Injunction on an ongoing basis.

Defendants' contention that Plaintiffs have not "present[ed] any evidence that Defendants

have violated the Injunction" (Opp. at 13) is just wrong.  Paragraph II.B.3 of the Permanent

Injunction requires Defendants to "use all reasonable technological means to immediately cease

and desist the current infringement of the Copyrighted Works by Legacy Users through the

LimeWire System and Software," including "establishing default settings in the Legacy Software

that block the sharing of unauthorized media files."  Klaus Decl., Ex. A ¶ II.B.3(b). █

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████

- 3 -

Defendants' non-compliance with the Permanent Injunction is clear. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

    ██████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ Defendants failed to comply with the Injunction.  What is required now is compliance, and the only way that is guaranteed to happen is with the appointment of a Receiver.

As Defendants do not and cannot deny, the Court has complete authority to appoint a Receiver where a party has shown that it cannot comply with the Injunction's requirements — regardless of whether the non-compliance is the result of inability, incompetence or malevolence. *See, e.g., S.E.C v. S & P Nat'l Corp.*, 360 F.2d 741, 750-51 (2d Cir. 1966) ("[T]he primary purpose [of the receiver] was promptly to install a responsible officer of the court who could bring the companies into compliance with the law"); *S.E.C. v. Drexel Burnham Lambert Inc.,* 837 F. Supp. 587, 615 (S.D.N.Y. 1993) ("Courts have recognized on numerous occasions 'that equitable relief may be granted to deprive those enjoined from future securities violations of the opportunity to continue in control of a corporation.'"); *SEC v. Koenig*, 1972 WL 329, at *9 (S.D.N.Y. June 20, 1972) (holding that "receiver is therefore necessary" where "the Court concludes that it cannot rely on the defendants to implement the directions of the Court").[1]

Contrary to Defendants' contention, there is no rule that they be permitted "consistent and contumacious long-term failure[]" to comply with the Permanent Injunction (Opp. at 14)

---

[1] *See also S.E.C. v. Bowler*, 427 F.2d 190, 198 (4th Cir. 1970) (appointing receiver where "it is obvious, as here, that those who have inflicted serious detriment in the past must be ousted"); *S.E.C. v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963) ("The district court was vested with inherent equitable power to appoint a trustee-receiver under the facts of this case. The prima facie showing of fraud and mismanagement, absent insolvency, is enough to call into play the equitable powers of the court."). *See also* Memo. of Points & Authorities In Support of Motion for a Receiver ("Mot.") at 18.

- 5 -

before a Receiver be appointed.  "While some courts may have waited inexplicably long periods of time before appointing a receiver," the "mistakes of those cases" should not "be repeated here."  *Emma C. v. Eastin*, 2001 WL 1180636, at *19 (N.D. Cal. Oct. 4, 2001).  Indeed, in *Arista Records LLC v. Usenet.com, Inc.,* 2010 WL 3629688, at *9 (S.D.N.Y. Feb. 2, 2010), the district court promptly "appoint[ed] a receiver and enter[ed] an order enforcing [defendant's] compliance with a Preliminary Injunction" order.  The need for the prompt appointment of a Receiver is all the more apparent here ████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████

And while the issue of Defendants' purported ongoing good faith attempts to comply with the Injunction may be relevant to a contempt proceeding, here the issue is more basic:  the Court has the right to expect that its Permanent Injunction will be promptly complied with, and "plainly ha[s] the power to appoint a receiver" to "arrest . . . continuing conduct violative" of the Injunction.  *Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir. 1978).  Indeed, Plaintiffs waited four years to obtain the Permanent Injunction, which Lime Wire allowed to be undone in just two weeks.  The violation is undisputed; the affront to the Injunction is clear and palpable; and the Court should not have to extend further trust where it is not warranted.

## II.   DEFENDANTS' "REPORTS" AND "INVESTIGATION" UNDERSCORE THE NEED FOR A NEUTRAL RECEIVER TO INVESTIGATE THEIR BREACH

Defendants urge Plaintiffs and the Court to accept without transparency, support or plausibility their assertion that ███████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████  All available facts, however, are to the contrary, underscoring the critical need for a Receiver in this case.  ████████████████████

- 6 -

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  A "responsible officer of the court appointed as receiver may serve to investigate and '*ascertain the true state of affairs.*'"  *Commodity Futures Trading Commission v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 677 (S.D.N.Y. 1979) (emphasis added).   That is precisely what is needed here.

