**SUBJECT TO PROTECTIVE ORDER
-FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION**

                                             Glenn D. Pomerantz (*pro hac vice*)
                                             Kelly M. Klaus (*pro hac vice*)
                                             Melinda E. LeMoine
                                             Jonathan H. Blavin (*pro hac vice*)
                                             Munger, Tolles & Olson, LLP
                                             355 South Grand Avenue
                                             Los Angeles, CA 90071
                                             (213) 683-9100

                                             *Attorneys for Plaintiffs*

June 28, 2010

# TABLE OF CONTENTS

I. THE INJUNCTION MUST REMEDY LIME WIRE'S INTENTIONAL INDUCEMENT OF THE INFRINGEMENT OF ALL OF PLAINTIFFS' WORKS ......................................... 1

II. LIME WIRE'S PLEA FOR A BURDENSOME "NOTICE AND TAKEDOWN" REGIME IGNORES THE BASIS FOR LIME WIRE'S LIABILITY ..................................................... 2

III. THE *EBAY* FACTORS WEIGH DECISIVELY FOR PLAINTIFFS ................................. 3

   A. Plaintiffs Face Irreparable Harm Absent An Injunction ........................................ 3

   B. The Injunction Will Serve The Public Interest; Rewarding Lime Wire's Contempt For The Copyright Laws And Supreme Court Precedent Will Not ........................................... 6

   C. The Balance Of Equities Overwhelmingly Favors An Injunction ....................................... 7

IV. THE PROPOSED INJUNCTION MEETS THE SPECIFICITY AND NOTICE REQUIREMENTS OF FED. R. CIV. PROC. 65 ................................................................. 7

   A. The Proposed Injunction's Specific Terms Are Necessary To Stop The Continued Irreparable Harm To Plaintiffs' Exclusive Rights ............................................................. 7

   B. Lime Wire Must Devise The Particular Methods Necessary For It To Comply With The Injunction, And Then Report Back To The Court ............................................................ 8

V. LIME WIRE'S "MISUSE" DEFENSE IS NO BAR TO INJUNCTIVE RELIEF ............ 9

VI. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

### CASES

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) .................................................................................. 2

*Arista Records LLC v. Lime Group LLC*,
  532 F. Supp. 2d 556 (S.D.N.Y. 2007) ........................................................................ 9

*Capitol Records, Inc. v. Galindo*,
  2007 WL 2509711, at *3 (W.D.N.Y. Aug. 30, 2007) ............................................... 1

*Concrete Mach. Co. v. Classic Lawn Ornaments*,
  843 F.2d 600 (1st Cir. 1988) ...................................................................................... 8

*DeSilvis v. National Railroad Passenger Corp.*,
  97 F. Supp. 2d 459 (S.D.N.Y. 2000) ........................................................................ 10

*Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Procter & Gamble Co.*,
  285 F. Supp. 2d 389 (S.D.N.Y. 2003) ........................................................................ 9

*Kepner-Tregoe, Inc. v. Vroom*,
  186 F.3d 283 (2d Cir. 1999) ...................................................................................... 4

*MGM v. Grokster (Remand)*,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................................. passim

*MGM v. Grokster*,
  380 F.3d 1154 (9th Cir. 2004) ................................................................................... 2

*MGM v. Grokster*,
  545 U.S. 913, 933-35 & n. 10 (2005) .................................................................... 3, 5

*In re Napster, Inc. Copyright Litig.*,
  2006 U.S. Dist. LEXIS 30338, at *22-23 (N.D. Cal. May 17, 2006) ........................ 3

*Napster, Inc. Copyright Litig.*,
  191 F. Supp. 2d 1087, 1102 (N.D. Cal. 2002) ........................................................... 9

*Nat'l Football League v. Primetime 24 Joint Venture*,
  1999 WL 760130, at *4 (S.D.N.Y. Sept. 27, 1999) ................................................... 4

