REDACTED VERSION
-COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARISTA RECORDS LLC; ATLANTIC
RECORDING CORPORATION; ARISTA
MUSIC, fka BMG MUSIC; CAPITOL
RECORDS LLC fka CAPITOL RECORDS,
INC.; ELEKTRA ENTERTAINMENT
GROUP INC.; INTERSCOPE RECORDS;
LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY
RECORDS LLC; SONY MUSIC
ENTERTAINMENT, fka SONY BMG
MUSIC ENTERTAINMENT; UMG
RECORDINGS, INC.; VIRGIN RECORDS
AMERICA, INC.; and WARNER BROS.
RECORDS INC.,

                       Plaintiffs,

        v.

LIME WIRE LLC; LIME GROUP LLC;
MARK GORTON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                     Defendants.

06 Civ. 05936 (KMW)
ECF CASE

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO
DISQUALIFY WILLKIE FARR & GALLAGHER LLP AS COUNSEL FOR
DEFENDANTS**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
*Attorneys for Plaintiffs*

Date: January 14, 2011

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................ 3

      A.    Korn Was Significantly Involved In Representing Plaintiffs In This Action ........ 3

      B.    ███████████████████████████████████████████ ............ 4

      C.    Willkie Undertakes Being Adverse To Plaintiffs In 2010 – ██████████████ ......................... 7

      D.    ████████████████████████████████████ 9

            █ ████████████████████████████████

            █ ████████████████████████████████

            █ ████████████████████████████████

      E.    ████████████████████████████ ........................ 13

      F.    ████████████████████ ................................. 14

III.  WILLKIE SHOULD BE DISQUALIFIED AS COUNSEL FOR DEFENDANTS
      IN THIS ACTION .............................................................................................. 15

      A.    The Court Has Broad Authority To Disqualify Counsel And Should Do So
            Where Any Doubt Exists As to Their Compliance With Their Ethical
            Duties ................................................................................................................ 15

      B.    Korn And Willkie (To Whom The Conflict Is Imputed) Cannot Be
            Adverse To Plaintiffs In This Case.................................................................. 16

      C.    No Screen Could Be Effective To Overcome Willkie's Conflict...................... 17

            1.    Korn Was Intimately Involved In Plaintiffs' Representation In this
                  Very Action........................................................................................ 18

            2.    ████████████████████ ................................. 19

      D.    ██████████████████████████ ............ 22

      E.    ████████████████████████████ ........... 24

IV.   CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Cheng v. GAF Corp.*,
   631 F.2d 1052 (2d Cir. 1980), *vacated on other grounds*,
   450 U.S. 903 (1981)..................................................................................2, 19, 20

*Chinese Automobile Distributors of America LLC v. Bricklin*,
   2009 WL 47337 (S.D.N.Y. Jan. 8, 2009) ...............................................22

*Cobb Publishing, Inc. v. Hearst Corp.*,
   907 F. Supp. 1038 (E.D. Mich. 1995)......................................................23

*Cresswell v. Sullivan & Cromwell*,
   922 F.2d 60 (2d Cir. 1990)......................................................................15

*Crudele v. N.Y. City Police Dep't*,
   2001 WL 1033539 (S.D.N.Y. Sept. 7, 2001)...........................................20

*Decora Inc. v. DW Wallcovering, Inc.*,
   899 F. Supp. 132 (S.D.N.Y. 1995)...........................................................20

*Emle Industries, Inc. v. Patentex, Inc.*,
   478 F.2d 562 (2d Cir. 1973).....................................................................22

*Evans v. Artek Sys. Corp.*,
   715 F.2d 788 (2d Cir. 1983).....................................................................16

*Filippi v. Elmont Union Free School Dist. Bd. of Educ.*,
   722 F. Supp. 2d 295 (E.D.N.Y. 2010) ..............................................3, 16, 19, 20

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*,
   2010 WL 1136478 (N.D. Cal. March 20, 2010)..................................2, 16

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
   409 F.3d 127 (2d Cir. 2005)............................................................ passim

*Hull v. Celanese Corp.*,
   513 F.2d 568 (2d Cir. 1975)......................................................................3

*Huntington v. Great Western Resources, Inc.*,
   655 F.Supp. 565 (S.D.N.Y. 1987)............................................................21

