UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC, fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br>                                     Plaintiffs, <br><br>           v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br>                                     Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' OWNERSHIP OR CONTROL OF THE WORKS AT ISSUE**

    Glenn D. Pomerantz *(pro hac vice)*
    Kelly M. Klaus *(pro hac vice)*
    Melinda E. LeMoine
    Susan T. Boyd *(pro hac vice)*
    Jonathan H. Blavin *(pro hac vice)*
    Munger, Tolles & Olson LLP
    355 South Grand Avenue
    Los Angeles, CA 90071
    (213) 683-9100
    Attorneys for Plaintiffs

Date: January 24, 2011

**TABLE OF CONTENTS**

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL AND PROCEDURAL BACKGROUND | | 2 |
|   | A. | Plaintiffs Prove Ownership Of 30 Works As A Matter Of Law In Their Summary Judgment Motion | 2 |
|   | B. | Following Summary Judgment, Plaintiffs Produce Voluminous Discovery Regarding Ownership Of The Remaining Works In Issue | 4 |
| III. | LEGAL STANDARD | | 5 |
| IV. | ARGUMENT | | 6 |
|   | A. | Plaintiffs Own or Control Exclusive Rights Under Copyright for Each of the Sound Recordings In Suit | 6 |
|   | B. | Defendants Cannot Reasonably Show The Existence Of A Disputed Issue Concerning Plaintiffs' Ownership Of These Works | 8 |
|   |   | 1. Nonparty Rights Issues | 9 |
|   |   | 2. Reversion Or Changed Ownership Issues | 11 |
|   |   | 3. The Remaining Procedure On This Motion | 12 |
| V. | CONCLUSION | | 13 |

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Arista Records, Inc. v. Flea World, Inc.*,
   2006 WL 842883 (D. N.J. 2006) ....................................................................................... 9

*Arista Records, LLC v. Lime Group, LLC*,
   715 F. Supp. 2d 481 (S.D.N.Y. 2010) ......................................................................... *passim*

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................................... 6

*Copyright.net Music Publ'g LLC v. MP3.com*,
   256 F. Supp. 2d 214 (S.D.N.Y. 2003) .............................................................................. 10

*Davis v. Blige*,
   505 F.3d 90 (2d Cir. 2007) ............................................................................................... 10

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,
   697 F.2d 27 (2d Cir. 1982) ............................................................................................. 2, 9

*Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*,
   140 F.2d 268 (2d Cir. 1944) ............................................................................................. 10

*Hamil Am. Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999) .............................................................................................. 4, 7

*Hart v. Sampley*,
   Civ. A. No. 91-3068 (CRR), 1992 WL 336496 (D.D.C. June 24, 1992) .......................... 9

*Magnuson v. Video Yesteryear*,
   85 F.3d 1424 (9th Cir. 1996) ............................................................................................. 9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................................. 6, 7, 8

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
   537 F.3d 168 (2d Cir. 2008) ............................................................................................... 6

*Rogers v. Koons*,
   960 F.2d 301 (2d Cir. 1992) ............................................................................................ 1, 7

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) ............................................................................................... 6

*UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*,
   446 F. Supp. 2d 1164 (E.D. Cal. 2006) ............................................................................. 9

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*X-IT Prods., L.L.C. v. Walter Kidde Portable Equipment, Inc.*,
   155 F. Supp. 2d 577 (E.D. Va. 2001) ................................................................................. 2, 8

**STATE CASES**

*Capitol Records, Inc. v. Naxos of America, Inc.*,
   4 N.Y.3d 540, 797 N.Y.S.2d 352, 830 N.E.2d 250 (2005) ..................................................... 1, 6

**FEDERAL STATUTES**

17 U.S.C. § 102(a)(7) ................................................................................................................. 1, 6

17 U.S.C. § 301(c) ........................................................................................................................... 1

17 U.S.C. § 401(c) ........................................................................................................................... 4

17 U.S.C. § 410(c) ........................................................................................................................... 1

17 U.S.C. § 501(b) ........................................................................................................................... 6

**FEDERAL RULES**

Fed. R. Civ. P. 56 ................................................................................................................... 1, 5, 6

**I.     INTRODUCTION**

The purpose of this Motion is to resolve in advance of the forthcoming trial a foundational issue that is not subject to any reasonable dispute: that a Plaintiff in this case owns or has the right to sue for the infringement of each of the thousands of sound recordings at issue infringed by Lime Wire's users. The evidence that confirms Plaintiffs' rights in this regard is not scintillating – and in some cases involves multiple contracts – but it is not subject to any genuine dispute. Fed. R. Civ. P. 56(a). Plaintiffs, accordingly, move for summary judgment on this component of their claims for relief.

