**REDACTED VERSION**
**-COMPLETE VERSION FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., | ECF Case<br><br>06 CV 5936 (KMW)(DF) |

Plaintiffs,

v.

LIME GROUP LLC; LIME WIRE LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,

Defendants.

# DEFENDANTS' MEMORANDUM OF LAW
# IN OPPOSITION TO MOTION TO DISQUALIFY

**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019-6099
Tel: (212) 728-8000

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

FACTS ............................................................................................................... 4

    A.   Korn's Representation Of Plaintiffs Ended In August 2007. ................................. 4

    B.   ████████████████████████████████████████ .............................................. 5

    C.   ██████████████████████████████ ....................................................... 6

    D.   Willkie's Representation Of Defendants In The Lime Wire Case. ........................ 7

ARGUMENT ..................................................................................................... 9

I.    COURTS IN THE SECOND CIRCUIT WILL NOT DISQUALIFY
    COUNSEL IN THE ABSENCE OF TRIAL TAINT. ................................. 9

II.    PLAINTIFFS HAVE FAILED TO ESTABLISH TRIAL TAINT ................ 12

    A.   Uncontroverted Evidence:  No Confidential Information Was Shared. ............... 14

    B.   The Passage Of Time Since Korn's Representation Of Plaintiffs. ...................... 16

    C.   ███████████████████████████ ...................................................... 17

    D.   ████████████████████████████████████ .................. 19

III.    THE BALANCE OF EQUITIES STRONGLY FAVORS DEFENDANTS'
    CONTINUED REPRESENTATION BY WILLKIE. ................................. 24

CONCLUSION .................................................................................................. 25

i

**TABLE OF AUTHORITIES**

**CASES**                                                                    **PAGE**

*Arista Records LLC v. Lime Group LLC,*
    532 F. Supp. 2d 556 (S.D.N.Y. 2007)...............................................................17

*Battagliola v. Nat'l Life Ins. Co., Ltd.*
    No. 03 Civ. 8558, 2005 WL 101353 (S.D.N.Y. Jan. 19, 2005).........................11

*British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.,*
    No. 90 Civ. 2370, 2002 WL 31307165 (S.D.N.Y. Oct. 29, 2002) ....................20

*Chinese Auto. Distribs. of Am. LLC v. Bricklin,*
    No. 07 Civ. 4113, 2009 WL 47337 (S.D.N.Y. Jan. 8, 2009)........................18, 19

*Cobb Publ'g, Inc. v. Hearst Corp.,*
    907 F. Supp. 1038 (E.D. Mich. 1995)...............................................................21

*In re Del-Val Fin. Corp. Sec. Litig.,*
    158 F.R.D. 270 (S.D.N.Y. 1994) ........................................................15, 17, 18

*Emle Indus., Inc. v. Patentex, Inc.,*
    478 F.2d 562 (2d Cir. 1973)...............................................................................16

*Eugenia VI Venture Holdings, Ltd. v. Glaser,*
    No. 05 Civ. 7262, 2005 WL 3071268 (S.D.N.Y. Nov. 15, 2005) ....................12

*EZ Paintr Corp. v. Padco, Inc.,*
    746 F.2d 1459 (Fed. Cir. 1984)..........................................................................16

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.,*
    722 F. Supp. 2d 295 (E.D.N.Y. 2010) ..............................................................20

*Gabayzadeh v. Taylor,*
    639 F. Supp. 2d 298 (E.D.N.Y. 2009) ................................................................9

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH,*
    No. 08-04909, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010) ..........................23

*Grievance Comm. for S.D.N.Y. v. Simels,*
    48 F.3d 640 (2d Cir. 1995).................................................................................12

*Hartford Accident & Indem. Co. v. RJR Nabisco, Inc.,*
    721 F. Supp. 534 (S.D.N.Y. 1989).....................................................................23

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,*
    409 F.3d 127 (2d Cir. 2005)..................................................................... *passim*

*Human Elecs., Inc. v. Emerson Radio Corp.,*
    375 F. Supp. 2d 102 (N.D.N.Y. 2004)...................................................13, 16, 17

*Huntington v. Great W. Res., Inc.,*
    655 F. Supp. 565 (S.D.N.Y. 1987)....................................................................16

*INA Underwriters Ins. Co. v. Nalibotsky,*
    594 F. Supp. 1199 (E.D. Pa. 1984) ...................................................................21

*Intelli-Check, Inc. v. Tricom Card Techs., Inc.,*
    No. 03 CV 3706, 2008 WL 4682433 (E.D.N.Y. 2008) ............................ *passim*

*Kassis v. Teacher's Ins. & Annuity Ass'n,*
    717 N.E.2d 674 (N.Y. 1999)..............................................................................11

*Koch Indus., Inc. v. Hoechst Aktiengesellschaft,*
    650 F. Supp. 2d 282 (S.D.N.Y. 2009)..........................................................10, 23

*Lambert v. Chase Manhattan Bank, N.A.,*
    Nos. 93 Civ. 5298, 93 Civ. 6876, 93 Civ. 8270, 93 Civ. 1317,
    1996 WL 66130 (S.D.N.Y. Feb. 15, 1996)..........................................11, 16, 25

