UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARISTA RECORDS LLC; ATLANTIC
RECORDING CORPORATION; ARISTA
MUSIC, fka BMG MUSIC; CAPITOL
RECORDS LLC fka CAPITOL RECORDS,
INC.; ELEKTRA ENTERTAINMENT
GROUP INC.; INTERSCOPE RECORDS;
LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY
RECORDS LLC; SONY MUSIC
ENTERTAINMENT, fka SONY BMG
MUSIC ENTERTAINMENT; UMG
RECORDINGS, INC.; VIRGIN RECORDS
AMERICA, INC.; and WARNER BROS.
RECORDS INC.,

                                        Plaintiffs,

                    v.

LIME WIRE LLC; LIME GROUP LLC;
MARK GORTON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                                        Defendants.

06 Civ. 05936 (KMW)
ECF CASE

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DIRECT INFRINGEMENT OF THE WORKS AT ISSUE

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
Attorneys for Plaintiffs

Date: January 27, 2011

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

    A.   Court's Summary Judgment Decision on Direct Infringement ............................ 2

    B.   Plaintiffs' Download Evidence of Direct Infringement of 11,205 Works............. 4

        1.   DtecNet Download Evidence................................................................. 4

        2.   MediaSentry Download Evidence ......................................................... 8

III.  LEGAL STANDARD........................................................................................ 10

IV.   THE COURT SHOULD GRANT PLAINTIFFS SUMMARY JUDGMENT ON THE QUESTION OF DIRECT INFRINGEMENT ...................................... 11

    A.   Plaintiffs' Download Evidence Establishes Direct Infringement for 11,205 Works ........................................................................................................... 11

    B.   Defendants' Critique of the DtecNet and MediaSentry Download Evidence Does Not Create Any Genuine Issues of Material Fact ...................... 15

        1.   Plaintiffs' Download Evidence Establishes That the Downloads Came From LimeWire Users .................................................................. 15

        2.   Plaintiffs' Download Evidence Establishes That The LimeWire Users Were Based in the United States .................................................. 16

        3.   The "Trace Route" of the Download Is Irrelevant................................. 18

V.    CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*A & M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ...................................................................11

*Arista Records LLC v. Lime Group LLC*,
  715 F. Supp. 2d 481 (S.D.N.Y. 2010)............................................................ passim

*Arista Records LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009).....................................................14, 15, 19

*Atlantic Recording Corp. v. Howell*,
  554 F. Supp. 2d 976 (D. Ariz. 2008) .............................................................14

*BMG Music v. Gonzalez*,
  430 F.3d 888 (7th Cir. 2005) ...................................................................11

*Capitol Records, Inc. v. Thomas*,
  579 F. Supp. 2d 1210 (D. Minn. 2008)...................................................13, 14, 15, 19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...........................................................................10

*Columbia Pictures Industries, Inc. v. Fung*,
  No. CV 06-5578, SVW(JCx), 2009 WL 6355911,
  at *8 (C.D. Cal. Dec. 21, 2009) ..........................................................12, 13, 17

*In re Aimster Copyright Litig.*,
  334 F.3d 643 (7th Cir. 2003) ................................................................11, 12

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir. 2005)...................................................................11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...........................................................................10

*Microsoft Corp. v. Rechanik*,
  249 Fed. Appx. 476 (7th Cir. 2007)..............................................................14

*Motown Record Co. v. DePietro*,
  No. 04-CV-2246, 2007 U.S. Dist. LEXIS 11626, 2007 WL 576284
  (E.D. Pa. Feb. 16, 2007).......................................................................12

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
  537 F.3d 168 (2d Cir. 2008)....................................................................11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Olan Mills, Inc. v. Linn Photo Co.*,
  23 F.3d 1345 (8th Cir. 1994) ................................................................14

*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998)................................................................10

*Sony Music Entertainment Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004)................................................11

*U2 Home Entm't, Inc. v. Fu Shun Wang*,
  482 F. Supp. 2d 314 (E.D.N.Y. 2007) ................................................14

*Universal City Studios Prods. LLLP v. Bigwood*,
  441 F. Supp. 2d 185 (D. Me. 2006) ....................................................12

*Warner Bros. Records Inc. v. Walker*,
  704 F. Supp. 2d 460 (W.D. Pa. 2010)....................................13, 15, 19

**STATE CASES**

*Capitol Records, Inc. v. Naxos of America, Inc.*,
  4 N.Y.3d 540 (2005) ..........................................................................11

**FEDERAL STATUTES**

17 U.S.C. § 106(3) ....................................................................................13

**FEDERAL RULES**

Fed. R. Civ. P. 56(a) ................................................................................10

Fed. R. Civ. P. 56(e) ................................................................................11

**STATE RULES**

Local Civil Rule 56.1 ..................................................................................2

## I.    INTRODUCTION

The purpose of this Motion is to resolve in advance of the forthcoming trial a threshold, foundational issue that is not subject to any reasonable dispute:  that LimeWire users directly infringed Plaintiffs' copyrighted sound recordings *at least once*.

