USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ARISTA RECORDS LLS, et al.,

                         Plaintiffs,                     06 Civ. 5936 (KMW) (DF)

      -against-                            **ORDER**

LIME GROUP LLC, et al.,

                         Defendants.
------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

      Currently before the Court is an application by Plaintiffs to compel discovery by defendant Mark Gorton ("Gorton") and to enforce subpoenas on non-parties Tower Research Capital LLC and Tower Research Capital Investments LLC (together, "Tower") and Lime Brokerage Holdings LLC and Lime Brokerage LLC (together, "Lime Brokerage"). (Letter to the Court from Glenn D. Pomerantz, Esq., dated Decc 22, 2010.) In particular, Plaintiffs seek (1) communications relating to Gorton's withdrawal of his interest in Tower; and (2) documents sufficient to show the fair market value of Gorton's assets. Having considered the submissions by Plaintiffs, Gorton, Tower, and Lime Brokerage,[1] Plaintiffs' application is granted in part and denied in part. Gorton, Tower and Lime Brokerage are directed to produce documents as set forth below, no later than February 18, 2011.

---

[1] The Court has not considered the letter dated January 7, 2011, submitted on behalf of Lime Brokerage by Michael Richter, who identifies himself as the Chief Financial Officer of Lime Brokerage Holdings and does not appear to be an attorney admitted to practice before this Court. The Court has, however, considered the opposition submitted on behalf of Lime Brokerage by David M. Pohl, Esq. on January 31, 2011.

### Withdrawal of MJG Tower Research FLP from Tower

In July of 2010, Plaintiffs moved to freeze Defendants' assets, arguing that Gorton was likely to attempt to transfer assets to avoid satisfaction of a potential judgment in this case. In particular, Plaintiffs pointed to Gorton's creation of several family limited partnerships[2] three days following the decision in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), in which the Supreme Court found that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 919. At a hearing on July 29, 2010, the Honorable Kimba M. Wood denied Plaintiff's motion, explaining that even "assum[ing], *arguendo* for purposes of this motion, that one of Mr. Gorton's motives in creating and maintaining the family limited partnerships was to lessen the likelihood that the assets would be available to satisfy judgments, the paucity of any similar transfers since Mr. Gorton received the cease and desist order lead me to conclude that there is no imminent and actual risk that defendants will dissipate assets now or in the future in order to frustrate a damage award in plaintiffs' favor." (Hearing Tr., dated July 29, 2010, at 150.) The Court further held that, if new evidence were to come to light, Plaintiffs would be permitted to renew their motion. (*Id.*)

Two weeks after an unsuccessful mediation conference between the parties held on August 16 and 17, 2010, MJG Tower Research FLP ("MJG") (apparently one of Gorton's family limited partnerships) withdrew its entire membership interest from Tower, cashing out all of its existing capital accounts. Gorton has historically owned nearly all of Tower (both Tower

---

[2] It is this Court's understanding that a so-called family limited partnership is a limited liability partnership where each family member is either a general or limited partner.

Research Capital LLC and Tower Research Capital Investments LLC) and, as the Managing Member (of both companies), he has been responsible for managing and directing Tower's business property and affairs. Plaintiffs suspect that Tower may not have paid MJG the fair market value of its interest, which Plaintiffs claim would have the effect of depleting the assets available to Gorton to satisfy any final judgment in this action, while allowing Tower to distribute cash to Gorton from continuing business operations. Based on this belief, Plaintiffs now seek discovery from both Gorton and Tower with respect to the withdrawal. In particular, Plaintiffs seek communications between Tower and Gorton, internal communications at Tower, and communications between Tower and Gorton's current and former attorneys concerning the withdrawal. Plaintiffs also seek documents from the last three years showing internal or third party valuations of membership interests in the Tower entities, income statements, and an accounting of membership interests, including member withdrawal information and the amount of capital returned to exiting members.

In light of the timing of the withdrawal of MJG from Tower, and the potential for a large judgment to be entered in this case, the Court is persuaded that at least some discovery regarding the withdrawal is appropriate. To date, Tower has produced two Notices of Withdrawal regarding this transaction. Tower has also offered to search the email records of Gorton and the nine remaining partners of Tower for documents relating to the transfer. The Court notes, however, that, when Plaintiffs asked if the nine partners were the primary individuals at Tower who were involved in the withdrawal, Tower did not respond. Accordingly, Tower is directed to produce communications relating to the withdrawal of MJG by searching the email records of those Tower partners and employees likely to have engaged in such communications.

