UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS LLC fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br>                                    Plaintiffs, <br><br>          v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br>                                    Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**PLAINTIFFS' REPLY IN SUPPORT OF OBJECTION TO MAGISTRATE JUDGE FREEMAN'S REPORT & RECOMMENDATION CONCERNING 17 U.S.C. § 412(2)**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100

*Attorneys for Plaintiffs*

Date: February 7, 2011

13035812.1

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................................ 1

II. THE INFRINGEMENT THAT "COMMENCES" UNDER § 412(2) IS EACH DIRECT INFRINGER'S COMMENCEMENT OF ITS OWN INFRINGEMENT ......... 2

    A.  Lime Wire's "Implementation" Of Its Service Did Not "Commence" Infringement Under § 412(2) ................................................................................. 3

    B.  Mass Numbers Of Direct Infringers Did Not "Continue" The Infringement Of The First Lime Wire User ................................................................................. 4

        1.  The Continuing Infringement Doctrine Applies To A Particular Infringer's Ongoing Infringement Of The Same Work ............................. 5

        2.  The Cases Lime Wire Cites Do Not Support Its Arguments ..................... 9

III. PLAINTIFFS, AS IS THEIR RIGHT UNDER THE LAW, SEEK A SEPARATE STATUTORY AWARD FOR EACH DIRECT INFRINGEMENT FOR WHICH LIME WIRE HAS SEPARATE JOINT AND SEVERAL LIABILITY .......................... 11

    A.  The Copyright Act Authorizes Plaintiffs To Seek Separate Statutory Awards Where Lime Wire Is Separately Jointly And Severally Liable For The Infringement Of The Same Copyrighted Work ............................................ 11

    B.  Plaintiffs Have Said Repeatedly That They Seek Separate Statutory Awards Based On Lime Wire's Separate Joint And Several Liability ................ 12

    C.  Lime Wire's Claimed "Gotcha" Citations From Other Cases Involving Plaintiffs Are A Bust .......................................................................................... 13

IV. CONCLUSION ................................................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Bouchat v. Bon-Ton Dept. Stores, Inc.*,
 506 F.3d 315 (4th Cir. 2007) ................................................................................................10

*Bouchat v. Champion Prods, Inc.*,
 327 F. Supp. 2d 537 (D. Md. 2003) ......................................................................................10

*Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*,
 106 F.3d 284 (9th Cir. 1997), rev'd on other grounds sub nom *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) ......................................................................12

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*,
 919. F. Supp. 728 (S.D.N.Y. 1996) ........................................................................................3

*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*,
 807 F.2d 1110 (2d Cir. 1986) .................................................................................................8

*Love v. City of New York*,
 1989 WL 140578 (S.D.N.Y. Nov. 17, 1989) ........................................................................10

*Love v. Kwitny*,
 706 F. Supp. 1123 (S.D.N.Y. 1989) ......................................................................................10

*Mason v. Montgomery Data, Inc.*,
 967 F.2d 135 (5th Cir. 1992) ............................................................................................2, 5

*Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*,
 453 F.2d 552 (2d Cir. 1972) ...................................................................................................8

*Troll Co. v. Uneeda Doll Co.*,
 483 F.3d 150 (2d Cir. 2007) ...................................................................................................5

*U2 Home Entertainment, Inc. v. Hong Wei Int'l Trading, Inc.*,
 2008 WL 3906889 (S.D.N.Y. Aug. 21, 2008) .......................................................................9

*West v. Goodyear Tire & Rubber Co.*,
 167 F.3d 776 (2d Cir. 1999) .................................................................................................11

**CALIFORNIA STATUTES AND RULES**

Copyright Act of 1976 ...................................................................................................................9

Rule 12(c) .......................................................................................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**FEDERAL STATUTES AND RULES**

17 U.S.C. § 412 .................................................................................................................5, 6, 9

17 U.S.C. § 412(2) ............................................................................................................. passim

17 U.S.C. § 504(c)(1) ................................................................................................... 2, 12, 14

