UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ARISTA RECORDS LLC, et al.,

                  Plaintiffs,

     -against-

LIME GROUP LLC, et al.,

                  Defendants.

-----------------------------------------------------------------X

Case Number: 06 CIV 05936 (KMW/DCF)

## iMESH AND MUSICLAB'S OBJECTIONS TO
## MAGISTRATE JUDGE FREEMAN'S ORDER COMPELLING DISCLOSURE

Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3500
*Attorneys for non-parties*
*iMesh, Inc. and MusicLab, LLC*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 2

III.    ARGUMENT ..................................................................................................... 5

        A.      STANDARD OF REVIEW ................................................................. 5

        B.      DEFENDANTS' REQUESTS ARE OVERLY BROAD AND UNDULY
                BURDENSOME ................................................................................... 6

        C.      iMESH'S COMMUNICATIONS ARE IRRELEVANT TO THE PRESENT
                DAMAGES INQUIRY; PLAINTIFFS HAVE BEEN ORDERED TO
                PRODUCE THEIR COMMUNICATIONS WITH iMESH ................... 9

                i.      Internal iMesh Communications are Irrelevant to Damages ...... 9

                ii.     iMesh's Production of Communications with Plaintiffs is Unnecessarily
                        Duplicative and Burdensome ................................................... 10

        D.      IF THE ORDER IS NOT VACATED, IT SHOULD BE LIMITED AND
                DEFENDANTS SHOULD PAY iMESH'S COSTS, EXPENSES AND FEES ... 12

CONCLUSION ........................................................................................................... 14

## TABLE OF AUTHORITIES

### Cases

*Collens v. City of N.Y.*,
    222 F.R.D. 249 (S.D.N.Y. 2004) ................................................................................5

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996) ...........................................................................6, 7, 9

*Copantitla v. Fiskardo Estiatorio, Inc.*,
    No. 09 Civ. 1608 (RJH) (JCF), 2010 WL 1327921 (S.D.N.Y. Apr. 5, 2010)..............6, 10

*Dow Chemical Co. v. Reinhard*,
    No. M8-85 (HB), 2008 WL 1968302 (S.D.N.Y. Apr. 29, 2008) ......................................13

*During v. City Univ. of N.Y.*,
    No. 05 Civ. 6992, 2006 WL 2192843 (S.D.N.Y. Aug. 1, 2006) .........................................9

*Fears v. Wilhelmina Model Agency, Inc.*,
    No. 02 Civ. 4911 (HB) (HBP), 2004 WL 719185 (S.D.N.Y. Apr. 1, 2004) .......................6

*Harris v. Wells*,
    B-89-391 (WWE), 1990 WL 150445 (D. Conn. Sept. 5, 1990) .........................................7

*Haworth, Inc. v. Herman Miller, Inc.*,
    998 F.2d 975 (Fed. Cir. 1993) ..........................................................................................7

*In re Biovail Corp. Secs. Litig.*,
    247 F.R.D. 72 (S.D.N.Y. 2007) ......................................................................................10

*In re First American Corp.*,
    184 F.R.D. 234 (S.D.N.Y. 1998) ....................................................................................13

*In re Law Firms of McCourts and McGrigor Donald*,
    No. M 19-96 (JSM), 2001 WL 345233 (S.D.N.Y. Apr. 9, 2001).....................................13

*In re Letters Rogatory*,
    144 F.R.D. 272 (Ed. Pa. 1992). ......................................................................................14

*In re MTI Technology Corp.*,
    SACV 00-0745 DOC, 2002 WL 32344347 (C.D. Cal. June 13, 2002)...............................6

*In re Rivastigimine Patent Litig.*,
    239 F.R.D. 351 (S.D.N.Y. 2006) ......................................................................................5

*Insituform Technologies, Inc. v. Cat Contracting, Inc.*,
    914 F. Supp. 286 (N.D. Ill. 1996) ................................................................................7

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
    No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) ........... 9, 11

