Jeffrey A. Kimmel
Jeffrey P. Weingart
Howard Davis
MEISTER SEELIG & FEIN LLP
140 East 45th Street, 19th Floor
New York, NY  10017
(212) 655-3500
*Attorneys for non-parties iMesh, Inc. and MusicLab, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| ARISTA RECORDS LLC, et al., | Case Number: 06 CIV 05936 (KMW/DCF) |
| Plaintiffs, | **DECLARATION OF** <br> **ROBERT SUMMER** |
| -against- | |
| LIME GROUP LLC, et al., | |
| Defendants. | |

------------------------------------------------------------X

ROBERT SUMMER, under the penalties of perjury, declares:

1.   I am the Executive Chairman of iMesh, Inc. and MusicLab, LLC (iMesh, Inc.'s wholly owned subsidiary) (collectively referred to herein as "iMesh").  The statements made in this Declaration are based on my personal knowledge and/or my review of books and records of iMesh.

1.   I submit this Declaration in support of iMesh's objections to the order of Magistrate Judge Debra Freeman dated January 31, 2011 (the "Order").

2.   iMesh is a relatively small company, employing approximately 45 individuals.  The licensing of music from Plaintiffs is the core of iMesh's business which, among other things, revolves around the development and marketing of an authorized music download service.

3. The three primary employees of iMesh, Talmon Marco, Ofer Shabtai and I, communicate primarily by email. This is the case because I reside in the United States, Mr. Marco currently resides in the United Kingdom and Mr. Shabtai resides in Israel. Only Mr. Shabtai operates from a central office while Mr. Marco and I work from remote locations. Email is our preferred method of communicating with one another and, in matters of licensing, with our attorneys and Plaintiffs.

4. I understand that on January 31, 2011, Magistrate Judge Debra Freeman issued the Order, which, among other things, directs iMesh to produce "… any communications, both internal and with Plaintiffs, relating to their licenses with Plaintiffs and/or relating to LimeWire, to the extent those communications reflect information regarding Plaintiffs' conduct, positions, or views about online licensing or about LimeWire," from April 9, 2008 (the date of iMesh's prior document production in this action) to the present.

5. In contemplation of attempting to comply with the Court's Order, iMesh applied certain search terms to Mr. Shabtai's and my emails for the period of April 9, 2008 to the present.[1] In addition to the search terms delineated in the Order of the Court dated November 23, 2010 (the "Vevo Order"), iMesh included the following additional search terms with the intention of complying in good faith with the Court's Order: "Limewire," "Lime," "Mark Gorton," "rights," "amendment," "UMG," "Universal," "BMG," "Sony," "EMI," "Warner," "Musicnet," "Medianet," "subscription," and "RIAA."[2]

6. To date, using the above search terms, without Mr. Marco's emails included, we have segregated nearly 25,000 unique emails and attachments from April 9, 2008 to the present,

---

[1] In selecting the search terms, iMesh used its reasonable judgment as well as the terms delineated in the order of the court dated November 23, 2010 (the "Vevo Order").

[2] As stated in footnote 3 of the Order, iMesh, in its reasonable judgment <u>added</u> search terms to the Vevo Order search terms with the intention of complying fully with the Order.

all of which contain at least one of the above search terms. Once we run a search of Mr. Marco's emails, we expect this number to exceed 30,000.

7.  iMesh's vendor costs to date, just as iMesh begins its process of collection, have exceeded $8,600. This includes the expense incurred to have the results of the searches containing the above terms "de-duped" to eliminate any digitally identical duplicate emails between the multiple email accounts.

8.  I understand from my attorneys that while they have only just begun to review the emails and attachments retrieved for the specified time period containing at least one of the search terms, the legal fees (in addition to the vendor costs above) are already quite substantial, currently totaling over $20,000, plus disbursements. These fees have been incurred after a review for privilege and relevance of only about 5% of emails containing the search terms.

9.  Having begun the process of attemping to comply in good faith with the Order we have come to realize just how burdensome compliance will likely become. Each of iMesh's communications must be individually reviewed for privilege and to eliminate unresponsive communications containing sensitive data. This is simply too much of a burden for a small company such as iMesh to shoulder.

I declare under the penalty of perjury that the forgoing is true and correct.

Executed: February 16, 2011

*[signature]*
ROBERT SUMMER