UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ARISTA RECORDS LLC; ATLANTIC
RECORDING CORPORATION; ARISTA
MUSIC, fka BMG MUSIC; CAPITOL
RECORDS LLC fka CAPITOL RECORDS,
INC.; ELEKTRA ENTERTAINMENT
GROUP INC.; INTERSCOPE RECORDS;
LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY
RECORDS LLC; SONY MUSIC
ENTERTAINMENT, fka SONY BMG
MUSIC ENTERTAINMENT; UMG
RECORDINGS, INC.; VIRGIN RECORDS
AMERICA, INC.; and WARNER BROS.
RECORDS INC.,

        Plaintiffs,

        v.

LIME WIRE LLC; LIME GROUP LLC;
MARK GORTON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

        Defendants.
------------------------------------------------------------X

06 Civ. 05936 (KMW)(DCF)
ECF CASE

**MYSPACE, INC.'S OBJECTIONS TO MAGISTRATE JUDGE FREEMAN'S
ORDER COMPELLING THE PRODUCTION OF
INTERNAL AND EXTERNAL COMMUNICATIONS**

MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500 (telephone)
(212) 262-1910 (facsimile)

*Attorneys for MySpace, Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................... 1

PROCEDURAL BACKGROUND.................................................................................................. 3

ARGUMENT .................................................................................................................................. 5

    I.     Standard of Review.................................................................................................. 5

    II.    MySpace's Internal Communications Are at Best Barely Relevant and Extremely Burdensome to Produce ........................................................................................... 5

    III.   The External Communications Between Plaintiffs and MySpace Are of "Tenuous" Relevance At Best and Do Not Justify Largely-Duplicative and Burdensome Production ............................................................................................ 9

CONCLUSION............................................................................................................................. 12

CERTIFICATE OF SERVICE ..................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bryant v. Media Rights Prods., Inc.*,
  603 F.3d 135 (2d Cir. 2010) .................................................................................................. 5

*Collens v. City of New York*,
  222 F.R.D. 249 (S.D.N.Y. 2004) ........................................................................................... 5

*Fears v. Wilhelmina Model Agency, Inc.*,
  No. 02 Civ. 4911 (HB) (HBP), 2004 U.S. Dist. LEXIS 5575 (S.D.N.Y. Apr. 1, 2004) ........... 6

*Harris v. Wells*,
  Nos. B-89-391(WWE), B-89-482(WWE), 1990 U.S. Dist. LEXIS 13215 (D. Conn.
  Sept. 5, 1990) ...................................................................................................................... 10

*Mattel Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) ................................................................................................. 7

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010) .................................................................................................... 5

*Nidec Corp. v. Victor Co. of Japan*,
  249 F.R.D. 575 (N.D. Cal. 2007) ........................................................................................ 10

*Travelers Indem. Co. v. Metro. Life Ins. Co.*,
  228 F.R.D. 111 (D. Conn. 2005) ........................................................................................... 6

*Viacom International, Inc. v. YouTube, Inc.*,
  No. C 08-80129 SI, 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) .................................... 10

*Visto Corp. v. Smarter Info. Sys., Ltd.*,
  Nos. 06-80339 MISC RMW (RS), 06-80352 MISC RMW (RS), 2007 WL 218771
  (N.D. Cal. Jan. 29, 2007) .................................................................................................. 6, 7

*World Wrestling Federation Entertainment, Inc. v. William Morris Agency, Inc.*,
  204 F.R.D. 263 (S.D.N.Y. 2001) .......................................................................................... 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72(a) ..................................................................................................................... 5

MySpace, Inc. ("MySpace") respectfully submits its Objections to Magistrate Judge Freeman's Order, dated January 31, 2011, compelling production of its external and internal communications concerning online licensing and LimeWire ("January 31 Order").[1]

## PRELIMINARY STATEMENT

This case presents a paradigmatic example of abusive discovery practice, and the January 31 Order directing MySpace to collect, process, review and produce largely-duplicative and irrelevant documents sets a dangerous precedent for what constitutes reasonable discovery practice against disinterested non-parties. Indeed, it is difficult to imagine broader, more unreasonable requests being enforced against a non-party with no interest whatsoever in the litigation.

