UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

ARISTA RECORDS LLC; ATLANTIC
RECORDING CORPORATION; ARISTA
MUSIC, fka BMG MUSIC; CAPITOL
RECORDS LLC fka CAPITOL RECORDS,
INC.; ELEKTRA ENTERTAINMENT
GROUP INC.; INTERSCOPE RECORDS;
LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY
RECORDS LLC; SONY MUSIC
ENTERTAINMENT, fka SONY BMG
MUSIC ENTERTAINMENT; UMG
RECORDINGS, INC.; VIRGIN RECORDS
AMERICA, INC.; and WARNER BROS.
RECORDS INC.,

                  Plaintiffs,

                  v.

LIME WIRE LLC; LIME GROUP LLC;
MARK GORTON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                  Defendants.

---------------------------------------------------------------X

06 Civ. 05936 (KMW)(DCF)
ECF CASE

## GOOGLE INC.'s OBJECTIONS TO MAGISTRATE JUDGE FREEMAN'S ORDER COMPELLING THE PRODUCTION OF <u>INTERNAL AND EXTERNAL COMMUNICATIONS</u>

MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500 (telephone)
(212) 262-1910 (facsimile)

*Attorneys for Non-Party Google Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL BACKGROUND.......................................................................................... 3

ARGUMENT .............................................................................................................................. 5

I.      Standard of Review ........................................................................................................ 5

II.     Google's Internal Communications Are at Best Barely Relevant and Extremely
        Burdensome to Produce .......................................................................................... 6

III.    The External Communications Between Plaintiffs and Google Are of "Tenuous"
        Relevance At Best and Do Not Justify Largely-Duplicative and Burdensome
        Production ...................................................................................................................... 9

IV.     If the Court Holds That Production Is Warranted, Defendants Must Bear At Least
        Some of the Significant Costs of Compelled Production ................................. 13

CONCLUSION.......................................................................................................................... 15

CERTIFICATE OF SERVICE .............................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bryant v. Media Rights Prods., Inc.*,
   603 F.3d 135 (2d Cir. 2010)........................................................................................6

*Collens v. City of New York*,
   222 F.R.D. 249 (S.D.N.Y. 2004) ...............................................................................5

*Dow Chemical Co. v. Reinhard*,
   No. M8-85 (HB), 2008 WL 1968302 (S.D.N.Y. Apr. 29, 2008)............................14

*Fears v. Wilhelmina Model Agency, Inc.*,
   No. 02 Civ. 4911 (HB) (HBP), 2004 U.S. Dist. LEXIS 5575 (S.D.N.Y. Apr. 1, 2004) ...........6

*Harris v. Wells*,
   Nos. B-89-391(WWE), B-89-482(WWE), 1990 U.S. Dist. LEXIS 13215 (D. Conn.
   Sept. 5, 1990) ..........................................................................................................10

*In re First American Corp.*,
   184 F.R.D. 234 (S.D.N.Y. 1998) .............................................................................14

*In re Law Firms of McCourts and McGrigor Donald*
   No. M. 19-96, 2001 WL 345233 (S.D.N.Y. Apr. 9, 2001).....................................14

*In re Letters Rogatory*,
   144 F.R.D. 272 (E.D. Pa. 1992)...............................................................................15

*Mattel Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) .....................................................................................7

*Mullins v. City of New York*,
   626 F.3d 47 (2d Cir. 2010)........................................................................................6

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007)............................................................................10

*Travelers Indem. Co. v. Metro. Life Ins. Co.*,
   228 F.R.D. 111 (D. Conn. 2005)................................................................................6

*U.S. v. Int'l Bus. Mach. Corp.*,
   62 F.R.D. 526 (S.D.N.Y. 1974) ..............................................................................14

*Viacom International, Inc. v. YouTube, Inc.*,
   No. C 08-80129 SI, 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008)........................10

*Visto Corp. v. Smarter Info. Sys., Ltd.*,
   Nos. 06-80339 MISC RMW (RS), 06-80352 MISC RMW (RS), 2007 WL 218771
   (N.D. Cal. Jan. 29, 2007) ............................................................................................................7

