REDACTED VERSION
COMPLETE VERSION FILED UNDER SEAL

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ARISTA RECORDS LLC; ATLANTIC
RECORDING CORPORATION; BMG MUSIC;
CAPITOL RECORDS, INC.; ELEKTRA
ENTERTAINMENT GROUP INC.; INTERSCOPE
RECORDS; LAFACE RECORDS LLC;
MOTOWN RECORD COMPANY, L.P.;
PRIORITY RECORDS LLC; SONY BMG MUSIC
ENTERTAINMENT; UMG RECORDINGS, INC.;
VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,

               Plaintiffs,

        – against –

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; and M.J.G. LIME WIRE FAMILY
LIMITED PARTNERSHIP;

               Defendants.

ECF Case

06 Civ. 5936 (KMW) (DCF)

## DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS
## TO MAGISTRATE JUDGE FREEMAN'S JANUARY 18, 2011 ORDER COMPELLING
## THE PRODUCTION OF PLAINTIFFS' INTERNAL COMMUNICATIONS
## <u>"REFERRING TO LIMEWIRE"</u>

TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL BACKGROUND ................................................................................. 3

     A.     Plaintiffs Previously Agreed To Produce Internal And External
Communications Concerning LimeWire During The "Liability" Phase
Of This Litigation. ............................................................................................... 3

     B.     October 15:  Magistrate Judge Freeman Orders Plaintiffs To Update Their
Production. .......................................................................................................... 4

     C.     November 2:  Magistrate Judge Freeman Orders Plaintiffs To Produce
Communications Concerning LimeWire. ........................................................... 5

     D.     November 18:  This Court Orders Plaintiffs To Produce Communications
With Non-Party Licensees But Otherwise Holds The November 2 Order
In Abeyance. ....................................................................................................... 5

     E.     January 5:  Defendants Make An Application To Magistrate Judge
Freeman To Reinstate Orders 2-4, Based On the Recently Produced
Evidence .............................................................................................................. 6

     F.     January 18:  Magistrate Judge Freeman Grants Defendants' Application In
Part And Orders Production Of Documents Pursuant to Order 4 ....................... 7

     G.     February 7:  Plaintiffs Delay Filing This Appeal As Long As Possible. ............ 7

ARGUMENT .................................................................................................................. 8

  I.    THE ORDER SHOULD BE AFFIRMED ........................................................... 9

     A.     Magistrate Judge Freeman Did Not Commit Clear Error In Crafting A
"Compromise" That Balanced The Relevance Of The Documents
Sought Against The Burden To Plaintiffs And Ordered A Limited
Production Of Communications In The Files Of Ten Custodians ....................... 9

     B.     None Of Plaintiffs' Arguments Establishes That Magistrate Judge
Freeman Committed Clear Error In Exercising Her Discretion to
Supervise Discovery. ......................................................................................... 12

CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

**CASES**                                                                              **Page(s)**

*Bank Hapoalim, B.M. v. Am. Home Assurance Co.*,
   No. 92 Civ. 3561, 1994 WL 119575 (S.D.N.Y. Apr. 6, 1994).................................................8

*Bryant v. Media Right Prods., Inc.*,
   603 F.3d 135 (2d Cir. 2010)..................................................................................................9

*Conopco, Inc. v. Wein*,
   No. 05 Civ. 9899, 2007 U.S. Dist. LEXIS 27339 (S.D.N.Y. Apr. 3, 2007)...........................15

*Deluca v. Allied Domecq Quick Serv. Rest.*,
   No. 03-cv-5142, 2006 WL 2713944 (E.D.N.Y. Sept. 22, 2006)............................................16

*Derthick v. Bassett-Walker, Inc.*,
   No. 90 Civ. 5427, 1992 WL 249951 (S.D.N.Y. Sept. 23, 1992).............................................8

*Edmonds v. Seavey*,
   No. 08 Civ. 5646, 2009 WL 2150971 (S.D.N.Y. July 20, 2009) ...........................................8

*Entral Grp. Int'l, LLC v. YHLC Vision Corp.*,
   No. 05-CV-1912, 2007 WL 4373257 (E.D.N.Y. Dec. 10, 2007)............................................9

*Gucci Am., Inc. v. Guess?, Inc.*,
   No. 09 Civ. 4373, 2011 U.S. Dist. LEXIS 15 (S.D.N.Y. Jan. 3, 2011)..................................16

