UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC, fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**PLAINTIFFS' OPENING MEMORANDUM REGARDING STATUTORY DAMAGES ON A "PER-TRACK" BASIS**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Susan T. Boyd (*pro hac vice*)
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
*Attorneys for Plaintiffs*

Date: February 22, 2011

13199387.1

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................................. 1

II. BACKGROUND .................................................................................................................. 3

III. ARGUMENT ....................................................................................................................... 6

    A. Plaintiffs May Seek "Per-Track" Statutory Awards For Sound Recordings Originally Issued As Individual Tracks In The iTunes Era ................................... 7

    B. Plaintiffs May Seek "Per-Track" Statutory Awards For Sound Recordings Originally Released Prior to the iTunes Era ........................................................... 7

IV. CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Arista v. Lime Group*,
   715 F. Supp. 2d 481 (S.D.N.Y. 2010) ............................................................................... 5, 6

*Bryant v. Media Rights Productions, Inc.*,
   603 F.3d 135 (2d Cir. 2010) ............................................................................................ passim

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
   344 U.S. 228 (1952) ............................................................................................................. 10

*N.A.S. Import. Corp. v. Chenson Enterprises, Inc.*,
   968 F.2d 250 (2d Cir. 1992) ................................................................................................. 10

*Twin Peaks Productions v. Publications Intern., Ltd.*,
   996 F.2d 1366 (2d Cir. 1993) .......................................................................................... 6, 7, 8

*UMG Recordings, Inc. v. MP3.com, Inc.*,
   109 F. Supp. 2d 223 (S.D.N.Y. 2000) .................................................................................. 8, 9

*UMG Recordings, Inc. v. MP3.com, Inc.*,
   92 F. Supp. 2d 349 (S.D.N.Y. 2000) ........................................................................................ 8

*WB Music Corp. v. RTV Communications Group, Inc.*,
   445 F.3d 538 (2d Cir. 2006) ............................................................................................ 6, 7, 8

**FEDERAL STATUTES AND RULES**

17 U.S.C. § 101 ............................................................................................................................. 9

17 U.S.C § 103(b) .......................................................................................................................... 9

17 U.S.C. § 507(b) ......................................................................................................................... 2

Rule 12(c) .............................................................................................................................. 1, 2, 7

**I.      INTRODUCTION**

Throughout the damages phase of this case, Defendants put forth tortured constructions of the controlling law in an attempt to whittle down their exposure to statutory damages.  For example, Defendants' unsuccessful Rule 12(c) motion asked the Court to hold that, under *Bryant v. Media Rights Productions, Inc.*, 603 F.3d 135 (2d Cir. 2010), a Plaintiff could seek just one statutory award for all of the multiple, separate recordings that ever were grouped together on an album.  Under Defendants' logic, if a Plaintiff distributed 12 different recordings for sale separately as stand-alone downloads, the fact that the Plaintiff also distributed those same recordings for sale as part of an album would mean a statutory award multiplier of one rather than 12 – even though Defendants induced the infringement of each of the 12 recordings separately.  The Court denied the Rule 12(c) motion, holding that "the facts in the *Bryant* case were limited to instances in which plaintiffs issued their songs *only* in album form," and that Defendants had failed to show that Plaintiffs issued their works only in album form.  Rule 12(c) Order (Doc. No. 401) (Jan. 7, 2011) at 4 & n.2 (emphasis added).  As Plaintiffs pointed out, they have distributed the overwhelming majority of their works as individual tracks during the time period for which statutory damages are available.  *Id*.  The Court held that, "[i]f Defendants wish to seek a pretrial ruling on whether any factual pattern in the instant case should limit Plaintiffs' damages to one statutory award per album, they must offer argument as to why the *Bryant* rule should be extended to that factual pattern."  *Id*. at 5.

