REDACTED VERSION
-COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARISTA RECORDS LLC; ATLANTIC
RECORDING CORPORATION; ARISTA
MUSIC, fka BMG MUSIC; CAPITOL
RECORDS LLC fka CAPITOL
RECORDS, INC.; ELEKTRA
ENTERTAINMENT GROUP INC.;
INTERSCOPE RECORDS; LAFACE
RECORDS LLC; MOTOWN RECORD
COMPANY, L.P.; PRIORITY RECORDS
LLC; SONY MUSIC ENTERTAINMENT,
fka SONY BMG MUSIC
ENTERTAINMENT; UMG
RECORDINGS, INC.; VIRGIN
RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,

                              Plaintiffs,

              v.

LIME WIRE LLC; LIME GROUP LLC;
MARK GORTON; and M.J.G. LIME
WIRE FAMILY LIMITED
PARTNERSHIP,

                              Defendants.

06 Civ. 05936 (KMW)
ECF CASE

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO
PRECLUDE ANY ARGUMENT OR EVIDENCE CONCERNING DEFENDANTS'
PURPORTED BELIEF IN THE LAWFULNESS OF THEIR CONDUCT**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Susan T. Boyd *(pro hac vice)*
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100

*Attorneys for Plaintiffs*

February 25, 2011

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 2

A.    Defendants Have Asserted They Had a Good Faith Belief As to the Lawfulness of Their Conduct in Operating Lime Wire Even After *Grokster* — an Issue Directly Relevant to Where the Award Is Set Within the Statutory Range .................................... 2

B.    Gorton Repeatedly Has Invoked His State of Mind As to the Legality of His Conduct In Defending Against the Fraudulent Conveyance Claim ................................... 6

C.    Defendants Repeatedly Invoked Privilege to Block Inquiry Regarding Their State of Mind ....................................................................................................................... 8

III.    ARGUMENT .......................................................................................................... 11

A.    The Court Should Resolve the Issue Presented *In Limine* – Before Defendants Start Presenting Argument or Evidence About Their State of Mind ................................ 11

B.    The Court Should Preclude Defendants From Offering Any Evidence or Argument At Trial Concerning Their State of Mind Regarding the Lawfulness of Their Conduct ....................................................................................................................... 11

    1.    Plaintiffs Were Entitled to Discover All Facts Relevant to Defendants' Knowledge of the Law and the Basis for That Knowledge .................................. 11

    2.    Having Blocked Discovery on the Issue, Defendants Cannot Now Offer Any Argument or Evidence Regarding Their Belief in the Lawfulness of Their Conduct ..................................................................................................... 15

IV.    CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Abbott Labs. v. Baxter Travenol Labs., Inc.*,
  676 F. Supp. 831 (N.D. Ill. 1987) ............................................................. 14

*Allstate Ins. Co. v. Serio*,
  2000 WL 554221 (S.D.N.Y. May 5, 2000) ............................................... 15

*Arista Records LLC v. Lime Group LLC*,
  715 F. Supp. 2d 481 (S.D.N.Y. 2010) ........................................................ 4

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*,
  1996 WL 173138 (S.D.N.Y. Apr. 12, 1996) ....................................... 12, 14

*Bodega Invs., LLC ex rel. Kreisberg v. United States*,
  2009 WL 2634765 (S.D.N.Y. Aug. 21, 2009) ......................................... 13

*Bryant v. Media Right Prods., Inc.*,
  603 F.3d 135 (2d Cir. 2010) ................................................................... 1, 3

*Childress v. Taylor*,
  798 F. Supp. 981 (S.D.N.Y. 1992) ........................................................... 13

*Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*,
  2005 WL 1026515 (S.D.N.Y. May 2, 2005) ............................................ 11

*DLJ Mortgage Capital, Inc. v. Kontogiannis*,
  594 F. Supp. 2d 308 (E.D.N.Y. 2009) ....................................................... 6

*E.G.L. Gem Lab Ltd. v. Gem Quality Inst,., Inc.*,
  90 F. Supp. 2d 277 (S.D.N.Y. 2000) ........................................................ 15

*Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  2002 WL 737482 (S.D.N.Y. Apr. 26, 2002) ............................................ 16

*In re County of Erie*,
  546 F.3d 222 (2d Cir. 2008) .................................................................... 12

*In re Grand Jury Proceedings*,
  219 F.3d 175 (2d Cir. 2000) .................................................................... 15

*In re Human Tissue Prods. Liab. Litig.*,
  255 F.R.D. 151 (D.N.J. 2008) .................................................................. 14

# TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Kidder Peabody Sec. Litig.*,
    168 F.R.D. 459 (S.D.N.Y. 1996) ......................................................................................14

*Kepner-Tregoe, Inc. v. Vroom*,
    186 F.3d 283 (2d Cir. 1999) .............................................................................................3

*Leviton Mfg. Co. v. Greenberg Traurig LLP*,
    2010 WL 4983183 (S.D.N.Y. Dec. 6, 2010) ....................................................................13

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ..................................................................................................passim

*Ostashko v. Ostashko*,
    2002 WL 32068357 (E.D.N.Y. Dec. 12, 2002) ..................................................................6

*Oxyn Telecomms., Inc. v. Onse Telecom*,
    2003 WL 660848 (S.D.N.Y. Feb. 27, 2003) ....................................................................14

*Pall Corp. v. Cuno Inc.*,
    268 F.R.D. 167 (E.D.N.Y. 2010) ....................................................................................14

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996) .............................................................................................11

*Pereira v. United Jersey Bank*,
    1997 WL 773716 (S.D.N.Y. Dec. 11, 1997) ...................................................................12

*S.E.C. v. Haligiannis*,
    608 F. Supp. 2d 444 (S.D.N.Y. 2009) ...............................................................................6

*Trouble v. Wet Seal, Inc.*,
    179 F. Supp. 2d 291 (S.D.N.Y. 2001) .............................................................................16

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993) ...........................................................................................3

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ....................................................................................passim

*Vicinanzo v. Brunschwig & Fils, Inc.*,
    739 F. Supp. 891 (S.D.N.Y. 1990) .................................................................................16

**TABLE OF AUTHORITIES**
(continued)

**Page**

S<span>TATE</span> C<span>ASES</span>

*Posner v. S. Paul Posner 1976 Irrevocable Family Trust*,
   12 A.D.3d 177 (N.Y. App. Div. 2004) ......................................................................6

**MEMORANDUM OF LAW**

## I.      INTRODUCTION

Plaintiffs move *in limine* to preclude Defendants from offering any argument or evidence at trial regarding their purported belief in the lawfulness of their conduct, because Defendants repeatedly have used privilege to block Plaintiffs' legitimate inquiry to discover all facts relevant to their state of mind (not just the facts Defendants like).

Second Circuit law is clear that a party may not assert that it believed its conduct was lawful and simultaneously claim privilege to block complete inquiry into the party's state of mind.  *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).  *Bilzerian* and numerous other cases hold that a party cannot use the privilege as a sword and a shield, asserting a clean state of mind about the lawfulness of its conduct and then cloaking the advice of counsel behind a claim of privilege.  Defendants – most prominently, Mark Gorton – have done exactly what *Bilzerian* prohibits, and they have done it repeatedly:

- ***Defendants blocked inquiry into their state of mind about implementing and operating LimeWire***:  Gorton testified that from the time of *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005), it was his "feeling" that "LimeWire was not at great legal risk," that "to this day" he has a "hard time seeing" LimeWire as "an illegal thing or something for which I'm liable," and this "is the state of mind" he "carried in [his] head right up until Judge Wood's ruling" on summary judgment.  (Declaration of Kelly M. Klaus ("Klaus Decl.") Ex. 1 at 126:5-22.)  Defendants undoubtedly plan to take the position at trial that this claim goes directly to their state of mind, which is the first factor that *Bryant* lists for the jury to consider in setting an award within the statutory range.  *See Bryant*

*v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).  Despite Plaintiffs'

repeated attempts to discover all facts concerning Defendants' state of mind,

Defendants have invoked privilege to block inquiry into Defendants' alleged good

faith belief that what they were doing was lawful.

