REDACTED VERSION
-COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC, fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM ASSERTING PRIVILEGE OVER COMMUNICATIONS WITH FRED VON LOHMANN OR THE ELECTRONIC FRONTIER FOUNDATION**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Susan T. Boyd *(pro hac vice)*
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
*Attorneys for Plaintiffs*

Date: February 25, 2011

13250433.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 3

    A.   Von Lohmann and EFF.............................................................................. 3

    B.   Von Lohmann Openly Advises Peer-to-Peer Developers to Develop
         "Plausible Deniability" and Avoid Incriminating Evidence ...................... 3

    C.   Defendants Had Limited Direct Interaction with von Lohmann or The EFF ........ 5

    D.   Defendants Follow von Lohmann's Widely Publicized Roadmap...................... 6

    E.   EFF and von Lohmann File an Amicus Brief in the Lime Wire Litigation
         on Behalf of Neither Party ........................................................................ 7

    F.   Lime Wire Claims Privilege over Communications with von Lohmann ............. 8

    G.   Plaintiffs Take Further Discovery Regarding the Purported Attorney-
         Client Relationship.................................................................................... 9

III.  ARGUMENT ....................................................................................................... 9

    A.   Defendants' Baseless Assertion of an Attorney-Client Relationship
         Threatens to Block Inquiry into Highly Relevant Matters................................ 9

    B.   Lime Wire Cannot Substantiate a Claim of Privilege................................... 9

    C.   Von Lohmann's (and EFF's) Actions Were Inconsistent with the Asserted
         Attorney-Client Relationship.................................................................... 11

IV.   CONCLUSION.................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Arista Records LLC v. Lime Group LLC,*
   715 F. Supp. 2d 481 (S.D.N.Y. 2010)............................................................8, 9, 12

*Bryant v. Media Right Prods., Inc.,*
   603 F.3d 135 (2d Cir. 2010)..........................................................................9

*In re Air Crash at Belle Harbor, New York on November 12, 2001,*
   241 F.R.D. 202 (S.D.N.Y. 2007) ..............................................................10, 11

*In re Bonanno,*
   344 F.2d 830 (2d Cir. 1965)....................................................................1, 10, 11

*In re Grand Jury Proceedings,*
   219 F.3d 175 (2d Cir. 2000)..........................................................................9

*MGM v. Grokster,*
   545 U.S. 913 (2005).................................................................................4, 5, 6

**STATE CASES**

*People v. Deutsch,*
   164 Misc. 182 (N.Y. Sup. Ct. 1994) ...........................................................11

**OTHER AUTHORITIES**

http://www.onehouse.com/pho.htm .....................................................................5

www.eff.org/about (February 24, 2011) ...............................................................3

www.eff.org/about/history (February 24, 2011)....................................................3

## I.    INTRODUCTION

Plaintiffs respectfully request that the Court order *in limine* that communications between Defendants and Fred von Lohmann or other attorneys at the Electronic Frontier Foundation ("EFF") are not covered by a claim of privilege because there was no attorney-client relationship between them.  The Court's original Summary Judgment Opinion referred to an *in camera* declaration from Mark Gorton stating that von Lohmann gave Defendants "confidential legal advice regarding the need to establish a document retention program to purge incriminating information about LimeWire users' activities."  Doc. No. 216 at 14-15.  Following a letter from EFF, the Court entered an Order excising this language, but also stating that "the Court is of the view that it would benefit from further briefing on the issue of whether the statements are protected by attorney-client privilege."  Doc. No. 224 at 1-2.

