UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS LLC fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.,<br><br>                                        Plaintiffs,<br><br>            v.<br><br>LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,<br><br>                                        Defendants. | 06 Civ. 05936 (KMW)<br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS' ARGUMENT THAT OTHER ILLEGAL SERVICES WOULD HAVE INDUCED INFRINGEMENT OF PLAINTIFFS' COPYRIGHTS IF LIME WIRE HAD NOT**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
Attorneys for Plaintiffs

Date: February 25, 2011

**I.      INTRODUCTION**

Defendants will contend at trial that Lime Wire did not cause Plaintiffs any harm, because some other illegal service would have induced the infringement of Plaintiffs' copyrighted works had Lime Wire never existed.  Such evidence and argument—effectively, that Plaintiffs' copyrights "would have been stolen anyway"—ignores this Court's finding that the Defendants are liable for intentional wrongdoing, undermines the deterrent purpose of the Copyright Act, and is irrelevant to Plaintiffs' right to recover payment from Defendants for the property they took for free.

*First, this Court has found that* <u>*Defendants*</u> *– not some other wrongdoer – purposefully and intentionally induced the infringement of Plaintiffs' copyrights on a "massive scale."*  Defendants cannot avoid responsibility for their intentional theft of Plaintiffs' property by pointing the finger at others who, Defendants speculate, were waiting to do the same.

*Second, in light of the deterrent purpose of the Copyright Act, the prevalence of other illegal services can only result in a* <u>*higher*</u> *statutory award.*  Defendants have it backward when they argue that Plaintiffs' award should be reduced because other illegal services would have stolen their copyrights anyway.  Their argument that "everybody does it" has no place in a statutory damages action under the Copyright Act, which *requires* the jury to consider deterrence in calculating the appropriate statutory damages award.  *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010), *cert. denied*, 131 S.Ct. 656 (2010).  The fact that someone else was waiting in the wings to commit the same wrongs does not excuse Defendants' own wrongful conduct – rather, it compels a *larger* award, to both punish Defendants for the widespread lawlessness and disrespect for copyright that their illegal service fostered and to send a message to those other would-be wrongdoers.  If infringers could justify their wrongful acts on the

- 1 -

grounds that another wrongdoer would always emerge in their absence, it would impermissibly write deterrence out of the law.

*Third, the prevalence of other illegal services has no effect on Plaintiffs' actual damages or lost revenues, because Defendants indisputably took without payment what Plaintiffs distribute for a fee.* Plaintiffs will show that when legitimate distributors take what Lime Wire stole for free, those legitimate services pay a certain price. For example, when a consumer downloads a Plaintiff's copyrighted work through the iTunes Store, Apple pays the Plaintiff for that download. But when a consumer downloads the work through Lime Wire, Defendants pay no one. Plaintiffs are entitled to those lost revenues – the fee they would have received had Defendants played by the rules. Lost revenue is measured by reference to what actually happens in the real world, not from a hypothetical world without Lime Wire. To hold otherwise would permit Defendants to "steal with impunity" by hiding behind the conduct of other hypothetical wrongdoers. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001).

Defendants should not be permitted to contend that they did not cause harm to Plaintiffs because some other illegal service would have substituted in Lime Wire's absence. This contention has no place in the consideration of damages under either the statutory or common law measure. This Motion should be granted.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This Court has already found that Lime Wire, "by distributing and maintaining Lime Wire, intentionally encouraged direct infringement by Lime Wire users," May 25, 2010, Order (Dkt. 223) at 29, that Lime Wire was primarily used for infringement, and that such infringement occurred on a "massive scale." *Id*. at 33. So Defendants are liable under the federal copyright

laws for inducing infringement of works recorded after February 15, 1972, and under state common law for sound recordings created before that date.  Plaintiffs elected statutory damages pursuant to 17 U.S.C. § 504(c) for their federal copyright claims.  Declaration of Melinda E. LeMoine (hereinafter, "LeMoine Decl."), Exh. 1 [September 23, 2010, letter from Glenn D. Pomerantz to Judge Wood regarding trial issues].  Plaintiffs will seek compensatory and punitive damages to be awarded under state law for the state law claims for common law copyright infringement and unfair competition.  *Id.*

Defendants have made clear they will point to other illegal and unauthorized services to attempt to minimize their own conduct.  Two of Defendants' experts, Aram Sinnreich and George Strong, cite to other illegal peer-to-peer file-sharing services and other forms of illegal, unlicensed distribution of music to argue that Lime Wire did not cause harm to Plaintiffs.  They argue that, in a "but for" world where Lime Wire did not exist, users would have infringed Plaintiffs' copyrights through these other illegal means, and that therefore none of Plaintiffs' damages are "attributable to" Lime Wire.

