UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ARISTA RECORDS LLC; ATLANTIC RECORDING
CORPORATION; ARISTA MUSIC, fka BMG
MUSIC; CAPITOL RECORDS, INC; ELEKTRA
ENTERTAINMENT GROUP INC; INTERSCOPE
RECORDS; LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY RECORDS
LLC; SONY MUSIC ENTERTAINMENT, fka SONY
BMG MUSIC ENTERTAINMENT; UMG RECORDINGS,
INC; VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,                                  06 CV 5936 (KMW)

                                                                 OPINION AND ORDER
                            Plaintiffs,

            -against-

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; GREG BILDSON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                          Defendants.
-------------------------------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

I.      Introduction

        On May 11, 2010, this Court granted summary judgment in favor of Plaintiffs on their claims against Defendants Lime Wire LLC ("LW"), Lime Group LLC ("Lime Group"), and Mark Gorton (collectively, "Defendants") for secondary copyright infringement. The Court found that Defendants induced users of the LimeWire online file-sharing program ("LimeWire") to infringe Plaintiffs' copyrights. In the Court's Opinion and Order (as amended on May 25, 2010), the Court detailed this case's procedural and factual background, familiarity with which is assumed. See Dkt. Entry No. 223.

        The litigation is now in the damage phase, with a trial on damages scheduled for May 2, 2011. For the past few months, the parties have been engaged in vigorous discovery concerning

1

Plaintiffs' potential statutory damage awards. The instant dispute concerns the scope of damage-related discovery to which Defendants are entitled.

Plaintiffs have filed an objection to Magistrate Judge Freeman's Order of January 18, 2011, directing Plaintiffs "to produce internal communications referring to 'LimeWire' from the files (including email) of 10 custodians." See Dkt. Entry No. 413, at 4 (hereinafter, the "January 18 Order"); see also Dkt. Entry No. 463 (hereinafter, "Pl. Obj."). The procedural background leading up to the January 18 Order is as follows:

On November 2, 2010, Judge Freeman ordered:

> Order 1: That Plaintiffs produce all [external] communications, relating to licensing, between Plaintiffs and the 15 third-party licensees recently subpoenaed by Defendants, except for draft license agreements, from the last point in time discovery was collected ("Order 1");
>
> Order 2: That Plaintiffs produce all communications with other licensees referring or relating to LimeWire ("Order 2");
>
> Order 3: That the parties meet and confer regarding the parameters of an appropriate search for Plaintiffs' communications with their potential (as opposed to actual) licensees ("Order 3");
>
> Order 4: That Plaintiffs search for and produce internal emails regarding LimeWire contained in the email accounts of those employees of Plaintiffs who have been primarily responsible for negotiating licensing agreements with the 15 third-party licensees recently subpoenaed by Defendants ("Order 4").

See Dkt. Entry No. 339. Plaintiffs filed an objection to all four Orders.

In an Opinion and Order issued on November 19, 2010, the undersigned acknowledged the "potentially burdensome nature and broad scope of the discovery, as well as the potentially tenuous connection of the evidence sought to the damages inquiry at issue." Dkt. Entry No. 363 at 6. However, the undersigned also acknowledged "Defendants' right to seek discovery relevant to a potential defense." Id. Accordingly, the Court affirmed only Order 1. With respect to Orders 2-4, the Court stated the following:

> [The] Court holds in abeyance its decision [on Orders 2-4], to give Defendants the opportunity to make a presentation of evidence to Judge Freeman to demonstrate that the discovery pursuant to Order 1 has yielded <u>relevant evidence</u>, and that further discovery pursuant to Orders 2-4 is <u>necessary</u>. The Parties shall meet and confer in good faith regarding when production of evidence pursuant to Order 1 may be made, and when the Parties will be prepared to appear before Judge Freeman to address the need for discovery pursuant to Orders 2-4.

<u>Id.</u> at 7 (emphasis added). Thus, the undersigned was clear that, in order to reinstate Orders 2-4, Defendants would need to show (1) that the compelled discovery into communications between Plaintiffs and fifteen third-party licensees pursuant to Order 1 has "yielded relevant evidence," and (2) that further discovery is "necessary."

In response to the Court's order affirming Order 1, Plaintiffs collected multiple terabytes of data from the emails of forty-three custodians of documents, reviewed hundreds of thousand of documents, and produced over a quarter of a million pages of email communications on the subject of licensing or distributing content. (LeMoine Decl. ¶ 5.)

