REDACTED VERSION
-COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARISTA RECORDS LLC; ATLANTIC
RECORDING CORPORATION; ARISTA
MUSIC, fka BMG MUSIC; CAPITOL
RECORDS, LLC, fka CAPITOL RECORDS,
INC.; ELEKTRA ENTERTAINMENT
GROUP INC.; INTERSCOPE RECORDS;
LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY
RECORDS LLC; SONY MUSIC
ENTERTAINMENT, fka SONY BMG
MUSIC ENTERTAINMENT; UMG
RECORDINGS, INC.; VIRGIN RECORDS
AMERICA, INC.; and WARNER BROS.
RECORDS INC.,

                              Plaintiffs,

                v.

LIME WIRE LLC; LIME GROUP LLC;
MARK GORTON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                        Defendants.

06 Civ. 05936 (KMW)
ECF CASE

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' OWNERSHIP OR CONTROL
OF THE WORKS AT ISSUE**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Susan T. Boyd *(pro hac vice)*
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
Attorneys for Plaintiffs

Date: March 1, 2011

1

13282397.1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ..................................................................................................... 4

     A.    *Category One*:  Defendants' Generalized Complaints About the Strength
         of Plaintiffs Evidence Cannot Create an Issue of Fact ......................................... 5

         1.    Defendants' Complaints About Plaintiffs' Testimonial Evidence
             Cannot Create an Issue of Fact ................................................................... 5

         2.    Defendants' Complaints About "Vagueness" Cannot Defeat UMG
             Recordings, Inc.'s Exclusive Rights to the Challenged Works
             Distributed By Virtue of Intercompany License Agreements ................... 9

     B.    *Category Two:*  Elektra Entertainment Group Inc. Owns the Copyrights in
         55 of the Challenged Recordings in Defendants' Opposition ........................... 10

     C.    *Category Three*: Defendants Do Not Dispute Ownership as to a Particular
         Period of Time for Several Challenged Recordings .......................................... 11

         1.    The Facts Underlying Plaintiffs' *Ownership* Are The Only Facts
             That Matter in This Motion ....................................................................... 11

         2.    Defendants Misread the Pink Floyd Agreements, Which
             Indisputably Cover the Entire Period At Issue in this Action ................... 12

III.   CONCLUSION ................................................................................................ 13

13282397.1

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Accord Magnuson v. Video Yesteryear,*
   85 F.3d 1424 (9th Cir. 1996) ....................................................................................14

*AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Services Inc.* 2007 WL
   4302514, 4 (S.D.N.Y. 2007)......................................................................................5

*Arista Records, LLC v. Lime Group LLC,*
   715 F.Supp.2d 481 (S.D.N.Y. 2010)........................................................................1, 4

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)...................................................................................................4

*Davis v. Blige,*
   505 F.3d 90 (2d Cir. 2007).........................................................................................13

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,*
   697 F.2d 27 (2d Cir. 1982).........................................................................................4, 14

*Hart v. Sampley,*
   Civ. A. No. 91-3068 (CRR), 1992 WL 336496 (D.D.C. June 24, 1992) .................14

*In re Teltronics Services, Inc.,*
   762 F.2d 185 (2d Cir. 1985)........................................................................................6, 7

*International Media Films, Inc. v. Lucas Entertainment, Inc.,*
   703 F.Supp.2d 456 (S.D.N.Y. 2010)..........................................................................8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)....................................................................................................4

*Scotto v. Almenas,*
   143 F.3d 105 (2d Cir. 1998)........................................................................................4

*X-IT Prods., L.L.C. v. Walter Kidde Portable Equipment, Inc.,*
   155 F. Supp. 2d 577 (E.D. Va. 2001) ........................................................................4, 14

*Ying Jing Gan v. City of New York,*
   996 F.2d 522 (2nd Cir. 1993)......................................................................................1

**FEDERAL RULES**

Fed. R. Civ. P. 56(a) ..........................................................................................................1

Fed. R. Civ. P. 56(c) ..........................................................................................................6, 7

L.R. 56.1(c)........................................................................................................................1

13282397.1

## I.   INTRODUCTION

In their Opposition, Defendants challenge Plaintiffs' ownership or control of only a few hundred sound recordings. Defendants do not dispute Plaintiffs' ownership or control of the remaining nearly 11,000 sound recordings at issue. Thus, Plaintiffs' ownership or control of the vast majority of works at issue is now resolved for the purposes of this case. Fed. R. Civ. P. 56(a); L.R. 56.1(c).

