UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.,<br><br>               Plaintiffs,<br>    v.<br><br>LIME GROUP LLC; LIME WIRE LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,<br><br>               Defendants. | ECF Case<br><br>06 CV 5936 (KMW)(DF) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR PARTIAL JUDGMENT ON THE ISSUE OF
PRIOR JUDGMENTS AGAINST DIRECT INFRINGERS**

WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019
Phone: (212) 728-8000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i
PRELIMINARY STATEMENT .................................................................................................... 1
ARGUMENT .................................................................................................................................. 3
    I.    PLAINTIFFS MAY NOT SEEK A SECOND STATUTORY AWARD AGAINST LIME WIRE FOR ANY WORKS FOR WHICH THEY HAVE ALREADY OBTAINED JUDGMENTS AGAINST LIME WIRE USERS. ................................................................................................................ 3
    II.    PARTIAL JUDGMENT ON THE PLEADINGS IS APPROPRIATE HERE. .................................................................................................................... 8
    III.    DEFENDANTS' ENTITLEMENT TO AN OFFSET IS SEPARATE FROM THE ONE-AWARD LIMIT UNDER THE COPYRIGHT ACT. ............ 11
CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Bouchat v. Bon-Ton Dep't Stores, Inc.*,
  506 F.3d 315 (4th Cir. 2004) ...................................................................................7

*Bouchat v. Champion Prods., Inc.*
  327 F. Supp. 2d 537 (D. Md. 2003) ................................................................5, 6, 10

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
  517 F.3d 1271 (11th Cir. 2008) ...............................................................................11

*Byrd v. City of New York*,
  No. 04-1396-cv, 2006 WL 1349876 (2d Cir. June 8, 2005) ......................................8

*Columbia Pictures Television v. Krypton Broad. of Birmingham*,
  106 F.3d 284 (9th Cir. 1997) .....................................................................................5

*Hong Mai Sa v. Doe*,
  406 F.3d 155 (2d Cir. 2008) ......................................................................................8

*McClatchey v. Associated Press*,
  No. 3:05-cv-145, 2007 WL 1630261 (W.D. Pa. June 4, 2007) ....................... passim

*Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*,
  453 F.2d 552 (2d Cir. 1972).....................................................................................11

*United States Media Corp. v. Edde Entm't Corp.*,
  No. 94 Civ. 4849, 1998 WL 401532 (S.D.N.Y. July 17, 1998) ...........................6, 7

**STATUTES**

17 U.S.C. § 504(c)(1).................................................................................................. passim

Fed. R. Evid. 201(b).............................................................................................................8

**OTHER AUTHORITIES**

4 *Nimmer on Copyright* § 14.04(E)(2)(d) ...........................................................................5

**PRELIMINARY STATEMENT**

The purpose of this motion is simple and straightforward. The clear and unambiguous language of Section 504(c) of the Copyright Act prohibits Plaintiffs from collecting more than *one* statutory award per work, with regard to all infringements involved in the action, including where *any* two infringers are jointly and severally liable. That is undeniably the case here: Plaintiffs allege that *every* direct infringer, with respect to every work as to which statutory damages is claimed, is jointly and severally liable with Lime Wire. *No* infringer – neither any of those whom Plaintiffs have already sued, nor any who have not been sued, is "individually liable." Plaintiffs argue that the direct infringements by Lime Wire users are totally "separate" and "discrete" (which is not really true, owing to the nature of P2P file sharing), but in any event the statute does not speak in terms of "separate" infringements. The words "separate" and "discrete" do not appear in Section 504(c). Nor does the statute require joint and several liability between and among all direct infringers. The *McClatchey* case,[1] the most recent and comprehensive one to address this issue, says this quite clearly and Plaintiffs are unable to distinguish it.

There being joint and several liability between Lime Wire and each of the Lime Wire users against whom Plaintiffs have already secured judgments, there can be no second recovery against Lime Wire for the same songs for which those judgments were obtained. And the fact that Plaintiffs, by their own choice, elected to sue the jointly and severally liable parties in separate actions should not, and does not, change that result.

Despite Plaintiffs' bitter complaint that this is an "outlandish" and "extreme" result, the fact is that the number of works that would be precluded is about 14% of the 9,715 on

---

[1] *McClatchey v. Associated Press*, No. 3:05-cv-145, 2007 WL 1630261, at *4 (W.D. Pa. June 4, 2007).

