UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ARISTA RECORDS LLC; ATLANTIC RECORDING
CORPORATION; ARISTA MUSIC, fka BMG
MUSIC; CAPITOL RECORDS, INC; ELEKTRA
ENTERTAINMENT GROUP INC; INTERSCOPE
RECORDS; LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY RECORDS
LLC; SONY MUSIC ENTERTAINMENT, fka SONY
BMG MUSIC ENTERTAINMENT; UMG RECORDINGS,
INC; VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,                                          06 CV 5936 (KMW)

                                                                    OPINION AND ORDER
                              Plaintiffs,

        -against-

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; GREG BILDSON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                              Defendants.
-------------------------------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

I.    **Introduction**

On May 11, 2010, this Court granted summary judgment in favor of Plaintiffs on their claims against Defendants LimeWire LLC ("LW"), Lime Group LLC ("Lime Group"), and Mark Gorton (collectively, "Defendants") for secondary copyright infringement. The Court found that Defendants induced users of the LimeWire online file-sharing program ("LimeWire") to infringe Plaintiffs' copyrights. In the Court's Opinion and Order (as amended on May 25, 2010), the Court detailed this case's procedural and factual background, familiarity with which is assumed. See Dkt. Entry No. 223. The litigation is now in the damage phase, with a trial on damages scheduled for May 2, 2011. For the past few months, the parties have been engaged in vigorous

1

discovery concerning Plaintiffs' potential statutory damage awards. The instant dispute concerns the scope of damage-related discovery to which Defendants are entitled.

Four non-party licensees of Plaintiffs' copyrights – MySpace, Inc. ("MySpace"); iMesh, Inc. and MusicLab, LLC ("iMesh"); Yahoo!, Inc. ("Yahoo!"); and Google, Inc. ("Google")[1] (collectively, the "Licensees") – have filed objections to Magistrate Judge Freeman's Order of January 31, 2011, compelling their production of "any communications, both internal and with Plaintiffs, relating to their licenses with Plaintiffs and/or relating to LimeWire, to the extent those communications reflect information regarding Plaintiffs' conduct, positions, or views about online licensing or about LimeWire." See Dkt. Entry No. 443, at 6 (hereinafter "January 31 Order"). Although the procedural background varies slightly with respect to each Licensee, a general overview follows:

In late September and early October of 2010, Defendants served subpoenas on a number of non-party licensees of Plaintiffs' copyrights, including MySpace, iMesh, and Yahoo!. Through the subpoenas, Defendants sought three categories of documents from the non-party licensees:

1. Copies of license agreements between Plaintiffs and the non-party licensees;
2. Reports of payments made by the non-party licensees to Plaintiffs pursuant to such license agreements; and
3. The non-party licensees' communications (both internal and external) relating to their license agreements with Plaintiffs and/or to the topic of LimeWire.

(January 31 Order at 2.)

In December 2010, after failing to reach agreements concerning the appropriate scope of the subpoenas with certain non-party licensees, Defendants moved to compel the production of those three categories of documents.

---

[1] The objection filed by Google has been referred to another judge, due to a conflict with the undersigned. Accordingly, this Opinion and Order governs only those objections filed by MySpace, iMesh, and Yahoo!.

In the January 31 Order, Judge Freeman addressed Defendants' motions to compel against the Licensees. Judge Freeman began by noting that Plaintiffs had already "produced a significant number of documents in the three categories [of documents] at issue." (January 31 Order at 3.) However, she acknowledged Defendants' argument that discovery from the Licensees might result in additional relevant documents, because the Licensees may have different document retention policies than Plaintiffs. (Id.) Judge Freeman ordered the Licensees to produce external communications with Plaintiffs, and internal communications relating to their license agreements with Plaintiffs and/or to the topic of LimeWire.[2] (Id. at 4-5.) Each Licensee has filed an objection to the January 31 Order. For the reasons stated below, Judge Freeman's January 31 Order is REVERSED.

