REDACTED VERSION
-COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC fka CAPITOL RECORDS INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE CERTAIN PURPORTED EXPERT TESTIMONY BY EMIN GÜN SIRER**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Susan T. Boyd *(pro hac vice)*
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
*Attorneys for Plaintiffs*

Date: March 2, 2011

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  BACKGROUND ....................................................................................................2

    A.  Dr. Richard Waterman's Conclusions Regarding the Total Number of Infringements on LimeWire From October 2004-August 2010 ............................2

    B.  Professor Sirer's Rebuttal Opinions ..........................................................6

        1.  Professor Sirer Has No Specialized Knowledge, Education, Training, or Experience With Respect to the Statistical Sampling of Human Populations and Statistical Modeling ..........................................6

        2.  Professor Sirer Is a Partisan Advocate of the LimeWire Service and Peer-to-Peer Infringement ......................................................8

        3.  Professor Sirer's Opinions Regarding Dr. Waterman's Statistical Analysis Are Not Supported By Any Data or Methodology ..................10

III.  THE COURT SHOULD PRECLUDE PROFESSOR SIRER FROM TESTIFYING AT TRIAL REGARDING DR. WATERMAN'S STATISTICAL CONCLUSIONS CONCERNING THE TOTAL NUMBER OF INFRINGEMENTS ON LIMEWIRE OF PLAINTIFFS' WORKS AT ISSUE..............14

    A.  Professor Sirer Is Not a Qualified Expert in the Field of Statistical Sampling of Human Populations, Statistical Modeling, or Regression Analyses ...............................................................................15

    B.  Professor Sirer's Conclusions Are Entirely Speculative and Conjectural............19

IV.  CONCLUSION ....................................................................................................21

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Arista Records LLC v. Lime Group LLC*,
  715 F. Supp. 2d 481 (S.D.N.Y. 2010) .................................................................5, 13

*Brazier v. Hasbro, Inc.*,
  2004 WL 515536 (S.D.N.Y. Mar. 16, 2004)..........................................................18

*Cacciola v. Selco Balers, Inc.*,
  127 F. Supp. 2d 175 (E.D.N.Y. 2001) ...............................................................20, 21

*Capellupo v. Nassau Health Care Corp.*,
  2009 WL 1705749 (E.D.N.Y. June 16, 2009) ........................................................18

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) .......................................................................................16, 17, 21

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................................21

*Haimdas v. Haimdas*,
  2010 WL 652823 (E.D.N.Y. Feb. 22, 2010) .....................................................17, 18

*In re Commercial Money Ctr., Inc.*,
  737 F. Supp. 2d 815 (N.D. Ohio 2010) ...................................................................20

*In re Med Diversified, Inc.*,
  334 B.R. 89 (Bankr. E.D.N.Y. 2005) ......................................................................18

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) .....................................................................18

*King v. Enter. Rent-A-Car Co.*,
  231 F.R.D. 255 (E.D. Mich. 2004) ..........................................................................20

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................16

*Lamela v. City of New York*,
  560 F. Supp. 2d 214 (E.D.N.Y. 2008) .....................................................................17

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008) ....................................................................................21

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007) .................................................................18, 20

# TABLE OF AUTHORITIES

**Page**

*Mega Constr. Co., Inc. v. United States*,
　29 Fed. Cl. 396 (Fed. Cl. 1993) .......................................................................... 20

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.*,
　164 F.3d 736 (2d Cir. 1998) ................................................................................ 18

*Rosco, Inc. v. Mirror Lite Co.*,
　506 F. Supp. 2d 137 (E.D.N.Y. 2007) ................................................................. 17

*Shatkin v. McDonnell Douglas Corp.*,
　727 F.2d 202 (2d Cir. 1984) ................................................................................ 21

*Smith v. Herman Miller, Inc.*,
　2005 WL 2076570 (E.D.N.Y. Aug. 26, 2005) .................................................... 18

*Zaremba v. General Motors Corp.*,
　360 F.3d 355 (2d Cir. 2004) .......................................................................... 17, 18

## STATUTES AND RULES

Federal Rule of Evidence 702 ......................................................................... passim

## I.     INTRODUCTION

Pursuant to Rule 702,[1] Plaintiffs move to exclude testimony by Emin Gün Sirer, who proposes to critique the testimony of Plaintiffs' statistical expert, Dr. Richard Waterman, concerning the total number of infringements on LimeWire of Plaintiffs' works at issue.

