**REDACTED VERSION**
**COMPLETE VERSION FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., Plaintiffs, v. LIME GROUP LLC; LIME WIRE LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, Defendants. | ECF Case<br>06 CV 5936 (KMW)(DF) |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS' ARGUMENT THAT OTHER ILLEGAL SERVICES WOULD HAVE INDUCED INFRINGEMENT OF PLAINTIFFS' COPYRIGHTS IF LIME WIRE HAD NOT**

WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019
Phone: (212) 728-8000

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 6

I. THE EVIDENCE PLAINTIFFS SEEK TO EXCLUDE IS RELEVANT TO DAMAGES IN THIS CASE. ........ 6

A. The Evidence of Free Music Alternatives is Relevant to Statutory Damages ........ 6

1. What Plaintiffs Would Have Made "But For" Infringements by Lime Wire Users is Relevant to Damages Causation ........ 6

2. The Wide Availability of Free Sources of Music is Relevant to and Supports Defendants' Argument as to the Lack of a "But For" Causal Relationship Between Lime Wire Infringements and Plaintiffs' Diminished Revenues. ........ 11

3. The Evidence Plaintiffs Seek to Preclude is Also Relevant to Proximate Cause. ........ 13

B. The Evidence Concerning Other Free Music Services is Also Relevant to Actual Damages ........ 18

II. THE DETERRENCE FACTOR DOES NOT WARRANT EXCLUSION OF THE EVIDENCE ........ 20

CONCLUSION ........ 21

## TABLE OF AUTHORITIES

## CASES

*Antenna TV v. Aegean Video*,
No. 95-CV-2328, 1996 U.S. Dist. LEXIS 7688
(E.D.N.Y. March 20, 1996) ....................2, 8, 13, 14

*Baker v. Urban Outfitters Inc.*,
254 F. Supp. 2d 346 (S.D.N.Y. 2003)....................2, 9, 19

*Big Seven Music Corp*,
554 F.2d 504 (2d Cir. 1977)....................13, 14

*Bly v. Banbury Books, Inc.*,
638 F. Supp. 983 (E.D. Pa. 1986) ....................7, 20

*Bryant v. Media Right Productions, Inc.*,
603 F.3d 135 (2d Cir. 2010)....................1, 5, 6, 7, 8, 21

*Data General Corp. v. Grumman System Support Corp.*,
36 F.3d 1147 (1st Cir. 1994) ....................8, 13

*E. America Trio Products, Inc. v. Tang Electric Corp.*,
97 F. Supp. 2d 395 (S.D.N.Y. 2000)....................7

*EMI Entertainment World, Inc. v. Karen Records, Inc.*,
603 F. Supp. 2d 759 (S.D.N.Y. 2009)....................7, 8

*Fournier v. McCann Erickson*,
242 F. Supp. 2d 318 (S.D.N.Y.2003)....................19

*Hamil America, Inc. v. GFI*,
193 F.3d 92 (2d Cir. 1999)....................10

*Lattanazio v. Deloitte & Touche, LLP*,
476 F.3d 147 (2d Cir. 2007)....................14

*Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*,
519 F. Supp. 730 (S.D.N.Y. 1980) ....................10

*Marobie-FL v. National Association of Fire Equipment Distributors*,
No. 96 C 2966, 2002 U.S. Dist. LEXIS 2350
(N.D. Ill. Feb. 12, 2002)....................19

*McLaughlin v. America Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008)....................8

*N.A.S. Import Corp. v. Chenson Enterprises, Inc.*,
968 F.2d 250 (2d Cir. 1992)....1

*Odegard, Inc. v. Costikyan Classic Carpets, Inc.*,
963 F. Supp. 1328 (S.D.N.Y. 1997)....7

*On Davis v. Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001)....19

*Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc.*,
329 F.2d 194 (2d Cir. N.Y. 1964)....10

*RSO Records, Inc. v. Peri*,
596 F. Supp. 849 (S.D.N.Y. 1984)....8

*Reid Elsevier, Inc. v. Muchnick*,
130 S. Ct. 1237 (2010)....8

*Stevens Linen Associates, Inc. v. Mastercraft Corp.*,
656 F.2d 11 (2d Cir. 1981)....8

