REDACTED VERSION
COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., | ECF Case<br><br>06 CV 5936 (KMW)(DF) |

Plaintiffs,

v.

LIME GROUP LLC; LIME WIRE LLC; MARK GORTON; GREG BILDSON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,

Defendants.

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM ASSERTING PRIVILEGE OVER COMMUNICATIONS WITH FRED VON LOHMANN OR THE ELECTRONIC FRONTIER FOUNDATION**

WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019
Phone: (212) 728-8000

*Attorneys for Defendants*

6407260.4

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.       DEFENDANTS HAVE ESTABLISHED THE EXISTENCE OF AN
            ATTORNEY-CLIENT RELATIONSHIP BETWEEN LIME WIRE AND
            EFF. .............................................................................................................. 3

    II.      PLAINTIFFS' MOTION IS UNTIMELY. ................................................... 4

    III.     PLAINTIFFS CANNOT REBUT DEFENDANTS' SHOWING THAT
            THERE WAS AN ATTORNEY-CLIENT RELATIONSHIP BETWEEN
            LIME WIRE AND EFF .............................................................................. 6

CONCLUSION .................................................................................................................. 10

i

6407260.4

## TABLE OF AUTHORITIES

### CASES

*In re Bonanno*,
    344 F.R.D. 830 (2d Cir. 1965) .................................................................................4

*Cook v. Taser Int'l, Inc.*,
    No. 2:04-CV-01325, 2006 WL 1520243 (D. Nev. May 26, 2006) ...........................................6

*In re Health Mgmt., Inc., Sec. Litig.*,
    No. CV96-0889, 1999 WL 33594423 (E.D.N.Y. Apr. 15, 1999).............................................5

*Lexjac, LLC v. Beckerman*,
    No. 07-CV-4614, 2008 WL 4936866 (E.D.N.Y. Nov. 14, 2008) ............................................3

*United States v. Devery*,
    93 Cr. 273, 1995 WL 217529 (S.D.N.Y. Apr. 12, 1995)......................................................3, 9

*Zhao v. City of New York*,
    No. 07 Civ. 3636, 2008 WL 2940598 (S.D.N.Y. July 24, 2008) ...........................................6

6407260.4

## PRELIMINARY STATEMENT

Plaintiffs have known since at least July 8, 2008, when Defendants first produced their privilege log in this case, that Defendants claimed attorney-client privilege over communications between Lime Wire and Fred von Lohmann, a senior staff attorney at Electronic Frontier Foundation ("EFF").  *See* Dugan Decl. Ex. 1.[1]

Until now, Plaintiffs have never challenged Defendants' assertion of attorney-client privilege over communications with von Lohmann in this Court, despite having many opportunities to do so. ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ they never moved to compel the production of any privileged von Lohmann communications, nor did they challenge the attorney-client relationship between Lime Wire and EFF.   And in May 2010, this Court, in an Order excising certain language from its opinion, stated that it "would benefit from further briefing on the issue of whether the statements were protected by attorney-client privilege."  May 25, 2011 Order, Docket No. 224, at 2.  But Plaintiffs provided no further briefing and, again, did not challenge the existence of an attorney-client relationship between Lime Wire and EFF or the assertion of privilege over communications with von Lohmann.

Instead, in November 2010, Plaintiffs subpoenaed EFF *in California*, seeking the production of all communications between von Lohmann and Lime Wire and arguing in the

---

[1] "Dugan Decl. Ex. ___" refers to the exhibits attached to the concurrently filed Declaration Of James C. Dugan In Support Of Defendants' Brief In Opposition To Plaintiffs' Motion In Limine To Preclude Defendants From Asserting Privilege Over Communications With Fred Von Lohmann Or The Electronic Frontier Foundation.

6407260.4

California court, as they do now in this Court, that the existence of an attorney-client relationship between EFF and Lime Wire had not been established. Dugan Decl. Ex. 3 at 1. However, confronted with substantial evidence supporting the existence of an attorney-client relationship, including detailed sworn statements by Mark Gorton, von Lohmann, and others, Plaintiffs agreed to limit the scope of their subpoena to "non-privileged" communications – thereby at least implicitly conceding the existence of some "privileged" communications between Lime Wire and von Lohmann. Dugan Decl. Ex. 4 at 4, 6.

This motion is therefore Plaintiffs' second bite at the apple, and it comes far too late and with far too little to change anything. At this stage of the proceedings, with discovery long over, Plaintiffs should not be permitted to re-litigate their arguments against the attorney-client privilege in the hope of finding a more hospitable forum in New York than they did in California. For reasons Plaintiffs do not bother to explain, they never challenged the attorney-client privilege in this Court when they had the opportunity to do so. Now, with trial looming in a few short weeks, it is simply too late.

