REDACTED VERSION
-COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC, fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM ASSERTING PRIVILEGE OVER COMMUNICATIONS WITH FRED VON LOHMANN OR THE ELECTRONIC FRONTIER FOUNDATION**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Susan T. Boyd *(pro hac vice)*
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
*Attorneys for Plaintiffs*

Date: March 7, 2011

13376600.1

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND ARGUMENT ............................................................................. 1

    A. Plaintiffs' Procedurally Proper Motion Is Necessary to Prevent Defendants from Blocking Relevant Inquiry at Trial ................................................................. 3

    B. Defendants' *Ipse Dixit* Fails to Establish an Attorney-Client Relationship .......... 4

    C. Von Lohmann's (and EFF's) Actions Were Inconsistent with the Asserted Attorney-Client Relationship ................................................................................. 7

II. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Arista Records LLC v. Lime Group LLC,*
 715 F. Supp. 2d 481 (S.D.N.Y. 2010) ................................................................................. 3, 7, 8

*Heine v. Colton, Hartnick, Yamin & Sheresky,*
 786 F. Supp. 360 (S.D.N.Y. 1992) ........................................................................................ 4, 5

*In re Air Crash at Bell Harbor, New York on November 12, 2001,*
 241 F.R.D. 202 (S.D.N.Y. 2007) .......................................................................................... 4, 5

*In re Bonanno,*
 344 F.2d 830 (2d Cir. 1965) .................................................................................................. 1, 4

*Lanci v. Arthur Andersen LLP,*
 No. 96 CIV. 4009 (WK), 1998 WL 409776 (S.D.N.Y. July 21, 1998) .............................. 1, 5, 6

*Lexjac LLC v. Beckerman,*
 No. 07-CV-4614 (JS) (ARL), 2008 WL 4936866 (E.D.N.Y. Nov. 14, 2008) ........................... 6

*United States v. Burnett,*
 No. 95-CR-272 (JG), 1996 WL 1057161 (E.D.N.Y Mar. 11, 1996) ..................................... 1, 6

*United States v. Devery,*
 93 Cr. 273 (LAP), 1995 WL 217529 (S.D.N.Y. Apr. 12, 1995) ............................................... 6

*United States v. Tedder,*
 801 F.2d 1437 (4th Cir. 1986) ................................................................................................... 5

I.   INTRODUCTION AND ARGUMENT

Defendants' opposition confirms that there was no attorney-client relationship between them and von Lohmann or the EFF. Defendants principally rely on the incorrect assertion that Plaintiffs' motion *in limine* is procedurally improper. But Defendants cannot and therefore do not dispute that communications between Gorton and von Lohmann are highly relevant to the damages trial, including matters on which Gorton will testify. Plaintiffs' motion properly seeks to prevent Defendants from blocking these relevant lines of inquiry at trial with baseless privilege claims.

On the merits, Defendants' conclusory assertions of privilege are insufficient. *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965). At bottom, Defendants suggest that because von Lohmann held a bar card, all of his communications with Defendants about legal issues are privileged. That is not the standard. Defendants must show that the communications were in the course of an *attorney-client* relationship. *See Lanci v. Arthur Andersen LLP*, No. 96 CIV. 4009 (WK), 1998 WL 409776, at *1 (S.D.N.Y. July 21, 1998) (request for "free legal advice" from a friend not privileged); *United States v. Burnett*, No. 95-CR-272 (JG), 1996 WL 1057161, at *7-8 (E.D.N.Y. Mar. 11, 1996) (no privilege over communications between a lawyer and a putative client who were "friends and business partners, and dealt with each other in those capacities, and not as attorney and client"). Defendants provide no *facts* in support of an attorney-client relationship, including when it began (other than vaguely in "2002"), who initiated it or how, the terms of the engagement, the scope of the representation, or anything of the kind.

What the facts do show is that EFF/von Lohmann acted inconsistently with any *bona fide* attorney-client relationship with Defendants. Defendants' attempts to explain away these inconsistencies are utterly unconvincing. The salient facts remain:

- EFF/von Lohmann suggested to this Court that they were filing an *amicus* brief on behalf of "neither party" during the summary judgment proceedings – a representation that cannot be squared with Defendants' claim, fleshed out only because of post-summary judgment discovery, that EFF/von Lohmann were purportedly Defendants' attorneys *during the summary judgment briefing* with respect to *this litigation*.

- In 2007, von Lohmann posted comments on the EFF website that equated installation of the Lime Wire software with widespread infringement of "digital music." These statements undermined Lime Wire's position in this litigation – and would have been inappropriate at best if von Lohmann truly had been Defendants' lawyer with respect to this litigation. Faced with this glaring inconsistency, Defendants suggest that von Lohmann's comments did not "reference[] Lime Wire specifically." Opp. at 7. But that is simply not true; the entire article is about Lime Wire.

