UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.,<br><br>                                  Plaintiffs,<br><br>     v.<br><br>LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,<br><br>                                  Defendants. | 06 Civ. 05936 (KMW)<br>ECF CASE |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS' ARGUMENT THAT OTHER ILLEGAL SERVICES WOULD HAVE INDUCED INFRINGEMENT OF PLAINTIFFS' COPYRIGHTS IF LIME WIRE HAD NOT**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
Attorneys for Plaintiffs

Date: March 7, 2011

## TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................. 1

II.  ARGUMENT......................................................................................................... 2

    A.   The narrow exclusion sought by Plaintiffs does not preclude Defendants from offering evidence or argument that other, non-infringing alternatives contributed to Plaintiffs' decline in revenues ........................................................ 2

    B.   The law on "but for" causation does not permit intentional tortfeasors to reduce their damages by pointing the finger at others ............................................ 3

        1.   Copyright law does not support Defendants' argument that the "but for" world includes other wrongdoers waiting to commit the same infringement................................................................................................ 4

        2.   Patent infringement law on "but for" causation of damages holds that the availability of other products infringing the same patent does not, as a matter of law, reduce the defendant infringer's liability for damages .................................................................................... 6

    C.   Defendants' argument that the existence of other illegal services makes deterrence here futile improperly seeks to nullify Congress's reasoned and considered judgment that large statutory damage awards are necessary to deter widespread copyright infringement ................................................................ 9

III. CONCLUSION.................................................................................................... 10

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Anderson v. Local Union No. 3, Int'l Bhd. of Elec. Workers*,
   582 F. Supp. 627 (S.D.N.Y. 1984)..................................................................................3

*Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*,
   919 F. Supp. 656 (S.D.N.Y. 1996)..................................................................................9

*Brothers Inc. v. W. E. Grace Mfg. Co.*,
   320 F.2d 594 (5th Cir. 1963) ................................................................................2, 7, 8

*F.W. Woolworth Co. v. Contemp. Arts, Inc.*,
   344 U.S. 228 (1952)..................................................................................................5, 10

*Grain Processing Corp. v. Am. Maize-Prods.*,
   185 F.3d 1341 (Fed. Cir. 1999)......................................................................................7

*Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*,
   761 F.2d 649 (Fed. Cir. 1985), *cert. denied*, 474 U.S. 902 (1985).............................7

*Marobie-Fl. v. Nat'l Ass'n of Fire Equipment Distributors*,
   No. 96 C 2966, 2002 U.S. Dist. LEXIS 2350 (N.D. Ill. Feb. 12, 2002) ...............................4, 5

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
   131 F. Supp. 2d 458 (S.D.N.Y. 2001)............................................................................5

*Odegard, Inc. v. Costikyan Classic Carpets, Inc.*,
   963 F. Supp. 1328 (S.D.N.Y. 1997)...............................................................................5

*On Davis v. The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001)...........................................................................................4

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
   575 F.2d 1152, 197 U.S.P.Q. 726 (6th Cir. 1978) ............................................2, 7, 8

*RSO Records v. Peri*,
   596 F. Supp. 849 (S.D.N.Y. 1984)................................................................................6

*Sunset Lamp v. Alsy Corp.*,
   749 F. Supp. 520 (S.D.N.Y. 1990)................................................................................6

*United States v. Thomas*,
   116 F.3d 606 (2d Cir. 1997).........................................................................................10

## TABLE OF AUTHORITIES
### (continued)

**I.      INTRODUCTION**

In an attempt to obscure the lack of support for their position, Defendants spend most of their 21-page opposition brief attacking a straw man argument that Plaintiffs do not make. Plaintiffs do *not* move to exclude evidence or argument that factors other than Lime Wire contributed to Plaintiffs' losses.  Rather, Plaintiffs seek a narrow exclusion of evidence and argument that Defendants admit they will seek to introduce – *i.e*., "that *even without Lime Wire*, Lime Wire users could have and would have turned to many other alternative sources of obtaining free music rather than purchasing it," Opp. at 4 (emphasis added), and that, therefore, Lime Wire did not cause harm to Plaintiffs and deterrence would be futile.  Opp. at 9, 20-21.

Defendants barely address the relief Plaintiffs actually seek, and the few on-point responses they attempt to offer fail to defeat Plaintiffs' arguments.

