REDACTED VERSION
COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTA RECORDS LLC; ATLANTIC RECORDING
CORPORATION; ARISTA MUSIC, fka BMG MUSIC;
CAPITOL RECORDS, INC.; ELEKTRA
ENTERTAINMENT GROUP INC.; INTERSCOPE
RECORDS; LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY RECORDS
LLC; SONY MUSIC ENTERTAINMENT, fka SONY
BMG MUSIC ENTERTAINMENT; UMG Recordings,
INC.; VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,

Plaintiffs,

– against –

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; GREG BILDSON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP;

Defendants.

ECF Case

06 CV 5936 (KMW)(DF)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO PRECLUDE CERTAIN PURPORTED EXPERT TESTIMONY BY
EMIN GÜN SIRER**

WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019
Phone: (212) 728-8000

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

FACTS ..........................................................................................................................2

    A.   Professor Sirer's Background ...............................................................................2

    B.   Professor Sirer's Rebuttal Opinions.....................................................................2

ARGUMENT ................................................................................................................6

    A.   Professor Sirer Is Well-Qualified To Render An Expert Opinion In This Case.................7

    B.   Professor Sirer's Opinions Are Reliable And Admissible And Plaintiffs' Critiques Of Professor Sirer's Opinions Are Unrelated To Admissibility.......................................11

        1.   Plaintiffs' Criticisms Regarding Professor Sirer's Opinions On NPD's Data Collection Are Unrelated To Admissibility. ...............................................14

    C.   Professor Sirer's Prior Research Does Not Render Him Unqualified To Offer An Expert Opinion In This Case.......................................................................16

CONCLUSION.............................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Amigo Broad., L.P. v. Spanish Broad. Sys., Inc.*,
  No. A-05-CA-193-LY, 2006 WL 5503872 (W.D. Tex. Apr. 21, 2006)..................................12

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996).........................................................................................................11

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*,
  No. 06 Civ. 3972, 2011 WL 182056 (S.D.N.Y. Jan. 14, 2011).............................................7, 8

*City of Chi. v. Westchester Fire Ins. Co.*,
  No. 08 C 5535, 2010 WL 3516066 (N.D. Ill. Sept. 1, 2010)....................................................13

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)......................................................................................................6, 7, 11, 12

*EEOC v. Morgan Stanley & Co.*,
  324 F. Supp. 2d 451 (S.D.N.Y. 2004).......................................................................................14

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*,
  No. 04 Civ 7369, 2006 WL 2128785 (S.D.N.Y. July 28, 2006) ...........................................8, 9

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)......................................................................................................................7

*Lidle ex rel. Lidle v. Cirrus Design Corp.*,
  No. 08-cv-1253, 2010 WL 2674584 (S.D.N.Y. July 6, 2010)........................................ passim

*MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*,
  No. 99 civ 8598, 2002 WL 31388716 (S.D.N.Y. Oct. 22, 2002) .......................................7, 12

*Maiorana v. U.S. Mineral Prods. Co. (In re Joint E. & S. Dist. Asbestos Litig.)*,
  52 F.3d 1124 (2d Cir. 1995)..................................................................................................11, 13

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007).......................................................................................10

*McCullock v. H.B. Fuller Co.*,
  61 F.3d 1038 (2d Cir. 1995).......................................................................................................10

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  No. M21-88, 2008 WL 1971538 (S.D.N.Y. May 7, 2008).......................................................16

*Nimley v. City of N.Y.*,
  414 F.3d 381 (2d Cir. 2005).........................................................................................................6

*Raskin v. Wyatt*,
    125 F.3d 55 (2d Cir. 1997)................................................................................12

*Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*,
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) .............................................................11

*Tedone v. H.J. Heinz Co.*,
    686 F. Supp. 2d 300 (S.D.N.Y. 2009)........................................................16, 17

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    576 F. Supp. 2d 457 (S.D.N.Y. 2007).......................................................7, 9, 10

*United States v. Joseph*,
    542 F.3d 13 (2d Cir. 2008)...............................................................................10

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
    571 F.3d 206 (2d Cir. 2009).............................................................................11

