UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE CERTAIN PURPORTED EXPERT TESTIMONY BY ARAM SINNREICH**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus (pro hac vice)
Melinda E. LeMoine
Susan T. Boyd *(pro hac vice)*
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
Attorneys for Plaintiffs

Date: March 10, 2011

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    ARGUMENT .............................................................................................. 2

    A.    Sinnreich is Unqualified to Offer Opinions About Market Economics................. 2

    B.    Sinnreich's Causation Analysis is Unreliable....................................................... 4

    C.    Sinnreich's Irrelevant and Prejudicial Testimony Should be Excluded ............... 8

III.    CONCLUSION....................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adani Exports Ltd. v. AMCI (Export) Corp.*,
No. 2:05-cv-0304, 2008 WL 4925647 at *4 (W.D. Pa. Nov. 14, 2008).....................................6

*Arista Records v. Flea World*,
No. 03-2670 (JBS), 2006 U.S. Dist. LEXIS 14988 at *43 n.14, (D.N.J. Mar. 31, 2006)..........6

*Blue Cross and Blue Shield of N.J. Inc. v. Philip Morris, Inc.*,
No. 98 CV 3287, 2000 WL 1738338, *2 (E.D.N.Y. Nov. 1, 2000) ..........................................4

*Brooks v. Outboard Marine Corp.*,
234 F.3d 89 (2d. Cir. 2000).........................................................................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).......................................................................................................... passim

*Eclipse Electronics v. Chubb Corp.*,
176 F. Supp. 2d 406 (E.D. Pa. 2001) ..........................................................................................6

*Haimdas v. Haimdas*,
No. 09-CV-02034 (ENV) (MDG), 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010).............2

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
No. 4:08-cv-03181, 2010 WL 4065465, *13 (S.D. Tex. Oct. 9, 2010) ..................................4, 5

*Khumo Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)....................................................................................................................2, 8

*Malletier v. Dooney & Bourke, Inc.*
525 F. Supp. 2d 588 (S.D.N.Y. 2007).........................................................................................2

*Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
No. 1358 (SAS), 2008 WL 1971538, *5-6 (S.D.N.Y. May 7, 2008) .........................................3

*Stagl v. Delta Air Lines, Inc.*,
117 F.3d 76 (2d Cir. 1997)...........................................................................................................2

*Tuf Racing Prods, Inc. v. Am. Suzuki Motor Corp.*,
223 F.3d 585 (7th Cir. 2000) ......................................................................................................3

*United States v. Duncan*,
42 F.3d 97 (2d Cir. 1994) ..........................................................................................................10

*VSI Holdings v. SPX Corp.*,
No. 03-CV-70225-DT, 2005 U.S. Dist. LEXIS 45979, *46, *48 (E.D. Mich. April 12, 2005). 6

*Zaremba v. Gen. Motors Corp.*,
360 F.3d 355 (2d. Cir. 2004).......................................................................................................1

I.      **INTRODUCTION**

Defendants have not met their burden to show, with evidence, that Aram's Sinnreich's proposed testimony is admissible.  *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358 (2d. Cir. 2004).  In their Opposition, Defendants make inaccurate and misleading comparisons to Plaintiffs' arguments in opposition to meritless *Daubert* challenges, attack the testimony of Plaintiffs' expert economist (whom Defendants chose *not* to challenge), and cite out of context testimony and excerpts of documents from Plaintiffs that they claim bolster Sinnreich's conclusions.[1]  But Plaintiffs and their experts are not the subject of this motion.  Defendants cannot cure Sinnreich's defective armchair musings by pointing the finger at Plaintiffs. Sinnreich is unqualified and offers unreliable, inflammatory testimony designed to subvert–not assist–the role of the jury.

*First*, despite the pages of ink Defendants spill touting Sinnreich's credentials in the music industry, the fact remains that Sinnreich has *no* expertise in economics and is unqualified to offer testimony about the economic effects of file sharing and the market forces that drove down Plaintiffs' sales and revenues.  No case Defendants cite permits expert testimony on economics by someone who is not qualified in that field.

