REDACTED VERSION
-COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.,

                                  Plaintiffs,

       v.

LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,

                                  Defendants.

06 Civ. 05936 (KMW)
ECF CASE

---

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE CERTAIN PURPORTED EXPERT TESTIMONY BY GEORGE STRONG**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Susan T. Boyd *(pro hac vice)*
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
Attorneys for Plaintiffs

Date: March 10, 2011

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. Strong Is Unqualified to Critique Waterman ........ 2
B. Strong Is Unqualified to Testify about the Music Industry or Technology ........ 4
C. Strong’s Testimony is Unreliable ........ 5
D. Strong’s “Expenses Saved” Analysis is Contrary to Law and Reason ........ 9
III. CONCLUSION ........ 10

## TABLE OF AUTHORITIES

Page

**Federal Cases**

*Alpex Computer Corp. v. Nintendo Co.*,
  No. 86 Civ. 1749 (KMW), 1994 WL 139423 at *9 (S.D.N.Y. Mar. 18, 1994) ....................... 10

*Amigo Broad. v. Spanish Broad. Co.*,
  No. A05-CA-193-LY, 2006 WL 5503872 at *3 (W.D. Tex. Apr. 21, 2006) ............................ 4

*BF Goodrich v. Betkoski*,
  99 F.3d 505 (2d Cir. 1996) .................................................................................................... 8

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) ..................................................................................................... 10

*Brooks v. Outboard Marine Corp.*,
  234 F.3d 89 (2d Cir. 2000) .................................................................................................... 7

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) .............................................................................................................. 6

*Eclipse Electronics v. Chubb Corp.*,
  176 F. Supp. 2d 406 (E.D. Pa. 2001) .................................................................................... 8

*Haimdas v. Haimdas*,
  No. 09-CV-02034 (ENV (MDG), 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010) ............. 2

*Integra Lifesciences I, Ltd. v. Merck KgaA*,
  331 F.3d 860 (Fed. Cir. 2003) ............................................................................................... 9

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*,
  No. 04 Civ. 7369 (LTS), 2006 WL 2128785 (S.D.N.Y. July 28, 2006) .................................. 5

*King v. Enter. Rent-A-Car Co.*,
  231 F.R.D. 255 (E.D. Mich. 2004) ........................................................................................ 3

*Loussier v. Universal Music Group, Inc.*,
  No. 02 Civ. 2447 (KMW), 2005 WL 5644422, at *3-4 (S.D.N.Y. June 28, 2005) .................. 4

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007) ................................................................................ 2, 4

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns*,
  311 F. Supp. 2d 1048 (D. Colo. 2004) .................................................................................. 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Patel v. Verde Valley Medical Ctr.*,
  Nos. CV-05-1129-PHX-MHM, CV-05-2926-PHX-MHM,
  2009 WL 5842048 *3 (D. Ariz. Mar. 31, 2009) ........................................................................ 5

*R.F.M.A.S., Inc. v. Mimi So*,
  2010 WL 4341331, at *23 (S.D.N.Y. 2010) ............................................................................ 6

*Regal Cinemas, Inc. v. W&M Properties*,
  Nos. 02-3450, 02-3514, 2004 WL 187528 (6th Cir. Jan. 27, 2004) ......................................... 4

*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
  878 F.2d 791 (4th Cir. 1989) ................................................................................................... 1

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
  750 F.2d 1552 (Fed. Cir. 1984) ............................................................................................... 9

*United States v. Damrah*,
  412 F.3d 618 (6th Cir. 2005) ................................................................................................... 8

I.     **INTRODUCTION**

Defendants essentially argue that George Strong should be permitted to offer opinions on anything Defendants want him to say because Strong is a professional expert whose staff collected volumes of material. That extreme argument flouts *Daubert* and Rule 702, which require reliable analysis from someone with expertise on the subjects of his testimony. "[I]t would be absurd to conclude that one can become an expert simply by accumulating experience in testifying," but that is what Defendants ask this Court to do. *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Defendants' arguments depend on ignoring inconvenient admissions made by Strong during his deposition, mischaracterizing Strong's report, and repeating the mantra that Plaintiffs' complaints go to "weight, not admissibility." The evidence, however, demonstrates Strong's testimony should be excluded.

