REDACTED VERSION
-COMPLETE VERSION UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC, fka CAPITOL RECORDS INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.,

Plaintiffs,

v.

LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP,

Defendants.

06 Civ. 05936 (KMW)
ECF CASE

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE CERTAIN PURPORTED EXPERT TESTIMONY BY EMIN GÜN SIRER**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Susan T. Boyd *(pro hac vice)*
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
*Attorneys for Plaintiffs*

Date: March 10, 2011

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. SIRER IS NOT QUALIFIED ..... 1

A. Defendants Cannot Avoid Sirer's Utter Lack of Qualifications in Statistics by Saying He is Not Being Offered As an Expert in Statistics ..... 1

B. Sirer's Extremely Limited Use of Statistics Does Not Qualify Him to Opine on Statistical Areas Where He Has Absolutely No Expertise ..... 3

III. SIRER'S OPINIONS ARE WHOLLY SPECULATIVE AND CONJECTURAL ..... 6

IV. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Advanced Telemedia, L.L.C. v. Charter Commc'ns, Inc.*,
2008 WL 6808442 (N.D. Ga. July 17, 2008) .......... 10

*Boucher v. U.S. Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996) .......... 6

*Cacciola v. Selco Balers, Inc.*,
127 F. Supp. 2d 175 (E.D.N.Y. 2001) .......... 6

*Colon ex rel. Molina v. BIC USA, Inc.*,
199 F. Supp. 2d 53 (S.D.N.Y. 2001) .......... 7

*E.E.O.C. v. Morgan Stanley & Co.*,
324 F. Supp. 2d 451 (S.D.N.Y. 2004) .......... 7, 9

*Giles v. Rhodes*,
2000 WL 1425046 (S.D.N.Y. Sept. 27, 2000) .......... 6

*Grdinich v. Bradlees*,
187 F.R.D. 77 (S.D.N.Y. 1999) .......... 7

*Haimdas v. Haimdas*,
2010 WL 652823 (E.D.N.Y. Feb. 22, 2010) .......... 4

*In re MTBE Prods. Liab. Litig.*,
643 F. Supp. 2d 471 (S.D.N.Y. 2009) .......... 9

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*,
2006 WL 2128785 (S.D.N.Y. July 28, 2006) .......... 4, 5

*Kipperman v. Onex Corp.*,
411 B.R. 805 (N.D. Ga. 2009) .......... 9

*Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*,
2003 WL 21108232 (S.D.N.Y. May 14, 2003) .......... 8

*Nimely v. City of N.Y.*,
414 F.3d 381 (2d Cir. 2005) .......... 1

*Nook v. Long Island R.R. Co.*,
190 F. Supp. 2d 639 (S.D.N.Y. 2002) .......... 7

**TABLE OF AUTHORITIES**

**Page**

*Reliance Ins. Co. v. La. Land & Exploration Co.*,
110 F.3d 253 (5th Cir. 1997) .......... 9

*Tiffany (NJ) Inc. v. eBay, Inc.*,
576 F. Supp. 2d 457 (S.D.N.Y. 2007) (Opp. at 9-10) .......... 4, 5

*Trout v. Lehman*,
702 F.2d 1094 (D.C. Cir. 1983) .......... 10

*Zaccaro v. Shah*,
--- F. Supp. 2d ----, 2010 WL 3959622 (S.D.N.Y. Sept. 29, 2010) .......... 8

*Zaremba v. General Motors Corp.*,
360 F.3d 355 (2d Cir. 2004) (Motion at 16) .......... 6

**STATUTES AND RULES**

Federal Rules of Civil Procedure
26(a)(2) .......... 9
37 .......... 9

Federal Rules of Evidence
702 .......... 1, 5, 6, 7

# I. INTRODUCTION

While Rule 702 "embodies a liberal standard of admissibility for expert opinions," the Rule does "not represent an abdication of the screening function traditionally played by trial judges." *Nimely v. City of N.Y.*, 414 F.3d 381, 395-96 (2d Cir. 2005). Here, well-settled and controlling principles compel the exclusion of Professor Sirer's opinions regarding Dr. Waterman's statistical conclusions concerning the total number of downloads on LimeWire.