████████████████████████████████████████████████████

████████████████████████████████████████████████  A neutral arbiter who is not afraid to face the facts must preside over this state of confusion. Instead, every step of the way, Defendants have told the Court and Plaintiffs only what they chose to tell.  Continuing this line, Defendants now claim that the details and undisclosed results of their investigation are all privileged as attorney work-product.  *See* Cosenza Decl., Ex. 1 at 5 n.2; Supp. Klaus Decl., Ex. L at 1 (Magistrate Order).   Defendants cannot be permitted to construct a black box around their inadequate investigation efforts.  Defendants' failure to engage with difficult facts ███████████████████████████████████████ ████████████████  combined with a clear purpose not to provide any view inside of their unsuccessful "investigation," demonstrates the dire need for this court to appoint a neutral Receiver.

### III.    PLAINTIFFS SHOULD NOT HAVE TO AWAIT COMPLIANCE WITH THE INJUNCTION FOLLOWING ENDLESS NEGOTIATIONS OR LITIGATION

Defendants' actions thus far make clear that they have interest only in delay and misdirection: they have resisted discovery into breaches of this Court's order, hidden relevant facts, and sought to conceal unflattering aspects of their investigation behind a claim of work-

- 7 -

product privilege.  Now they seek to "meet and confer."  ███████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████

                    █████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████

        Furthermore, it is inappropriate to waste the Court's time and the parties' energy

engaging in a highly technical debate through adversary briefing.  A neutral Receiver without

loyalty to *either party* can talk directly to Lime Wire employees, conduct a fair investigation, and

bring independent technological knowledge to the task of developing a quick solution to

Defendants' violation.  Professor Freedman can make the case for his proposed approach to such

a neutral party.  Defendants would delegate this job to adversaries: opposing counsel, working

with retained consultants, sharing only what they care to disclose while hiding the remainder

behind claims of privilege.  This approach would waste enormous amounts of court-time in an

adversarial process ill-suited to curing Defendants' violations speedily and competently.  The

right and fastest solution is not a negotiation between adversaries, but one based on complete

information and neutral judgment.   *See Dixon v. Barry*, 967 F. Supp. 535, 550 (D.D.C. 1997)

- 8 -

(court should consider in appointing receiver whether "continued insistence that compliance with the Court's orders would lead only to 'confrontation and delay,'" and "resources . . . being wasted" and whether, by contrast, "a receiver can provide a quick and efficient remedy").

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████ Plaintiffs should not have to engage in ongoing briefing over the degree of harm suffered by Defendants' clear violation of the Permanent Injunction, without any guarantee that Defendants will share complete information.

IV.   **DEFENDANTS DO NOT AND CANNOT CLAIM (MUCH LESS DEMONSTRATE) THAT THEY COULD BE PREJUDICED BY THE APPOINTMENT OF A NEUTRAL RECEIVER**

Finally, Defendants do not even attempt to claim any prejudice resulting from the Court's appointment of a Receiver.  As noted, Plaintiffs' Motion does not seek the appointment of a Receiver who will entirely take control of Defendants' businesses and assets, but simply seeks the appointment of a Receiver to implement the Court's Permanent Injunction.  The appointed Receiver would work with neutral experts to determine the best, most reasonable way for Defendants to satisfy their obligations under the Permanent Injunction.  If, as Defendants claim, their commitment is to complying with the Injunction, then they have no reason to fear a Receiver's appointment.  Defendants' utter silence about why appointing a Receiver committed to the same ends they claim to embrace would cause them prejudice speaks volumes.

Dated:  November 24, 2010                    Respectfully submitted

                                             _____/s/ Kelly M. Klaus_____
                                             Kelly M. Klaus

                                             Attorney for Plaintiffs
                                             Munger, Tolles & Olson LLP
                                             355 South Grand Avenue, 35th Floor
                                             Los Angeles, CA 90071-1560
                                             (213) 683-9100
                                             (213) 687-3702 (Fax)

- 10 -

12400953.1