*Olan Mills, Inc. v. Linn Photo Co.*,
  23 F.3d 1345 (8th Cir. 1994) ...................................................................................... 1

11033069.5

*Pacific & S. Co. v. Duncan*,
  744 F.2d 1490 (11th Cir. 1984) .................................................................................. 1

*Paramount Pictures Corp. v. Carol Publ'g Group*,
  11 F. Supp. 2d 329 (S.D.N.Y. 1998) .......................................................................... 4

*Salinger v. Colting*,
  2010 WL 1729126, at *11 (2d Cir. Apr. 30, 2010) .................................................... 6

*Simon & Schuster, Inc. v. Putnam Berkley Group, Inc.*,
  1994 WL 689058, at *3 (S.D.N.Y. Dec. 8, 1994) ...................................................... 8

*Triad Sys. Corp. v. Se. Express Co.*,
  64 F.3d 1330 (9th Cir. 1995) ...................................................................................... 8

*Twin Peaks Prod., Inc. v. Publications Int'l, Ltd.*,
  996 F.2d 1366 (2d Cir. 1993) ..................................................................................... 3

*UMG Recordings, Inc. v. Green*,
  2009 WL 1310457, at *3 (N.D.N.Y. May 7, 2009) ................................................... 1

*Walt Disney Co. v. Powell*,
  897 F.2d 565 (D.C. Cir. 1990) ................................................................................... 1

## **RULES**

Fed. R. Civ. Proc. 65 ............................................................................................................ 7

11033069.5

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| Berlin Tr. | Transcript from the Deposition of Samuel A. Berlin on March 6, 2008 (attached to Volulme VI of the Declaration of Katherine B. Forrest dated July 18, 2008, and the Declaration of Melinda LeMoine dated June 28, 2010) |
| Ex. 239, 287, 288, 289, 290 | Exhibits attached to Volume IV of the Declaration of Katherine B. Forrest, dated July 18, 2008 |
| Gribble Decl. | Declaration of Dr. Steven Gribble in Support of Defendants' Motions for Summary Judgment, dated July 18, 2008 |
| Gribble Tr. | Transcript from the Deposition of Steven Gribble on June 11, 2008 (attached to Volume VII of the Declaration of Katherine B. Forrest, dated July 18, 2008) |
| Horowitz Report | Expert Report of Professor Ellis Horowitz, dated April 18, 2008 (attached as Exhibit A to the Declaration of Professor Ellis Horowitz in Support of Plaintiffs' Motion for a Permanent Injunction, dated June 4, 2010) |
| Horowitz Reply Decl. | Reply Declaration of Professor Ellis Horowitz in Support of Plaintiffs' Motion for a Permanent Injunction, dated June 28, 2010 |
| Klaus Decl. | Declaration of Kelly M. Klaus in Support of Plaintiffs' Motion for Permanent Injunction, filed June 4, 2010 |
| Klausner Exhibit 1 | Exhibit 1 attached to the Declaration of Tonia Ouellette Klausner, dated June 21, 2010 |
| LeMoine Decl. | Declaration of Melinda E. LeMoine in Support of Plaintiff's Motion for Permanent Injunction, filed June 28, 2010 |
| Mendonca Decl. | Declaration of Brian G. Mendonca in Support of Defendants' Opposition to Motion for Permanent Injunction, dated June 19, 2010 |
| Mot. | Memorandum of Law in Support of Plaintiffs' Motion for Permanent Injunction, filed June 4, 2010 |

| | |
|---|---|
| Nicponski Tr. | Transcript from the Deposition of David Nicponski on March 29, 2008 (attached to Volume VII of the Declaration of Katherine B. Forrest, dated July 18, 2008) |
| Opp. | Defendants Lime Wire LLC, Lime Group LLC, and Mark Gorton's Opposition to Plaintiffs' Motion for Permanent Injunction, dated June 21, 2010 |
| Order | Amended Opinion & Order, filed May 25, 2010 |
| Pavley Decl. | Declaration of John Pavley, dated June 19, 2010 |
| Song Reply Decl. | Declaration of Jillian Song in Support of Reply to Plaintiff's Motion for a Permanent Injunction, dated June 28, 2010 |
| SUF | Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, dated July 18, 2008 |