*In re Grand Jury Proceedings*,
   219 F.3d 175 (2d Cir. 2000)......................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*INA Underwriters Ins. Co. v. Nalibotsky*,
594 F. Supp. 1199 (E.D. Pa. 1984) ........................................................................23

*Marshall v. State of N.Y. Div. of State Police*,
952 F. Supp. 103 (N.D.N.Y. 1997) ........................................................................20

*Miroglio, s.p.a. v. Morgan Fabrics Corp.*,
340 F. Supp. 2d 510 (S.D.N.Y. 2004) ....................................................................23

*Mitchell v. Metropolitan Life Ins. Co., Inc.*,
2002 WL 441194 (S.D.N.Y. March 21, 2002) ........................................20, 22, 23

*Panebianco v. First Unum Life Ins. Co.*,
2005 WL 975835 (S.D.N.Y. Apr. 27, 2005) ..........................................................22

*Papanicolaou v. Chase Manhattan Bank, N.A.*,
720 F.Supp. 1080 (S.D.N.Y. 1989) ......................................................2, 16, 21, 22

*Papyrus Technology Corp. v. New York Stock Exchange, Inc.*,
325 F. Supp. 2d 270 (S.D.N.Y. 2004) ................................................2, 15, 16, 18

*U.S. Filter Corp. v. Ionics, Inc.*,
189 F.R.D. 26 (D. Mass. 1999) ..............................................................................21

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) ..................................................................................7

*World Food Sys., Inc. v. Bid Holdings, Ltd.*,
2001 WL 246372 (S.D.N.Y. March 12, 2001) ................................................15, 16

**STATE CASES**

*ACP 140 West End Ave. Associates, LP. v. Kelleher*,
781 N.Y.S.2d 622, 1 Misc.3d 909(A), (2003) ......................................................18

*Kassis v. Teacher's Ins. & Annuity Ass'n*,
93 N.Y.2d 611 (1999) ............................................................................................18

**RULES**

ABA Model R. Prof. Conduct 1.10(a)(2)(ii) ..............................................................17

S.D.N.Y. Local Rule 1.5(b)(5) ..................................................................................15

N.Y. R. Prof. Conduct, Rule 1.10(c) ..........................................................................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

N.Y. R. Prof. Conduct Rule 1.6 ................................................................................4, 17

N.Y. R. Prof. Conduct Rule 1.9(c)...............................................................................17

## I.   INTRODUCTION

Willkie Farr & Gallagher must be disqualified from representing Defendants in this case. The firm violated the fundamental tenet that counsel cannot switch sides against its former client in the same case.  That is exactly what happened here.  Jeffrey Korn, now a Willkie partner, joined that firm in 2007 from Cravath, Swaine & Moore.  While at Cravath, Korn was a core member of the team *representing Plaintiffs, in this very case*.  Since joining Willkie, Korn has worked and continues to work extensively on numerous other matters with the very Willkie partners and associates actively litigating *against* Korn's former clients in the same litigation. Because of the substantial risk of Korn's revealing (advertently or not) the extensive confidential information he obtained representing Plaintiffs, the rules mandate disqualification.  No other remedy will guarantee that Plaintiffs' confidential information will not be passed to Defendants. No other remedy suffices to ensure the integrity of and public respect for the legal profession.

The discovery the Court ordered into this matter showed that



¹ Except as noted, all "Ex." cites are to the accompanying Kelly M. Klaus Declaration.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████    The result is that a law firm whose then-associate (now-partner) actively represented Plaintiffs is now actively litigating *against* those clients in the same case.

The ethical rules mandate Willkie's disqualification in these circumstances. Successive representation in an ongoing case is the "paradigmatic" case for disqualification, because "the attorney is in a position to use the confidences gained through prior confidences with a former client." *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080, 1083-84 (S.D.N.Y. 1989). The conflict is not just Korn's, but applies to all of Willkie. *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005). This rule recognizes "the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information." *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, 2010 WL 1136478, at *7 (N.D. Cal. March 20, 2010).

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

(1) Korn was actively involved in litigating the case at Cravath, *e.g.*, *Papyrus Technology Corp. v. New York Stock Exchange, Inc.*, 325 F. Supp. 2d 270, 279 (S.D.N.Y. 2004); and (2) Korn

████████████████████████████████████████████████

████████████████████████████    *e.g., Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir. 1980), *vacated on other grounds*, 450 U.S. 903 (1981). ████████████████████

████████████████████████████████████████████████

- 2 -

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████  And in all

events, "'***any doubt is to be resolved in favor of disqualification***.'"  *Filippi v. Elmont Union*

*Free School Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 303 (E.D.N.Y. 2010) (quoting *Hull v.*

*Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)) (emphasis added).