Plaintiffs' claims involve their ownership or right to sue based on two categories of works:

*First*, Plaintiffs have sued Defendants based on their responsibility for the infringement of numerous sound recordings protected under federal copyright law.[1] As to each of these copyrighted sound recordings, Plaintiffs or their predecessors-in-interest have copyright registration certificates that constitute *prima facie* evidence of the valid ownership of a copyright. 17 U.S.C. § 410(c); *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992). The undisputed facts show that a Plaintiff either owns the rights under each certificate in its own name, or that such Plaintiff owns or has the right to enforce the registered copyrights by succession or contract.

*Second*, Plaintiffs have sued Defendants for their responsibility for the infringement of numerous so-called "pre-1972" sound recordings, which are protected by state law. Plaintiffs or their predecessors-in-interest own or control the rights to these sound recordings in accordance

---

[1] The sound recordings at issue created since 1972 are protected by the Copyright Act. *See* 17 U.S.C. § 102(a)(7); *Arista Records, LLC v. Lime Group, LLC*, 715 F. Supp. 2d 481, 494 n.7 (S.D.N.Y. 2010). The remaining "pre-1972 works" are protected by state law. *Id*. (citing *Capitol Records, Inc. v. Naxos of America, Inc.,* 4 N.Y.3d 540, 797 N.Y.S.2d 352, 830 N.E.2d 250, 263-64 (2005) and 17 U.S.C. § 301(c)).

with written agreements. *See Arista Records, LLC v. Lime Group, LLC*, 715 F. Supp. 2d 481, 494 n.7 (S.D.N.Y. 2010) (discussing Plaintiffs' ownership of pre-1972 sound recordings).

Defendants to date have not identified a single genuine factual dispute on ownership, and Plaintiffs do not believe they will be able to do so in opposition to this motion. Indeed, as parties adjudicated responsible for the mass infringement perpetrated by their user base, Defendants do not even have standing to challenge the validity of the transfers of copyright interests where, as here, there is no evidence of any dispute between any Plaintiff and any transferor. *See X-IT Prods., L.L.C. v. Walter Kidde Portable Equipment, Inc.*, 155 F. Supp. 2d 577, 604 (E.D. Va. 2001) ("when there is no dispute between the original copyright owner and his licensee or assignee, 'it would be anomalous to permit a third-party infringer to'" challenge the transfer) (*quoting Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 37 (2d Cir. 1982)). Even if Defendants did have standing to challenge any such transfers, Defendants' attorney arguments are not evidence and cannot create any factual dispute.[2]

Because there are no genuine factual disputes, Rule 56 enables the Court to resolve this important but uncontroverted issue in advance of trial.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiffs Prove Ownership Of 30 Works As A Matter Of Law In Their Summary Judgment Motion

Plaintiffs have already proven their ownership or control of 30 of the thousands of works at issue. In December 2007, Judge Lynch directed the parties to address Defendants' liability for secondary infringement (and related state law claims) on a global level, and to provide the

---

[2] Per the Court's instruction at the January 5, 2011 Pre-Motion Conference, the parties will meet-and-confer within the three weeks after the filing of this Motion, at which point Defendants will have to point to facts, not attorney argument, supporting any claim that there are factual issues precluding the grant of summary judgment as to the ownership of any individual sound recording.

foundation for such a liability determination based on a sample of the much larger number of sound recordings at issue in the case. Pls' Reply to Defs' Response to Pls' SUF, ¶ 99 (Doc. No. 178, filed Nov. 7, 2008). Plaintiffs selected 30 works – 25 copyrighted works, and five protected by state law. Plaintiffs moved for summary judgment and provided the Court with samples of the produced documentation that evidenced Plaintiffs' ownership or control. Plaintiffs pointed to one sample copyright registration and one sample artist agreement for the copyrighted works, and one sample artist agreement for the pre-1972 works. Plaintiffs told the Court that they would provide the balance of the documentary materials as to these works if the Court wanted Plaintiffs to submit it. Pls' SUF, ¶ 101 n.4.