*Lankler, Siffert & Wohl LLP v. Rossi,*
    125 F. App'x 371 (2d Cir. 2005) ........................................................................9

*Leslie Dick Worldwide, Ltd. v. Soros,*
    No. 08 Civ. 7900, 2009 WL 2190207 (S.D.N.Y. July 22, 2009) .....................10

*Lipin v. Bergquist,*
    574 F. Supp. 2d 423 (S.D.N.Y. 2008)...............................................................23

*Med. Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC,*
    542 F. Supp. 2d 296 (S.D.N.Y. 2008).........................................................10, 13

*In re MTBE Prods. Liab. Litig.,*
    438 F. Supp. 2d 305 (S.D.N.Y. 2006)...............................................................24

*Papanicolaou v. Chase Manhattan Bank, N.A.,*
    720 F. Supp. 1080 (S.D.N.Y. 1989)..................................................................15

*Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.,*
    325 F. Supp. 2d 270 (S.D.N.Y. 2004)................................................... *passim*

*Reilly v. Computer Assocs. Long-Term Disability Plan,*
    423 F. Supp. 2d 5 (E.D.N.Y. 2006) ............................................................15, 24

*Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,*
    518 F.2d 751 (2d Cir. 1975)........................................................................4, 22

*Siverio v. LaVergne,*
    No. 86 Civ. 6584, 1989 WL 31531 (S.D.N.Y. Mar. 29, 1989) .............................10, 15, 23

*Team Obsolete Ltd. v. A.H.R.M.A. Ltd.,*
    No. 01 CV 1574, 2006 WL 2013471 (E.D.N.Y. July 18, 2006) .......................................13

*United States v. St. John,*
    267 F. App'x 17 (2d Cir. 2008) ...........................................................................6

*U.S. Filter Corp. v. Ionics, Inc.,*
    189 F.R.D. 26 (D. Mass. 1999)...........................................................................22

*Vincent v. Essent Healthcare of Conn.,*
    465 F. Supp. 2d 142 (D. Conn. 2006)..................................................................25

*W.T. Grant Co. v. Haines,*
    531 F. 2d 671 (2d Cir. 1976)........................................................................10, 24

## OTHER AUTHORITIES

Cal. Evidence Code § 1120(b)(3) .............................................................................20

Roy Simon, *Simon's N.Y. Rules of Prof'l Conduct Ann.* (2009) ....................................21

iv

REDACTED VERSION
-COMPLETE VERSION FILED UNDER SEAL

Defendants submit this brief in opposition to Plaintiffs' motion seeking to disqualify Willkie Farr & Gallagher LLP ("Willkie" or the "Firm") on the basis that Willkie attorney Jeffrey Korn worked on the team representing Plaintiffs in the case (the "Lime Wire case") before he left Cravath, Swaine & Moore LLP ("Cravath") in 2007.

## PRELIMINARY STATEMENT

The central issue before the Court is whether there is a substantial risk of trial taint in the trial set to commence in approximately 90 days. *See Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("disqualification is only warranted where an attorney's conduct tends to *taint the underlying trial*") (emphasis added).[1] The Second Circuit has repeatedly held that screening and other safeguards—formal and informal—are adequate against the risk of disqualifying taint where such measures "effectively protect[] against any sharing of confidential information." *Id.* at 138. Here, Plaintiffs do not even contend that their confidential information was shared or that the trial will be tainted.

The uncontroverted record establishes that there is no cognizable risk of trial taint here:



---

[1] Internal citations and quotations are omitted from case citations in this memorandum.



"A party seeking disqualification carries a heavy burden of proof and must demonstrate that, absent disqualification, the trial *would be* tainted." *Intelli-Check, Inc. v. Tricom Card Tech., Inc.*, No. 03 CV 3706, 2008 WL 4682433, at *3 (E.D.N.Y. Oct. 21, 2008) (emphasis added). The Court will search Plaintiffs' motion in vain for that governing standard. They do not even mention "trial taint," much less carry the heavy burden of establishing it. That alone warrants denial of the pending motion.

The crux of Plaintiffs' argument is that Willkie cannot rebut the presumption of shared confidences because of Korn's work on the Lime Wire case at Cravath ███████████ ████████████████████████████████████████████ Under *Hempstead*, however, the effectiveness of steps taken to rebut the presumption of shared confidences is not assessed by reference to categorical rules, abstract models, or ideal forms—of

the sort Plaintiffs proffer—but, rather, by the kinds and quantum of evidence that Willkie has presented:



Here, as in *Hempstead*, ███████████████████████████

███████████████████████████████████████████

███████████████████ *Hempstead*, 409 F.3d at 137.

Unable to establish trial taint, Plaintiffs raise two extraneous arguments that are factually and legally meritless. ██████████████████████████

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████████████████ is not relevant to the legal and factual

3

issue now before the Court—whether Willkie's continued representation would taint the trial in this case.