The online anti-piracy software firms DtecNet and MediaSentry downloaded 11,205 of Plaintiffs' works from U.S.-based LimeWire users.  Plaintiffs have provided the Court with a hard drive containing (i) copies of these downloads, and (ii) accompanying files that verify both the act of the download and the contents of each file.  Plaintiffs also have submitted declarations from Thomas Sehested of DtecNet and Chris Connelly of MediaSentry that explain the download and verification processes their firms employed and the contents of the hard drive.  This evidence is identical to that relied upon by the Court in its prior summary judgment decision, and is not subject to any genuine dispute.  Accordingly, Plaintiffs move for summary judgment on this component of their claims for relief.[1]

It is settled law that the downloading of copyrighted material by anti-piracy firms constitutes evidence of direct infringement.  Such evidence indisputably establishes two independent acts of direct infringement by LimeWire users:  first, the violation of Plaintiffs' exclusive *distribution* right through the LimeWire user's unauthorized distribution of the sound recording to DtecNet and MediaSentry, and second, the violation of Plaintiffs' exclusive *reproduction* right through the unauthorized copying of the files onto DtecNet's and MediaSentry's computers.   In addition to this Court, numerous other courts have held that download evidence from the DtecNet and MediaSentry firms are more than sufficient to establish direct infringement.

---

[1] On January 24, 2011, Plaintiffs filed a separate motion for summary judgment on the question of ownership of these works.

In the face of such irrefutable evidence, Defendants conjure up a number of far-flung but baseless theories — such as (i) that DtecNet and MediaSentry downloaded recordings from LimeWire clients that were not in fact LimeWire clients but were actually other Gnutella clients *pretending* to be LimeWire clients; or (ii) that a user's IP address cannot be trusted to determine his or her actual geographic location.  Defendants' hypothetical musings are based on nothing more than pure conjecture and are legally insufficient to create any disputed issues of material fact.  No court, including this one, has ever rejected such download evidence based on these strained theories.

This Motion should be granted.[2]

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Court's Summary Judgment Decision on Direct Infringement

Plaintiffs already proved the direct infringement of 30 of the thousands of works at issue. In December 2007, Judge Lynch directed the parties to address Defendants' liability based on a subset of the total works at issue.  Pls' Reply to Defs' Response to Pls' SUF, ¶ 99.[3] Plaintiffs selected 30 works – 25 copyrighted works, and five protected by state law.  *Id*. at ¶¶ 100-102. Plaintiffs moved for summary judgment on this subset of works.  *Id*. at ¶¶ 100-02 n.10.

The Court adjudicated Defendants Lime Wire LLC, Lime Group LLC and Mark Gorton liable for intentionally inducing the infringement of Plaintiffs' copyrighted sound recordings and for the analogous state law violations that apply to Plaintiffs' pre-1972 recordings.  In granting

---

[2] Plaintiffs reserve their right to present evidence of additional direct infringements of each work in suit by users of LimeWire.  Plaintiffs reserve their right at trial to present such evidence of the number of separate direct infringements, and ergo separate awards of damages, for which Defendants are liable on a joint and several basis.

[3] References to Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, dated July 18, 2008, and Statement of Additional Material Facts, dated September 26, 2008, are cited as "SUF ¶ _."

summary judgment for Plaintiffs, the Court found that LimeWire's "enormous user base" of "millions" had committed copyright "infringement" on a "massive scale." *Arista Records LLC v. Lime Group LLC,* 715 F. Supp. 2d 481, 510, 512 (S.D.N.Y. 2010). The Court relied on uncontroverted "evidence demonstrat[ing] that LimeWire users employed LimeWire to share and download the Recordings without authorization." 715 F. Supp. 2d at 507. This evidence included, *inter alia*, "documentation and electronic storage media data showing that LimeWire users share and download unauthorized digital copies of the Recordings through LimeWire," *e.g.*, "hard drives that contain digital copies of the Recordings, with electronic evidence" establishing that the "Recordings were downloaded by LimeWire users without authorization." 715 F. Supp. 2d at 507. *See also* 11/7/08 Forrest Decl. ¶¶ 3-4 (noting that hard drive evidence submitted to the Court contained "copyrighted sound recordings . . . downloaded from a LimeWire user," which was "verified by the 'DownloadLog.txt' and 'RequestLog.txt' or 'packet capture.txt' file(s) accompanying each downloaded sound recording."); RC00001609; RC00004264; RC00004270; RC00004271; RC00004273 (hard drives provided to Court).