Even though not a party to this litigation, Tower has indicated that, should production of Gorton's email be ordered, Tower would prefer make the production, rather than have the same email produced by Gorton. Based on the submissions before the Court, however, it is unclear whether Tower and Gorton would have retained all of the same documents. As the communications at issue are relevant and discoverable, and as the universe of documents in the possession, custody or control of Tower and Gorton may not be coextensive, Gorton is also directed to produce his communications relating to the withdrawal of MJG from Tower, unless he can confirm in writing that all such documents in his possession, custody or control are, in fact, duplicative of those being produced by Tower.

With respect to the financial documents sought by Plaintiffs, Tower argues that the documents sought by Plaintiffs contain highly confidential information that is only shared on a limited basis with Tower's own members, business counter-parties and accountants. Yet a Protective Order has been entered in this case to guard against undue disclosure of confidential information, and that Protective Order, by its terms, is applicable to documents designated confidential by non-parties. (*See* Dkt. 400.) As the existing Protective Order should adequately addresses Tower's interest in keeping its proprietary information confidential, Tower is directed to produce the requested financial documents, under the terms of that Order, as may be appropriate.[3]

---

[3] Plaintiffs have had some access to Tower's confidential documents during the course of settlement negotiations in this case. Although Tower submitted a letter to the Court in October of 2010 requesting the Court's assistance in alleged breaches of Confidentiality Agreements entered between Plaintiffs and Tower, Tower withdrew their letter and the issues presented were never fully briefed. At this time, Tower has not presented any evidence to the Court to suggest that Plaintiffs would breach the protective order in this case.

## Fair Market Value of Gorton's Assets

On August 6, 2010, the Court held that discovery regarding Defendants' net worth would be appropriate at this stage of litigation, in light of Plaintiffs' claim for punitive damages for common law copyright infringement and unfair competition with respect to pre-1972 recordings. (Order, dated Aug. 6, 2010 (Dkt. 302) ("8/6/10 Order"), at 9.) The Court found, however, that Plaintiffs were not entitled to discovery of Defendants' tax returns, at least at that time, as it appeared that the relevant information that would be gleaned from tax returns would be available from less intrusive sources (*e.g.*, "a financial affidavit setting providing a balance sheet stating Defendants' net worth, income, assets, and liabilities," or deposition testimony). (*Id.*) The Court noted that if, after completion of the ordered discovery, Plaintiffs believed that the information they received was inadequate, they could apply for appropriate relief from the Court. (*Id.*)

Plaintiffs acknowledge that they currently have documents sufficient to show the "book value" of Gorton's assets, but contend that further production by Gorton and Lime Brokerage is required to assess the "fair market value" of Gorton's assets. The parties have failed to identify any precedent from within this circuit or state[4] addressing how net worth should be calculated for purposes of awarding punitive damages. Plaintiffs, however, cite *Dewick v. Maytag Corp.*, No. 03 C 1548, 2004 WL 2967533 (N.D. Ill., Dec. 2, 2004), which squarely addresses this question, and expresses the view that "fair market value" is a more appropriate measure of a party's "ability to pay" than "book value":

---

[4] In the August 6, 2010 Order, the Court appears to have relied on New York state law in determining that discovery regarding Defendants' net worth would be appropriate. (8/6/10 Order, at 8 (citing cases analyzing New York law on punitive damages).)

5

> [A]s to [the defendant's] net worth, which is relevant to [the
> plaintiff's] claim for punitive damages, clearly fair market value
> rather than book value is a far more accurate measure of a
> corporation's ability to pay any such damages that might be
> awarded. This Court will of course conform to the law both in
> instructing the jury and in evaluating any such award that the jury
> might choose to make-but insofar as net worth is a relevant
> consideration, the totally artificial construct of historical book
> value has nothing to commend it.