**OTHER AUTHORITIES**

4 NIMMER ON COPYRIGHT § 7.16[C][1][a] ...................................................................................11

4 NIMMER ON COPYRIGHT § 14.04[E][2][d] ............................................................................8, 12

RESTATEMENT (SECOND) OF TORTS § 875 (1979) ..........................................................................8

**I.     INTRODUCTION**

Lime Wire's § 412(2) argument boils down to this: If Lime Wire induced one million of its users to directly infringe a particular work, Lime Wire is not liable for any statutory damages if one of those users happened to infringe that work before it was registered. Lime Wire is wrong about the law, and Lime Wire is wrong about the source of its liability. For secondary liability – the only thing Lime Wire has been sued for – Lime Wire is separately liable for each direct infringement. Thus, if 999,999 different Lime Wire users directly infringed after registration, Lime Wire cannot avoid statutory damages for those infringements by contending that one user directly infringed the recording before registration. Lime Wire's arguments to the contrary simply embrace and extend the Report's manifold legal errors:

*First*, Lime Wire argues that every single infringement of a sound recording by a Lime Wire user – regardless whether thousands or even millions of users infringed that work – "was necessarily a continuing act of infringement." Opp. at 9-10. That extravagant claim cannot be squared with § 412(2) or the case law construing it. A direct infringer who infringes post-registration cannot avoid damages by pointing to a different direct infringer who infringed pre-registration. And since Lime Wire is secondarily liable for each act of infringement, it certainly cannot be in a better position than the post-registration infringer. Section 412(2) incentivizes a copyright owner to register by denying statutory damages only for the infringement by a particular direct infringer who commences infringing pre-registration. No court has ever ruled that Congress intended for § 412(2) to eliminate an inducer's liability for any statutory damages by inducing massive amounts of infringement as quickly as possible.

*Second*, Lime Wire says that it "is evidently news not only to Defendants, but also to Judge Freeman" that Plaintiffs seek a separate award for each act of direct infringement for

which Lime Wire is jointly and severally liable with separate actors.  Opp. at 19.  That is not "news" to anyone – especially not to Lime Wire – as demonstrated in the opening brief.  *See* Obj. at 17-19.  Section 504(c)(1), the case law, and the leading copyright treatise all make it clear that Plaintiffs may seek separate statutory awards.  And Plaintiffs have made it clear in multiple filings – all of which Lime Wire simply ignores – that they intend to seek multiple awards in this case.  *See, e.g.*, Klaus Decl., Exs. 1 & 2; Obj. at 17-19.  The Report should be overruled.[1]

## II.   THE INFRINGEMENT THAT "COMMENCES" UNDER § 412(2) IS *EACH DIRECT INFRINGER'S* COMMENCEMENT OF ITS OWN INFRINGEMENT

The law is crystal clear that a copyright owner may seek statutory damages *even if* its work was registered more than three months after the work's first publication, so long as the owner registered the work before the particular direct infringer "commenced" its infringement. Cases have consistently held that, even if infringer A commenced infringing the work pre-registration, the copyright owner may seek statutory damages against infringer B (or C, or so on) who commenced their infringement *post*-registration.  Section 412(2)'s applicability is analyzed on a work-by-work, infringer-by-infringer basis.  *See Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 144 (5th Cir. 1992); Obj. at 10 (collecting multiple cases).  As applied here, this rule means that a Plaintiff may recover statutory damages against Lime Wire so long as a particular work infringed by a particular direct infringer was registered before that infringer infringed that work.

Lime Wire tries to evade this clear law in two ways.  *First*, Lime Wire argues that simply because Lime Wire "implement[ed]" its system, Lime Wire *itself* "commenced" infringing each work the first time any user uploaded that work for others to copy.  Opp. at 10, 16.  *Second*,

---

[1] As in the Objection, this Reply refers to all Defendants as "Lime Wire."  Citations to Plaintiffs' opening brief are to "Obj."  Citations to Lime Wire's Opposition are "Opp."  Citations to Plaintiffs' opening Declaration are to "Klaus Decl."  The Supplemental Declaration filed with this Reply is cited as "Klaus Supp. Decl."