*Kirschner v. Klemons*,
    No. 99 Civ. 4828 (RCC), 2005 WL 1214330 (S.D.N.Y. May 19, 2005) ......................... 10

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) .................................................................................7

*Nidec Corp. v Victor Co. of Japan*,
    249 F.R.D. 575 (N.D. Cal. 2007) .................................................................................7

*Thorne v. Wyeth*,
    Civil No. 06-3123 (PAM/JJG), 2007 WL 1455989 (D. Minn. May 15, 2007) .................. 5

*TVT Records v. Island Def Jam Music Group*,
    447 F. Supp. 2d 311 (S.D.N.Y. 2006) ..........................................................................5

*U.S. v. IBM Corp.*,
    83 F.R.D. 97 (S.D.N.Y. 1979) ......................................................................................6

*World Wrestling Fed'n Entm't, Inc. v. William Morris Agency, Inc.*,
    204 F.R.D. 263 (S.D.N.Y. 2001) .................................................................................6

*Zubulake v. UBS Warburg LLC*,
    217 F.R.D. 309 (S.D.N.Y. 2003) ................................................................................ 13

## Statutes

28 U.S.C. § 636(b)(1)(A) ..................................................................................................5

Fed. R. Civ. P. 26(b)(1) ....................................................................................................9

Fed. R. Civ. P. 26(b)(2) ................................................................................................ 6, 11

Fed. R. Civ. P. 45(c)(2)(B) ....................................................................................... 12, 13, 14

Fed. R. Civ. P. 72(a) ........................................................................................................5

## I.   **INTRODUCTION**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure ("FRCP"), non-parties iMesh, Inc. and MusicLab, LLC (iMesh, Inc.'s wholly owned subsidiary) (collectively referred to herein as "iMesh"), by their attorneys, Meister Seelig & Fein LLP, hereby object to the Order of Magistrate Judge Debra Freeman dated January 31, 2011 (Dkt. 443) (the "Order"),[1] and respectfully request that the Court vacate the Order and deny Defendants' motion to compel as it pertains to iMesh.

As iMesh's initial attempts at complying with the Order demonstrate, the Order imposes an enormous burden and expense on iMesh, which has already shouldered the cost and expense of objecting and producing documents in this case in response to Defendants' previous subpoenas.  The requirement to produce both a broad swath of apparently irrelevant internal emails, as well as communications with the Plaintiffs regarding license agreements that the Plaintiffs already have in their possession and are under a court order to produce, has resulted in an extremely expensive and burdensome combination for non-party iMesh.  Indeed, by applying the search terms previously specified by this Court, in addition to other search terms aimed at good faith compliance with the Order, iMesh has already segregated an estimated 30,000 emails that must be manually reviewed and filtered for responsiveness, privilege and confidentiality concerns.

Just as importantly, the relevancy of such emails to the only remaining question of damages is highly suspect.  As discussed further below, the Defendants argued, and Magistrate Judge Freeman erroneously accepted, that iMesh's internal communications and external communications with Plaintiffs regarding licensing and/or LimeWire are relevant to the "conduct

---

[1]      The Order is attached to the Declaration of Jeffrey Weingart, dated February 16, 2011 ("Weingart Decl.") as Exhibit A.

and attitude of the parties." In fact, in their motion to compel, Defendants' failed to show how iMesh's internal communications could possibly be relevant to the "conduct and attitude" of the *Plaintiffs* toward the *Defendants*, which is the only factor even arguably relevant to the ongoing damages inquiry. Surely, for instance, simply because an internal iMesh email contains the search terms "agreement" or "Sony", or both, does not mean that its contents are reflective of Plaintiffs' attitude toward Defendants or online music licensing. Indeed, it is difficult to imagine such an email that would reflect such Plaintiff attitudes. Nor is there a basis for iMesh to have to review internal emails for production simply because they may reference "LimeWire". The Defendants are overreaching here, and unfortunately, such overreaching has been erroneously endorsed by the Order.