Following defeat at summary judgment in this massive copyright litigation, Defendants began an industry-wide campaign, through the use of non-party subpoenas, to obtain tenuously relevant and tremendously burdensome discovery. Defendants seek to shoehorn their discovery efforts into the damages analysis – the only analysis remaining in the case – by asserting that the discovery sought might reflect the Plaintiffs' "attitude and conduct" regarding licensing and LimeWire, which in turn is one of a few factors that on a few occasions courts have considered in the determination of a damages award.

Addressing objections from numerous non-parties to this discovery pursuit, the January 31 Order struck a compromise that ultimately is no compromise at all. It states that MySpace need not produce documents that had already been produced and were no longer at issue – namely, payment records and license agreements with Plaintiffs. It then directs MySpace to

---

[1] The January 31 Order is attached as Exhibit 1 to the Declaration of Matthew D. Ingber. It was served on MySpace via email from Defendants on February 2, 2011.

produce external communications with thirteen separate plaintiffs, and internal MySpace communications reflecting Plaintiffs' views on both licensing and LimeWire.

The January 31 Order is contrary to law and should be overruled for at least the following dispositive reasons:

- In its November 19, 2010 Order, this Court ruled that external communications between Plaintiffs and non-parties (including MySpace) had only "tenuous" relevance to the case – and that was in the context of a motion to compel *Plaintiffs'* production.

- The external communications between MySpace and thirteen separate Plaintiffs have now been produced by Plaintiffs, and there was no showing that the production of those external communications was deficient. Any concerns about gaps in Plaintiffs' production of MySpace communications is completely speculative.

- The production of internal communications discussing LimeWire was held in abeyance by this Court out of concern that the relevance was too vague, and the burden too substantial, to require their production by Plaintiffs. Before any production could be compelled, the Court required a showing not just that the documents were relevant, but also that further discovery was "necessary." Whether the *Plaintiffs'* communications are necessary, or even relevant, is a hotly disputed point; Defendants come nowhere near satisfying their burden in the case of MySpace's communications.

- The best source of information about Plaintiffs' views on licensing is Plaintiffs themselves, but it appears that Defendants have not sought an order compelling production of those documents. And if Defendants have, in fact, obtained this information through Plaintiffs' documents or depositions, there is no legal basis for compelling production from MySpace.

- The burden of collecting, processing, searching, reviewing and producing documents reflecting communications involving thirteen separate plaintiffs concerning negotiations that spanned several months and involved teams of employees, is on its face so obvious and substantial, and the relevance of the documents so minimal, that any proper and considered weighing requires denial of Defendants' motion to compel.

Whatever miniscule relevance the requested documents may have, the discovery sideshow that Defendants have created has already resulted in a massive expenditure of effort from parties and courts around the country. If the Court allows the January 31 Order to stand,

that burden will be multiplied while providing little or no assistance to the trier of fact in determining the appropriate measure of damages.

## PROCEDURAL BACKGROUND

In late September, 2010, Defendants served subpoenas on a number of non-party licensees of Plaintiffs' copyrights, including MySpace, calling for an extremely broad production of documents, plus a personal appearance of a witness, on less than ten days' notice. MySpace objected to the subpoenas on several grounds, including that they sought documents that were more readily obtainable from Plaintiffs and unduly burdensome for MySpace to produce. MySpace and Defendants attempted to reach an agreement concerning the appropriate scope of the subpoenas, but the negotiations failed. *See* Ingber Decl., Ex. 2 (Email from D. Kozusko to J. Gottlieb, Dec. 16, 2010).

In late December 2010, Defendants moved to compel the production of documents in response to the subpoena.[2] The motion to compel sought three principal categories of documents: (1) licenses or agreements between MySpace and any Plaintiffs "concerning the use, publication, display, or broadcast of any material" to which plaintiff holds the copyright; (2) documents reflecting amounts paid by MySpace to any Plaintiff pursuant to those agreements or licenses; and (3) external and internal communications regarding those licenses or regarding LimeWire. *See* Ingber Decl., Ex. 3 (Joint Stipulation, Jan. 7, 2011). MySpace completed production of the licenses and financial data described in categories (1) and (2), such that the

---

[2] Defendants' motion to compel production from MySpace was filed as a Joint Stipulation, as required by the local rules in the Central District of California, where the MySpace subpoena was issued. *See id.*, Ex. 3 (Joint Stipulation, Jan. 7, 2011). On January 19, 2011, Magistrate Judge Patrick Walsh transferred the pending motion to compel to Judge Freeman. *See id.*, Ex. 4 (Order, Jan. 19, 2011).

only remaining issue was the production of MySpace's external and internal communications. *See id.*, Ex. 5 (Gottlieb Decl., Jan. 7, 2011).