*World Wrestling Federation Entertainment, Inc. v. William Morris Agency, Inc.*,
   204 F.R.D. 263 (S.D.N.Y. 2001) ..............................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72(a) .......................................................................................................................5

Google Inc. ("Google") respectfully submits its Objections to Magistrate Judge Freeman's Order, dated January 31, 2011, compelling production of external and internal communications concerning online licensing and LimeWire ("January 31 Order").[1]

## PRELIMINARY STATEMENT

This case presents a paradigmatic example of abusive discovery practice, and the January 31 Order directing Google to collect, process, review and produce largely-duplicative and irrelevant documents sets a dangerous precedent for what constitutes reasonable discovery practice against disinterested non-parties.  Indeed, it is difficult to imagine broader, more unreasonable requests being enforced against a non-party with no interest whatsoever in the litigation.

Following defeat at summary judgment in this massive copyright litigation, Defendants began an industry-wide campaign, through the use of non-party subpoenas, to obtain tenuously relevant and tremendously burdensome discovery.  Defendants seek to shoehorn their discovery efforts into the damages analysis – the only analysis remaining in the case – by asserting that the discovery sought might reflect the Plaintiffs' "attitude and conduct" regarding licensing and LimeWire, which in turn is one of a few factors that on a few occasions courts have considered in the determination of a damages award.

Addressing objections from numerous non-parties to this discovery pursuit, the January 31 Order struck a compromise that ultimately is no compromise at all.  It states that Google need not produce documents that had already been produced and were no longer at issue – namely, payment records and license agreements with Plaintiffs.  It then directs Google to produce external communications with thirteen separate plaintiffs, and internal Google communications

---

[1]     The January 31 Order is attached as Exhibit 1 to the Declaration of Matthew D. Ingber. It was served on Google via email from Defendants on February 2, 2011.

reflecting Plaintiffs' views on both licensing and LimeWire. And it denies apportionment of costs to Google.

The January 31 Order is contrary to law and should be overruled for at least the following dispositive reasons:

- In its November 19, 2010 Order, this Court ruled that external communications between Plaintiffs and non-parties (including Google) had only "tenuous" relevance to the case – and that was in the context of a motion to compel *Plaintiffs'* production.

- The external communications between Google and thirteen separate Plaintiffs have now been produced by Plaintiffs, and there was no showing that the production of those external communications was deficient. Any concerns about gaps in Plaintiffs' production of Google communications is completely speculative.

- The production of internal communications discussing LimeWire was held in abeyance by this Court out of concern that the relevance was too vague, and the burden too substantial, to require their production by Plaintiffs. Before any production could be compelled, the Court required a showing not just that the documents were relevant, but also that further discovery was "necessary." Whether the *Plaintiffs'* communications are necessary, or even relevant, is a hotly disputed point; Defendants come nowhere near satisfying their burden in the case of Google communications.

- The best source of information about plaintiffs' views on licensing is Plaintiffs themselves, but Defendants do not appear to have sought an order compelling production of those documents. And if Defendants have, in fact, obtained this information through Plaintiffs' documents or depositions, there is no legal basis for compelling production from Google.

- The burden of collecting, processing, searching, reviewing and producing documents reflecting communications involving thirteen separate plaintiffs, concerning negotiations that spanned several months and involved teams of employees, is on its face so obvious and substantial, and the relevance of the documents so minimal, that any proper and considered weighing requires denial of Defendants' motion to compel.

- Finally, the denial of Google's request for cost-shifting is contrary to law. Cost-shifting is mandatory, and the notion that Google must first incur the cost and burden of collecting, processing and searching documents before speculating about estimated costs, is against the weight of the case law and defies common sense.

Whatever miniscule relevance the requested documents may have, the discovery sideshow that Defendants have created has already resulted in a massive expenditure of effort from parties and courts around the country. If the Court allows the January 31 Order to stand, that burden will be multiplied while providing little or no assistance to the trier of fact in determining the appropriate measure of damages.