*Herskowitz v. Charney*,
   No. 93 Civ. 5248, 1995 WL 104007 (S.D.N.Y. Mar. 8, 1995) ..............................................14

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*,
   124 F.RD. 75 (S.D.N.Y. 1989) ..............................................................................................14

*Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md.*,
   122 F.R.D. 447 (S.D.N.Y. 1988) ...........................................................................................15

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
   900 F.2d 522 (2d Cir. 1990)....................................................................................................8

*Thornton v. Syracuse Sav. Bank*,
   961 F.2d 1042 (2d Cir. 1992)..................................................................................................15

*Software Rights Archive LLC v. Google, Inc.*,
   No. 09-017, 2009 WL 1438249 (D. Del. May 21, 2009) .......................................................17

*Von Bulow by Auersperg v. Von Bulow*,
   811 F.2d 136 (2d Cir. 1987)...................................................................................................16

**Page(s)**

*Warner Bros., Inc.* v. *Dae Rim Trading, Inc.,*
   877 F.2d 1120 (2d Cir. 1989)......................................................................................................9

**STATUTES**

Fed. R. Evid. 501 ......................................................................................................................16

Defendants Lime Group LLC, Lime Wire LLC, Mark Gorton, and M.J.G. Lime Wire Family Limited Partnership (collectively, "Defendants") respectfully submit this memorandum of law in response to Plaintiffs' Objections (the "Objections") to Magistrate Judge Freeman's Order, dated January 18, 2011 (the "Order"), compelling Plaintiffs to produce internal communications (including e-mails) from the files of ten custodians that refer to LimeWire.

## PRELIMINARY STATEMENT

After Magistrate Judge Freeman issued her January 18 Order, Defendants immediately requested that any appeal of that Order be conducted on an expedited basis.  We made that request because (among other reasons) the parties had already litigated the propriety of those requests on four prior occasions since September 2010, and Defendants needed the documents before the completion of fact discovery and for the upcoming trial.  Despite that request for expedition, Plaintiffs waited 19 days -- until the last possible date under the Rules -- to file their Objections.  Although Plaintiffs never sought a stay of that Order (or the two prior orders on this same issue), to date, Plaintiffs have not produced a single responsive document in response to the January 18 Order, nor detailed why production of these documents would be unduly burdensome in a case of this size and scope.  Exhibit lists are now due on **March 14, 2011** (in accordance with the Scheduling Order issued today, February 22).  Magistrate Judge Freeman's January 18 Order should be affirmed, so that all responsive documents (and any attendant privilege log) can be produced sufficiently in advance of the March 14 exhibit deadline.  (It is simply too late to take more fact depositions solely in connection with newly-produced documents and Defendants do not propose to do so.)  Plaintiffs should not be heard to cry prejudice given their steadfast objective to "run out the clock" and ignore Magistrate Judge Freeman's orders which were never stayed.  Plaintiffs had ample warning that they would have to produce these documents.

1

According to Plaintiffs, however, the documents are not relevant, would be inadmissible at trial under Rule 408, are mostly privileged and requiring their review and production now -- even if limited to 10 custodians -- would be unduly burdensome.  All of those arguments are without merit.

First, as Defendants demonstrated to Magistrate Judge Freeman, the external communications produced to date show that Plaintiffs possess relevant and responsive documents.  ███████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████  As Magistrate Judge Freeman clearly acknowledged by rejecting Plaintiffs' positions, it is inconceivable that Plaintiffs' internal communications would not shed additional light on these critical issues -- Plaintiffs' conduct and attitude and their alleged lost revenues -- both of which are central to the statutory damages analysis under *Bryant*.

Second, Plaintiffs' contention that requiring their compliance with the Order would pose an undue burden is likewise foundationless.  Based on calculations we made using Plaintiffs' prior production, requiring them to update their production should result in the production of approximately 2,500 documents -- which is hardly burdensome at all.  The fact that some of those documents may be settlement communications subject to Rule 408 is no answer.  Rule 408 does not provide blanket immunity from discovery, but speaks only to

admissibility.  Whether those communications are admissible at trial or not depends on whether

they amount to a permitted use under Rule 408, which can only be assessed in context during the

course of the trial, not at the discovery stage.  Likewise, Plaintiffs' complaint that they would

have to produce a lengthy privilege log should not be credited.  Simply because some of the

custodians in question have a law degree does not render their communications privileged;

indeed, many of those individuals function in a business capacity such that their communications

would not be privileged at all.  Some of the custodians have already been deposed and the

number of privilege objections were minimal.  In any event, Plaintiffs have had months to

prepare any log that might be required.  That they delayed that undertaking for all this time is no

reason to relieve them of their discovery obligations now.