Defendants do not and cannot offer any argument why *Bryant* – which dealt with plaintiffs who issued their recordings *only* in album format – should apply in the quite different factual circumstances of this case.  Here, Plaintiffs seek statutory damages for the direct infringements of each of their copyrighted sound recordings by Lime Wire users from August 4,

2003 forward.[1]  That period coincides with the existence of Apple's iTunes Store (and many other online retailers that opened after iTunes), through which Plaintiffs have issued their sound recordings for sale as individual track downloads.  During that same time, Defendants induced millions upon millions of Lime Wire users to infringe Plaintiffs' recordings on a per-track basis.  There is no basis in law or logic to extend *Bryant's* inapposite rule to this factual scenario.

In the Background Section below, we provide a general description of Plaintiffs' practices in issuing stand-alone recordings both before and after the advent of widespread, legitimate commercial downloading (what this brief refers to generically as "the iTunes era"[2]).  As we explain, Plaintiffs issued stand-alone tracks for sale even before the iTunes era.  Since the advent of iTunes and similar services, Plaintiffs have issued the overwhelming majority of their works (those predating iTunes and new and ongoing releases) for sale as individual track downloads.  In the Argument Section, we explain why *Bryant* does not and should not apply to any recording that a Plaintiff issues for sale as a stand-alone recording.

## II. BACKGROUND

### A. The Pre-iTunes Era:  Plaintiffs Issued Sound Recordings As Singles And On Albums

Plaintiffs have always sold their records in a variety of physical configurations.  Before the advent of legitimate commercial download services (discussed in Section B, *infra*), these

---

[1] Plaintiffs filed suit in this Court on August 4, 2006. *See* Doc. No. 1.  The limitations period on Plaintiffs' statutory damages claims extends to three years prior to the filing of the complaint. *See* 17 U.S.C. § 507(b).  Plaintiffs' damages claims under state law with respect to their rights in "pre-1972" sound recordings are not subject to the issues discussed in *Bryant* or in this briefing. *See* Rule 12(c) Order at 2 n.1.

[2] Plaintiffs sell their sound recordings through a number of other online retailers, including Amazon.com, walmart.com, and others.  The practices discussed in this memorandum generally apply to all such online retail stores.  Because iTunes is the largest and most well-known of these retailers, this memorandum refers to iTunes and the "iTunes era" as exemplary of the practices and time-frame discussed herein.

configurations included vinyl records, cassette tapes and compact discs ("CDs").  No single, all-encompassing rule defines which sound recordings originally appeared as stand-alone singles, and which only appeared as parts of albums.  In some cases, a Plaintiff would issue an album containing multiple individual sound recordings.  Sometimes a Plaintiff released an individual track (or tracks) to radio stations before releasing the album, in order to generate interest in the release.  In other cases, a Plaintiff would release individual tracks as singles, either entirely on its own (without the single being part of any album), or at or shortly before the time the Plaintiff released an album containing that single track and others.  For example, A&M Records (now part of Plaintiff UMG Recordings, Inc.) released the single *Every Breath You Take* in May 1983, and released the album on which that recording appeared (*Synchronicity*) the following month.

### B. The iTunes Era:  Plaintiffs Widely Issue Both Pre- And Post-Digital Era Sound Recordings For Sale As Permanent Downloads On A Per-Track Basis

Defendants' liability for statutory damages overlaps entirely with Plaintiffs' digital distribution of their catalogues through online retail services.  Although Apple's iTunes Store is not the only such online retailer, iTunes has been and remains the dominant service selling permanent downloads of recorded music.  Indeed, iTunes now is the largest retail outlet for recorded music in the United States.  *See* "iTunes Store Top Music Retailer in the US," www.apple.com/pr/library/2008/04/03itunes.html (April 3, 2008 announcement that iTunes Store "surpassed Wal-Mart to become the number one music retailer in the US, based on the latest data from the NPD Group").