- ***Defendants have blocked inquiry into their purpose in establishing and transferring assets into family limited partnerships ("FLPs")***:  Gorton

  repeatedly testified that when he conveyed substantial assets into his FLPs in June

  2005, he did not believe that he or Lime Wire faced any serious risk of copyright

  liability; he said that he established the FLPs purely for "estate planning"

  purposes, and not to hinder or evade any legal judgment.  When Plaintiffs have

  inquired into what Gorton knew about his exposure to copyright liability,

  Defendants likewise invoked privilege to block that inquiry.

Having repeatedly blocked Plaintiffs from conducting any discovery into their communications

with counsel, Defendants cannot now assert their supposed state of mind that they were not

violating the copyright laws or trying to frustrate Plaintiffs' ability to collect assets following a

judgment.  Accordingly, the Court should preclude Defendants from offering any evidence or

argument at trial that any of them possessed a good faith belief regarding the legality of any of

their conduct at issue in this case.

## II.   BACKGROUND

### A.   Defendants Have Asserted They Had a Good Faith Belief As To The Lawfulness of Their Conduct in Operating Lime Wire Even After *Grokster* — an Issue Directly Relevant to Where the Award Is Set Within the Statutory Range

Gorton's repeated protestations of "good faith" provide a preview of how Defendants will

approach the "state of mind" issue, both as to statutory damages and fraudulent conveyance.  As

- 2 -

for statutory damages, *Bryant* lists the Defendants' state of mind as the first factor for the fact-

finder to consider in deciding where to set the award within the statutory range.  *Bryant*, 603

F.3d at 144.  *See also Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288-89 (2d Cir. 1999)

(affirming maximum statutory damages award where defendant, who professed a "reasonable

and good faith belief that his use . . .  was protected," continued his infringing activities after a

court in a related litigation enjoined a related company from using the material at issue); *Twin

Peaks Prods., Inc. v. Publ'ns Int'l, Ltd*., 996 F.2d 1366, 1381-82 (2d Cir. 1993) (upholding

statutory damages award where defendant "concedes that it knew of the copyrights, and

continued publication after receiving a specific warning, but contends that it believed in good

faith that its actions were lawful").

      The Defendants' state of mind – and in particular their bad faith – will be highly relevant

to the jury's decision where to set the statutory damages award. ██████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████[1]  As the Court noted in its summary judgment order, Defendants knew full well

---

[1]  Plaintiffs cite herein where applicable to evidence submitted in support of the parties' motions
for summary judgment on liability.  With the exception of the concurrently-filed Declaration of
Kelly M. Klaus and its accompanying exhibits, documents (or excerpts) cited herein ("Ex. _")
are contained in Volumes I - XIV of the Exhibits to the Declarations of Katherine B. Forrest.
Excerpts from deposition testimony ("Tr. _") and Declarations ("Decl.") cited herein are
arranged alphabetically by the witness's last name and are contained in Volumes VI, VII and X,
respectively, of the Exhibits to the Forrest Declarations.  References to Plaintiffs' Statement of
Undisputed Material Facts Pursuant to Local Civil Rule 56.1, dated July 18, 2008, and Statement
of Additional Material Facts, dated September 26, 2008, are cited as "SUF ¶ _."

their users were committing massive copyright infringement through LimeWire.  *Arista Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481, 509-10 (S.D.N.Y. 2010).  Defendants unsurprisingly followed the *Grokster* suit with great interest; indeed, they filed an amicus brief supporting the *Grokster* defendants in the district court.  (Klaus Decl. Ex. 1 at 41:20-22.  ██

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████) Days before the Supreme Court's decision in *Grokster*, the *New York Times* quoted Gorton as stating:  "[i]f the Supreme Court says it is illegal to produce [P2P file-sharing] software, LimeWire the company will cease to exist."  (Ex. 201.)