Plaintiffs have taken further discovery, and it is now apparent that Defendants and EFF/von Lohmann did not have an attorney-client relationship.  EFF/von Lohmann interacted with Gorton and the Defendants the way they interacted with multiple peer-to-peer services and the public generally:  as public advocates, providing pointers and "how to's" to numerous companies about maintaining "plausible deniability" in order to avoid copyright liability.  The fact that von Lohmann and other EFF lawyers have bar cards does not mean that their discussions with Lime Wire were privileged.  Second Circuit law is clear that the party claiming privilege has the burden to show *with facts* that advice was rendered in the course of an attorney-client relationship; the party claiming privilege may not satisfy this burden with "conclusory or ipse dixit" assertions.  *In re Bonanno,* 344 F.2d 830, 833 (2d Cir. 1965).  *Ipse dixit* is all that Defendants offer to support the privilege claim.  In reality:

13250433.1

- ████████████████████████████████████████
  ████████████████████████████████
  ████████ and "a lawyer who works for the Electronic Freedom Foundation [*sic*]. . . . I'm not sure if that's a -- if there's a technical -- what, you know, when you talk to a lawyer, is it always advice or something?" *See* Ex. 1 at 154:5-7, Ex. 2 at 48:10-15[1];

- ███████████████████████████████████
  ████████████████

- ████████████████████████████████████████
  ████████████████████████████████████
  ██████████

- von Lohmann and EFF filed an *amicus* brief in this case, representing to the Court that they were a *neutral* party, but did not advise this Court that they had (as Defendants now claim) an ongoing attorney-client relationship with Lime Wire related to *this very case* (Doc. No. 133); and

- upon learning of the Court's statement referring to him in the original summary judgment opinion, ████████████████████████████████
  ████████████████████████████
  ████████████████████████████████
  ████████████████████████

---

[1] "Ex. __" refers to the exhibits attached to the concurrently filed Declaration of Susan Traub Boyd in Support of Plaintiffs' Memorandum of Law in Support of Motion *In Limine* To Preclude Defendants from Asserting Privilege Over Communications with Fred von Lohmann or the EFF.

Dubious practices such as purging incriminating information about Lime Wire users'
illegal activities and employing stratagems to create "plausible deniability" will be highly
relevant at the upcoming trial, including to Defendants' vicarious liability and where within the
statutory damages range to set the statutory award.  Defendants should not be permitted to
continue to throw up claims of privilege to block legitimate inquiry into their communications
about these subjects with people who were not Defendants' lawyers.  This motion should be
granted.

## II.    BACKGROUND

### A.    Von Lohmann and EFF

From 2002 through late 2010, von Lohmann was a senior staff attorney with the EFF.
EFF is an advocacy organization, which publicly boasts that its mission is to combat copyright
owners (including the Plaintiff-record companies) that EFF accuses of "trying to dumb down
technology to serve their 'bottom lines' and manipulate copyright laws[.]"
www.eff.org/about/history (last visited February 24, 2011).  While EFF has lawyers on staff and
sometimes represents parties in litigation, much of EFF's work is in the sphere of public
activism, "[b]lending the expertise of lawyers, policy analysts, activists, and technologists."
www.eff.org/about (last visited February 24, 2011).

### B.    Von Lohmann Openly Advises Peer-to-Peer Developers to Develop "Plausible Deniability" and Avoid Incriminating Evidence

Neither EFF nor von Lohmann have limited their advice and activism to private clients in
the confines of attorney-client relationships.  On the contrary, they have aired their advice and
opinions publicly for years.  For example, in the wake of the Ninth Circuit's 2001 decision
affirming (in large part) Judge Patel's decision to enjoin the Napster service, von Lohmann
offered advice to other peer-to-peer services about how they could do the same thing that

- 3 -

Napster was doing but avoid that company's fate in the legal system. Von Lohmann's 2001 "primer" – openly published on the EFF website and elsewhere – stated that, to avoid liability from anticipated litigation by copyright holders, peer-to-peer services should create "plausible deniability" by "choos[ing] an architecture that will convince a judge that . . . monitoring and control is impossible." Ex. 3 at 8-9; Ex. 4 at 10-11. In the same primer, von Lohmann also suggested that peer-to-peer developers should avoid "software that sends back usage reports" because such usage reports "may lead to more knowledge than you want." *Id.* Von Lohmann's "primer" was widely read among peer-to-peer developers. Ex. 5 at 116:4-11. Von Lohmann also presented a version of this paper at conferences attended by peer-to-peer developers, such as the February 2003 IPTPS conference. Ex. 6; Ex. 5 at 114:15-116:11. ███████████