For example, Strong argues that Plaintiffs cannot attribute much if any lost sales or revenues to Lime Wire because "[t]he widespread availability of alternative means of music sharing . . . suggest[s] most, if not all, LimeWire users would have turned to alternatives other than purchasing music."  LeMoine Decl., Exh. 2 [January 14, 2011, Expert Report of George G. Strong, Jr.], pp. 27-38.   Sinnreich makes a similar argument when he opines that "[t]o the extent that freely available online music has affected music sales, LimeWire's role is minimal" because "LimeWire's closure has little if any consequence" on users' ability to access illegal content.  LeMoine Decl., Exh. 3 [January 14, 2011, Expert Report of Aram Sinnreich], pp. 22-25.  As Sinnreich explained at his deposition:

- 3 -

> I'm offering the opinion that there are so many channels through which music fans can access music freely over the internet that LimeWire's absence from that mix would have a minimal effect . . . [A]nd, therefore, that . . . the aggregate impact of LimeWire on the behavior of that marketplace and the … market opportunities is negligible compared to the bulk of those other factors [that purportedly contributed to declines in music sales and revenues].

LeMoine Decl., Exh. 4 [Sinnreich Depo Transcript] at 194:8-16.  Sinnreich opines in his report, in a section titled "Free Downloading Will Continue Regardless Of Damages Assessed Against LimeWire," that it is "highly unlikely" any damages assessed against Lime Wire will have a deterrent effect on other illegal distribution of music over the Internet in light of the fact that Lime Wire was only one of dozens of peer-to-peer file sharing programs and that unlicensed distribution of music is available through many different sources.  *Id*. at p. 60; *see id*. at p. 25.

## III.   ARGUMENT

Defendants should not be permitted to excuse their own conduct or minimize their liability for damages on the specious ground that Plaintiffs' property would have been stolen anyway by someone else.  That effectively eliminates the jury's required consideration of deterrence for statutory awards.  In the actual damages analysis, it would ignore the price legitimate distributors pay for the same privileges Lime Wire took for itself, and thus "mean that in such circumstances an infringer may steal with impunity."  *On Davis*, 246 F.3d at 166. This Court should tolerate neither result.

### A.   Defendants' Proven Unlawful Conduct – Not Some Other Illegal Service's – Is What The Jury Must Consider In Weighing Appropriate Damages

The Court has already held that Defendants intentionally induced infringement of Plaintiffs' copyrights on a massive scale.  The jury's task will be to set the proper damages award for Defendants' proven wrongful conduct, not to imagine a world where Defendants never

existed. The thought experiment Defendants and their experts conduct ignores this simple point. This trial concerns the consequences Defendants will face for their proven liability, not whether anyone else would have been hypothetically liable in a world without Lime Wire.

The law does not permit intentional wrongdoers to avoid liability by pointing the finger at someone else who might have done the same thing. For example, courts have long adhered to the original common law English rule that no right of contribution arises in favor of one who has intentionally caused harm to another. *See, e.g.*, *Anderson v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 582 F. Supp. 627, 632 (S.D.N.Y. 1984) ("It has long been the rule at common law . . . that contribution will not lie in favor of an intentional tort feasor."); *Hytko v. Hennessey*, 62 A.D.3d 1081, 1082 (N.Y. App. Div. 2009) ("[P]ublic policy precludes indemnification for those who commit intentional torts."); Restatement (Second) of Torts § 886A, cmt. J (1979). Other examples are legion: A car thief cannot defend himself by presenting expert testimony about the prevalence of other car thieves in the area. A drug dealer cannot justify her livelihood by pointing to a long line of others waiting to sell the same drugs. A shoplifter does not avoid punishment by insisting that if she hadn't shoplifted the items, her friends would have done so anyway.

Lime Wire's attempt to evade the consequences of its own proven intentional conduct by pointing to other illegal services is just as improper. While it may be in Defendants' interest to attempt to distract from their own illegal conduct, that conduct is precisely what is at issue in this trial. It cannot be justified or excused by hiding behind other wrongdoers.

    **B.    Defendants' Arguments About Other Illegal Services Would Improperly Eliminate the Deterrence Factor From The Jury's Determination Of Statutory Damages**

Deterrence is a factor the jury must consider in setting statutory damages. *Bryant*, 603

F.3d at 144.  But deterrence is not merely a factor to consider in setting damages – rather, it is one of the *principal* purposes of the Copyright Act.  The Supreme Court has observed that a central purpose of the Copyright Act's statutory damages provision is to deter conduct that is harmful to the public.  *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952) ("The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also *is designed to discourage wrongful conduct*.") (emphasis added).   And, in increasing the statutory range for damages in 1999 amendments to the Copyright Act, Congress explicitly reasoned that further deterrence was necessary to prevent piracy in the future because "many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action."  H.R. Rep. No. 106-216, at 3 (1999).