On January 5, 2011, Defendants requested that Judge Freeman (1) expand Order 1 (external communications) to compel Plaintiffs to search the files of additional custodians; and (2) reinstate Orders 2 and 4 (internal communications). (<u>See</u> LeMoine Decl. Exs. 5 & 6.) In support of reinstating Orders 2 and 4, Defendants argued that the discovery produced by Plaintiffs pursuant to Order 1 indicated (1) that Plaintiffs were attempting to "blacklist" LimeWire; (2) that certain employees of Plaintiffs had expressed a desire to work with LimeWire; and (3) that Plaintiffs believed that user downloads through LimeWire had actually increased Plaintiffs' revenue. (<u>See</u> January 18 Order at 3.)

On January 18, 2011, Judge Freeman (1) denied Defendants' request to expand the list of custodians under Order 1; (2) denied Defendants' request to reinstate Order 2 but (3) granted Defendants limited additional discovery under Order 4. <u>See</u> January 18 Order, at 4.

3

Determining that a "compromise would be appropriate" to balance the relevance of the requested documents with the burden to Plaintiffs, she ordered Plaintiffs to "produce internal communications referring to 'LimeWire' from the files (including email) of 10 custodians, to be agreed by the parties after good faith conference." Id. (emphasis added).

On January 19, 2011, Plaintiffs conferred with Defendants regarding which ten custodians should be searched. (LeMoine Decl. ¶ 2.) Defendants state that they selected custodians who were on their list of deponents, who had submitted sworn declarations in the case earlier, or whom Defendants believed had critical information regarding the issues at hand. See Dkt. Entry No. 499, at 7 (hereinafter "Def. Opp."). Plaintiffs, however, state that Defendants' list of ten custodians included multiple lawyers and others who regularly communicate with litigation counsel about this lawsuit. Plaintiffs state that they informed Defendants that privilege issues would be significant, and asked Defendants to exclude communications regarding this litigation, and/or to agree not to require a privilege log, but that Defendants refused. (Id. at ¶¶ 2-3.) Plaintiffs also state that they asked Defendants to confine their chosen custodians to list of primary negotiators of Plaintiffs' licensing and distribution agreements, but Defendants refused. (Id.)

On February 7, 2011, Plaintiffs filed an objection to Judge Freeman's January 18 Order. See Dkt. Entry No. 463. In their objection, Plaintiffs contend that the Defendants have failed to show that the production of more documents is 'necessary," and that the "net effect of [the January 18 Order] . . . will be to prejudice Plaintiffs with a time-consuming endeavor of collecting and reviewing tens of thousands of communications about this lawsuit, most of which are likely to end up in a privilege log rather than produced." (Pl. Reply at 2.) On February 22, 2011, Defendants filed an opposition to Plaintiffs' objection. See Dkt. Entry No. 499. In the

4

opposition, Defendants note that Plaintiffs have not yet produced any of the documents required by Judge Freeman's January 18 Order, even though they never sought or obtained a stay from this Court. (Def. Opp. at 7-8.)

For the reasons stated below, Judge Freeman's January 18 Order is AFFIRMED, with one modification.

## II.     Standard of Review and Governing Law

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and its enabling statute, the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), for non-dispositive matters, including discovery disputes, a district court shall reverse a magistrate's order only where it has been shown that the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (2002); see also Fed. R. Civ. P. 72(a); Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990). Courts in this Circuit have held that a magistrate's ruling on a discovery dispute should be overturned only for an abuse of discretion. Edmonds v. Seavey, No.08 Civ. 5646, 2009 WL 2150971, *2 (S.D.N.Y. July 20, 2009) (noting that the fact that "reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision"). A "court has the discretion to deny discovery requests if it determines that . . . 'the burden or expense of the proposed discovery outweighs its likely benefit.'" World Wrestling Fed'n. Ent'mt., Inc. v. William Morris Agency, Inc., 204 F.R.D. 263, 265 (S.D.N.Y. 2001) (quoting Fed. R. Civ. P. 26(b)(2)).