But even for the small number of sound recordings they attempt to contest, *Defendants do not point to evidence showing that any of the facts supporting Plaintiffs' ownership or control of those works is actually disputed.* Defendants must respond to Plaintiffs' motion with "'significant, probative evidence.'" *Arista Records, LLC v. Lime Group LLC, 715 F. Supp. 2d 481*, 506 (S.D.N.Y. 2010) (internal citations omitted). Instead, Defendants lob in complaints about the strength of *Plaintiffs'* evidence. These complaints are baseless. But even if they had any merit (which they do not), they do not create a genuine issue of fact.

Defendants' hollow arguments about Plaintiffs' ownership of the few hundred sound recordings now at issue (the "Challenged Recordings")[1] fall into three categories.

*Category One*: Defendants make vague allegations about a handful of the Challenged Recordings, claiming that Plaintiffs' declaration testimony is somehow insufficient to support particular links in the chain of title. Defendants cannot create an issue of fact merely by making conclusory statements that Plaintiffs' witnesses should not be believed. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993). Yet that is all Defendants do here, contending that

---

[1] For the Court's ease of reference, Plaintiffs attach a chart as Exhibit 1 to the Declaration of Melinda LeMoine that details the works that are undisputed and those that Defendants oppose, with a corresponding citation to the paragraph of the 56.1 statement for those that remain challenged.

Plaintiffs' testimony alone cannot establish certain details.  Defendants do not point to any evidence disputing the facts Plaintiffs assert, as they must do to avoid summary judgment.

In fact, for the vast majority of the Challenged Recordings, Defendants concede that Plaintiffs submitted *both* testamentary *and* documentary evidence.  Defendants also concede that *Plaintiffs' affiliates* own the copyrights.  But Defendants complain because Plaintiffs' witnesses attest to their exclusive rights to distribute these works through intercompany agreements, or that those intercompany agreements are "vague."  Not so. Plaintiff UMG Recordings, Inc., the exclusive licensee for the majority of these Challenged Recordings, submitted its intercompany agreements and explained them in detail in the Motion.  Defendants cannot avoid responsibility for inducing the infringement of these hundreds of works on this basis.  Plaintiffs have proven their exclusive rights, and Defendants do not and cannot point to specific evidence to create a genuine issue of fact.

*Category Two:*  Defendants challenge Elektra Entertainment Group's standing to sue on copyrights registered in the name of Elektra/Asylum Records.  There is no question of fact here. Elektra Entertainment Group Inc. owns the recorded music assets formerly held by of Elektra/Asylum Records.  The declaration portion Defendants point to tracked the chain of title for compositions (not sound recordings) held by Elektra/Asylum Records Music, Inc., which are now held by the company Eleksylum.  While Eleksylum is wholly owned by Elektra Entertainment Group Inc., the Elektra/Asylum Records sound recordings were actually transferred to Elektra Entertainment Group Inc. by Warner Communications, Inc. through a written corporate resolution.  Elektra Entertainment Group Inc. thus may sue on its own behalf for these copyrights registered to Elektra/Asylum Records.

*Category Three:*  Defendants do not actually contest Plaintiffs' ownership of the works in this category.  Instead, they claim that, for these works, Plaintiffs' ownership does not extend through the summer of 2010.  Defendants believe this is significant, because they continue to insist that Plaintiffs are relying solely on evidence of copying gathered during the summer of 2010 to prove direct infringement of these works.  That is not true, as Plaintiffs have advised Defendants repeatedly.  But, in any event, the dates of Plaintiffs' direct infringement evidence do not matter to this Motion.  As Defendants themselves acknowledge, this motion is about *ownership.*  For most of these works, Plaintiffs and Defendants *agree* that a Plaintiff owned the works at issue for a specified period of time.  Plaintiff's ownership for the agreed-upon periods is thus established in the case.



Because there are no genuine factual disputes, Rule 56 enables the Court to resolve the ownership of all of the works—including the few hundred Challenged Recordings Defendants even attempt to contest—in advance of trial.  Plaintiffs' Motion should be granted.

13282397.1

## II.    ARGUMENT

Plaintiffs have submitted evidence, including both documents and testimony, "sufficient to establish the existence of an element essential to [their] case, and on which [Plaintiffs] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The burden thus shifts to Defendants to "come forward with 'specific facts showing there is a *genuine issue for trial.*'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Defendants "may not rely on 'conclusory allegations or unsubstantiated speculation,' *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), or on mere denials or unsupported alternative explanations." *Arista Records, LLC*, 715 F. Supp. 2d at 505-06.  Yet that is exactly what they offer to dispute Plaintiffs' claims.