Plaintiffs' Final List of sound recordings for which they seek statutory damages. Plaintiffs appear to believe that any diminution in their ability to claim billions, or even trillions, in statutory damages is an outrage and subversion of the purposes of the Copyright Act. Plaintiffs' rhetorical hyperbole should be disregarded; indeed, it is they who have staked out the extreme position here, claiming the right to separate awards for separate infringements – a theory that, given the number of downloads Plaintiffs claim, would render Lime Wire liable for a *minimum* of more than a hundred billion dollars. The courts that have considered this theory in the context of mass infringement cases have wisely rejected it. As importantly, the language of the statute precludes it.

Because they are wrong on the law, Plaintiffs resort to hollow claims that the motion is "procedurally improper." It is no such thing. At the February 18 hearing the Court specifically stated that the motion made sense as potentially "dispositive of some" issues.[2] When asked about the universe of the number of sound recordings already recovered from direct infringers in other lawsuits, Plaintiffs' counsel stated: "we believe that *they would be reflected in the judgments that have been produced in this case* as part of Judge Freeman's orders."[3] These are *their judgments*, sought and obtained by them, produced by them (or the RIAA on their behalf), and represented by them to be all of the judgments previously obtained against Lime Wire users. For Plaintiffs to now say that the judgments raise "fact issues" that cannot be resolved without Willkie Farr's "backup materials" showing "which judgments correspond to which complaints and which sound recordings" – when our review was based only on the

---

[2] *See* Transcript of Proceedings Held Before The Honorable Judge Kimba M. Wood on February 18, 2011 ("Feb. 18 Transcript") at 10, attached as Exhibit 1 to the Reply Declaration of Rita D. Mitchell ("Mitchell Reply Declaration").

[3] *Id*. at 9.

documents produced by Plaintiffs themselves – is completely disingenuous.  Plaintiffs know more about these judgments than Defendants do, and if Plaintiffs had any basis whatsoever to contest what Defendants say based on our review of the face of these documents (which are public documents, after all), then Plaintiffs should have come forward with specific challenges rather than hiding behind imaginary fact issues.  If necessary, we can always bring the 30,000 pages and fourteen feet of complaints and judgments to trial and have a lawyer testify about the review process, but we think that is a waste of time.   This motion, which seeks a modest reduction of the number of works at issue, based on a clear statute and undisputed facts, should be granted.

## ARGUMENT

**I.  PLAINTIFFS MAY NOT SEEK A SECOND STATUTORY AWARD AGAINST LIME WIRE FOR ANY WORKS FOR WHICH THEY HAVE ALREADY OBTAINED JUDGMENTS AGAINST LIME WIRE USERS.**

Section 504(c)(1) of the Copyright Act explicitly limits Plaintiffs to one award where, as here, any two or more infringers are jointly and severally liable.  This Section states, in pertinent part, that "a copyright owner may elect" to seek "*an award* of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, *or for which any two or more infringers are liable jointly and severally*."  17 U.S.C. § 504(c)(1) (emphases added).[4]  Plaintiffs, who have sued Lime Wire under a theory of secondary infringement by which "LimeWire is jointly and severally liable with *each* direct infringer,"[5] are by the clear terms of the statute not entitled to a second award of statutory

---

[4] Plaintiffs had the option to seek actual damages against Lime Wire and every direct infringer.  Electing instead to pursue statutory damages, Plaintiffs cannot now complain about the limitations of such election.

[5] *See* Plaintiffs' Brief Pursuant to November 19 Order at 16 (Dkt. No. 279, dated Nov. 29, 2010).

damages against Lime Wire for any of the works for which they have already obtained judgments against Lime Wire users.

Contrary to Plaintiffs' argument, nowhere does the statute itself or the supporting legislative history create a carve-out for a new category of "separately liable groups of jointly and severally liable actors" or "separate units of joint and several liability." Pl. Opp. at 5-6. Plaintiffs purport to derive support from the House Report to the 1976 Copyright Act (*See* Pl. Opp. at 6), but that Report supports Defendants' position: As Plaintiffs acknowledge, "the Report goes on to state that 'where separate infringements for which two or more defendants are ***not jointly liable*** are joined in the same action, separate awards of statutory damages would be appropriate.'" *Id.* (emphasis added). But in this action, there *are* no "separate infringements" for which "two or more defendants are not jointly and severally liable." There are no "individually" or "separately" liable infringers involved here at all, nor were there in the prior cases brought against individual Lime Wire users, all of whom are allegedly jointly and severally liable with Lime Wire. The legislative history is consistent with the statute and directly refutes Plaintiffs' position.