## II.     Standard of Review and Governing Law

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and its enabling statute, the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), for non-dispositive matters, including discovery disputes, a district court shall reverse a magistrate's order only where it has been shown that the order is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A) (2002); see also Fed. R. Civ. P. 72(a); Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990). Courts in this Circuit have held that a magistrate's ruling on a discovery dispute should be overturned only for an abuse of discretion. Edmonds v. Seavey, No.08 Civ. 5646, 2009 WL 2150971, *2 (S.D.N.Y. July 20, 2009) (noting that the fact that "reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision") (internal citations omitted).

---

[2] Judge Freeman limited discovery to the period subsequent to April 18, 2008.  (January 31 Order at 5.)
    Judge Freeman denied the motion to compel insofar as it called for production of license agreements and payment reports, because she found that Plaintiffs' production of those documents was sufficient. (Id. at 4.)

A "court has the discretion to deny discovery requests if it determines that . . . 'the burden or expense of the proposed discovery outweighs its likely benefit.'" World Wrestling Fed'n. Ent'mt., Inc. v. William Morris Agency, Inc., 204 F.R.D. 263, 265 (S.D.N.Y. 2001) (quoting Fed. R. Civ. P. 26(b)(2)).  When balancing the relevance of a particular discovery request against the burden of production, "'special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation.'" Copantitla v. Fiskardo Estiatorio, Inc., No. 09 Civ. 1608, 2010 WL 1327921, at *10 (S.D.N.Y. Apr. 5, 2010) (citing Travelers Indem. Co. v. Mtro. Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005)).  "[W]here, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party." BSN Med., Inc. v. Parker Med. Assoc., LLC, No. 10 Misc. 15., 2011 WL 197217, at *2 (S.D.N.Y. Jan. 19, 2011) (citing Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004)).

**III.     Analysis**

Defendants seek the Licensees' external communications with Plaintiffs, and the Licensees' internal communications discussing their license agreements with Plaintiffs and/or concerning LimeWire.  Defendants base their demand on their speculation that those communications will illuminate Plaintiffs' conduct and attitude, specifically, how Plaintiffs treat the Licensees and other digital music providers, and how Plaintiffs view the value of their work, which, Defendants claim, may in turn, reveal that Plaintiffs' conduct toward LimeWire has been unduly harsh, as compared with Plaintiffs' conduct and attitude toward the non-party Licensees. (See Dkt. Entry No. 329 at 1; Def. Response to MySpace's Objection, at 5.)  It is true that a plaintiff's "conduct and attitude" during the course of litigation may be relevant in setting

4

statutory damage awards.  See Bryant v. Media Rights Prod., Inc., 603 F.3d 135, 144 (2d Cir. 2010).  See also Warner Bros., Inc. v. Dae Rom Trading, Inc., 877 F.2d 1120, 1126 (2d Cir. 1989) (affirming a lower court's statutory damage award due in part to the "vexatious, oppressive, and unreasonable manner" in which the plaintiff conducted the litigation); Entral Grp. Int'l, LLC v. YHL Vision Corp., No. 05-CV-1912, 2007 WL 4373257, at *3 (E.D.N.Y. Dec. 10, 2007) (finding that a low statutory damage award was "justified by the attitude and conduct of plaintiff which unreasonably demanded" an overly-high licensing fee from the defendant).  However, for the reasons stated below, the Court finds that the very large burden that would be imposed upon the non-party Licensees in identifying such documents would vastly outweigh the likely value of such documents to Defendants.

    A.    Internal Communications

The January 31 Order directs the Licensees to produce internal communications concerning the Licensees' license agreements with Plaintiffs and/or concerning LimeWire.  Defendants speculate that these internal communications might provide Defendants with evidence of Plaintiffs' "conduct and attitude."