Dr. Waterman is an expert in statistics.  He is an adjunct Professor of Statistics at The Wharton School of the University of Pennsylvania and has been recognized as an expert witness on statistics in numerous cases in federal and state court, including by this Court during the summary judgment stage.  Defendants propose to have Sirer, a professor in the computer science department of Cornell University, rebut Dr. Waterman's testimony.  But to say that Professor Sirer has no expertise in statistics is an understatement. ██████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████ Professor Sirer does have an expertise of sorts that relates to LimeWire – he is an intense advocate for mass file-sharing, and in fact has devoted significant time to designing software programs that make it easier for people to infringe Plaintiffs' copyrights.  Just because Sirer has the word "Professor" in front of his name and an intense enthusiasm for LimeWire and its ignominious ilk, that does not make him an expert in statistics.  The Court should exclude his testimony for the following reasons.

*Professor Sirer's critique of Dr. Waterman's statistical analysis exceeds the scope of his expertise.*  Professor Sirer purports to offer opinions in this case regarding the validity of statistical sampling designs, methodologies, regression models, and extrapolations involving human populations. ██████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████

---

[1] Unless otherwise noted, all referenced to "Rules" are to the Federal Rules of Evidence.

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

██████████████████████████████ Sirer lacks the basic

knowledge, skill, experience, training or education to opine on these issues as an expert witness.

   ***Professor Sirer's testimony is not based upon sufficient facts or data, but rather***

***speculation and conjecture.***  Every single contention that Professor Sirer advances regarding Dr.

Waterman's statistical conclusions is speculative, without any empirical basis or methodological

support.  For example, Professor Sirer claims that the statistical sample Dr. Waterman relies

upon is subject to "selection bias" because the sampled individuals are more likely to engage in

infringing behavior than the rest of the general population.  ████████████████████████

██████████████████████████ Such rank speculation is rampant

throughout his report.

   Accordingly, the Court should exclude Professor Sirer's testimony regarding Dr.

Waterman's statistical conclusions concerning the total number of infringements on LimeWire of

Plaintiffs' works at issue.

## II.      BACKGROUND

### A.      Dr. Richard Waterman's Conclusions Regarding the Total Number of Infringements on LimeWire From October 2004-August 2010

   Dr. Richard Waterman is an adjunct Professor of Statistics at The Wharton School of the

University of Pennsylvania and is the President and Co-Founder of Analytic Business Services

Inc., a consultancy focused on providing expert advice and opinions in the field of statistical

analysis.  Dr. Waterman has been qualified as an expert witness on statistics in several cases in

federal and state court, including by this Court during the summary judgment stage.  (*See* Ex. 1[2] at 1-2; *Arista Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481, 495-97 (S.D.N.Y. 2010) (finding that "Dr. Waterman's expert report and testimony are based on reliable methodology and are therefore admissible.").).)[3]  In his analysis for the damages phase of these proceedings, Dr. Waterman has calculated the total number of infringements of Plaintiffs' works at issue in this case on the LimeWire service for the period October 2004 through August 2010.  ████████

████████████████████████████████████████████

██████████████████████████████████  (Ex. 3 at 2.)[4]

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

---

[2] Unless noted otherwise, all "Ex." cites herein are to the exhibits attached to the concurrently filed Declaration of Kelly M. Klaus.