*Sunset Lamp v. Alsy Corp.*,
749 F. Supp. 520 (S.D.N.Y. 1990)....14

*Yurman Studio, Inc. v. Castaneda*,
2008 U.S. Dist. LEXIS 96994, 2008 WL 4949775 (S.D.N.Y. Nov. 19, 2008)....7, 8

## STATUTES

17 U.S.C. § 504....7

## OTHER AUTHORITIES

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04(E)(1)(a)
(2010)....7, 8

6 *Patry on Copyright* § 22:174 (2010)....7

**PRELIMINARY STATEMENT**

Plaintiffs' Memorandum ("Pl. Br.") totally mischaracterizes the purpose and relevance of the evidence it seeks to preclude concerning the widespread availability of free music on the Internet. Defendants are not pointing to "other illegal music services" to "excuse Defendants' own wrongful conduct," to "hide behind other wrongdoers," or to exculpate Defendants from liability that has already been found. The case is now in the *damages* phase, and Defendants rely on traditional tort damages principles – both "proximate" and "but for" causation – to refute Plaintiffs' claim that Lime Wire alone is responsible for most, if not all, of the decline in recorded music sales over the past ten years. Plaintiffs' examples of drug dealers and shoplifters trying to avoid criminal punishment by arguing that others would have committed the same crime are of no relevance here; the issue is the extent to which Lime Wire allegedly caused harm to Plaintiffs as a factor in assessing civil damages.

Among the factors to be considered in determining statutory damages in a copyright case are "the revenues lost by plaintiffs *as a result of the defendant's conduct.*" *N.A.S. Import Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992) (cited in *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (emphasis added). Indeed, this Court has ruled in this action that Defendants were entitled to discovery "relating to the actual damages suffered by Plaintiffs *as a result of Defendants' infringing conduct* . . . [because] the Court may consider actual damages in determining the appropriate statutory damage award." 8/9/10 Order, Docket No. 302, at 5 n.2 (emphasis added); *see also* 11/18/10 Order, Docket No. 363, at 7) ("[I]t is well-settled that the amount of actual damages is one factor that courts take into account when setting statutory damages.").

As such, the "actual damage" prong of statutory damages, like that of actual damages for pre-1972 works, takes into account both the extent to which unrelated factors, as

opposed to a defendants' infringing conduct, proximately caused a plaintiff's alleged loss, as well as whether, in a "but for" world where the infringer did not exist, the plaintiff nonetheless would have suffered harm. *See, e.g.*, *Antenna TV v. Aegean Video*, No. 95-CV-2328, 1996 U.S. Dist. LEXIS 7688, at *8-9 (E.D.N.Y. Mar. 20, 1996) (to show actual damages, "Plaintiff must show that 'the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss.'") (quotation omitted); *Baker v. Urban Outfitters Inc.*, 254 F.Supp.2d 346, 356 (S.D.N.Y. 2003) (citing "but for" causation test). This Court has recognized as much in a recent order on statutory damages-related discovery, noting that "Defendants correctly state that 'an essential question for assessing harm to the Plaintiffs is *how much higher music sales and profits would have been absent the infringement of the works by music consumers using LimeWire*." Feb. 25, 2011 Order, Docket No. 554, at 7-8. Plaintiffs' contention that lost revenue cannot be measured by reference to "a hypothetical world without Lime Wire" (Pl. Br. at 2) is thus wrong as a matter of law and has been rejected by the Court.

[redacted] As recently as the February 18 conference, Plaintiffs' counsel made clear that "the largest number of witnesses" they intend to call at trial will be "to explain the harm caused by Lime Wire" over the "ten years of history of Lime Wire" in terms of alleged lost revenue. *See* 2/18/11 Hr'g Tr. (Dkt. No. 559), at 18 (attached as Exhibit A to the Declaration of John R. Oller ("Oller Decl.") dated March 3, 2011, submitted herewith.); *see id.* at 23 ("Mr.

Pomerantz: . . . Another thing we have to show [at trial] is lost revenue.... We have many aspects of our business that have been destroyed because of LimeWire").)