Beyond its untimeliness, Plaintiffs' motion is noteworthy mainly for its gossamer-thin arguments against the privilege. Plaintiffs' assertions that EFF, a non-profit organization, does not charge for its services and engages in activities in addition to representing clients in litigation, that there is no written retention agreement between Lime Wire and EFF, that von Lohmann could not recall, in detail, the circumstances under which he was initially consulted by Lime Wire for legal advice *nine years ago* and others discussed in detail below – are remarkably flimsy. If accepted, they would mark a radical change in the application of the attorney-client privilege to advice provided by non-profit organizations such as the Legal Aid Society, the

6407260.4

Public Defender's Office, and a host of other organizations that not only provide legal services, but also advocate public policy positions.  Plaintiffs' motion should be denied.

## ARGUMENT

**I.    DEFENDANTS HAVE ESTABLISHED THE EXISTENCE OF AN ATTORNEY-CLIENT RELATIONSHIP BETWEEN LIME WIRE AND EFF.**

An "attorney-client relationship 'exists when the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice.'"  *United States v. Devery*, 93 Cr. 273, 1995 WL 217529 at * 5 (S.D.N.Y. Apr. 12, 1995); *Lexjac, LLC v. Beckerman*, No. 07-CV-4614, 2008 WL 4936866 at *5 (E.D.N.Y. Nov. 14, 2008).  In this inquiry, "the key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential."  *Devery*, 1995 WL 217528 at *5, citing *United States v. Dennis*, 843 F.2d 652, 656-57 (2d Cir. 1988).  Thus, "the focus of the inquiry is *whether [the client] reasonably believed that he was engaging in confidential communications with potential counsel.*"  *Id.* (Emphasis added).

This standard is more than met here.  For example, Mark Gorton's Declaration from the California proceeding makes clear that: "*beginning in 2002, Lime Wire sought legal advice from Fred von Lohmann . . .Mr. von Lohmann and [EFF] have provided legal advice and legal counseling to Lime Wire since that time*" and that "*Lime Wire expected that its communications with [EFF] and von Lohmann would remain confidential.*"  Dugan Decl. Ex. 5 at ¶¶ 2, 3  (emphasis added).  Cindy Cohn, EFF's General Counsel, also confirmed the existence of an attorney-client relationship in her sworn declaration: "while the very nature of the attorney-client privilege makes it impossible to provide detail, as with many third-parties who approach EFF for legal advice, *the advice that EFF and Mr. von Lohmann gave to Lime Wire was legal*

3

6407260.4

*advice provided in the professional capacity of the EFF attorneys.* Dugan Decl. Ex. 7 at ¶ 6

(emphasis added). In addition to their sworn statements, Lime Wire, EFF, and von Lohmann

have each produced proper privilege logs. Dugan Decl. Exs. 1, 5, 6, 7, 8, 9.

        Plaintiffs have never challenged the veracity of these witnesses, nor have they

impeached their sworn statements with contrary facts or moved to compel a single document

identified on any of the privilege logs. Instead, Plaintiffs' *in limine* motion ignores this evidence

entirely, engaging in the fiction that Plaintiffs are writing on a blank slate. But this evidence

cannot be ignored, and the Court should credit the sworn testimony of these witnesses and find

that Defendants have established the existence of an attorney-client relationship with EFF.[2]

## II.   <u>PLAINTIFFS' MOTION IS UNTIMELY.</u>

        As noted above, Plaintiffs have been on notice for over three years that Lime

Wire asserted attorney-client privilege over communications with von Lohmann in this case, but

they have waited until now – well past the close of fact discovery – to challenge the privilege in

this Court. Plaintiffs do not bother to explain this delay, other than by a vague reference to

having taken "further discovery." But they nowhere describe what the "further discovery"

consisted of or what they learned in that discovery that was new. In truth, almost all of the so-

called facts that Plaintiffs point to in opposing the privilege – that EFF is an "advocacy"

organization and does not charge its clients for legal services, that there was no written retainer

---

[2] Plaintiffs' reliance on *In re Bonanno*, 344 F.R.D. 830, 833 (2d Cir. 1965) for the proposition that "the party claiming privilege has the burden to show with facts that advice was rendered in the course of an attorney-client relationship" (Pltf's Brf. at 1) is entirely besides the point. Defendants have more than met this burden. Moreover, in *Bonanno*, unlike here, the putative client (Salvatore Bonnano, the son of Joseph Bonnano then-head of the Bonanno mafia family) initially denied the existence of an attorney-client relationship with counsel William Maloney (who was also his father's counsel) and then, two weeks later, asserted that Maloney was his lawyer and claimed privilege over conversations with Maloney to avoid testifying about those conversations in a criminal grand jury proceeding. Nothing could be further from our facts.