- In 2010, immediately after the Court released its summary judgment ruling, von Lohmann began chatting about the ruling with counsel (Mr. Page) for Greg Bildson, whom Gorton had called a liar. Von Lohmann likewise turned to Page for assistance in procuring the Bildson declaration, filed under seal because it supposedly contained *LimeWire's* confidential information.

In short, every objective fact in the record gives the lie to a claim of an attorney-client relationship between Defendants and EFF/von Lohmann.

### A. Plaintiffs' Procedurally Proper Motion Is Necessary to Prevent Defendants from Blocking Relevant Inquiry at Trial

Defendants spend most of their brief asserting that Plaintiffs' timely filed motion *in limine* is somehow procedurally improper. This argument is a red herring. Communications between Defendants and von Lohmann are highly relevant to matters on which Gorton will testify at trial including Lime Wire's right and ability to supervise the massive infringement occurring on the Lime Wire system, relevant to Plaintiffs' vicarious liability claim. *Arista Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481, 510 (S.D.N.Y. 2010). Defendants' communications with EFF/von Lohmann regarding the decision to "purge incriminating information" or the need to create "plausible deniability" by "choos[ing] an architecture that will convince a judge that . . . monitoring and control is impossible" are highly relevant to these issues. *See* Plfs.' Opening Brief at 8-10. Plaintiffs' motion properly seeks to prevent Defendants from blocking inquiry into these areas at trial, and Defendants' citation to a handful of cases related to motions to compel discovery are inapposite.

Defendants' "timeliness" argument is particularly inappropriate in the circumstances of this case. After viewing *in camera* materials that were not available to Plaintiffs, this Court stated in May 2010 that it would "benefit from further briefing on the issue of whether the statements [from von Lohmann] are protected by attorney-client privilege." Doc. No. 224 at 2 (May 25, 2010 Order). Plaintiffs promptly sought discovery from EFF and von Lohmann. Defendants, EFF and von Lohmann resisted that discovery at every turn. *See* Dugan Decl. Exs. 4-8.[1] The discovery, completed in February of this year, provided further details regarding the

---

[1] Defendants' suggestion that Plaintiffs "implicitly conceded" the existence of privileged communications between Lime Wire and von Lohmann in the California action is exactly backwards. To the contrary, Plaintiffs repeatedly stated to the California court that they sought discovery (including documents and a privilege log) from EFF and von Lohmann so that "Plaintiffs would have the foundational information that they need *to present further briefing to*

- 3 -

true nature of Defendants' relationship with EFF/von Lohmann, and confirmed that there was no attorney-client privilege. *See also* § C, *infra*.

    **B.**    **Defendants'** *Ipse Dixit* **Fails to Establish an Attorney-Client Relationship**

On the merits, Defendants offer "mere conclusory or *ipse dixit* assertions . . ." that fall well short of establishing – as it is Defendants' burden to do – that they formed an attorney-client relationship with EFF/von Lohmann. *In re Bonanno*, 344 F.2d at 833. Defendants do not point to any "independent facts" corroborating the purported relationship, such as when the relationship was formed (other than vaguely in "2002"), how it was formed, the scope of the purported relationship, or why von Lohmann, after purportedly representing Defendants continuously for nine years, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Plfs.' Opening Brief at 5-6; 10-11; *In re Air Crash at Bell Harbor, New York on November 12, 2001*, 241 F.R.D. 202, 203 (S.D.N.Y. 2007) ("[i]ndependent facts . . . must be shown in order to demonstrate the existence of an underlying attorney-client relationship"). Nor do Defendants explain why Gorton and Lime Wire, sophisticated consumers of legal services (including several major law firms in this case alone), never bothered to memorialize in a retainer agreement the purported attorney-client relationship that Defendants now claim spanned nine years. *See Heine v. Colton, Hartnick, Yamin & Sheresky*, 786 F. Supp. 360, 367 (S.D.N.Y. 1992) (where client "knew how to, and did, execute a retainer agreement"

---

*Judge Wood to test Defendants' privilege assertion.*" Dugan Decl. Ex. 3 at 11:24-12:1 (emphasis added). *See also* Reply Boyd Decl., Ex. 1 (Plfs.' Supp. Brief) at 13-14 (stating that EFF and von Lohmann must log documents withheld under a "claim of privilege" because "[t]he same foundational information that EFF and von Lohmann are required to provide in a privilege log will be relevant to that briefing").