*First*, the law on "but for" causation provides no support whatsoever for Defendants' claim that proven, intentional tortfeasors can reduce their damages by showing that, "but for" the intentional tortfeasor, others would have committed the same tort.  Defendants do not even attempt to address the well-settled authorities cited by Plaintiffs, which hold that intentional tortfeasors cannot reduce their damages liability by pointing to other wrongdoers.

*Second,* Defendants cite just a single, unpublished, out-of-circuit case that could be read as permitting a jury to consider the existence of other infringers to reduce damages – and this case is distinguishable because the plaintiff in that case did not object to the relevant jury instructions, the plaintiff had no sales or market for its copyrighted works, and the defendant made no profit from its infringing use.  This distinguishable, outlier case has not been followed, and in fact runs directly contrary to numerous authorities holding that it is improper as a matter of law to reduce damages on the theory that other infringers would have substituted for the

defendant.  *See, e.g.*, *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1160 (6th Cir. 1978); *Brothers Inc. v. W. E. Grace Mfg. Co.*, 320 F.2d 594 (5th Cir. 1963).

<u>Third</u>, Defendants' argument that deterrence would be futile effectively writes deterrence out of the law – and would allow Defendants to encourage the jury's nullification of Congress's reasoned and considered judgment that widespread lawlessness and disrespect for copyright *only enhances* the need for deterrence through larger statutory damage awards.  The proper place for a policy discussion about the use of damage awards to deter widespread copyright infringement is in the halls of Congress, not the jury room.

Try as they might, Defendants cannot escape the fact that as a result of their illegal conduct, millions upon millions of users have flocked to LimeWire and illegally downloaded millions upon millions of copies of Plaintiffs' copyrighted works.  The law does not allow Defendants to seek a windfall reduction in their damages simply because other illegal services exist, nor does the law permit Defendants to argue for nullification of Congress's reasoned judgment that widespread infringement should be deterred through increased damage awards.

**II.   ARGUMENT**

    **A.   The narrow exclusion sought by Plaintiffs does not preclude Defendants from offering evidence or argument that other, non-infringing alternatives contributed to Plaintiffs' decline in revenues**

Defendants characterize Plaintiffs' motion as one that will "completely straightjacket" Defendants' ability to present evidence that factors other than Lime Wire contributed to the decline in Plaintiffs' revenues.  Opp. at 4.  The constraint that Defendants feel, however, has nothing to do with Plaintiffs' motion, and everything to do with the law.  It simply is not proper for Defendants to argue that had they not infringed Plaintiffs' copyrights, someone else would have.  What Defendants are really saying is that they should not be responsible for Plaintiffs'

damages because, even without Lime Wire, Lime Wire users could have and would have turned to other illegal sources of music rather than purchasing it. It is that argument which Plaintiffs have moved to exclude. Defendants can argue that other factors like "the economic recession," "bankruptcies of record wholesalers and retailers" and "increased competition for consumer spending on leisure," see Opp. at 3 & fn.1, contributed to Plaintiffs' decline in revenues *without arguing that other illegal services would have substituted for LimeWire had it never existed.*

### B. The law on "but for" causation does not permit intentional tortfeasors to reduce their damages by pointing the finger at others

Despite Defendants' strenuous efforts to shoehorn their argument into a discussion of "but for" causation, the law on "but for" causation provides no support for Defendants' claims.

A world filled with other wrongdoers waiting to inflict injury is emphatically not the "but for" world contemplated by the law on causation, either criminal or civil. Defendants cannot refute this principle by claiming it applies only to criminal law. *See* Opp. at 1. Examples from intentional tort law are legion: One found liable for defamation cannot reduce a damage award by insisting that, but for defendant's defamatory conduct, others would have likewise defamed the plaintiff; nor can a trespasser avoid paying damages on the ground that, but for that trespasser, other potential trespassers would have trespassed on plaintiff's property anyway. As noted in Plaintiffs' moving papers, it is axiomatic that an intentional tortfeasor cannot reduce his damages by pointing the finger at others. *See, e.g.*, *Anderson v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 582 F. Supp. 627, 632 (S.D.N.Y. 1984) ("It has long been the rule at common law . . . that contribution will not lie in favor of an intentional tort feasor."); *Hytko v. Hennessey*, 62 A.D.3d 1081, 1082 (N.Y. App. Div. 2009) ("[P]ublic policy precludes indemnification for those who commit intentional torts."); Restatement (Second) of Torts § 886A, cmt. J (1979).