## OTHER AUTHORITIES

Fed. R. Evid. 702 ...............................................................................................6, 7

Fed. R. Evid. 702 Advisory Committee Note......................................................11

Lime Group LLC, Lime Wire LLC, Mark Gorton and M.J.G. Lime Wire Family Limited Partnership (collectively, the "Defendants") respectfully submit this memorandum in opposition (the "Opposition") to Plaintiffs' Motion to Preclude Certain Purported Expert Testimony by Emin Gün Sirer (the "Plaintiffs' Motion to Preclude" or "Motion"). Plaintiffs' Motion is an unwarranted attempt to preclude Cornell University Associate Professor Sirer, an experienced researcher and expert in peer-to-peer computer networks, from even commenting at trial on the severe flaws in Plaintiffs' purported proofs of infringement of their copyrights by users of the Lime Wire software application. Professor Sirer's opinions and critiques are well within his expertise, will assist the jury, and should not be precluded.

## PRELIMINARY STATEMENT

Plaintiffs have moved to preclude the testimony of Defendants' technical expert Professor Emin Gün Sirer to the extent that it critiques the testimony of Plaintiffs' expert, Dr. Richard Waterman, regarding the total number of alleged infringements of Plaintiffs' works using the Lime Wire application on the Gnutella network. Plaintiffs' Motion should be denied for three reasons: (i) Professor Sirer has the academic and practical qualifications to render opinions on statistics; (ii) Professor Sirer has raised valid critiques regarding the reliable foundations of Dr. Waterman's analyses, which cannot be dismissed as mere speculation and conjecture; and (iii) Professor Sirer's prior academic research does not bias his testimony, much less render it so unreliable that it should be precluded.

In an effort to preclude Defendants from exposing the foundational shortcomings in Dr. Waterman's analyses, Plaintiffs have launched an attack on Professor Sirer's qualifications and the factual data he provided in support of his rebuttal opinions. That attack, at most, is fodder for cross-examination at trial. Plaintiffs' contentions regarding Professor Sirer's

background in statistics and the factual data that he provided in support of his opinions do not concern the admissibility of Professor Sirer's testimony, as they are unrelated to the reliable foundations of his opinions. The arguments raised in Plaintiffs' Motion concern the credibility and weight to be accorded Professor Sirer's opinions, which are not evidentiary issues of admissibility, but rather should be presented to the finder of fact at trial.

**FACTS**

### A.      Professor Sirer's Background

Professor Emin Gün Sirer is an Associate Professor of Computer Science at Cornell University. (*See* Ex. 1 (Expert Report of Professor Sirer) at Ex. A.)[1] Professor Sirer holds a Ph.D. in Computer Science and Engineering from the University of Washington. (*See id.*) He also holds a Bachelor of Science in Engineering, which he gained in his studies in the department of Computer Science at Princeton University. (*See id.*) Over the last seventeen years, Professor Sirer has published academic papers on a wide range of topics, including: peer-to-peer protocols for the common good, system architecture for network computers and the geolocation of internet hosts. (*See id.*) Professor Sirer is also a frequent speaker on the technical aspects of peer-to-peer systems. (*See id.*) In sum, Professor Sirer has spent the bulk of his career studying and researching peer-to-peer systems and related technology.

### B.      Professor Sirer's Rebuttal Opinions

Professor Sirer is a technical expert, as Plaintiffs recognize (*see* Plaintiffs' Motion to Preclude Certain Expert Testimony by George Strong, dated March 2, 2011 at 8), and his

---

[1]      All Exhibits submitted in support of Defendants' Memorandum in Opposition to Plaintiffs' Motion to Preclude Certain Purported Expert Testimony by Emin Gün Sirer are annexed to the Declaration of Amina Jafri, dated March 8, 2011, filed concurrently with this Memorandum. Hereafter, each Exhibit will be referred to by its number followed by a brief description of the nature of the Exhibit.

report responds to Dr. Waterman's conclusions concerning the total number of alleged infringements of Plaintiffs' works that occurred using the Lime Wire application.  Professor Sirer's deep knowledge of peer-to-peer systems makes him uniquely qualified to rebut Dr. Waterman's conclusions.  Based on his assessment of Dr. Waterman's methodology and the underlying data relied on by him, Professor Sirer opined that ████████████████

████████████████████████████████████████████████████

████

       A significant aspect of Professor Sirer's work in this matter includes detailed analyses of the shortcomings of the data collected by The NPD Group ("NPD").  Dr. Waterman relies solely on the NPD data to arrive at an "estimate" of the number of alleged downloads of Plaintiffs' works.  In sum, Professor Sirer concluded that:





Professor Sirer concludes that this was a fundamental error in Dr. Waterman's analysis.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

     Professor Sirer has the expertise necessary to analyze and critique Dr.