*Second*, Sinnreich's testimony is unreliable not because Plaintiffs' expert disagrees with him, but because Sinnreich's analysis fails to meet the criteria, identified in the case law, necessary to make causation testimony reliable.  Specifically, Sinnreich does not control for the key variable of interest (file sharing); fails to test his theories against the facts; lacks empirical support for his assertions; and fails to apply the level of "intellectual rigor" expected of an academic.  *Khumo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

*Finally*, the Court should enforce Rule 403 consistently with the Supreme Court's

---

[1] *See* Opp. at 1, 4 n.10, 6 n.12, 8-9, 9 n. 15, 13-14, 17-18, 18 n.20, 20.

directive to "exercise[] more control" over prejudicial and irrelevant or marginally relevant expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993).  Defendants do not dispute that Sinnreich's proposed testimony about alternative revenue sources, artist statements, artist/label relations, and the likely effect of a damages award is highly inflammatory and prejudicial.  Nor do they attempt to show, because they cannot, that any arguable relevance to this testimony substantially outweighs its prejudicial effect.  Sinnreich should be precluded from distracting and prejudicing the jury with this testimony.

## II.   UNDERLINE_ARGUMENT

### A.   Sinnreich is Unqualified to Offer Opinions About Market Economics

Sinnreich posits that file sharing has had a "net positive" effect on the music industry, and offers various explanations for what has driven the market for legal music into decline. (Dep. at 88:7-16; Report at 12-21, 49-59). [2]  But Sinnreich has no expertise in market economics, a fact Defendants do not dispute.  An expert must be qualified to testify "on *the specific matter that he has been designated to address.*" *Haimdas v. Haimdas*, No. 09-CV-02034 (ENV) (MDG), 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010) (citing *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 80 (2d Cir. 1997) (emphasis added).  Sinnreich's general knowledge about the music industry does not qualify him to testify on any and all issues.  *Malletier v. Dooney & Bourke, Inc.* 525 F. Supp. 2d 588, 642  (S.D.N.Y. 2007) ("An expert qualified in one subject matter does not thereby become an expert for all purposes.").  Sinnreich is *not* an economist, and where his opinions wade into economics, they must be excluded.  *Id.* ("Testimony on subject matters unrelated to the witness's area of expertise is prohibited…").

Defendants claim that Sinnreich may testify about "economic theory as applied to the

---

[2] Unless otherwise noted, all citations to Sinnreich's deposition testimony may be found in the transcript excerpts attached as Exhibit 3 to the Declaration of Melinda LeMoine In Support of Plaintiffs' Motion (Doc. # 580-3). Sinnreich's Report is attached as Exhibit 1 to the same Declaration.  (Doc # 580-1).

music industry," citing his discussion of a "methodology known as network analysis." (Opp. at 14). "Network analysis" seeks to understand and quantify "the structure of relationships between organizations or individuals." (Oller Decl., Ex. 3 (Doc. # 613-3) (Dep. at 21:14-22:15)). That is not economics. It is also irrelevant, because Sinnreich did not apply that methodology here. The other tidbits of deposition testimony Defendants reference do not convert Sinnreich into an economics expert. (Opp. at 14). The fact remains that Sinnreich has never taken a single economics course, could not discuss relevant economic concepts like elasticity and bundling, and admitted himself that he is not qualified as an economist. (*See* Mot. at 6-7).

Defendants protest that Sinnreich's testimony is admissible because "the case law is clear that one need not be an economist to testify as to damages." (Opp. at 15). But none of the cases Defendants cite involved testimony from a non-economist who purported to offer an economic analysis of how various factors impacted a particular market, as Sinnreich does here. In *Tuf Racing Prods, Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000), the court found that a certified public accountant was qualified to take "financial information furnished by Tuf and assumptions given him by counsel of the effect of the termination on Tuf's sales," and "calculat[e] the discounted present value of the lost future earnings that Tuf would have had had it not been terminated." *Id.* Because the accountant "was doing accounting," he did not need a degree in economics to qualify under Rule 702. *Id.* Similarly, the court in *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 1358 (SAS), 2008 WL 1971538, *5-6 (S.D.N.Y. May 7, 2008) found that the expert did not need an "advanced economics degree" because the "main issue" the expert addressed in his opinion "*is not economic* but logistical." (emphasis added). [3]