*First*, Defendants fail to show how Strong's complete lack of technology experience, and his admittedly limited knowledge of statistics and surveys, make him qualified to critique Waterman's statistical analysis or the underlying survey evidence on which it relies.

*Second*, Defendants do not dispute that Strong has no music industry expertise, but claim that his testimony comes in for "context." Strong's proffered treatise on the music industry is far more than "context," and courts have rejected similar pretexts to offer unqualified testimony.

*Third,* Defendants fail to come to grips with authorities holding that to be reliable, causation analyses should be controlled and tested, and premised on the expert's application of his own expertise. Strong's testimony does not meet these requirements.

*Finally*, Defendants do not and cannot explain how Strong's absurd "expenses saved" analysis comports with the law, which does not authorize capping royalties at actual profits. His unreasonable and legally flawed testimony should be excluded.

II.     **ARGUMENT**

    A.    **Strong Is Unqualified to Critique Waterman**

An expert must be qualified to testify "on *the specific matter* that he has been designated to address." *Haimdas v. Haimdas*, No. 09-CV-02034 (ENV (MDG), 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010) (emphasis added). Defendants cannot meet their burden under Rule 702 simply by reciting Strong's past experience, without explaining *how* that experience relates to the "specific matter[s]" discussed in his report. Establishing this link is especially important because Strong admitted–and Defendants do not dispute–that his "expertise" in both statistics and surveys was limited and *did not extend to technical aspects* of either survey design or statistical methodologies. (Mot. at 3-4).

    ***Strong lacks necessary expertise on surveys.*** As Plaintiffs have shown, Strong's critique of Waterman strays outside the limited scope of his experience with surveys and into the very technical areas he admitted he was unqualified to address. (Mot. at 8-9). Defendants make *no* attempt to address these arguments, because they cannot. Strong's experience in "look[ing] at whether survey methodologies … comport with reality … [and use] assumptions [that] are reasonable" (Opp. at 8) does not make him qualified to address whether selection bias or other aspects of the survey design tainted the reliability of the NPD study. (Mot. at 8).

    ***Strong lacks necessary expertise in statistics.*** Similarly, Defendants fail to show that Strong's past experience with statistics qualifies him to criticize the *specific* statistical techniques addressed in his report. Courts have repeatedly rejected the argument that an expert's past use of statistics automatically qualifies him to opine on statistics for all purposes. *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007) (excluding proposed statistics testimony despite expert's "familiarity with statistics/probability for 40 years in connection with

his studies and work;" although the expert "may have used statistics in his work (as most people do to one extent or another) this does not mean that he is sufficiently qualified to testify to the statistical significance of a common choice of colors."); *King v. Enter. Rent-A-Car Co.,* 231 F.R.D. 255, 266-67 (E.D. Mich. 2004) (excluding witness with no background in employment statistics despite witness's "background in other areas of statistics").

Defendants cite Strong's testimony that he has employed damages analyses "not unlike what Dr. Waterman did with his smooth spline technique," (Opp. at 8) but the fact remains that (1) Strong has never heard about or used a smoothing spline before (Dep. at 17:11-16)[1]; and (2) he nonetheless attempts to critique how the technique was applied and the validity of its results. Defendants fail to carry their burden of explaining how Strong's use of analyses "not unlike" a smoothing spline qualifies him address Waterman's use of that technique. Defendants similarly fail to explain how Strong's experience with *applied* statistics qualifies him to criticize *technical aspects* of NPD's study, such as the weighting technique that NPD used to extrapolate its results. In fact, Strong conceded that he was not qualified to offer opinions on such technical matters.