Acknowledging Sirer's utter lack of statistical qualifications, Defendants now state, remarkably, that they are "not offering" him "as an expert in the field of statistics," but rather "as a computer science expert." (Opp. at 8.) That would be fine, if Sirer were not proposing to testify extensively on statistical sampling designs, regression models, the validity of opt-in samples, and extrapolation methodologies involving human populations. Sirer does not have the minimal knowledge, experience, or education to opine on these statistical issues under Rule 702.

Although the Court's analysis can begin and end with Sirer's lack of any statistical expertise, Sirer's testimony also may be precluded because every one of his opinions regarding Dr. Waterman's statistical conclusions is based on subjective belief and unsupported speculation, lacking any factual or empirical basis. Defendants do not dispute this, but instead contend that that these issues can be explored at trial during cross-examination. Not so. Rule 702 makes clear that expert testimony must be "based upon *sufficient facts or data*." Fed. R. Evid. 702 (emphasis added). Sirer's testimony falls far short of that standard.

# II. SIRER IS NOT QUALIFIED

## A. Defendants Cannot Avoid Sirer's Utter Lack of Qualifications in Statistics by Saying He is Not Being Offered As an Expert in Statistics

Defendants effectively concede that Sirer is unqualified to opine on Dr. Waterman's statistical analysis by stating that they are "not offering" him "as an expert in the field of

statistics, but rather are offering him as a computer science expert." (Opp. at 8.) Indeed, in describing Sirer's background, Defendants do not even once mention statistics, noting that he has "spent the bulk of his career studying and researching peer-to-peer systems and related technology." (*Id*. at 2.) This all would be fine if Sirer's report were limited to computer science and P2P technology. Sirer, however, spends large sections of his report pontificating on Dr. Waterman's "statistical extrapolation and modeling," including purported "selection bias" in NPD's "surveyed population," alleged "errors in demographic information relating to the sampled and target audiences," NPD's "statistical weighting" scheme, and purported "conceptual flaws" in Dr. Waterman's "extrapolation model" (*i.e.*, his "smoothing spline" analysis). (Ex. 4[1] at ¶¶ 4, 22-36.) Defendants do not call Sirer an expert in statistics, because it would strain credulity to do so. Sirer is a computer science expert, not a statistics expert; the Court should preclude his testimony accordingly.

Although Defendants will not even describe Sirer as a statistics expert, they nonetheless contend that he is "well-qualified" to rebut Dr. Waterman's statistical conclusions because he is "not offering opinions requiring a high degree of statistical expertise." (Opp. at 8.) This is nonsense. Sirer is opining on several sophisticated statistical issues, including sampling methodologies, weighting schemes, and regression techniques, all of which require a threshold level of statistical competence beyond that of someone with Sirer's paltry background and experience in statistics. [redacted]

[1] All "Ex." cites herein are to the exhibits attached to the March 2, 2011 Klaus Declaration.

[redacted]

**B. Sirer's Extremely Limited Use of Statistics Does Not Qualify Him to Opine on Statistical Areas Where He Has Absolutely No Expertise**

[redacted]

[redacted]



Sirer's testimony regarding Dr. Waterman's statistical conclusions must be excluded because he is not "proffering opinions on issues or subject matter *within his . . . area of expertise*." *Haimdas v. Haimdas*, 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010) (emphasis added). *See also id*. (witness must be qualified to testify "on *the specific matter* that he has been designated to address" (emphasis added)). Defendants erroneously contend that focusing on Sirer's "precise experience" within statistics is "unwarranted," citing and discussing *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) (Opp. at 9-10).[3] In that case, which