11033069.5

Lime Wire spent most of the last decade designing and distributing software that was intended to cause – and that has caused – the mass infringement of Plaintiffs' copyrighted works. Faced with a binding adjudication of its liability, Lime Wire argues that the Court can and should require Lime Wire to do no more than implement a cosmetic and demonstrably ineffective system of filtering *only 30* of Plaintiffs' works. Lime Wire insists the Court is powerless to stop it from distributing its infringing tool or to do anything to stop the rampant infringement of thousands upon thousands of Plaintiffs' works through the LimeWire service. Lime Wire is wrong on every count, and its opposition is just further confirmation that Lime Wire will not behave lawfully unless and until the Court orders it to do so.

## I. THE INJUNCTION MUST REMEDY LIME WIRE'S INTENTIONAL INDUCEMENT OF THE INFRINGEMENT OF ALL OF PLAINTIFFS' WORKS

Lime Wire argues the injunction must be limited solely to stopping the infringement of 30 Recordings as to which Plaintiffs, for summary judgment, proved ownership and direct infringement. Lime Wire is wrong. The Court has the full power to enter a permanent injunction where, as here, "liability has been determined adversely to the infringer, there has been a history of continuing infringement and a significant threat of future infringement remains." *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990).[1] Lime Wire also ignores the reason summary judgment was resolved based on a subset of Plaintiffs' thousands of copyrighted works: because Judge Lynch directed it. This allowed the Court to "address the basic liability issues that are what the case is about," and to defer burdensome discovery on the full number of works for a *damages* award until after summary judgment. Klaus Decl., Ex. 11 at 3-4. Lime Wire's inducing conduct is exactly the same for the 30 Recordings as it is for all of Plaintiffs' works. Lime Wire points to no evidence saying, "let's only induce the infringement of these 30 Recordings"; as the evidence made clear, Lime Wire intended to induce

---

[1] Numerous cases are in accord. *See, e.g., Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994); *Pacific & S. Co. v. Duncan*, 744 F.2d 1490, 1499 n.17 (11th Cir. 1984); *UMG Recordings, Inc. v. Green*, 2009 WL 1310457, at *3 (N.D.N.Y. May 7, 2009); *Capitol Records, Inc. v. Galindo*, 2007 WL 2509711, at *3 (W.D.N.Y. Aug. 30, 2007).

indiscriminate infringements of Plaintiffs' works on a massive scale. Plaintiffs do not have to wait for the full extent of damages to be counted before seeking and obtaining an injunction.

## II. LIME WIRE'S PLEA FOR A BURDENSOME "NOTICE AND TAKEDOWN" REGIME IGNORES THE BASIS FOR LIME WIRE'S LIABILITY

As anticipated, Lime Wire argues that Plaintiffs should have to provide it with notice where each particular work of theirs may be found on its system before Lime Wire has any injunctive obligation to stop the infringement. Opp. at 2, 4-5, 18. Given the massive proliferation of infringements that Lime Wire intentionally induced, the "notice-and-takedown" Lime Wire proposes is designed to burden Plaintiffs with an ineffective and inefficient game of "Whac-a-Mole." In secondary liability, "notice-and-takedown" applies only where defendants' knowledge is imputed; it has no application where Defendants intentionally induce infringement.