Willkie and Defendants will say that this motion is tactical and deeply prejudicial to

Defendants' trial preparation.  It is not.  Discovery revealed that ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████  Neither of them can complain of unfairness or prejudice.  We respectfully submit

Willkie must be disqualified.

## II.   FACTUAL BACKGROUND

### A.   Korn Was Significantly Involved In Representing Plaintiffs In This Action

Plaintiffs, represented by Cravath, filed this lawsuit in August 2006.  During the very

active litigation period November 2006 through August 2007, ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Declaration of Jennifer L. Pariser ¶¶ 3-5.  Korn worked on a wide range of matters in which he

indisputably gained access to his clients' confidential information: ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ *Id*. ¶ 4 & Ex. 1.  It is undisputed that Korn obtained

Plaintiffs' "confidential information," as the ethical rules define that term.[2]

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████

█      ██████████████████████████████████████████████████

█████████████████████████████████████████████████

---

[2] "Confidential information" is "information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential."  N.Y. R. Prof. Conduct Rule 1.6(a).

█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
███████





████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

        ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████

C.        **Willkie Undertakes Being Adverse To Plaintiffs In 2010 –** ████████
████████████████

        ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████















## III.   WILLKIE SHOULD BE DISQUALIFIED AS COUNSEL FOR DEFENDANTS IN THIS ACTION

### A.   The Court Has Broad Authority To Disqualify Counsel And Should Do So Where Any Doubt Exists As to Their Compliance With Their Ethical Duties

The "authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video*, 409 F.3d at 132. "Although New York's Disciplinary Rules are not binding on federal courts . . . the Court refers to these rules, and to the Committee on Professional Ethics's opinions interpreting them, for guidance." *Papyrus Technology*, 325 F. Supp. 2d at 276.  Indeed, Rule 1.5(b)(5) of the Local Rules of the Southern District "makes clear that the New York State Lawyer's Code of Professional Responsibility . . . govern the performance of attorneys in this court." *World Food*

---

*Sys., Inc. v. Bid Holdings, Ltd.,* 2001 WL 246372, at *3 (S.D.N.Y. March 12, 2001).

Whether the facts merit disqualification "is a matter committed to the sound discretion of the district court."  *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).  A court "should not hesitate" to disqualify counsel "if there be any doubt regarding . . . counsel's ability to fulfill counsel's ethical obligations."  *World Food Sys.*, 2001 WL 246372, at *3.  *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) ("we have not hesitated to disqualify counsel when the circumstances warranted it").  "*[A]ny doubt is to be resolved in favor of disqualification.*"  *Filippi*, 722 F. Supp. 2d at 303 (quotations omitted) (emphasis added).

**B.     Korn And Willkie (To Whom The Conflict Is Imputed) Cannot Be Adverse To Plaintiffs In This Case**

Attorneys who "successively represent[] opposing sides of an ongoing dispute" are "paradigmatic candidates for disqualification" since "the attorney is in a position to use the confidences gained through prior conferences with a former client."  *Papanicolaou*, 720 F. Supp. at 1083-84.  Thus, "an attorney may be disqualified if: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client."  *Hempstead Video*, 409 F.3d at 133.  Here, there is no doubt that Korn personally is disqualified from representing Defendants.  He played a critical role as Plaintiffs' counsel while at Cravath *in this very case* and was routinely exposed to highly confidential, privileged information in the course of the attorney-client representation.  ▮▮▮▮▮▮▮▮▮▮▮▮

An "attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences."  *Id*.  This "vicarious disqualification rule

recognizes the everyday reality that attorneys, working together and practicing law in a

professional association, share each other's, and their clients', confidential information."

*Genentech*, 2010 WL 1136478, at *7. *See also Papyrus*., 325 F. Supp. 2d at 278; *Filippi,* 722 F.

Supp. 2d at 307-08.  Many, if not most, of these conversations, occur verbally; there is rarely a

paper trail of emails or memos demonstrating the sharing of confidences.