Defendants did not contest Plaintiffs' ownership or control of these works, or of any of the thousands more at issue. Instead, Defendants responded that they were "[u]nable to dispute or confirm at this time" whether Plaintiffs owned the works, and "reserve[d] the right to contest [ownership] at the damages phase of any trial, for there can be genuine issues of material fact" about ownership. *Id*. at ¶ 98, 101-102. Defendants did not cite to any evidence or specify what issues of fact Defendants believed could potentially exist as to Plaintiffs' ownership of any of the works. Plaintiffs argued that ownership should be deemed undisputed as to the thousands of works based on Defendants' response. *Id*. at ¶ 98, 101-102.

In May 2010, this Court found Defendants liable for inducing infringement. In its Order granting summary judgment, this Court held that Plaintiffs had established ownership of the 30 recordings. *Arista Records, LLC*, 715 F. Supp. 2d at 494 n.7. Plaintiffs had proven ownership of the federally protected works by submitting copyright registration certificates, and ownership of the five pre-1972 works through agreements:

> Plaintiffs have provided federal copyright registration certificates
> that establish that Plaintiffs' own valid copyrights to these

>recordings.  *See* 17 U.S.C. § 401(c); *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999).  With respect to the five recordings created prior to 1972, Plaintiffs have provided copies of agreements granting them common law copyrights to these recordings. (Pl. SUF ¶ 102.).

*Id*.

### B. Following Summary Judgment, Plaintiffs Produce Voluminous Discovery Regarding Ownership Of The Remaining Works In Issue

On June 7, 2010, the parties appeared for a status conference to discuss the issues remaining to be tried.  The parties addressed ownership at that conference.  LeMoine Decl., Ex. B (June 7, 2010 Status Conference).  Plaintiffs agreed to provide the registrations and agreements underlying Plaintiffs' ownership of the recordings, and then proposed that Defendants meet and confer on the ownership issues if they thought they required more information.  LeMoine Decl., Ex. B at 9:8-10:16.  Specifically, Plaintiffs' counsel stated:

>We're asking, before they start asking for everything under the sun in order to delay and add costs to our side, that they first take what we're going to give them, the registrations and the contracts, and then tell us, if they really think we haven't proven ownership, tell us why, show us, what leads you to have confusion or concern, and hopefully we'll resolve it for them.  And if not, then your Honor will have a concrete record to assess the issues.

*Id*. at 10:9-16.  Defendants stated at that Conference that they needed additional discovery.  The Court directed Defendants to make their requests for documents relating to discovery, and directed Plaintiffs to inform Defendants of the burden of producing any additional discovery.  The parties agreed to complete that process by late July.

Plaintiffs began producing documents immediately after that Conference.  In July 2010, as agreed, Plaintiffs responded to Defendants' requests for several additional categories of documents and agreed to provide some additional documents in response beyond registrations and agreements.  LeMoine Decl., ¶ 8.  By the end of August 2010, Plaintiffs had produced over

- 4 -

155,000 pages of agreements and other documents relating to their ownership and/or right to sue regarding the works in suit. *Id*.

After the process the Court set forth to identify burden had been completed in July, Defendants did not raise any issue with what Plaintiffs had agreed to produce. *Id*. In fact, Defendants did not inquire further into Plaintiffs' ownership until last November. At that time, Defendants sought summary reports regarding the "reversion" of any copyright interests in issue. LeMoine Decl., ¶ 9. Plaintiffs have produced non-privileged reports or notices regarding copyright reversions for each of the four Plaintiff groups. *Id*.

By the end of November, Plaintiffs had produced thousands more pages of ownership-related documents. *Id*. Plaintiffs then sought to discern what objections or issues Defendants had with Plaintiffs' ownership or control of the works in suit. To that end, Plaintiffs served Requests for Admission, asking Defendants to admit that a Plaintiff owned or controlled the rights with respect to each work in suit. Defendants made no effort to answer these Requests for Admission on an individualized basis. Instead, Defendants responded with a global statement that they "lacked sufficient information" to admit or deny the RFAs as to *any* of the thousands of works in suit. LeMoine Decl., Ex. A (Defendants' Responses to Plaintiffs' RFAs). Plaintiffs requested leave to move for summary judgment on the ownership issue, and the Court set a briefing schedule on this motion. Doc. Nos. 402 (¶ I); 412.