    The essential premise of Plaintiffs' disqualification argument is that "[n]o other remedy will *guarantee* that Plaintiffs' confidential information will not be passed to Defendants." (Pls.' Mem. 1 (emphasis added).) No "guarantee" is required. If it were, law firms would be disqualified in every lateral-hire, imputed-conflict case. But *Hempstead* and numerous other decisions uphold screens, unequivocally rejecting this premise, despite the obvious and inescapable fact that no screen or safeguard can be 100% impervious to all conceivable human error or malignant intent.[2]

    This motion is directed to the Court's discretion. Trial is 90 days away.                   Plaintiffs have suffered no prejudice. Korn, who became a Willkie partner three weeks ago on January 3, 2011,                   Introducing new counsel will inject delay and severely prejudice Defendants. Accordingly, the motion should be denied.

## FACTS

**A.    Korn's Representation Of Plaintiffs Ended In August 2007.**

---

[2] *See, e.g., Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 753-54 (2d Cir. 1975) ("It will not do to make the presumption of [shared] confidential information rebuttable and then to make the standard of proof for rebuttal unattainably high").

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

████████████████████████████████

██████

█████████████████████████████████
████████████████

████████████████████████████████████

███████████████████████████████

███████████████████████████████████████

The facts are these:

In September 2008, Judge Lynch observed that Porter & Hedges, Defendants' then

counsel of record, might have a conflict with respect to the deposition of Greg Bildson, "a former

defendant who has settled with the plaintiffs," stating that "it is unclear whether defendants'

counsel, who previously represented Bildson and who have apparently had access to his

confidences, may cross-examine him consistently with their responsibilities to him . . . ." (Order

¶ 4, Sept. 25, 2008, ECF No. 130.) ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[3] References to "_____ Decl." are to declarations filed contemporaneously herewith. References to "_____ Tr." are to excerpts of deposition transcripts annexed as exhibits to the Declaration of Roger Netzer.



As the Second Circuit has consistently stressed: "[I]n the civil context, we have held that there is no basis for the jury to draw an adverse inference because of the assertion of the attorney-client privilege." *United States v. St. John*, 267 F. App'x 17, 22 (2d Cir. 2008).



███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

       Willkie is a 622-lawyer firm, with more than 400 lawyers in New York dispersed over 10

floors and over 200 in its Litigation Department. ██████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

## ARGUMENT

## I.   COURTS IN THE SECOND CIRCUIT WILL NOT DISQUALIFY COUNSEL IN THE ABSENCE OF TRIAL TAINT.

       "[M]otions to disqualify are disfavored."[8]  Courts in this Circuit are "loathe to separate a

client from his chosen attorney."[9]  Such motions "inevitably result in delay and added

---

[8] *Lankler, Siffert & Wohl LLP v. Rossi*, 125 F. App'x 371, 372 (2d Cir. 2005).

[9] *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 301 (E.D.N.Y. 2009).

expense,"[10] and "are often interposed for tactical reasons."[11]  As this Court has observed, "disqualification represents a drastic measure which has the potential to severely prejudice the client."[12]

"[T]he Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel."[13]  In a profession in which attorney mobility is the rule, not the exception, the theoretical possibility that an attorney might impart confidential information from earlier employment does not warrant disqualification of his or her new firm unless there is a risk of "taint which results in *one side gaining an unfair advantage over the other*."[14]

The concept of trial taint has been the cornerstone of Second Circuit disqualification jurisprudence for at least 35 years, and it is only Second Circuit precedent that governs disqualification.[15]  In *Hempstead,* the Second Circuit determined that "disqualifying taint" may be avoided by screening measures that "effectively protect[] against any sharing of confidential information." 409 F.3d at 137-38.  There, the Court decided that the presumption that associated attorneys share client confidences may be successfully rebutted by sworn affidavits of the lateral

---

[10]  *Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC,* 542 F. Supp. 2d 296, 307 (S.D.N.Y. 2008).

[11]  *Siverio v. Lavergne*, No. 86 Civ. 6584 (KMW), 1989 WL 31531, at *5 n.3 (S.D.N.Y. Mar. 29, 1989).

[12]  *Id.* at *3.

[13]  *Leslie Dick Worldwide, Ltd. v. Soros*, No. 08 Civ. 7900, 2009 WL 2190207, at *6 (S.D.N.Y. July 22, 2009).

[14]  *Med. Diagnostic Imaging,* 542 F. Supp. 2d at 315 (emphasis added).  *See also Intelli-Check*, 2008 WL 4682433, at *3 (movant must demonstrate that trial "*would be*" tainted) (emphasis added); *Koch Indus., Inc. v. Hoechst Aktiengesellschaft*, 650 F. Supp. 2d 282, 286 (S.D.N.Y. 2009) ("The motion will be granted only if the facts present a *real risk* that the trial will be tainted") (emphasis added).

[15]  *See W.T. Grant Co. v. Haines,* 531 F.2d 671, 677 (2d Cir. 1976) ("The business of the [federal district] court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here *unless the questioned behavior taints the trial* of the cause before it.") (emphasis added); *Leslie Dick,* 2009 WL 2190207, at *5 (the "only truly binding authority on disqualification issues is [Second] Circuit precedent, because authority to disqualify an attorney stems from the Court's inherent supervisory authority"). State disciplinary rules, by contrast, "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead,* 409 F.3d at 132.