In addition to this hard drive evidence, Mr. Sehested of DtecNet Software and Mr. Kempe of MediaSentry (now known as Peer Media Technologies), both providers of online anti-piracy software and services, provided declarations testifying that they downloaded from LimeWire users copies of the 30 song recordings listed in Attachment A to Plaintiffs' July 18, 2008 Statement of Undisputed Material Facts. (Sehested (Vol. X) Decl. ¶¶ 4-6; Kempe (Vol. X) Decl. ¶¶ 4-6; SUF ¶¶ 120, 712.)[4]

Defendants moved for reconsideration of the Court's summary judgment order on the

---

[4] These declarations are arranged alphabetically by the witness or expert's last name and are contained in Volumes VI, VII, X, XII and XIII, respectively, of the Exhibits to the Declaration of Katherine Forrest.

question of direct infringement, which the Court summarily denied.  *See* Dkt. No. 272.

**B.      Plaintiffs' Download Evidence of Direct Infringement of 11,205 Works**

DtecNet and MediaSentry downloaded 11,205 works from U.S.-based LimeWire users. Plaintiffs have submitted a hard drive containing copies of these downloads, along with accompanying files that verify the act of the download and the content of each file.  This is the same sort of hard drive and verification evidence provided to the Court as part of the prior summary judgment motion on liability.  Plaintiffs also have provided the Court with declarations from Thomas Sehested of DtecNet and Chris Connelly of MediaSentry, which explain the download and verification processes they employed and the contents of the hard drive.

**1.      DtecNet Download Evidence**

DtecNet downloaded 10,181[5] of Plaintiffs' copyrighted works.  *See* Declaration of Kelly M. Klaus ("Klaus Decl."), ¶ 2 & Ex. 1 (RC-00008845).  DtecNet searched the Gnutella network for LimeWire users distributing audio files that matched the titles provided by Plaintiffs. Declaration of Thomas Sehested ("Sehested Decl."), Ex. A at 1.  Based on the user's Internet Protocol ("IP") address, DtecNet then filtered the results for LimeWire clients located in the United States, and once establishing a positive match, downloaded the file from the user.  *Id.* at 1-2.  This entire process was closely monitored by DtecNet's software, which recorded the user's IP address and various log files.  *Id.* at 2.  Once downloaded, DtecNet processed each file through the audio fingerprinting software Audible Magic to verify the content as a matching title to the designated list.  *Id.*  If a file did not match, DtecNet discarded the file and attempted to obtain a true and correct copy of the same title.  *Id.*

---

[5] DtecNet downloaded over 10,300 works from U.S.-based LimeWire users, as Mr. Sehested notes in his witness statement served on September 30, 2010.  Sehested Decl., Ex. A at 1.  Since then, Plaintiffs have narrowed the list of works at issue, and today there are 10,181 works downloaded by DtecNet that are at issue in the case.

The verification evidence provided with each track includes the following information:

**Overview Log.** The Overview Log file includes a general summary of information relating to each download, including the IP address, the client (LimeWire) and the country and ISP information of the user from whom the file is downloaded. It also includes timestamps indicating when the file download was initiated and completed. Here is the Overview Log for the download of the Tom Petty song "The Last DJ":



*Id.* at 2-3.

**Packet Capture.pcap.** The Packet Capture.pcap files include all network data packets exchanged with the LimeWire client. These files are stored in their original form, and include a timestamp indicating when the packet was captured. *Id.*

**Activity Log.**  The Activity Log file provides a general timeline for the entire download process and gives a summary of all the actions taken to secure evidence of the download.  Each activity logged is accompanied by a timestamp indicating when the given event occurred, including what time the file was matched, and when the download began to the time of its completion.  *Id.* at 3-4.  Here is the Activity Log for the download of the Tom Petty song "The Last DJ":

| DtecNet SOFTWARE | | | | | | |
|---|---|---|---|---|---|---|
| Overview | Activity Log | Communication Log | File List | Content Info | Traceroute | Print Page |