*Id.*[5] Similarly, it appears that New York state courts may consider the fair market value of property in assessing the propriety of punitive damages awards. *See Yokley v. Henry-Clark Assocs.*, 624 N.Y.S.2d 341, 179 (N.Y.C. Civ. Ct. 1995), *rev'd on other grounds*, 655 N.Y.S.2d 714 (2d Dep't 1996). Based on a review of the most applicable case law that the parties have submitted or that the Court has found on this point, the Court concludes that at least limited discovery into the current market value of Gorton's assets would be appropriate at this stage in the litigation.

In response to Plaintiffs' demands for a range of financial documents related to its market value, Lime Brokerage has offered to produce 1065 tax returns for 2005 through 2009, along with keys to understanding the identities of the members and their respective ownerships set

---

[5] The other cases cited by Plaintiffs and Gorton involve asset valuations made pursuant to statute or contract, or in other contexts not related to punitive damages, and are therefore less compelling. *See Sanders v. Jackson*, 209 F.3d 998, 999-1001 (7th Cir. 2000) (cited by Gorton) (analyzing the meaning of "net worth" in the context of the statutory limitation of recovery permitted under the Fair Debt Collection and Practices Act); *Bolt v. Merrimack Pharms., Inc.*, No. Civ. S-04-0893WBSDAD, 2005 WL 1458722, at *3 (E.D. Cal. June 17, 2005 (cited by Gorton) (calculating the net worth of a corporation in accordance with a written agreement that explicitly referenced the corporation's balance sheet); *Beerly v. Department of Treasury*, 768 F.2d 942 (7th Cir. 1985) (cited by Plaintiffs) (evaluating an appraisal by the Comptroller of Currency of the value of certain shares of stock); *Campbell v. Amer. Fabrics Co.*, 168 F.2d 959, 960 (2d Cir. 1948) (cited by Plaintiffs) (reviewing an arbitrator's valuation of shares pursuant to an agreement that expressly provided, *inter alia*, that the business must be valued "as a going concern in the light of the past, present and prospective future earnings and the net worth of said business").

forth in each of those tax returns; audited financial statements for 2005 to present and unaudited 2010 information; charts setting forth the cash distributions made to the members from 2005 to date; a spreadsheet detailing the ownership of Lime Brokerage from 2005 to present; information concerning other Lime Brokerage holdings; and quarterly Focus Reports for the First Quarter of 2008 through the Third Quarter of 2010. Plaintiffs argue that Lime Brokerage should also produce any documents showing internal or third party valuations of ownership interests in Lime Brokerage for the last three years. Although Lime Brokerage argues generally that the documents it has offered should be sufficient, internal or third party valuations would likely be highly relevant to an assessment of its fair market value. Accordingly, Lime Brokerage is directed to produce the documents it has offered to produce as set forth above (to the extent it has not already done so), as well as documents sufficient to show internal or third party valuations of the company for the past three years.[6]

With respect to Gorton's remaining assets, Plaintiffs' demands – which include requests for income statements, balance sheets, cash flow statements, budgets, projections, and any ownership or business valuations for all 23 of the entities in which Gorton has invested – seek an unreasonably large volume of documents, relating to a large number of entities. Plaintiffs and Gorton are directed to confer in good faith to identify a subset of Gorton's assets that are of particular interest to Plaintiffs, and then to identify a limited range of documents that would be in Gorton's possession, custody or control, and that would be sufficient to enable Plaintiffs to make a reasonable estimate of the fair market value of Gorton's interest in each of those assets. To the

---

[6] With respect to Tower, the documents sought by Plaintiffs regarding fair market value are coextensive with the financial documents that the Court is ordering be produced in connection with Gorton's withdrawal of his interest in Tower. (Letter to the Court from Glenn D. Pomerantz, Esq., dated Jan. 14, 2011, at 5-6.)

extent the parties are unable to reach an agreement, the Court will entertain a renewed application from Plaintiffs setting forth more narrowly tailored demands for particular categories of documents regarding particular assets.

Dated: New York, New York
       February 7, 2011

                                        SO ORDERED

                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge

Copies to:

Hon. Kimba M. Wood

all parties (via ECF)

Michael Richter, Chief Financial Officer
Lime Brokerage Holdings LLC
625 Broadway, 12th Floor
New York, NY 10012

Elizabeth Fitwater, Esq.
Arkin Kaplin Rice LLP
590 Madison Ave.
New York, NY 10022

David M. Pohl, Esq.
Pohl LLP
600 Third Ave., 15th Floor
New York, NY 10016