- 2 -

Lime Wire argues that every one of thousands or millions of infringements of the same recording is just a continuation of the infringement by the very first Lime Wire user to infringe the work. Both arguments fail.

### A. Lime Wire's "Implementation" Of Its Service Did Not "Commence" Infringement Under § 412(2)

Lime Wire argues that, as to any individual sound recording, the relevant point for the commencement of infringement by *all* Lime Wire users is the very first infringement of that work by any Lime Wire user. Opp. at 10. Lime Wire gets to that extraordinary result by arguing that "the act of developing, designing and maintaining that file sharing system was itself . . . a catalyst for the inducement of others," Opp. at 10, and therefore that "infringement was *commenced by Defendants* the day the first user of the LimeWire system uploaded a copyrighted file for another user to download and share." *Id.* at 16 (emphasis added).

This argument is flatly wrong: Lime Wire is *not* the direct infringer, and Lime Wire itself never "commenced" infringement under § 412(2). The Court's summary judgment opinion makes this point clear: "'[T]here can be no contributory infringement absent actual infringement.'" Summ. Jmt. Opinion at 27 (Doc. No. 223, May 25, 2010) (quoting *Faulkner v. Nat'l Geographic Enters, Inc.*, 409 F.3d 26, 40 (2d Cir. 2005)); *see id*. ("To establish direct infringement, a plaintiff must show [(1) ownership] and (2) *the third party infringed* the copyrights by unauthorized copying or distribution.") (emphasis added). The infringement that "commences" under § 412(2) is the *direct* infringer's infringement, *not* the secondary infringer's inducement of that infringement. That is exactly the rule applied in *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919. F. Supp. 728 (S.D.N.Y. 1996), on which Lime Wire mistakenly relies. *See* Opp. at 13-14. In *Ez-Tixz*, the court analyzed § 412(2) where three defendants were alleged to be secondarily liable for the infringements committed by the fourth defendant, which alone was the direct

- 3 -

infringer.  *See id.* at 731, 735-36.  The court held that the date infringement commenced was the date the *direct infringer* commenced its infringement, not the date of the conduct by the secondary infringers.  *Id.* at 735-36.  That is Plaintiffs' position here.

Lime Wire knows very well that it is the individual user's direct infringement that gives rise to a statutory award.  Until it made an opportunistic switch in its § 412(2) briefing, Lime Wire repeatedly argued that direct infringement by a particular Lime Wire user was required to give rise to a damages claim.  *See, e.g.*, Lime Wire's Summ. Jmt. Memo of Law (July 18, 2008) at 39 ("proof of direct infringement *by the primary infringer* is a necessary precondition to establishing both contributory and vicarious liability under the Copyright Act") (quotations omitted) (emphasis added); Lime Wire's Opp. to Plaintiffs' Summ. Jmt. Mot. (Sept. 26, 2008) at 7 ("The first element of every secondary copyright infringement claim is direct infringement *by a third party*.") (emphasis added).  Because the direct infringer's infringement creates the claim for statutory damages against Lime Wire, it necessarily follows that it is that direct infringer's commencement of its own infringement that counts for applying § 412(2).

### B. Mass Numbers Of Direct Infringers Did Not "Continue" The Infringement Of The First Lime Wire User

Lime Wire alternatively tries to defend the Report's erroneous conclusion that "[t]he infringement at issue in this case is best understood as an ongoing series of infringing acts."  Report at 6.  *See* Opp. at 10-15.  Lime Wire is wrong.  The continuing infringement doctrine means that a particular direct infringer continues to infringe if she or he infringed pre-and post-registration.  It does not mean that all Lime Wire users who infringed the same work engaged in a single act of continuing infringement.