For the foregoing reasons and as discussed further below, iMesh respectfully requests that the Court vacate the Order and deny Defendants' motion to compel as it pertains to iMesh.

## II.   BACKGROUND

Defendants Lime Group LLC, Lime Wire LLC, Mark Gorton, and M.J.G. Lime Wire Family Limited Partnership (collectively, "Defendants"), served Subpoenas to Testify at a Deposition in a Civil Action dated September 21 and September 22, 2010 on iMesh, Inc. and MusicLab, LLC (the "Subpoenas"). The Subpoenas are attached to the Weingart Decl. collectively as Exhibit B.

Prior to receiving the Subpoenas, iMesh had already been subpoenaed *twice* by the Defendants *in this case* (in 2007 and 2008), and had previously complied with its obligations in connection with those subpoenas, by duly interposing objections, and by providing certain documents and deposition testimony.[2]

---

[2]    The two previous subpoenas served on iMesh in this case, dated September 14, 2007 and March 25, 2008, are each attached to the Weingart Decl. as Exhibits D and E, respectively.

In fact, iMesh duly and timely objected in 2007 to the document demands in Defendants'

first subpoena,[3] which essentially sought the same documents as demanded in the recent

Subpoenas – including internal communications and communications with Plaintiffs relative to

online licensing and LimeWire.  For more than three years, the Defendants never pursued such

discovery and never moved to compel production of such documents – until now.

On October 1, 2010, iMesh served its Response of Non-Party iMesh, Inc. to Subpoena

and Accompanying Demand for the Production of Documents ("Response to Subpoenas").[4]  By

its Response to Subpoenas, iMesh objected to the Subpoenas, based on the grounds that, *inter*

*alia*, (i) the Defendants had previously served two subpoenas on iMesh, taken the deposition of

iMesh principal Talmon Marco, and received some 630 pages of documents from iMesh in

response to those prior subpoenas; (ii) in light of such prior production and the heavy burden

already shouldered by non-party iMesh in connection therewith, Defendants are not entitled to

continue pursuing iMesh for additional documents and deposition testimony; (iii) the Subpoenas

seek documents and tangible things already in the possession, custody or control of the parties in

this action (the "Parties"), or which can be obtained more readily from a source other than

iMesh; (iv) the document requests in the Subpoenas are overly broad, unduly burdensome, or

seek documents not relevant and/or not reasonably calculated to lead to the discovery of

admissible evidence; and (v) the discovery sought by the Requests are irrelevant to the sole

remaining issue of damages in the case.  iMesh also attached to its Responses to Subpoenas its

---

[3]     iMesh timely interposed objections, and subject to such objections, complied with Defendants' *second* subpoena in 2008 by producing more than 600 pages of license agreement documents on April 9, 2008 and appearing and giving testimony at a deposition on April 14, 2008. *See* Weingart Decl., at ¶¶ 6 – 7. iMesh's October 19, 2007 Response to Subpoena and Accompanying Request for Production, served in response to the September 14, 2007 subpoena, is attached to the Weingart Decl. as Exhibit F.
[4]     iMesh's Response to Subpoenas is attached to the Weingart Decl. as Exhibit C.  iMesh's Response to Subpoenas, by agreement with Defendants, is also a response to the subpoena served on MusicLab, LLC.

responses to the September 14, 2007 subpoena, explicitly incorporating by reference all objections asserted therein.[5]

By letter to Magistrate Judge Freeman dated December 13, 2010 ("Defendants' Letter"), Defendants sought an order overruling iMesh's objections to the Subpoenas. By letter dated December 21, 2010 iMesh opposed Defendants' Letter and sought an order quashing the Subpoenas and for an award of sanctions. iMesh's December 21, 2010 letter is attached to the Weingart Decl. as Exhibit G. Defendants filed a reply on January 4, 2011 and an additional letter, apparently made at the request of Magistrate Judge Freeman, on January 14, 2011. Magistrate Judge Freeman's Order followed on January 31, 2011 which Order requires that iMesh produce "copies of their communications with Plaintiffs, as well as their internal communications, regarding those license agreements and/or LimeWire, to the extent such communications reflect information regarding Plaintiffs' conduct, Plaintiffs' stated positions, or Plaintiffs' views regarding online licensing arrangements in general, or regarding LimeWire in particular." Order, pp. 5, 6.[6]