MySpace opposed the Motion on multiple grounds, including that: (i) the communications between MySpace and Plaintiffs are both duplicative of communications already produced by Plaintiffs and overly burdensome to produce in relation to their "tenuous" relevance; and (ii) MySpace's internal communications discussing Plaintiffs' views concerning licensing and LimeWire are irrelevant, and/or extremely burdensome to produce, and impose a burden on MySpace that is far greater than the burden imposed on Plaintiffs themselves. These objections echoed the responses made by several other non-party licensees to Defendants' motions to compel, including that the documents requested were more appropriately sought from Plaintiffs and duplicative of what Plaintiffs had produced.

In the January 31 Order, Magistrate Judge Freeman addressed Defendants' four pending motions to compel production from non-party licensees, including the one pending against MySpace. *See id.*, Ex. 1 (Jan. 31 Order). Judge Freeman ruled that production of external communications relating to the license agreements and/or LimeWire *may* contain additional relevant material beyond that produced by Plaintiffs, outweighing any potential burden to MySpace, and that internal communications would be relevant *to the extent* that they may reflect Plaintiffs' attitude and conduct towards online licensing and/or towards Defendants. *Id.* at 4-5.[3] Judge Freeman directed the non-party licensees (including MySpace) to produce internal and external communications dating back to April 19, 2008, "to the extent such communications

---

[3]     Although Judge Freeman noted that MySpace had submitted a declaration specifying the extent of the burden collection and production would impose upon it, the Order reflects no balancing between the probative value of the documents to damages issues and the burden on third parties required to obtain them. *See id.* at 4.

reflect information regarding Plaintiffs' conduct, Plaintiffs' stated positions, or Plaintiffs' views regarding online licensing arrangements in general, or regarding LimeWire in particular." *Id.*

## ARGUMENT

The January 31 Order effectively turns fundamental principles of third party discovery upside down. Instead of properly balancing the actual relevance of the communications at issue against the actual burdens of searching for and producing any such communications that might exist, the Order appears to haphazardly "split the baby," creating an unworkable result with no support in the law. The communications ordered to be produced are so minimally relevant to the case, so duplicative of what is already available from or more appropriately sought from Plaintiffs, and so onerous to search for and produce, that the Order compelling their production is wrong as a matter of law and should be overruled.

### I.  Standard of Review

When faced with objections to non-dispositive orders issued by the magistrate judge, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). An "order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Collens v. City of New York*, 222 F.R.D. 249, 251 (S.D.N.Y. 2004) (citation and internal quotation marks omitted). While a magistrate judge has broad discretion to resolve discovery disputes, it is necessarily an abuse of discretion to rely on an erroneous view of the law. *Mullins v. City of New York*, 626 F.3d 47, 51 (2d Cir. 2010).

### II.  MySpace's Internal Communications Are at Best Barely Relevant and Extremely Burdensome to Produce.

Defendants seek production by MySpace of all of its internal communications concerning license agreements with Plaintiffs and/or LimeWire. Under Defendants' tortured theory of relevance, these non-party internal documents might provide evidence of Plaintiffs' "conduct and

attitude" that is relevant to determining a statutory damages award. *See Bryant v. Media Rights Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). Referencing the obvious flaw in this theory – that MySpace's internal communications will reflect only MySpace's own attitude and conduct (which are wholly irrelevant to this case) – Judge Freeman nevertheless ruled that "although the *Licensees'* attitude and conduct towards Defendants are not relevant, such communications may reflect *Plaintiffs'* attitude and conduct towards online licensing and/or towards Defendants, and would be relevant to that extent." Ingber Decl., Ex. 1 at 5 (emphasis in original).