## PROCEDURAL BACKGROUND

In late September, 2010, Defendants served subpoenas on a number of non-party licensees of Plaintiffs' copyrights, including Google, calling for an extremely broad production of documents, plus a personal appearance of a witness, on less than ten days' notice. Google objected to the subpoenas on several grounds, including that they sought documents that were more readily obtainable from Plaintiffs and unduly burdensome for Google to produce. Google and Defendants attempted to reach an agreement concerning the appropriate scope of the subpoenas, but the negotiations failed. *See* Ingber Decl., Ex. 2 (Email from M. Ingber to M. Eaton, Jan. 4, 2011).

In late December 2010, Defendants moved to compel the production of documents in response to the subpoena.[2]  The motion to compel sought three principal categories of documents: (1) licenses or agreements between Google and any Plaintiffs "concerning the use, publication, display, or broadcast of any material" to which plaintiff holds the copyright; (2) documents reflecting amounts paid by Google to any Plaintiff pursuant to those agreements or licenses; and (3) external and internal communications regarding those licenses or regarding LimeWire. *See* Ingber Decl., Ex. 2 (Email from M. Ingber to M. Eaton, Jan. 4, 2011); Ex. 3

---

[2]    Defendants' motion to compel production from Google was styled in a letter to Judge Freeman as an "application for an Order, pursuant to Federal Rule of Civil Procedure 45(c)(2)(B)(i), overruling discovery objections . . . and directing Google to produce documents." *See* Ingber Decl., Ex. 3 (Letter from M. Eaton to Hon. Debra C. Freeman, Dec. 10, 2010).

(Letter from M. Eaton to Hon. Debra C. Freeman, Dec. 10, 2010).  Google completed production of the licenses and financial data described in categories (1) and (2), such that the only remaining issue was the production of Google's external and internal communications.  *See id.*, Ex. 4 (Letter from M. Eaton to Hon. Debra C. Freeman, Jan. 14, 2011) ("[T]he only remaining issue is whether Google must produce any of the communications it had (whether internally at Google or with Plaintiffs) concerning its licensing agreements with Plaintiffs or LimeWire.").

Google opposed the motion on multiple grounds, including that: (i) the communications between Google and Plaintiffs are both duplicative of communications already produced by Plaintiffs and overly burdensome to produce in relation to their "tenuous" relevance; and (ii) the Google's internal communications discussing Plaintiffs' views concerning licensing and LimeWire are irrelevant, privileged, and/or extremely burdensome to produce, and impose a burden on Google that is far greater than the burden imposed on Plaintiffs themselves.  Google also requested that, in the event that the Court orders the production of custodial documents, Defendants bear the costs of its production.  *See id.*, Ex. 5 (Letter from M. Ingber to the Hon. Debra C. Freeman, Jan. 6, 2011).  These objections echoed the responses made by several other non-party licensees to Defendants' motions to compel, including that the documents requested were more appropriately sought from Plaintiffs and duplicative of what Plaintiffs had produced.

In the January 31 Order, Magistrate Judge Freeman addressed Defendants' four pending motions to compel production from non-party licensees, including the motion pending against Google.  *See id.*, Ex. 1 (Jan. 31 Order).  Judge Freeman ruled that production of external communications relating to the license agreements and/or LimeWire *may* contain additional relevant material beyond that produced by Plaintiffs, outweighing any potential burden to Google, and that internal communications would be relevant *to the extent* that they may reflect Plaintiffs' attitude and conduct towards online licensing and/or towards Defendants.  *Id.* at 4-5.

Judge Freeman directed the non-party licensees (including Google) to produce internal and external communications dating back to April 19, 2008, "to the extent such communications reflect information regarding Plaintiffs' conduct, Plaintiffs' stated positions, or Plaintiffs' views regarding online licensing arrangements in general, or regarding LimeWire in particular." *Id.* Finally, Judge Freeman denied Google's requests for costs, reasoning (mistakenly) that she had modified the scope of the requested discovery, and therefore reduced the Non-Parties' burden, which she deemed to be insignificant for entities like Google. *Id.* at 6.