   In short, the legal arguments advanced by Plaintiffs are all without merit and

therefore insufficient to demonstrate that the Order is clearly erroneous, as is required to overturn

a non-dispositive ruling.  Accordingly, the Order should be affirmed in its entirety.  Given the

pending deadline to exchange trial exhibits on March 14, Plaintiffs should be ordered to produce

the documents and any privilege log immediately.

## PROCEDURAL BACKGROUND

### A. Plaintiffs Previously Agreed To Produce Internal And External Communications Concerning LimeWire During The "Liability" Phase Of This Litigation.

   At the outset of this case, Defendants sought discovery concerning, among other

things, "documents that refer, relate or pertain to Lime Wire LLC, Lime Group LLC, Mark

Gorton, Greg Bildson or the LimeWire Software Application."  (10/31/06 Defs.' 1st Document

Request (Ex. 1)[1], Nos. 1-5.)  After several meet-and-confer sessions, Plaintiffs agreed to search

for and produce documents from the files of "<u>approximately</u> sixty-five custodians" that contain

---

[1] "Ex. __" cites refer to the Exhibits to the Declaration of Mary Eaton, dated February 21, 2011, filed herewith.

the following LimeWire-related search terms:  "Lime*," "limegroup.com," "limepeer.com,"

"limewire.com," "limewire.org," "LW," "Gorton," and "Bildson," among others.  (6/7/07 Letter

from T. Sankoorikal to C. Baker (Ex. 2) (attaching search terms lists for each Plaintiff label);

10/19/07 Joint Letter to Hon. D. Freeman (Ex. 3) at 12 ("Our search term list consisted of 138

separate search terms, including . . . "Lime*"").)  Fewer than 14,000 documents were produced

that hit on the "LimeWire" search term (or derivatives thereof) from those approximately sixty-

five custodians.  (Eaton Decl. ¶ 2.)  In other words, use of the LimeWire search terms generated

approximately 215 documents per custodian, including attachments.

## B.    October 15:  Magistrate Judge Freeman Orders Plaintiffs To Update Their Production.

Shortly after Magistrate Judge Freeman was appointed, the Court conducted a

telephonic hearing to address Plaintiffs' motion to quash several non-party subpoenas

Defendants had served on various licensees and distributees of Plaintiffs.  (10/15/10 Order (Ex.

4) at 1.)  During the course of the telephonic conference, it became clear that Plaintiffs had not

updated their production in accordance with Rule 26(e) and were taking the position that they

had no obligation to do so because such documents were supposedly not relevant to the issue of

damages.  (Eaton Decl. ¶ 3.)  Magistrate Judge Freeman rejected that position on October 15,

ordering Plaintiffs to "produce in discovery their license agreements and related communications

with third-party licensees from April 18, 2008 to the present."  (10/15/10 Order (Ex. 4) at 6.)

On November 1, 2010, Magistrate Judge Freeman held a case management

conference during which the parties were meant to address their outstanding discovery disputes.

(*See* 11/1/10 Hr'g Tr. (Ex. 5).)  At that hearing, Plaintiffs' counsel sought reconsideration of the

October 15 Order and insisted that they had no obligation to produce communications

concerning LimeWire (whether internal or external), even though they had produced such

documents before.  (*Id.* at 75-76.)  When Magistrate Judge Freeman signaled that she would rule against Plaintiffs on these issues, Plaintiff's counsel announced that Plaintiffs intended to appeal to this Court.  (*Id.* at 162.)  **In response, Magistrate Judge Freeman made clear that an appeal would not stay any orders regarding discovery and, accordingly, instructed counsel that an appeal and any document production required by the order should proceed on "simultaneous tracks."**  (*Id.* at 162-63.)

C.    **November 2:  Magistrate Judge Freeman Orders Plaintiffs To Produce Communications Concerning LimeWire.**

On November 2, 2010, Magistrate Judge Freeman issued an Order (the "November 2 Order"), compelling Plaintiffs to produce, among other things, "all communications, related to licensing, between Plaintiffs and the 15 third-party licensees recently subpoenaed by Defendants" ("Order 1"); "all communications with other licensees referring or relating to LimeWire" ("Order 2"); and "internal emails regarding LimeWire" from the email accounts of employees who were primarily responsible for negotiating licensing agreements ("Order 4").  (11/2/10 Order (Ex. 6) at 2.)