Apple launched the iTunes Store in April 2003, four months before the start of the limitations period that governs the award of statutory damages in this case.  *See* n.1, *supra*.  Defendants well know that the overwhelming majority of the works on Plaintiffs' Schedule A of Copyrighted Sound Recordings are issued for sale as permanent downloads on a per-track basis,

even where those same tracks appear on an album (or albums) that Plaintiffs also issue for sale in download form.  Defendants, like anyone else with internet access, can visit the iTunes Store and see which Schedule A recordings are issued for sale as stand-alone tracks.  Notably, despite prior briefing on this issue, Defendants have not identified instances in which sound recordings are unavailable as stand alone tracks on iTunes or otherwise.  Plaintiffs' general practice of issuing individual tracks for download sale during this "iTunes era" encompasses both tracks originally issued before the iTunes era and new releases:

*Previously Released Recordings*:  Since iTunes launched, each Plaintiff has sold the overwhelming majority of its previously released copyrighted sound recordings through iTunes on an individual track basis.  *See* John Borland, *Apple's music: Evolution, not revolution,* CNET, April 29, 2003, available at http://news.cnet.com/2100-1027-998675.html  (last visited February 18, 2011) (iTunes provided users with the opportunity to "buy digital downloads of songs from a vast catalog of major-label music for 99 cents apiece").  Through iTunes and other like retailers, Plaintiffs also sell downloads of albums that contain the individual tracks.  To take just one example, Plaintiff Atlantic Recording Corporation sells the individual sound recordings *Here Comes Trouble* and *How About That* by Bad Company through iTunes as stand-alone tracks.  Atlantic also sells the same tracks as part of the album, *Here Comes Trouble*, first released in 1992.  *See* Boyd Decl., Ex. 1.  Of the approximately 9,700 copyrighted sound recordings on Plaintiffs' operative "Schedule A," approximately 6,200 of these tracks predate the opening of the iTunes Store.[3]

---

[3] Even in the iTunes era, Plaintiffs have continued their pre-digital practice of releasing certain individual tracks *before* the release of an album in order to generate public interest in the work. For example, Plaintiff Sony Music Entertainment released the latest Britney Spears single, *Hold It Against Me*, in physical and digital format in January of this year; the album on which that track will appear (*Femme Fatale*) will be released in March.

- 4 -

13199387.1

*New Releases*:  Plaintiffs have made and continue to make new releases available to iTunes for sale on both an album and individual track basis concurrent with the release of such recordings through other outlets, including both digital and physical formats.  For example, Plaintiff Capitol Records, LLC sells the sound recordings *Never Ever Gone, No Love Song*s and *What Kinda Gone* by Chris Cagle as individual tracks on iTunes.  Capitol also sells the same tracks as part of album downloads, including on *My Life's Been a Country Song*, released in February 2008.  *See* Boyd Decl., Ex. 2.  (Two of these recordings also appear on another album – *The Best of Chris Cagle* – released in February 2010 and also available for download on iTunes.)  All together, Plaintiffs released approximately 3,500 copyrighted sound recordings on "Schedule A" after iTunes opened.

### C. Lime Wire:  Inducing Infringement On A Per-Track Basis Throughout The iTunes Era

Defendants are liable for statutory damage awards for the infringements they induced from the period August 4, 2003 forward.  That entire period, of course, coincides with the iTunes era.  As this Court has explained, "Many artists now digitally record songs to sell through online music retailers.  Individuals who purchase digital recordings often share them with others by using free or low-cost software or Internet programs, known as 'file-sharing' programs."  *Arista v. Lime Group,* 715 F. Supp. 2d 481, 494 (S.D.N.Y. 2010).  Indeed, Defendants designed the Lime Wire software to interoperate with the iTunes Player.  Plfs.' Reply to Defs.' Resp. To Plfs.' Sta. of Mat. Facts (Doc. No. 178) ¶¶ 337-341.

Defendants specifically promoted features that intentionally induced the infringement of Plaintiffs' works on a per-track basis.  The Lime Wire "search functions are designed to facilitate searches for copyrighted digital recordings" including particular sound recordings, *e.g.,* the single track "Nothing Compares 2 U."  *Arista,* 715 F. Supp. 2d at 511.  In short, during this

entire time, Lime Wire users infringed Plaintiffs' sound recordings on a "massive scale," all on a per-track basis. *Id.* at 510.[4]