LimeWire, of course, did not cease to exist after the Supreme Court unanimously confirmed the illegality of the conduct of Defendants and their ilk.  Far from it:  Gorton and the other Defendants decided to thumb their noses at the law.  They capitalized off of the judicial shutdown of their competitors, seizing an open market for infringing users who had turned first to Napster, and then Grokster.  This illicit strategy worked handsomely for Gorton and his co-Defendants, as LimeWire quickly became the destination of choice for illegal peer-to-peer downloading.

This well-documented history and chronology creates a predicament for Gorton and the other Defendants now that they have to face a jury that will assess their state of mind in setting the statutory damages award.  There is no doubt how Defendants intend to try to spin this at trial.  As Gorton demonstrated the last time he took the stand in this Courtroom, Gorton will attempt to lard the record with protestations that he had a clean "state of mind" that the Defendants were acting legally in operating LimeWire:

> Q.  In this article it states, "The case is against other file-sharing services, Grokster and Morpheus, which won in lower courts.  But Mr. Gorton said that if

those rulings were overturned, it would make LimeWire vulnerable. 'If the Supreme Court says it is illegal to produce the software, LimeWire, the company, will cease to exist.'"

You see that, don't you?

A.  Yes.

Q.  And that was your state of mind before the Supreme Court ruled, correct?

A.  Well, I would point out that – I mean the Supreme Court did not say that it was illegal to produce the software.  In fact, it says producing – very clearly said producing the software by itself is fine.  And they created this whole other concept of inducement, which never occurred – I mean occurred to me that such a thing could exist prior to that actual ruling.

***And, again, as I pointed out, it was my feeling – turns out incorrectly – that LimeWire was not at great legal risk***.

. . . .

And we are a technology company that makes a piece of software that transfers files.  I still to this day have a hard time seeing that being an illegal thing or something for which I'm liable.  I understand it's not worth rehashing, all of that.

***<u>But in terms of my state of mind which I believe you were getting at, that is the state of mind I carried in my head right up until Judge Wood's ruling</u>***.

. . . .

Q.  After the *Grokster* decision came down, you didn't turn off LimeWire, did you?

A.  No.

Q.  You didn't stop distributing it, did you?

A.  No.

(Klaus Decl. Ex. 1 at 125-27. (emphases added).)

Undoubtedly Gorton and the Defendants plan to offer a reprise of their purported

"stated of mind" in defending against the damages claim.

### B. Gorton Repeatedly Has Invoked His State of Mind As to the Legality of His Conduct In Defending Against the Fraudulent Conveyance Claim

Gorton (for himself and the FLP) likewise obviously intends to defend the fraudulent conveyance claim by asserting that he did not transfer assets with the purpose of defrauding his potential future creditors, *i.e.*, the Plaintiffs. Gorton's purpose in establishing the FLPs is centrally relevant to the fraudulent conveyance claim.[2] And Gorton's conduct cries out for him to explain his intention in transferring the assets. Gorton created multiple FLPs on June 30, 2005, just three days after the Supreme Court decided *Grokster*.[3] To create the FLPs, Gorton turned to Rubinstein & Rubinstein LLP, which promotes the use of FLPs to its clients to "preserve" their "assets from attack by litigants."[4] And Gorton *admitted* during his deposition that "one of the benefits" of his FLPs was to "protect the assets in the event of a legal judgment against me personally." (SUF ¶ 31; Klaus Decl. Ex. 2 at 77:4-78:4.) Gorton stated the same