███████████████████████████████████████████

███████

Von Lohmann also regularly communicated *en masse* with the principals of the major peer-to-peer services who were jockeying to win-over Napster's ready-made user base of millions of infringing users, as well as the consultants and lobbyists these services employed. In August 2003, for example, von Lohmann sent an email to Gorton, Bildson, Mike Weiss (StreamCast), Matt Neco (Morpheus), Philip Corwin (a lobbyist on behalf of Kazaa), and others entitled "Interesting RIAA subpoena stats" in which he forwarded research monitoring RIAA enforcement efforts vis-à-vis file sharing at college campuses. Ex. 8; Ex. 5 at 29:9-10, 30:14-19. Likewise, a Sept. 13, 2002 email from von Lohmann to Gorton, Bildson, Weiss and Vinnie Falco (Bearshare) references a group meeting regarding the *Grokster* litigation. Ex. 9; Ex. 5 at 101:4-102:14. *See also* Ex. 10 ███████████████████████████████

- 4 -

███████████████████████████████████████████

████████ Ex. 5 at 36:10-25.

While *some* of von Lohmann's *private* communications with Morpheus may have occurred in the context of von Lohmann's representation of that *particular company* in the *Grokster* litigation, Lime Wire cannot plausibly claim that von Lohmann was providing confidential legal advice when von Lohmann acted in his role as an advocate on behalf of peer-to-peer developers *en masse.* ██████████████████████████

███████████████████████████████████████

In fact, von Lohmann has doled out so much advice in so many public forums he cannot recall all of the individuals he has spoken to – even those he advised in depth. ███████

██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████

### C.   Defendants Had Limited *Direct* Interaction with von Lohmann or The EFF

Although von Lohmann, Bildson, and Gorton (von Lohmann's primary contacts at Lime Wire) certainly were *acquainted* with each other, and participated in group discussions within the peer-to-peer industry, the actual *direct* contact between Defendants and von Lohmann was quite limited. ████████████████████████████████████████

---

[2] http://www.onehouse.com/pho.htm.  *See also* Ex. 5 at 22:14-25 (von Lohmann testimony describing Pho list).

13250433.1



**D.      Defendants Follow von Lohmann's Widely Publicized Roadmap**

Although Lime Wire had little *direct* interaction with von Lohmann, Lime Wire and other

peer-to-peer services followed much of von Lohmann's widely publicized "primer" to the letter.

Where Napster had maintained central servers that facilitated mass infringement, Grokster and

others utilized a decentralized architecture, and relied on that technological difference to claim

that they had no "actual knowledge of specific acts of infringement." *MGM v. Grokster*, 545

U.S. 913, 927 (2005).  The Supreme Court saw through this illicit strategy, holding unanimously

---

[3]



13250433.1

that a defendant that distributes a product like a peer-to-peer service "with the object of promoting" its use to infringe is liable under the copyright laws. *Id.* at 919.

Lime Wire, too, implemented von Lohmann's public advice with gusto.



Declarations submitted *in camera* by Gorton and Lime Wire counsel Charles Baker attribute much of this advice to von Lohmann. Doc. No. 216 at 14-15. Such advice also is fully consistent with von Lohmann's "primer" in which he instructs peer-to-peer developers to maintain "plausible deniability" and to avoid gathering user data that "may lead to more knowledge than you want." Exs. 3-4, 6.

### E.   EFF and von Lohmann File an Amicus Brief in the *Lime Wire* Litigation on Behalf of Neither Party

On September 26, 2008, EFF (along with other entities) sought leave to submit a brief *amici curiae* — with von Lohmann listed as "of counsel" — purportedly "on behalf of neither party." The brief purports to offer "no view on which parties should prevail" in connection with "the [then-] pending cross-motions for summary judgment." *See* Doc. No. 133 at 2. The *amici* filing nowhere discloses that EFF or von Lohmann ever acted as legal counsel to Defendants, let

13250433.1

alone that EFF and von Lohmann were concurrently advising Defendants related to *this very litigation. Id; see also* Ex. 14 at nos. 5-14.