Given the well-established intent of the Copyright Act's statutory damage provision to promote damages of an amount great enough to deter conduct harmful to the public, the speculation that numerous other illegal sources of music would have infringed Plaintiffs' copyrights in the absence of Lime Wire cannot form the basis for a *lower* damage award.  Rather, the prevalence of other illegal services can militate only in favor of a higher award of statutory damages to deter those other services from committing the same illegal conduct.  *See, e.g.*, *Basic Books Inc. v. Kinko's Graphics Co*rp., 758 F. Supp. 1522, 1545 (S.D.N.Y. 1991) (concluding that "substantial damages" are necessary to deter future infringement); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc*., 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (collecting cases in which courts found that statutory damage awards "should significantly exceed the amount of unpaid license fees" in order to put infringers "on notice that it costs less to obey the copyright

laws than to violate them").

Defendants' claim that resistance is futile in the face of multiple illegal services eliminates deterrence, and substitutes enforced acceptance.  In any copyright infringement case, other potential copyright infringers will always exist – some, like Lime Wire, more flagrant and persistent than others.  If a proven infringer could reduce its damages by pointing to the existence of other wrongdoers that were waiting in line to steal the copyright owner's copyrights, then damages always would be denied in the very circumstance where they are most needed for deterrence.  This result is inconsistent with the deterrent purpose of the Copyright Act.  Permitting Defendants to argue that the illegal theft of Plaintiffs' copyrights would have occurred and will continue to occur even in the absence of Lime Wire would permit Defendants to write deterrence – which the Supreme Court has observed is a principal purpose of the Copyright Act – out of the law.  This Court should not permit the Defendants to turn the Copyright Act on its head and eliminate the deterrence factor from the jury's consideration.

### C. Defendants' Arguments About Other Illegal Services Are Immaterial In The Actual Damages Analysis

Defendants' claims about the prevalence of other illegal services should not play any role in deciding compensatory and punitive damages for the infringement of pre-1972 works.  Plaintiffs will prove such compensatory damages by showing the fair market value of Defendants' infringing use.  The Second Circuit has held that such lost revenue from legitimate uses is an appropriate measure of actual damages, even where there is no evidence that the copyright owner actually lost income.  *On Davis*, 246 F.3d at 172.  In *On Davis*, the Second Circuit recognized that in some circumstances, where the copyright owner "may be incapable of showing a loss of either sales or license to third parties" and where the infringer's venture turned out to be unprofitable, "[t]o rule that the owner's loss of the fair market value of the license fees

- 7 -

he might have exacted of the defendant do not constitute 'actual damages,' would mean that in such circumstances an infringer may steal with impunity," and concluded, "[w]e see no reason why this should be so." *Id*. at 166.  Because Plaintiffs intend to prove compensatory damages for pre-1972 works based on lost distribution fees, it does not matter whether or how many end users would ultimately have used Lime Wire or another illegal service.  The focus is on what Lime Wire took – and that can be readily established by reference to Plaintiffs' legitimate arrangements with the many distributors who play by the rules.

Lime Wire's contentions that other illegal services affected Plaintiffs' lost revenues are likewise prejudicial to Plaintiffs and risks confusing the jury with respect to the statutory damages analysis, which does not require proof of such actual damages in the first place.  *See, e.g., Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001) (observing that, where the owner of a registered copyright that has been infringed elects to recover statutory damages under 17 U.S.C. § 504(c), such damages "are available without proof of plaintiff's actual damages or proof of any damages") (internal quotation marks and citations omitted).   While "revenues lost by the copyright holder" is a factor the jury must consider in setting statutory damages, *Bryant*, 603 F. 3d at 144, permitting Defendants to avoid damages based on the assertion that the copyright owner cannot show a loss of sales would permit an infringer to "steal with impunity." *On Davis*, 246 F. 3d at 166.  Evidence and argument that, even in the absence of Lime Wire, Plaintiffs' copyrights would have been infringed anyway is not probative of anything, will unnecessarily confuse the jury and prolong the trial, and the risk of prejudice to Plaintiffs clearly outweighs any relevance such evidence and argument may have. *See* Fed. R. Evid. 403.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' motion *in limine* to exclude any evidence or argument by Defendants that Lime Wire did not cause harm to Plaintiffs because other illegal services would have caused harm to Plaintiffs' copyrights should be granted.

Dated:  February 25, 2011                                     Respectfully submitted

                                                    */s/ Melinda E. LeMoine*
                                                    Melinda E. LeMoine

Attorney for Plaintiffs
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100
(213) 687-3702 (Fax)