## III.    Analysis

Defendants contend that the discovery ordered by Judge Freeman in her January 18 Order is necessary, because the discovery to date has indicated, and additional discovery will further reveal (1) that Plaintiffs were attempting to "blacklist" LimeWire; (2) that, since 2008,

Defendants have attempted in good faith to work out a licensing deal with Plaintiffs; (3) that certain employees of Plaintiffs expressed a desire to work with LimeWire; and (4) that Plaintiffs believed that user downloads through LimeWire actually increased Plaintiffs' revenue, and that therefore, the shutdown of LimeWire has decreased Plaintiffs' revenue.  (See LeMoine Decl. Ex. 6, at 6-10.)  Defendants assert that all four of these issues are relevant to the two of the Bryant factors used to assess statutory damage awards: the "conduct and attitude of the parties" factor, and "the revenue lost by the copyright holder" factor.  (Id.).  See Bryant v. Media Rights Productions, 603 F.3d 135, 144 (2d Cir. 2010).

It is true that a plaintiff's conduct and attitude during the course of litigation may be relevant in setting statutory damage awards.  See Warner Bros., Inc. v. Dae Rom Trading, Inc., 877 F.2d 1120, 1126 (2d Cir. 1989) (affirming a lower court's statutory damage award due in part to the "vexatious, oppressive, and unreasonable manner" in which the plaintiff conducted the litigation).  However, the Court continues to find a merely "tenuous connection" between the evidence sought by Defendants and the "conduct and attitude of the parties."  First, Defendants contend that the discovery to date shows that "Plaintiffs actively sought to prevent all digital music partners from doing business with LimeWire."  (LeMoine Decl. Ex. 6 at 7.)  However, the Court has already determined that Plaintiffs' act of seeking to "minimize their exposure to copyright infringement that is facilitated by companies that are enabling or encouraging online users to infringe" is both "reasonable and appropriate."  See August 9, 2010 Order, Dckt. Entry No. 302, at 7.  Although this statement was made in the context of assessing Defendants' copyright misuse defense, and not in the context of a damage analysis, Defendants have failed to explain how conduct by Plaintiffs that is both reasonable and appropriate may be relevant to

Defendants' efforts to reduce statutory damage awards for which they are liable.[1]  Next, Defendants speculate that additional discovery will reveal Plaintiffs' internal discussions about whether or not to work with Defendants to resolve this lawsuit.  (LeMoine Decl. Ex. 6 at 8.)  However, the Second Circuit has made clear that compelled discovery into the settlement of an ongoing litigation event is impermissible absent any evidence indicating that a particular settlement might be collusive.   See Thornton v. Syracuse Sav. Bank, 961 F.2d 1042, 1046 (2d. Cir. 1992) ("Discovery with respect to a settlement agreement of an ongoing litigation, however, is permissible only where the moving party 'lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive . . ..'") (citation omitted).  Finally, Defendants speculate that the additional discovery may show that some of Plaintiffs' employees actually "liked" LimeWire.  (LeMoine Decl. Ex. 6 at 9.)  Defendants cite to statements by Plaintiffs' employees that it would be "great to work with LimeWire," and that they hope that Plaintiffs will extend deadlines for settlement negotiations with LimeWire.  (Id. at 9-10.)  Simply put, Defendants fail to explain how evidence that an employee of Plaintiffs "likes" LimeWire and might like to work with LimeWire is at all relevant to their damages defense, let alone "necessary."

Defendants are more persuasive in their arguments pertaining to the "revenue lost by the copyright holder" factor in Bryant.  (LeMoine Decl. Ex. 6 at 10 (citing Bryant, 603 F.3d at 144).)  Defendants correctly state that "an essential question for assessing harm to the Plaintiffs is how much higher music sales and profits would have been absent the infringement of the works by

---

[1] The Court continues to have difficulty comprehending Defendants' "blacklisting" argument.  For example, one of the "blacklisting" documents Defendants discuss involves an email between one of the Plaintiffs and a third party.  In the email, the Plaintiff communicates to the third party that, if the Plaintiff is going to provide the third party with copyrighted material, the third party must refrain from later providing that copyrighted material to entities that are infringing copyrights.  (See Eaton Decl. Ex. 12.)  Plaintiffs' desire to ensure that its business partners will refrain from working with infringing entities seems reasonable to the Court.

music consumers using LimeWire." (Id.) Defendants contend that additional discovery is necessary because it may reveal Plaintiffs' own internal discussions about the impact of the LimeWire shutdown on Plaintiffs' revenues, and show a "marked shift in the understanding of the benefits [that] P2P music services, like LimeWire, have brought to the music industry." (Def. Opp. at 11.) For example, Defendants point to a communication between a Plaintiff and a third party in which the third party notes to Plaintiff that those who are exposed to more music buy more music. (Id.)