Instead of evidence, Defendants complain about the strength of testimony to support Plaintiffs' ownership, or otherwise make minor technical complaints regarding the works at issue that do not amount to a genuine issue of fact.  Defendants' complaints reveal exactly why courts have held that adjudicated infringers have no standing to challenge purported gaps in the chain of title when there is no dispute between Plaintiffs and any licensor or transferor.  *See X-IT Prods., L.L.C. v. Walter Kidde Portable Equipment, Inc.,* 155 F. Supp. 2d 577, 604 (E.D. Va. 2001) ("when there is no dispute between the original copyright owner and his licensee or assignee, 'it would be anomalous to permit a third-party infringer to'" challenge the transfer) (*quoting Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 697 F.2d 27, 37 (2d Cir. 1982), *superseded on other grounds*).  Defendants do not genuinely dispute title in such a case, but merely attempt to evade their own liability.  Thus, they contend that Plaintiffs' own witnesses' testimony is insufficient to prove a corporate name change, or that an intercompany agreement is somehow insufficiently detailed.  That exalts form over substance in a way the Copyright Act never intended.

- 4 -

Plaintiffs in this case distribute these Challenged Works legitimately every day, with lawful notices displayed on their packaging, as Defendants themselves can see by visiting Best Buy or the iTunes Store. *See, e.g.* 1/24/2011 Cho Decl., Ex. 4; Reply Cho Decl. Exs. 2-3. When the legitimate parties to the commercial transactions that support this distribution have not contested the challenged transfers and assignments, it defies logic to permit a proven infringer to do so to avoid responsibility for their own proven wrongful acts.

A.     *Category One*: **Defendants' Generalized Complaints About the Strength of Plaintiffs Evidence Cannot Create an Issue of Fact**

The majority of the Challenged Recordings fall within Category One. For all of these, Defendants complain about the strength of Plaintiffs' evidence – but do not move to strike it as incompetent, or counter it with evidence of their own. Defendants acknowledge that they have no such countervailing evidence, but deny that they have any obligation to rebut Plaintiffs' evidence presented by way of sworn testimony. Opp. at 4. Instead, Defendants contend that testimony and "vague documentary support" fail to satisfy Plaintiffs' burden. Opp. at 6. These contentions have no merit. *See AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Services Inc.* 2007 WL 4302514, 4 (S.D.N.Y. 2007) ("Defendants' unsupported denials, without more, cannot create disputes of material fact.").

1.     **Defendants' Complaints About Plaintiffs' Testimonial Evidence Cannot Create an Issue of Fact**

For 123 of the Challenged Works in Category One, Defendants complain that Plaintiffs rely solely on sworn testimony. As the Court knows, Plaintiffs provided voluminous evidence to support each step in the chain of title for nearly 11,000 works. In nearly every instance, Plaintiffs have provided *both* testamentary *and* documentary support. In a very few cases, Plaintiffs support a step in the chain of title exclusively through the competent testimony of a declarant with personal knowledge:

- 5 -

- <u>As Ms. Cho's declaration states,</u> Mercury Record Productions, Inc. changed its name to Phonogram, Inc. in 1972. Defendants' complaints about this testimony are the sole basis for their challenge to Plaintiffs' ownership of 96 of the Challenged Recordings. *See* Cho Decl. ¶ 71.

- <u>As Ms. Palerm testified,</u> Warner exclusively licenses the right to distribute sound recordings in the United States and Canada from several of its foreign affiliates. *See* Palerm Decl. ¶ 30. Defendants object to 12 of the Challenged Recordings solely based on this testimony.[2]

- <u>As Mr. Leak testified,</u> the Sony Plaintiffs own or control the catalogues of sound recordings previously held by Bell Records and Ode Records. *See* Leak Decl. ¶¶ 32, 53. Sony also owns or controls exclusive rights in four sound recordings through intercompany license agreements. *Id.* at ¶ 47. Defendants complain about this sworn testimony to contest 15 of the Challenged Recordings.

In each of these instances *Defendants do not contend that the testimony is **inaccurate** -- they simply complain (incorrectly) that it is somehow insufficient.* Defendants have no competing view of who owns these copyrights. Despite the extensive discovery and hundreds of thousands of documents Plaintiffs have produced – including detailed summaries of reversion rights and termination notices – Defendants point to *no* alternative theories as to who might own these copyrights if Plaintiffs do not. Plaintiffs indisputably *do* own them, and Defendants' claims to the contrary have no basis.