Plaintiffs do not challenge the logic and reasoning of those authorities stating that a copyright plaintiff cannot escape the one award rule, for jointly and severally liable infringers, by the device of suing in successive actions. See Defendants' Opening Brief at 2-3. Nor, contrary to Plaintiffs' assertions, does it matter whether the direct infringers are jointly and severally liable with each other. *See* Pl. Opp. at 6. They *are* all jointly and severally liable with Lime Wire, the sole defendant in this action, which is all that is required under the statute. *See* 17 U.S.C. § 504(c)(1) (permitting "*an* award of statutory damages for *all* infringements involved

4

in the action, with respect to any one work…for which *any two or more infringers* are liable jointly and severally") (emphases added).

In advancing their "complete" joint and several liability theory, Plaintiffs purport to derive support from a hypothetical from the Nimmer copyright treatise and a Ninth Circuit case, *Columbia Pictures Television v. Krypton Broad. of Birmingham*, 106 F.3d 284 (9th Cir. 1997), *rev'd on other grounds sub nom Feltner v. Columbia Pictures Television, Inc.* 523 U.S. 340 (1998). *See* Pl. Opp. at 6-7. But subsequent courts have dismissed Nimmer's hypothetical or termed it inapplicable in circumstances involving mass infringements, and have found *Columbia Pictures* to be similarly inapposite. They have "flatly rejected the Nimmer hypothetical, at least in the context of coordinated mass marketing operations, characterizing the result as 'absurd.'" *McClatchey,* 2007 WL 1630261, at *4 (citing *Bouchat v. Champion Prods., Inc.*, 327 F. Supp. 2d 537 (D. Md. 2003).

In *McClatchey*, the Associated Press ("AP"), under false pretenses, took an image of the plaintiff's copyrighted photograph and without authorization gave it to AOL and to other downstream users who published the image. The plaintiff sued only the AP, but claimed entitlement to multiple, separate statutory awards because AP was "jointly and severally liable with multiple parties who are not jointly and severally liable with each other," citing, as these Plaintiffs do, a Nimmer hypothetical for this proposition.[6] The court rejected this argument, holding that even though "there [was] not complete joint and several liability amongst all potential infringers," in such cases "where the only Defendant is jointly and severally liable with all other alleged downstream infringers, Plaintiff is entitled to only a single statutory damages

---

[6] As the court noted, "Under the hypothetical, if D (a movie distributor), sent the infringing work to A, B, and C (three unrelated theaters who were not jointly and severally liable with each other), there should be three sets of statutory damages awards." 2007 WL 1630261, at *3 n.1 (citing 4 *Nimmer on Copyright* § 14.04(E)(2)(d).).

5

award." *Id*. *See also Bouchat*, 327 F. Supp. 2d at 553 (The "absence of joint liability among the Downstream Defendants themselves [did not] entitle[] Bouchat to multiple statutory damage awards where each infringement was a joint infringement with the NFLP."); *United States Media Corp. v. Edde Entm't Corp.*, No. 94 Civ. 4849, 1998 WL 401532, *20 (S.D.N.Y. July 17, 1998) (same).

> As the court in *McClatchey* persuasively reasoned:

> The Court does not agree with McClatchey's strained, albeit creative, proposed interpretation of the statute. *The statute simply does not require full and complete joint and several liability amongst all alleged infringers.* As McClatchey acknowledges, there is partial joint and several liability in this case because each downstream user (AOL, The Progress, Newsday) is jointly and severally liable with AP. Thus, none of the downstream users can be an "individually liable infringer" for the purpose of triggering a distinct statutory damages award. Instead, this is a case in which "any two or more infringers are liable jointly and severally." McClatchey's proposed interpretation would render the word "any" superfluous, or alternatively, would rewrite the statute to impose a single award only where "all infringers are liable jointly and severally." *In sum, the Court concludes that the most plausible interpretation of the statute authorizes a single award when there is any joint and several liability, even if there is not complete joint and several liability amongst all potential infringers.*

*Id.* at *4 (emphasis added). The court went on to state that it was "not necessary to reject the Nimmer hypothetical in all circumstances," but that "where the only Defendant is jointly and severally liable with all other alleged downstream infringers, Plaintiff is entitled to only a single statutory damages award." *Id*. That is true here as well: The Lime Wire defendants, the only defendants in the case, are jointly and severally liable with all other alleged downstream infringers. There can be only one award.