In arguing the relevance of the Licensees' internal communications regarding Plaintiffs' conduct and attitude, Defendants point to communications between Plaintiffs and the Licensees, in which Plaintiffs accuse the Licensees of infringing behavior.  Defendants argue that such documents are "probative of Plaintiffs' conduct and attitude because they demonstrate Plaintiffs' hypocrisy in prosecuting LimeWire for alleged piracy while tolerating it from their business partners," and "reflect the lack of harm suffered by Plaintiffs as a result of free music on the internet."  (Def. Response to MySpace's Objection, at 6; Def. Response to iMesh's Objection, at

6.) However, the communications Defendants reference <u>are not the Licensees' internal communications</u>; they are communications between the Licensees and Plaintiffs.

Moreover, even if the Licensees' internal communications were somehow probative of Plaintiffs' conduct and attitude – for example, if MySpace or Yahoo! employees were discussing internally the conduct and attitude of Plaintiffs, which is difficult to envisage and arguably also irrelevant – the burden of collecting, searching, reviewing, and producing all internal communications "relating to their licenses with Plaintiffs and/or relating to LimeWire" would significantly outweigh any potential probative value, particularly here, where the burden would be imposed on non-parties.[3]  See <u>BSN Med., Inc</u>., 2011 WL 197217, at *2 ("[W]here, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party.") (citations omitted). <u>Cf</u>. <u>Palumbo v. Shulman</u>, No. 97 Civ. 4314, 1998 WL 436367, at *4-5 (S.D.N.Y. July 27, 1998) ("[T]he discovery sought, respecting the meaning of the term 'gross income' as used in the non-parties' business management agreements, has no bearing on the subject matter of this action and is irrelevant.").  In sum, the burden posed by Defendants' discovery demands on these non-parties greatly outweighs any likely benefit Defendants would receive from the production.   Accordingly, ordering the Licensees to produce their internal communications was clearly erroneous.[4]

---

[3] For example, MySpace has submitted a sworn declaration from its counsel detailing the time-consuming and costly collection and review process that would be required for each individual custodian if the January 31 Order were upheld.  (<u>See</u> Ingber Decl. Ex 5.)  Similarly, iMesh has submitted a declaration stating that, in previously attempting to comply with the Defendants' subpoena, it has already incurred more than $8,600 in disbursements to outside vendors and over $20,000 in legal fees.  (<u>See</u> Summer Decl. ¶¶ 6-8.)

[4] With respect to MySpace, Defendants emphasize the fact that MySpace, unlike iMesh or Yahoo, has entered into a joint venture with Plaintiffs (to make Plaintiffs' copyrighted works available on the Internet through MySpace).  According to Defendants, the joint venture came about after MySpace found itself a defendant in a lawsuit much like Plaintiffs' suit against LimeWire.  MySpace settled the litigation by

B.      External Communications

The January 31 Order also directs the Licensees to produce communications between themselves and all thirteen Plaintiffs.  Plaintiffs have already been ordered to produce their communications with these same Licensees.  See November 19, 2010 Order (Dkt. Entry No. 363).  Consistent with the Court's order, those communications were obtained.  (See Ingber Decl. Ex. 9.)

In arguing that the January 31 Order should be reversed, the Licensees direct the undersigned to Federal Rule of Civil Procedure 26(b), which states that a court must limit discovery to the extent that it would be "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added).

Recognizing that Plaintiffs have already produced their external communications with these same Licensees, Defendants contend that they nevertheless need duplicative production from the Licensees, because the Licensees may have different document retention policies than Plaintiffs, and thus, might produce additional, relevant communication.  (See Ingber Decl. Ex. 11.)  Defendants, however, do not provide any specific evidence that Plaintiffs' policies are, in fact, different from those of the Licensees.  Defendants simply state that the retention practices of Plaintiffs and the Licensees "may differ."  (Ingber Decl. Ex. 11 at 2-3.)

Judge Freeman agreed with Defendants, and held that Defendants had provided her with "sufficient reason" to believe that the production by the Licensees of those same external communications might contain "additional relevant material."  (January 31 Order at 6.)  Judge

---

entering into the joint venture with Plaintiffs.  (Def. Opp. to MySpace Objection at 7.)  Defendants contend that, "given these circumstances, it is inconceivable that MySpace has no additional relevant internal documents."  (Id.)  However, the burden on MySpace to identify and produce responsive documents vastly outweighs any likely benefit to the Defendants from the production.