[3] Dr. Waterman has a PhD in Statistics, and has substantial experience designing and reviewing human sampling protocols for large organizations, such as the United States Postal Service.  (Ex. 1 at 1 and Exhibit A.)  He also has designed sampling protocols involving file-sharing technologies, such as BitTorrent, Gnutella (including LimeWire) and Usenet.   *Id.*  He has significant experience in designing sampling protocols in the private sector and developing market research studies involving human sampling for large corporate clients.  *Id.*   He has authored or co-authored over two dozen articles and other publications involving statistics and market research.  *Id.*

[4] Conservatively, Dr. Waterman did not consider any uploading activity on LimeWire.





---

[6] The Billboard Hot 100 is the week's most popular sound recordings across all genres, ranked by radio airplay, audio impression as measured by Nielsen-BDS, sales data as compiled by Nielsen SoundScan and streaming activity data provided by online music sources. (*See* http://www.billboard.com/charts/hot-100#/charts/hot-100 (last visited March 1, 2011).)

███████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

███

**B.    Professor Sirer's Rebuttal Opinions**

    **1.    Professor Sirer Has No Specialized Knowledge, Education, Training, or Experience With Respect to the Statistical Sampling of Human Populations and Statistical Modeling**

Emin Gün Sirer is an associate professor in the computer science department of Cornell

University.  He holds a bachelor's degree and a PhD in Computer Science and Engineering.  (Ex.

4 at Ex. A.) ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████

          ██████████████████████████████████████

█████████████████████████████████████████

---

[7] Dr. Waterman also performed two additional analyses, the "Network Search Study" and the "User Request Study," to get a snapshot of infringing occurring on the LimeWire network in August/September 2010.  (Ex. 1 at 12-14.)  These studies showed that infringing activity and demand for infringing files remained very high on LimeWire following the Court's summary judgment ruling.  (*Id.*)

████████

████████████████████████████████████

██████████████████████

### 2. Professor Sirer Is a Partisan Advocate of the LimeWire Service and Peer-to-Peer Infringement

Professor Sirer has developed or proposed several pieces of software that by design, and even intent, enable infringement or shield the facilitators of such infringement from liability.

████████████████ Professor Sirer released the software program "Credence" for the LimeWire network.  (*Id*. at 42:16-43:9.  *See also* Ex. 6) ██████████████

████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████

---

[8] ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

Moreover, Professor Sirer has developed a piece of software called "Blindfold" to allow "content aggregators" to be "completely blind to the content that they are serving."  (*Id*. at 88:16--88:22; Ex. 7 at 1)   Professor Sirer authored an article describing Blindfold as a system of "See No Evil" for content aggregators to help them avoid "subjecting themselves to copyright infringement litigation"; the article even referenced the notorious infringing site "The Pirate Bay" as a potential user of Blindfold.  (Ex. 7 at 1.) █████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████
        ███████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████████████
████████████████████████████████████████████

████████████████

### 3. Professor Sirer's Opinions Regarding Dr. Waterman's Statistical Analysis Are Not Supported By Any Data or Methodology

Professor Sirer offers a number of opinions regarding Dr. Waterman's statistical conclusions in his report.  Sirer's contentions have no empirical or methodological support and are based on nothing more than speculation.

### a. Sirer's Unfounded Critique of the NPD Data

Professor Sirer critiques Dr. Waterman's reliance on the NPD data on three separate grounds.  First, Professor Sirer contends that there may be "selection bias" in the NPD sample which "may have skewed results towards unscrupulous users likely to commit infringement." (Ex. 4 at ¶¶ 22, 23.) ████████████████████████████

████████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████████████

████████████████████████████████████

██████████████████████████████████

█████████████████████████████

████████████████████████████████

████████████████

Second, Professor Sirer contends that "errors in demographic information relating to the sampled and target audiences may have skewed extrapolations," "Dr. Waterman does not provide any evidence to justify" the demographic factors ██████████████████ and that certain demographic components may be "purposefully misreported by the participants."