Plaintiffs are entitled to their opinions, including those recently offered by their expert, Professor Liebowitz, who claims that file-sharing is responsible for virtually the entire decline in recorded music sales. But the extent to which that decline is caused by other factors is a hotly debated issue among experts, and Defendants are equally entitled to counter those assertions with evidence, and expert testimony, of their own. One way is through pointing to Plaintiffs' [REDACTED] public statements to investors, demonstrating that they do *not* attribute all of their alleged losses to p2p file sharing. For example, Warner Music recently told its shareholders in an SEC filing that "illegal downloading of music, *cd-r piracy, industrial piracy, economic recession, bankruptcies of record wholesalers and retailers, and growing competition for consumer discretionary spending and retail shelf space may all be contributing to a declining recorded music industry.*" *See* Warner Music Group 2010 Annual Report (Oller Decl. Ex. D) at 24 (emphasis added).[1]

---

1 Plaintiff Universal's owner Vivendi similarly has stated publicly that "The decline in the market for audio recordings is due to the *combined effect* of the economic recession, piracy, counterfeiting (both industrial and domestic, using recordable CD-ROMs or the illegal downloading of music from the Internet made easier by the availability of works in digital formats) and increased competition for consumer spending on leisure." Vivendi 2006 Annual Report, p. 55 (Oller Decl. Ex. E) (emphasis added).



Another way for Defendants to challenge the causal link, and directly at issue on this motion, is by pointing to the fact that the Internet has been and continues to be literally saturated with music sites, other than Lime Wire, that allow consumers to freely access billions of song files without permission or payment to the record labels. As discussed below, these include, and have included, both "other illegal sites" [redacted], including other (non-Lime Wire) p2p systems such as Napster, Grokster and dozens of others; other "music piracy" sites wholly apart from p2p systems that allow consumers to obtain music for free (*e.g.*, unlicensed MP3 sites, cyber lockers, and music blogs); and "legal" sites, such as YouTube, MySpace and Facebook, from which consumers can and frequently do copy digital music files through such technologies as "stream ripping" and unauthorized download services that are widely available on the Internet.

The point of this evidence is not to exonerate Lime Wire from liability, as Plaintiffs mischaracterize it, but to show that even without Lime Wire, Lime Wire users could and would have turned to many other alternative sources of obtaining free music rather than purchasing it. That is, contrary to Plaintiffs' contention, not every (indeed not many) "illegal" downloads of their music, including by Lime Wire users, represent a lost sale. As Defendant's economic expert George Strong of Cornerstone Research states, "the impact on record company revenues and profits of infringement of the Works specifically using LimeWire was clearly less than all sharing technologies and unlikely to be significant given the presence of numerous alternative ways to share music in the 'but for' world (i.e., the world absent Lime Wire). In that environment, the plaintiffs would likely have earned little, if any, additional revenues and profits

---

[redacted]

due to the absence of the Lime Wire infringement activity."[2] And as explained by Defendants' expert Aram Sinnreich, a Rutgers professor who has made a career of researching and writing on music and digital technology, including consumer behavior with respect to digital media, the availability of free music via the Internet, and the ways in which consumers access and use it, "there are so many channels through which music fans can access music freely over the internet that Lime Wire's absence from that mix would have a minimal effect." (quoted in Pl. Br. at 4).

It cannot be that Plaintiffs can seek billions, even trillions, of dollars in damages from Lime Wire [redacted], yet Defendants are not allowed to offer contrary evidence, both fact and expert, to support the opposite conclusion. Plaintiffs through this motion seek to completely straightjacket Defendants in their ability to defend against a damages claim, both for pre-1972 works and, as relevant under *Bryant*, the more expansive statutory damages claims. This is yet another attempt by Plaintiffs, as evidenced in their various other motions *in limine*, to prevent Defendants from saying virtually *anything* in their defense with respect to the *Bryant* factors.

Further to that effort is Plaintiffs' meritless argument that allowing Defendants' evidence of other ways consumers can access free music without payment to Plaintiffs "would impermissibly write deterrence out of the law." Pl. Br. at 2. Plaintiffs are free to argue to the jury, and no doubt will, that a sizeable damages award is necessary in order to deter "the infringer and other third parties" from similar conduct. *See Bryant*, 603 F.3d at 144. But Defendants should be allowed to present evidence to the jury supporting the conclusion that the deterrent factor, to the extent it weighs in Plaintiffs' favor, should be given less weight than

---

2 *See* Expert Report of George G. Strong, Jr., Jan. 14, 2011, at 6 ¶ 8 (Oller Decl. Ex. B).