6407260.4

agreement between Lime Wire and EFF, that EFF submitted an amicus brief in this case on

behalf of neither party, and that von Lohmann posted commentary on an article about Lime Wire

in a public forum – have been known to Plaintiffs for years.

      For example, that EFF engages in public advocacy and does not charge for legal

services is a fact known to anyone who visits its website. *See* Dugan Decl. Ex 14. That there is

no written retainer agreement between Lime Wire and EFF could be quickly ascertained by

scanning Defendants' privilege log, which Plaintiffs have had for over three years. *See* Dugan

Decl. Ex 1. Plaintiffs have known that EFF and others submitted an amicus brief since that brief

was filed on September 28, 2008. And von Lohmann posted the online commentary that was

supposedly against Lime Wire's litigation interests in December 2007 – more than three years

ago. Notwithstanding this, Plaintiffs have not, until now – a few short weeks before trial – done

anything to challenge the attorney-client relationship between Lime Wire and EFF in his

proceeding. Their challenge comes too late.

      *In re Health Mgmt., Inc., Sec. Litig.*, No. CV96-0889, 1999 WL 33594423

(E.D.N.Y. Apr. 15, 1999), is instructive. In that case, defendant BDO Seidman asserted

privilege over documents in November 1997 that plaintiffs waited sixteen months to compel.

The court, with reasoning that that applies directly here, denied the motion:

> Plaintiffs and Defendants have engaged in protected litigation in
> this matter for over three years. The undersigned . . . has extended
> the date upon which factual discovery was to conclude on several
> occasions. In light of the fact that BDO first asserted the
> protection of the self-evaluative privilege in November 1997,
> Plaintiffs had ample opportunity to seek the documents prior to the
> close of discovery. Plaintiffs have provided no reason why they
> did not do so. Instead, *they seek these documents five months after*
> *the conclusion of factual discovery and on the eve of the case being*
> *marked ready for trial. This Court declines to abide Plaintiffs'*
> *untimely attempt to controvert the existence of a privilege asserted*
> *by BDO over a year ago.*

5

6407260.4

*Id.* at *2. (Emphasis added.)

Similarly here, Plaintiffs should not be permitted on the eve of trial to contest a privilege that Defendants first asserted in this case over three years ago, especially where they have had many opportunities to do so before now. The untimeliness of Plaintiffs' motion is sufficient grounds, in and of itself, to deny it. *See Zhao v. City of New York,* No. 07 Civ. 3636(LAK)(MHD), 2008 WL 2940598, *1 (S.D.N.Y. July 24, 2008) ( "the untimeliness of the [discovery] request, in violation of this Court's case management orders, is sufficient to deny it").

## III. PLAINTIFFS CANNOT REBUT DEFENDANTS' SHOWING THAT THERE WAS AN ATTORNEY-CLIENT RELATIONSHIP BETWEEN LIME WIRE AND EFF.

Because Defendants have made a *prima facie* showing that an attorney-client relationship exists between Lime Wire and EFF, it is Plaintiffs' burden to rebut this showing with facts that disprove the relationship. *See Cook v. Taser Int'l, Inc.,* No. 2:04-CV-01325, 2006 WL 1520243 at *2 (D. Nev. May 26, 2006) ("As the term prima facie indicates, once a satisfactory showing of privilege has been made, the burden of overcoming the assertion of privilege shifts to the party seeking disclosure to demonstrate that the privilege does not apply or has been waived. . . ."). This Plaintiffs have utterly failed to do. Nor have they even attempted to argue that the attorney-client privilege was waived. Instead, Plaintiffs argue that Lime Wire and EFF have behaved in a manner that is "inconsistent" with the existence of an attorney-client relationship. There is nothing to this argument.

First, Plaintiffs point to the fact that, in September, 2008, EFF, along with eight other organizations, submitted an amicus brief "in support of neither party" in connection with the parties' cross-motions for summary judgment. But there was no inconsistency here. Indeed, given EFF's prior involvement in *Grokster* and similar cases, it is not at all surprising that EFF

6

6407260.4

and other consumer advocacy organizations sought to offer guidance on the legal issues that were before the Court on summary judgment. In any event, Plaintiffs do not argue that the amicus brief disclosed any client confidences or was otherwise against Lime Wire's interests.