- 4 -

13376600.1

with attorney on "two specific occasions," failure to execute retainer agreement on a third occasion undermined claim of attorney-client privilege).[2]

Defendants instead offer rhetoric, stating that "Gorton unequivocally thought of von Lohmann as his lawyer." Opp. at 8. But Gorton's actual testimony is equivocal. When Plaintiffs asked Gorton point blank, "Did you view [von Lohmann] as *your* lawyer," Gorton did not agree that von Lohmann was "*his* lawyer," but rather stated "I mean, I viewed him as *a lawyer* that I consulted for legal advice, perhaps not uniquely." *Id.* at 8-9 (emphasis added). Gorton also has described von Lohmann as someone "I know of" and "a lawyer who works for the Electronic Freedom Foundation [*sic*] . . I'm not sure if that's a – if there's a technical – what you know, when you talk to a lawyer, is it always advice or something?" *See* Boyd Decl. Ex. 1 at 154:5-7; Ex. 2 at 48:10-15.

The law is clear that not every conversation with a lawyer is privileged, even where those conversations include requests for "free legal advice." *Lanci*, 1998 WL 409776, at *1. Rather, "[t]he privilege applies only if (1) the asserted holder of the privilege *is or sought to become a client* . . ." *United States v. Tedder*, 801 F.2d 1437, 1442 (4th Cir. 1986) (emphasis added). Thus, in *Lanci*, 1998 WL 409776 at *1, the claimant, upon learning that he was going to be fired, called an old friend in order "to get free legal advice." The Court found that their conversations were not privileged because the attorney was not acting as "a professional legal adviser *in his capacity as such.*" *Id.* (emphasis added; citation and quotation omitted). Likewise, in *Burnett*,

---

[2] The "absence of a fee arrangement," likewise is "a general indication that no attorney-client relationship has been established." *Heine*, 786 F. Supp. 360 at 366; *accord In re Air Crash*, 241 F.R.D. at 203. Defendants note that EFF ordinarily "does not charge for its services." Opp. at 2. But regardless of whether EFF acted *pro bono* ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ parties to multi-year attorney-client relationships, including *pro bono* relationships, ordinarily *memorialize* their agreement with respect to fees and costs, the scope of the engagement, and other pertinent details.

1996 WL 1057161 at *7-8, a lawyer (Krantz) assisted his friend and sometimes client (Burnett) with respect to two criminal cases against Burnett. Despite affidavits in which both Burnett and Krantz contended that they had an ongoing attorney-client relationship, the Court held that no privilege applied because "a closer scrutiny of the Krantz-Burnett relationship reveals that they were friends and business partners, and dealt with each other in those capacities, and not as attorney and client." *Id.* at *8.[3]

The *facts* here likewise show that EFF/von Lohmann interacted with Lime Wire in the same manner that they interacted with multiple peer-to-peer services and the public generally: as acquaintances (and perhaps even friends) and parties with a common aim to thwart claims by copyright holders (*see* eff.org/about/history). As he did for all peer-to-peer companies, von Lohmann provided highly public advice regarding "plausible deniability" and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ *See* Boyd Decl. Exs. 3-4, 6, 11; *see generally* Plfs.' Opening Brief at 3-6. As in *Burnett*, Defendants' dealings with EFF/von Lohmann as "friends" and "partners," rather than as "attorney and client" do not render those discussions privileged. *Burnett*, 1996 WL 1057161 *7-8*; *see also Lanci*, 1998 WL 409776 at *1. Gorton's vague and conclusory statements that he

---

[3] Defendants rely on two cases which hold that initial communications between a client and prospective attorney may be privileged, even where the attorney is not ultimately retained, if the initial communications are "for the purpose of retaining a lawyer." *United States v. Devery*, 93 Cr. 273 (LAP), 1995 WL 217529, at *5 (S.D.N.Y. Apr. 12, 1995). *See also Lexjac LLC v. Beckerman*, No. 07-CV-4614 (JS) (ARL), 2008 WL 4936866, at *2 (E.D.N.Y. Nov. 14, 2008) (based on concrete facts in the record, Court held that attorney-client privilege applied to communications in which plaintiff had contacted attorney "with the belief that [attorney] would represent [her] if she were to initiate legal proceedings.") Neither case applies here, where Defendants never did, and never intended to, retain von Lohmann. Rather, throughout their nine year relationship, Defendants interacted with von Lohmann not in his role as "a professional legal advisor in his capacity as such" (*Lanci*, 1998 WL 409776 at * 1) (citation and quotation omitted) but rather as an advocate, public figure, and interested player in the peer-to-peer industry generally.

viewed von Lohmann as "a lawyer that I consulted for legal advice," and someone "I know of" do not come close to establishing otherwise.