Defendants do not even attempt to address these authorities in their Opposition Brief.

### 1. Copyright law does not support Defendants' argument that the "but for" world includes other wrongdoers waiting to commit the same infringement

Like the law on intentional torts, the law on copyright infringement causation does not contemplate a "but for" world in which other wrongdoers wait in the wings to commit the same infringement. The reason is obvious: a "but for" analysis that reduces a copyright owner's damages because other infringers happen to exist "would mean that in such circumstances an infringer may steal with impunity" and "victims of infringement will go uncompensated." *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 165 (2d Cir. 2001). It would also write deterrence out of the Copyright Act, by requiring a jury to *reduce* damages in the very circumstances under which they should be sending a message to other wrongdoers that infringement is unacceptable.

Defendants can point to no copyright case – except for a single unpublished and wholly distinguishable decision by a district court in Illinois – that has permitted a copyright infringer to *reduce* its liability for damages by pointing to other illegal sources of infringement. In *Marobie-Fl. v. Nat'l Ass'n of Fire Equipment Distributors*, No. 96 C 2966, 2002 U.S. Dist. LEXIS 2350 (N.D. Ill. Feb. 12, 2002), the jury concluded that plaintiff, the copyright owner of three volumes of firehouse-related clip art, suffered no compensatory damages under 17 U.S.C. § 504(b) from defendant National Association of Fire Equipment Distributors's ("NAFED") unauthorized use of plaintiffs' clip art on NAFED's website for about a year. *Id.* at *2. The court noted that plaintiff never had sales or a market for its works, presented only limited evidence that the clip art files were ever received by those requesting downloads, and that the same clip art was available for free in an Internet chat group and possibly on other websites as well. *Id.* at *6. The court also observed that it was undisputed that NAFED did not profit from its use of the clip art.

*Id*. at *5.  The court denied plaintiff's motion for a new trial, reasoning that the jury award was not against the manifest weight of the evidence – especially where plaintiff never objected to any of the relevant jury instructions.  *Id*. at *8.

To the extent the district court approved of the jury's reliance on other infringing sources of plaintiff's copyrighted clip art to award zero damages – and it is unclear from the unpublished order whether the court even did so – *Marobie* runs contrary to well-established law on damages and has not been followed by any other court.  Moreover, unlike the *Marobie* defendant, Lime Wire has profited from its intentional inducement of infringement on a massive scale, and there are significant sales of and a market for Plaintiffs' works.  *See* May 25, 2010, Amended Opinion and Order (Dkt. 223) at 36 (finding that Lime Wire enjoyed annual revenues of an estimated $20 million by 2006 and that Lime Wire's revenue growth depended on the inducement of infringement).  Also, unlike the plaintiff in *Marobie*, Plaintiffs here vigorously object to the introduction of evidence about other infringers and would object to any jury instructions permitting the jury to reduce Plaintiffs' damages based on the existence of other infringers.

Except for *Marobie*, which is both an outlier and distinguishable, *none* of the cases cited by Defendants even remotely support the proposition that the "but for" causation analysis allows damages to be reduced based on the presence of other infringers in the marketplace.[1]  In fact, the

---

[1] While Defendants note that "actual damages" caselaw is relevant to the *Bryant* factor "revenues lost by plaintiffs," used in determining statutory damages under 17 U.S.C. § 504(c), Defendants omit to add that statutory damages "are available without proof of plaintiff's actual damages or proof of any damages."  *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001).  *See F.W. Woolworth Co. v. Contemp. Arts, Inc*., 344 U.S. 228, 233 (1952).  A case cited by Defendants in their opposition, *Odegard, Inc. v. Costikyan Classic Carpets, Inc*., 963 F. Supp. 1328 (S.D.N.Y. 1997), Opp. at 7, illustrates this point – recognizing the willfulness of the infringement and the need for deterrence, the court awarded plaintiffs statutory damages of $25,000 for defendant's willful infringement of one carpet design,

cases cited by Defendants support just the opposite. For example, in *RSO Records v. Peri*, 596 F. Supp. 849 (S.D.N.Y. 1984), the court found that manufacturers of counterfeit records had willfully infringed plaintiff record companies' copyrighted works. *Id*. at 858-60. Although the evidence showed that defendants faced vigorous competition from other counterfeiters and were only one part of a larger "counterfeiting world," *id*. at 855-56, the court, in calculating actual damages, did not consider whether "but for" defendants' infringement, these other competing counterfeiters would have infringed plaintiffs' works. *See id*. at 860-62. Noting that the infringement was willful and Congress's intent to deter infringement through enhanced statutory damages, the court awarded the maximum statutory damages per work. *Id*. at 863.