Waterman's statistical conclusions. ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

████████████████████

## ARGUMENT

Before an expert can be permitted to testify, a district court must make the following determinations: "(1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact." *Lidle ex rel. Lidle v. Cirrus Design Corp.*, No. 08-cv-1253, 2010 WL 2674584, at *2 (S.D.N.Y. July 6, 2010) quoting *Nimley v. City of N.Y.*, 414 F.3d 381, 396-97 (2d Cir. 2005). Once an expert is deemed qualified, the court must then consider the admissibility of an expert's proffered testimony, which is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has imposed upon the trial courts the tasks of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). When considering the reliability of an expert's reasoning, it is necessary to consider: (1) whether the theory or technique relied on has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation in the case of a particular scientific technique; and (4) whether the theory or method has been generally accepted

by the scientific community. *Id.* at 593-94. The Supreme Court has recognized that the reliability factors articulated in *Daubert* are flexible and each factor "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999).

In deciding the admissibility of an expert's proffered testimony, the trial court's gate-keeping function is limited to considerations of the reliability of the methods used by the expert and the relevance of the testimony. *See Daubert*, 509 U.S. at 597. Questions regarding the weight or the credibility of an expert's testimony are not within the province of the trial court, as it decides the admissibility of the testimony from an evidentiary perspective, but rather must be considered by the finder of fact at trial. *Id.* at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see generally MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*, No. 99 civ. 8598, 2002 WL 31388716, at *2 (S.D.N.Y. Oct. 22, 2002) ("a claim that the assumptions relied on by an expert are unfounded is generally an argument that goes to the weight rather than the admissibility of the evidence.").

## A.    Professor Sirer Is Well-Qualified To Render An Expert Opinion In This Case.

Professor Sirer is appropriately qualified to render his opinions. An expert may be qualified by virtue of "knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702. This Court has recognized that "[w]hile we look to the totality of the expert's qualifications, any one of these five forms of qualifications will satisfy the rule." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) (internal citations omitted). Standards of expert qualification are to be liberally construed. *See Cedar Petrochemicals, Inc. v.*

*Dongbu Hannong Chem. Co.*, No. 06 Civ. 3972, 2011 WL 182056, at *9 (S.D.N.Y. Jan. 14, 2011) ("In considering a witness's practical experience and educational background as criteria for qualification, the only matter the court should be concerned with is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth."); *Lidle*, 2010 WL 2674584, at *3; *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04 Civ. 7369, 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006) ("[An] expert should not be required to satisfy an overly narrow test of his own qualifications.") (internal quotations omitted).

Professor Sirer is well-qualified to rebut the testimony of Dr. Waterman. Defendants are not offering Professor Sirer as an expert in the field of statistics, but rather are offering him as a computer science expert. Professor Sirer is not offering opinions requiring a high degree of statistical expertise, and the nature of his analysis is aligned with his background in computer science and draws upon his related knowledge of applied statistics. █████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████



Professor Sirer is undoubtedly knowledgeable in the area of statistics through his

education and his academic research, and Plaintiffs' limited focus on his precise experience

within the field is unwarranted, given this Court's holding that an "expert should not be required

to satisfy an overly narrow test of his own qualifications." *See Johnson & Johnson*, 2006 WL

2128785, at *5. In *Tiffany (NJ) Inc.*, the defendant, eBay, Inc., sought to preclude the expert

testimony of the plaintiff's expert on the grounds that the expert was unqualified to offer

opinions based on statistical sampling, where he (i) had not taken university-level coursework in

statistical sampling; and (ii) specialized in designing surveys of consumers rather than of objects.