---

[3] None of Defendants' other cases involve the kind of core economic analysis Sinnreich attempts to perform. *See Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 WL 4065465, *13 (S.D. Tex. Oct. 9, 2010) (president and CEO in charge of 61 convenience stores permitted to testify about the "factors for success of a convenience store" based on "practical experience in the industry" ); *Blue Cross and Blue Shield of N.J. Inc. v.*

Unlike the experts in the cases Defendants cite, Sinnreich *is* doing economics–or at least purporting to.  Sinnreich is not simply providing information about the industry.  Rather, he opines that file sharing has had a "net positive" effect on the industry, and purports to offer various explanations for what has driven the market into decline.  This is a classic economic analysis, and Sinnreich lacks the qualifications to provide it.

### B.  <u>Sinnreich's Causation Analysis is Unreliable</u>

Sinnreich's causation analysis fails to use adequate controls, is untested, and lacks foundation and rigor.  Defendants have not met their burden of showing reliability and attempt to distract from this fact by launching into irrelevant attacks on Plaintiffs and their experts.

***<u>Defendants focus on irrelevant issues.</u>***  Although Defendants acknowledge that the Court must focus "*solely* on [the expert's] principles and methodology, not on the conclusions they generate," *Daubert*, 509 U.S. at 595 (emphasis added), they insist on making arguments that do not belong in a *Daubert* analysis.  Defendants claim that Sinnreich's opinions are "reliable" because his conclusions are consistent with statements Defendants attribute to Plaintiffs.  (Opp. 8-9, 17-18).  They also argue that Sinnreich's testimony should be admitted because Plaintiffs countered it with their own expert testimony.[4]  (Opp. at 12, 17-18).  The proper focus, however, is on *Sinnreich's* "principles and methodology," the reliability of which Defendants have failed to establish.

In the same vein, Defendants claim that it is "ironic" for Plaintiffs to challenge Sinnreich

---

*Philip Morris, Inc.*, No. 98 CV 3287, 2000 WL 1738338, *2 (E.D.N.Y. Nov. 1, 2000) (medical doctor could testify about the "portion of medical costs due to smoking related illnesses resulting from defendants' alleged fraud").
[4] Defendants find Plaintiff's expert economist Stan Liebowitz's analysis "astonishing"  (Opp. at 18) because he did not specifically address *LimeWire*'s effect on Plaintiffs' revenues, but Sinnreich himself didn't "have any data specifically demonstrating LimeWire's market effects.  I only have information about file sharing more broadly." (Dep. at 89:21-24).  Liebowitz has extensively studied, and discusses in his report, the effect of file sharing on music sales and revenues, so Defendants' claim that he has not "specifically isolat[ed] the impact of file sharing" is flatly wrong. (Opp. at 18).  So is their claim that Liebowitz admits no factor other than file sharing is responsible for Plaintiffs' losses, as a quick glance at Table 2 of his report confirms.  (Doc # 580-2 (Liebowitz Report at 21).

after successfully defeating meritless *Daubert* challenges brought in this and other cases.  (Opp. at 12-13).  But the admissibility of Plaintiffs' experts in prior litigation is not a statement about the reliability of Sinnreich's opinions.  Unlike Sinnreich, none of Plaintiffs' experts attempted to testify outside their area of expertise, failed to control for key variables, failed to test their theories against the facts, researched only those things that supported their predetermined conclusion, or relied on superseded findings in unpublished studies.  The fact that Plaintiffs' experts relied on their extensive experience in the relevant field to offer well-founded conclusions does not somehow transform Sinnreich's unreliable testimony into reliable testimony that will assist the jury rather than subvert its role.