**<u>Strong lacks necessary technological expertise.</u>**  Defendants argue that although Strong is not a technology expert, he is still "qualified to testify, from an economic perspective, that music downloaded from LimeWire and other p2p sites is not a perfect substitute for legally purchased music because of 'spoofs' and other technological impediments." (Opp. at 8-9). That opinion has *nothing* to do with Strong's critique of Waterman. Strong suggests Waterman's analysis is unreliable because he did not confirm "that the downloaded files were actually copies of the songs at issue." (Report at ¶ 28). Strong has no expertise that qualifies him to make this claim, and Defendants do not contend otherwise.

---

[1] Unless otherwise noted, all citations to Strong's deposition testimony may be found in the transcript excerpts attached as Exhibit 1 to the Sealed Declaration of Melinda LeMoine In Support of Plaintiffs' Motion (Doc. # 577-1). Strong's Report is attached as Exhibit 2 to the same Declaration. (Doc # 577-2).

### B. Strong Is Unqualified to Testify about the Music Industry or Technology

Defendants concede that Strong is not an expert in the music industry or technology. Instead, they argue that Strong should be given free reign to testify about these subjects because damages experts do not need to have specific industry experience and Strong's discussion "provide[s] the necessary context" for his conclusions (Opp. at 9-10). But Strong does not merely "provide context" for his opinions. He proposes to offer dozens of pages of testimony about the music industry and technology that include little independent analysis of his own and mostly "summariz[e] what I have read and what others have said." (Dep. at 151:1-11).[2]

In *Malletier*, the court rejected a similar attempt to shoehorn into the case "by way of background" testimony that an expert was unqualified to offer. *Malletier*, 525 F. Supp. at 653. "[A] fair reading of the report" in that case indicated that the expert went "far beyond what would be necessary to place [his] conclusions as to profits, sales, etc. in context." *Id.* The court noted that 5 pages from the expert's 12-page report discussed subjects outside his expertise. *Id.*

Here, Strong devotes *well over 20 pages* of his 69-page report to discussing the history of the music industry and recent trends and developments in the industry without any independent analysis of his own. (*See e.g,* Report at 7-12, 38-52, and 54-59). His testimony about the industry goes far beyond background–in fact, it substantially duplicates that of Defendants' music industry expert Aram Sinnreich. Tellingly, Defendants do not address, and cannot distinguish, *Loussier v. Universal Music Group, Inc.*, No. 02 Civ. 2447 (KMW), 2005 WL 5644422, at *3-4 (S.D.N.Y. June 28, 2005). In *Loussier,* this Court excluded the very same kind of causation testimony that Strong tries to offer on the ground that the expert lacked knowledge

---

[2] Strong's testimony is therefore distinguishable from the testimony allowed in *Regal Cinemas, Inc. v. W&M Properties*, Nos. 02-3450, 02-3514, 2004 WL 187528 (6th Cir. Jan. 27, 2004), and *Amigo Broad. v. Spanish Broad. Co.*, No. A05-CA-193-LY, 2006 WL 5503872 at *3 (W.D. Tex. Apr. 21, 2006) where the damages experts were testifying about damages issues, not providing lengthy testimony about the industry.

of "sufficient pertinent facts relating to the sale of music" and another more "specifically qualified" expert existed. (Mot. at 11).[3]

### C. Strong's Testimony is Unreliable

In attempting to establish reliability under *Daubert*, Defendants mischaracterize Strong's deposition testimony and report, and ignore authorities holding that reliable causation analysis controls for relevant variables and tests the causation theory. They also ignore Rule 702's requirement that an expert must employ his *own* specialized knowledge in offering opinions.