---

[2] Defendants' papers erroneously suggest that Dr. Waterman used a smoothing spline for his conclusions regarding the total number of downloads for the entire period of October 2004-August 2010 (Opp. at 3-4). For the period October 2004-February 2007, Dr. Waterman did not use a smoothing spline. He cross-referenced Plaintiffs' works across those LimeWire downloads recorded by the NPD Digital Meter monitor and as extrapolated by NPD to the broader U.S. Internet household population through its defined weighting scheme. Downloads from October 2004-February 2007 constitute approximately 90% of Dr. Waterman's total figures.

[3] Defendants also cite *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp*., 2006 WL 2128785 (S.D.N.Y. July 28, 2006) (Opp. at 9) for the proposition that an "expert should not be required to satisfy an overly narrow test of his own qualifications." *Id*. at *6. There, the plaintiff's damages expert proposed to give opinions "concerning the marketplace impact" of its "false advertising claims." *Id*. at *6. The court held that the expert had "significant experience in conducting financial and economic analyses relating to products in the marketplace and has provided such expert opinions in numerous cases" and that it was "not important that" he "does not have specific training in the field of optometry or experience related to the eye care

involved the sale of allegedly counterfeit Tiffany goods on eBay, Tiffany conducted a random buying sample of its merchandise for sale on eBay pursuant to a protocol designed by its expert, who had "performed statistical sampling in hundreds of surveys throughout his career," had "extensive practical experience in using statistics" in trademark litigation such as "designing customer confusion surveys," and who had "been qualified as an expert and allowed to testify in numerous trademark proceedings in this very district." *Id*. The court held that "[s]tatistical studies of trademark infringement" such as the buying group sample "are well within [his] expertise and competence." *Id*. at 459.

By contrast, Sirer is not an expert in *any* field of statistics, much less an expert in statistical studies of copyright infringement. [REDACTED] The truly analogous case is *Malletier v. Dooney & Bourke*, Inc., 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007), where the court rejected the defendants' proposed statistics expert, whose real expertise lied in colorimetry, not statistics, just as Sirer's true expertise lies in computer science. The defendants in *Malletier* argued that their expert had "used his familiarity with statistics/probability for 40 years in connection with his studies and work"— which is *significantly* more experience with statistics than Sirer himself can claim. *Id*. at 642. The court nonetheless rejected the expert under Rule 702, noting that while "he may have used statistics in his work (as most people do to one extent or another) this does not mean that he is sufficiently qualified to testify to the statistical significance of a common

---

profession because *his opinions involve financial rather than industry specific analysis*." *Id*. (emphasis added). Here, Sirer has no expertise or experience at all offering expert statistical opinions, and certainly nothing regarding the validity and methodology of opt-in human samples.

choice of colors." *Id*. An "expert qualified in one subject matter does not thereby become an expert for all purposes. Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702." *Id.*[4]

Defendants futilely attempt to downplay Sirer's intense advocacy for mass file-sharing by stating that he "has no more of a stake in this case than any expert on either side" (Opp. at 16). Defendants notably do not dispute that Sirer has designed several software programs that make it easier for people to infringe Plaintiffs' copyrights on LimeWire and other P2P networks, and that Sirer believes that Plaintiffs have "*poisoned*" LimeWire by attempting to thwart infringement with decoy files. *See, e.g., Cacciola v. Selco Balers, Inc*., 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001) ("When expert witnesses become partisans, objectivity is sacrificed to the need to win.").

Although "[l]iberality and flexibility in evaluating qualifications should be the rule," Professor Sirer "does not have even the minimal education, training or experience required to satisfy this standard." *Giles v. Rhodes,* 2000 WL 1425046, at *2 (S.D.N.Y. Sept. 27, 2000). This is not an issue for the parties to debate before the jury on cross-examination; the Court should bar Sirer's testimony regarding Dr. Waterman's statistical conclusions.