As set forth in our Motion, at 18-21, the opinion Lime Wire relies on, Judge Wilson's injunction in the *Grokster* remand, was wrong on this issue. Judge Wilson held that notice-and-takedown was mandated by the Ninth Circuit's *Napster* decision. *MGM v. Grokster (Remand)*, 518 F. Supp. 2d 1197, 1237-39 (C.D. Cal. 2007). The Ninth Circuit required notice-and-takedown because to hold otherwise would impute to Napster knowledge of infringing conduct, even though Napster could be used for some non-infringing purposes. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020-21, 1027 (9th Cir. 2001). The same court in *Grokster* likewise held that plaintiffs had to provide notice of specific infringing files, so as not to trench upon non-infringing uses. *MGM v. Grokster*, 380 F.3d 1154, 1161 (9th Cir. 2004). Lime Wire appeals to the same type of reasoning, arguing that requiring it to stop distributing the software threatens anecdotal instances of claimed non-infringing uses. Opp. at 4-5.

The flaw in Lime Wire's argument (as well as Judge Wilson's form of injunction) is that it ignores the Supreme Court's decision in *Grokster*. The Court made it clear that the defense of "substantial non-infringing uses" – the predicate for the "notice-and-takedown" requirement in *Napster* (and the cases following it) – is irrelevant where the defendant's mental state is proved by actual intent rather than imputed knowledge. *MGM v. Grokster*,

11033069.5

545 U.S. 913 (2005).[2] Lime Wire is liable based on its *intentional* inducement of infringement, not on imputed knowledge. Lime Wire has no defense of "substantial non-infringing uses" to its intentional conduct, nor is notice from Plaintiffs required to trigger Lime Wire's obligations.[3]

### III. THE *EBAY* FACTORS WEIGH DECISIVELY FOR PLAINTIFFS

#### A. Plaintiffs Face Irreparable Harm Absent An Injunction

**1. Lime Wire Will Not Be Able To Pay The Likely Damages Award**: Lime Wire first says that damages will be low because "*only* thirty works" are in issue. Opp. at 10. Given the Court's holding that Lime Wire intentionally induced the mass infringement of all of Plaintiffs' copyrighted works – which total many thousands[4] – this obviously is makeweight.

Lime Wire next contends that the damages range for each infringement for which it is responsible will not reach the $150,000 limit because Lime Wire's conduct was not "willful." Lime Wire is wrong. "Willfulness" means knowledge or reckless disregard of one's conduct constituting infringement. *Twin Peaks Prod., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993). The overwhelming evidence of Lime Wire's intentional inducement of mass infringement demonstrates Lime Wire's willfulness. *See Grokster (Remand)*, 518 F. Supp. 2d at 1217. Lime Wire claims it thought its conduct was completely legal prior to June 2005,

---

[2] Judge Patel recognized exactly this point in her post-*Grokster* opinion. *See* Mot. at 20-21. Lime Wire claims that Judge Patel said that "'an injunction … may be narrower than the outer limits of Napster's liability.'" Opp. at 19. That is misleading. The quoted language is from Judge Patel's summary of the Ninth Circuit's *Napster* decision. *In re Napster, Inc. Copyright Litig.*, 2006 U.S. Dist. LEXIS 30338, at *22-23 (N.D. Cal. May 17, 2006). Judge Patel went on to say that *Grokster* relied on evidence of inducement akin to that which supported her "original, more sweeping *Napster* injunction," *i.e.*, an injunction *without* notice-and-takedown. *Id.* at *30.

[3] Judge Wilson's more recent permanent injunction in *Fung* does not impose the same onerous "notice-and-takedown" as in the *Grokster* remand. Judge Wilson held that the *Fung* plaintiffs needed to provide defendants only with a list of titles that plaintiffs in good faith believe they own. Klaus Decl., Ex. 2 at 15-16.

[4] Plaintiffs are not limited to seeking damages for the more than 3,000 works identified in the First Amended Complaint. Judge Lynch made it clear (in a transcript from which Lime Wire selectively quotes) that Plaintiffs could add more works in a damages phase. *See* LeMoine Decl., Ex. 2 at 25:13-26:17 (12/7/07 Hrg. Tr.). Plaintiffs will address this issue more fully in the July 2 briefing but the salient point now is that, however many thousands of works ultimately are the basis for damages, the award against Lime Wire is likely to be enormous.