Thus, as Rule 1.10(c) of the New York Rules of Professional Conduct states:

> When a lawyer becomes associated with a firm, the firm may not knowingly
> represent a client in a matter that is the same as or substantially related to a matter
> in which the newly associated lawyer, or a firm with which that lawyer
> was associated, formerly represented a client whose interests are materially adverse to
> the prospective or current client unless the newly associated lawyer did not
> acquire any information protected by Rule 1.6 or Rule 1.9(c) that is material to the
> current matter.

N.Y. R. Prof. Conduct Rule 1.10(c).  *See* n.2, supra (definition of "confidential information");

*Hempstead Video*, 409 F.3d at 133 (under New York Rules "[w]hile lawyers are associated in a

law firm, none of them shall knowingly accept or continue employment when any one of them

practicing alone would be prohibited from doing so.").  Willkie is presumed disqualified from

representing Defendants in this matter.

## C.    No Screen Could Be Effective To Overcome Willkie's Conflict

Although the "presumption of confidence sharing within a firm" may be "rebutted,"

*Hempstead Video*, 409 F.3d at 133, Willkie has not and cannot meet that burden here.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████    Even the ABA Model Rules, which permit

screening in certain instances (and which have not been adopted in New York), require that

"written notice" be "promptly given to any affected former client to enable the former client to

ascertain compliance with the provisions of this Rule," including "a description of the screening

procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures."  ABA Model R. 1.10(a)(2)(ii).  ███████████████████

███████████████████████████████████████████████████

█████████████████████████████   Although *Hempstead* stated that walls may not be deemed "categorically" ineffective, 409 F.3d at 138, the court made clear that walls could only rebut the presumption "in appropriate cases and on convincing facts."  *Id*.  In these circumstances, where Korn was intimately involved as counsel for the other side in the same case that Willkie is now litigating, and ████████████████████████████████████

███████████████████████████████   the "convincing facts" necessary to vindicate a wall cannot exist.  *Id*.  Either of these facts independently should render a wall ineffective to rebut the presumption; together they mandate Willkie's disqualification.

### 1.   Korn Was Intimately Involved In Plaintiffs' Representation In this Very Action

Given Korn's extensive involvement as counsel for Plaintiffs in this very case, Willkie's screening measures cannot rebut the presumption that attorneys at the firm shared or will share Plaintiffs' confidential information.  As courts have held, "when an associate has played an 'appreciable role' in representing an adversary in the same matter, a screen will, as a matter of law, fail to rebut the presumption of shared confidences or secrets."  *Papyrus*., 325 F. Supp. 2d at 279.  *See also Kassis v. Teacher's Ins. & Annuity Ass'n*, 93 N.Y.2d 611, 618-19 (1999) (ethical wall deemed "inconsequential" given attorney's "extensive participation" in case and new firm's "representation of the adversary in the same matter"); *ACP 140 West End Ave. Associates, LP. v. Kelleher*, 781 N.Y.S.2d 622, 1 Misc.3d 909(A), at *2-3 (2003) (same).

████████████████████████████████████████████████████████

He was intimately involved in numerous facets of the case.  Given Korn's extensive involvement

as counsel for Plaintiffs in this case, Willkie's purported wall cannot refute the presumption.

**2.** ████████████████████████████████████████

Willkie is a large firm.  What is significant here, however, is that ██████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████  The substantial risk of disclosure of confidential information

– whether advertent or not – necessarily renders a screen in these circumstances insufficient.

In *Cheng*, 631 F.2d 1052,[12] one of the attorneys in the law firm retained by the

defendants previously worked at the Legal Services office representing the plaintiff, Cheng.  *Id*.

at 1054.  The firm submitted affidavits noting that the attorney "has not worked on the Cheng

case, disclosed Cheng's confidences nor discussed the merits of the case while at the [] firm, and

that the firm will not permit him to have any substantive involvement in the Cheng defense."  *Id*.

at 1057.  Although the district court found these screening measures satisfactory, the Second

Circuit reversed.  *Id*. at 1054-55.  Noting that the firm was "relatively small" — 35 attorneys in