## III. LEGAL STANDARD

A party may move for summary judgment as to a "part of each claim or defense." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving part must make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "The non-moving party may not rely on 'conclusory allegations or unsubstantiated speculation,' *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), or on mere denials or unsupported alternative explanations." *Arista Records, LLC*, 715 F. Supp. 2d at 505-06. Any inferences in the non-movant's favor must be *reasonable*, and the non-movant must present evidence "such that a *reasonable* jury could return a verdict in favor of the [nonmoving party]." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 178-79 (2d Cir. 2008) (emphasis added); *Arista Records, LLC*, 715 F. Supp. 2d at 505-06; Fed. R. Civ. P. 56(e).

## IV. ARGUMENT

### A. Plaintiffs Own Or Control Exclusive Rights Under Copyright for Each Of The Sound Recordings In Suit

The infringed sound recordings at issue fall into one of two categories: those protected by federal copyright law, and those protected by state law. Federal copyright law protects the sound recordings fixed after February 15, 1972 (the "Copyrighted Recordings"). 17 U.S.C. § 102(a)(7); *Arista Records, LLC*, 715 F. Supp. 2d at 494 n. 7. State law protects the remaining sound recordings fixed before the effective date of federal copyright protection (the "Pre-1972 Recordings"). *See Capitol Records, Inc.,* 4 N.Y.3d 542. The relevant law governing ownership or control of each category of sound recordings is well-settled and readily applied here.

A Plaintiffs may sue for federal copyright infringement if it is the "legal or beneficial owner" of the exclusive right (or rights) alleged to have been infringed in the pertinent sound

recording. 17 U.S.C. § 501(b). A certificate of copyright registration from the U.S. Register of Copyrights establishes the element of ownership of the copyrights in the Copyrighted Recordings. *Arista Records, LLC*, 715 F. Supp. 2d at 494 n.7. Plaintiffs have provided the copyright registration certificates. *See* Cho Decl., Ex. 3; Leak Decl., Ex. 3; Palerm Decl., Ex. 3; McMullan Decl., Ex. 3. Each certificate identifies a Plaintiff or (or one of its predecessors-in-interest) as "Copyright Claimant" with respect to a Copyrighted Recording. *Id*. Accompanying declarations explain the relationships between any predecessor entities named as Copyright Claimants and a plaintiff in the case. *See, e.g*., Cho Decl.; Leak Decl.; Palerm Decl.; McMullan Decl. These registration certificates thus "constitute[] *prima facie* evidence of the valid ownership of a copyright." *Hamil Am.,* 193 F.3d at 98; *see also Rogers*, 960 F.2d at 306. For the Copyrighted Works, the certificates shift the burden to Defendants to rebut Plaintiffs' ownership or control of the necessary exclusive rights.

There is no genuine issue of fact regarding Plaintiffs' ownership of the Copyrighted Recordings, as is clear from the review of any specific examples. For instance, some of the Copyrighted Recordings at issue in this case were recorded by the artists known as "The Beastie Boys." The registration certificate for these Copyrighted Recordings identifies Capitol Records, Inc. as the Copyright Claimant. LeMoine Decl., Ex. C (EMI-RC00004074). As set forth in the Declaration of Alasdair McMullan (and in the caption in this case), Capitol Records, Inc. is the former name of Plaintiff Capitol Records, LLC. McMullan Decl., ¶ 12. Applying settled law, this Court need go no further, because this evidence sufficiently establishes Capitol Records' *prima facie* ownership of these Copyrighted Recordings. *Rogers*, 960 F.2d at 306. The burden then shifts to Defendants to submit evidence showing that there is a genuine issue for trial.

*Matsushita.,* 475 U.S. at 586.  As discussed in the next Section, that is a burden that Defendants will not discharge.

For the Pre-1972 Recordings, written agreements evidence Plaintiffs' ownership or control.  *See* Cho Decl., Ex. 2; Leak Decl., Ex. 2; Palerm Decl., Ex. 2; McMullan Decl., Ex. 2. Similar to the registration certificates, these agreements identify a Plaintiff or one of its predecessors-in-interest as the owner of the particular Pre-1972 Recording(s).  *Id*.  Again, each declaration explains the relationship between any predecessor entity and a plaintiff in the case. *See, e.g*., Cho Decl.; Leak Decl.; Palerm Decl.; McMullan Decl.  This Court has already deemed similar agreements sufficient to establish ownership of works protected by common law copyright.  *Arista Records, LLC*, 715 F. Supp. 2d at 494 n.7.