10

attorney and his new colleagues affirming that he shared no confidential information, *id.* at 137, and by evidence of ethical screens that insulate against the flow of confidential information from the conflicted attorney to members of his present law firm. *Id.* at 133.[16] ████████████

████████████

   *Hempstead* emphasized that there is "no categorical rule against considering practices and structures that protect client confidences within a firm in determining whether an attorney or firm should be disqualified." *Id.* at 137.  Rather, "[c]ourts should inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint." *Id.*

   Plaintiffs try to shirk their burden of proving an actual risk of trial taint and instead contend that because Korn played an *"appreciable role"* in representing Plaintiffs in this matter at Cravath, "a screen will, as a matter of law, fail to rebut the presumption of shared confidences or secrets." (Pls.' Mem. 18 (emphasis added) (citing *Papyrus Tech. Corp. v. N.Y. Stock Exch.,* 325 F. Supp. 2d 270, 279 (S.D.N.Y. 2004), and *Kassis v. Teacher's Ins. & Annuity Ass'n,* 717 N.E.2d 674 (N.Y. 1999)).)  But that is exactly the kind of *per se* rule *Hempstead* rejected.  The court in *Intelli-Check,* applying *Hempstead,* considered this very argument and concluded that imputation of disqualification was not warranted notwithstanding the *"appreciable role"* that the lateral attorney may have played in the prior representation.[17]  In all events, *Papyrus* is a district court decision that pre-dated *Hempstead* (and denied disqualification), and it relied on *Kassis*—a

---

[16] Screening measures can take a variety of forms, including an instruction to the conflicted attorney "not to discuss the . . . case with anyone at the firm." *See Hempstead,* 409 F.3d at 136.

[17] *Intelli-Check,* 2008 WL 4682433, at *4 (emphasis added); *see also Battagliola v. Nat'l Life Ins. Co., Ltd.,* No. 03 Civ. 8558, 2005 WL 101353, at *12, *16 (S.D.N.Y. Jan. 19, 2005) (firm not disqualified, although lateral attorney's involvement in prior representation was "extensive"); *Lambert v. Chase Manhattan Bank, N.A.,* Nos. 93 Civ. 5298, 93 Civ. 6876, 93 Civ. 8270, 93 Civ. 1317, 1996 WL 66130, at *1 (S.D.N.Y. Feb. 15, 1996) (denying disqualification where, among other things, lateral attorney billed approximately 800 hours to former representation).

pre-*Hempstead* state court case that does not address, much less apply, Second Circuit

disqualification law.[18]

Although Plaintiffs hedge their *per se* argument by arguing in the alternative that

███████████████████████████████████████████████████ they fail to meet

their heavy burden for the reasons discussed below.

## II.   PLAINTIFFS HAVE FAILED TO ESTABLISH TRIAL TAINT.

Plaintiffs' motion papers nowhere address the critical issue of trial taint.  That failure to

mention, let alone carry, their heavy burden warrants denial of the motion without more.[19]

Defendants do not dispute that Korn had access to confidential information when he

worked at Cravath, but that does not fill the fatal gap in Plaintiffs' proof—████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ There is no

"substantial risk" of any disclosure, but even if there were, it would not demonstrate an actual

risk of trial taint ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

---

[18] *See, e.g., Grievance Comm. for S.D.N.Y. v. Simels*, 48 F.3d 640, 645 (2d Cir. 1995) (in assessing ethical rules and policies underlying them, "well-established principles of federalism require that federal courts not be bound by . . . the interpretations of state courts").

[19] *See, e.g., Eugenia VI Venture Holdings, Ltd. v. Glaser*, No. 05 Civ. 7262, 2005 WL 3071268, at *4 (S.D.N.Y. Nov. 15, 2005) (denying disqualification because movants "have not met their heavy burden of showing that disqualification is warranted—that the trial of this case would be tainted").

Notwithstanding Plaintiffs' unfounded speculation of █████████████

██████████████████████████—a risk present in virtually every lateral move

case—"there is no real danger that [Defendants] have gained or will gain an unfair advantage

over [Plaintiffs]."[20]  Plaintiffs make no showing, even inferentially, ██████████████

█████████████████████████████

On the contrary, Defendants have rebutted the presumption of shared confidences with

precisely the kind of facts on which the courts in this Circuit rely in evaluating risk of trial taint:

████████████████████████████████

████████████████████████████████████

████████████████████████████████

█████████████████████████████████████

██████████████████████████[24]

Applying these factors, the district court in *Intelli-Check* denied a motion to disqualify █

███████████████████████[25]  *Intelli-Check* concerned a lateral associate

who had worked for more than a year representing plaintiffs in the very case where his

subsequent firm, Kelley Drye, came to represent defendants.  Until he left plaintiffs' firm, he had

been the "primary associate in charge of the litigation": He "drafted the initial and amended

---

[20] *Human Elecs., Inc. v. Emerson Radio Corp.*, 375 F. Supp. 2d 102, 113 (N.D.N.Y. 2004); *see also Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, No. 01 CV 1574, 2006 WL 2013471, at *8 (E.D.N.Y. July 18, 2006) (disqualification denied where, among other things, movant failed to show how information disclosed to former attorney "could be used to [movant's] disadvantage in this case"); *Med. Diagnostic Imaging, PLLC*, 542 F. Supp. 2d at 315 ("The Court's concern, therefore is with taint which results in one side gaining an unfair advantage over the other.")