**Investigation details:**

| | |
|---|---|
| IP-Address | 12.158.149.32 |
| Country | US |
| Initiated | 06-07-2010 02:58:49.674 UTC |
| Completed | 06-07-2010 03:02:44.904 UTC |
| Protocol | Gnutella |

| | |
|---|---|
| 06-07-2010 02:58:49.862 UTC | Starting digital content matching (data source = RIAA USL)... |
| 06-07-2010 02:58:50.205 UTC | Shared file match found (Tom Petty - The Last DJ.mp3) |
| 06-07-2010 02:58:52.565 UTC | Got Positive Response host willing to upload 100% of file |
| 06-07-2010 02:58:52.565 UTC | Starting download.. |
| 06-07-2010 02:58:52.565 UTC | Downloading..Tom Petty - The Last DJ.mp3 |
| 06-07-2010 03:01:56.904 UTC | File Downloaded-Tom Petty - The Last DJ.mp3 |
| 06-07-2010 03:01:56.998 UTC | Starting trace route... |
| 06-07-2010 03:02:39.889 UTC | Traceroute done (could not be completed) |

*Id.*[6]

---

[6] DtecNet also included a "trace route" of the LimeWire's IP address. This estimates the route that network packets travel to reach the LimeWire user's machine.  In some instances, as in the case with this file, the trace route could not be completed.  As discussed further below, the trace route is not necessary to the verification of the downloaded file, but simply provides additional

**Communication Log.**  The Communication Log file contains all protocol-related messages sent and received during the download, which includes a timestamp indicating when the message was sent or received.   In the log, the user shares details of the filename, the file hash (in SHA-1 format), and the client application (LimeWire) used by the user.  Here is the Communication Log for the download of the Tom Petty song "The Last DJ":



**Content Info.** The Content Info file contains key details regarding the file such as the file name, file size, the hash value, the artist name, and the title of the content.  Here is the Content Info file for the download of the Tom Petty song "The Last DJ":

information as to the specific route the network packets traveled to reach the LimeWire user's machine.  Sehested Decl., ¶ 4.



**Screen Prints.** Finally, DtecNet has included screen prints showing DtecNet downloading the specific file from the user and the completion of the full download.



### 2. MediaSentry Download Evidence

In addition to the sound recordings downloaded by DtecNet, MediaSentry downloaded 1,024 of Plaintiffs' works. Klaus Decl., ¶ 2 & Ex. 1 (RC-00008845). Similar to DtecNet, MediaSentry searched the Gnutella network for Plaintiffs' works available for download from U.S.-based LimeWire client users, as determined by their IP addresses. When MediaSentry

software found a file that matched the sound recording, it downloaded the file and monitored and

collected evidence verifying each download.  Declaration of Chris Connelly ("Connelly Decl."),

Ex. A.  Once the data collection process was completed, MediaSentry performed a manual

review of all downloaded sound recordings by listening to them.  *Id*.

The MediaSentry verification data includes the following:

**RequestLog.Txt**:  The RequestLog.txt file contains a record of the transmission and

communication of data packets sent between the MediaSentry software and the LimeWire client.

Here is a sample packet from the MediaSentry data for the Coldplay song "Everything's Not

Lost":

> RECEIVED PACKET: 1/10/2007 8:46:09 AM EST (-0500 GMT)
> Packet Source: 152.7.30.209:47826
> Packet Destination: xxx.xxx.151.110:3444
> Packet Data:
>  0HƒW¼  CÍ¬  E  š£ @ ¡ ÞN¯ ÑA«—n°Ò tãÉq¯ ØÒ¡ P ÿHÍ"  HTTP/1.1 200 OK
> Server: LimeWire/4.12.6
> Content-Type: application/x-gnutella-packets
> Content-Length: 125680

**DownloadLog.txt:**  The DownloadLog.txt file includes data packets received from the

LimeWire user, containing both the sound recording itself and the data packet information.  The

data packet information includes a timestamp indicating when the file was transmitted to

MediaSentry, the IP address of the LimeWire user, which client application the user was using

(under the "Server" tag, here, the LimeWire client), the size of the downloaded file (in the

"Content-Range" tag), the name of the file being downloaded (the "Content-Disposition" tag),

and the file "hash" in SHA-1 format (in the "X-Gnutella-Content-URN").  Here is part of the

DownloadLog.txt file for the Coldplay song "Everything's Not Lost":

> Download Info For: Coldplay - Everything's Not Lost.mp3
> Hash: 34EHWCXGB74KV6VK7GMSIAG2FQ7GPRRL