### 1. The Continuing Infringement Doctrine Applies To A Particular Infringer's Ongoing Infringement Of The Same Work

Plaintiffs have demonstrated that the continuing infringement (or "ongoing series of infringing acts") doctrine is limited to the actions of a single infringer: If infringer A infringes a work before registration, then the fact that he or she continues to infringe that same work post-registration generally does not affect the application of § 412(2) against *that* particular direct infringer.[2] The doctrine does *not* mean that unlimited numbers of unrelated persons who infringe the exact same work are part of the first infringer's continuing course of conduct. Obj. at 11-15.

Lime Wire admits that numerous cases applying the continuing infringement doctrine are limited to "multiple acts of direct infringement by the same infringer." Opp. at 11. But, Lime Wire argues, there is no reason for the doctrine to be limited to infringements by the same direct infringer, because § 412(2) "speaks to 'any infringement of copyright commenced after first publication[.]'" *Id.* (quoting § 412(2)). On the contrary, § 412(2)'s reference to "any infringement" must mean – and has been construed to mean – any infringement *by the particular direct infringer*. If the statute were not limited to infringements by the particular direct infringer, then § 412(2) would simply bar statutory damages against anyone so long as at least one direct infringer infringed pre-registration. As Lime Wire admits elsewhere in its brief, that is *not* the rule. *See id.* at 16 ("*it is true* … that [w]here registration is delayed beyond the grace-period, all the remedies would still be available for an infringement commenced after registration") (quotations omitted) (emphasis added). *See generally Mason*, 967 F.2d at 143-44.

---

[2] As Plaintiffs demonstrated (Obj. at 13), and as Lime Wire concedes (Opp. at 7), the case law holds that § 412 does not in all cases bar statutory damages even against a particular direct infringer who commences infringing pre-registration. *See, e.g., Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158-59 (2d Cir. 2007) (§ 412 clock may restart "if the infringing activity ceased for an appreciable period of time"). Hence, the continuing infringement doctrine is not the bright-line rule that Lime Wire claims it is. Opp. at 6.

Lime Wire, like the Report, tries to shoehorn the vast, disparate infringements committed by millions of different Lime Wire users into one "ongoing" course of infringement by asserting that LimeWire users "did not" and "could not act independently," because every download by a Lime Wire user necessarily had to come from another Lime Wire user's upload.  Opp. at 17 (quoting Report at 7).  Lime Wire insists that "the first act of infringement 'commenced' within the meaning of § 412 when the first user of the LimeWire system uploaded a copyrighted file for another other [sic] user to download and share, which continued when still other LimeWire users copied and shared that file . . . ."  *Id*. at 10.

That contention is wrong as a matter of undisputed fact.  It has been undisputed at least since the summary judgment briefing in 2008 that Lime Wire users could download files that were uploaded to the Gnutella network by the users of *other* peer-to-peer software programs:

> LimeWire can 'interoperate' with other file sharing clients that properly implement the Gnutella protocol.  LimeWire users can search for files on the computers of, and download from, users of these other file sharing clients and vice versa.

Pltfs' Reply In Supp. of Stmt. of Undisputed Facts ¶ 51 (Doc. No. 178, Nov. 7, 2008).[3]

This undisputed fact is fatal to the Report's conclusion that every single infringement by a Lime Wire user necessarily devolved from an initial infringement by a Lime Wire user, and continued through an unbroken chain of other Lime Wire users.  A particular copy of a work downloaded through Lime Wire may or may not have originated with an illegal upload by a Lime Wire user.  Lime Wire has no one but itself to blame for the absence of information on this

---

[3] Lime Wire "responded" to this undisputed fact with its boilerplate and meritless objections to Dr. Horowitz's expert report and purported evidence related to "settlement."  *See* Doc. No. 223 at 9-11 & 17-19.  The fact quoted in the text was not (and cannot be) disputed.  Lime Wire's contention that Plaintiffs' discussion of this fact is "untimely," Opp. at 18 n.2, is thus specious.

- 6 -

score, because Lime Wire intentionally designed its system not to record the specific infringements by its millions of individual users.