The District Court for the Western District of Washington, U.S. District Court Judge Marsha J. Pechman, with full knowledge of Magistrate Judge Freeman's Order, denied Defendants' motion to compel the Amazon Subpoena (identical to the iMesh Subpoenas) by Order dated February 9, 2011 (10 cv 2074, W.D. Washington, Dkt. 10) ("Amazon Order").[7] The Amazon Order is attached to the Weingart Decl. as Exhibit H.

---

[5]     This Court, in an Order dated November 19, 2010 (Dkt. 363) (the "11/19 Order"), has already found that the categories of documents sought by Defendants have, at best, a "potentially tenuous connection... to the damages inquiry at issue."

[6]     iMesh refers herein to objections to the Order filed by other non-parties, including Google, MySpace and Yahoo! and expressly adopts, to the extent applicable, the objections filed by such non-parties. (Dkts. 471 – 475).

[7]     Notably, the court in the Amazon Order observed that Defendants "had not sought to enforce the 2007 subpoena," but instead chose to move to compel a newly served subpoena. *See* Amazon Order (10 cv 2074, W.D. Washington, Dkt. 10), p. 2. The same facts exist herein as stated above.

iMesh has already incurred more than $8,600 in disbursements alone, before the burdensome attorney review has commenced and before the third primary custodian's email account has been processed. At this point, with the review of just 5% of the results of documents culled from iMesh's search terms, iMesh has incurred over $20,000 in legal fees. Declaration of Robert Summer ("Summer Decl."), ¶¶ 5 – 8.

Based on the foregoing and as discussed further below, iMesh respectfully requests that the Court vacate Magistrate Judge Freeman's Order, sustain iMesh's objections, deny the Defendants' motion to compel, and grant iMesh's cross-motion to quash the Subpoenas.

## III.  ARGUMENT

### A.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(A) and FRCP 72(a), a district court must vacate those portions of a magistrate judge's order that are "clearly erroneous or contrary to the law." *See TVT Records v. Island Def Jam Music Group*, 447 F. Supp. 2d 311, 314 (S.D.N.Y. 2006) ("A district judge, after considering any objections by the parties, may accept, set aside, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge with regard to such matters."); *see also Collens v. City of N.Y.*, 222 F.R.D. 249 (S.D.N.Y. 2004). A decision is "clearly erroneous" when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.*; *Thorne v. Wyeth*, Civil No. 06-3123 (PAM/JJG), 2007 WL 1455989, at *1 (D. Minn. May 15, 2007). In this Circuit, "[a]n order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *In re Rivastigimine Patent Litig.*, 239 F.R.D. 351, 356 (S.D.N.Y. 2006) (citation omitted). An order by a magistrate will be set aside where the magistrate ignored well-established principles of discovery law. *See e.g., Collens v. City of New York*, 222 F.R.D. 249

(S.D.N.Y. 2004); *In re MTI Technology Corp.*, SACV 00-0745 DOC, 2002 WL 32344347 (C.D. Cal. June 13, 2002).

As discussed below, Magistrate Judge Freeman's Order directing production of iMesh communications with Plaintiffs and internal communications relative to online licensing and LimeWire is clearly erroneous and contrary to law, and iMesh respectfully requests that this Court vacate Magistrate Judge Freeman's Order as to iMesh.

## B.   DEFENDANTS' REQUESTS ARE OVERLY BROAD AND UNDULY BURDENSOME

Discovery is inappropriate if the "burden or expense of the proposed discovery outweighs its likely benefit." *World Wrestling Fed'n Entm't, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 (S.D.N.Y. 2001) (quoting FRCP 26(b)(2)) (internal quotation marks and citations omitted). Whether a subpoena imposes an "undue burden" "depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the *burden imposed*." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (emphasis supplied) (*quoting U.S. v. IBM Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)); *see also* Fed.R.Civ.P. 26(b)(2)(C)(iii).