As a general rule, discovery is not necessary where the "burden or expense of the proposed discovery outweighs its likely benefit." *World Wrestling Federation Entertainment, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 (S.D.N.Y. 2001) (quoting Fed. R. Civ. P. 26(b)(2)) (internal quotation marks and citation omitted) (concluding that discovery was properly disallowed, where the "probative value is so small" that it was outweighed by the burden on the producing party). When balancing the relevance of discovery requests against the burden of production, "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation." *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005); *see also Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (HB) (HBP), 2004 U.S. Dist. LEXIS 5575, at *2 (S.D.N.Y. Apr. 1, 2004) ("[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] non party.") With respect to MySpace's internal communications, the Order does not even address this critical balancing analysis; in any event, it strikes the wrong balance.

According to the Order, MySpace's internal communications would be relevant, theoretically, if and only to the extent that MySpace's employees were actually discussing

6

*Plaintiffs'* attitude and conduct towards online licensing and LimeWire.[4] But assuming such theoretically relevant documents actually exist – and it is rank speculation that they do – they would not contain any relevant information that is not more reliably conveyed by Plaintiffs' own internal documents and communications. Without question, the best source of information concerning Plaintiffs' conduct and attitude about anything, including its "conduct, stated positions, or views regarding online licensing in general" (Order at 5), is the Plaintiffs themselves. But we are not aware of any order compelling Plaintiffs to produce all internal communications regarding licensing. Thus, the January 31 Order imposes a greater burden on MySpace than on the Plaintiffs themselves with regard to these internal communications – and that is fundamentally wrong and contrary to law.[5]

With respect to internal communications about LimeWire, even this Court was so unconvinced of their relevance, and sensitive to the burden of production, that it held in abeyance any order that Plaintiffs produce these documents. *See* Ingber Decl., Ex. 6 (Order, Nov. 19, 2010). In fact, before imposing this burden on actual parties to the case, the Court held that Defendants must first make a showing, based on other documents, that the internal

---

[4] It is beyond dispute that MySpace's own attitude and conduct are not relevant to any issue in this case. *See Visto Corp. v. Smarter Info. Sys., Ltd.*, Nos. 06-80339 MISC RMW (RS), 06-80352 MISC RMW (RS), 2007 WL 218771, at *4 (N.D. Cal. Jan. 29, 2007) (denying motion to compel a third party venture capital firm's internal documents because documents reflected firm's own opinions and analysis about the financial data relevant to reasonable royalty damages); *see also Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (deeming it improper for party to seek information from non-party about the market for photographer's works at issue in the underlying action, because "Rule 45(c)(3)(B)(ii) was intended to provide 'appropriate protection for the intellectual property of non-party witness[es] . . . . A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts.") (citing Fed. R. Civ. P. 45, 1991 amend. note).

[5] To the extent Plaintiffs did, in fact, produce internal communications regarding licensing, it is wholly unnecessary for MySpace to produce its own internal communications reflecting Plaintiffs' views on licensing, especially given the significant burden of production and minimal relevance of the documents.

7

communications were likely to yield relevant evidence and that their production was "*necessary.*" *Id.* at 7 (emphasis added). Even if Defendants could meet this elevated burden with respect to discovery from *Plaintiffs* – and Plaintiffs have briefed this Court on the reasons why that burden cannot be met[6] – they come nowhere near meeting that burden with respect to non-party MySpace. To the extent Plaintiffs are required to produce their own internal communications, Defendants will have access to the most obvious source of documents reflecting Plaintiffs' conduct, stated positions or views toward LimeWire. *See id.*, Ex. 8 (Order, Jan. 18, 2011). Any theoretically relevant internal MySpace documents reflecting Plaintiffs' attitude and conduct towards LimeWire are, at best, less relevant and less reliable versions of what Plaintiffs may well have to produce. Imposing the burden of production on MySpace extends non-party discovery well beyond the bounds of what is reasonable.

Finally, there is no obvious reason why MySpace has been saddled with this request. Defendants' apparent logic – that Plaintiffs and MySpace communicated during the period of time covered by the subpoenas, and therefore Plaintiffs must have expressed views about LimeWire, a third party having no connection to MySpace – could apply to any non-party with whom Plaintiffs communicated about any subject during the same time period. There is no logical rationale for targeting MySpace as a messenger of Plaintiffs' views about LimeWire even if those views were relevant to the damages issues before this Court.