## ARGUMENT

The January 31 Order effectively turns fundamental principles of third party discovery upside down. Instead of properly balancing the actual relevance of the communications at issue against the actual burdens of searching for and producing any such communications that might exist, the Order appears to haphazardly "split the baby," creating an unworkable result with no support in the law. The communications ordered to be produced are so minimally relevant to the case, so duplicative of what is already available from or more appropriately sought from Plaintiffs, and so onerous to search for and produce, that the Order compelling their production is wrong as a matter of law and should be overruled.

## I.    Standard of Review

When faced with objections to non-dispositive orders issued by the magistrate judge, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). An "order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Collens v. City of New York*, 222 F.R.D. 249, 251 (S.D.N.Y. 2004) (citation and internal quotation marks omitted). While a magistrate judge has broad discretion to resolve

discovery disputes, it is necessarily an abuse of discretion to rely on an erroneous view of the law. *Mullins v. City of New York*, 626 F.3d 47, 51 (2d Cir. 2010).

## II.     Google's Internal Communications Are at Best Barely Relevant and Extremely Burdensome to Produce.

Defendants seek production by Google of all of its internal communications concerning license agreements with Plaintiffs and/or LimeWire.  Under Defendants' tortured theory of relevance, these non-party internal documents might provide evidence of Plaintiffs' "conduct and attitude" that is relevant to determining a statutory damages award.  *See Bryant v. Media Rights Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).  Referencing the obvious flaw in this theory – that Google's internal communications will reflect only the Google's own attitude and conduct (which are wholly irrelevant to this case) – Judge Freeman nevertheless ruled that "although the *Licensees'* attitude and conduct towards Defendants are not relevant, such communications may reflect *Plaintiffs'* attitude and conduct towards online licensing and/or towards Defendants, and would be relevant to that extent." Ingber Decl., Ex. 1 at 5 (emphasis in original).

As a general rule, discovery is not necessary where the "burden or expense of the proposed discovery outweighs its likely benefit." *World Wrestling Federation Entertainment, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 (S.D.N.Y. 2001) (quoting Fed. R. Civ. P. 26(b)(2)) (internal quotation marks and citation omitted) (concluding that discovery was properly disallowed, where the "probative value is so small" that it was outweighed by the burden on the producing party).  When balancing the relevance of discovery requests against the burden of production, "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation." *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005); *see also Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (HB) (HBP), 2004 U.S. Dist. LEXIS 5575, at *2 (S.D.N.Y. Apr. 1, 2004) ("[T]he Court should be particularly sensitive to weighing the probative value of the information

sought against the burden of production on [a] non party.")  With respect to Google's internal communications, the Order does not even address this critical balancing analysis; in any event, it strikes the wrong balance.

According to the Order, Google's internal communications would be relevant, theoretically, if and only to the extent that Google's employees were actually discussing *Plaintiffs'* attitude and conduct towards online licensing and LimeWire.[3]  But assuming such theoretically relevant documents actually exist – and it is rank speculation that they do – they would not contain any relevant information that is not more reliably conveyed by Plaintiffs' own internal documents and communications.  Without question, the best source of information concerning Plaintiffs' conduct and attitude about anything, including its "conduct, stated positions, or views regarding online licensing in general" (Order at 5), is the Plaintiffs themselves. But we are not aware of any order compelling Plaintiffs to produce all internal communications regarding licensing.  Thus, the January 31 Order imposes a greater burden on Google than the Plaintiffs themselves with regard to these internal communications – and that is fundamentally wrong and contrary to law.[4]

---

[3]      It is beyond dispute that Google's own attitude and conduct are not relevant to any issue in this case.  *See Visto Corp. v. Smarter Info. Sys., Ltd.*, Nos. 06-80339 MISC RMW (RS), 06-80352 MISC RMW (RS), 2007 WL 218771, at *4 (N.D. Cal. Jan. 29, 2007) (denying motion to compel a third party venture capital firm's internal documents because documents reflected firm's own opinions and analysis about the financial data relevant to reasonable royalty damages); *see also Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (deeming it improper for party to seek information from non-party about the market for photographer's works at issue in the underlying action, because "Rule 45(c)(3)(B)(ii) was intended to provide 'appropriate protection for the intellectual property of non-party witness[es] . . . . A growing problem when the use of subpoenas to compel the giving of evidence and information by unretained experts.") (citing Fed. R. Civ. P. 45, 1991 amend. note).