D.    **November 18:  This Court Orders Plaintiffs To Produce Communications With Non-Party Licensees But Otherwise Holds The November 2 Order In Abeyance.**

Plaintiffs sought immediate review of the November 2 Order from this Court.  In an Order, dated November 18, 2010 (the "November 18 Order"), this Court recognized the potential relevance of the documents sought by Defendants and affirmed Order 1, but held "in abeyance its decision" on whether Plaintiffs should be compelled to produce communications responsive to Orders 2 and 4, pending a showing to Magistrate Judge Freeman "that the discovery pursuant to Order 1 has yielded relevant evidence, and that further discovery pursuant to Orders 2-4 is necessary."  (11/18/10 Order (Ex. 7) at 7.)

**E.      January 5:  Defendants Make An Application To Magistrate Judge Freeman To Reinstate Orders 2-4, Based On the Recently Produced Evidence.**

On January 5, 2011, Defendants made an application to Magistrate Judge

Freeman to compel the production of documents pursuant to Orders 2 and 4 of the November 2

Order that this Court had held in abeyance.  (*See* 1/5/11 Letter from M. Eaton to Hon. D.

Freeman (Ex. 8).)  In support of that application, Defendants demonstrated to the Court that

documents produced thus far -- which, as discussed above, did not include emails possessed by a

number of key employees of Plaintiffs, nor any emails captured by the search term "LimeWire"

-- not only yielded relevant evidence concerning Plaintiffs' alleged lost revenues and the conduct

and attitude of the parties, but also made it crystal clear that a substantial volume of documents

directly relevant to one or more statutory damages factors would remain hidden from the trier of

fact, unless Plaintiffs were required to search for and produce communications concerning

LimeWire.  (*Id.* at 7-15.)

Defendants demonstrated that it was inconceivable that discussions concerning

doing business (or not doing business with LimeWire) occurred without some internal

communications or meetings either within the record labels or between the record labels (either

individually or through the RIAA).  (*Id.* at 10.)  And clearly not all of these documents would be

privileged.  Likewise, Defendants showed it was almost impossible that Plaintiffs did not have

internal discussions regarding matters that belied their longstanding assumption that P2P services

in general and LimeWire specifically resulted in lost revenues.  (*Id.* at 11-13)  Given that such

relevant evidence rests exclusively within the possession, custody, or control of Plaintiffs,

Defendants demonstrated the necessity of ordering Plaintiffs to produce internal communications

concerning LimeWire.  (*See id.*)  Because depositions of numerous fact witnesses were

upcoming, Defendants sought this relief on an expedited basis such that any production could be

completed prior to these depositions.  (*Id.* at 2.)  Plaintiffs opposed Defendants' requests, making

essentially the same legal arguments that they advance in support of the instant appeal.  (*See*

1/10/11 Letter from M. LeMoine to Hon. D. Freeman (Ex. 9).)

**F.     January 18:  Magistrate Judge Freeman Grants Defendants' Application In Part
And Orders Production Of Documents Pursuant to Order 4.**

In an Order dated January 18, 2011 (the "January 18 Order"), Magistrate Judge

Freeman granted, in part, Defendants' application to reinstate Orders 2 and 4, holding as follows:

> Balancing the relevance of the requested documents with the
> burden to Plaintiffs, the Court finds that a compromise would be
> appropriate.  Plaintiffs are therefore directed to produce internal
> communications referring to "LimeWire" from the files (including
> email) of 10 custodians, to be agreed by the parties after good faith
> conference.  In all other respects, Defendants' request to reinstate
> Order 2 and 4 of the 11/19/10 Order is denied.

(1/18/11 Order (Ex. 10) at 4.)  Following that Order, counsel attempted to meet and confer over

the appropriate custodians for the search.  Naturally, Defendants selected custodians who were

on their list of deponents, who had submitted sworn declarations in the case earlier, or whom

Defendants believed had critical information regarding the issues at hand.  Plaintiffs rejected all

of them on the footing that they were either lawyers or not the principal negotiators or third-party

licenses.  (Eaton Decl. ¶ 4.)