## III.   ARGUMENT

During the entire time for which statutory damages are available, Plaintiffs issued the overwhelming number of sound recordings on their Schedule A for sale on a per-track basis, and Defendants intentionally induced the massive infringement of those sound recordings on a per-track basis. Plaintiffs are thus entitled to one statutory award per sound recording (*i.e.*, per track) per user with whom Defendants are separately jointly and severally liable. *See Bryant*, 603 F.3d at 141; *Twin Peaks Productions v. Publications Intern., Ltd.,* 996 F.2d 1366, 1381 (2d Cir. 1993); *WB Music Corp. v. RTV Communications Group, Inc.,* 445 F.3d 538, 540-41 (2d Cir. 2006). Defendants assert that wherever a group of a Plaintiff's sound recordings was released at any time on the same album, all of those separate works must be counted together as one "compilation" for a statutory award, regardless whether the Plaintiff ever issued those works separately. *Bryant does not require this*. To determine "what constitutes a compilation subject to Section 504(c)(1)'s one award restriction," the Second Circuit "focuse[s] on whether the plaintiff – the copyright holder – issued its works separately, or together as a unit." *Bryant*, 603 F.3d at 141. As this Court recognized in its Rule 12(c) Order, *Bryant* held that the sound recordings in that case had to be treated as compilations, because "plaintiffs issued their songs *only* in album form." Rule 12(c) Order at 4 n.2 (emphasis added). That is not true in this case, either with respect to sound recordings that Plaintiffs originally issued during the iTunes era as

---

[4] Evidence submitted by Plainiffs in conjunction with the Court's May 25, 2010 Order (see 715 F. Supp. 2d at 507-510), as well as the recently filed Motion for Partial Summary Judgment On The Direct Infringement of the Works at Issue (Doc. No. 431) demonstrate that Lime Wire users typically indexed, organized, uploaded, and downloaded audio files on a per-track basis. *See*, *e.g.,* Boyd Decl, Ex. 3 (MSJ Exh. 50); Plfs.' Reply to Defs.' Resp. To Plfs.' Sta. of Mat. Facts (Doc. No. 178) ¶ 121.

individual tracks, or with respect to sound recordings from the pre-iTunes era that Plaintiffs since have issued for sale as individual tracks.

### A. Plaintiffs May Seek "Per-Track" Statutory Awards For Sound Recordings Originally Issued As Individual Tracks In The iTunes Era

As discussed above, Plaintiffs have issued the overwhelming number of sound recordings first released during the iTunes era on an individual track, as well as an album, basis. Under the clear logic of *Bryant* and other Second Circuit precedent, Plaintiffs may recover statutory awards on a per-track basis for these recordings. *Bryant*, 603 F.3d at 141; *WB Music Corp.,* 445 F.3d at 540-41; *Twin Peaks,* 996 F.2d at 1381.

### B. Plaintiffs May Seek "Per-Track" Statutory Awards For Sound Recordings Originally Released Prior to the iTunes Era.

Plaintiffs may also recover statutory awards on a per-track basis for sound recordings released pre-iTunes. Regardless of whether Plaintiffs *originally* issued certain sound recordings as individual tracks, Plaintiffs during the time period for which they may seek a statutory award (August 4, 2003 forward) issued the overwhelming number of their pre-iTunes sound recordings for sale through online retailers in both individual track and album format. Where, as here, Plaintiffs issued their sound recordings on a per-track basis at the time of the infringement, and Defendants induced infringement of those recordings on that same per-track basis, Plaintiffs may seek a separate statutory award for each individual track. *See WB Music Corp.,* 445 F.3d at 540-41; *Twin Peaks,* 996 F.2d at 1381.

*Bryant* presented precisely the opposite facts: There, the plaintiffs-copyright owners issued their works *exclusively* as albums; the defendants started their infringement of those albums when one defendant (Media Right) distributed the entire album to the second defendant (Orchard), and purported to grant that second defendant the right to distribute the albums "'by any and all means and media'" – all without authorization from the copyright owners. *Bryant*,

- 7 -

- 8 -

603 F.3d at 138 (quoting Media Right-Orchard Agreement).  For purposes of the statutory damages calculation, the only relevant unit of infringement was the album – because that was the only form in which Plaintiffs had ever issued the work.  In other words, because Plaintiffs had only ever issued their works as compilations, the Second Circuit held that the compilation, and not the individual tracks on that compilation, was the proper unit for calculating the statutory award.