---

[2] New York Debtor and Creditor Law Section 276 declares fraudulent "'[e]very conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors.' To succeed on a claim under this provision, a plaintiff need only show actual intent to defraud creditors on the part of the transferor." *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 330 (E.D.N.Y. 2009) (quoting Section 276). *See also Posner v. S. Paul Posner 1976 Irrevocable Family Trust*, 12 A.D.3d 177, 179 (N.Y. App. Div. 2004) ("the motion court did expressly find that the conveyance was done with the actual intent to hinder, delay or defraud the Estate as the Trust's creditor. That is all section 276-a requires."). A defendant will be found liable even if he is only partially motivated by an intent to defraud a judgment; the existence of other motives, even legitimate ones, will not preclude a fraudulent conveyance claim. *See, e.g., S.E.C. v. Haligiannis*, 608 F. Supp. 2d 444, 450 n.3 (S.D.N.Y. 2009) (statute "refers simply to 'actual intent to hinder, delay, or defraud a creditor.' Thus, to the extent Haligiannis acted with mixed motives in granting the mortgage, this fact does not preclude finding his transfer fraudulent."); *Ostashko v. Ostashko*, 2002 WL 32068357, at *20 (E.D.N.Y. Dec. 12, 2002) ("The defendants have contended that in settling the lawsuit, Vladimir simply intended to acquiesce to the bank's legitimate claim. This may be true, but it does not mean that he did not also intend to defraud, hinder, or delay Tanya's claims").

[3] On that same day, Gorton transferred his 100% ownership interest in Lime Group (which in turn owned 87.1% of Lime Wire) to the MJG Lime Wire FLP.

[4] http://www.assetlawyer.com/asset_protection_millennium.htm (last visited February 24, 2011) ("Can we legally protect and preserve our assets from attack by litigants, collection agencies, the I.R.S.? The answer is YES!").

thing to Vincent Falco and Greg Bildson, both of whom independently corroborated his fraudulent intent in sworn declarations.  (Ex. 10 at ¶ 5; *see also* Falco (Vol. VI) Tr. 158:13-159:20; Bildson 9/10/08 Decl. ¶ 39.)[5]

Gorton has made it clear repeatedly that he intends to defend against the claim by saying he believed in good faith that he was establishing the FLPs for "estate planning" purposes – and that he was not concerned about his and the other Defendants' illegality in placing assets purportedly beyond reach of an eventual legal judgment.  In his summary judgment declaration, for example, Gorton claims that he "retained Mr. Rubinstein and his firm to assist" him "in estate and tax planning matters," and that relying on "their advice, in early Summer 2005," he "set up five separate family limited partnerships including the MJG Lime Wire Family Limited Partnership."  (Klaus Decl. Ex. 6, ¶ 6.)  Gorton further states that he "did not conceive of this plan of utilizing family limited partnerships in order to avoid any potential legal exposure from being sued by the Plaintiffs in this lawsuit or anyone else," because "at the time these transactions took place" in June 2005, he "did not believe that LW or [Gorton personally] would be sued for copyright infringement."  (*Id.* at ¶ 7.)

Gorton made similar statements during the hearing on Plaintiffs' motion for an order freezing Defendants' assets:

> Q.  Now, is it your position that at the time you created these family partnerships in 2005 you did not believe that LimeWire or you personally would be sued for copyright infringement?  Is that your position?

---

[5]  Falco, the former Chief Executive Officer of Free Peers, Inc., a company that distributed the peer-to-peer software application BearShare, testified that Gorton told him that he "put his personal assets into the family limited partnership so that the record companies could not get his money if they sued him and won" and "that [Falco] should do the same, but [he] didn't." (Ex. 10 at ¶ 5; *see also* Falco (Vol. VI) Tr. 158:13-159:20.)  Bildson likewise testified that Gorton told him that he had "protected his assets from liability for copyright infringement by setting up a family partnership." (Bildson 9/10/08 Decl. ¶ 39.)

A.  Yes.

. . . .

Q.  Now your testimony is that the creation of those family limited partnerships had nothing to do with the *Grokster* case, correct?

A.  Correct.

Q.  Had nothing to do with your concern about your assets being subject to a legal judgment, right?

A.  Correct.

. . . .

Q.  And your testimony is that you went to Mr. Rubinstein in January of 2005 just to receive traditional estate planning advice, correct?

A.  Correct.

Q.  You didn't go to him for asset protection advice? Is that what you're saying?

A.  Correct.

. . . .

Q.  Was your decision to meet with a lawyer to make plans for your estate related in any way to a concern on your part that you individually were going to get sued by the plaintiffs in this case?

A.  No.

Q.  How about that LimeWire was going to get sued?

A.  No.

(Klaus Decl. Ex. 1 at 34:15-19; 55:21-56:18; 97:10-16.)