**F.     Lime Wire Claims Privilege over Communications with von Lohmann**

Notwithstanding von Lohmann and EFF's public advocacy – reportedly on "behalf of neither party" – Lime Wire has found it convenient to assert a claim of privilege to block Plaintiffs from seeking discovery into communications between Lime Wire and von Lohmann/EFF. Defendants first asserted privilege over a few dozen communications included in a privilege log served in July 2008 – the very same time period in which Lime Wire and EFF were drafting their purportedly separate briefs in conjunction with the summary judgment proceedings before this Court.

Lime Wire again asserted privilege over communications with von Lohmann in December 2008 in conjunction with Lime Wire's motion to strike the Bildson Declaration. In support of this motion to strike, Defendants submitted *in camera* declarations from CEO (and named Defendant) Mark Gorton, as well as from Defendants' then-litigation counsel, Charles Baker. *See Arista Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481, 500 (S.D.N.Y. 2010).

The Court's May 11, 2010 Order struck a handful of sentences and phrases from the Bildson declaration. In ordering this relief, the Court noted that Mark Gorton had stated that "an[] attorney, Federick von Lohmann, gave [Defendants] confidential legal advice regarding the need to establish a document retention program to purge incriminating information about LimeWire users' activities." Doc. No. 216 at 14-15.

On May 18, 2010, EFF wrote the Court, requesting that it amend the summary judgment opinion to remove the reference to von Lohmann's advice. Plaintiffs opposed the request. The Court amended the opinion to remove the reference to von Lohmann's advice, which had not been necessary to the Court's summary judgment ruling. *See* Doc. No. 224 at 2. The Court

13250433.1

concluded that it would "benefit from further briefing on the issue of whether the statements are protected by attorney-client privilege." *Id.*

### G.    Plaintiffs Take Further Discovery Regarding the Purported Attorney-Client Relationship

On February 2-3, 2011, Plaintiffs deposed von Lohmann and the EFF. On February 7, 2011, Plaintiffs deposed Mark Gorton. As further described in the Argument section immediately below, that discovery confirms that there was no *bona fide* attorney-client relationship here.

## III.   ARGUMENT

### A.    Defendants' Baseless Assertion of an Attorney-Client Relationship Threatens to Block Inquiry into Highly Relevant Matters

The attorney-client privilege "stands in derogation of the public's 'right to every man's evidence'" and thus "it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). Defendants' claim of privilege has blocked inquiry into whether Defendants were advised to (and did) create "plausible deniability" by "purg[ing] incriminating information" and "choos[ing] an architecture that will convince a judge that . . . monitoring and control is impossible." *See* Exs. 3-4, 6. Defendants' right and ability to supervise the massive infringement occurring on the Lime Wire system, and their cynical attempt to "convince a judge" that such supervision was impossible, are highly relevant to Plaintiffs' remaining claims of vicarious liability. *Arista*, 715 F. Supp. 2d at 518. These issues also go directly to the Defendants' state of mind, which is the first factor that *Bryant* lists for the jury to consider in setting an award within the statutory range. *See Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

### B.      Lime Wire Cannot Substantiate a Claim of Privilege

"To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *In re Air Crash at Belle Harbor, New York on November 12, 2001,* 241 F.R.D. 202, 203 (S.D.N.Y. 2007).

The burden of establishing the attorney-client relationship "is not, of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *In re Bonanno,* 344 F.2d at 833. Thus, in *In re Bonanno,* the Second Circuit held that no attorney-client relationship had been established, despite testimony from both the putative client (Bonanno) and the putative lawyer (Maloney) asserting the relationship. *Id.* at 833. The Court rejected as not credible Bonanno's attempt to explain inconsistent prior testimony suggesting that he had not hired Maloney. *Id.* at 832. The Court also focused on the fact that Maloney "was unable to pinpoint either the date he was retained or corroborative details of the alleged retainer." *Id.* Such "vague, confusing and what would appear to be contrived testimony" was insufficient to establish an attorney-client relationship. *Id.* at 833. *See also In re Air Crash,* 241 F.R.D. at 203 ("[i]ndependent facts beyond the attorney's statements must be shown in order to demonstrate the existence of an underlying attorney-client relationship").