Plaintiffs contend that they have already produced more than 22,000 pages of third-party research on the impact of peer-to-peer file sharing on the industry. (Pl. Obj. at 20.) However, third-party research may not contain Plaintiffs' own analysis and internal information regarding the impact of the LimeWire shutdown on their revenues. Indeed, Plaintiffs may have had internal communications about the ongoing impact of the LimeWire shutdown that would not be found in third-party documents, particularly research commissioned by Plaintiffs. Those communications, if they exist, may be relevant to damages.

Although the Court acknowledges the potential relevance that Plaintiffs' internal communications may have with regard to the "revenue lost by the copyright holder" factor in Bryant, the Court also agrees with Plaintiffs that permitting Defendants to search any ten custodians' files for internal communications "referring to LimeWire" will be tremendously burdensome for Plaintiffs,[2] particularly because such a review is likely to involve communications that occurred during the pendency of this lawsuit and center on the subject of this lawsuit. Indeed, Defendants have included on their proposed list of custodians multiple

---

[2] Plaintiffs contend that, for just one custodian alone, internal communications referring to "LimeWire" will total in the tens of thousands.

8

lawyers, and others who regularly communicate with litigation counsel about this lawsuit.[3] (LeMoine Decl. ¶ 4.) Plaintiffs are correct that many of the communications that Defendants are requesting are likely to need to be listed in a privilege log rather than be produced.[4]

Taking into consideration both the burden on Plaintiffs that this discovery will impose, and the tenuous relevance of the parts of Defendants' discovery request pertaining to the "conduct and attitude of the parties" factor, the Court limits those custodians whose files may be searched for <u>internal</u> communications referring to LimeWire to <u>five custodians from among the group of those forty-three custodians whose external communications have already searched pursuant to Judge Freeman's November 2, 2010 Order</u>.[5] Limiting the custodians in this way comports with Judge Freeman's January 18, 2001 Order. In that order, Judge Freeman denied Defendants' request to expand their list of custodians whose <u>external</u> communications could be searched beyond the forty-three custodians that had already been ordered pursuant to Order 1, and Defendants did not object to that denial. If Judge Freeman was unwilling to expand the list of custodians whose <u>external</u> communications could be searched, we do not read her order as

---

[3] For example, one of the custodians on Defendants' list is Alasdair McMullan, a lawyer for EMI, one of the Plaintiffs in this litigation. Plaintiffs contend that McMullan has "principal responsibility for managing this litigation." (Pl. Objection. at 8; LeMoine Decl. ¶ 3.)

[4] Plaintiffs contend that Defendants' request is also burdensome because it is made on "the evae of trial, at the "eleventh hour" of this litigation, when the parties should be focused on trial, not on discovery. (Pl. Reply at 7 n.1; 1.) The Court is far less sympathetic to this argument of prejudice. Plaintiffs waited until the last day possible to file an objection to Judge Freeman's January 18 Order. Moreover, Plaintiffs have not yet produced any of the documents required by the January 18 Order, even though they never sought or obtained a stay from this Court. Plaintiffs cannot run the clock, and then be heard to complain on the timing of the discovery sought.

[5] As discussed above, Plaintiffs had previously identified and collected documents from forty-three custodians in response to Judge Freeman's November 1, 2010 Order regarding external communications relating to licensing with fifteen of Plaintiffs' third-party distributors. As Plaintiffs have explained, "those forty-three custodians represented the primary negotiators of Plaintiffs' distribution agreements with the fifteen distributors Defendants had been most interested in. (LeMoine Decl. No. 2, ¶ 3.)

intending to allow Defendants to search the files of new, additional custodians, for <u>internal</u> communications. Moreover, Plaintiffs contend that, on February 15, 2011, Judge Freeman made clear that, although she did not specify in her January 18 Order which custodians were to be on the list, it was her intent that Defendants would not add new custodians to the list. (LeMoine Decl. No. 2 ¶ 4.)

### V   Conclusion

For the foregoing reasons, Judge Freeman's January 18, 2011 Order is AFFIRMED, with the conditions that (1) Defendants may search for internal communications referring to LimeWire from the files of <u>only five</u> custodians, and (2) that those custodians must be selected from <u>among those forty-three custodians</u> whose external communications have already been searched.

SO ORDERED.

Dated: New York, New York
       February 25 2011

*[signature]*
Kimba M. Wood
United States District Judge

10