In any event, Defendants' complaints about the strength of Plaintiffs' evidence have no merit. Nothing prevents Plaintiffs from supporting their motion for summary judgment with sworn testimony alone, and for the relatively few facts noted above Plaintiffs did so. Fed. R. Civ. P. 56(c). Rule 56 permits exactly that. A movant may support their motion with sworn testimony in affidavits. If Defendants believe that Plaintiffs' declarations fail to satisfy the requirements of Rule 56, they must move to strike them or their objections are waived. *In re*

---

[2] Defendants state that 13 songs are impacted by this issue. In fact, however, Defendants double counted the sound recording *Back on the Chain Gang* by the Pretenders. *See* Meloro Decl. Ex. 1 at p. 9.

*Teltronics Services, Inc.*, 762 F.2d 185, 192 (2d Cir. 1985). Defendants did not move to strike, likely because they know such a motion would not succeed.

Plaintiffs' witnesses each confirm that he or she has the requisite foundation to testify as to the Plaintiffs' ownership of the works in suit. Leak Decl. ¶ 1; Cho Decl. ¶ 1; McMullan Decl. ¶ 1; Palerm Decl. ¶ 1. Defendants' complaints do not expose any defects in that personal knowledge. In Section I.A.2 of their Opposition, Defendants challenge Ms. Cho and Ms. Palerm's testimony, but without any reason why they should not be competent to attest to the facts they assert. *See* Fed. R. Civ. P. 56(c)(4). Defendants claim that Ms. Cho's testimony cannot support UMG's claim to sound recordings originally owned by Mercury Record Corporation. This is remarkable, since Defendants do not dispute that Mercury Records today is an unincorporated division of UMG Recordings, Inc. *See* Pl's Reply SUF ¶¶ 129, 164. Third-party sources confirm Ms. Cho's explanation of how UMG came to control these copyrights.[3] But Defendants baldly state that Ms. Cho's testimony cannot substantiate title. Defendants' complaints about Ms. Palerm's testimony suffer the same defects. Without any reason to dispute or challenge the accuracy of Ms. Palerm's statements, Defendants contend her testimony about WMG's intercompany arrangements is insufficient to substantiate ownership or control.

In a misguided effort to undermine *all* of Plaintiffs' witnesses' evidence, Defendants selectively submit pages from Mr. Leak's extensive deposition testimony on ownership. The testimony Defendants select in fact shows that Mr. Leak knows more than enough about the transactions at issue to substantiate Plaintiffs' claims. For example, Defendants challenge whether Mr. Leak has adequate knowledge of how Plaintiff Arista Records claims title to recordings previously controlled by Bell Records. Mr. Leak confirms that the Bell catalogue was

---

[3] See http://www.discogs.com/label/Mercury (last visited March 1, 2011); John Shepherd, Continuum Encyclopedia of Popular Music of the World, Vol. 1 (entry for "PolyGram" at p. 634), Continuum 2003.

one of the acquisitions Clive Davis made to start Arista Records, and that Mr. Davis started

Arista Records when he left CBS Records in the 1970s or 80s.  In the complete transcript (which

Defendants do not submit), Mr. Leak repeatedly explained his basis for testifying to ownership

details in his Declaration:

> This is, again, what I know:  We reviewed this very carefully.  We
> made changes where necessary.  We have done this before in other
> litigation, and we relied on our knowledge about the history of the
> catalog to prepare this declaration and reviewed the necessary
> documents to make these statements.

LeMoine Decl., Ex. 2 (Leak Dep., 97:14-20).  Defendants ignore Mr. Leak's repeated

explanations about his knowledge of these subjects in an effort to somehow discredit him, which

they fail to do.

Defendants also repeatedly quote one line regarding "first hand testimony" from

*International Media Films, Inc. v. Lucas Entertainment, Inc.*, 703 F. Supp. 2d 456, 464

(S.D.N.Y. 2010), in support of their contention that Plaintiffs cannot substantiate their ownership

claims with declarations.  This case does not hold that documentary evidence must always be

submitted to substantiate chain of title, and it does not hold that Plaintiffs' evidence here is

somehow insufficient.  Unlike in this case, the parties in *International Media Films* actually had

two competing views on ownership.  Plaintiff IMF contended they owned the copyright to the

film *La Dolce Vita*, while Defendants contended the film was owned by Paramount Pictures.