Plaintiffs have sought to distinguish *Bouchat*, and tangentially *McClatchey* and *United States Media Corp.*, on the grounds that the downstream users in those cases were acting derivatively from a common primary infringer who was a direct infringer, as opposed to a secondary infringer such as Lime Wire. *See* Pl. Opp. at 7-8. That distinction is one without a

6

difference: the holding and rationale of these cases stems from the fact that the common inducing infringer was *jointly and severally liable* with all the downstream direct infringers none of whom were jointly and severally liable with each other.  *See McClatchey*, 2007 WL 1630261 at *4 ("Here, where the only Defendant is *jointly and severally liable with all other alleged downstream infringers*, Plaintiff is entitled to only a single statutory damages award.") (emphasis added); *Bouchat v. Bon-Ton Dept. Stores, Inc.*, 506 F.3d 315, 330-31 (4th Cir. 2007) ("When a licensee copied the Flying B logo onto Ravens merchandise, the licensee became an infringer. NFLP gave each licensee permission to copy, so NFLP was also responsible for the licensee's acts of copying, making NFLP jointly and severally liable for the infringing acts of each licensee."); *compare id.* at 331 ("it is appropriate to treat the earliest date of infringement by *any* participant in a line of related copyright violations as the date of commencement.") (emphasis in original).

Moreover, *United States Media Corp.* did not involve only a "common primary infringer."  The court found that each of the downstream retailers separately and directly infringed copyright by selling or renting copies of the copyrighted videos to the public, and the distribution company was contributorily (*i.e.*, secondarily) liable for each of those infringements. 1998 WL 401532 at *16-17, 20.  The court granted only a single statutory damage award with respect to multiple infringements of a single work where the secondarily liable distributor was jointly and severally liable with each of the downstream direct infringer defendants, but none of the downstream defendants contributed to infringements committed by the others.  The result should be no different here.

7

In sum, Plaintiffs have already received their one statutory damages award for at least 1,355 of the sound recordings listed on Schedule A. They may not seek a second recovery from Lime Wire for those same works.

## II. PARTIAL JUDGMENT ON THE PLEADINGS IS APPROPRIATE HERE.

This motion is not procedurally improper. It asks the Court to resolve an issue of law, on undisputed facts, concerning whether Plaintiffs are entitled to a second statutory recovery against Lime Wire for the same works for which they have already obtained a judgment against Lime Wire users with whom Lime Wire is jointly and severally liable. It is grounded in the law, the allegations made in the First Amended Complaint (Schedule A), and uncontested facts contained in judicially-noticeable public filings that the Plaintiffs themselves have produced in discovery.

In deciding a Rule 12(c) motion, "[a] court may, without converting the motion into one for summary judgment, consider documents that are attached to, incorporated by reference in, or integral to the complaint; and it may also consider matters that are subject to judicial notice." *Byrd v. City of New York*, No. 04-1396-cv, 2006 WL 1349876, at *1 (2d Cir. June 8, 2005) (affirming Rule 12(c) dismissal). In this case, the revised Schedule A containing the entirety of the sound recordings at issue is a document attached to and incorporated by reference in the First Amended Complaint. The judgments and complaint referenced in the Mitchell Declaration accompanying Defendants' opening brief are all subject to judicial notice as matters of public record. *See* Fed. R. Evid. 201(b); *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2008) (finding that the court may take judicial notice of filed court documents).

On February 18, 2011, the Court permitted Defendants to brief this motion on an expedited briefing schedule on the basis that it was partially dispositive of certain issues in the

case.[7]  In Defendants' October 22, 2010 Motion for Partial Judgment on the Pleadings Pursuant to Rule 12(c) concerning "songs versus album compilations," Defendants indicated that they would defer their further Rule 12(c) motion with regard to the "prior judgments" issue until after receiving those judgments and related pleadings in discovery.[8]  Pursuant to subpoena, the RIAA produced copies of publicly-filed judgments, complaints, and exhibits relevant to the RIAA's suits against Lime Wire users on behalf of Plaintiffs, completing that production on January 31, 2011.[9]  Plaintiffs did not provide a separate production of judgments, but rather relied on the RIAA production.[10]  The 678 judgments produced by the RIAA reflect, either on their face or by reference to the complaints that were produced, which reference the sound recordings at issue, judgments against Lime Wire users covering 1,355 of the sound recordings contained on Schedule A.

Plaintiffs protest that Defendants "do not say whether even a single one" of the judgments reviewed by Willkie Farr "granted an award of statutory damages."  Pl. Br. at 4. Actually that is not true,  as the sample judgment that Defendants provided (Mitchell Decl. Ex.

---

[7]   *See* Feb. 18 Transcript at 10-11, Ex. 1 to the Mitchell Reply Declaration.

[8]   *See* Dkt. No. 331, at 8 n.2.