Freeman included a single citation from <u>Viacom Int'l. Inc. v. YouTube, Inc.</u> (hereinafter "<u>Viacom Int'l</u>"), a decision that held that, "in appropriate circumstances, production from a third party will be compelled in the face of an argument that the 'same' documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions." No. C 08-80129, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008).  However, in <u>Viacom Int'l</u>, the court compelled production from a non-party <u>only after it found reason to believe that the documents sought from the non-party could not be obtained from the defendant</u>.  See 2008 WL 3876142, at *3 ("Plaintiffs have provided the Court with sufficient reason to believe that respondents' files may contain additional material.  Defendant['s] . . . poor initial record keeping raises questions about the completeness of its files.") (emphasis added).  Thus, the production sought from the non-party in <u>Viacom Int'l</u> was not duplicative; rather, there was reason to believe that the documents sought were not obtainable from the defendant.  In <u>Visto Corp. v. Smartner Info. Syd., Ltd.</u>, (hereinafter "<u>Visto Corp.</u>"), the decision on which the court in <u>Viacom Int'l</u> relied, the court refused to grant the defendant's motion to compel compliance with a non-party subpoena where there was "nothing in the record to suggest that [the non-party] had data or documents not available from [the plaintiff]."  Nos. 06-80339, 06-80352, 2007 WL 218771, at *4 (N.D. Cal. Jan. 29, 2007). [5]

---

[5] Defendants also cite to <u>In re Honeywell Int'l, Inc. Sec. Litig.</u>, 230 F.R.D. 293 (S.D.N.Y. 2003), for the proposition that courts will sometimes order the production of documents that are seemingly duplicative. (<u>See</u> Def. Response to Yahoo!'s Objection, at 7.)  However, the facts in that case, like <u>Viacom International</u>, are distinguishable from the instant facts.  In <u>Honeywell</u>, class plaintiffs alleged that the defendant had engaged in securities fraud through accounting mechanisms.  The court ordered production from the defendant's financial auditor, including documents that may also have been available from the defendant.  However, the court noted that the auditor's documents might differ from the defendant's documents because the auditor's documents might include handwritten notes.  <u>Id.</u> at 301.  The court noted that this difference was relevant to the underlying fraud issue.  <u>Id.</u>

8

Here, as in Visto Corp, Defendants have provided no specific reason why there would be any discrepancy between what Plaintiffs have already produced and what the Licensees were ordered to produce in the January 31 Order. Defendants' speculation that the non-parties referenced here may have relevant documents that would be useful to Defendants does not justify the significant burden that identification and production of the documents subpoenaed by Defendants would place on the non-parties.[6] Accordingly, ordering the Licensees to produce duplicative communications was clearly erroneous.

## IV.  Conclusion

For the foregoing reasons, Judge Freeman's January 31, 2011 Order is REVERSED, with regard to non-parties MySpace, iMesh, and Yahoo!.

SO ORDERED.

Dated: New York, New York
       March 1, 2011

_____
Kimba M. Wood
United States District Judge

---

[6] Defendants emphasize a previous order issued by Judge Freeman regarding VEVO, LLC ("VEVO"), another one of Plaintiffs' licensees. See November 23, 2010 Order (Dkt. Entry No. 367). In that order, Judge Freeman directed VEVO to produce documents similar to the ones described in the January 31 Order. Referencing the VEVO order, Defendants argue that the January 31 Order should be upheld so that all non-party licensees are treated similarly. However, VEVO volunteered to produce the majority of the requested documents. Thus, Judge Freeman's VEVO order simply memorialized a previously-negotiated agreement between VEVO and Defendants. The fact that one non-party licensee has agreed to produce certain communications is irrelevant to the question of whether additional non-parties should be compelled to do so.