(Ex. 4 at ¶¶ 22, 24-25.) ████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

   ██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ In Professor Waterman's

previous report in this action submitted during the summary judgment phase, he demonstrated

based upon a random sample of files downloaded from LimeWire that less than 1% of the files

were "spam or spoofs."  (Ex. 9 at ¶ 1.  *See also Lime Group*, 715 F. Supp. 2d 481 at 496 (noting

"small number of files classified as 'spam, spoofs, and pornography,'" and that "their exclusion

from the sample size of 1800 files had an inconsequential effect on Dr. Waterman's statistical

findings and conclusions"). ███████████████████████████████

███████████████████████████████████████████████



### b. Sirer's Critique of Waterman's Smoothing Spline Projections Is Entirely Speculative

Professor Sirer's critique of Dr. Waterman's smoothing spline download projections for Post 1972 works for the post-February 2007 period are based on nothing more than conjecture.

Professor Sirer claims that there are "conceptual flaws" with Dr. Waterman's model. (Ex. 4 at ¶ 29.)  First, he contends that Dr. Waterman's model "does not take into account the time factor, that is, how much time a song spent at each rung in the charts." (*Id.* at ¶ 30.)

The second purported "conceptual flaw" Professor Sirer notes concerns the alleged



absence of a "statistical measure of correlation" between chart position and the number of

downloads modeled.  (Ex. 4 at ¶¶ 32-33.)



  The remainder of Professor Sirer's conclusions are equally without any supporting

factual basis.  Sirer criticized Dr. Waterman's decision to treat the downloads of Pre 1972 works

as constant during this period (with a 1/3 discount) as not taking into account "population

dynamics" on the LimeWire network (Ex. 4 at ¶ 35),

---

[10] Similarly, while Sirer contends that the flattening of the curve for less popular songs
undermines the model's validity, he could not cite to any data demonstrating that a flattening of
the curve was not in fact an accurate representation of the real world (*i.e.,* that less popular songs
are in fact downloaded at more equivalent rates).  (Ex. 5 at 231:14-232:18.)

████████████████████████████████████████████

████████████████████████████████████████████

████   With respect to Dr. Waterman's decision to discount the total downloads for the post

February 2007 period by 1/3, ████████████████████████████████

██████████████████████████████████████████

## III.    THE COURT SHOULD PRECLUDE PROFESSOR SIRER FROM TESTIFYING AT TRIAL REGARDING DR. WATERMAN'S STATISTICAL CONCLUSIONS CONCERNING THE TOTAL NUMBER OF INFRINGEMENTS ON LIMEWIRE OF PLAINTIFFS' WORKS AT ISSUE

Rule 702, which governs the admissibility of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  The Court explained in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, (1999), that the objective of the "gatekeeping" requirement of *Daubert* and Rule 702 is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  As the party offering Professor Sirer's testimony, Defendants "bear the

---

[11] Professor Sirer also contends that Dr. Waterman's "data processing tools performed erroneous operations" for his post February 2007 projections.  (Ex. 4 at ¶ 37).  Sirer, however, did not perform any alternative calculations fixing these purported errors, and could not say that any in fact had a material affect on Dr. Waterman's download conclusions.  (Ex. 5 at 253:17-255:2.)

burden of establishing admissibility by a preponderance of the evidence." *Lamela v. City of New York*, 560 F. Supp. 2d 214, 224 (E.D.N.Y. 2008); *Daubert*, 509 U.S. at 592 n. 10.  Defendants have not satisfied, and cannot satisfy, that burden here.  Professor Sirer should be precluded from testifying at trial regarding Dr. Waterman's statistical conclusions concerning the total number of downloads on LimeWire of Plaintiffs' works at issue.