Plaintiffs claim because few people will, in fact, be deterred from accessing free music by a large award against Lime Wire. As Professor Sinnreich has testified in this case, based on 20 years of study of the music industry, new technologies and consumer behavior in the digital sphere, "file sharing is . . . just one of many, many, many different platforms that people use to achieve the same ends . . . I can't really imagine a scenario in which the presence or absence of a large damages award in this case would significantly change the availability of free music or the – the overall pace of innovation in – in this arena."[3] Plaintiffs are free to try to convince the jury otherwise. That is what trials are for.

Plaintiffs' motion, designed to eliminate a central feature of Defendants' damages defense to a billion-dollar plus claim, should be denied.

## ARGUMENT

### I. THE EVIDENCE PLAINTIFFS SEEK TO EXCLUDE IS RELEVANT TO DAMAGES IN THIS CASE.

### A. The Evidence of Free Music Alternatives is Relevant to Statutory Damages.

#### 1. What Plaintiffs Would Have Made "But For" Infringements by Lime Wire Users is Relevant to Damages Causation.

As the Court has stated, "an essential question for assessing harm to the Plaintiffs is how much higher music sales and profits would have been absent the infringement of the works by music consumers using LimeWire." Feb. 25, 2011 Order, Docket No. 554, at 7-8. Defendants intend to show, through evidence of the widespread availability of other free music sites besides Lime Wire, that each Lime Wire download would *not* necessarily have been a lost sale and that, as a result, Plaintiffs' revenues and profits would not have been significantly higher in the absence of Lime Wire. Such evidence of lack of actual damage attributable to the

---

3 *See* Oller Decl. Ex. O (excerpts from Sinnreich deposition testimony), at 313-15.

defendant is clearly relevant to the Bryant "lost revenues" factor. *See, e.g.*, *E. Am. Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395, 419 (S.D.N.Y. 2000) (in awarding statutory damages, the court may consider that plaintiff "ha[d] not demonstrated any lost profits as a result of the infringement"); *Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp. 1328, 1341 (S.D.N.Y. 1997) (factoring into statutory damages analysis that "[t]he plaintiffs have not demonstrated that they lost profits"); *Bly v. Banbury Books, Inc.*, 638 F. Supp. 983, 987 (E.D. Pa. 1986) (while plaintiff need not "adduce specific proof of actual damages or profits" to recover statutory damages, "this does not mean that it is irrelevant whether and to what extent a plaintiff has been harmed by a defendant's infringement. To the contrary, numerous courts have held that an assessed statutory damages should bear some relation to the actual damages suffered.").

The *Bryant* statutory damages factor speaks in terms of "the revenues lost by plaintiffs *as a result of the defendant's conduct,*" and Section 504(b) of the Copyright Act likewise speaks in terms of "actual damages suffered by [the plaintiff] *as a result of the infringement*," 17 U.S.C. § 504(b). Given the similarity in the standard, actual damages caselaw under Section 504(b) is instructive on the actual damages prong of *Bryant*. *See also* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04(E)(1)(a) (2010) (statutory damages "should be woven out of the same bolt of cloth as actual damages"); 6 *Patry on Copyright* § 22:174 (2010) ("Substantial statutory damage awards are, therefore, appropriate only when there has been a substantial injury," and "the absence of actual damages is a mitigating factor for defendant".) Indeed, courts in this district have noted "the settled principle that 'statutory damages cannot be divorced entirely from economic reality.'" *EMI Entm't World, Inc. v. Karen Records, Inc.*, 603 F. Supp. 2d 759, 769-70 (S.D.N.Y. 2009) (quoting *Yurman Studio, Inc. v. Castaneda*, No. 07 Civ. 1241, 2008 U.S. Dist. LEXIS 96994, 2008 WL 4949775, at *3

(S.D.N.Y. Nov. 19, 2008); *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 862 (S.D.N.Y. 1984) ("Undoubtedly assessed statutory damages should bear some relation to actual damages suffered.").