        Second, Plaintiffs point to some commentary that von Lohmann posted on an EFF website in December 2007 that Plaintiffs have taken completely out of context. Plaintiffs argue that the following snippet of von Lohmann's commentary was against Lime Wire's litigation interests:

> This is worth noting for at least two reasons. First, it reminds everyone that when it comes to digital music, the main event is still P2P file sharing, as it has been ever since Napster's debut in 1999.

However, Plaintiffs, not surprisingly, omit the remainder of the paragraph, which makes clear that von Lohmann was actually advocating that the entertainment industry *"take . . . meaningful steps toward a collective licensing solution to monetize P2P, as we have been urging since 2004."* Pltf's Decl. Ex. 15 (emphasis added). Far from being a statement against Lime Wire's interests, nothing in von Lohmann's commentary references Lime Wire specifically and, viewed in context, von Lohmann was clearly suggesting that the entertainment industry explore ways to partner with P2P companies. This is not inconsistent with the existence of an attorney-client relationship between Lime Wire and EFF.

        Third, Plaintiffs point to the fact that von Lohmann, after reading the Court's summary judgment opinion and the reference to document retention advice that he had purportedly given to Lime Wire, contacted Michael Page, the attorney for former Lime Wire employee Gregory Bildson, and not Defendants, to obtain a copy of Bildson's Declaration. But there is nothing unusual or inconsistent about that. Indeed, going directly to Page for a copy of his client's Declaration was a perfectly reasonable thing to do under the circumstances, given

6407260.4

that Defendants had no control over their former employee and could not unilaterally share Bildson's Declaration, which was filed under seal, with von Lohmann.

None of Plaintiffs' other arguments merit much attention. Although Plaintiffs repeatedly suggest that EFF was simply a group of "public advocates" distributing cookie cutter advice to numerous companies simultaneously through group "email blasts" and "pho lists," they ignore that one of EFF's core missions is to represent *clients* in litigation. According to the sworn declaration of Cindy Cohn, EFF's General Counsel, "*EFF has been representing third-party clients for nearly the entirety of its twenty-year existence* and certainly all of the last ten years when I have been Legal Director." Dugan Decl. Ex. 7 at ¶ 2 (emphasis added). Indeed, according to EFF's 2008-2009 Annual Report, "EFF fights for freedom primarily in the courts, *bringing and defending lawsuits* even when that means taking on the U.S. government or large corporations." Dugan Decl. Ex. 10 (penultimate page, "About Us") (emphasis added). EFF's website identifies dozens of lawsuits in which EFF has been involved over the years, and almost half of its staff are lawyers. Dugan Decl. Exs. 11, 12.

Plaintiffs also point to a selectively-quoted snippet from Mark Gorton's deposition and argue that Gorton's description of his relationship with von Lohmann is somehow inconsistent with the existence of an attorney-client relationship. What Plaintiffs omit from their snippet is the context, which demonstrates that Gorton unequivocally thought of von Lohmann as his lawyer:

> A: Well, I mean Fred von Lohmann works for the EFF which is a non-for-profit. So, as opposed to being at a traditional law firm, he is not for hire in the traditional sense I would say. So I haven't hired him as you would a traditional law firm, *but I did talk to him about legal matters and he did give me legal advice.*
>
> Q: When he gave you that legal advice, did you view him as your lawyer?

6407260.4

> A: *I mean I viewed him as a lawyer that I consulted for legal advice*, perhaps not uniquely.

Dugan Decl. Ex. 13 (Gorton Tr. at 154-55) (Emphasis added).

Finally, Plaintiffs point to the fact that EFF did not charge Lime Wire for legal services, and that EFF and Lime Wire did not enter into a written retainer agreement, as evidence that no attorney-client relationship existed. But neither of these factors is dispositive and, in EFF's case, if the absence of a fee disproved the attorney-client relationship then EFF could have no clients, nor could the Legal Aid Society, the Public Defender's Office, or countless other pro bono organizations. *See United States v. Devery*, 1995 WL 217528 at *5 ("a signed retainer agreement and payment of attorney's fees are not necessary to establish that an attorney-client privilege was formed").

9

6407260.4

## CONCLUSION

For the foregoing reasons, Plaintiffs' in limine motion to preclude Defendants from asserting privilege over communications with Fred von Lohmann or EFF should be denied.

Dated:  March 3 , 2011

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

James C. Dugan (jdugan@willkie.com)
Joseph T. Baio (jbaio@willkie.com)
John R. Oller (joller@willkie.com)
Tariq Mundiya (tmundiya@willkie.com)
787 Seventh Avenue
New York, New York  10019
Phone:  (212) 728-8000
Fax:  (212) 728-8111

10