### C. Von Lohmann's (and EFF's) Actions Were *Inconsistent* with the Asserted Attorney-Client Relationship

Defendants also fall flat in their attempt to explain away EFF/von Lohmann's actions inconsistent with any attorney-client relationship. First, Defendants cannot explain how von Lohmann and EFF could file a purportedly independent *amicus* brief related to summary judgment in this litigation while simultaneously representing Defendants with respect to those *very same proceedings* without violating their duty of loyalty to Lime Wire, their duty of candor to the Court, or both.[4] If EFF and von Lohmann truly represented Defendants with respect to the *Arista v. Limewire* litigation, they could not, consistent with their duty of loyalty to Defendants, submit an *amicus* brief that was inconsistent with Defendants' litigation position. So constrained, EFF/von Lohmann could not hold themselves out to the Court as supporting "neither party." The facts show that EFF/von Lohmann did not disclose their attorney-client relationship with Defendants because *they did not believe they were Defendants' lawyers.*

Defendants' attempt to reconcile von Lohmann's web site posting in 2007 with a supposed duty of loyalty to Lime Wire is equally unpersuasive. Defendants incredibly assert that "nothing in von Lohmann's commentary references Lime Wire specifically." Opp. at 7. But the

---

[4] Contrary to Defendants' assertions, Plaintiffs did not discover all the details relevant to this inconsistency until recently. Only upon receiving privilege logs from von Lohmann and EFF on January 28, 2011 did Plaintiffs learn that Defendants were claiming privilege over communication related to the "LimeWire/Arista Records litigation" during the very same period when Defendants and von Lohmann/EFF were drafting their purportedly independent briefs related to the summary judgment proceedings before this Court. *See* Boyd Decl. Ex. 14 at Nos. 5-16. Despite Plaintiffs' repeated requests that it do so, Lime Wire has yet to provide Plaintiffs with a privilege log covering communications during this period. *See* Reply Boyd Decl. Ex. 3. In July 2008, Lime Wire provided Plaintiffs with a privilege log asserting privilege over a few dozen communications with von Lohmann from an earlier period, 2002-2006 (*see* Dugan Decl. Ex. 1 at pp. 5-6) but was subsequently forced to acknowledge that several of those privilege assertions could not withstand scrutiny. *See* Reply Boyd Decl. Ex. 2.

posting is titled "*LimeWire* on 1 in 3 Desktops World-Wide." Boyd Decl. Ex. 15 (emphasis added). And von Lohmann states:

> Digital music news and Big Champagne report that 36.4% of PCs world wide have *Lime Wire* installed, based on systems scans of 1.6 million machines. This is worth noting for at least two reasons. First, it reminds everyone that when it comes to digital music, the main event is still P2P file sharing, as it has been ever since Napster's debut in 1999 . . . And the entertainment industries still haven't taken any meaningful steps toward a collective licensing solution . . .

*Id.* (emphasis added).

In other words, von Lohmann equates Lime Wire with "file sharing" of "digital music" similar to the Napster era, in direct conflict with Lime Wire's litigation position at the time. Even if von Lohmann's statements *also* encourage the entertainment industry to partner with P2P companies (*see* Opp. at 7), that does not render von Lohmann's statements innocuous to Lime Wire. To the contrary, von Lohmann's public acknowledgement that Lime Wire supported widespread infringement is similar to the "mainstream news articles" on which this Court relied to conclude that Defendants knew of, and induced, such infringement. *Arista*, 715 F. Supp. 2d at 510. Von Lohmann could not make such statements consistent with his duty of loyalty to Lime Wire if, in fact, he represented Defendants in this very litigation. Again, the inference is obvious: von Lohmann felt free to post such remarks on the EFF website because *he did not believe that he was Defendants' lawyer.*

In their attempt to explain away von Lohmann's inconsistent behavior, Defendants likewise misconstrue the tenor and substance of von Lohmann's communication with Michael Page, attorney for Bildson, Defendants' then-adversary in this litigation.[5] Defendants suggest that von Lohmann's communications with Page were routine communications between opposing counsel. But that is simply not what happened. ████████████████████

---

[5] *See* Doc. No. 174 at ¶ 4 (Nov. 7, 2008 Gorton Decl. accusing Bildson of lying).

- 8 -

13376600.1

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

And, even though the Bildson declaration was filed under seal because it supposedly contained *Limewire's* confidential (and, according to Defendants, privileged) information, von Lohmann turned to Page for the underlying document ███████████████████ ███████████████████████████████████ *See* Boyd. Decl. Ex. 18.

Simply put, opposing counsel do not typically ███████████████████ ███████████████████████████████████ ███████████████████████ Once again, the inference from these communications is clear: *von Lohmann did not act as if he truly believed himself to be Defendants' counsel during this period.*

- 9 -

## II. CONCLUSION

For the reasons stated above and in Plaintiffs' opening brief, the Court should rule that communications between Defendants and Fred von Lohmann or EFF are not privileged.

Dated: March 7, 2011
San Francisco, California

Respectfully submitted

/s/ *Susan Traub Boyd*
Susan Traub Boyd
Attorney for Plaintiffs
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000
(415) 512-4077(Fax)