Finally, the law on proximate cause likewise provides no support whatsoever for Defendants' argument. The unremarkable fact that courts have held that damages must bear a "necessary, immediate and direct causal connection" to the infringement, *see Sunset Lamp v. Alsy Corp*., 749 F. Supp. 520, 522 (S.D.N.Y. 1990), does not mean that courts permit a proven, intentional infringer to defeat causation by pointing to other illegal services, and none of the cases cited by Defendants even remotely say so. Rather, courts have imposed a proximate cause requirement to exclude from damages, in certain circumstances, plaintiff's lost sales for non-infringed items or the infringer's enhanced good will or market recognition, where such items have only a remote relationship to defendant's infringement. *See id*. at 524-25.

> 2.  **Patent infringement law on "but for" causation of damages holds that the availability of other products infringing the same patent does not, as a matter of law, reduce the defendant infringer's liability for damages**

Well-settled law on "but for" causation of patent infringement damages underscores the

---

even though "plaintiffs have not demonstrated that they lost profits or that the defendants benefited financially from their infringement of the . . . carpet." *Id*. at 1341-42.

principle that the existence of *other* actual or potential infringers does not – *as a matter of law* – reduce the defendant infringer's liability for damages.  In constructing a "but for" world to determine causation of damages for patent infringement, courts posit a world in which the infringement of the patent-holder's patent does not exist – and courts consider only *non-infringing* substitutes to reduce a patentee's lost profits.  *See, e.g.*, *Grain Processing Corp. v. Am. Maize-Prods.,* 185 F.3d 1341, 1350 (Fed. Cir. 1999) (observing that the "but for" world must be constructed to show "likely outcomes *with infringement factored out* of the economic picture") (emphasis added); *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 761 F.2d 649, 653 (Fed. Cir. 1985) (approving district court's decision not to reduce damages based on patentee's lost profits where the competing alternatives available in the market were all *infringing* alternatives), *cert. denied*, 474 U.S. 902 (1985); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) (holding that, to determine the profits that patentee would have earned "but for" defendants' infringement, courts must consider whether there were any *non-infringing* substitutes).

      The law precludes consideration of infringing substitutes in order to avoid rewarding an infringer who happens to be only one of many other infringers.  For this reason, the Fifth Circuit, in *Brothers Inc. v. W. E. Grace Mfg. Co.*, 320 F.2d 594 (5th Cir. 1963), explicitly rejected the exact same argument that Defendants seek to introduce here.  *Id*. at 598.  In *Brothers*, the lower court reduced the patent infringement award for lost profits, reasoning that because there were two other infringing companies selling the same product, "had not the Infringer wrongfully appropriated and sold the patented machines, 2/3rds of them would probably have been sold by these two competitors."  *Id*.  The Fifth Circuit found the trial court's approach "a novel and startling one."  *Id*.  The court observed:

- 7 -

> The consequence of the holding is strange. *In effect it is that an admitted infringer who has made substantial profits from purloining another's patent is not made to account for his acknowledged acts because had he not poached, another would or, at any rate, sales of similar products would have been made, not by the patent owner, but by others.* To avoid such an anomaly, we therefore restore the Master's finding that the Infringer is liable for *all* of the machines sold by it during the critical period.

*Id.* (emphasis added). The court reversed the trial court's reduction of plaintiff's lost profits. *Id.*

Likewise, in *Panduit*, the seminal case on "but for" causation of a patentee's lost profits, the Sixth Circuit explicitly disapproved of the lower court's reduction of damages based on its finding that the same product was available from other competitors – and concluded that, although "[c]ompetition between those selling infringing ducts was admittedly fierce," the defendant infringer, "however, cannot expect to pay a lesser royalty, as compensation for its infringement, on the ground that it was not the only infringer."[2]  *Panduit*, 575 F.2d at 1160.