576 F. Supp. 2d at 458. In finding that the plaintiff's expert was qualified to opine on statistical

sampling, the court considered that he had taken seminars in statistical sampling, had performed

statistical samples in various surveys through his career and had experience in using statistics in

litigation. *Id.* The court further held that "EBay's argument that [the expert's] experience in

designing customer confusion surveys does not qualify him to design a study like the Buying

Programs is unfounded. While the Court must ensure that the expert will be proffering opinions on issues or subject matter that are within his or her area of expertise, the law does not require such a narrow specialty as Defendants suggest . . . ." *Id.* at 458-59 (internal citations omitted).[2]

Given that Professor Sirer has the requisite academic and practical qualifications to opine on Dr. Waterman's testimony regarding the total number of alleged infringements of Plaintiffs' works using Lime Wire, Plaintiffs' arguments that Professor Sirer lacks knowledge of statistical sampling theory and design, the sampling of human populations, and consumer studies and market research (*see* Mot. at 6), concern the weight, rather than the admissibility of his testimony. *See United States v. Joseph*, 542 F.3d 13, 21-22 (2d Cir. 2008) (recognizing that "the place to quibble with [an expert's] academic training is on cross-examination and goes to his testimony's weight . . . not its admissibility.") citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (internal quotations omitted); *Tiffany (NJ) Inc.*, 576 F. Supp. 2d at 459 (eBay's objections to the expert's qualifications regarding statistical sampling of objects, rather than consumers, "go to the weight, not the admissibility, of his testimony, and are more properly explored on cross-examination.").

---

[2]     Plaintiffs have cited a single case where this Court excluded expert testimony on statistics on the grounds that the expert was not qualified in the subject matter. *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007). In that case, the plaintiff, Louis Vuitton Malletier ("Louis Vuitton"), retained an expert whose work experience and training was limited to the area of colorimetry, the study of vision and color, to opine that on the basis of probability, "the selection of colors for the Dooney & Bourke logo was a deliberate attempt to copy Louis Vuitton's use of colors." *Id.* The plaintiff's expert had no basis to testify regarding the statistical significance of a choice of colors for a product, aside from his general "familiarity with statistics/probability for 40 years in connection with his studies and work." *Id.* In contrast, Professor Sirer has an educational background in statistics at the undergraduate and graduate levels and has used statistics frequently in his academic research.

**B.**   **Professor Sirer's Opinions Are Reliable And Admissible And Plaintiffs' Critiques Of Professor Sirer's Opinions Are Unrelated To Admissibility.**

Plaintiffs' primary attack on the substance of Professor Sirer's opinions is that he did not offer counter evidence regarding the deficiencies in Dr. Waterman's flawed sampling and extrapolation methods.   That is not a critique which is worthy of a *Daubert* challenge, but rather a critique which the fact-finder can assess appropriately.   *See Maiorana v. U.S. Mineral Prods. Co. (In re Joint E. & S. Dist. Asbestos Litig.)*, 52 F.3d 1124, 1135 (2d Cir. 1995) ("Trial courts should not arrogate the jury's role in evaluating the evidence and the credibility of expert witnesses by simply choosing sides in the battle of the experts.") (internal quotations omitted). Professor Sirer raises sound problems with Dr. Waterman's work, which is classic rebuttal expert work.   The testimony of a qualified expert is presumed admissible.   *See Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) ("the assumption the court starts with is that a well qualified expert's testimony is admissible."); *see generally* Fed. R. Evid. 702 Advisory Committee Note ("[a] review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.").   Therefore, there are limited circumstances in which trial courts should exclude the testimony of a qualified expert.   *See Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009) ("a trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence 'an apples and oranges comparison.'") quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