   ***Sinnreich's analysis is unreliable.***  Defendants argue that Sinnreich's failure to quantify the impact of each supposed alternative cause of the decline does not render his testimony unreliable.  (Opp. at 16-18).  This argument misses the mark.  Not only did Sinnreich fail to quantify anything, he failed to control for file sharing as the obvious cause of the decline or test his theories of causation against the facts.  These oversights render his testimony inadmissible. *R.F.M.A.S., Inc. v. Mimi SO*, No. 06 Civ. 13114 (VM)(MHD), 2010 WL 4341331, at *23 (S.D.N.Y. Oct. 12 2010) (causation testimony is unreliable when an expert fails to control for "other equally plausible causes of that effect"); *Brooks v. Outboard Marine Corp.*, 234 F.3d 89 (2d. Cir. 2000) (an expert's "failure to test a theory of causation can justify" exclusion of his testimony).[5]

---

[5] The cases Defendants cite for the proposition that a damages expert need not quantify his opinions are distinguishable. *Interplan* involved expert testimony that was merely descriptive, which identified the kinds of factors that make convenience stores successful but without attempting to attribute success to any particular factor (alone or in combination).  Similarly, in *VSI Holdings v. SPX Corp.*, No. 03-CV-70225-DT, 2005 U.S. Dist. LEXIS 45979, *46, *48 (E.D. Mich. April 12, 2005), the testimony was offered "to demonstrate that VSI did not cut its costs or profit in a manner consistent with VSI's past practice" so the fact that the expert could not "quantify the amount of loss or profit as a result of VSI's downturn" went to weight, not admissibility. And *In re Linerboard Antitrust Litig.*, 497 F. Supp. 2d 666, 683 (E.D. Pa. 1997) found that the expert appropriately analyzed the defendants' alleged collusive behavior "taken together" because in an antitrust case, "it would be extremely difficult, if not impossible,

That Sinnreich conducted two consumer surveys in 2000 and 2002 respectively finding that some Napster users continued to buy music does not mean he controlled for the effect of file sharing.  (Opp. at 17; Report at 27-28).  Sinnreich did nothing to examine whether the alternative causes he identified, alone or in combination, quantified or not, were correlated with music sales prior to the emergence of file sharing, or are capable of explaining all of the relevant facets of the massive, sustained, international decline in music industry sales and revenues.

Defendants' attempt to defend Sinnreich's analytically dishonest and one-sided approach also fails.  Although Sinnreich is "willing to accept" the existence of studies that contradict his opinion, the fact remains that he admittedly did not review or summarize them *because he wanted to consider only evidence that supported his favored conclusion*.  Such an unabashed admission (as well as the other defects in Sinnreich's testimony) is absent from the case law cited by Defendants in which courts have refused to exclude expert testimony "*simply because additional contradictory evidence exists.*"  *Adani Exports Ltd. v. AMCI (Export) Corp.*, No. 2:05-cv-0304, 2008 WL 4925647 at *4 (W.D. Pa. Nov. 14, 2008) (emphasis added) (Opp. at 20).  Moreover, Sinnreich's uncritical summary of the studies he cites is distinguishable from the expert analysis in *Arista Records v. Flea World*, No. 03-2670 (JBS), 2006 U.S. Dist. LEXIS 14988 at *43 n.14, (D.N.J. Mar. 31, 2006) where the expert had "legitimate practical reasons" for why an independent survey "would not yield the best results," and in *Eclipse Electronics v. Chubb Corp.*, 176 F. Supp. 2d 406, 409-410 (E.D. Pa. 2001), where the expert applied an industry standard methodology to predict the effect a particular environment would have on equipment.  The only "practical reason" Sinnreich offered for his shoddy analysis and rote recitation of various studies was that he had "limited time." (Dep. at 101:7-16).

---

to segregate and attribute a fixed amount of damages to any one act as the theory was not that any one act in itself was unlawful, but that all the acts taken together showed an antitrust violation." Notably, the expert *did* attempt to quantify the extent to which the wrongful acts together caused economic harm.  *Id.* at 670-71.