***Strong failed to control for file sharing***. Defendants do not dispute that Strong failed to control for file sharing. Instead, Defendants appear to argue that Strong did not need to do so because he considered the combined effect of a number of factors, and not how they operated in isolation. (Opp. at 12-13). Defendants cite no case for the illogical proposition that choosing to analyze factors as a group rather than in isolation excuses the need for a control. In fact, the cases Defendants cite support Plaintiffs. In *Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, No. 04 Civ. 7369 (LTS), 2006 WL 2128785 (S.D.N.Y. July 28, 2006) the court rejected an argument that the expert "ma[de] no effort to account for major variables" differentiating two companies, but did so on the ground that the expert "*account[ed] for these variables in his analysis sufficiently*." *Id.* at *7 (emphasis added). Here, Strong failed to account for file sharing *at all*. *Patel v. Verde Valley Medical Ctr.*, Nos. CV-05-1129-PHX-MHM, CV-05-2926-PHX-MHM, 2009 WL 5842048 *3 (D. Ariz. Mar. 31, 2009), noted that an expert need not "consider every possible contingent or alternative explanation in the universe for their findings," but it does *not* hold that an expert is free to disregard or control for the *central factor* at issue in the case.

---

[3] Defendants suggestion that Plaintiffs' expert Stanley Liebowitz has just as little familiarity with the music industry and technology as Strong is disingenuous. (Opp. at 10 n.4). Liebowitz is a professor of economics who has focused much of his academic work on the effects of file sharing on the music industry, and has published numerous studies on that subject. Defendants' claim that Plaintiffs' ignored Strong's testimony in other music industry cases is also wrong. (*Id.* at 10). Plaintiffs addressed that prior testimony (Mot. at 9).

Strong's failure to control for "other equally plausible causes" renders his causation testimony unreliable. *R.F.M.A.S., Inc. v. Mimi So*, 2010 WL 4341331, at *23 (S.D.N.Y. 2010).

Defendants try to avoid this glaring defect by arguing that "[t]his is a classic battle of the experts that should be resolved by the jury." (Opp. at 14).  But Defendants cannot avoid this Court's scrutiny as "gatekeeper" under *Daubert* just because Plaintiffs have an expert who will rebut Strong's conclusions.[4]  Strong's unreliable analysis should be excluded.

***Strong ignored critical facts and failed to test his theories.***  Defendants' argument that Strong accounted for relevant facts also fails.  *First,* Defendants argue that Plaintiffs are "wrong" to state that Strong failed to consider LimeWire's market share. (Opp. at 14).  But Strong expressly stated at his deposition that "I haven't seen any market share analysis" for LimeWire, and explained that Exhibit 1 to his Report–which Defendants claim shows he considered market share–"isn't really market share." (Dep. at 173:25-174:25).

*Second,* Defendants concede that Strong did not know the extent of Plaintiffs' economic harm, but they question why that could possibly be relevant in a damages trial.  (Opp. at 15).  Strong attempts to analyze "revenue and profit lost by the copyright holder," and explain why revenues and profits declined (Report at ¶¶ 4, 38).  To do so he needs to know how big the decline is, how long it lasted, and its geographic scope so he can test whether his causation theories explain it.  Strong did not know this information, and did not test his theories. Defendants argue that Plaintiffs "cherry picked" examples to illustrate Strong's failure to test his theories and in doing so disregarded the fact that Strong's approach was to analyze different factors in combination, not in isolation. (Opp. at 17).  But Strong failed to test his theories *at all*, whether in isolation or layering one over the next, as Defendants attempt to do through belated

---

[4] Similarly, Plaintiffs' own statements are irrelevant to whether Strong's analysis is reliable. (See Opp. at 17). *Daubert* directs courts to look "solely" at the expert's principles and methodology.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993).

lawyer argument in their brief.  Strong's failure to test his causation theory is grounds for its exclusion.  *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir. 2000).[5]