## III. SIRER'S OPINIONS ARE WHOLLY SPECULATIVE AND CONJECTURAL

Rule 702 requires that expert testimony be "based upon *sufficient facts or data*." Fed. R. Evid. 702 (emphasis added). Professor's Sirer's opinions regarding Dr. Waterman's statistical conclusions are "speculative or conjectural" and therefore must be excluded. *Boucher v. U.S.*

---

[4] This principal has been applied by the Second Circuit in other subject areas. In *Zaremba v. General Motors Corp*., 360 F.3d 355 (2d Cir. 2004) (Motion at 16), which Defendants ignore, the plaintiffs brought a design defect claim against GM for its design of the Trans Am, and proposed to call at trial an expert who would testify as to the "reconstruction of the accident and as to an alternative safer design." *Id*. at 357. The Second Circuit affirmed the district court's holding that the proposed expert, who "had only a bachelor's degree in engineering and his only practical experience was in designing parts for automobile air bags," had "meager qualifications to offer the opinions as to automobile design that these plaintiffs rely on" that were insufficient under Rule 702. *Id*. at 359-60. *See also* Motion at 16-17 n.12 (collecting cases).

*Suzuki Motor Corp*., 73 F.3d 18, 21 (2d Cir. 1996) (per curiam).

Defendants do not dispute that Professor Sirer's conclusions have no factual or empirical basis. Rather, they contend that Plaintiffs' "criticisms focus on the factual support provided by" Sirer, "which criticisms are more appropriately addressed on cross-examination," and that Sirer was "not required to re-create any of Dr. Waterman's analyses." (Opp. at 11-13.) These arguments miss the mark. Plaintiffs are not saying that Sirer's supporting facts or data are weak, or even arguing that he was required to perform an *entire* alternative analysis of Dr. Waterman's conclusions with his own set of variable assumptions (though, as Plaintiffs' own cases state, that "may be advisable," *E.E.O.C. v. Morgan Stanley & Co*., 324 F. Supp. 2d 451, 460 (S.D.N.Y. 2004)). Rather, Sirer's opinions lack ***any*** factual or empirical basis, in contravention of Rule 702's requirement that an expert's testimony be based on "sufficient facts or data." Fed. R. Evid. 702. Sirer's conclusions are based on nothing more than his own unsubstantiated beliefs.

Where an "expert's 'knowledge connotes more than subjective belief or unsupported speculation,'" there "is no reliable foundation" for his opinion. *Grdinich v. Bradlees*, 187 F.R.D. 77, 82 (S.D.N.Y. 1999). In *Colon ex rel. Molina v. BIC USA, Inc*., 199 F. Supp. 2d 53 (S.D.N.Y. 2001), for example, the plaintiff's expert proposed to testify that the color and size of a mini-lighter attracted children, rendering the product unreasonably dangerous. *Id*. at 73 n.9. The court noted that there was no

> data or any other empirical evidence that a child's preference for bright colors increases the likelihood that a child will play with lighters or increases the likelihood of accidents involving lighters. While trained experts may extrapolate from existing data . . . they must base their opinions on a reliable foundation. . . . [The expert's] opinion is derived only from the simple premise that children like bright colors.

*Id*. at n.9. *See also Nook v. Long Island R.R. Co*., 190 F. Supp. 2d 639, 642 (S.D.N.Y. 2002) (excluding expert testimony where "[n]o data, testing methodology or empirical evidence" was

offered to support proposed expert's conclusions).[5]



To save Sirer's testimony on this point, Defendants in their Opposition cite to additional evidence which is completely absent from Sirer's report.

---

[5] *See also Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, 2003 WL 21108232, at *2 (S.D.N.Y. May 14, 2003) (precluding testimony where "[n]o data, testing methodology or empirical evidence is offered to support [proposed expert's] conclusions"); *Zaccaro v. Shah*, --- F. Supp. 2d ----, 2010 WL 3959622, at *6 (S.D.N.Y. Sept. 29, 2010) (excluding expert testimony where proposed expert's "analysis relies almost exclusively on speculation as to future events").