11033069.5

when the Supreme Court decided *Grokster*. Opp. at 11. In fact, there is abundant evidence that Lime Wire knew it was inducing mass infringement long before *Grokster*. *See e.g.,* SUF ¶¶ 150-177, 204, 212-222; Order at 31, 34. In any event, it is now June 2010, five years after the Supreme Court decision that Mark Gorton admitted spelled the end of his company's illegal business. Lime Wire clearly spent the intervening half-decade continuing to operate its business illegally. What is more, Lime Wire *continues* to do so, even after the Court's Summary Judgment Order. As Plaintiffs demonstrated – and Lime Wire ignores – Lime Wire today is used to upload and download every popular recording as it is released, Mot. at 7, not to mention thousands of others. Lime Wire's continued infringing conduct after summary judgment by definition is willful. *See Kepner-Tregoe, Inc. v. Vroom,* 186 F.3d 283, 288-89 (2d Cir. 1999).[5]

   **2.      Plaintiffs' Exclusive Rights To Control The Reproduction And Distribution Of Their Works Has Been (And Will Continue To Be) Irreparably Damaged By Lime Wire**. Lime Wire completely ignores this basis for irreparable harm, even though the continued violation of exclusive rights under copyright law has been recognized in countless cases as warranting injunctive relief. *See Grokster (Remand),* 518 F. Supp. 2d at 1218-19.[6] Far from countering this basis for irreparable harm, Lime Wire admits that it continues to distribute a product that deprives Plaintiffs of their exclusive rights by facilitating the rampant copying and dissemination of Plaintiffs' works. Opp. at 11-12.

   Lime Wire's description of the steps it supposedly has taken to "address" the threat of future infringement reveals its failure to adequately remedy the consequences of its illegal

---

[5] Contrary to Lime Wire's contention, the *Usenet.com* statutory damages award does not provide a benchmark for Lime Wire's liability. Opp. at 11. When the Court determined damages, Usenet.com had long since been shuttered and its corporate owners in bankruptcy. *See* Mendonca Decl., Ex. A at 3 n.3. Usenet.com's user base never approached the millions of Lime Wire users. At its peak, Usenet.com claimed just over 16,000 subscribers. *Id.* at 9. Even then, the court set the award level at $7,500. Lime Wire, which is larger and more profitable that Usenet.com, and which induced far more infringements, likely faces a far higher award.

[6] *See also Nat'l Football League v. Primetime 24 Joint Venture,* 1999 WL 760130, at *4 (S.D.N.Y. Sept. 27, 1999); *Paramount Pictures Corp. v. Carol Publ'g Group,* 11 F. Supp. 2d 329, 338 (S.D.N.Y. 1998).

- 4 -

11033069.5

conduct. Instead of immediately halting its dissemination of its tool for infringement, Lime Wire claims to have "addressed" the threat of future violations by curtailing "specific" instances of infringing conduct the Court cited in its Order. Opp. at 11. Even if this gesture addressed all of the specific conduct found to be inducing in the Court's Order – and, as we demonstrate below, it does not – Lime Wire cannot so easily wash away its responsibility for the consequences of its intentional conduct. The *Grokster* defendants likewise claimed they had changed their inducing ways, but the courts rejected this gambit. As *Grokster*'s author put it at oral argument:

> JUSTICE SOUTER: I don't … understand how you can separate the past from the present in that fashion. One, I suppose, could say, "Well, I'm going to make inducing remarks Monday through Thursday, and I'm going to stop, Thursday night." The sales of the product on Friday are still going to be sales which are the result of the inducing remarks Monday through Wednesday.

LeMoine Decl., Ex. 3 at 30. This point was carried through in the Court's opinion, which confirms that "inducement liability goes beyond" particular instances of infringing conduct, and a defendant is "culpable" for "distribution of the tool intended for infringing use." *Grokster*, 545 U.S. at 940 n.13. Lime Wire remains liable for infringing conduct through the software it intended to be used for infringement. As Judge Wilson put it in the *Grokster (Remand)* Order: "The bell simply cannot be unrung." 518 F. Supp. 2d at 1234-35.