---

[12] The Supreme Court vacated *Cheng* "not based on its discussion of screening measures" but
rather on the grounds of the immediate appealability of disqualification motions.  *See Filippi*,
722 F. Supp. 2d at 308 n.4.  Accordingly, although the case is not precedential, courts in this
Circuit have "recognize[d] the persuasiveness of [*Cheng's*] discussion regarding screening
measures in small firms" and a "number of district courts" have "followed the reasoning of
*Cheng*, especially when adjudicating disqualification motions involving small firms."  *Id*.

two offices — the Second Circuit held that "it is unclear to us how disclosures, admittedly inadvertent, can be prevented throughout the course of this representation"; that it could "hardly expect [the client] or members of the public to consider the attempted quarantine to be impenetrable"; and that although it did "not question [the attorney's] integrity or his sincere efforts to disassociate himself from the *Cheng* case, we are not satisfied that under the facts of this case the screening will be effective." *Id*. at 1058.

In *Filippi,* 722 F. Supp. 2d, the defendants sought to disqualify the plaintiff's six-person law firm as one of its attorneys was also the Vice President of the defendant Board of Education. The plaintiffs argued that the presumption of shared confidences was rebutted by firm "screening procedures," and submitted declarations attesting that "everyone working at the [] Firm is aware that [the attorney] is not to have any participation in, or knowledge about, [the plaintiff's] case" and the attorney "does not have physical access to the files regarding plaintiff's case." *Id*. at 307. The court nonetheless held the firm's screen insufficient, as the "presumption is much stronger within a small firm than a large firm.  It is possible that the circumstances of a small firm may be such that a court will not be able to determine whether the proposed or implemented screening measures will effectively prevent disclosure. . . . Even the appearance of impropriety is of particular concern with regards to screening procedures in a small firm . . . ." *Id*. at 307-08.[13]

---

[13] *See also, e.g., Mitchell v. Metropolitan Life Ins. Co., Inc*., 2002 WL 441194, at *10 (S.D.N.Y. March 21, 2002) (in 12-lawyer office finding screen ineffective given that lawyer "works in close proximity to attorneys responsible for this action, and regularly interacts with at least one of them" and there "exists a continuing danger that [lawyer] may inadvertently transmit information gained through her prior representations"); *Crudele v. N.Y. City Police Dep't*, 2001 WL 1033539, at *4 (S.D.N.Y. Sept. 7, 2001) (in 15-lawyer firm "danger of inadvertent disclosure and the appearance of impropriety is sufficiently present here so as to require disqualification."); *Marshall v. State of N.Y. Div. of State Police*, 952 F. Supp. 103, 112 (N.D.N.Y. 1997) (15-lawyer firm "raises doubts that even the most stringent screening mechanisms could have been effective."); *Decora Inc. v. DW Wallcovering, Inc*., 899 F. Supp. 132, 141-42 (S.D.N.Y. 1995) (disqualifying 44-lawyer firm as "close working relationship

The facts of the foregoing cases involve small law firms, but the principles apply equally to small groups of attorneys who practice with one another within a larger firm.  The "impracticability of effective screening" exists "not only in small firms, . . .  but also in small practice groups within a large firm.  In small firms the work on cases and for clients is likely to be shared among the small staff, at least informally if not formally.  In small practice groups, a similar tendency is likely."  *U.S. Filter Corp. v. Ionics, Inc*., 189 F.R.D. 26, 30 (D. Mass. 1999).  Although Willkie has numerous lawyers across many offices, ██████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████  The actual and substantial risk of further disclosure of Plaintiffs' confidential information here, and the unavoidable appearance of impropriety, requires that the

---

between [the attorney] and those who are otherwise working on this case against [the attorney's] former client indicate[s] that screening mechanisms cannot be effective.").

conflict be imputed to the entire Willkie firm.[14]

**D.** ████████████████████████████████████████████
████████████████████████

Even if a screen theoretically could rebut the presumption on these facts, which it cannot,

████████████████████████████████████████████

████████████████████████████████████████████

To rebut the presumption, "'screening measures must have been established from the *first*
*moment* the conflicted attorney transferred to the firm or, at a minimum, when the firm *received*
*actual notice* of the conflict.'" *Chinese Automobile Distributors of America LLC v. Bricklin*,
2009 WL 47337, at *4 (S.D.N.Y. Jan. 8, 2009) (quoting *Mitchell*, 2002 WL 441194, at *9)
(emphases added).  "To prevent one lawyer's conflicts from being imputed to his firm, the firm
*must immediately, and effectively*, screen that lawyer from any contact with any relevant cases,
such that there can be no 'doubts as to the sufficiency of these preventive measures.'"
*Panebianco v. First Unum Life Ins. Co*., 2005 WL 975835, at *3 (S.D.N.Y. Apr. 27, 2005)
(emphasis added).