As an example of the evidence supporting Plaintiffs' ownership or control of the Pre-1972 Recordings, consider Aretha Franklin's "Respect."  Plaintiff Atlantic Recording Corporation owns the exclusive rights to this Master pursuant to a 1966 agreement between Atlantic and the artist.  LeMoine Decl., Ex. D (WMG-7001297).  In provisions that are typical and unexceptional in recording agreements, the agreement provides that the recordings thereto are Atlantic's exclusive property and that Atlantic has the exclusive right to exploit and control those recordings.  *Id*. at 4 ¶ 4.  The face of the agreement, in short, confirms Plaintiff Atlantic's right to sue for the infringement of the pertinent Pre-1972 Recording.  Examples like this are repeated over and over again with respect to the Pre-1972 Recordings.  Again, the burden shifts to Defendants to submit evidence of some genuine issue for trial.  *Matsushita.,* 475 U.S. at 586.

### B.   Defendants Cannot Reasonably Show The Existence Of A Disputed Issue Concerning Plaintiffs' Ownership Of These Works

The presumption of ownership created by the voluminous evidence underlying Plaintiffs' Motion precludes any attempt by Defendants – *who have been adjudicated to be responsible for*

- 8 -

*the mass infringement perpetrated by Lime Wire's users* – from challenging Plaintiffs' copyright ownership. *X-IT Prods., L.L.C.,* 155 F. Supp. 2d at 604 ("when there is no dispute between the original copyright owner and his licensee or assignee, 'it would be anomalous to permit a third-party infringer to'" challenge the transfer) (*quoting Eden Toys*, 697 F.2d at 37). *Accord Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428-29 (9th Cir. 1996); *Hart v. Sampley*, Civ. A. No. 91-3068 (CRR), 1992 WL 336496, *1 (D.D.C. June 24, 1992) ("Even if, as defendants suggest, the transfer was in some way defective, the defendants would not have standing to challenge the validity of the transfer because they were not parties to the agreement."). *See generally Arista Records, Inc. v. Flea World, Inc*., 2006 WL 842883, *8-9 (D. N.J. 2006) (finding ownership of hundreds of copyrighted sound recordings proven on summary judgment by copyright registration certificates); *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc*., 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006) (same).

Even if Defendants did have standing to contest Plaintiffs' ownerships, Defendants have not and will not establish any genuine issues of material fact. As discussed, Plaintiffs served requests for admission, in order to put Defendants to the test of identifying which works, if any, involved disputed issues relating to ownership. Defendants refused to respond on any work-by-work basis, and instead purported to "deny" the requests in total. *See* LeMoine Decl., Ex. A. Defendants claimed to have identified a handful of generic objections to Plaintiffs' ownership. These issues were not tied to any particular work or supported by citation to any actual evidence. As we discuss briefly, the scant objections that Defendants have attempted to raise "globally" should not prevent the grant of summary judgment on the ownership issue.

      1.        **Nonparty Rights Issues**

Defendants have purported to question whether a non-party holds any rights *along with* any Plaintiff as to any individual sound recording. LeMoine Decl., Ex. A at 2. This is a red-

herring. Even if a non-party is a co-owner of rights with any Plaintiff, the Plaintiff nevertheless remains an owner and may sue for infringement. The Second Circuit has held that the right to sue for copyright infringement "may be exercised independently of co-owners; a joint owner is not required to join his other co-owners in an action for infringement." *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007); *see also Edward B. Marks Music Corp. v. Jerry Vogel Music Co.,* 140 F.2d 268, 269 (2d Cir. 1944) ("It was early decided that the holder of the legal title to a copyright might sue without joining others who had an equitable interest in the copyright.") (citation omitted); *Copyright.net Music Publ'g LLC v. MP3.com,* 256 F. Supp. 2d 214, 218 (S.D.N.Y. 2003) (copyright infringement plaintiffs not obligated to join alleged co-owners of compositions at issue).