[21] *See, e.g., Hempstead*, 409 F. 3d at 137.

[22] *See, e.g., Human Elecs.*, 375 F. Supp. 2d at 107, 116.

[23] *See, e.g., Hempstead*, 409 F. 3d at 138.

[24] *See, e.g., id.* at 137.

[25] *Intelli-Check*, 2008 WL 4682433.

13

complaints, a deposition outline, . . . interrogatories, and . . . responses to Defendants'

interrogatories . . . conducted third-party discovery, . . . communicated with opposing counsel

without supervision[,] [and] researched and analyzed several legal issues including venue,

personal jurisdiction, and the Lanham Act."[26]  Two years later, Kelley Drye assumed

representation of defendants as a result of a merger with defendants' counsel.  When Kelley Drye

started representing the defendants, it told the associate not to work on the matter or discuss it

with anyone at the firm.  The firm also blocked the associate's access to records and files for the

case.[27]

The district court denied the motion to disqualify Kelley Drye because the firm rebutted

the presumption of shared confidences.  The court stressed that almost two years had elapsed

between the associate's separation from his old firm and Kelley Drye's appearance for

defendants; the timeliness of its ethical screen; uncontroverted affidavits confirming that no

confidences were shared; and the prejudice the defendants would suffer if Kelley Drye were

disqualified.[28]  ████████████████████████████████████████

**A.      Uncontroverted Evidence:  No Confidential Information Was Shared.**

████████████████████████████████████████████████

████████████████  As in *Hempstead*, ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[26] *Id.* at *1.

[27] *Id.* at *1, 3.

[28] *Id.* at *5.

14



This uncontroverted evidence rebuts the presumption of shared confidences.[29]

[30]

Plaintiffs urge this Court to reject the declarations of Korn and other Willkie lawyers

███████████████████████████████████ (Pls.' Mem. 22 n.14), citing dicta in

a pre-*Hempstead* district court decision, *Papanicolaou v. Chase Manhattan Bank, N.A.*, which

did not involve a lateral attorney's disqualification based on a prior representation.[31]  In light of

*Hempstead*'s subsequent affirmation that sworn statements of non-disclosure may rebut the

presumption of shared confidences—███████████████████████████████████

████████████████████████████████ is tantamount to saying that the presumption of shared

---

[29] *See, e.g.*, *Hempstead*, 409 F.3d at 137 ("uncontroverted affidavits," in addition to screen, rebutted presumption of shared confidences); *Intelli-Check*, 2008 WL 4682433, at *5 (court's finding that inadvertent disclosure was unlikely was "reinforced by affidavits" from attorneys involved); *Siverio*, 1989 WL 31531 at *4 (noting Second Circuit holding that presumption of shared confidences was sufficiently rebutted by sworn statements of attorneys).

[30] *Reilly v. Computer Assocs. Long-Term Disability Plan*, 423 F. Supp. 2d 5, 11-12 (E.D.N.Y. 2006) (affidavits provided strong circumstantial support for conclusion that individual attorney was effectively screened within firm); *see also In re Del-Val Fin. Corp. Sec. Litig.*, 158 F.R.D. 270, 275 (S.D.N.Y. 1994) (affidavits stating that lateral attorney had not disclosed confidential information were important where oral statements were the only way to disseminate confidential information).

[31] Instead, *Papanicolaou* concerned disqualification resulting from an attorney's *ex parte* communications with his adversary's client. 720 F. Supp. 1080, 1081-82 (S.D.N.Y. 1989).  The court imputed the attorney's disqualification based on an untimely and ineffective screen—the attorney refused to withdraw from the case despite obtaining confidential information during the *ex parte* meeting, and the court found that the screen was unable to "contain the effects" of deprecating remarks the attorney made during the meeting concerning his adversary's competence. *Id.* at 1082, 1087.

confidences is *ir*rebutable.  Under Second Circuit law, it is not.[32]

This is *not a side-switching case*, despite Plaintiffs' attempts to mischaracterize it as one. (Pls.' Mem. 1.)  When Korn moved to Willkie as an associate, ███████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

In essence, Plaintiffs contend that, in the context of lateral hires, no one can be trusted and screens can never really work.  This contention has been decisively rejected by the Second Circuit.[33]

**B.    The Passage Of Time Since Korn's Representation Of Plaintiffs.**

███████████████████████████████ Korn's last day ██████████ at Cravath in ██████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████ *Intelli-Check*, *Papyrus*, and *Lambert*, in each of which disqualification was denied.[34] ████████████████████████████████████████████████

---

[32] Plaintiffs, like the court in *Papanicolaou*, cite other cases decided well before *Hempstead*, none of which refused to consider attorneys' sworn statements that confidences were not shared as rebuttal evidence. (Pls.' Mem. 22 n.14) In *Huntington v. Great Western Resources, Inc.* 655 F. Supp. 565, 575-76 (S.D.N.Y. 1987), "naked denial" of shared confidences was *by itself* insufficient to rebut the presumption where there was *no* erection of an ethical screen and *no* "supporting affidavits" to "corroborate [the attorney's] affirmation." In *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1461-62 (Fed. Cir. 1984), attorneys' affidavits denying recollection of discussing the case was controverted by movant's affidavit detailing conversations with conflicted attorneys about case. *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973), did not concern imputed conflicts, screening, or rebutting the presumption of shared confidences at all.  Instead, the court considered whether a lawyer could switch sides and serve as lead counsel against a client *he* previously represented in a substantially related case involving identical issues.