- 9 -

RECEIVED CONTENT PACKET: 1/10/2007 8:56:28 AM EST (-0500 GMT)
Packet Source: 152.7.30.209
Packet Destination: xxx.xxx.151.110
Packet Data: (bytes 0-2493)

RECEIVED PACKET: 1/10/2007 8:56:28 AM EST (-0500 GMT)
Packet Source: 152.7.30.209:47826
Packet Destination: xxx.xxx.151.110:3560
Packet Data:
 0HƒW¼ ◄ CÍ¬⌐ ▢ E │ Ü'~@ ¡− ê«˜• -ÑA«—n°Ò
è~!·°Đ¿û  P┼ þ¾UÝ  HTTP/1.1 206 Partial Content
Server: LimeWire/4.12.6
Content-Type: application/binary
Content-Length: 524288
Date: Wed, 10 Jan 2007 13:56:26 GMT
Content-Disposition: attachment; filename="Coldplay%20-
%20Everything%27s%20Not%20Lost.mp3"
Content-Range: bytes 0-524287/10425220
X-Gnutella-Content-URN: urn:sha1:34EHWCXGB74KV6VK7GMSIAG2FQ7GPRRL
X-Create-Time: 1166799396638
X-Features: chat/0.1, browse/1.0, fwalt/0.1.[7]

## III.   LEGAL STANDARD

A party may move for summary judgment as to a "part of each claim or defense."  Fed.

R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).

The moving part must make a showing "sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to

"come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  "The non-moving party

may not rely on 'conclusory allegations or unsubstantiated speculation,' *Scotto v. Almenas*, 143

---

[7] There are an additional 20 works at issue in the case which are not part of this Motion.

F.3d 105, 114 (2d Cir. 1998), or on mere denials or unsupported alternative explanations[.]"

*Arista Records, LLC*, 715 F. Supp. 2d at 505-06.  Any inferences in the non-movant's favor must

be *reasonable*, and the non-movant must present evidence "such that a *reasonable* jury could

return a verdict in favor of the [nonmoving party]."  *NetJets Aviation, Inc. v. LHC Commc'ns,*

*LLC,* 537 F.3d 168, 178-79 (2d Cir. 2008) (emphasis added); *Arista Records, LLC*, 715 F. Supp.

2d at 505-06; Fed. R. Civ. P. 56(e).

## IV.   THE COURT SHOULD GRANT PLAINTIFFS SUMMARY JUDGMENT ON THE QUESTION OF DIRECT INFRINGEMENT

### A.   Plaintiffs' Download Evidence Establishes Direct Infringement for 11,205 Works

As the Court noted in its Summary Judgment Order, to "recover on a claim based on

secondary liability, a plaintiff first must establish direct infringement by the relevant third party,"

*i.e.*, that the "third party infringed the copyrights by unauthorized copying or distribution." 715

F. Supp. 2d at 506-07 (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413

F.3d 257, 260 (2d Cir. 2005)).  *See also Capitol Records, Inc. v. Naxos of America, Inc.,*

4 N.Y.3d 540, 563 (2005) ("A copyright infringement cause of action in New York consists of

two elements: (1) the existence of a valid copyright; and (2) unauthorized reproduction of the

work protected by the copyright").  This Motion establishes as a matter of law that LimeWire's

end users directly have infringed Plaintiffs' copyrights in 11,205 sound recordings through the

unauthorized distribution and reproduction of those works.

It is beyond dispute that the "use of P2P systems to download and distribute copyrighted

music . . .  constitute[s] copyright infringement."  *Sony Music Entertainment Inc. v. Does 1-40*,

326 F. Supp. 2d 556, 565-66 (S.D.N.Y. 2004); *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d

1004, 1013-14 (9th Cir. 2001); *BMG Music v. Gonzalez*, 430 F.3d 888, 889 (7th Cir. 2005); *In re*

- 11 -

*Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003).[8]  Plaintiffs' download evidence

demonstrates two independent acts of direct infringement by LimeWire end users:  the violation

of Plaintiffs' exclusive *distribution* right through LimeWire users' unauthorized distribution of

the sound recordings to DtecNet and MediaSentry, and the violation of Plaintiffs' exclusive

*reproduction* right through the copying of the files onto DtecNet's and MediaSentry's

computers.   The "acts of uploading and downloading are each independent grounds of copyright

infringement liability."  *Columbia Pictures Industries, Inc. v. Fung*, No. CV 06-5578 SVW(JCx),

2009 WL 6355911, at *8 (C.D. Cal. Dec. 21, 2009).  *See also Aimster*, 334 F.3d at 645

("swap[ping] computer files containing popular music . . . involves making and transmitting a

digital copy of the music" which "infringes copyright").[9]  Indeed, the Court premised its prior

finding of direct infringement on both the "*shar[ing] and download[ing]*" of "unauthorized

digital copies of the Recordings through LimeWire."  *Arista Records LLC*, 715 F. Supp. 2d at

507 (emphasis added).