Lime Wire argues that the unknowable origins of millions of unauthorized copies on its network are beside the point, because Plaintiffs' evidence of particular direct infringements comes from evidence of downloads from the shared directories of Lime Wire users. Opp. at 18. This is a red herring. The lynchpin of Lime Wire's argument (and the Report adopting it) is that every infringing file downloaded on Lime Wire necessarily traces back to an original infringing upload by a Lime Wire user. *See* Opp. at 10; Report at 6-7. Plaintiffs' proof of direct infringement in the form of a sound recording downloaded from a Lime Wire user shows that that particular user violated a Plaintiff's exclusive right to distribute that sound recording. That evidence does not mean that the same file originated with a Lime Wire user and was transmitted through a single, unbroken string of infringing Lime Wire users.[4]

Lime Wire's contention that every user's individual act of direct infringement simply continued every other user's separate infringements thus is wrong as a matter of fact. The argument also must fail as a matter of law. Under Lime Wire's theory, every one of thousands or even millions of different Lime Wire users all are jointly and severally liable with one another for just a single, ongoing infringement of the same recording – regardless of how many different

---

[4] Lime Wire further misrepresents Plaintiffs' evidence in discussing Dr. Waterman's Network Search Study of particular files with identical SHA-1 hash marks. This Study found that, as late as last fall (months after the Summary Judgment Opinion) multiple Lime Wire users were uploading copies of some of the works-in-suit with identical SHA-1 hash values. As the Court found at summary judgment, if two files have the identical hash value, then they "not only have the same sound content but also have been created using the same 'ripping software." Doc. No. 223 at 27 n.21. The fact that multiple files have the same hash value excludes the possibility that the users were simply transferring to themselves their own individual copy of the file. It does not remotely indicate that every person copying that file necessarily obtained that same file in one unitary and unbroken string of Lime Wire users going back to an initial upload by a Lime Wire user.

- 7 -

users there were, or how disparate and separate their acts were in time or place.  That is not the law.  Joint and several liability requires that two actors participate in or contribute to the same particular infringement of a Plaintiff's rights.  *See generally* RESTATEMENT (SECOND) OF TORTS § 875 (1979) (tortfeasors become joint actors when their conduct "is a legal cause of a *single and indivisible harm* to the injured party") (emphasis added); 4 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 14.04[E][2][d] (Matthew Bender, Rev. Ed.) ("When two or more persons have joined in or contributed *to a single infringement of a single copyright*, each is jointly and severally liable . . . .") (emphasis added); *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1116 (2d Cir. 1986) (joint and several copyright liability where "infringement flowed from [the two defendants'] joint action in reprinting the first 11 volumes of [the infringed work].").  Millions of disparate Lime Wire users who used the software to illegally upload and download countless copies of the same sound recording over the course of many years were not all engaged in a single infringement of that work under the joint and several liability standard.

Accepting Lime Wire's argument that this disparate mass of infringing conduct was all just a single infringing act would lead to absurd and unjustifiable results.  If two or more actors are jointly and severally liable for the same infringement, then the copyright owner's award against one actor may be offset against the remaining actors' share of potential liability.  *See Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972).  Under Lime Wire's theory of joint and several liability, this would mean that a Plaintiff would be entitled to no more than $150,000 *total* in statutory damages against *all* of the thousands (or even millions) of direct infringers who infringed a particular sound recording and Lime Wire itself.  This would reduce the potential range of statutory damages to pennies (or less) against Lime

Wire and each of the innumerable direct infringers.[5]  It would dramatically reduce the exposure to statutory damages of those persons (such as Lime Wire) who intentionally induce the most massive amounts of copyright infringement.  Lime Wire cites no support – because there is none – that Congress intended § 412(2) to adopt such an extreme and unjust rule.