Where a subpoenaed entity or person is a non-party, special consideration is given to the burden imposed by a subpoena. *See Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608 (RJH) (JCF), 2010 WL 1327921, at *10 (S.D.N.Y. Apr. 5, 2010) ("'[S]pecial weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation.'" (citation omitted)). Non-parties should not be subject to the same burden of production as a party to the litigation. *See Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (HB) (HBP), 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) ("[T]he Court should be particularly

sensitive to weighing the probative value of the information sought against the burden of production on [a] non-party.") "[T]he status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience.'" *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (quoting FRCP 45(c)(2)(B)). Defendants should first seek documents from Plaintiffs before seeking the same types of documents from a non-party.[8]

iMesh, having been served with three subpoenas in this action, having appeared at a deposition, and having been served with the latest Subpoenas, has been "inconvenienced" to say the least. The substantial expense that iMesh would have to incur by responding – in collecting responsive documents and paying for attorney review – weighs heavily in favor of setting aside Magistrate Judge Freeman's Order.

The Order requires an overly broad, unduly burdensome review and production of documents not relevant nor reasonably calculated to lead to the discovery of admissible evidence. This is especially so when considered in the light of the immense burden and expense that iMesh will be forced to shoulder if it must comply with Magistrate Judge Freeman's Order.

The categories delineated in the Order include all communications with *13* different Plaintiffs, and internal communications, relating to (a) online licensing (essentially, the subject of *any* communications between Plaintiffs and iMesh) and (b) LimeWire. These categories are inherently overbroad and focused on one of the core areas of iMesh's entire business, *i.e.*, the

---

[8]    *See e.g.*, *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (district court properly required defendant to seek discovery from plaintiff before burdening non-party); *Nidec Corp. v Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D.Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant"); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005); *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 914 F. Supp. 286, 287 (N.D. Ill. 1996) (plaintiffs not permitted to seek from non-party information obtainable from defendants); *Harris v. Wells*, B-89-391 (WWE), 1990 WL 150445, at *4, 5 (D. Conn. Sept. 5, 1990) (denying motion to compel subpoenaed documents from non-parties where requests were duplicative of requests served on parties and substantial portion of such discovery would be unnecessary once opposing party produced documents).

development and marketing of an authorized music download service. Summer Decl., ¶ 2. In light of the substantial discovery to which iMesh has already been subjected, iMesh's objections should have been sustained, Defendants' motion to compel denied and the Subpoenas quashed.

With the initial intent of attempting to comply with the Order, iMesh developed certain search terms to facilitate its collection of emails and attachments called for in the Order. Summer Decl., ¶¶ 5, 9.[9]   However, using these search terms, iMesh has already uncovered 25,000 responsive documents on just two of the three primary email custodians' accounts, incurred (i) more than $8,600 in disbursements to outside vendors and (ii) over $20,000 in legal fees for just 5% of the emails already narrowed by search terms. Summer Decl. ¶¶ 6 – 8.   Once the third iMesh custodian's emails are segregated, this number is expected to be approximately 30,000. Summer Decl. ¶ 6.  The time and expense of such production should not be overlooked by the Court for a small business such as iMesh. Summer Decl., ¶¶ 2, 9.  iMesh is many times smaller than the Plaintiffs and simply cannot, and should not be compelled to, shoulder the costs associated with such a burdensome production in an action to which iMesh is not even a party.[10]

---

[9]     In selecting the search terms, iMesh used its reasonable judgment as well as the search terms delineated in the order of the court dated November 23, 2010 (the "Vevo Order"), adding search terms, e.g., names of Plaintiffs, to those set out in the Vevo Order with the initial intention of complying fully with the Order. Summer Decl., ¶ 5, nn.1, 2.