Even if these internal communications were probative of any issue, the burden of collecting, searching, locating, reviewing and producing MySpace's internal communications would be massive. Indeed, it is difficult to conceive of how MySpace would even go about attempting to locate such documents. A needle-in-haystack hunt for communications from one

---

[6]   *See* Ingber Decl., Ex. 7 (Plaintiffs' Objections to Magistrate Judge Freeman's Order Compelling the Production of Plaintiffs' Internal Communications "Referring to LimeWire," Feb. 7, 2011).

8

MySpace employee to another that reflect not those employees' attitudes and views, but rather the attitudes and conduct of the Plaintiffs, does not lend itself to electronic search criteria. At a minimum, such a hunt would require a painstaking and time-consuming manual review by an attorney to analyze any communication that refers to any one of the thirteen plaintiffs – an effort that may be for nothing, for there is no reason to believe that any relevant documents actually exist. In short, because the burden of searching for, reviewing and producing these few theoretically relevant documents – indeed, the burden of determining whether any even exist – is so inordinately great, compelled production is not proper.

### III. The External Communications Between Plaintiffs and MySpace Are of "Tenuous" Relevance At Best and Do Not Justify Largely-Duplicative and Burdensome Production.

The January 31 Order directs MySpace to produce communications between itself and all of the Plaintiffs relating to at least thirteen separate agreements – each of which is highly complex and was negotiated over long periods of time among teams of employees from MySpace and Plaintiff – on the grounds that such production "*may* contain additional relevant material, beyond that produced by Plaintiffs," and that this hypothetical additional relevant material "outweigh[ed] the potential burden to the Licensees." Ingber Decl., Ex. 1 at 4 (emphasis added). This was an improper balance between the relevance and burden of this production, and is unsupported by law.

As this Court has previously observed, the relevance of the communications at issue – between Plaintiffs and non-party licensees ("external communications") concerning the license negotiations and/or LimeWire – was "potentially tenuous" to the damages inquiry in this case even when sought from the Plaintiffs. *See id.*, Ex. 6 (Opinion and Order, Nov. 19, 2010). Nevertheless, these communications were sought and, consistent with the Court's order, *obtained* from the Plaintiffs. *See id.*, Ex. 9 (Email from M. LeMoine to M. Ingber, Jan. 5, 2011). If

9

Defendants believe that certain of these communications were not produced by Plaintiffs, they were free to ask the Court to compel further production. There is no need to obtain the identical, barely-relevant documents from MySpace. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *Harris v. Wells*, Nos. B-89-391(WWE), B-89-482(WWE), 1990 U.S. Dist. LEXIS 13215, at *12-13 (D. Conn. Sept. 5, 1990) (granting motion for protective order staying discovery from non-parties where requests were duplicative of requests served on parties and substantial portion of such discovery would be unnecessary once opposing party produced documents).[7]

Indeed, that is precisely what another District Court recently held in denying Defendants' identical motion to compel against non-party Amazon.com, Inc.:

> Documents requested from Amazon regarding agreements or communications with Plaintiffs are also obtainable from Plaintiffs directly. Indeed, Plaintiffs have already provided or been ordered to provide to Defendants much of the information requested from Amazon. Because information contained in the licensing agreements and associated communications are available from Plaintiffs directly, the requests to Amazon are duplicative.

Ingber Decl., Ex. 10 (Order on Motion to Compel, Feb. 9, 2011).

Before Judge Freeman, Defendants argued that they needed duplicative production of the external communications because Plaintiffs' and MySpace's retention and retrieval processes were likely different, and because the communications were not a well-defined set. *Id.*, Ex. 11 (Letter from M. Eaton to Hon. Debra C. Freeman, Jan. 14, 2011). But Defendants could have asked the Plaintiffs about their retention and retrieval processes to try to understand where any

---

[7] *Viacom International, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 WL 3876142, *3 (N.D. Cal. Aug. 18, 2008), on which Judge Freeman relied, is not controlling here. In *Viacom*, the court found specific reason to believe that the documents sought from non-parties were *not in the possession* of the defendant, including the defendant's poor early record retention and incomplete files. *Id.* Thus the production sought from non-parties in *Viacom* was not duplicative at all; rather, the documents sought were not obtainable from the parties to the case.