[4]      To the extent Plaintiffs did, in fact, produce internal communications regarding licensing, it is wholly unnecessary for Google to produce their own internal communications reflecting Plaintiffs' views on licensing, especially given the significant burden of production and minimal relevance of the documents.

(cont'd)

With respect to internal communications about LimeWire, even this Court was so unconvinced of their relevance, and sensitive to the burden of production, that it held in abeyance any order that Plaintiffs produce these documents. *See* Ingber Decl., Ex. 6 (Order, Nov. 19, 2010). In fact, before imposing this burden on actual parties to the case, the Court held that Defendants must first make a showing, based on other documents, that the internal communications were likely to yield relevant evidence and that their production was "*necessary.*" *Id.* at 7 (emphasis added). Even if Defendants could meet this elevated burden with respect to discovery from *Plaintiffs* – and Plaintiffs have briefed this Court on the reasons why that burden cannot be met[5] – they come nowhere near meeting that burden with respect to non-party Google. To the extent Plaintiffs are required to produce their own internal communications, Defendants will have access to the most obvious source of documents reflecting Plaintiffs' conduct, stated positions or views toward LimeWire. *See id.*, Ex. 8 (Order, Jan. 18, 2011). Any theoretically relevant internal Google documents reflecting Plaintiffs' attitude and conduct towards LimeWire are, at best, less relevant and less reliable versions of what Plaintiffs may well have to produce. Imposing the burden of production on Google extends non-party discovery well beyond the bounds of what is reasonable.

Finally, there is no obvious reason why Google has been saddled with this request. Defendants' apparent logic – that Plaintiffs and Google communicated during the period of time covered by the subpoenas, and therefore Plaintiffs must have expressed views about LimeWire, a third party having no connection to Google – could apply to any non-party with whom Plaintiffs communicated about any subject during the same time period. There is no logical rationale for

---

(… cont'd)

[5]   *See* Ingber Decl., Ex. 7 (Plaintiffs' Objections to Magistrate Judge Freeman's Order Compelling the Production of Plaintiffs' Internal Communications "Referring to LimeWire," Feb. 7, 2011).

targeting Google as a messenger of Plaintiffs' views about LimeWire even if those views were relevant to the damages issues before this Court.

Even if these internal communications were probative of any issue, the burden of collecting, searching, locating, reviewing and producing Google's internal communications would be massive. Indeed, it is difficult to conceive of how Google would even go about attempting to locate such documents. A needle-in-haystack hunt for communications from one Google employee to another that reflect not those employees' attitudes and views, but rather the attitudes and conduct of the Plaintiffs, does not lend itself to electronic search criteria. At a minimum, such a hunt would require a painstaking and time-consuming manual review by an attorney to analyze any communication that refers to any one of the thirteen plaintiffs – an effort that may be for nothing, for there is no reason to believe that any relevant documents actually exist. And even if they did exist, given the extensive role of in-house attorneys involved in negotiations with the Plaintiffs, these internal communications would be the *most likely* documents to contain privileged information, requiring an equally onerous privilege review. In short, because the burden of searching for, reviewing and producing these few theoretically relevant documents – indeed, the burden of determining whether any even exist – is so inordinately great, compelled production is not proper.

## III. The External Communications Between Plaintiffs and Google Are of "Tenuous" Relevance At Best and Do Not Justify Largely-Duplicative and Burdensome Production.