**G.     February 7:  Plaintiffs Delay Filing This Appeal As Long As Possible.**

Plaintiffs communicated to Defendants their intention to appeal expeditiously, but

in fact waited to file the Objections until the evening of February 7, 2011 -- the <u>very last day</u>

permitted under the Federal Rules, including three extra days for service via the Court's ECF

notification system, plus two weekend days.  (Eaton Decl. ¶ 5.)

Although Plaintiffs neither sought nor obtained a stay of the Order from either

this Court or Magistrate Judge Freeman, they have not produced any of the documents required

by the Order, notwithstanding Magistrate Judge Freeman's earlier admonition that no stay would

be in effect during the pendency of any appeal.  (*Id.* ¶ 6.)  Indeed, Magistrate Judge Freeman

recently reminded Plaintiffs' counsel that no stay of the Order was in effect, yet Plaintiffs have

remained steadfast in their refusal to comply until this Court rules on the Objections.  (Eaton

Decl. ¶ 7.)

## ARGUMENT

The district court reviews orders regarding non-dispositive matters "under the

'clearly erroneous or contrary to law' standard."  *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900

F.2d 522, 525 (2d Cir. 1990).  The "clearly erroneous or contrary to law" standard set forth in

section 636(b)(1)(A) is akin to an abuse of discretion standard.  *See Derthick v. Bassett-Walker,

Inc.*, No. 90 Civ. 5427, 1992 WL 249951, at *8 (S.D.N.Y. Sept. 23, 1992) ("magistrates are

afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their

discretion is abused").

Thus, the ruling of a magistrate judge is "entitled to substantial deference" and

may not be set aside "unless the court, on the entire evidence is left with the definite and firm

conviction that a mistake has been committed."  *Bank Hapoalim, B.M. v. Am. Home Assurance

Co.*, No. 92 Civ. 3561, 1994 WL 119575, at *2 (S.D.N.Y. Apr. 6, 1994) (Wood, J.) (citations and

quotation marks omitted).  "A showing that 'reasonable minds may differ on the wisdom of

granting the defendant's motion' is not sufficient to overturn a magistrate judge's decision."

*Edmonds v. Seavey*, No. 08 Civ. 5646, 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009)

(citation omitted).

Plaintiffs' objections to the Order fail to meet this demanding standard, for the

reasons that follow.

**I.     THE ORDER SHOULD BE AFFIRMED.**

    **A.     Magistrate Judge Freeman Did Not Commit Clear Error In Crafting A "Compromise" That Balanced The Relevance Of The Documents Sought Against The Burden To Plaintiffs And Ordered A Limited Production Of Communications In The Files Of Ten Custodians.**

It is undisputed that, under *Bryant v. Media Right Productions., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010), the court, in determining the amount of statutory damages to be awarded for copyright infringement, must take into account, among other factors, the revenues lost by the copyright holder, and the conduct and attitude of the parties.

As decisions in this Circuit have made clear, Plaintiffs' conduct and attitude during the course of the litigation is directly relevant in setting statutory awards.  *See Warner Bros., Inc.* v. *Dae Rim Trading, Inc.,* 877 F.2d 1120, 1126 (2d Cir. 1989) (affirming an award of minimal statutory damages to Warner Brothers in part due to the "vexatious, oppressive, and unreasonable manner" in which it conducted the litigation.); *see also Entral Grp. Int'l, LLC v. YHLC Vision Corp.*, No. 05-CV-1912, 2007 WL 4373257, at *3 (E.D.N.Y. Dec. 10, 2007) (holding that low statutory damage award was "justified by the attitude and conduct of <u>plaintiff</u>" which made unreasonable licensing fee demands) (emphasis added).

Indeed, Plaintiffs' counsel has conceded as much:

> And what is clear is that when the — what comes from those cases that the only conduct of the plaintiffs that has ever been analyzed under that factor is the conduct of the plaintiffs as against that defendant or those defendants in the case.

(11/1/10 Hr'g Tr. (Ex. 5) at 58.)  Nor have Plaintiffs ever disputed the relevance of documents bearing on the amount of revenue they allegedly lost as a result of LimeWire.  (11/3/10 Letter from G. Pomerantz to Hon. K. Wood (Ex. 11) at 9.)

Under this well-settled standard, there can be no doubt that documents produced by Plaintiffs pursuant to Order 1 yielded relevant evidence concerning the statutory damages

factors enumerated in *Bryant* or that the additional discovery contemplated by the November 18

Order is appropriate, as Magistrate Judge Freeman concluded in ordering Plaintiffs to produce

internal communications concerning LimeWire.