Defendants previously have relied on *UMG Recordings, Inc. v. MP3.com*, *Inc.*, 109 F. Supp. 2d 223, 224 (S.D.N.Y. 2000).  But Judge Rakoff's analysis in *MP3.com,* which focuses on the format in which a *defendant* initiates infringement, actually supports per-track statutory awards here.  In *MP3.com*, the "defendant purchased tens of thousands of popular CDs" – *i.e.*, albums – "and, without authorization, copied their recordings onto its computer servers so as to be able to replay the recordings for its subscribers."  *UMG Recordings, Inc. v. MP3.com*, *Inc.*, 92 F. Supp. 2d 349, 350 (S.D.N.Y. 2000).  Thereafter, defendant's customers, in order to access the CDs that defendant copied, had to "'prove'" their purported ownership of the underlying CD by either inserting a copy of the commercially released CD into the user's computer or by buying a copy of the CD from a cooperating retailer.  *Id*.  The work that the defendant copied – the entire CD – was the same work that the copyright owner-plaintiff had issued.  Judge Rakoff said that "the unequivocal statutory language *and plaintiffs' own assertion that what the defendant actually copied were the complete CDs*" meant that the unit for computing statutory damages was the entire compilation, and not its individual tracks.  *MP3.com*, *Inc.*, 109 F. Supp. 2d at 225 (emphasis added).  Here, by contrast, Defendants' users infringed the copyrights by uploading and downloading Plaintiffs' copyrighted sound recordings as individual tracks.  In any event, *Bryant,* decided after *MP3.com*, clarifies that the Second  Circuit "focuse[s] on whether the

13199387.1

*plaintiff* – the copyright holder – issued its works separately, or together as a unit." *Bryant*, 603 F.3d at 141 (emphasis added). *MP3.com* was decided in the pre-iTunes era, before Plaintiffs widely distributed their sound recordings as individual tracks through online retailers. Here, Plaintiffs have issued stand-alone digital tracks for sale during the entire period for which Defendants are liable for statutory awards.

Plaintiffs do not surrender the right to enforce copyrights in individually distributed sound recordings simply because they *also* (in some cases) issue those recordings in album form. "A 'compilation' is a work formed by the collection and assembling of preexisting materials … that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.[5] Where a plaintiff issues separately copyrightable elements only as a compilation, the logic of *Bryant* is that the plaintiff itself has defined the work that is infringed for the statutory damage computation. But where, as here, the copyright owner at the time of the infringement giving rise to the statutory award has issued its works as stand-alone tracks as well as parts of albums, nothing in *Bryant* or any other Second Circuit case relegates the copyright owner to only one statutory award. On the contrary, extending *Bryant* to that type of situation would dramatically subvert the important deterrence rationale of the statutory damages award. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, (1952); *N.A.S. Import. Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992). Upon inducing the infringement of a single sound recording issued as both a

---

[5] "The copyright in a compilation … extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work …. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material. 17 U.S.C § 103(b). Where the compilation consists of individually copyrighted works that the compilation owner also owns, that owner retains the right to issue and seek statutory damages on those individually copyrighted works.

stand-alone track and as part of an album, Defendants would have a free pass to induce the infringement of every other separately issued sound recording that happened to be on the same album. That is exactly the windfall result that Defendants seek here, and nothing in *Bryant* or any other controlling authority compels the Court to grant it to them.

## IV. CONCLUSION

For the reasons stated, the Court should rule that each Plaintiff is entitled to seek separate statutory damage awards with respect to each individual sound recording that such Plaintiff has issued on a per-track basis.

Dated:  February 22, 2011
San Francisco, California

Respectfully submitted

*/s/ Susan T. Boyd*
Susan T. Boyd

Attorney for Plaintiffs
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
(415) 512-4000
(415) 512-4077(Fax)