**C.    Defendants Repeatedly Invoked Privilege to Block Inquiry Regarding Their State of Mind**

As the foregoing makes clear, Defendants have testified repeatedly about *part* of their

state of mind regarding the legality of their actions.  Specifically, Defendants have offered such

state of mind evidence that suits their purposes, namely, Gorton's claim that he did not believe

that he or Lime Wire was at risk of a legal judgment either before or following *Grokster*.

Plaintiffs, as is their right, have tried to get the *whole* story of what Defendants had in

mind regarding these matters.  Defendants, however, have repeatedly blocked inquiry into these

matters by invoking attorney-client privilege:



██████████████████████████████████████████  *See also id.*, Ex. 1 at 72:21-22 ("MR.

SOMMER: Objection.  *We chose not to waive privilege.*") (emphasis added); ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

     In short, Defendants have repeatedly relied on a *part* of their state of mind regarding the

legality of their conduct, while simultaneously blocking Plaintiffs' ability to discover all the facts

on these matters.  Under *Bilzerian*, Defendants have forfeited the right to offer testimony at trial

about their purported state of mind.

---

[6] Defendants claim that Fred Von Lohmann, a former lawyer with a public interest advocacy/law
firm, the "Electronic Frontier Foundation," was counsel to Defendants in connection with this
case.  As Plaintiffs demonstrate in a parallel motion filed on this date, Von Lohmann and EFF
did not have a privileged relationship with Gorton or any of the other Defendants.

III.    **ARGUMENT**

A.    **The Court Should Resolve the Issue Presented** *In Limine* **– Before Defendants Start Presenting Argument or Evidence About Their State of Mind**

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citations and internal quotation marks omitted). *See also Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2005 WL 1026515, at *3 (S.D.N.Y. May 2, 2005).

B.    **The Court Should Preclude Defendants From Offering Any Evidence or Argument At Trial Concerning Their State of Mind Regarding the Lawfulness of Their Conduct**

1.    **Plaintiffs Were Entitled to Discover All Facts Relevant to Defendants' Knowledge of the Law and the Basis for That Knowledge**

By relying on their purported good faith belief as to the legality of their actions, Defendants "assert[ed] a claim that in fairness require[d] examination of protected communications." *Bilzerian*, 926 F.2d at 1292. Plaintiffs were entitled to discover all facts relating to Defendants' state of mind, and not simply those which Defendants chose to disclose.

In *Bilzerian* the defendant asserted a good faith defense to securities fraud charges. He filed a motion *in limine* seeking a ruling that would permit him to testify regarding his belief in the lawfulness of his actions without being subjected to cross-examination on communications he had with his attorney on this subject. *Id*. at 1291. The district court held that if the defendant testified concerning his good faith regarding the legality of his conduct, it would open the door to cross-examination with respect to the basis for his belief, and that such cross-examination would allow inquiry into communications with his attorney. *Id*. The defendant chose not to testify

- 11 -

regarding his good faith, and claimed on appeal that the district court's ruling prejudiced his

defense.  *Id*.  The Second Circuit affirmed the district court's holding that the defendant's

proposed testimony about his good faith belief in the legality of his actions would necessarily

implicate his communications with counsel, and that the government was entitled to cross-

examination regarding those communications:

> Bilzerian's testimony that *he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue*.  His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.

926 F.2d at 1292 (emphasis added).  Thus, if the defendant had "asserted his good faith, the jury

would be entitled to know the basis of his understanding that his actions were legal."  *Id*. at 1294.

*See also Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,* 1996 WL 173138, at *4

(S.D.N.Y. Apr. 12, 1996) (under *Bilzarian*, "touchstone" is that party's claim that he "thought

his actions were legal put his knowledge of the law and the basis for his understanding of what

the law required in issue.").  As courts have made clear, a party "cannot be permitted, on the one

hand, to argue that it acted in good faith and without an improper motive and then, on the other

hand, to deny . . . access to the advice given by counsel where that advice . . . played a

substantial and significant role in formulating the actions taken by [the defendant]."  *Pereira v.