Likewise, here, Defendants cannot establish that they had an attorney-client relationship with von Lohmann or EFF at all, let alone that all of the communications with von Lohmann were in the context of that relationship (as opposed to von Lohmann's roles as "public advocate" or as an asserted "neutral" party in this litigation). ███████████████

████████████████████████████████████████████████

███████████████



Although the absence of such formalities is not dispositive, it certainly may be considered when evaluating a defendant's true intentions. *See In re Air Crash*, 241 F.R.D at 203; *People v. Deutsch*, 164 Misc. 182, 186 (N.Y. Sup. Ct. 1994).

In short, all Defendants can offer are "conclusory or ipse dixit assertions" (*In re Bonanno*, 344 F.2d at 833) entirely bereft of "independent facts." *In re Air Crash*, 241 F.R.D at 203. This is insufficient.

### C.   Von Lohmann's (and EFF's) Actions Were *Inconsistent* with the Asserted Attorney-Client Relationship

Defendants' conclusory assertions are particularly suspect here because von Lohmann's (and EFF's) actions flatly contradict any plausible claim of privilege. *First*, as noted above, von

- 11 -

Lohmann and EFF filed an *Amicus* Brief in this case "**in support of neither party.**" *See* Doc. No. 133 (emphasis added). The *Amici* (including von Lohmann and EFF) expressed "no view on which parties should prevail in the pending cross-motions for summary judgment." *Id.* at 2. Von Lohmann and EFF thus represented to this Court that they did not have a dog in the fight. Those statements simply cannot be squared with Defendants' current claim that von Lohmann and the EFF were *at that very same time* Defendants' lawyers *in that very same litigation. See* Ex. 14 at Nos. 5-16 (privilege log entries describing "confidential email reflecting request for and provision of legal advice re LimeWire/Arista Records litigation").

    *Second*, in December 2007, von Lohmann posted an article on the Electronic Frontier Foundation website titled "LimeWire on 1 in 3 Desktops World-Wide." Ex. 15; Ex. 5 at 43:20-44:5. That article reported that Lime Wire was installed on 36.4% of all PCs. *Id.* Von Lohmann then mused:

> This is worth noting for at least two reasons. First, it reminds
> everyone that when it comes to digital music, the main event is still
> P2P file-sharing, as it has been ever since Napster's debut in 1999.

*Id.* Von Lohmann's casual (but dead-accurate) observation that the installation of Lime Wire software on a PC *necessarily* could be equated with the "file sharing" of "digital music" similar to what had occurred in the Napster era was contrary to Lime Wire's litigation interests at the time. *See Arista*, 715 F. Supp. 2d at 510 (relying on, *inter alia*, "mainstream news articles about widespread infringing activities through LimeWire and similar peer-to-peer networking program" in establishing Lime Wire's knowledge of infringing activities and finding Lime Wire liable for inducement). Von Lohmann's willingness to make such statement to the detriment of his own purported client gives the lie to any notion that Lime Wire and von Lohmann were in a *bona fide* attorney-client relationship.

- 12 -

*Third,* ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████

    In short, von Lohmann's own statements and actions confirm that he was *not* acting as counsel for Defendants during the relevant period.

---

[4] Indeed, Mr. Page remains an attorney of record on the docket today.

13250433.1

## IV.   CONCLUSION

For the reasons stated, the Court should rule that communications between Defendants

and Fred von Lohmann or EFF are not covered by a claim of privilege.


Dated:  February 25, 2011
       San Francisco, California

Respectfully submitted

               */s/ Susan Traub Boyd*
               Susan Traub Boyd
Attorney for Plaintiffs
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
(415) 512-4000
(415) 512-4077(Fax)