Each side presented evidence tracing separate, lengthy chains of title to support their competing

views.  To substantiate part of their claim, IMF presented only a thirty-year-old declaration and

an agreement of questionable authenticity.  The *IMF* court held that this evidence insufficiently

substantiated this link in the chain, and noted that, in addition, IMF had submitted "no first hand

testimony" regarding the agreement.  *International Media Films*, 703 F. Supp. 2d at 464. The

"first hand testimony" the court found lacking is exactly that which Plaintiffs have offered here:

- 8 -

testimony from witnesses, familiar with the corporations' documents and records and knowledgeable about Plaintiffs' ownership history, who can explain the basis for each Plaintiff's ownership interests.

> **2.    Defendants' Complaints About "Vagueness" Cannot Defeat UMG Recordings, Inc.'s Exclusive Rights to the Challenged Works Distributed By Virtue of Intercompany License Agreements**

Defendants also purport to challenge UMG Recordings, Inc.'s right to hold Defendants' liable for inducing the infringement of sound recordings exclusively licensed to UMG Recordings, Inc. in the United States from one of UMG's foreign affiliates.  Critically, Defendants do not dispute the *accuracy* of this claim of ownership, but rather assert that the evidence submitted is insufficient.  This argument is specious.  Plaintiffs have produced the agreements that establish UMG Recordings, Inc.'s rights, explained to Defendants how to interpret those agreements, and provided competent – *and uncontradicted* – testimony further certifying UMG Recordings, Inc.'s control over the works at issue.

For the entire period relevant to this lawsuit, the recorded music companies that make up the Universal Music Group have, for each calendar year, entered into a "Universal Music Group Inter Company License Agreement." *See e.g.* 1/24/2011 Cho Decl., Ex. 52 (license applicable to 2010).[4] █████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

---

[4] The UMG Plaintiffs submitted the intercompany license agreements for each year 2004-2010. The licenses are similar in all respects relevant to this motion.  Plaintiffs describe the 2010 agreement in the text as an example.

██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████[5]

Defendants do not dispute the accuracy of *any* of this. Rather, they complain that the intercompany agreements are "vague." Opp. at 6. But any lack of clarity in the intercompany agreements is dispelled by Ms. Cho's testimony. *See* Cho Reply Decl. at ¶¶ 2-6. *See also* Cho Decl. ¶ 54. Defendants do not, and cannot, contend otherwise.

**B.    *Category Two:* Elektra Entertainment Group Inc. Owns the Copyrights in 55 of the Challenged Recordings in Defendants' Opposition**

Defendants oppose Plaintiffs' standing to sue on the 55 Challenged Recordings copyrighted in the name of Elektra/Asylum Records. Defendants' argument is that Plaintiff

---

[5] For example, the sound recordings *Everybody's Changing, Somewhere Only We Know, Sunshine, We Might As Well Be Strangers* and *Your Eyes Open* associated with the album *Hopes and Fears* by the artist Keane list Universal-Island Records, Ltd. is the "copyright claimaint" on the certificate of registration. Cho Reply Decl. ¶ 4(a), Ex 1. Under the Inter Company Licensing Agreement, Universal-Island Records, Ltd., a UMG-affiliate based in the United Kingdom, ████████████████████████████████████████████████████ UMG Recordings, Inc. (in this case, specifically Interscope Records, an unincorporated division of UMG Recordings, Inc.). *Id.* at ¶ 4(c). This arrangement is expressly reflected in the copyright notice displayed on iTunes related to these sound recordings, as well as the label copy sold with physical CDs. *See* Cho Reply Decl., Exs. 2-3.

13282397.1

Elektra Entertainment Group cannot sue on behalf of a subsidiary, Eleksylum Music, Inc. Rather, Defendants contend Eleksylum must sue of its own accord.

Eleksylum is a wholly-owned subsidiary of Elektra Entertainment Group, as Plaintiffs previously affirmed. But Plaintiff Elektra Entertainment Group has determined that Eleksylum does *not* hold the rights to the 55 sound recordings registered to Elektra/Asylum Records. Eleksylum is a publishing company that holds rights in compositions—not sound recordings. Eleksylum was formerly known as Elektra/Asylum Records *Music, Inc.*, also a publishing company. Paragraph 23(a) of the January 24, 2011 Declaration of Silda Palerm traced the rights held in publishing properties, not sound recordings, which is the source of this confusion.