[9]   *See* Ex. 3 to the Mitchell Decl.  As evidenced by the RIAA production letters, until the final, smaller production on January 31, 2011 noted by Plaintiffs, the RIAA consistently indicated to Defendants that it "continue[d] to gather other documents for production, and will produce them as they are ready."  *See* Production Letter from George M. Borkowski to Todd G. Cosenza dated Nov. 29, 2010 (Ex. 3 to Mitchell Decl.).  Contrary to Plaintiffs' assertion, therefore, Defendants did not have any reason to know that Plaintiffs and the RIAA failed to produce at a minimum all of the judgments referenced in the Coggon summary judgment declaration until the RIAA's final production on January 31, 2011 and Plaintiffs' confirmation that the production was complete on February 1, 2011. *See* Pl. Opp. at 4 n.1; Defs.' Opening Brief at 1; Mitchell Decl. Ex. 6.

[10]  *See* Email from Melinda LeMoine to Tariq Mundiya, et al. dated Feb. 1, 2011 (Mitchell Decl. Ex. 6).

9

4) stated that it was for "6,000 (**statutory damages**) and $420 costs." But nothing in Section 504(c) requires that the original judgment, in these circumstances, have been for statutory as opposed to actual damages; the only question is whether Plaintiffs are now seeking a statutory award for works for which they have already obtained a judgment (statutory or otherwise) against jointly and severally liable infringers. In *Bouchat*, for example, the plaintiff chose to allow his original suit, against the NFLP, "to go to Judgment without having elected a statutory damage award with respect to the very same infringements" at issue in his later suit against the downstream defendants. *See* 327 F. Supp. at 548. The court stated that the downstream infringers sued in a later action could only be subjected to a single award for all infringements of the works at issue in that action, because they were jointly and severally liable with the non-party NFLP who was sued in the original action in which judgment was entered with no monetary recovery by plaintiff. That there was no statutory damages award against the NFLP in the first action was immaterial to the court's conclusion.

In any event, to the extent relevant, the Mitchell Reply Declaration confirms that all 678 judgments produced by the RIAA, either on their face or with reference to the corresponding complaints produced by the RIAA, were for statutory damages. *See* Mitchell Reply Declaration ¶ 3.

Plaintiffs further protest that "the allegations in a complaint are not necessarily the grounds for a judgment" (Pl. Opp. at 4), but they offer no basis whatever to suppose that the songs identified in the complaints were not subsumed in the accompanying judgments (most of which were default judgments). If that is not the case, it behooved Plaintiffs, who obtained the judgments, to say so. They have not. Do Plaintiffs really believe that we must depose the lawyers and parties in those cases to determine whether the listed songs somehow were not

included in the judgments? Such silliness should not detain the Court from resolving the present motion on the papers.

### III.  DEFENDANTS' ENTITLEMENT TO AN OFFSET IS SEPARATE FROM THE ONE-AWARD LIMIT UNDER THE COPYRIGHT ACT.

Plaintiffs' argument that, "at most," Defendants are entitled to an offset for the amount of the judgments collected, rather than preclusion, is wrong. As shown above, Section 504(c) by its terms provides for a single award in these circumstances. The statute does not limit its application to an "offset."

Neither *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552 (2d Cir. 1972), nor *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271 (11th Cir. 2008), cited by Plaintiffs, stands for a different proposition. Neither was decided under Section 504(c); *Screen Gems* was decided under the 1909 Copyright Act, which contained no "per work" limitation or language about "two or more" jointly and severally liable infringers, and *BUC* was an actual damages case under Section 504(b). In neither case was a judgment or award obtained against the first set of defendants, but only a negotiated settlement. That the Lime Wire Defendants here would be entitled to an offset for the negotiated *settlements* between Plaintiffs and individual users (which are not court "awards" and are not the subject of this motion), does not change the fact that only one statutory award is available under the statute. Plaintiffs' offset argument is a total red herring.

## CONCLUSION

Defendants respectfully request that the Court issue an order limiting Plaintiffs' statutory damages claims for the sound recordings on Schedule A to those premised on sound recordings for which Plaintiffs have not previously recovered from direct infringers.

Dated: New York, New York
 March 1, 2011

Respectfully Submitted,
WILLKIE FARR & GALLAGHER LLP

_____
Joseph T. Baio (jbaio@willkie.com)
John R. Oller (joller@willkie.com)
Tariq Mundiya (tmundiya@willkie.com)
Rita D. Mitchell (rmitchell@willkie.com)
787 Seventh Avenue
New York, New York  10019
Phone:  (212) 728-8000
Fax:  (212) 728-8111

12