### A.    Professor Sirer Is Not a Qualified Expert in the Field of Statistical Sampling of Human Populations, Statistical Modeling, or Regression Analyses

Professor Sirer purports to offer opinions in this case regarding the validity of statistical sampling designs, methodologies, regression models, and extrapolations involving human populations.  Sirer, however, lacks sufficient knowledge, skill, experience, training or education with respect to any of these areas to qualify as an expert witness.

As the Second Circuit held in *Zaremba v. General Motors Corp.*, 360 F.3d 355 (2d Cir. 2004), "Rule 702 requires that expert testimony come from someone who is 'qualified as an expert by knowledge, skill, experience, training or education,' whose testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* at 359-60.  If a proposed expert has "meager qualifications" that do not satisfy Rule 702, an independent *Daubert* analysis is "almost superflouous." *Id*.  Thus, "[a]s to sequence, a court should first decide whether the expert has sufficient qualifications to testify before proceeding to the remaining factors." *Haimdas v. Haimdas*, 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010).

"'A court must consider the 'totality of a witness's background when evaluating the witness's qualifications to testify as an expert.'" *Rosco, Inc. v. Mirror Lite Co.*, 506 F. Supp. 2d 137, 144-45 (E.D.N.Y. 2007).  "In particular, as part of the qualification inquiry, a court must ensure that the expert will be proffering opinions on issues or subject matter within his or her area of expertise." *Haimdas*, 2010 WL 652823, at *2 (citing *Stagl v. Delta Air Lines, Inc.,* 117

F.3d 76, 80 (2d Cir. 1997)).  "Ultimately, the determination of whether a witness possesses

attributes sufficient to qualify as an expert witness in a particular case is within the Court's

'broad discretion.'" *Id.*

Courts repeatedly have held individuals unqualified to serve as experts under Rule 702

where they lack sufficient education or experience regarding the particular subject matter upon

which they are opining.  *See, e.g., Zaremba*, 360 F.3d at 359 (affirming exclusion of individual

on question of automobile design who "had only a bachelor's degree in engineering and his only

practical experience was in designing parts for automobile air bags"); *Nora Beverages, Inc. v.

Perrier Group of Am., Inc.*, 164 F.3d 736, 746  (2d Cir. 1998) (affirming ruling that individual's

"experience as a marketer in the beverage industry did not qualify him to testify on contract

negotiations because [witness] conceded that he was never directly involved in negotiating co-

packing agreements and could not recall the details of any co-packing agreements into which his

company entered"); *Malletier v. Dooney & Bourke*, Inc., 525 F. Supp. 2d 558, 642 (S.D.N.Y.

2007) (excluding proposed expert testimony on statistics where individual not "sufficiently

qualified to testify to the statistical significance of a common choice of colors.").[12]

---

[12] *See also, e.g., Haimdas*, 2010 WL 652823, at *2 (finding individual "not qualified to testify as
an expert on the specific matter that he has been designated to address in this case-an assessment
of the children's maturity based on psychological evaluation" where he "lacks the formal
credentials to opine as an expert on the psychological analysis of the children's maturity
provided" or to "perform psychological tests on the children himself"); *Capellupo v. Nassau
Health Care Corp.*, 2009 WL 1705749, at *11 (E.D.N.Y. June 16, 2009) ("a psychologist, Mr.
Anderson would not be competent to testify regarding generally accepted standards of medical
care as they relate to the involuntary admission of a patient to a psychiatric hospital"); *Brazier v.
Hasbro, Inc.*, 2004 WL 515536, at * 7 (S.D.N.Y. Mar. 16, 2004) (proposed expert's "curriculum
vitae reveals no expertise in child psychology or behavior that renders him specially qualified to
discern [plaintiff's] personal motivation."); *Smith v. Herman Miller, Inc.*, 2005 WL 2076570, at
*3 (E.D.N.Y. Aug. 26, 2005) (proposed expert not qualified where "there is no evidence that [he]
has ever designed furniture, studied furniture design, published papers or lectured on the subject,
or worked for a company that designed furniture. He has no post-graduate education in
engineering."); *In re Med Diversified, Inc.*, 334 B.R. 89, 96-97 (Bankr. E.D.N.Y. 2005)



(rejecting proposed expert who had no "formal education and training in business valuations and in peer-recognition in this sub-branch of substantive expertise in business valuations"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004) (rejecting proposed expert who lacked "formal training in diabetology or endocrinology").