In determining the amount of a plaintiff's actual damages under Section 504(b), "traditional tort damages principles apply [and] the 'plaintiff bears the burden of proving that the infringement was the cause of its loss of revenue.'" *Antenna TV v. Aegean Video*, No. 95-CV-2328, 1996 U.S. Dist. LEXIS 7688, at *8-9 (E.D.N.Y. Mar. 20, 1996) (quoting *Data General Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1170 (1st Cir. 1994)).[4] To prove causation, "the plaintiff should first establish that the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss," while "in rebuttal defendant may 'show that this damage would have occurred [anyway] had there been no taking of copyrighted expression.'" *Data General*, 36 F.3d at 1171; *accord Antenna TV v. Aegean Video*, 1996 U.S. Dist. LEXIS 7688, at *8-9; 4-14 *Nimmer on Copyright* § 14.02 n.17 ("An alternative is to phrase this test in terms of 'but for' causality"). As the Second Circuit explained in *Stevens Linen Associates, Inc. v. Mastercraft Corp.*, 656 F.2d 11, 15 (2d Cir. 1981), "the object of the [copyright] damages inquiry is to determine what sales probably would have been made without the infringement."[5]

---

4 In *Reid Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1247-50 (2010), the Supreme Court abrogated *Data General* and other cases on unrelated grounds involving the issue of whether the copyright registration requirement under Section 411(a) of the Copyright Act restricts the subject-matter jurisdiction of the federal courts over copyright infringement actions..

5 "But for" causation in tort and copyright law has its analogue in the securities laws. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008) ("'But for' causation is also known as 'transaction causation'").

*See also Baker v. Urban Outfitters Inc.*, 254 F.Supp.at 356 (citing "but for" causation test for calculating actual damages).

[redacted] In 2008, Plaintiff EMI's owner told its investors that "[T]he impact of piracy is complex and some have argued that pirated tracks consumed cannot be proven to equate directly to lost sales (people who cannot afford to buy CDs may pirate them.") *See* Oller Decl. Ex. F at 17. As Cornerstone's Strong notes, "survey evidence corroborates the idea that many songs acquired through file sharing in general, and through LimeWire in particular, would not have been purchased if they were not available for free." Oller Decl. Ex. B at 21 ¶ 41. In economic parlance, there is good reason to doubt Plaintiffs' theory of a high "displacement" or "substitution" effect – the notion that a Lime Wire user would have bought a CD, or a song on iTunes, had he or she not downloaded the song for free. *See* Oller Decl. Ex. B (Strong Report at 19-20) ("Consumers have downloaded many songs using Lime Wire and other file-sharing programs that they would never have purchased . . . plaintiffs have not demonstrated and thus cannot conclude that in the absence of file sharing, consumers would have purchased the downloaded songs."). Thus, Defendants should at least be able to present evidence and argument to the jury to rebut Plaintiffs' claims that illegal downloads equated to lost sales and revenues.

Analogous caselaw supports that proposition as well. For example, where the infringing product is sold at a lower price than the copyrighted work at issue, it is inappropriate simply to multiply the number of works sold by a defendant by the plaintiff's profit margin, in order to arrive at a lost profits figure. *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730, 733 (S.D.N.Y. 1980) ("Here, computing plaintiff's lost profits is complicated by the lower price which defendant[s] charged for the[] infringing goods . . . It is quite possible that defendants' lower price resulted in more sales volume than would have been achieved by the plaintiff. Thus, applying defendants' sales volume to plaintiff's price in order to compute lost profits would be misleading."); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 108 (2d Cir. 1999) ("the district court agreed that the shared customers may well have declined to purchase Hamil America's fabrics due to its higher price, and held that Hamil America could not recover the alleged lost profits . . . In our view, this conclusion was not clearly erroneous."). *See also Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc.*, 329 F.2d 194, 196 (2d Cir. N.Y. 1964) ("Common sense suggests that a converter who sells his copyrighted fabric for use in the relatively few copies of an expensive dress cannot reasonably expect to sell the same number of yards as the infringer who caters to the bargain basement market.") (decided under 1909 Act). And if a "bargain basement" price of the infringing product makes it inappropriate to simply assume infringers would have bought the item at the copyright owner's price, then it surely is inappropriate to assume that people who obtained a song for free via Lime Wire would have bought the song, rather than seeking out other free sources, had Lime Wire not existed. *See* Strong Report at 19 ("Lime Wire users would not have paid for many of the songs they downloaded for free.")