This approach to determining lost profits that courts have found so astonishingly wrong is *precisely* the approach Defendants seek to introduce here. By pointing to other illegal services who could have fostered infringement if Lime Wire had not, Defendants – proven, willful infringers whom the Court has found made substantial profits by inducing infringement – seek to

---

[2] The court further noted that the existence of other, competitive substitutes, "though it is to be considered" in determining the patentee's lost profits, "must be viewed of limited influence *where the infringer knowingly made and sold the patented product for years*." *Id.* at 1162 (emphasis added). The court reasoned that "[t]here are substitute products for virtually every patented product; the availability of railroads and box cameras should not of itself diminish royalties payable for infringement of the right to exclude others from making and selling the Wright airplane or the Polaroid camera." *Id.* This reasoning applies with equal if not greater force here. The availability of other sources for Plaintiffs' copyrighted works cannot "of itself diminish" the damages that Plaintiffs are entitled to – especially where, as here, Lime Wire knowingly induced infringement on a "massive scale" for years. *See* May 25, 2010, Amended Opinion and Order (Dkt. 223) at 33. The law does not allow wrongdoers to get a free pass on the damages they intentionally caused because other wrongdoers happen to exist in the world. Such a result would be, as the court noted in *Brothers*, "startling" and "anomal[ous]" and clearly wrong as a matter of law. *Brothers*, 320 F.2d at 598.

reduce the damages caused by their own intentional inducement of infringement.

In sum, the argument that Defendants seek to make at trial – that Lime Wire did not cause harm to Plaintiffs because in the absence of Lime Wire, Lime Wire users would have turned to other illegal services for free music instead of purchasing music from Plaintiffs – has been consistently rejected by courts *as a matter of law*. The argument cannot be "relevant," as Defendants' claim, to the jury's determination of damages when it is directly contrary to law, and Plaintiffs' motion therefore should be granted.

### C. Defendants' argument that the existence of other illegal services makes deterrence here futile improperly seeks to nullify Congress's reasoned and considered judgment that large statutory damage awards are necessary to deter widespread copyright infringement

Defendants do not cite to a single case in support of their argument on deterrence, nor does one exist. Congress decided that widespread lawlessness and disrespect for copyright enhanced the need for deterrence, and on that basis, increased the statutory minimum and maximum for infringement and for willful infringement – and Congress did so after analyzing extensive evidence about the prevalence of illegal services and considering how best to deter them. *See, e.g*., H.R. Rep. 106–216, at 3 (1999) (noting that, given the way Internet technology is evolving, more piracy will ensue and emphasizing that higher penalties were needed to deter those who think their infringing actions are so common as to be acceptable or undetectable). *See also Broadcast Music, Inc. v. R Bar of Manhattan, Inc*., 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (statutory damages "should significantly exceed the amount of unpaid license fees" in order to put infringers "on notice that it costs less to obey the copyright laws than to violate them").

Defendants want to argue to the jury that any attempt to deter infringement through a large damage award would be futile – that, "regardless of any damages award in this case,

consumers will continue to access free music from a huge variety of sources." Opp. at 20-21. This argument would effectively encourage the jury to nullify Congress's reasoned and considered judgment that copyright infringement can and should be deterred through substantial damage awards – and that the growing prevalence of copyright infringement *demands enhanced damage awards, not surrender* in the face of overwhelming lawlessness. *See F.W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 233 (1952) (recognizing that the Copyright Act's statutory damages provision embodies Congress's judgment that copyright infringement is always against the public interest and should always be deterred). The jury cannot decide what purpose the Copyright Act serves – only Congress can. *See United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."). Defendants should not be permitted to argue that the existence of other illegal services weighs in favor of a smaller award because deterrence would be futile.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion *in limine* to exclude any evidence or argument by Defendants that Lime Wire did not cause harm to Plaintiffs because other illegal services would have caused harm to Plaintiffs' copyrights should be granted.

Dated:  March 7, 2011                                   Respectfully submitted

                                                                     */s/ Melinda E. LeMoine*
                                                                    Melinda E. LeMoine

                                                                    Attorney for Plaintiffs
                                                                    Munger, Tolles & Olson LLP
                                                                    355 South Grand Avenue, 35th Floor
                                                                    Los Angeles, CA 90071-1560
                                                                    (213) 683-9100
                                                                    (213) 687-3702 (Fax)