In deciding upon the admissibility of expert testimony, the trial court is tasked with ensuring that the testimony rests on a reliable foundation.   *See Daubert*, 509 U.S. at 597 ("Rules of Evidence-especially Rule 702-do assign to the trial judge the task of ensuring that an

expert's testimony both rests on a reliable foundation and is relevant to the task at hand."). Any contentions regarding the validity of the data underlying the expert's opinion concern the weight of the evidence, rather than its admissibility, and are to be resolved by the fact-finder. *See Lidle*, 2010 WL 2674584, at *4 citing *Raskin v. Wyatt*, 125 F.3d 55, 66 (2d Cir. 1997); *MacQuesten*, 2002 WL 31388716, at *2 (denying the plaintiff's motion to exclude the testimony of the defendant's expert, where the plaintiff attacked the "factual underpinnings" of the expert's opinion on the grounds that "a claim that the assumptions relied on by an expert are unfounded is generally an argument that goes to the weight rather than the admissibility of the evidence."); *see also Amigo Broad., L.P. v. Spanish Broad. Sys., Inc.*, No. A-05-CA-193-LY, 2006 WL 5503872, at *4 (W.D. Tex. Apr. 21, 2006) ("In determining the admissibility of expert testimony, a district court must defer to the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility . . . should be left for the jury's consideration.") (internal quotations omitted).

Here, Plaintiffs do not contend that the methods used by Professor Sirer lack reliable foundation, but rather argue that his opinions are speculative and conjectural because Professor Sirer has not provided factual data to support his opinions regarding: ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████ None of these criticisms make Professor Sirer's analysis unreliable. Rather, Plaintiffs' criticisms focus on the

factual support provided by Professor Sirer in support of his opinions, which criticisms are more appropriately addressed on cross-examination. *See Lidle*, 2010 WL 2674584, at *4.

By their Motion, Plaintiffs simply wish to preclude Defendants' from addressing the unreliable methods and data used by Dr. Waterman in forming his opinions.[3]



Professor Sirer's critiques of the NPD data and Dr. Waterman's use of the NPD data are not only valid and admissible, they are right on the money and ought to be considered by the fact-finder in this case. *See In re Joint E. & S.*, 52 F.3d at 1135; *City of Chi. v. Westchester Fire Ins. Co.*, No. 08 C 5535, 2010 WL 3516066, at *5 (N.D. Ill. Sept. 1, 2010) ("battle of the experts . . . is more properly undertaken at trial in pitting [the experts'] opinions against each other.") (internal quotations omitted).

Professor Sirer was not required to re-create any of Dr. Waterman's analyses. In rebutting Dr. Waterman's conclusions, Professor Sirer had access to and relied upon the same factual data upon which Dr. Waterman relied and in many instances, critiqued Dr. Waterman's

---

[3]    Mindful of the broad Second Circuit standard under *Daubert*, Defendants believe that the shortcomings in Dr. Waterman's testimony can be tested through Professor Sirer's rebuttal report and through vigorous cross-examination.

use of the factual data in forming his opinions.[4]  This Court has recognized that a defendant may rebut a statistical analysis without performing an affirmative analysis.  *See EEOC v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 459 (S.D.N.Y. 2004).  In *Morgan Stanley*, the defendant's rebuttal expert opined on the statistical analyses performed by the EEOC's expert to determine whether it was possible to infer that there were disparities in compensation among various groups. *Id.* at 457.  The defendant's expert focused on the validity of the statistical methods used by the EEOC's expert, and the EEOC moved to exclude the testimony on the grounds that the defendant's expert "did not construct his own analysis of promotion and compensation practices." *Id.* at 459 (internal quotations omitted).  In holding that the expert testimony at issue was admissible, the Court recognized that it is possible to rebut a statistical analysis in many ways, for example by "point[ing] out omitted variables in plaintiff's analysis." *Id.* at 459-60.  In denying the EEOC's motion to exclude, the Court held that "[f]rom an admissibility perspective, [the defendant's] experts' critiques and analyses of the EEOC's statistical case are sufficient.  More affirmative analyses are not required . . . ." *Id.* at 460.  For the same reasons, Professor Sirer's opinions are admissible.  Whether Professor Sirer should have undertaken additional affirmative analyses is not an issue of admissibility for this Court to decide upon Plaintiffs' Motion, but rather an issue regarding the weight of his opinions, which must be decided by the fact-finder at trial.

### 1.    Plaintiffs' Criticisms Regarding Professor Sirer's Opinions On NPD's Data Collection Are Unrelated To Admissibility.