And these are not the only problems with Sinnreich's analysis.  Reliance on an unpublished study does not require the exclusion of expert testimony *per se*, but here, Sinnreich relied on findings in unpublished studies *that the authors deleted from the published versions and replaced with findings that undermine Sinnreich's conclusion that file sharing has a net positive effect.*  None of the cases cited by Defendants involve similar facts.  (Opp. at 20).

Additionally, though Defendants try to argue otherwise (Opp. at 21-22), Sinnreich lacked sufficient facts or data for many of his assertions.  Sinnreich's Report makes clear that he claims various factors played a "significant" or "substantial" role (*see eg.,* Report at p. 15 discussing a "wave" of bootlegged CDs entering the retail market; *id.* at p. 19, describing the end of MAP pricing as a "significant contributory factor"; *id.* at p. 21, discussing a "significant volume" of sales from used CDs and independents).  But his Report and deposition testimony reveal he had no factual basis for assessing the scope and magnitude of these factors during the relevant time period.  (*See, eg.,* Report at p. 22 (acknowledging he relies on only "pinpoints" of data); Oller Decl. Ex. 3 (Doc. # 613-3) (Dep. at 186:12-18 (testifying that data undercounts independent sales but he does not know by how much)); *Id.* (Dep. at 179:10-180:9 (testifying that there are "probably hundreds of millions" of used CDs sold based on the fact that such sales account for 10-20% of overall CD revenues by retailers interviewed by Ed Christman, but acknowledging he did not know which retailers Christman interviewed, how many retailers he interviewed, or how many recordings total each retailer sold)); Dep. at 228:9-18 (testifying he did not know what percent of total record label revenues are attributable to the concert ticket sales).

As the Supreme Court has emphasized, the "objective" of *Daubert's* "gatekeeping requirement" "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

characterizes the practice of an expert in the relevant field." *Khumo*, 526 at 152.  Sinnreich's

analysis does not meet this standard.

### C.       Sinnreich's Irrelevant and Prejudicial Testimony Should be Excluded

The Supreme Court has cautioned that courts must take special care in scrutinizing expert

testimony under Rule 403, and must "exercise[] more control" over such testimony because

"[e]xpert evidence can be both powerful and quite misleading…." *Daubert*, 509 U.S at 595.  It

is not enough to incant that an issue "goes to the weight, not admissibility." (Opp. at 23).  Rule

403 requires the probative value of the evidence to *substantially outweigh* the danger of unfair

prejudice, confusion of the issues or misleading the jury.  That standard is not met here.

#### *Testimony about sources of revenue unrelated to file sharing should be excluded.*

Defendants do not dispute that that it would prejudice Plaintiffs to introduce evidence of revenue

streams that Sinnreich admits "don't have a whole lot to do with peer-to-peer." (Dep. at 234:2-7).

Instead, they claim that the evidence should be admitted because "Plaintiffs are free to argue that

these offsetting benefits are insignificant to them." (Opp. at 23).  That argument ignores the Rule

403 standard.  Defendants make no effort to show, because they cannot, that any relevance of

this testimony "substantially outweighs" its prejudice.  Indeed, Defendants' and Sinnreich's

tortured attempts to explain why the testimony is relevant underscore that presenting it to the

jury would be confusing and waste time.  (*See* Dep. at 234:18-235:4 (attempting to explain that

file sharing "provide[s] a more accurate impression of … market demand," which allows

licensors to "make better decisions"); Opp. at 23 (attempting to explain that file sharing spurs

these revenue streams because "bands"–not Plaintiffs–"are more successful" because of interest

generated by peer-to-peer and "are more likely to get licensing deals in these channels.")).

#### *Testimony that file sharing is "good" and Plaintiffs are "bad" should be excluded–*

*now.*  Defendants argue that it is "too early for a blanket exclusion ruling" that would prohibit

Sinnreich from testifying that Plaintiffs "have been consistently criticized for unfair or unethical business relations" with their artists, or that "dozens of high profile artists and their representatives" support file sharing for reasons having *nothing* to do with its economic effects. (Opp. at 24; Report at 36, 48).  The prejudice and irrelevance of this testimony is clear now, and there is no need to defer decision on this issue until trial.