*Third,* Defendants again ignore Strong's testimony by claiming he in fact considered the impact of illegal file sharing on the price of music.  (Opp. at 16).  The deposition testimony Defendants cite does not discuss music prices at all.  (Mundiya Decl. Ex. B (Doc. #619-2 ) (Dep. at 168:12-169:12)).  When Strong was asked directly if he took into account the effect that an illegal market would have on the price for legal product, here is what he said:

> *Only indirectly* in the fact that revenue is a combination of price and a quantity.  And we looked at revenue.  So buried within that is a price of the -- but to your specifically -- *we didn't look at a price impact and filter it out as a result of this activity as opposed to others.…*

(Dep. at 186:8-187:13).  If an illegal market depresses prices, Plaintiffs' revenues from sales they *do* make are lower than they otherwise would be. Strong failed to address this key fact.

**<u>*Strong's testimony is not based on sufficient facts or data.*</u>**  Defendants essentially argue that because Strong footnoted his conclusions, they are supported by sufficient facts or data.  (Opp. at 18-19).  The material in Strong's citations, however, is so generic that it fails to provide empirical support for his suggestion that 360 deals are a bonanza for Plaintiffs, or his speculation that distribution costs are "approaching zero," or his claim that artists are defecting in droves from labels.  (See Report at ¶ 113 (quoting WMG 10-K stating WMG has "expanded its participation" in 360 deals); *id.* ¶ 116 (quoting Sony 20-F stating Sony "is pursuing growing new business revenue streams"); *id.* ¶ 94 (█████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████); *id.* ¶ 100 (quoting a report that file sharing "makes it possible for an artist to circumvent

---

[5] In a footnote, Defendants attempt to distinguish *Brooks*, but they do not deny the validity of the rule it articulates.

a distributor"). At his deposition Strong admitted to having *no* knowledge of how much revenue Plaintiffs make from 360 deals, how many of those deals they have entered into, what the costs of digital distribution are, or the extent to which artists have defected. (Mot. at 16-17).[6]

   ***Strong did not conduct an independent analysis.***  Defendants' bald assertion that Strong "arrive[d] at his *own* conclusions" (Opp. at 19) does not erase Strong's deposition testimony in which he repeatedly disclaimed doing any independent analysis. (Mot. at 19). Defendants refer to just two portions of Strong's report that, they claim, show he "arrived at his *own* conclusions." The first are some introductory paragraphs covering the "scope of work" and "summary of findings," which, as their titles suggest, include no analysis. (Opp. at 19 (citing Report ¶¶ 4-12)). Second, Defendants refer to Strong's assessment that downloads are not close substitutes for CDs. (*Id.* at 20 (citing Report ¶¶ 43-52). Here, however, Strong mostly parrots studies by others. Moreover, Strong's opinions on causation do not stop there, but go on to discuss multiple factors that purportedly contributed to the decline and the supposed benefits of digital distribution (Report ¶¶ 77-126). Defendants do not and cannot cite any portion of Strong's report reflecting an independent analysis of these issues. The fact that Strong (or more accurately, his team of researchers at Cornerstone) collected a "vast amount of information" (Opp. at 20) does not mean he applied his own expertise. A diligent lawyer or librarian could have gathered and presented the same information. Rule 702 requires more.[7]

---

[6] The cases Defendants cite do not assist them because the experts in those cases were not relying on vague generalizations in source materials to make claims about the significance of particular factors. *See BF Goodrich v. Betkoski*, 99 F.3d 505, 524-25 (2d Cir. 1996) (environmental expert reviewed numerous reports related to a landfill site to identify potentially responsible parties); *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns*, 311 F. Supp. 2d 1048, 1120 (D. Colo. 2004) (economic expert relied on "economic data" including industry materials, pricing data, and public recognition of the market to determine the scope of the market).

[7] Defendants' authorities in fact support this conclusion. In *Eclipse Electronics v. Chubb Corp.*, 176 F. Supp. 2d 406, 409-410 (E.D. Pa. 2001), the expert did not rotely summarize studies but applied an industry standard methodology. In *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005) the government's terrorism expert did not merely present hearsay evidence and applied a "gold standard" methodology.