(*See* Opp. at 15 (citing to [REDACTED] Jafri Decl., Ex. 3).) The Court should reject this transparent attempt to circumvent the Federal Rules. Sirer's testimony at trial is limited to the "opinions" in his report, and the "facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2). *See also In re MTBE Prods. Liab. Litig. (N.Y. v. Exxon Mobil Corp.)*, 643 F. Supp. 2d 471, 477 (S.D.N.Y. 2009) ("Under Rule 37, a court may refuse to allow testimony on a matter that a party failed to include in an expert report 'unless the failure was substantially justified or is harmless.'")[6] Defendants cannot supplement Sirer's report with evidence in their own papers.

Professor Sirer's critique of Dr. Waterman's smoothing spline download projections for Plaintiffs' Post 1972 works for the post February 2007 period is likewise based on nothing more than conjecture. [REDACTED]

Defendants respond by arguing that a "defendant may rebut a statistical analysis without performing an affirmative analysis" (Opp. at 14), citing *E.E.O.C. v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 459 (S.D.N.Y. 2004). Defendants' reliance on the *Morgan Stanley* case is

[6] *See also Kipperman v. Onex Corp.*, 411 B.R. 805, 839 (N.D. Ga. 2009) (rejecting expert declaration during *Daubert* briefing as "improper supplemental expert report submitted out of time far after the close of discovery and with no possibility for cross examination"); *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257-58 (5th Cir. 1997).

misplaced. While the rebuttal experts in that case had not performed *entire* alternative analyses, they *had* "performed statistical analyses to support [their] criticisms," including claims that the plaintiffs' expert "fail[ed] to consider" alternative variables. *Id.* at 458, 460 ("Morgan Stanley maintains that its experts have performed analyses" though "selectively in scope").

By contrast here, Professor Sirer has not done *any* statistical analyses regarding the significance or relevance of the purportedly missing variable or the data point spreads on the regression curve. As courts have held, "[w]hen a plaintiff submits accurate statistical data, and a defendant alleges that relevant variables are excluded, defendant may not rely on hypothesis to lessen the probative value of plaintiff's statistical proof. Rather, defendant . . . must either rework plaintiff's statistics incorporating the omitted factors or present other proof undermining plaintiff's claims." *Trout v. Lehman*, 702 F.2d 1094, 1101 (D.C. Cir. 1983), vacated on other grounds, 465 U.S. 1056 (1984). *See also Advanced Telemedia, L.L.C. v. Charter Commc'ns, Inc.*, 2008 WL 6808442, at *1 (N.D. Ga. July 17, 2008) ("Because Jones merely criticizes Fortune's methodology but does not himself test her extrapolation method or his own proposed statistical sampling method, and because he does not explain why such efforts are unnecessary to refute Fortune's opinion, this court concludes that Jones' testimony is too speculative and unreliable").[7] Sirer has neither performed any statistical analyses or presented any actual proof undermining Dr. Waterman's statistical conclusions.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion.

---

[7] Defendants are utterly silent on two additional speculative areas of Sirer's testimony: (1) Sirer's admission that he had no data at all to support his theory of "population dynamics" in his criticism of Dr. Waterman's projected downloads for Pre 1972 works for the post February 2007 period. (Ex. 5 at 246:2-11, 249:11-18, 250:9-14); and (2) Sirer's concession that he was not aware of any data other than the NPD data Dr. Waterman relied upon for his 1/3 discount, and he had no data to support his criticism of the discount (*id*. at 252:3-22).

Dated: March 10, 2011

Respectfully submitted

*/s/ Kelly M. Klaus*
Kelly M. Klaus

Attorney for Plaintiffs
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100
(213) 687-3702 (Fax)