What is more, Lime Wire's Opposition reveals it has *not* stopped the conduct that the Court found constituted inducement. The Court relied extensively on Defendants' failure to "utilize existing technology to create meaningful barriers against infringement." Order at 40. Lime Wire's meager filtering efforts since the Court's Order confirm that Lime Wire will not change its ways without an injunction. Lime Wire touts a new version of its software, but admits that it includes the same ineffective hash-based filter (developed in 2006) that the Court cited as evidence of Lime Wire's intent to induce infringement. Order at 38; Pavley Decl. ¶ 5. Lime Wire says that the new version finally sets the filtering default to "on," but filtering still remains optional with the user. Horowitz Reply Decl. ¶ 13. And the filtering that will reach a user with the switch turned "on" is essentially meaningless. Lime Wire has designed the filter to capture

11033069.5

only the 30 works as to which Plaintiffs proved ownership and infringement on summary judgment. The filter ignores the 3,000-plus works identified in the complaint, the more than 3,000 others that Plaintiffs identified in January 2008, and every work Plaintiffs have released since. To implement even that paltry filter, Lime Wire has had to catalogue *more than 40,000 separate hashes and counting.*[7] Pavley Decl. ¶ 17. The massive data collection to prevent infringement of only 30 works underscores the inefficiency of Lime Wire's hash-based system. Horowitz Reply Decl. ¶ 12. The system also is ineffective, a point easily proven by the most rudimentary searching efforts. Since Defendants filed their opposition, Plaintiffs successfully downloaded pristine copies of twenty-four of the 30 Recordings, notwithstanding Lime Wire's supposedly "new and improved" filter. Song Reply Decl. ¶¶ 8-9.

        3.    **Lime Wire Continues To Disregard The Law**. Lime Wire's only response to this showing of irreparable harm is that users already expected to be able to copy sound recordings for free by the time Lime Wire came on the scene. Opp. at 13. That is absurd and ignores not only that Lime Wire actively contributed to such contempt for copyright, but did so for years after a Supreme Court decision that made clear Lime Wire was behaving illegally.

        B.    **The Injunction Will Serve The Public Interest; Rewarding Lime Wire's Contempt For The Copyright Laws And Supreme Court Precedent Will Not**

Injunctions that protect copyrights further the public interest. *See Salinger v. Colting*, 2010 WL 1729126, at *11 (2d Cir. Apr. 30, 2010) ("the public's interest may well be already accounted for by the plaintiff's interest"). Denying an injunction would reward Lime Wire for its disregard of established law; that does not serve the public interest. Lime Wire asserts the injunction will deprive the public of being able to use its client software to obtain non-infringing content. Opp. at 6, 13. Not true. Every non-infringing work Lime Wire says is available with its software is generally available with an ordinary web browser. Song Reply Decl. ¶¶ 3-6. The proposed injunction will not deprive the public of access to any of these materials.

---

[7] 40,000 hashes for just 30 works speaks volumes about the rampant infringement that continues to occur through Lime Wire. This means that on average *more than 1,000 different copies* of each one of only 30 sound recordings have been uploaded for copying through Lime Wire.

### C. The Balance Of Equities Overwhelmingly Favors An Injunction

Lime Wire's argument on this factor rests primarily on the specious proposition that "there are only thirty works at issue." Opp. at 14. As already demonstrated, Lime Wire was found liable for intentionally inducing mass infringement of all of Plaintiffs' works. The continuing infringement of those works through software that Lime Wire built and distributed with intent to achieve that illicit end tilts the equitable balance decisively in Plaintiffs' favor. That Lime Wire claims to have limited its remedial efforts to ineffective measures to stop the infringement of just those 30 works – ignoring massive infringement of thousands upon thousand of other works, *see id.* – is further evidence that Lime Wire continues to behave inequitably.