In *Chinese Automobile*, the law firm delayed for "more than three months" after the
conflicted attorney joined the firm to implement a wall barring "communications with respect to
this case between [the lawyer] and the members of that team."  2009 WL 47337, at *4.  While
the firm argued that, despite the delay, the lawyer had "not been involved in any way in

---

[14] Willkie undoubtedly will oppose this motion with declarations from its lawyers disclaiming
any disclosure of confidential information.  The "sworn word of an infected attorney or his or her
allegedly uninfected colleague that there was no cross-pollination between them is not a
satisfactory rebuttal" to the presumption of shared confidences.  *Papanicolaou*, 720 F.Supp. at
1086.  *See also Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565, 576 (S.D.N.Y.
1987) ("naked denial is insufficient to rebut the presumption that [the attorney] shared in such
information.").  Indeed, as the Second Circuit has held, a "lawyer's good faith, although essential
in all his professional activity, is, nevertheless, an inadequate safeguard when standing alone."
*Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973).

representing plaintiff in this case," and had not "discussed confidential information or the merits or issues in this case," the court held that the delay in implementing the wall was "too long," and that the "disqualification" of the lawyer "must be imputed to the [entire] firm." *Id.  See also Papanicolaou,* 720 F. Supp. at 1085 (disqualifying firm where it delayed implementing a screen for at least "five days," and in the interim the conflicted attorney appeared to discuss the case with at "least four other attorneys"; "[I]n the course of litigation both scuttlebutt and official information travel quickly by word of mouth.").[15]  A "timely and truly impenetrable comprehensive" wall requires "a written communication addressed to all firm members." *Cobb Publishing, Inc. v. Hearst Corp.*, 907 F. Supp. 1038, 1048 (E.D. Mich. 1995).  *See also INA Underwriters Ins. Co. v. Nalibotsky*, 594 F. Supp. 1199, 1210 n.8 (E.D. Pa. 1984) (effective screen must be "a formal, written, screening procedure").

[REDACTED]

---

[15] *See also Mitchell*, 2002 WL 441194, at *10 (screen ineffective where "firm did not formally implement the screen" until "almost two months after [conflicted attorney] joined the firm and well after the time the firm had actual notice of the conflict"); *Miroglio, s.p.a. v. Morgan Fabrics Corp.*, 340 F. Supp. 2d 510, 514  (S.D.N.Y. 2004) (finding screen inadequate where "[t]here is no suggestion that a screen was implemented when [attorney] first raised the issue.").

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

   ██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████   That is not a risk that the law requires Plaintiffs to suffer.

Indeed, the law is just the opposite, and it requires Willkie's immediate disqualification.

   **E.**   ███████████████████████████████████████

   Defendants undoubtedly will protest that the ethical rules should not be applied because it

will cause them hardship in preparing for trial.  Defendants should not be heard to make any such

claim.  ██████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Defendants' cries of hardship are no basis for declining to apply the ethical rules and to

safeguard Plaintiffs' confidential information.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.


Dated:  January 14, 2011                    Respectfully submitted

                                            */s/ Kelly M. Klaus*
                                            Kelly M. Klaus

                                            Attorney for Plaintiffs
                                            Munger, Tolles & Olson LLP
                                            355 South Grand Avenue, 35th Floor
                                            Los Angeles, CA 90071-1560
                                            (213) 683-9100
                                            (213) 687-3702 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2011, a copy of the foregoing document was served on the following via the Court's ECF system and by email per the parties' agreement:

Joseph T. Baio, Esq.
Tariq Mundiya, Esq.
Mary Jane Eaton, Esq.
Todd G. Cosenza, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, N.Y. 10019-6099
Telephone: 212-728-8000
Fax: 212-728-8111
Email: jbaio@willkie.com
Email: tmundiya@willkie.com
Email: meaton@willkie.com
Email: tcosenza@willkie.com

- **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY WILLKIE FARR & GALLAGHER LLP AS COUNSEL FOR DEFENDANTS (Redacted Version)**

*/s/ Shari Lorand*
Shari Lorand