Some works in suit are jointly owned by a Plaintiff and another party (or parties). That joint ownership is reflected in the ownership documents. For example, Badman Limited and A&M Records, a division of Plaintiff UMG Recordings, Inc., jointly own copyrights in masters recorded by Bryan Adams. The registration certificates reflect that joint ownership by identifying both "Badman Limited" and "A&M Records, a division of UMG Recordings, Inc." as Copyright Claimants. LeMoine Decl., Ex. E. The fact that Plaintiff UMG Recordings, Inc. and Badman Limited are joint owners of this work does not create a fact issue as to UMG Recordings, Inc.'s ownership and right to bring this infringement action. *See Davis*, 505 F.3d at 99.

Relatedly, with respect to some of the works in issue, a named Plaintiff is not an owner but rather is an exclusive licensee of the rights to reproduce and distribute copies of the sound recordings. A Plaintiff's status as an exclusive licensee, and not an owner, likewise does not change the fact that the Plaintiff may sue for infringement of that sound recording. An exclusive

licensee may sue for infringement. *Id*. at 101 ("An exclusive license . . . conveys an ownership interest.").

### 2. Reversion Or Changed Ownership Issues

Defendants also raise the specter of whether Plaintiffs' rights in copyright have "reverted" to another party, or otherwise changed hands since the certificates issued. LeMoine Decl., Ex. A. This is not an issue as to which Defendants can avoid summary judgment *en masse* on the issue of ownership – which is how they used it to try to avoid answering any request for admission. If Defendants have evidence that any right actually has reverted as to any particular sound recording, such that a particular Plaintiff does not have the right to sue for infringement of that work, Defendants are obligated to present that evidence. To date, Defendants have not pointed to evidence showing any actual reversion; rather, they have complained about not having sufficient information to be able to frame such an argument. These complaints are not well-taken in opposition to this motion.

*First*, Defendants have more than sufficient information to make any such argument. If a recording or other agreement granted a right only for a limited period or with some reversionary interest, that term would be reflected in the actual agreement. Defendants of course can read the agreements, which they have had for many months. Of course, the vast majority of the agreements grant a Plaintiff (directly or through succession from a predecessor-in-interest) broad and perpetual rights to exploit the copyrights. *See, e.g.*, LeMoine Decl., Ex. F at 14 (EMI-7000723) (recording agreement making clear that the record company Plaintiff [in this instance, Capitol Records] has exclusive and perpetual rights of ownership under copyright). The fact that Defendants to date have not pointed to any actual reversionary term that they contend applies in this case speaks volumes about the validity (or not) of this claimed objection.

- 11 -

*Second*, Defendants have complained about needing to obtain summary documents reflecting when rights may "revert" to third parties.  In response, each Plaintiff group has produced non-privileged summary reports or notices as to when rights expire relating to any of the works in suit.  Defendants can read these documents, too, and if Defendants claim to identify an issue, they must bring it to Plaintiffs' attention.

We note that, even without the documents and summaries Plaintiffs provided, Defendants could identify changes of ownership or control by any number of public sources.  For example, Defendants could consult  the label copy for compact discs or downloads being sold open and notoriously in stores like Best Buy, Wal-Mart, Amazon.com, and Apple's iTunes Store.  Defendants could consult the website of the Copyright Office, where transfers of copyright are recorded and publicly available explicitly to afford notice of such transfers.  The point is that Defendants have to respond to this motion with "significant, probative evidence."  *Arista Records, LLC*, 715 F. Supp. 2d at 506 (internal citations omitted).  Defendants cannot rely on mere conjecture or hypothetical arguments to oppose this motion.

### 3. The Remaining Procedure On This Motion

The "Non-Party Rights" and "Reversion" questions are the only two "issues" Defendants have raised to date.  If Defendants attempt to raise either of these issues – or any other they have not identified – with respect to any individual sound recording, Defendants must do so through the Court-Ordered meet-and-confer process, scheduled to commence three weeks after the filing of this motion.  *See* n. 2, *supra*.  If and when Defendants raise any such issue, Plaintiffs will respond, and the parties will identify for the Court where there are issues, if any, that the Court will have to resolve.

## V. CONCLUSION

Plaintiffs respectfully request that the Court grant their motion.

Dated:  January 24, 2011                     Respectfully submitted

                                             *s/ Melinda E. LeMoine*
                                             Melinda E. LeMoine

                                             Attorney for Plaintiffs
                                             Munger, Tolles & Olson LLP
                                             355 South Grand Avenue, 35th Floor
                                             Los Angeles, CA 90071-1560
                                             (213) 683-9100
                                             (213) 687-3702 (Fax)