[33] *Hempstead*, 409 F. 3d at 137.

[34] *See Intelli-Check*, 2008 WL 4682433, at *5 (lateral attorney "had separated from his old firm almost two years before the conflict arose," rendering it "*unlikely* that [the attorney's] knowledge was central to the ongoing strategies of [the former client]."); *Papyrus*, 325 F. Supp. 2d at 279 (30-month gap between lateral attorney's departure from prior firm and start of allegedly adverse representation by new firm favors non-movant); *Lambert*, 1996 WL 66130, at *1 (S.D.N.Y. Feb. 15, 1996) (presumption rebutted where lateral attorney separated from prior firm for more than a year); *see also Human Elecs.*, 375 F. Supp. 2d at 107 ("firm may rebut the presumption of shared confidences" where "a long period of time has passed since the prior representation").

16

████████████████████████████████████████████████████████

███████████████████████████████████████████████ The Court

has also ruled on the issue of copyright liability against the defendants.  (*Arista Records LLC v.*

*Lime Group LLC*, 532 F. Supp. 2d 556 (S.D.N.Y. 2007); Am. Op. & Order, May 25, 2010, ECF

No. 223.) ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ further diminish the theoretical possibility that the trial might be tainted by

some imagined slip of the tongue on the part of Korn.[35]

████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████

---

[35] *See Human Elecs.*, 375 F. Supp. 2d at 116; *see also Papyrus*, 325 F. Supp. 2d at 279 (disqualification of firm
denied where, *inter alia*, individually conflicted attorney did not remember confidential information); *In re Del-Val
Fin.*, 158 F.R.D. at 274 (denying disqualification where, *inter alia*, attorney had "no recollection of any confidential
information").

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ On September 1, 2010, when Willkie filed its notices of appearance

in the Lime Wire case, █████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████

████████████████████████████████████████

██████████████████████████████████████████

---

[36] *See, e.g., In re Del-Val Fin. Corp.*, 158 F.R.D. at 275 (finding that "[b]ecause [lateral partner] did not bring any files or documents … the risk that other members of the firm might see confidential documents simply never existed," and denying disqualification for lack of any "real danger" of "unfair advantage . . . at trial"); *Papyrus*, 325 F. Supp. 2d at 281 n.11 (risk of disclosure before implementation of screen was "minimal" because lateral attorney "never brought any files or documents concerning the [former client's] matter with him to [the new firm] and the attorneys who worked on the case never had substantive discussions about the case with him").

[37] *See, e.g., Papyrus*, 325 F. Supp. 2d at 281 (firm "timely screened" lateral attorney after learning of actual conflict from firm's adversary, although lateral attorney and firm had discussed potential conflict three months earlier). Additionally, Plaintiffs' reliance on *Chinese Automobile Distributors of America LLC v. Bricklin*, No. 07 Civ. 4113, 2009 WL 47337 (S.D.N.Y. Jan. 8, 2009) is misplaced. There, the law firm's screening measures were found

This contention is a linchpin to their motion and is misleading.

---

untimely because the firm did not implement *any* screening measures until a month after receiving a letter from its adversary providing actual notice of the conflict. *Id.* at *4.

19



focusing almost entirely on communications *to* Korn.  As explained by the court in one of the cases most heavily relied on by Plaintiffs, "effective screening measures are implemented to prevent the dissemination of confidences *by a disqualified attorney*."[41]

---

[38]   *See* Cal. Evidence Code § 1120(b)(3). ███████████████████████████████████████
███████████

[39]   *See, e.g., Papyrus*, 325 F. Supp. 2d at 281 n.11 (denying disqualification where screened attorney "never had *substantive discussions* about the case" with his colleagues) (emphasis added).

██████████████████████████████████████████████████████████████████████
████████████████████████████   *See, e.g., British Int'l. Ins. Co., Ltd.. v. Seguros La Republica, S.A.*, No. 90 Civ. 2370 (JFKFM), 2002 WL 31307165, at *3 (S.D.N.Y. Oct. 29, 2002) (holding that non-client seeking disqualification "must demonstrate a personal interest in preserving the confidentiality of the information in possession of the law firm whose disqualification was sought").

[41]   *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 307 (E.D.N.Y. 2010).