      As Defendants themselves stated in their summary judgment papers, evidence that "one

---

[8] Given the uncontroverted evidence of the actual transfer of works using the LimeWire
software, the Court in its prior summary judgment decision did not have to decide whether
making copyrighted sound recordings *available* for download, without proof of actual
dissemination, is direct infringement of the distribution right, as several courts have held it is.
*See Universal City Studios Prods. LLLP v. Bigwood*, 441 F. Supp. 2d 185, 190-91 (D. Me. 2006)
("by using KaZaA to make copies of the Motion Pictures available to thousands of people over
the internet, Defendant violated Plaintiffs' exclusive right to distribute the Motion Pictures");
*Motown Record Co. v. DePietro*, No. 04-CV-2246, 2007 U.S. Dist. LEXIS 11626, at *12, 2007
WL 576284, at *3 (E.D. Pa. Feb. 16, 2007).  The Court acknowledged the existence of authority
to the contrary, but ultimately did not take a position on this issue because of the overwhelming
and uncontroverted evidence of actual transfers using the LimeWire software.  *Arista Records
LLC,* 715 F. Supp. 2d at 507-08.  That same evidence is presented in this Motion.

[9] The DtecNet and MediaSentry evidence is not the only evidence of direct infringement
Plaintiffs will offer in this case.  At trial, Plaintiffs will provide testimony and evidence from
Dr. Richard Waterman as to the volume of direct infringement of the works at issue by
LimeWire users. The DtecNet and MediaSentry evidence establishes that Plaintiffs' works were
infringed at least *once* by LimeWire users.

individual used LimeWire to request the 30 songs at issue, find those 30 songs," and "download those 30 songs" would be sufficient to establish direct infringement.  Dkt. No. 142 (Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment at 9.)  That is precisely the evidence the Court previously relied upon in holding that "LimeWire users have directly infringed Plaintiffs' copyrights," and it is the very same evidence that Plaintiffs now have provided for these 11,205 sound recordings.  And indeed, several other courts in addition to this Court have held that download evidence from the DtecNet and MediaSentry firms is more than sufficient to establish the direct infringement of copyright owners' exclusive distribution and reproduction rights.

The LimeWire user who transmits "a copyrighted content file to other users . . . violates the copyright holder's § 106(3) *distribution* right."  *Fung*, 2009 WL 6355911, at *8 (emphasis added).  In *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1216 (D. Minn. 2008), MediaSentry downloaded copies of the plaintiffs' copyrighted works from the defendant on a peer-to-peer network.  The court held that "distribution to MediaSentry can form the basis of an infringement claim" where the defendant "provided the copyrighted works for copying and placed them on a network specifically designed for easy, unauthorized copying."  *Id.* at 1216.  Similarly, in *Warner Bros. Records Inc. v. Walker*, 704 F. Supp. 2d 460 (W.D. Pa. 2010), the court held that the defendant violated the plaintiff's exclusive distribution right where "MediaSentry downloaded actual copies of nine of the Copyrighted Recordings from Defendant's computer, establishing unauthorized distribution as to those nine recordings."  *Id.* at 467.  Thus, the DtecNet and MediaSentry download evidence establishes that LimeWire users distributed Plaintiffs' copyrighted sound recordings without authorization, in violation of Plaintiffs' exclusive distribution right.