### 2. The Cases Lime Wire Cites Do Not Support Its Arguments

Lime Wire grounds its arguments on multiple inapposite cases.  For example, Lime Wire claims that *U2 Home Entertainment, Inc. v. Hong Wei Int'l Trading, Inc.*, 2008 WL 3906889 (S.D.N.Y. Aug. 21, 2008), applies the continuing infringement doctrine to discrete acts by multiple direct infringers.  Opp. at 11.  Not so.  *U2* involved just one relevant direct infringer – a video store and its jointly liable principal – who infringed certain works prior to registration.  *See id.* at *2.

Lime Wire, like the Report, relies heavily on Judge Mukasey's *unpublished* order in *Love v. City of New York*, 1989 WL 140578 (S.D.N.Y. Nov. 17, 1989.  *See* Opp. at 7, 12, 15.[6]  Until the Report in this case, that order had *never been cited by any court* for the proposition that Lime Wire advocates.  And for good reason:  In *Love*, the court addressed two separate infringers who infringed the same copyright.  *Id.* at *1.  The court said that their infringement was "continuing" because the defendants infringed the same copyright, and thus their separate infringements were

---

[5] The prospect of Lime Wire making such an extreme argument is not hypothetical.  Lime Wire asked the Court for leave to file a Rule 12(c) motion for judgment on the pleadings based on the theory that Lime Wire's liability for statutory damages had to be offset by the amount a Plaintiff had recovered from an individual Lime Wire user for infringing that work.  *See* Klaus Supp. Decl., Ex. 1 at 2-3 (Sept. 29, 2010 pre-motion letter).  Although the Court gave Lime Wire leave to file that motion, Lime Wire has never filed it – no doubt because Lime Wire recognized that making this argument would expose the implications of Lime Wire's extreme view of § 412(2) and the Copyright Act's statutory damages provisions generally.

[6] Lime Wire's repeated citation to *Love v. Kwitny*, 706 F. Supp. 1123 (S.D.N.Y. 1989), misleadingly suggests that the order Lime Wire relies on was published.  *See* Opp. at 12, 19.  It was not.  Lime Wire and the Report rely on an *unpublished* order from that litigation.

- 9 -

"the same infringement." *Id.* at *2. If that were the law under § 412(2), then courts never would apply the statute by looking to when the particular defendant's infringement commenced. The court would just ask whether anyone, anywhere infringed the work before it was registered. That is not how courts apply § 412(2), however. *Love* is not persuasive precedent here.

*Bouchat v. Bon-Ton Dept. Stores, Inc.*, 506 F.3d 315 (4th Cir. 2007), *see* Opp. at 12-13, is inapposite because there, the court found *two sets of direct infringers* (NFLP and its downstream licensees) jointly liable for a single course of infringing plaintiff's exclusive distribution right. 506 F.3d at 327. As the district court in that case made clear, *Bouchat* did "not present a situation in which each of many infringers acted independently and not derivatively from a common primary infringer." *Bouchat v. Champion Prods, Inc.*, 327 F. Supp. 2d 537, 553 n.22 (D. Md. 2003). Here, there is no one common primary infringer. Rather, each infringement involves one direct infringer – an uploader or a downloader – and Lime Wire itself, which is separately jointly and severally liable with the members of each unit of direct infringement.

\* \* \*

In sum, the Report's and Lime Wire's interpretation of § 412(2) fails under every canon of statutory construction. The Report's interpretation of the statute should be overruled.[7]

---

[7] If the Court agrees with Lime Wire's interpretation of § 412(2), the Court should reject Lime Wire's argument that Plaintiffs must prove "that the first infringement [by any Lime Wire user] did not take place until after their registration became effective." Opp. at 10. A Plaintiff satisfies its burden under § 412(2), and thereby establishes that statutory damages are available, by introducing the registration certificate and proof that the direct infringement that gives rise to statutory damages commenced after the effective date of registration (or within three months of first publication). *See generally* 4 NIMMER ON COPYRIGHT § 7.16[C][1][a]. If Lime Wire wants to contend that a different Lime Wire user commenced infringing the work pre-registration, Lime Wire must present evidence establishing that fact. Lime Wire *itself* justified the discovery requests that underlie the Report by claiming the information was relevant to Lime Wire's "*defense* of Plaintiffs' damages claims." Report at 1 (emphasis added). It would be particularly appropriate to place this burden on Lime Wire, given that it intentionally designed and operated its infringement-inducing system to avoid storing information about its users' specific actions.