[10]    Magistrate Judge Freeman should have denied Defendants' Motion to Compel because iMesh duly objected to the categories of documents sought by Defendants by the Subpoenas, and ordered by the Court in the Order, back in 2007. By way of example only, the Order requires iMesh to produce documents that would otherwise, in part, be responsive to Defendants' September 14, 2007 subpoena requests 4(a), 4(b), 4(c), 4(s), 4(t), 5(a), 5(b), 6, 13, 16, 17, 21, 25. In October of 2007, iMesh objected to the categories now set forth in the Order, as well as to all others repeated in the current Subpoenas, as being overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants never pursued such discovery relative to the September 14, 2007 subpoena, or any other discovery relative to that subpoena served on iMesh. Apparently ceding to iMesh's objections to the 2007 document subpoena, Defendants followed up with another narrower  subpoena dated March 25, 2008, seeking copies of license agreements, in response to which iMesh produced over 630 pages of documents.

## C.   iMESH'S COMMUNICATIONS ARE IRRELEVANT TO THE PRESENT DAMAGES INQUIRY; PLAINTIFFS HAVE BEEN ORDERED TO PRODUCE THEIR COMMUNICATIONS WITH iMESH

Defendants have not met their burden of demonstrating the relevancy of iMesh's internal communications or external communications with Plaintiffs regarding online music licensing and/or LimeWire to the calculation of damages – the sole remaining issue in this litigation. Subpoenas issued to non-parties pursuant to Rule 45 are "subject to Rule 26(b)(1)'s overriding relevance requirement." *During v. City Univ. of N.Y.*, No. 05 Civ. 6992, 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006). Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." FRCP 26(b)(1). Therefore, "'[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) (citation omitted).

### i.   Internal iMesh Communications are Irrelevant to Damages

It is unlikely that iMesh's *internal* communications could have any bearing on Plaintiff's "conduct, [] stated position, [or]... views regarding online licensing" and/or LimeWire, generally. Order, at p. 5. Any connection to the lone remaining issue in this case, calculation of damages, is even further removed. Requiring the production of documents when the possibility of relevance is so exceedingly remote far exceeds the boundaries of discovery under Rule 26. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 51 (S.D.N.Y. 1996) ("[F]ishing expedition[s] [that] will reel in 'material with little apparent or likely relevance to the subject matter' at hand... comport[] with neither the letter nor the spirit of the federal civil discovery rules." (internal citation omitted)).

In issuing the Order, Magistrate Judge Freeman erroneously overlooked the fact that information related to Plaintiffs' conduct, stated position, and views can only be found in Plaintiffs' *own* communications.   What no one has explained is how iMesh's *internal* communications could contain evidence of Plaintiffs' conduct, stated position, or views.[11]

Plaintiffs' conduct and attitude regarding online music licensing and/or LimeWire is evidenced by the license agreements – which are themselves the most relevant basis for determining any damage to Plaintiffs resulting from Defendants' conduct.   iMesh's communications, internal or with Plaintiffs, are irrelevant to determining Plaintiffs' conduct and attitude toward Defendants.[12]   This Court has observed that even Plaintiffs' production in this action has a "tenuous" connection to the lone issue of calculation of Plaintiffs' damages, and has noted that the effort to produce such evidence is "potentially burdensome" as to Plaintiffs.   The relevance of any analogous discovery sought from wholly unrelated non-parties, such as iMesh, is even more tenuous. *Id.*   Accordingly, Defendants have not met their burden of showing the relevance of the documents requested, and the Order should be vacated.[13]

### ii.   iMesh's Production of Communications with Plaintiffs is Unnecessarily Duplicative and Burdensome

The Court has already specifically directed Plaintiffs to produce communications with iMesh relating to licensing and/or LimeWire, among others. *See* 11/19 Order, p. 6, 7.   In light of

---

[11]      In fact, as to another licensee (Amazon) served by Defendants with a subpoena (the "Amazon Subpoena") identical to the Subpoenas, the United States District Court Judge Marsha J. Pechman of the Western District of Washington at Seattle, determined that Amazon's "internal" communications "have little relevance to the underlying case."