10

gaps might be based on flaws in those processes, and asked Plaintiffs to identify the principal parties with whom they communicated about licensing and sought production regarding those specific parties. And if Defendants wished to avoid gaps in productions, they could have asked Plaintiffs for documents from the entire date range in which relevant communications took place. Instead, Defendants' request to MySpace covers a *broader* date range than their request to Plaintiffs. *Id.* MySpace should not now be subject to burdensome discovery because of Defendants' own strategic decision not to request those documents from the actual parties to the litigation. None of this is to say, of course, that undertaking this process would have made the documents sought from MySpace any more relevant. Attempting to limit the scope of what was sought, however, would have significantly mitigated the burden on third parties and made the balance against the "tenuous" relevance somewhat closer.

But even if there were gaps in Plaintiffs' production of these communications, the "potentially tenuous" relevance of these documents cannot outweigh the cost and burden to MySpace in producing them. Capture and review of electronic documents is an involved process, requiring imaging and uploading of the repositories of the stored information, followed by the processing of that information into searchable format. Indeed, based on initial estimates, merely to collect the electronic data requires about five hours per custodian (depending on the volume). This is all before, and not including, the necessary and extensive attorney review of the documents collected. *See id.*, Ex. 5 (Gottlieb Decl., Jan. 7, 2011).

MySpace's concerns are not hypothetical. Immediately following the entry of Judge Freeman's Order, at MySpace's request, Defendants' counsel proposed as "a starting point" a list of 88 MySpace custodians who may have been involved in license negotiations with Plaintiffs. *See id.*, Ex. 12 (Email from D. Kozusko to J. Gottlieb, Feb. 4, 2011). Based on the above-described process for capturing, searching, and reviewing potentially – and, at best,

11

minimally – relevant documents, to conduct this process for even *a fraction* of these proposed custodians would take many weeks of full-time resources at substantial cost.

Against this burden, Defendants' need to obtain these irrelevant (or barely relevant) non-party documents is simply no match. *See id.*, Ex. 10 (Order on Motion to Compel, Feb. 9, 2011) (holding that balanced against the burden of producing "essentially all documents or communications concerning dealings between Amazon and the thirteen Plaintiffs . . . Defendants' need for duplicative or irrelevant documents from Amazon weighs very little.") Therefore, the Order compelling Licensees' production of these documents should be overruled.[8]

## CONCLUSION

For all of the foregoing reasons, MySpace respectfully requests that the Court overrule that portion of the January 31 Order granting Defendants' motion to compel.

Dated:  February 18, 2011

> Respectfully submitted,
>
> MAYER BROWN LLP
>
> _____
> Matthew D. Ingber
> Allison K. Levine
>
> 1675 Broadway
> New York, New York 10019
> (212) 506-2500
>
> *Attorneys for MySpace, Inc.*

---

[8] It is also notable that in a January 18 Order, Judge Freeman refused to order production of licensee communications from additional Plaintiff custodians, and additional communications between Plaintiffs and VEVO. *See id.*, Ex. 8 (Order, January 18, 2011). It is inconceivable that Plaintiffs should be spared the burden of producing these documents but that MySpace should be put to the onerous task of producing largely duplicative documents with "tenuous" relevance to the case. This result is contrary to both law and common sense.

## CERTIFICATE OF SERVICE

I, Allison K. Levine, an attorney, hereby certify that on this 18th day of February, 2011, I caused a true and correct copy of MySpace, Inc.'s Objections to Magistrate Judge Freeman's Order Compelling the Production of Internal and External Communications to be served via operation of the ECF system and email on the following counsel of record:

Mary Eaton
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
meaton@willkie.com

*Attorneys for Defendants*
*Lime Wire LLC, Lime Group LLC, Mark Gorton,*
*and M.J.G. Lime Wire Family Partnership*

Glenn D. Pomerantz
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, California 90071
glenn.pomerantz@mto.com

*Attorneys for Plaintiffs Arista Records LLC, et al.*

_____
Allison K. Levine