The January 31 Order directs Google to produce communications between itself and all of the Plaintiffs relating to at least thirteen separate agreements – each of which is highly complex and was negotiated over long periods of time among teams of employees from Google and Plaintiff – on the grounds that such production "*may* contain additional relevant material, beyond that produced by Plaintiffs," and that this hypothetical additional relevant material

"outweigh[ed] the potential burden to the Licensees." Order at 4 (emphasis added).   This was

an improper balance between the relevance and burden of this production, and is unsupported by

law.

As this Court has previously observed, the relevance of the communications at issue –

between Plaintiffs and non-party licensees ("external communications") concerning the license

negotiations and/or LimeWire – was "potentially tenuous" to the damages inquiry in this case

even when sought from the Plaintiffs.   *See* Ingber Decl., Ex. 6 (Opinion and Order, Nov. 19,

2010).   Nevertheless, these communications were sought and, consistent with the Court's order,

*obtained* from the Plaintiffs.   *See id.*, Ex. 9 (Email from M. LeMoine to M. Ingber, Jan. 5, 2011).

If Defendants believe that certain of these communications were not produced by Plaintiffs, they

were free to ask the Court to compel further production.   There is no need to obtain the identical,

barely-relevant documents from Google.   *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D.

575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents

sought are in possession of the party defendant."); *Harris v. Wells*, Nos. B-89-391(WWE), B-89-

482(WWE), 1990 U.S. Dist. LEXIS 13215, at *12-13 (D. Conn. Sept. 5, 1990) (granting motion

for protective order staying discovery from non-parties where requests were duplicative of

requests served on parties and substantial portion of such discovery would be unnecessary once

opposing party produced documents).[6]

Indeed, that is precisely what another District Court recently held in denying Defendants'

identical motion to compel against non-party Amazon.com, Inc.:

---

[6]     *Viacom International, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 WL 3876142, *3
(N.D. Cal. Aug. 18, 2008), on which Judge Freeman relied, is not controlling here.   In *Viacom*,
the court found specific reason to believe that the documents sought from non-parties were *not in
the possession* of the defendant, including the defendant's poor early record retention and
incomplete files.   *Id.*   Thus the production sought from non-parties in *Viacom* was not
duplicative at all; rather, the documents sought were not obtainable from the parties to the case.

> Documents requested from Amazon regarding agreements or communications with Plaintiffs are also obtainable from Plaintiffs directly. Indeed, Plaintiffs have already provided or been ordered to provide to Defendants much of the information requested from Amazon. Because information contained in the licensing agreements and associated communications are available from Plaintiffs directly, the requests to Amazon are duplicative.

Ingber Decl., Ex. 10 (Order on Motion to Compel, Feb. 9, 2011).

Before Judge Freeman, Defendants argued that Google was asking for the impossible – namely, for Defendants to identify gaps in Plaintiffs' production where the reality of retention and retrieval processes makes it "unlikely" that productions will be coextensive. But this was quite possible. For example, Defendants could have asked the Plaintiffs about their retention and retrieval processes to try to understand where any gaps might be based on flaws in those processes, and asked Plaintiffs to identify the principal parties with whom they communicated about licensing and sought production regarding those specific parties. And if Defendants wished to avoid gaps in productions, they could have asked Plaintiffs for documents from the entire date range in which relevant communications took place. Instead, Defendants' request to Google covers a *broader* date range than their request to Plaintiffs. *Id.*, Ex. 4 (Letter from M. Eaton to Hon. Debra C. Freeman, Jan. 14 2011); Ex. 11 (Letter from M. Ingber to Hon. Debra C. Freeman, Jan. 21, 2011). Google should not now be subject to burdensome discovery because of Defendants' own strategic decision not to request those documents from the actual parties to the litigation. None of this is to say, of course, that undertaking this process would have made the documents sought from Google any more relevant. Attempting to limit the scope of what was sought, however, would have significantly mitigated the burden on third parties and made the balance against the "tenuous" relevance somewhat closer.

In addition, Defendants offered no evidence to Judge Freeman that Plaintiffs' production of communications with Google was deficient. They never suggested that Plaintiffs refused to produce communications with Google. They never identified a shortage of communications

between Plaintiffs and Google.  And they never complained that the custodians selected by Plaintiffs were not involved in communications with Google.