      <u>First</u>, Plaintiffs' production is replete with evidence of their conduct and attitude,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████

                ███████████████████████████████████

██████████████████████████████████████████████████████

████████  It is thus inconceivable that there was no discussion of the harm (if any) being

suffered by the record labels due to LimeWire.  The only way of knowing the substance of such

discussions -- and the documents produced thus strongly suggest that there was discussion of

LimeWire -- is for Plaintiffs to search for and produce internal communications concerning LimeWire.

Second, Plaintiffs' limited production has also yielded relevant evidence suggesting a change in thinking about P2P and LimeWire's role in the music industry and LimeWire's affect on Plaintiff's revenues. ██████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

Defendants have also adduced relevant evidence of this change in thinking through the non-party discovery ordered by Magistrate Judge Freeman (also over Plaintiffs' vigorous opposition). ████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████ This is a marked shift in the understanding of the benefits P2P music services, like LimeWire, have brought to the music industry, and such information would be relevant to a jury's assessment of statutory damages at the upcoming trial. ████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

█████████████

Magistrate Judge Freeman, in exercising her broad discretion to supervise discovery, did not commit clear error by granting Defendants discovery of such relevant documents, particularly when, at the same time, the Order challenged here "balanced" the relevance of that information against Plaintiffs' repeated protestations as to the burden that producing such documents would impose by limiting that discovery to only 10 custodians. Indeed, if history is any guide, upholding Magistrate Judge Freeman's Order that Plaintiffs produce internal communications containing the term LimeWire (or variations thereof) would result in the production of fewer than 3,000 documents.  The Order, therefore, should be affirmed.

**B.    None Of Plaintiffs' Arguments Establishes That Magistrate Judge Freeman Committed Clear Error In Exercising Her Discretion to Supervise Discovery.**

In support of their latest effort to overturn discovery ordered by Magistrate Judge Freeman, Plaintiffs have proffered a laundry list of arguments as to why the production of internal LimeWire communications is somehow improper, hoping that at least one of them might stick.  As demonstrated below, however, none of them do.  Plaintiffs, therefore, have failed to carry their burden of demonstrating that the Order was clearly erroneous.

     1.     This Court Has Already Rejected Plaintiffs' Attempt To Bootstrap Prior Discovery Rulings Relating To The Copyright Misuse Defense To Exclude Evidence Relevant To The *Bryant* Factors.

Plaintiffs argue that "this Court has already concluded" that evidence of their "blacklisting [of LimeWire] is irrelevant."[2] (Pls.' Br. at 14.) The evidence that Plaintiffs marshal in support of that argument, however, a hearing transcript from March 12, 2008, and an August 9, 2010 Order (the "August 9 Order"), pertains solely to the defense of copyright misuse. Indeed, the August 9 Order states expressly that it is limited to the denial of "discovery that relates <u>exclusively</u> to the asserted copyright misuse defense." (8/9/10 Order (Ex. 17) at 7 (emphasis added).) Likewise, the very excerpt of the March 12 hearing transcript cited by Plaintiff makes plain that it concerns only "the [copyright] misuse defense." (Pls.' Br. at 14 (quoting 3/12/08 Hr'g Tr. at 4:16-25).) Plaintiffs cite no authority, from this Court or any other, holding that evidence pertaining to blacklisting is irrelevant to the six-factor analysis set forth in *Bryant*, as opposed to a copyright misuse defense.

This is not the first time that Plaintiffs have attempted to bootstrap this Court's copyright misuse rulings to preclude discovery regarding statutory damages. Plaintiffs did the exact same thing in their unsuccessful motion to quash Defendants' non-party subpoenas. (10/15/10 Order (Ex. 4) at 3.) Magistrate Judge Freeman, however, saw right through that attempt and rejected it. (*Id.* at 3-4 ("The parties did not brief, and the Court did not address, the relevance of any of Defendants' specific document requests to other issues, including damages.").) This Court affirmed Magistrate Judge Freeman's ruling. (11/18/10 Order (Ex. 7) at 6.)

---

[2] Similarly, Plaintiffs contend that evidence of blacklisting cannot be relevant because blacklisting has been found to be "reasonable and appropriate" by this Court. (Pls.' Br. at 15.) **Again, however, this Court limited that ruling specifically to the copyright misuse defense.** (8/9/10 Order (Ex. 17) at 7.)