United Jersey Bank*, 1997 WL 773716, at *6 (S.D.N.Y. Dec. 11, 1997)).

    In *In re County of Erie*, 546 F.3d 222 (2d Cir. 2008), the Second Circuit recently re-

affirmed *Bilzerian*, holding that the "assertion of a good-faith defense involves an inquiry into

state of mind, which typically calls forth the possibility of implied waiver of the attorney-client

privilege."  *Id*. at 228-29.  If a party wants to rely on its purported state of mind regarding legal

matters, the party has to open up discovery to *all* of the putatively privileged matters that

informed its thinking, or else not testify about its state of mind.  *See id*. at 229.  *See also*

*Childress v. Taylor*, 798 F. Supp. 981, 994-95 (S.D.N.Y. 1992) ("Testimony describing

[defendant's] perception of and reliance upon the then-existing state of copyright law would

have been admissible on the issue of her state of mind, although it would constitute a waiver of

the attorney-client privilege." (citing *Bilzerian*)).

Defendants have said and no doubt will say again in opposition that they are not

testifying about their state of mind based on communications with counsel, but rather some

belief about the legality of their conduct totally independent of what their lawyers told them.

This is sophistry – it is essentially Gorton saying that "the half of my brain that is testifying

about my beliefs on legal matters is divorced from the half of my brain that remembers what my

lawyers and I discussed."  Following *Erie*, courts repeatedly have rejected this type of tactic to

end-run *Bilzerian*:

> [A] party need not explicitly rely upon advice of counsel to implicate privileged
> communications.  Instead, advice of counsel may be placed in issue where, for
> example, a party's state of mind, such as his good faith belief in the lawfulness of
> his conduct, is relied upon in support of a claim of defense.  Because legal advice
> that a party received may well demonstrate the falsity of its claim of good faith
> belief, waiver in these instances arises as a matter of fairness, that is, it would be
> unfair to allow a party to 'use[ ] an assertion of fact to influence the
> decisionmaker while denying its adversary access to privileged material
> potentially capable of rebutting the assertion.'

*Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010)

(quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)).  Thus, even if a

defendant is "not claiming reliance on the advice of his attorney," a plaintiff would be entitled to

communications relating to such advice if the defendant's "testimony implicated such advice,

that is, if it turned out that he had received advice as to the legality of his actions from the

attorney."  *Bodega Invs., LLC ex rel. Kreisberg v. United States*, 2009 WL 2634765, at *3

(S.D.N.Y. Aug. 21, 2009) (discussing *Erie* and *Bilzerian*).[7]  This is true "even if the privilege

holder does not attempt to make use of a privileged communication; he may waive the privilege

if he makes factual assertions the truth of which can only be assessed by examination of the

privileged communication."  *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y.

1996).  *See also Bilzerian*, 926 F.2d at 1292; *Pall Corp. v. Cuno Inc.*, 268 F.R.D. 167, 169,

(E.D.N.Y. 2010) (courts "frequently conclude that a party waives the protection of the attorney-

client privilege when the party voluntarily injects into suit a question that turns on state of

mind").

Under this firmly settled law, Defendants had a choice when they started having Gorton

offer testimony about his state of mind:  Gorton could say nothing or, if he did say something,

Plaintiffs were entitled to all discovery relating to Defendants' state of mind, including attorney-

client communications.  Defendants instead tried to use the privilege as sword and shield –

exactly what *Bilzerian* prohibits.  Gorton testified that even after the Supreme Court's decision in

*Grokster* was issued, and up until the Court's summary judgment ruling last May, he did not

believe that his actions or the LimeWire service were illegal.  In defending against the fraudulent

conveyance claim, Gorton has advanced a good faith defense, *i.e.,* that at the time he created and

transferred assets into the FLPs, he did not believe that the LimeWire service was illegal or that