The Elektra/Asylum Records sound recordings are owned and controlled by Plaintiff Elektra Entertainment Group Inc.—not a subsidiary. "Elektra/Asylum Records" was a division within the Elektra Entertainment Group, which was itself a division of Warner Communications, Inc. By a formal resolution dated December 31, 1998, Warner Communications, Inc. contributed and assigned all of the copyright rights in the sound recordings held by the division to Plaintiff Elektra Entertainment Group Inc. *See* 1/24/11 Palerm Decl., Ex. 8; *see also* Palerm Reply Decl., Ex. 1. Plaintiff Elektra Entertainment Group Inc. thus has standing, because it sues to vindicate its *own* copyrights registered in the name of Elektra/Asylum Records, which were transferred to Elektra Entertainment Group Inc. by that formal consent.

C.     ***Category Three***: **Defendants Do Not Dispute Ownership as to a Particular Period of Time for Several Challenged Recordings**

       1.     **The Facts Underlying Plaintiffs' *Ownership* Are The Only Facts That Matter in this Motion**

Defendants oppose Plaintiffs' ownership of many Challenged Recordings because they contend that Plaintiffs cannot prove ownership during the summer of 2010. Defendants incorrectly believe the summer of 2010 to be the only relevant time period for ownership

- 11 -

because, despite having been repeatedly informed otherwise, Defendants contend this is the only time period from which Plaintiffs will offer evidence of end-user infringements through LimeWire. That is not the case. Plaintiffs have offered and will rely at trial on considerable evidence of direct infringement collected by the NPD Group, and on Dr. Waterman's extrapolations of direct infringement likely committed by LimeWire's huge user base. These direct infringements took place during a period in which the parties agree Plaintiffs held the requisite ownership rights in the Challenged Recordings.

But the timing of Plaintiffs' direct infringement evidence is beside the point for this motion which is, as Defendants acknowledge, about Plaintiffs' *ownership*. Opp. at 2. As to *ownership* of these Challenged Recordings–the point at issue here–the parties have no genuine dispute. Plaintiffs and Defendants agree that a Plaintiff in this case owned or controlled the necessary rights for a certain period of time. Whether Plaintiffs can substantiate their claims of secondary liability for these Challenged Recordings remains to be decided another day. But the facts underlying a Plaintiff's ownership are resolved.

### 2. Defendants Misread the Pink Floyd Agreements, Which Indisputably Cover the Entire Period At Issue in this Action

Finally, Defendants contend that Plaintiff Capitol Records, LLC did not hold exclusive rights in the sound recordings of Pink Floyd from June 30, 2010 through September 13, 2010. Opp. at 11-12. That is incorrect.

13282397.1



Defendants should withdraw their contention that Capitol Records, LLC did not own or control these Challenged Works throughout the period of this litigation.

## III.   CONCLUSION

As long ago predicted, Defendants cannot meaningfully challenge Plaintiffs' copyright ownership or control of the thousands of works at issue.  Even when they focus their efforts on the Challenged Recordings, Defendants' vague allegations of insufficient evidence do not amount to an actual disputed fact.  Moreover, Defendants—*who have been adjudicated to be responsible for the mass infringement perpetrated by Lime Wire's users*—have no standing to challenge Plaintiffs' rights absent a dispute between Plaintiffs and the original copyright owner

- 13 -

or a transferor. *X-IT Products,* 155 F. Supp. 2d at 604 ("when there is no dispute between the original copyright owner and his licensee or assignee, 'it would be anomalous to permit a third-party infringer to'" challenge the transfer) (*quoting Eden Toys,* 697 F.2d at 37). *Accord Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428-29 (9th Cir. 1996); *Hart v. Sampley*, Civ. A. No. 91-3068 (CRR), 1992 WL 336496, at *1 (D.D.C. June 24, 1992) ("Even if, as defendants suggest, the transfer was in some way defective, the defendants would not have standing to challenge the validity of the transfer because they were not parties to the agreement.").

Plaintiffs respectfully request that the Court grant their motion in full.

Dated:  March 1, 2011                    Respectfully submitted

                                         *s/ Melinda E. LeMoine*
                                         Melinda E. LeMoine

                                         Attorney for Plaintiffs
                                         Munger, Tolles & Olson LLP
                                         355 South Grand Avenue, 35th Floor
                                         Los Angeles, CA 90071-1560
                                         (213) 683-9100
                                         (213) 687-3702 (Fax)

- 14 -

13282397.1