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Professor Sirer does have an expertise of sorts that relates to LimeWire – he is an intense advocate for mass file-sharing, having designed several software programs that make it easier for people to infringe Plaintiffs' copyrights on LimeWire and other peer-to-peer networks.  Sirer's undeniable partisanship buttresses the conclusion that he plainly is not qualified to offer expert testimony in this action.  *See, e.g., Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001) ("When expert witnesses become partisans, objectivity is sacrificed to the need to win."); *In re Commercial Money Ctr., Inc.*, 737 F. Supp. 2d 815 (N.D. Ohio 2010) (individual "not qualified to serve as an expert witness in these proceedings" where "his extreme partisanship renders any testimony that he could provide unhelpful"); *Mega Constr. Co., Inc. v. United States,* 29 Fed. Cl. 396, 434 (Fed. Cl. 1993) (expert testimony has "little or no weight"

---

[13] ███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████  In *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007), for example, the defendants contended that their proposed expert, who had expertise in colorimetry, had "used his familiarity with statistics/probability for 40 years in connection with his studies and work."  *Id.* at 642.  The court rejected this argument, noting that while "he may have used statistics in his work (as most people do to one extent or another) this does not mean that he is sufficiently qualified to testify to the statistical significance of a common choice of colors."  *Id.*  The court emphasized that an "expert qualified in one subject matter does not thereby become an expert for all purposes. Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702."  *Id.  See also King v. Enter. Rent-A-Car Co.,* 231 F.R.D. 255, 267 (E.D. Mich. 2004) (witness excluded where he "has no educational or professional background or experience in employment statistics" and rejecting claim that his "background in other areas of statistics qualifies him to render a general opinion in any area, or at least in employment statistics").

under Rule 702 where witness "discerned a strong partisan position" in "favor of plaintiff, in conflict with one of his duties as an expert witness to objectively assist the court to understand the facts and issues").

Professor Sirer does not have any expertise in the statistical sampling and extrapolations of human populations, sampling design, statistical modeling, or regression analyses.  His critique of Dr. Waterman's statistical conclusions must be excluded.

### B.    Professor Sirer's Conclusions Are Entirely Speculative and Conjectural

Professor Sirer's testimony must be excluded for the additional reason that his critiques of Dr. Waterman's statistical analyses are wholly speculative.

Rule 702 requires that an expert's testimony be "based upon sufficient facts or data."  It is therefore well settled that "[a]t trial, proffered 'expert testimony should be excluded if it is speculative or conjectural.'"  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). Courts routinely reject expert testimony that "rests upon unsubstantiated generalizations, speculative hypotheses and subjective evaluation that are based neither upon any professional study or experience-based observation." *Cacciola*, 127 F. Supp. 2d at 1843.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Moreover, expert testimony should be excluded if it is based on assumptions that are "so unrealistic and contradictory as to suggest bad faith." *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984).

Every single contention that Professor Sirer advances regarding Dr. Waterman's statistical conclusions is purely speculative, without any empirical basis:

- 19 -





Because Professor Sirer's opinions regarding Dr. Waterman's statistical analyses are wholly speculative and conjectural, they should be excluded.

## IV.    CONCLUSION

For the foregoing reasons, the Court should exclude Professor Sirer's testimony regarding Dr. Waterman's statistical conclusions concerning the total number of infringements on LimeWire of Plaintiffs' works at issue.

Dated:  March 2, 2011                    Respectfully submitted

_____/s/ Kelly M. Klaus_____
Kelly M. Klaus

Attorney for Plaintiffs
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100
(213) 687-3702 (Fax)