**2. The Wide Availability of Free Sources of Music is Relevant to and Supports Defendants' Argument as to the Lack of a "But For" Causal Relationship Between Lime Wire Infringements and Plaintiffs' Diminished Revenues.**

The availability of free music on the Internet is directly relevant to the "but for" causation analysis. Plaintiffs constantly complain that they can't "compete against free." (*See* Feb. 18, 2011 Hearing Tr. at 23). Actually that assertion is suspect on several grounds: [redacted] there is evidence, recently recognized by the Court, that exposure to music through file sharing may actually spur music sales. *See* Feb. 11 Order at 8. As EMI's owner told its investors in 2008, "Some have argued . . . that pirating may sometimes promote consumption by helping to create a reputation for music." Oller Decl. Ex. F.[7] But if Plaintiffs are right that consumers who can get free music will never buy it, then evidence of the widespread availability of free music on the Internet (both legal and "illegal," that is, unpermissioned and with no compensation to the

---

6 [redacted]

7 *See also* Strong Report (Oller Decl. Ex. B) at 25 ¶ 49 (citing 2006 survey finding that "roughly half of all P2P tracks were downloaded because individuals wanted to hear songs before buying them," and finding of "a positive and statistically significant relationship between the number of music tracks downloaded via P2P networks and the number of CDs purchased"); Sinnreich Report (Oller Decl. Ex. C) at 27-28 (citing his own survey as music industry analyst showing that Napster users were 45 percent more likely than non-Napster users to have increased their music purchasing habits over the previous 12 months, and followup survey showing that "file sharers were 75 percent more likely than the average online music fan to have increased their music purchasing habits since they started visiting online music sites").

labels), is directly relevant to show that in a "but for" world without Lime Wire, consumers still would have found a way to get their music for free without a payment to Plaintiffs.

The evidence shows that there are, and have been, innumerable ways to obtain music online with no corresponding payment to the labels:

- "[T]here are a range of different technologies and tools, including many browser plug-ins that enable consumers to – to rip a stream, to make a stream permanently available on their local hard drive with the click of a button, and those tools have been downloaded hundreds of millions of times, if not more." (Sinnreich Tr. 116:17-24; *see also* Sinnreich Report (Oller Decl. Ex. C) at 22-23; Sinnreich Tr. (Oller Decl. Ex. O) 333:24 – 334:7.)[8]

- There are thousands of Internet music blogs which regularly post MP3s, albums and/or music playlists for free streaming and download. Users can easily search these blogs for MP3s of specific songs using specialized Internet search engines such as Hype Machine and elbo.ws. (*See* Sinnreich Report at 23-24; Sinnreich Tr. 206:7-19.)

- Several popular online storage sites such as Rapidshare and MegaUpload allow users to post music files which can then be searched for and retrieved by third parties. Millions of MP3s and music videos are available on these sites which receive millions of unique U.S. visitors each month. (*See* Sinnreich Report at 24; Sinnreich Tr. 210:2 – 213:12.)

- MP3 download services, some operating without the direct permission of the labels, provide full-length MP3 samples and sampler albums without requiring any consumer payment. (*See* Sinnreich Report at 24.)[9]

---

8 

9 In fact, the Plaintiffs themselves make their music available on the Internet in ways that permit and even encourage consumers to obtain it without any label compensation, including through music blogs, releases of a capella (vocal only) and instrumental (vocals omitted) versions of hit songs that consumers can "remix" and "mashup," and releases of

- Basic email programs, instant messaging services, and online user groups have enabled millions of Internet users to share music files.  At least one Pew Research study concluded that more sharing occurs through these mechanisms than via peer-to-peer networks.  (*See* Strong Report at 28 ¶ 55.)

None of this evidence and argument is offered by Defendants to exonerate themselves from liability.  Liability has already been found, and the case is now about damages, including as relevant under *Bryant*.  Plaintiffs' effort to preclude all such argument and evidence on the grounds that it is "hypothetical" (Pl. Br. at 2) rather than based on the "real world" is misguided.  It is Plaintiffs who posit an artificial world in which Lime Wire is the only source of unauthorized music and the only cause of the record labels' harm.  By contrast, Defendants are proffering "real world" evidence of alternative sources of free music that go directly to the legitimate and legally relevant "but for" causation question.  For that reason alone, Plaintiffs' motion should be denied.