███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

This analysis is well-grounded and unsuitable for a *Daubert* challenge.  Plaintiffs' criticisms

focus on the data provided by Professor Sirer in support of his opinions and are more

appropriately addressed on cross-examination at trial.  *See Lidle*, 2010 WL 2674584, at *4.

Plaintiffs' motion to preclude Professor Sirer's testimony on the existence of

pollution on Lime Wire is particularly inappropriate given that NPD, the data source for Dr.

Waterman's opinions, concluded that ██████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████  Similarly, one of Plaintiffs' own

investigators, Thomas Sehested of DtecNet, testified regarding the existence of spoof files on the

Gnutella network.  (*See* Ex. 4 (Sehested Dep. Tr.) at 193:9-17 ("Q.  Have you ever heard of

entities distributing fake files over the Gnutella network?  A.  Yes.  Q.  And have you ever heard

of any entities operating on behalf of the record industry distributing fake files over the Gnutella

network?  A.  Yes.  Q.  Do you believe that's happened?  A.  Yes.").)[5]  This Court should decline

to exclude the factual criticisms of Dr. Waterman's opinions set forth by Professor Sirer,

particularly given that Plaintiffs have acknowledged the same criticisms.

---

[5] ████████████████████████████████████████████████

███████████████████████████████████████████████████

**C.    Professor Sirer's Prior Research Does Not Render Him Unqualified To Offer An Expert Opinion In This Case.**

Plaintiffs' contentions that Professor Sirer's prior work with file sharing systems and his work for Lime Wire warrant the exclusion of his expert testimony in this case are without merit and are entirely unrelated to issues of admissibility. Professor Sirer is not biased and has no more of a stake in this case than any expert on either side. Even if bias were appropriately alleged, this Court has recognized that "[m]any witnesses are biased to some degree, and lack of bias is not required for expert testimony to be admissible." *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. M21-88, 2008 WL 1971538, at *13 (S.D.N.Y. May 7, 2008) (admitting testimony of industry expert whose firm manufactured ethanol, a product in direct competition with MTBE, the subject of the products liability suit, and holding that there is no requirement that an expert witness lack bias); *see also Tedone v. H.J. Heinz Co.*, 686 F. Supp. 2d 300, 311 (S.D.N.Y. 2009) (admitting testimony of industry expert who served as the product safety manager of the company that manufactured the bottle that was purportedly the cause of the injury resulting in the product liability litigation and finding that concerns of bias were an issue for cross-examination).

Here, Professor Sirer's long-time academic involvement in peer-to-peer systems does not improperly bias his opinions, but rather underscores his qualifications to opine on the technologies at issues in this case. Given Professor Sirer's areas of academic research, it is hardly surprising that he has been involved in studying file-sharing systems and content aggregators. Plaintiffs' contentions of bias concern, at best, the credibility and weight that the fact-finder should accord Dr. Sirer's testimony at trial, and therefore must appropriately be addressed at trial to the extent relevant they are at all. *See Tedone*, 686 F. Supp. 2d at 311

("Plaintiff . . . may raise the issue of [the expert's] alleged bias on cross-examination and may ask the Court for an interested witness charge at trial if the facts and law merit.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (i) deny

Plaintiffs' Motion to Preclude Certain Purported Expert Testimony by Emin Gün Sirer; and (ii)

grant such other and further relief as the Court deems just and proper.


Dated: New York, NY                    WILLKIE FARR & GALLAGHER LLP
      March 8, 2011


                                     /s/ Thomas J. Meloro _____

                                     Thomas J. Meloro (tmeloro@willkie.com)
                                     Tariq Mundiya (tmundiya@willkie.com)
                                     Joseph T. Baio (jbaio@willkie.com)
                                     Amina Jafri (ajafri@willkie.com)
                                     Fara Sunderji (fsunderji@willkie.com)
                                     787 Seventh Avenue
                                     New York, New York  10019
                                     Phone:  (212) 728-8000
                                     Fax:  (212) 728-8111

                                     *Counsel for Defendants Lime Group LLC; Lime Wire*
                                     *LLC; Mark Gorton; and M.J.G. Lime Wire Family*
                                     *Limited Partnership*