Defendants assert that they should be able to counter testimony by artists or others called by Plaintiffs to discuss how they were harmed by file sharing.  But if an artist were to testify that she makes far less money because of file sharing, that would not somehow make Neil Young's view that "[t]he laws don't matter" (Report at 40) relevant to whether file sharing harms or helps artists and labels, anymore than it would make relevant Trent Reznor's rant to "steal away" because the labels are "ripping people off," (Report at 39), or the many other inflammatory statements quoted in Sinnreich's report.  (Mot. at 15-16).  Nor would it somehow give relevance to Sinnreich's testimony about Plaintiffs' allegedly "unfair or unethical business relations" with artists.  (Report at 48).  The testimony should be excluded under Rule 403 in advance of trial.

***Testimony about deterrence should be excluded.***  Defendants do not, and cannot, dispute that it would be irrelevant and improper for Sinnreich to testify that there are more effective ways to solve Plaintiffs' problems than awarding damages.  Indeed, Defendants state that they "do not intend to call Professor Sinnreich affirmatively to opine that Plaintiffs would be better off not suing Lime Wire or that a large award is against Plaintiffs' interests." (Opp. at 24).  Because Defendants do not contest the grounds Plaintiffs identified in their Motion, the Court should grant this aspect of Plaintiffs' motion and hold Defendants to their promise at trial.

At the same time, however, Defendants assert that they should be able to call Sinnreich "to supply the jury with a foundation for the relevant question of whether, regardless of any

award in this case, millions of people will continue to access music freely online."  (Opp. at 24-25).  But that is nothing more than an end-run for Sinnreich to testify that an award will have no deterrent effect.  That testimony is improper because Sinnreich cannot "undertake[] to tell the jury what result to reach."  *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

If, instead, Defendants propose to have Sinnreich explain the different ways in which people can access illegal music, so that counsel can argue an award will be futile to stop illegal conduct, that presents a different but equally fatal problem for Defendants.  As discussed in Plaintiffs' motion *in limine* regarding "other illegal services" (Doc. # 500), such testimony and argument is inconsistent with the deterrent purpose of the Copyright Act and Congress's intent.[6]

## III.   CONCLUSION

For these reasons, and those stated in Plaintiffs' Motion, the testimony of Aram Sinnreich should be excluded.

Dated:  March 10, 2011                            Respectfully submitted

                                                  */s/ Melinda E. LeMoine*
                                                  Melinda E. LeMoine

                                                  Attorney for Plaintiffs
                                                  Munger, Tolles & Olson LLP
                                                  355 South Grand Avenue, 35th Floor
                                                  Los Angeles, CA 90071-1560
                                                  (213) 683-9100
                                                  (213) 687-3702 (Fax)

---

[6] Defendants' attempt to distinguish the patent cases cited in Plaintiffs' reply to the "other illegal services" motion (Doc # 604) fails.  Defendants claim these cases are distinguishable because LimeWire and the labels "are not competitors in the same market." (Opp. at 7 n.13).  Of course they are.  LimeWire was offering downloads of Plaintiffs' music to consumers and so were Plaintiffs through legitimate services like iTunes. The only difference is that with LimeWire those downloads were free, but with legal retailers Plaintiffs generated revenue.  Competing against free is still competition, even if it is impossible to win.  The patent cases are not *distinguishable* on the ground that they evaluated "how many sales of the product to willing buyers were diverted from the patentee to the infringer;" that is *why* they are relevant.  (*Id.*) Defendants do not get to escape damages just because rampant illegal copying is a "fact of life." (*Id.*)  For precisely this reason, patent law requires that any "but for" world must be constructed to show "likely outcomes *with infringement factored out* of the economic picture."  *See, e.g.*, *Grain Processing Corp. v. Am. Maize-Prods.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) (emphasis added).