### D. Strong's "Expenses Saved" Analysis is Contrary to Law and Reason

Strong plans to testify that Defendants never would have paid more than $6 million for the privilege of inducing billions of downloads, each of which could be redistributed unlimited numbers of times all over the world. As Plaintiffs have shown, Strong's "expenses saved" analysis is not only absurd on its face, it is flawed *as a matter of law*, because neither patent nor copyright law caps a reasonable royalty at the profits actually made by the infringer. (Mot. at 20-21). Defendants fail to respond to this argument with *any* authority–because there is none– establishing that it is appropriate to use actual profits as an upper bound. Nor do they offer *any* justification for Strong's novel use of the "book of wisdom," which, as Plaintiffs demonstrated, is also inconsistent with the law. The only case Defendants cite to support Strong's exclusive focus on actual profits,[8] *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984), notes simply that "[e]vidence of the infringer's actual profits generally is admissible as probative of his anticipated profits." The case does not authorize the use of actual profits *to cap* the reasonable royalty that would have resulted from a hypothetical negotiation.

Defendants also fail to establish that it was appropriate for Strong to use a hypothetical negotiation in the first place. Defendants' claim that "[r]eference to actual licenses or negotiations is rarely utilized by experts in the field" (Opp. at 22) is unsupported. Strong said no such thing in his deposition, and neither do the cases Defendants cite. *Integra Lifesciences I, Ltd. v. Merck KgaA,* 331 F.3d 860, 871 (Fed. Cir. 2003), in fact, suggests it *is* appropriate to compare another license that is "somewhat contemporary and involves similar technology." *Id.* The law is clear that the hypothetical negotiation is a last–not a first–resort, and neither Strong

---

[8] Defendants claim that Strong addressed factors other than actual profits because they were "subsume[d]" within "*Georgia Pacific* Factor 15," (Opp. at 22-23) but when pressed at his deposition whether he considered things like the scope and nature of the license (which are among the other *Georgia Pacific* factors) Strong conceded he did not. (Dep. at 310:6-18; 319:10-25).

nor Defendants offer any justification for ignoring real-world analogues like iTunes and other services that pay royalties to Plaintiffs.[9] (Mot. at 22).

Finally, Defendants' attempt to defend the reasonableness of Strong's "expenses saved" analysis underscores Strong's unrealistic and self-serving assumptions. Defendants argue that Strong did not need to consider the impact of a license on Plaintiffs' overall business, or the myriad other factors that would have been important to Plaintiffs, because he had already decided to cap the royalty based on actual profits and therefore "didn't really need to" consider these facts. (Opp. at 24). This "reasoning" is completely circular. Strong's indefensible assumption that Plaintiffs would have agreed to a license capped at the profits LimeWire actually made, no matter how small, is a proper basis for excluding his testimony. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (testimony "based on assumptions that are so unrealistic and contradictory as to suggest bad faith" may be excluded) (citation omitted).

## III.     CONCLUSION

For these reasons and those discussed in Plaintiffs' Opening Brief, the testimony of George Strong should be excluded.

Dated:  March 10, 2011

Respectfully submitted

*/s/ Melinda E. LeMoine*
Melinda E. LeMoine

Attorney for Plaintiffs
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100
(213) 687-3702 (Fax)

---

[9] Defendants' reliance on *Alpex Computer Corp. v. Nintendo Co.*, No. 86 Civ. 1749 (KMW), 1994 WL 139423 at *9 (S.D.N.Y. Mar. 18, 1994), which notes that "licenses offered or granted against a backdrop of ongoing infringement and litigation should be given little weight," is distinguishable because the licensees were accused of infringement or were the targets of the plaintiff's enforcement actions. iTunes was not sued by Plaintiffs.