## IV. THE PROPOSED INJUNCTION MEETS THE SPECIFICITY AND NOTICE REQUIREMENTS OF FED. R. CIV. PROC. 65

### A. The Proposed Injunction's Specific Terms Are Necessary To Stop The Continued Irreparable Harm To Plaintiffs' Exclusive Rights

Lime Wire's complaints about the purported vagueness and overbreadth of the Proposed Injunction's terms are meritless. The Proposed Injunction requires Lime Wire only to do what is necessary to stop the continued infringement of Plaintiffs' copyrights: (1) stop distributing new copies of the LimeWire Client until it incorporates an effective, verified filtering mechanism; (2) use "all technologically possible means" to stop infringement through the existing installed software versions; and (3) report back to the Court and to Plaintiffs on its progress. There is nothing vague about these requirements, each of which is aimed at correcting Lime Wire's past inducement. Lime Wire's complaints to the contrary are baseless.

As but one example[8]: Lime Wire contends that it must continue to distribute the LimeWire Client to encourage migration to a new version that filters Plaintiffs copyrighted works. But Lime Wire's continued distribution of a new version with a purportedly "new and improved filter" succeeded only in disseminating many more copies of the LimeWire Client, all of which are just as capable of the vast infringement of Plaintiffs' works as the previous

---

[8] Lime Wire's litany of complaints about the Proposed Injunction are addressed point by point in Plaintiffs' Response to Defendants' "Revised" Injunction, attached as Exhibit 1 to the LeMoine Declaration.

11033069.5

versions.  Lime Wire itself does not even trust its hash-based filter to filter purchases from the Lime Wire Store.  *See* SUF ¶ 481 (Berlin Tr. 263:17-25).  The Proposed Injunction requires instead that Lime Wire stop distribution until it incorporates "the most effective available" means of filtering infringing content.  Lime Wire cannot seriously contend that it should be permitted to distribute its software before that happens, especially when its purported "best effort" to date is an utter failure that Lime Wire would not rely on to protect its own interests.

> **B.    Lime Wire Must Devise The Particular Methods Necessary For It To Comply With The Injunction, And Then Report Back To The Court**

Lime Wire contends that the proposed injunction would be punitive, imposing an "impossible burden" that would require Lime Wire "to retroactively design, disable, or alter" its software.  Opp. at 18, 20, 21.  As the Court is well aware, Lime Wire, in a failed to attempt to evade liability, intentionally designed its software to be unable to monitor or control the massive infringement of its user base.  SUF ¶¶ 369-89.  It purposefully did so to fend off "court ordered or injunction cases where [it] would be forced" to disable the system to protect copyright holders.  SUF ¶ 389 (Nicponski Tr. 160:19-22; 161:6-162:22; Ex. 239).  Any obstacles Lime Wire now faces in bringing its product into compliance with the law are thus of Lime Wire's own creation.  It "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities."  *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1337-38 (9th Cir. 1995); *Grokster (Remand),* 518 F. Supp. 2d at 1237 (fact that "infringer" must expend "substantial resources to prevent …. further induced infringements is not a central concern"); Klaus Decl., Ex. 2 at 11 (*Fung* permanent injunction order); *Simon & Schuster, Inc. v. Putnam Berkley Group, Inc.*, 1994 WL 689058, at *3 (S.D.N.Y. Dec. 8, 1994).  Nor can Lime Wire appeal to equity because complying with the law could cause Lime Wire to shutter an illegal business it had no right to operate in the first instance.  *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 612 (1st Cir. 1988) ("We see little reason why an entity should be allowed to establish and continue an enterprise based solely on . . . copyright infringement,

simply because that is its only business."); *Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Procter & Gamble Co.*, 285 F. Supp. 2d 389, 394 (S.D.N.Y. 2003).