Plaintiffs complain that ███████████████████████████████████
which, according to Plaintiffs, "requires a written communication addressed to all firm
members." (Pls.' Mem. 23.)  First, that is not the law in this Circuit.[42]  Second, an effective
screen does not require firm-wide notification, contrary to what Plaintiffs claim based on cases
from outside the Second Circuit.[43]  (Pls.' Mem. 23.)  Third, compliance would not be enhanced
by flooding every lawyer ████████████████████████████████████
██████████████████████████████████  As Professor Roy Simon, a
noted ethicist, has emphasized, the practice of disseminating screening notices to "every lawyer
in the firm . . . would generate too many screening notices, most of them of no practical
relevance . . . and . . . lawyers would consequently begin to ignore the notices . . . ."[44]

████████████████████████████████████████

████████████████████████████████████████

███████  The suggestion that taint can only be avoided by total quarantine (*i.e.*, depriving the
lateral attorney of physical proximity to, or any professional interaction with, attorneys working
on the current representation) ignores *Hempstead*'s statement that trial taint can be prevented by
various forms of isolation:  "the intentional construction of a 'Chinese Wall,' or from *de facto*
separation."[45] ████████████████████████████████████
████████████████████████████████████████

---

[42] *See Hempstead*, 409 F.3d at 138.

[43] *See Cobb Publ'g, Inc. v. Hearst Corp.*, 907 F. Supp. 1038, 1048 (E.D. Mich. 1995) (quoting, without adopting, Michigan state bar ethical opinion noting one instance in which a law firm used firm-wide notification); *INA Underwriters Ins. Co. v. Nalibotsky*, 594 F. Supp. 1199, 1210 n.8 (E.D. Pa. 1984) (denying disqualification and noting, in dicta, that some courts have endorsed use of "formal, written screening procedure[s]" in cases involving government attorneys moving to private practice).

[44] Roy Simon, *Simon's N.Y. Rules of Prof'l Conduct Ann.* 145 (2009).

[45] *Hempstead*, 409 F.3d at 138.

███████████████████████████████████████[46]

██████████████████████████████████████ Plaintiffs ask this Court to follow

cases addressing screens in the context of firms of few lawyers. (Pls.' Mem. 19-21.)[47]  Even

putting aside that *Hempstead* permits screening in the small firm context, this argument cannot

withstand even cursory analysis.[48]  Willkie has over 400 attorneys in its New York office alone,

dispersed over 10 floors.[49] ████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

A *per se* rule requiring disqualification regardless of firm size, ███████████████

████████████████████████████████████████████

███████████ is flatly inconsistent with the Second Circuit's rejection of such categorical rules in

*Hempstead*.  In eschewing such *per se* disqualification rules, the Second Circuit specifically

noted that cases such as *Mitchell v. Metro Life Ins. Co., Inc.*—on which Plaintiffs rely (Pls.'

---

[46]  While the court in *Intelli-Check* also cited the geographical separation between the lateral attorney and the trial team in assessing the effectiveness of the ethical screen, that factor was in addition to the size of the firm (420 attorneys) and the technological separation the firm had implemented—both of which, as stated above, ████████ ███████████████████████████████ *Intelli-Check*, 2008 WL 4682433, at *5.

[47]  Tellingly, all of Plaintiffs' "small firm" cases pre-date *Hempstead* except *Filippi*, in which the underlying conflict involved a lawyer at plaintiff's firm who was simultaneously a member and officer of the defendant.  As Plaintiffs concede, *Filippi* recognized that the presumption of shared confidences "is much stronger within a small firm than a large firm." (Pls.' Mem. 20.)

[48]  Plaintiffs' sole support for ignoring the differences between small and large firms is dicta from an out-of-circuit case that cannot be reconciled with *Hempstead*. *See U.S. Filter Corp. v. Ionics, Inc.*, 189 F.R.D. 26, 30 (D. Mass. 1999) (observing that one "may reasonably infer" from certain hypothetical scenarios described in the commentaries to the Massachusetts Rules of Professional Conduct that the "impracticability" of effective screening in a small firm may also exist in small practice groups within a large firm).

[49]  *See, e.g., Silver Chrysler Plymouth*, 518 F.2d at 753-54 (inadvertent disclosures are less likely at large firms); *Intelli-Check*, 2008 WL 4682433, at *5 (firm's 420-lawyer size supported finding that screen was effective).

Mem. 20 n.13)—misconstrued the Court's precedents by unduly limiting "the efficacy of isolation efforts as protection against taint." *Hempstead*, 409 F.3d at 137.

As this Court noted in *Siverio*, categorical rules of disqualification, such as those advocated by Plaintiffs, would require courts to "ignore the reality of large law firm life to presume without knowing more that all partners know the secrets of their fellow partners' clients."[50]  The Second Circuit's acceptance of screening is grounded in this reality.[51]

Plaintiffs struggle to bolster their ineffectiveness argument by raising the specter of



But that is not evidence, and Plaintiffs' conjecture is belied by ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆ Plaintiffs' request that the Court resolve "all doubts" ▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆ in favor of disqualification is therefore premised only on speculation and conclusions. (Pls.' Mem. 16.)  That falls short of their heavy burden on this motion.[52]

---

[50] *Siverio*, 1989 WL 31531 at *4; *see also Hartford Accident & Indem. Co. v. RJR Nabisco, Inc.*, 721 F. Supp. 534, 541 (S.D.N.Y. 1989) (recognizing that as law firms constantly reorganize and attorneys frequently change firms, any *per se* imputation of confidences would unnecessarily increase the "number of disqualification motions, born of little more than hardball litigation strategy sessions and advanced where there is no threat of actual prejudice").