Moreover, the reproduction of the sound recording made on DtecNet's and MediaSentry's computers as a result of this distribution independently constitutes a violation of Plaintiffs' exclusive *reproduction* right.  In *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009), the major record companies brought suit against the defendants for widespread infringement of their copyrights through Defendants' "USENET" servers.  In moving for summary judgment, the plaintiffs provided a declaration from Mr. Sehested of DtecNet "explain[ing] the technical processes surrounding the downloads that Plaintiffs produced in discovery." *Id*. at 146.  The court held that the "undisputed facts establish that Defendants' subscribers have committed direct infringement of the Plaintiffs' exclusive right of *reproduction* by downloading copies of Plaintiffs' works from Defendants' service, thereby creating copies of the works on their computers without Plaintiffs' authorization." *Id*. at 149 (emphasis added).   The "uncontroverted evidence of unauthorized reproduction of their works" included "direct evidence from their forensic investigators [DtecNet] of downloads of Plaintiffs' copyrighted works from Defendants' service." *Id*. at 149-50 (citing Sehested Declaration).  The court rejected as "without merit" the defendants' argument that "these downloads are not proof of unauthorized copying because Plaintiffs had 'authorized' the downloads by their investigators," noting that "[c]ourts routinely base findings of infringement on the actions of plaintiffs' investigators."  *Id*. at 150 n.16 (citing *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 317-18 (E.D.N.Y. 2007) (infringement liability based on rentals of copyright works to plaintiffs' investigator); *Microsoft Corp. v. Rechanik*, 249 Fed. Appx. 476, 478 (7th Cir. 2007); *Olan Mills, Inc. v. Linn Photo Co*., 23 F.3d 1345, 1347-48 (8th Cir. 1994); *Thomas*, 579 F. Supp. 2d at 1215; *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 978, 985 (D. Ariz. 2008) (holding that "'[T]he investigator's assignment was part of [the recording

companies'] attempt to stop [the defendant's] infringement'")).

Likewise here, the copies made on the computers of DtecNet and MediaSentry from the LimeWire user's unauthorized distribution of the works separately infringes Plaintiffs' exclusive right of reproduction.

### B.   Defendants' Critique of the DtecNet and MediaSentry Download Evidence Does Not Create Any Genuine Issues of Material Fact

In a recently served report, Defendants' expert, Professor Emin Gun Sirer, attacks the DtecNet and MediaSentry download evidence on three grounds:  (i) that DtecNet and MediaSentry's log files rely on "self-reported" information regarding the client used by the end user and do not "conclusively establish" that the user is in fact running LimeWire; (ii) that users' IP addresses cannot be trusted to determine their geographic location; and (iii) that completed "trace routes" are not provided for all of the downloads.  Klaus Decl., Ex. 4 at 21-24.

These contentions do not undermine Plaintiffs' download evidence.  They are nothing more than hypothetical conjecture, present an unreasonable view of the facts, and are legally insufficient to create any issues of material fact.  *Arista Records LLC*, 715 F. Supp. 2d at 505-06.  Plaintiffs' download evidence is the same as that already accepted by this Court in its summary judgment decision and on reconsideration, as well as by several other courts, including *Usenet*, *Thomas*, and *Walker*.   There are no triable factual issues as to its validity or accuracy.

### 1.   Plaintiffs' Download Evidence Establishes That the Downloads Came From LimeWire Users

DtecNet and MediaSentry each provided data verifying that LimeWire is the Gnutella application client employed by the user at the time of the download.  The DtecNet Overview Log and Communication Log files for each download state that the "Peer Client" and "Server" is a "LimeWire" client.  Likewise, the MediaSentry data includes the "Server" of the packet data

source as a "LimeWire" client.

Nonetheless, Professor Sirer states in his report that the DtecNet and MediaSentry data "rel[y] solely on the self-reported version strings provided by Gnutella clients," and do "not perform software fingerprinting" to "check[] for the presence of protocol features and behaviors specific to a particular version of software."  Klaus Decl., Ex. 4 at 23.  Sirer, however, never even attempts to explain (1) how someone would go about cloaking their client as "LimeWire" when in fact they are using a different Gnutella application; (2) why a typical Gnutella user would ever do such a thing; and perhaps most importantly (3) how many Gnutella clients possibly identify themselves as LimeWire clients when they are in fact different clients.  Indeed, Defendants have not, and cannot, claim that *any* of the Gnutella clients that DtecNet and MediaSentry downloaded files from are in fact *not* LimeWire clients.  As Mr. Sehested from DtecNet explains, a user would have to employ specially developed software to alter the reported client data disseminated by the Gnutella client, and such software is neither widely available nor used by the Gnutella user base.  Sehested Decl., ¶ 3.  The chances that a typical Gnutella user would be employing such software, or using such a feature even if the software were available, is extremely remote.  *Id*.

The mere theoretical conjecture that Gnutella clients which are not LimeWire clients might mysteriously have masked themselves as LimeWire clients is insufficient to create an issue of material fact.  *Arista Records LLC*, 715 F. Supp. 2d at 505-06.