- 10 -

**III.     PLAINTIFFS, AS IS THEIR RIGHT UNDER THE LAW, SEEK A SEPARATE STATUTORY AWARD FOR EACH DIRECT INFRINGEMENT FOR WHICH LIME WIRE HAS SEPARATE JOINT AND SEVERAL LIABILITY**

The Report erred when it concluded (without any briefing) that "Plaintiffs seek one award of statutory damages per recording, regardless of the number of times the recording was downloaded." Report at 7. *See* Obj. at 16-19. Lime Wire's defense of this statement ignores (as the Report does) Plaintiffs' repeated statements that they seek separate statutory awards for each infringement for which Lime Wire is separately jointly and severally liable.

**A.     The Copyright Act Authorizes Plaintiffs To Seek Separate Statutory Awards Where Lime Wire Is Separately Jointly And Severally Liable For The Infringement Of The Same Copyrighted Work**

At the outset, we underscore a point that Lime Wire does not and cannot dispute: The law does not limit Plaintiffs to a single statutory award per sound recording infringed in this case. Plaintiffs are entitled to seek (and have sought) a separate statutory award as to each direct infringement "for which any two or more infringers are liable jointly and severally[.]" 17 U.S.C. § 504(c)(1). In this case, Lime Wire is jointly and severally liable with each direct infringer (or infringers) in a separate unit of liability for infringing the copyrighted work.

There is nothing novel about Plaintiffs' claim for such separate statutory awards. The Ninth Circuit held that § 504(c)(1) authorizes such awards in *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 1997), *rev'd on other grounds sub nom Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998). *See* Obj. at 16-17. The leading copyright treatise also confirms that § 504(c)(1) permits Plaintiffs to seek

---

*See, e.g.,* Pltfs' Reply In Supp. of Stmt. of Undisputed Facts ¶¶ 388-89 (Doc. No. 178, Nov. 7, 2008). Lime Wire should have to bear the consequences of its intentional decision to avoid maintaining potentially relevant information. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999) ("It has long been the rule that spoliators should not benefit from their wrongdoing").

- 11 -

multiple awards for the different infringements of the same works in these circumstances. *See* 4 NIMMER ON COPYRIGHT § 14.04[E][2][d] (if a defendant (D) is secondarily liable for copyright infringement with three separate direct infringers (A, B, and C), D will be jointly and severally liable for damages with *each* of those direct infringers, and thus "three sets of statutory damages may be awarded, as to each of which D will be jointly liable . . . .").

Lime Wire ignores the Nimmer treatise. Lime Wire does claim that *Columbia Pictures* is inapposite, purportedly because Lime Wire users (unlike the independent television stations in that case) had to "work[] together" to commit all of the numerous infringements of each sound recording. Opp. at 15. That assertion is *ipse dixit*; as we have shown, the facts do not bear it out: Every infringement of the same recording through Lime Wire was not committed in a discrete unit of joint and several liability. Thousands (or even millions) of uploads and downloads occurred across disparate users whose liability is not joint and several with one another.

In sum, Plaintiffs clearly have the right to seek separate statutory awards based on Lime Wire's separate joint and several liability for infringements of the same sound recording.

### B. Plaintiffs Have Said Repeatedly That They Seek Separate Statutory Awards Based On Lime Wire's Separate Joint And Several Liability

Lime Wire argues that it is "news" to it and to Judge Freeman that Plaintiffs seek such a remedy. Opp. at 19. That is not true. Plaintiffs pointed out numerous examples in the Objection, at 17-19, including Plaintiffs' letter to the Court early in the damages phase:

> Plaintiffs intend to seek a separate statutory award for each act of direct infringement for which Defendants are jointly and severally liable with separate infringing actors.