[12]      The Court's 11/19 Order regarding Plaintiffs' discovery obligations, specifically addresses Plaintiffs' communications with Non-Parties, and notes that such communications have "a potentially tenuous connection... to the damages inquiry at issue." 11/19 Order, p. 6, 7.

[13]      *See, e.g., Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608, 2010 WL 1327921, at * 10 (S.D.N.Y. Apr. 5, 2010) (granting motion to quash subpoena as overbroad and seeking insufficiently relevant information); *In re Biovail Corp. Secs. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) (finding non-party discovery unduly burdensome due to minimal relevance and excessive cost); *Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) ("'A subpoena that 'pursues material with little apparent or likely relevance to the subject matter'. . . is likely to be quashed as unreasonable even where the burden of compliance would not be onerous.'" (citation omitted)).

such facts, iMesh, a *non-party*, should not be directed to duplicate Plaintiffs' production or subject itself to discovery beyond that which the Court has determined Defendants are entitled from *Plaintiffs*.[14]

Indeed, the Federal Rules of Civil Procedure 26(b)(2)(C)(i) provides that a party is not entitled to discovery that is "unreasonably cumulative or **duplicative**, or can be **obtained from some other source** that is more convenient, **less burdensome**, or less expensive...." (emphasis supplied). Since Plaintiffs are under an obligation to comply with the Court's order and produce the very communications with iMesh that the Order also requires iMesh to produce, and Defendants have offered no basis for their fear that Plaintiffs may not produce such communications. In any event, iMesh should not be burdened by such extraneous document location, collection, relevance review, privilege review, and production – all for documents that are, at best, tenuously relevant and already being produced by Plaintiffs.

Requiring iMesh to produce documents that must necessarily originate from Plaintiffs is illogical and unnecessary. Magistrate Judge Freeman even conceded as to certain documents (license agreements and payment records) that Plaintiffs' production would be "likely duplicative" of any production from iMesh and the other licensees. There is no reason to believe that communications between iMesh and Plaintiffs would not be similarly "duplicative" and that Plaintiffs would not produce all such responsive communications.[15]

---

[14]     In addition, Magistrate Judge Freeman recognized the burden of producing internal communications, even for Plaintiffs, when ordering a "compromise" limiting Plaintiffs' production to certain custodians agreed upon by the parties. Even this limited production of internal communications is currently the subject of objections brought by Plaintiffs before the Court. (Dkt. 463).

[15]     Defendants offered no basis for their argument that "Licensees *might* produce some documents that were not produced by Plaintiffs because, *inter alia*, Plaintiff and the Licensees *could* have different email retention policies and/or follow a different review and production protocol" has no merit. Order at p. 3 (emphasis added). Thus, Defendants should not be allowed to engage in "unreasonably cumulative or duplicative" discovery. *Kingsway Fin. Servs.*, 2008 WL 4452134, at *4.

iMesh should not be burdened to review every single communication in its possession, custody and control had with any representative of Plaintiffs when Plaintiffs, parties to this action, are going through the same exercise.[16]  Such a review required to be fully compliant with the Order would entail the review of an estimated 30,000 communications and attachments. Summer Decl. ¶ 6.

In short, Defendants should be able to obtain all of the *relevant* discovery to which they are entitled, as determined by the Court, from Plaintiffs without any further production from iMesh.  Thus, the Order should be vacated, Defendants' motion to compel denied and the Subpoenas quashed.

### D.   IF THE ORDER IS NOT VACATED, IT SHOULD BE LIMITED AND DEFENDANTS SHOULD PAY iMESH'S COSTS, EXPENSES AND FEES

While the Order recites the rule that, when a district court compels production by a non-party, the court "must protect" that person from "significant expense resulting from compliance." Order, p. 6 (citing FRCP 45(c)(2)(B)(ii)), Magistrate Judge Freeman did not actually apply this rule.  Instead, Judge Freeman held that because she modified the scope of the Subpoenas, she had reduced the burden on iMesh.  However, as established above, the burden remains insurmountable.