But even if there were gaps in Plaintiffs' production of these communications, the "potentially tenuous" relevance of these documents cannot outweigh the cost and burden to Google in producing them.  As was explained to Judge Freeman, the process of collecting and producing the requested communications requires that each custodian's entire email inbox be retrieved from a server, and processed and searched by an outside vendor.  It is impossible to know exactly what the cost to conduct this process is for any given custodian without incurring the expense of collecting and processing the documents – as it depends in part on the volume of the files and the number of hits.  And for all the reasons discussed, Google should not be compelled to bear the expense of collecting and searching for documents involving communications with, or reflecting the views of, thirteen different plaintiffs just to demonstrate a burden and cost that is obvious from the face of Defendants' subpoena. In addition to the collection and processing costs, given the automatic searching procedure to identify the relevant communications, and the extensive involvement of in-house counsel in the licensing negotiations, Google would have to conduct a granular human review of all of the identified documents to screen out privileged documents, at a great expense of time and money.

These concerns are not hypothetical.  Immediately following the entry of Judge Freeman's  Order, at Google's request, Defendants' counsel proposed as "a starting point" a list of 117 Google custodians who may have been involved in license negotiations with Plaintiffs. *See id.*, Ex. 12 (Email from P. Horan to M. Ingber, Feb. 7, 2011).  Based on the above-described process for capturing, searching, and reviewing potentially – and, at best, minimally – relevant documents, to conduct this process for even *a fraction* of these proposed custodians would take many weeks of full-time resources at substantial cost.

Against this burden, Defendants' need to obtain these irrelevant (or barely relevant) non-party documents is simply no match. *See id.*, Ex. 10 (Order on Motion to Compel, Feb. 9, 2011) (holding that balanced against the burden of producing "essentially all documents or communications concerning dealings between Amazon and the thirteen Plaintiffs . . . Defendants' need for duplicative or irrelevant documents from Amazon weighs very little.") Therefore, the Order compelling Licensees' production of these documents should be overruled.[7]

## IV.   If the Court Holds That Production Is Warranted, Defendants Must Bear At Least Some of the Significant Costs of Compelled Production.

If the Court were to affirm any part of the January 31 Order requiring Google's production, Defendants should be ordered to bear at least some of the significant costs associated with that production.

The Order recites the rule that when a district court compels production by a non-party, the court "must protect" that person from "significant expense resulting from compliance." Order at 6 (citing Fed. R. Civ. P. 45(c)(2)(B)(ii)), but does not apply this rule. Instead, Judge Freeman held that because she had modified the scope of the requested discovery, she had reduced the burden, which she viewed as insignificant for entities like Google. Order at 6 (citing *JP Morgan Chase Bank v. Winnick*, No. 03 Civ. 8535 (GEL), 2006 WL 3164241, at *2 (S.D.N.Y. Nov. 2, 2006). But Judge Freeman's ruling did nothing of the sort, and the "compromise" set forth in the Order is in reality no compromise at all.

The denial of Defendants' motion to compel the licenses and financial data had no impact on Google's burden of production, because it had already produced those documents. The only

---

[7]   It is also notable that in a January 18 Order, Judge Freeman refused to order production of licensee communications from additional Plaintiff custodians, and additional communications between Plaintiffs and VEVO. *See id.*, Ex. 11 (Order, Jan. 18, 2011). It is inconceivable that Plaintiffs should be spared the burden of producing these documents but that Google should be put to the onerous task of producing largely duplicative documents with "tenuous" relevance to the case. This result is contrary to both law and common sense.

documents at issue in the motion to compel were internal and external communications of Google's employees, and it is the collection, processing, review and production of those documents that imposes such a significant burden and expense. It is this type of expense that courts are *required* to shift away from innocent non-parties. *See In re Law Firms of McCourts and McGrigor Donald*, No. M. 19-96 (JSM), 2001 WL 345233, at *1 (S.D.N.Y. Apr. 9, 2001) ("The discretion which the district court had to alleviate non-party costs under the old Rule 45(c)(2)(b) becomes mandatory under the 1991 amendments.").