2.      Plaintiffs' Conduct And Attitude Toward LimeWire Is Highly Relevant,
        And Plaintiffs' Assertion That Defendants' Deposition Questioning
        Proves Otherwise Is Misleading.

Plaintiffs assert that if discovery regarding their blacklisting of LimeWire were

necessary, Defendants would have engaged in "extensive questioning about the topic" at the

recent depositions of Plaintiffs' fact witnesses, instead of "frequently mov[ing] to strike [such]

testimony from the record." (Pls.' Br. at 16-17.) None of that is correct.

To begin with, this argument is completely circular. Plaintiffs contend that the

documents they have been ordered to produce cannot possibly be relevant because Defendants

did not question Plaintiffs' witnesses about those documents, in spite of Plaintiffs' refusal to

produce them, even after Magistrate Judge Freeman compelled Plaintiffs them to do so, in an

Order that concededly has not been stayed.[3] How Defendants were supposed to question

Plaintiffs' witnesses about documents that had never been produced, Plaintiffs do not say.

Plaintiffs' contention that Defendants tried to discourage two deponents (David

Ring and Edgar Bronfman) from testifying about LimeWire is misleading. As the transcripts

make clear, Defendants' counsel moved to strike several references to LimeWire by Messrs.

Bronfman and Ring because these statements amounted to non-responsive polemics that were

not responsive to the questions asked. (Bronfman Dep. (Ex. 18) at 179-80; Ring Dep. (Ex. 19)

at 122.)

---

[3] The Objections have not stayed the Order, nor has the Court granted such a stay, yet Plaintiffs remain steadfast in
their refusal to comply with that Order. *See Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 124 F.RD. 75, 79
(S.D.N.Y. 1989) ("allowing . . . automatic stay[s] of magistrate's orders would not only encourage the filing of
frivolous appeals, but, would grind the magistrate system to a halt.") (internal citation omitted); *Herskowitz v.
Charney*, No. 93 Civ. 5248, 1995 WL 104007, at *3 (S.D.N.Y. Mar. 8, 1995) ("In the absence of a stay, the fact that
a litigant has appealed to the District Court from a Magistrate Judge's discovery order does not excuse failure to
comply with that order."). Indeed, Judge Freeman made clear to Plaintiffs just recently that the Objections do not
stay their obligation to comply with the Order. (Eaton Decl. ¶ 7.) In spite of that unambiguous direction, Plaintiffs
have not retreated from their position that they will not obey the Order unless compelled to do so by this Court.

3.     Plaintiffs' Objections On The Basis Of Privilege Are All Without Merit.

Plaintiffs assert that documents called for by the Order "will consist largely of privileged communications about this lawsuit" and object to their production for three reasons: (1) they constitute settlement communications privileged from discovery by Rule 408; (2) they are privileged from disclosure under California state statutes governing mediation-related communications; and (3) they will purportedly encompass a substantial number of privileged documents, which will be burdensome to log.  All of those arguments fail as well.

First, Plaintiffs' reliance on Rule 408 (which does not apply to all of the documents subject to the Order) is misplaced because that Rule governs only these documents' admissibility at trial and has no bearing on whether they are the proper subject of document discovery.  "Rule 408 pertains only to evidentiary issues at trial, and does not govern pretrial disclosure of settlement agreements.  Rather, Federal Rule of Civil Procedure 26(b)(1) sets the standard for pretrial disclosure, and requires only that the information sought be relevant and calculated to lead to the discovery of admissible evidence."[4]  *Conopco, Inc. v. Wein*, No. 05 Civ. 9899, 2007 U.S. Dist. LEXIS 27339, at *12-13 (S.D.N.Y. Apr. 3, 2007); *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) ("The rule governing discovery is … applicable to discovery of compromise negotiations, in the same manner as in any other discovery situation.").  Any issues as to admissibility of the materials at trial may be addressed by way of a motion *in limine* at the appropriate time, consistent with Rule 408, including its exception for "permitted uses." [5]

---

[4] As a result, Plaintiffs' authorities holding that settlement discussions are inadmissible at trial under Rule 408 are inapposite here.  (Pls.' Br. at 18 (citing *Banker v. Nightswander, Martin & Mitchell*, 37 F.3d 866 (2d Cir. 2003); *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989).)