---

[7]  *See also, e.g., Bank Brussels Lambert,* 1996 WL 173138, at *4 ("A party does not have to use
the phrase 'reliance on counsel' to put in issue attorney-client communications."); *In re Human
Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 160 (D.N.J. 2008) (although defendant "represent[s]"
that it is "not relying on the advice of counsel or any other privileged communication . . . in
support of its good faith immunity defense" such "reliance is implicit to [the good faith]
defense"); *Abbott Labs. v. Baxter Travenol Labs., Inc.*, 676 F. Supp. 831, 832-33 (N.D. Ill. 1987)
("reliance on advice of counsel" is "as a practical matter, absolutely essential to the good faith
defense"); *Oxyn Telecomms., Inc. v. Onse Telecom*, 2003 WL 660848, at *6 (S.D.N.Y. Feb. 27,
2003) ("[I]f a defendant asserts his reliance on advice of counsel, or asserts good faith in either a
claim or a defense, the basis for that reliance, and the state of his knowledge, including legal
advice from counsel, will be subject to disclosure.").

LimeWire or he could be subject to a judgment.  Furthermore, Gorton has admitted that he received legal advice on copyright issues from counsel both before and after the *Grokster* decision.  Gorton's good faith statements necessarily implicated the substance of those communications, and Plaintiffs were entitled to discovery of them.  Defendants' repeated invocation of the privilege to block any inquiry into such communications unfairly denied Plaintiffs information necessary to test the viability of Defendants' good faith defenses.

>        **2.     Having Blocked Discovery on the Issue, Defendants Cannot Now Offer Any Argument or Evidence Regarding Their Belief in the Lawfulness of Their Conduct**

Having repeatedly blocked Plaintiffs from conducting any discovery into attorney-client communications regarding the legality of their actions, Defendants cannot now offer any argument or evidence concerning their belief in the lawfulness of their conduct.

The "attorney-client privilege cannot at once be used as a shield and a sword."  *Bilzerian*, 926 F.2d at 1293.  *See also In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (a party cannot "attempt[] to use the privilege both as 'a shield and a sword'" by "partially disclos[ing] privileged communications or affirmatively rely[ing] on [them] to support its claim or defense and then shield[ing] the underlying communications from scrutiny"); *Allstate Ins. Co. v. Serio*, 2000 WL 554221, at *11 (S.D.N.Y. May 5, 2000) (same).

Thus, where, as here, a defendant "assert[s] good faith as a defense to willful infringement" and "place[s] the substance of his communications in issue," but "assert[s] the attorney-client privilege at his deposition to prevent inquiry into his communications with counsel" and "block[s] his adversary from conducting discovery on this issue, he will not now be heard to advance" the defense.  *E.G.L. Gem Lab Ltd. v. Gem Quality Inst,., Inc.*, 90 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2000).  Courts repeatedly have held that the failure to make full disclosure during discovery of attorney-client communications which necessarily underlie a good

faith defense constitutes a waiver of the defense.  *See, e.g., Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2002 WL 737482, at \*2 (S.D.N.Y. Apr. 26, 2002) ("several courts have held that failure to make full disclosure during discovery constitutes a waiver of the advice-of-counsel defense"); *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) (precluding good faith defense because defendant waived defense "by objecting, based on the attorney-client privilege, to [plaintiff's] discovery requests"); *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 891, 894 (S.D.N.Y. 1990) ("Where a party intends to rely at trial on the advice of counsel as a defense to a claim of bad faith, that advice becomes a factual issue, and opposing counsel is entitled to know not only whether such an opinion was obtained but also its content and what conduct it advised.  A party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; failure to do so constitutes a waiver of the advice-of-counsel defense.").  Defendants therefore have waived the ability to offer at trial any argument or evidence concerning their belief in the lawfulness of their conduct.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion.

Dated:  February 25, 2011                    Respectfully submitted

                                             _____*/s/ Kelly M. Klaus*_____
                                             Kelly M. Klaus

                                             Attorney for Plaintiffs
                                             Munger, Tolles & Olson LLP
                                             355 South Grand Avenue, 35th Floor
                                             Los Angeles, CA 90071-1560
                                             (213) 683-9100
                                             (213) 687-3702 (Fax)