### 3.    The Evidence Plaintiffs Seek to Preclude is Also Relevant to Proximate Cause.

There is another, independent reason not to disallow evidence of alternative ways in which consumers access unpermissioned music:  it goes to the issue of whether Lime Wire (as Plaintiffs claim) is the proximate cause of all of their claimed losses.

A copyright plaintiff seeking actual damages must  "prove that the infringement was a proximate cause of its loss by demonstrating that the existence and amount of loss was a natural and probable consequence of the infringement." *Antenna TV v. Aegean Video*, 1996 U.S.

---

mixtapes, in some cases with monetary rewards to DJs who openly redistribute the labels' works without permission. *See* Sinnreich Report (Oller Decl. Ex. C) at 22-27; Sinnreich Tr. (Oller Decl. Ex. O) at 219-24, 330-32.

Dist. LEXIS 7688, at *9 (quoting *Data General Corp.*, 36 F.3d at 1170, citing *Big Seven Music Corp,* 554 F.2d 504, 509 (2d Cir. 1977)). In *Big Seven Music Corp.,* for example, the Second Circuit applied the "general" rule that "damages may be recovered only if there is a necessary, immediate and direct causal connection between the wrongdoer and the damages," and reduced the district court's award of lost profits damages for copyright infringement due to the absence of such a causal connection. 554 F.2d at 509; *see also Sunset Lamp v. Alsy Corp.*, 749 F. Supp. 520, 522 (S.D.N.Y. 1990) (actual damages must bear a "'necessary, immediate and direct causal connection' to the defendant's infringement.") (quoting *Big Seven Music Group*).[10]



Plaintiffs counsel has told the Court that Plaintiffs will present substantial trial testimony, to prove that many aspects of their business have been "destroyed *because of LimeWire.*" Feb. 18, 2011 Hearing Tr. at 23 (emphasis added).

10 Proximate cause in tort and copyright law also has its analogue in the securities laws in the concept of loss causation. *See Lattanazio v. Deloitte & Touche, LLP*, 476 F.3d 147, 157 (2d Cir. 2007) ("Loss causation is related to the tort law concept of proximate cause: [i]t is intended to fix a legal limit on a person's responsibility even for wrongful acts . . .")

11

Napster, which of course altered the music business forever, and was viewed by the labels as having caused them massive harm, pre-dated Lime Wire's existence. [redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

12 [redacted]

13 [redacted]

14 [redacted]

15

*See also* Sinnreich Tr. at 313 ("[C]onsumer behaviors have definitely moved on. . . . So file sharing is also, you know, no longer a – an

16

innovative or even leading edge paradigm for distribution. It's just one of many, many different platforms people use to achieve the same ends.")

In light of the overwhelming evidence, both fact and expert, that Defendants can offer to show that consumers have regularly accessed means other than Lime Wire to obtain free music, [REDACTED] it is preposterous to suggest that all of their sales decline over a ten-year period is due to file sharing, much less to Lime Wire specifically. At a minimum Defendants should be allowed to offer such evidence at trial [REDACTED]

**B. The Evidence Concerning Other Free Music Services is Also Relevant to Actual Damages.**

Although Plaintiffs claim a smaller number of pre-1972 works as to which they seek actual damages (because statutory damages are unavailable), the time period over which they allegedly suffered these actual damages corresponds with the same 10-year period as to which they are claiming statutory damages based on Lime Wire's infringing activity. As a result, the same evidence that goes to undercut a claim of statutory damages with respect to the post-1972 works is relevant to Plaintiffs' claims of actual damage.

Plaintiffs claim that such evidence is "immaterial to the actual damages analysis" because Plaintiffs "intend" to prove actual damages for pre-1972 works based on "the fair market value of Defendants' infringing use" as measured by alleged "lost distribution fees" that could have been obtained through "legitimate arrangements." Pl. Br. at 7-8. Of course, Defendants are not bound to accept Plaintiffs' theory of actual damages and proof in that regard; the ultimate question under Section 504(b) is what "actual damages [were] suffered by [the copyright owner] as a result of the infringement." Plaintiffs' "assertions about what [they] would have charged" to

license their works to Lime Wire "are not determinative of actual damages but, rather, one of the various piece of evidence informing that determination." *Fournier v. McCann Erickson*, 242 F. Supp. 2d 318, 337 (S.D.N.Y.2003).