In any event, Lime Wire's excuses are belied by Lime Wire's own evidence:

- Lime Wire now says it cannot "disable" its software. Opp. at 21. But Lime Wire's own expert testified to the contrary, stating that Lime Wire could send out a file which would render the network "dysfunctional," and force users to upgrade to a new version. Gribble Decl. ¶¶ 74-79; Gribble Tr. 201:6-22, 203:13-20; 299:25-301:7; SUF ¶¶ 364-366, 504. Lime Wire could remotely disable its software's functionality with this mechanism. *See* Horowitz Reply Decl. ¶¶ 4-11.

- Lime Wire's claim that Plaintiffs must provide it with digital copies of their works for Lime Wire to filter effectively, Opp. at 20 n.9, is false. For years, companies have been using licensed acoustic fingerprinting technology to filter out unauthorized sound recordings on their networks. *See* SUF ¶ 498 (citing Horowitz Report ¶¶ 104, 108; Ex. 287 (Marco Decl. in *Grokster*); Ex. 288 (Sorensen Decl. in *Grokster*)); Horowitz Reply Decl. ¶ 15. Nothing prevents Lime Wire from doing the same.

- Lime Wire's excuse that it would need "several months" to implement a filter (Opp. at 3) is remarkable given that the Court's finding of liability was premised in part on Lime Wire's failure to implement filtering technology *for years*. Order at 37. The filtering Lime Wire proposes to begin now is precisely what it decided against implementing in 2006. *Id.*; SUF ¶ 499 (Exs. 289-290); Pavley Decl. ¶¶ 19-42; Horowitz Reply Decl.¶ 14. Lime Wire cannot resist an injunction based on its failure to have behaved lawfully from its inception.

The Proposed Injunction itself requires Lime Wire to implement the full range of technologically possible means to correct the ongoing harm, and then to report back to the Court on its progress. Lime Wire's vague complaints in its several declarations attempt to short circuit that process and instead comply with the copyright laws in its own time on its own terms.

## V. LIME WIRE'S "MISUSE" DEFENSE IS NO BAR TO INJUNCTIVE RELIEF

Lime Wire's last-ditch appeal to a defense of copyright misuse as a bar to the injunction, Opp. at 23-25, fails for numerous reasons. First, as Judge Lynch noted, misuse is not even established as a defense in the Second Circuit. *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 584 n.37 (S.D.N.Y. 2007). Second, even where it is recognized, misuse "is rarely a defense to injunctive relief." *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1102 (N.D. Cal. 2002). Even where it is a defense to *liability*, misuse must be raised in opposition to

summary judgment; Lime Wire did not do that, and has waived the argument now.

Even if some defendant somewhere could assert misuse to resist injunctive relief, Lime Wire cannot do so in this case. Back in 2008, Lime Wire claimed it could press the same misuse theory now featured in its opposition. *Compare* Opp. at 24-25 with LeMoine Decl., Exs. 4-5. Lime Wire's argument is that it is misuse for any Plaintiff not to do business with an entity that turns around and licenses inducers of mass infringement like Lime Wire. Judge Lynch made it clear that this could not be the basis for a defense if, as has happened, the Court adjudicated Lime Wire to be operating an illegal business. *And Lime Wire agreed*:

> THE COURT: What you are saying, though, is that assuming that you are found to be engaging in massive illegality, you will be retroactively legalized and they will be deprived of their copyrights because they took actions on the assumption that you were doing something illegal which turns out to be exactly right?
>
> MR. BAKER: I agree that *if the Court rules that we are illegal, the misuse defense, however you want to call it*, whether it's the license agreements or the *Imus* issue or anything else, *those all get shoved aside.*

LeMoine Decl., Ex. 6 at 4-5 (emphasis added). Lime Wire is bound by this concession. *DeSilvis v. National Railroad Passenger Corp.*, 97 F. Supp. 2d 459, 463 (S.D.N.Y. 2000).

## VI.  CONCLUSION

Plaintiffs respectfully ask the Court to enter the Proposed Permanent Injunction.

Dated:  June 28, 2010

Respectfully submitted

Kelly M. Klaus

Attorney for Plaintiffs
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100; (213) 687-3702 (Fax)