[51] For this reason, Plaintiffs' reliance on *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. 08-04909, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010) (Pls.' Mem. 2, 17) is misplaced. *Genentech* was decided under California law, which, unlike the law in this Circuit, "rejects the use of ethical walls to prevent disqualification by imputed conflicts." *Genentech*, 2010 WL 1136478, at *7.

[52] *See, e.g.*, *Lipin v. Bergquist*, 574 F. Supp. 2d 423, 428 (S.D.N.Y. 2008) ("[a]lthough doubts should be resolved in favor of disqualification, the party seeking disqualification must carry a heavy burden and meet a high standard of proof before a lawyer is disqualified . . . [m]ere speculation will not suffice"); *Siverio*, 1989 WL 31531 at *4 (holding that in order to meet its "heavy burden of proof," the movant "must make a specific factual showing" and "[m]ere conclusory allegations will not suffice").  It is, moreover, well settled that Plaintiffs' "appearance of impropriety" argument (Pls.' Mem. 21, n.13) does not relieve them of their burden of showing trial taint. *See, e.g.*, *Koch Indus.*, 650 F. Supp. 2d at 286 ("The mere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion.  Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted.").

## III.    THE BALANCE OF EQUITIES STRONGLY FAVORS DEFENDANTS' CONTINUED REPRESENTATION BY WILLKIE.

Plaintiffs' speculation that Willkie's continued representation will somehow afford Defendants an unfair advantage is in contrast to the very real and substantial hardship Defendants will suffer if they are compelled to obtain new counsel at this late stage in the litigation.  Disqualification should be denied where, as here, the purported risk of trial taint does not outweigh the burden imposed on the litigant who would lose its counsel.[53]

Preliminarily, Plaintiffs contend that the Court should not even consider the substantial prejudice to Defendants because ███████████████████████████████████████████████████████████████████████████████████████[54] Plaintiffs fail to cite a single case holding that ███████████████████████████████ ███████████████    Nor do Plaintiffs cite any case for the proposition that ██████████████ renders prejudice to the non-movant irrelevant.[55]

If Plaintiffs' motion is granted, the prejudice to Defendants will be severe.  Trial in this complex, four-year old litigation is to commence in approximately three months, on April 25, 2011.  ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

---

[53] *See, e.g., Intelli-Check*, 2008 WL 4682433, at *5 (denying disqualification where risk of taint "does not outweigh the risk of harm to Defendants in losing their counsel"); *Reilly*, 423 F. Supp. 2d at 13 (same); *W.T. Grant Co.*, 531 F.2d at 677 ("Disqualification of present counsel and the substitution of a new attorney unfamiliar with the facts and the law will inevitably result in further harmful delay and expense to [Defendants]."); *Team Obsolete*, 2006 WL 2013471, at *8; *In re MTBE Prods. Liab. Litig.*, 438 F. Supp. 2d 305, 309-10 (S.D.N.Y. 2006) ("Considering the strong public policy to allow persons to retain counsel of their choice and the need to avoid causing severe prejudice to the client, who would have to secure new counsel to deal with somewhat complex litigation with the accompanying increased expense and loss of time, disqualification is not warranted").

[54] ████████████████████████████████████████████████████████████████████ ████████████

[55] ████████████████████████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Further, for another law firm to assume this representation now would require costly and wasteful duplication of the effort undertaken by Willkie at immense cost to the Defendants, and would almost inescapably inject delay in these proceedings or, if not, "would likely result in compromised trial representation."[56] [REDACTED]

Putting aside the cost and delay associated with finding new counsel, lawyers are not commodities. Since it appeared for Defendants on September 1st, Willkie has been [REDACTED] [REDACTED] trial, which is three months away. [REDACTED] [REDACTED] [REDACTED] Defendants should not be deprived of their choice of counsel.[57]

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court deny Plaintiffs' motion to disqualify Defendants' counsel.

---

[56] *Vincent v. Essent Healthcare of Conn.*, 465 F. Supp. 2d 142, 147 (D. Conn. 2006) (given that a "firm and final [trial] date has been set . . . retention of an entirely new law firm would likely result in compromised trial representation.").

[57] Moreover, the drastic remedy of disqualification and the prejudice to Defendants it would entail could be avoided by additional safeguards the Court could direct to be implemented, if it believes they are warranted. *See, e.g.*, *Lambert*, 1996 WL 66130, at *1.

Dated:  January 24, 2011                        Respectfully submitted,


                                                WILLKIE FARR & GALLAGHER LLP

                                                Roger Netzer
                                                787 Seventh Avenue
                                                New York, New York  10019-6099
                                                rnetzer@willkie.com
                                                Tel: (212) 728-8000

                                                *Attorneys for Defendants*


*6252450*

26