> ### 2.  Plaintiffs' Download Evidence Establishes That The LimeWire Users Were Based in the United States

Mr. Sehested and Mr. Connelly establish in their declarations that DtecNet and MediaSentry downloaded tracks only from LimeWire users based in the United States, as determined by the users' IP addresses.  Connelly Decl., ¶ 3 & Ex. A; Sehested Decl., Ex. A.

Professor Sirer takes issue with this conclusion, hypothesizing that a person could use a "Virtual Private Network[]" (VPN) to "remotely dial in to and obtain an IP address from a different location, such as a company server," making it "very difficult to determine the true location of a host."  Klaus Decl., Ex. 4 at 22.   This argument is both legally irrelevant and factually specious.

At the outset, even if the LimeWire user from whom the sound recording was downloaded was *not* based in the United States, this would not undermine Plaintiffs' download evidence establishing direct infringement.  As courts have made clear, to establish direct infringement in the P2P context, "Plaintiffs need only show that United States users either uploaded or downloaded copyrighted works; Plaintiffs need not show that a particular file *was both uploaded and downloaded entirely within the United States*."  *Fung*, 2009 WL 6355911, at *8 (emphasis added).  If the LimeWire user connected to the Internet through a company VPN located *in* the United States, the user's distribution of the file still occurs *in part* in the United States.  As Sirer himself notes, a "host located in, for instance, London, dialing into a VPN server in New York will have its packets *routed through New York* . . ."  Klaus Decl., Ex. 4 at 22 (emphasis added).  The file flows from London, to New York, and then to the downloader's computer, say in Los Angeles.  For all intents and purposes, the uploader *is* in New York, as the full file comes from the VPN server in New York.  But moreover, the *downloading* of Plaintiffs' sound recordings establishing violation of Plaintiffs' exclusive reproduction right was done *entirely* within the United States.  Connelly Decl., ¶ 3 & Ex. A, Sehested Decl., Ex. A.

Thus, the far-flung possibility that Gnutella clients whose IP addresses state that they are located in the United States and who are in fact not in the United States is both factually and legally insufficient to create an issue of material fact.  *Arista Records LLC*, 715 F. Supp. 2d at

- 17 -

505-06.

### 3. The "Trace Route" of the Download Is Irrelevant

Professor Sirer makes much of the fact that the "trace route" information is missing or incomplete for downloads performed by DtecNet and MediaSentry. As Mr. Sehested explains, the trace route tracks the route that network packets traveled to and from the LimeWire user. Sehested Decl., ¶ 4. Frequently, ISPs' firewalls and security systems will block the creation of a full trace route. In those situations, complete trace route information is not available.

The trace route is merely an unnecessary adjunct to the determination of the user's location. It is in no way evidence of a download; it merely shows a path to the infringer's IP address. As Sirer admits, it "may help establish the location of the targeted IP address." Klaus Decl., Ex. 4 at 22. Sirer does *not* contend that the absence of the trace route undermines the overall accuracy of the substantial verification information Plaintiffs have provided. And for the reasons noted above, Sirer's critique with respect to the geographic location of the LimeWire user does nothing to undermine Plaintiffs' download evidence.

And indeed, the trace route information is ultimately unnecessary to confirm and verify the accuracy of a download from a LimeWire user. Sehested Decl., ¶ 4. The DtecNet and MediaSentry verification information includes the user's IP address, client information (LimeWire), file content, and timestamps providing when the file download was initiated and completed, and a log of the communication of network packets exchanged between the clients. Nothing more is required. *Id*.; Connelly Decl., Ex. A.

Defendants have not identified any decisions holding that the particular trace route of the download is necessary to verify its accuracy. Nor does any such argument pass muster in the circumstances of this case. Plaintiffs offer overwhelming evidence of what the downloads are

and where they came from; in contrast, Defendants offer nothing but strained conjecture and no actual evidence to the contrary.  Indeed, the prior download data which this Court relied upon at summary judgment did not include any trace route information, nor apparently did the download data accepted by the courts in *Thomas*, *Walker*, and *Usenet*.  Thus, the absence of complete trace route information for some of the downloads at issue does not create any triable issues of material fact with respect to the direct infringement of Plaintiffs' works.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted.

Dated:  January 27, 2011                  Respectfully submitted,


                                _____*/s/ Kelly M. Klaus*_____
                                          Kelly M. Klaus

                                Attorney for Plaintiffs
                                Munger, Tolles & Olson LLP
                                355 South Grand Avenue, 35th Floor
                                Los Angeles, CA 90071-1560
                                (213) 683-9100
                                (213) 687-3702 (Fax)