Klaus Decl., Ex. 1 at 2. We also pointed out that the Magistrate Judge had correctly described Plaintiffs' position at a November hearing. *Id*. Ex. 2 (Nov. 1, 2010 Hr'g Tr. at 140:3–5) (noting that Plaintiffs "are looking for a calculation of damages based on some number of individual

- 12 -

infringements of individual works."). Plaintiffs cited numerous other examples in which they clearly stated the remedy they seek. Obj. at 17-18. Lime Wire ignores every one of these citations. Lime Wire cannot make the record go away by pretending it does not exist. The remedy that Plaintiffs seek is not "news" to anyone – least of all to Lime Wire.

Lime Wire instead returns to a handful of statements in Plaintiffs' complaint as supposed evidence that they limited themselves throughout this litigation to a single statutory award per work, regardless of the number of direct infringements for which Lime Wire is separately jointly and severally liable. Our Objection explained why these sentences do not commit Plaintiffs to the position that Lime Wire says they do. *See* Obj. at 18. Even if there were a question on that score – and we submit there is none – the correct resolution is to allow Plaintiffs to amend their complaint, not to preclude Plaintiffs from seeking a remedy the law plainly allows. Lime Wire cannot complain of any prejudice at all from Plaintiffs' damages theory. Lime Wire has known about Plaintiffs' damages theory – and has had a full and complete opportunity to defend against it – throughout the massive damages discovery that Lime Wire has propounded and taken.

### C. Lime Wire's Claimed "Gotcha" Citations From Other Cases Involving Plaintiffs Are A Bust

Finally, Lime Wire is wrong that it has exposed "disingenuousness" by Plaintiffs in their § 504(c)(1) arguments here as compared to other cases. Opp. at 21.

In *Arista Records LLC v. Usenet.com, Inc.*, the Magistrate Judge's report and recommendation simply repeated the general rule that, where one direct infringer is involved, the plaintiff is entitled to only one statutory award, regardless of the number of times that single direct infringer infringes the work. *See* Eaton Decl., Ex. 6 at 5-6. That rule is undisputed – and it is inapposite here, where Lime Wire is separately jointly and severally liable with numerous discrete direct infringers. In the latter circumstance – this case – the law is clear that a Plaintiff

may seek multiple statutory awards. Nothing in the *Usenet.com* report or Plaintiffs' briefing on that report says anything to the contrary.

Lime Wire makes a second attempt to spin a "gotcha" by citing to Sony Music Entertainment's brief in *Granville v. Suckafree Records, Inc. See* Eaton Decl., Ex. 8. That brief merely stated that where multiple actors together are jointly and severally liable for the same infringement of the same work, a plaintiff is entitled to one statutory award against that single unit of jointly and severally liable infringers. *Id*. at 17-18. Here, in contrast, Lime Wire is *separately* jointly and severally liable with discrete, independent jointly and severally liable Lime Wire users. Sony's brief in *Granville* in fact speaks to exactly this distinction:

> The number of Defendants allegedly responsible for the infringement of a particular work will not act as a multiplier of statutory damages sets, *unless they are proven to be independently liable*, as opposed to jointly. Because Plaintiff alleges that Defendants acted jointly regarding the alleged infringements in this case, there is no number by which to multiply the number of sets of statutory damages recoverable.

*Id*. at 17 (emphasis added). Here, Lime Wire is independently liable with separate, jointly and severally liable Lime Wire users. Sony's position in *Granville* is therefore fully consistent with Plaintiffs' position here.

## IV. CONCLUSION

For the reasons discussed above, and in Plaintiffs' opening Objection brief, the Report should be overruled in its entirety.

Dated:  February 7, 2011 	Respectfully submitted

 	<u>*/s/ Kelly M. Klaus*</u>
 	Kelly M. Klaus

 	Attorney for Plaintiffs
 	Munger, Tolles & Olson LLP
 	355 South Grand Avenue, 35th Floor
 	Los Angeles, CA 90071-1560
 	(213) 683-9100
 	(213) 687-3702 (Fax)

- 15 -

13035812.1