As stated in the iMesh Response to Subpoenas, and in iMesh's December 21, 2010 letter to Judge Freeman (at p. 9, n.19), if the Order is sustained in any respect and iMesh is directed to produce, yet again, in this action, Defendants should be directed to pay iMesh's actual and anticipated costs, including, without limitation, iMesh's discovery vendor costs and reasonable legal fees incurred in the collection, processing, review and production of documents.  It is this

---

[16]     *See* October 15, 2010 Order (Dkt. 329) ("10/15 Order"); *see also* Order of the Court dated November 2, 2010 (Dkt. 339) ("11/2 Order") (narrowing scope of 10/15 Order); 11/19 Order (holding in abeyance portions of discovery directed in the 10/15 Order).

2190-031 Doc# 52                                          12

type of expense that courts are *required* to shift away from innocent non-parties. *See In re Law Firms of McCourts and McGrigor Donald*, No, M 19-96 (JSM), 2001 WL 345233, at *1 (S.D.N.Y. Apr. 9, 2001) ("The discretion which the district court had to alleviate non-party costs under the old Rule 45(c)(2)(b) becomes mandatory under the 1991 amendments."); *see also Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 321 (S.D.N.Y. 2003).

In determining the costs to reimburse non-parties for compliance with discovery orders, courts consider whether the non-party actually has an interest in the case, whether the non-party can more readily bear the costs than the requesting party, and whether the litigation is of public importance. *See Dow Chemical Co. v. Reinhard*, No. M8-85 (HB), 2008 WL 1968302, at *1-2 (S.D.N.Y. Apr. 29, 2008); *McCourts and McGrigor Donald*, 2001 WL 345233 at *1; *In re First American Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998).

Here, iMesh is the "quintessential, innocent, disinterested bystander," lacking any material interest in the litigation. *See McCourts and McGrigor Donald*, 2001 WL 345233 at *2. Further, even if this case raised any issues of public importance, those issues were resolved upon determination of the merits and are irrelevant to the determination of damages that Defendants may ultimately be ordered to pay. The costs of complying with a directive as broad as the Order could be staggering if they were routinely imposed upon non-parties.

Indeed, the burden on iMesh to comply with the Order would be monumental. As stated above, as a preliminary matter, iMesh's initial vendor costs associated with collecting documents responsive to their search terms in the relevant time period (without the email account of one of the three primary custodians) exceed $8,600 and, so far, for the review of just 5% of the anticipated total emails and related attachments has resulted in the accrual of over $20,000 in

legal fees. Summer Decl. ¶¶ 5 – 8.[17]  It is patently unjust for iMesh to be forced to incur such costs in connection with a battle in which iMesh has not stake or say.

**CONCLUSION**

For all the reasons set forth above, iMesh respectfully requests that the Court vacate Magistrate Judge Freeman's Order, sustain iMesh's objections to the Subpoenas, deny Defendants' motion to compel production and quash the Subpoenas, or in the alternative, order Defendants to pay iMesh's costs and fees associated with compliance with the Order, and grant iMesh such other and further relief as the Court deems just and proper.

Dated: New York, New York
      February 16, 2011

MEISTER SEELIG & FEIN LLP


/s/ Jeffrey P. Weingart_____
By:    Jeffrey P. Weingart
       Jeffrey A. Kimmel
       Howard Davis
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3500
*Attorneys for non-parties*
*iMesh, Inc. and MusicLab, LLC*

---

[17]    If any portion of the Order is to stand, the Court should make an award of provisional costs to be set once production is made. *See* FRCP 45(c)(2)(B) advisory committee's note ("The court is not required to fix the costs in advance of production... In some instances, it may be preferable to leave uncertain costs to be determined after the materials have been produced, provided that the risk of uncertainty is fully disclosed to the discovery party."); *see also In re Letters Rogatory*, 144 F.R.D. 272, 278-79 (Ed. Pa. 1992).

2190-031 Doc# 52                      14