In determining the costs to reimburse non-parties for compliance with discovery orders, courts consider whether the non-party actually has an interest in the case, whether the non-party can more readily bear the costs than the requesting party, and whether the litigation is of public importance. *See Dow Chemical Co. v. Reinhard*, No. M8-85 (HB), 2008 WL 1968302, at *1-2 (S.D.N.Y. Apr. 29, 2008); *In re Law Firms of McCourts and McGrigor Donald*, 2001 WL 345233 at *1; *In re First American Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998). Thus, courts have reduced the reimbursement amount to the non-party only where, for example, the non-party had a strong interest in the case and anticipated being drawn into a subsequent litigation (*In re First American Corp.*, 184 F.R.D. at 242), or where the outcome of the case offered the non-party competitive benefits (*U.S. v. Int'l Bus. Mach. Corp.*, 62 F.R.D. 526, 529 (S.D.N.Y. 1974)).

Here, by contrast, Google is the "quintessential, innocent, disinterested bystander" (*McCourts and McGrigor Donald*, 2001 WL 345233 at *2), lacking any interest whatsoever in the litigation. Further, even if this case raised any issues of public importance, those issues were resolved upon determination of the merits and are irrelevant to the amount of damages Defendants may ultimately be ordered to pay. The fact is that the costs of complying with an Order as broad as the January 31 Order could be staggering if they were routinely imposed upon non-parties.

The final rationale for denying costs articulated in the Order – that Google has not made a "specific, supported showing as to the cost of production" – misses the point.  The requested documents are irrelevant, and the burden of pulling multiple custodians' files, reviewing those files, and attempting to locate communications reflecting the views of thirteen different Plaintiffs on a host of issues, is obvious.  It is not the law – and cannot be the law – that in order to shift costs, Google must first bear the costs so that it can make a "specific, supported showing as to the cost of production," as the Order purports to demand.  The proper remedy is to make an award of provisional costs until any production is made, which is expressly contemplated by the rules and commonly granted by courts.  *See* Fed. R. Civ. P. 45(c)(2)(B) advisory committee's note ("The court is not required to fix the costs in advance of production . . . In some instances, it may be preferable to leave uncertain costs to be determined after the materials have been produced, provided that the risk of uncertainty is fully disclosed to the discovering party.") (citing *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364 (9th Cir. 1982)); *In re Letters Rogatory*, 144 F.R.D. 272, 278-79 (E.D. Pa. 1992) (upon notice that the costs of complying with subpoena issued pursuant to letters rogatory would be substantial, declining to "fix the costs in advance of production," but holding party seeking production accountable upon subsequent motion from non-party for reimbursement for reasonable production costs).

## CONCLUSION

For all of the foregoing reasons, Google respectfully requests that the Court overrule that portion of the January 31 Order granting Defendants' motion to compel or, in the alternative, that the Court order Defendants to bear the costs of any production.

15

Dated:  February 18, 2011

Respectfully submitted,

MAYER BROWN LLP

Matthew D. Ingber
Allison K. Levine

1675 Broadway
New York, New York 10019
(212) 506-2500

*Attorneys for Google Inc.*

## CERTIFICATE OF SERVICE

I, Allison K. Levine, an attorney, hereby certify that on this 18th day of February, 2011, I

caused a true and correct copy of Google Inc.'s Objections to Magistrate Judge Freeman's Order

Compelling the Production of Internal and External Communications to be served via operation

of the ECF system and email on the following counsel of record:

Mary Eaton
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
meaton@willkie.com

*Attorneys for Defendants*
*Lime Wire  LLC, Lime Group LLC, Mark Gorton,*
*and M.J.G. Lime Wire Family Partnership*


Glenn D. Pomerantz
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, California 90071
glenn.pomerantz@mto.com

*Attorneys for Plaintiffs Arista Records LLC, et al.*


Allison K. Levine