[5] Plaintiffs also rely on *Thornton v. Syracuse Savings Bank*, 961 F.2d 1042 (2d Cir. 1992), for the proposition that "the Second Circuit has explicitly rejected the production of documents related to settlement discussions."  (Pls.' Br. at 17.)  The holding of *Thornton*, however, is nowhere near that broad.  There, defendant sought discovery of

Second, Plaintiffs' reliance on the California mediation privilege (codified in Cal. Evid. Code §§ 703.5, 1115-1128) as a basis for shielding a limited set of settlement discussions from discovery is wrong as a matter of law. That privilege is a creature of state law, which has no application here, because this Court's jurisdiction is based on federal question, as opposed to diversity, such that federal common law governs privilege issues. *See* Fed. R. Evid. 501; *see also Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2011 U.S. Dist. LEXIS 15, at *5 (S.D.N.Y. Jan. 3, 2011) ("[T]here is no dispute that federal common law governs privilege issues in federal question cases."). Unlike California, the Second Circuit has not recognized any "mediation" privilege and, therefore, the California statutes and cases interpreting those provisions relied on by Plaintiffs do not immunize certain mediation-related communications concerning LimeWire from discovery. *See Deluca v. Allied Domecq Quick Serv. Rest.*, No. 03-cv-5142, 2006 WL 2713944, at *9 (E.D.N.Y. Sept. 22, 2006).

Third, Plaintiffs assert, despite not having actually reviewed the internal documents responsive to the Order, that complying with it would entail the production of a massive privilege log and they should not be required to engage in such an allegedly burdensome undertaking. (Pls.' Br. at 1.) Plaintiffs are wrong on the facts and the law.

As demonstrated above, many of the purported privileges asserted by Plaintiff, such as those based on Rule 408 and California state law, simply do not apply here. Equally baseless is Plaintiffs' unsubstantiated assertion that any communications about the LimeWire shutdown would automatically be privileged because they "cannot be divorced from the

---

privileged settlement discussions on the grounds that plaintiff had waived attorney-client and work protection. *Id.* at 1046. The Second Circuit affirmed the district court's decision that privilege had not been waived. *Id.* That is not the situation here. Defendants did not move to compel production of allegedly privileged documents. All Plaintiffs have been ordered to do is to produce non-privileged documents and log those that are purportedly privileged.

litigation." (Pls.' Br. at 20.) Even if that claim were supported by any legal authority -- and it is not -- it makes no sense, in any event. It is reasonable to assume that Plaintiffs have engaged in internal business discussions concerning the LimeWire shutdown, including perhaps the lost business opportunity, and the dispersion of LimeWire's users to other P2P sites (such as Frostwire), rather than flocking to iTunes to buy music. Such documents would likely include highly relevant and non-privileged business discussions detailing the actual impact, if any, that LimeWire and its shut-down has had on Plaintiffs' revenues or customer base. If those documents are not produced it will shield such highly relevant documents from the trier of fact.

Nor is there any merit to Plaintiffs' assertion that any "privilege review and logging burdens" would outweigh the "marginal utility" of production. (Pls.' Br. at 18.) Plaintiffs cite no authority whatsoever for the proposition that the burden of preparing a privilege log should exempt them from either (i) complying with the Federal Rules or those of this Court, both of which require that privileged documents be logged, or (ii) producing additional relevant non-privileged documents. (*See id.*) To the contrary, a party seeking discovery of relevant information should not be denied access to that information simply because the opposing party asserts -- without conducting any searches and based on an erroneous view of the law governing privilege -- that additional discovery will largely consist of privileged materials. Indeed, courts have expressly rejected similar attempts by other litigants to avoid their discovery obligations by making such blanket assertions. *See, e.g.*, *Software Rights Archive LLC v. Google, Inc.*, No. 09-017, 2009 WL 1438249, at *3 (D. Del. May 21, 2009) ("Respondents must produce a privilege log," notwithstanding their assertion that it would be "unduly burdensome.").

17

**CONCLUSION**

For all of the foregoing reasons, this Court should reject Plaintiffs' Objections to

the Order and affirm the Order in its entirety.

Dated: New York, New York
      February 22, 2011

               WILLKIE FARR & GALLAGHER LLP


               By:   /s/ Mary Eaton
                      Mary Eaton
                      (A Member of the Firm)

               787 Seventh Avenue
               New York, New York 10019-6099
               (212) 728-8000

               Attorneys for Defendants