Furthermore, the case on which Plaintiffs rely for this theory, *On Davis v. Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001), cautions that "awarding the copyright owner the lost license fee can risk abuse," since "once the defendant has infringed, the owner may claim unreasonable amounts as the license fee," and may make "an unrealistically exaggerated claim." *Id.* at 166; *see Baker v. Urban Outfitters Inc.*, 254 F. Supp. 2d at 358 ("reasonable license fee damages are not intended to be a windfall for a plaintiff," and noting *Davis* court's statement that plaintiff's demand of $2.5 million in that case was "precisely the type of unreasonable amount that could result from allowing retroactive license fees.").[17] As *Davis* itself recognized, even under a lost license fee damages theory, "the question is not what the owner would have charged, but rather what is the fair market value." 246 F.3d at 166. The widespread availability of free music is at least relevant to the fair market value of the Plaintiffs' works, and Defendants should be allowed to counter Plaintiffs' actual damages claims with such evidence. *See, e.g., Marobie-FL v. National Association of Fire Equipment Distributors,* No. 96 C 2966, 2002 U.S. Dist. LEXIS 2350, at *5-6 (N.D. Ill. Feb. 12, 2002) (finding that jury's verdict awarding no actual damages under plaintiffs' "value of use" theory was supported by evidence that plaintiff's "clip art," which defendant allowed users to download for free from its website, was also available for free on Internet list service chat group and other web sites).

---

17 In *Davis*, moreover, "there was no reason to suppose that the [defendant] Gap's use of Davis's copyrighted eyewear was attributable to anything other than oversight or mistake," and "Davis's consent, if sought, could have been had for very little money." 246 F.3d at 164. *See id.* at 172 ("On the record before us, there is no reason to believe the Gap had any intention to infringe a copyright.") [redacted]

[redacted]

Regardless of whether that is the theory they pursue on pre-1972 works, Defendants are entitled to present contrary evidence that they were neither the "but for" nor proximate cause of this alleged harm. And because Lime Wire faces a statutory damages award potentially in the billions (and according to Plaintiffs, the trillions), the notion that it can "steal with impunity" (Pl. Br. at 8) is nonsense.

## II. THE DETERRENCE FACTOR DOES NOT WARRANT EXCLUSION OF THE EVIDENCE.

As with their argument about damages, Plaintiffs misconstrue the relevance of evidence of other unauthorized free music alternatives to the deterrence factor under *Bryant.* Preliminarily, we note that deterrence "is not the sole factor properly considered in assessing statutory damages," and that there is "no support for plaintiff's implicit argument that maximum damages are warranted whenever a court deems deterrence a proper objective." *Bly v. Banbury Books*, 638 F. Supp. At 987.

Beyond this, Defendants are not claiming that the jury should not be allowed to take deterrence into consideration, but rather that they can consider the *extent* to which a large damages award would, in fact, deter similar future conduct. As a matter of "real world" fact, as the labels themselves recognize, regardless of any damages award in this case, consumers will continue to access free music from a huge variety of sources, without payment or compensation

---

18 [redacted]

to Plaintiffs. That was true after the shutdown of Napster, and Grokster, and now Lime Wire. Defendants cannot be prevented from presenting that argument, and supporting evidence, to the jury, if for no other reason than that Plaintiffs will surely argue for a larger award because of a claimed deterrent effect. Far from "eliminating the deterrence factor from the jury's determination" (Pl. Br. at 5), Defendants seek to provide the jury with evidence relevant to that factor. Plaintiffs' effort to preclude all such evidence should be rejected.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion should be denied.

Dated: March 3, 2011

Respectfully Submitted,
WILLKIE FARR & GALLAGHER LLP

Joseph T. Baio (jbaio@willkie.com)
John R. Oller (joller@willkie.com)
Tariq Mundiya (tmundiya@willkie.com)
787 Seventh Avenue
New York, New York 10019
Phone: (212) 728-8000
Fax: (212) 728-8111