UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ARISTA RECORDS LLC; ATLANTIC RECORDING
CORPORATION; ARISTA MUSIC, fka BMG
MUSIC; CAPITOL RECORDS, INC; ELEKTRA
ENTERTAINMENT GROUP INC; INTERSCOPE
RECORDS; LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY RECORDS
LLC; SONY MUSIC ENTERTAINMENT, fka SONY
BMG MUSIC ENTERTAINMENT; UMG RECORDINGS,
INC; VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,                                      06 CV 5936 (KMW)

                                                                         OPINION AND ORDER
                         Plaintiffs,

      -against-

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; GREG BILDSON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                        Defendants.
-------------------------------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

**I.**       **Introduction**

On May 11, 2010, this Court granted summary judgment in favor of Plaintiffs on their claims against Defendants LimeWire LLC ("LW"), Lime Group LLC ("Lime Group"), and Mark Gorton (collectively, "Defendants") for secondary copyright infringement. The Court found that Defendants had induced multiple users of the LimeWire online file-sharing program ("LimeWire") to infringe Plaintiffs' copyrights. In the Court's Opinion and Order (as amended on May 25, 2010), the Court detailed this case's procedural and factual background, familiarity with which is assumed. See Dkt. Entry No. 223; Arista Records LLC v. Lime Group LLC, 715 F Supp. 2d 481, 507 (S.D.N.Y. 2010). The litigation is now in the damage phase, with a trial on damages scheduled for May 2, 2011.

1

Plaintiffs have moved for partial summary judgment on (1) Plaintiffs' Ownership or Control of the Works at Issue, and (2) the Direct Infringement of the Works at Issue.  Plaintiffs have identified 11,205 sound recordings that have allegedly been infringed through the LimeWire system.[1]

For the reasons stated herein, Plaintiffs' Motion for Partial Summary Judgment Regarding Ownership is GRANTED in part and DENIED in part.  Plaintiffs' Motion for Partial Summary Judgment Regarding Direct Infringement is GRANTED.

## II.     Summary Judgment Standard

A party may move for summary judgment as to a "part of each claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate only if the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id.  The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir.2008). A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict in favor" of the nonmoving party. NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d Cir.2008); see also Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001); Fed.R.Civ.P. 56(e). Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[1] For the approximately 9,715 post-1972 sound recordings, Plaintiffs have elected to seek statutory damages under Section 504(c)(1) of the Copyright Act.  For the approximately 1,490 pre-1972 sound recordings, Plaintiffs are seeking actual damages.

A party moving for summary judgment must support an assertion that "a fact cannot be or is genuinely disputed" by citing to evidence in the record, including "documents, . . . affidavits or declarations, . . . admissions, . . . . or other materials." Fed. R. Civ. P. 56(c). "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).

An opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). See also Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998) (non-moving party may not rely on "conclusory allegations or unsubstantiated speculation"). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and must set forth "significant probative evidence" on which a reasonable factfinder could decide in its favor. Anderson, 477 U.S. at 249.

**III.    Analysis: Motion for Sumary Judgment on Ownership**

    **A.    Sound Recordings Not in Dispute**

"To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 109 (2d Cir. 2001) (citing Hamil America, Inc. v. GFI, 193 F.3d 92, 98 (2d Cir.1999)). Under the Copyright Act, a certificate of registration constitutes prima facie evidence of the valid ownership of a copyright. See Rogers v. Koons, 960 F.2d 301, 306 (2d Cir. 1992) (citing 17 U.S.C. § 401(c)). An assignee of a valid copyright who is not named on the registration as the owner has the additional burden of proving valid

chain of title "because nothing in the registration certificate evidences his right to claim through the original copyright claimant." 3-12 Nimmer on Copyright, § 12.11[C] (2010). See Int'l Media Films, Inc. v. Lucas Entertainment, Inc., 703 F. Supp. 2d 456, 463 (S.D.N.Y. 2010); Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc., No. 87 Civ. 5775, 1989 WL 117704, at *1 (S.D.N.Y. Oct. 2, 1989). Once a plaintiff has offered valid evidence establishing ownership (and/or chain of title), "the burden shifts to the defendant to establish the invalidity of plaintiff's title." 3-12 Nimmer on Copyright, § 12.11[C]. See also Yurman Design Inc. v. Chaindom Enterprises, Inc., No. 99 Civ. 9307, 2003 WL 22047846, *2 (S.D.N.Y. Aug. 29, 2003) (citing In Design v. Lauren Knitwear Corp., 782 F. Supp. 824, 829 n. 11 (S.D.N.Y. 1991)).

Plaintiffs have offered evidence seeking to establish ownership of the copyrights in each of the over 11,000 sound recordings, including the relevant copyright registration certificates, and, in most cases, documentation of any transfers of ownership to a named Plaintiff. (See SUF.)[2] Defendants have challenged Plaintiffs' ownership of 276 of the post-1972 sound recordings and 121 pre-1972 sound recordings. Defendants do not dispute Plaintiffs' ownership of the remaining 9,439 post-1972 songs and 1,369 pre-1972 sound recordings. (See Def. SUF Resp.) The Court thus GRANTS summary judgment to Plaintiffs as to their ownership of the sound recordings as to which ownership is not disputed.

### B. Disputed Sound Recordings

Defendants challenge Plaintiffs' ownership of 276 post-1972 sound recordings and 121 pre-1972 recordings. These challenges break down into three categories:

---

[2] All references to "SUF" are to Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Partial Summary Judgment Regarding Ownership, Pursuant to Local Civil Rule 56.1. References to "Def. SUF Resp." are to Defendants' Responses to Plaintiffs' Statement of Material Facts Pursuant to Local Civil Rule 56.1 in connection with the same motion.

1) For 55 post-1972 sound recordings, Defendants argue that Plaintiffs have improperly attempted to claim the exclusive rights of a non-plaintiff subsidiary of Plaintiff Elektra Entertainment Group Inc.

2) For 182 post-1972 sound recordings and 121 pre-1972 sound recordings (303 sound recordings), Defendants challenge the sufficiency of the evidence establishing an unbroken chain of title between the original copyright owner and a named plaintiff.

3) For 39 post-1972 sound recordings, Defendants argue that Plaintiffs have not demonstrated ownership or control of the sound recordings at the time of any alleged direct infringement.

### 1. Category 1: Ownership by Subsidiary

Defendants argue that for 55 post-1972 sound recordings, Plaintiff Elektra Entertainment Group, Inc. ("Elektra") is attempting to sue for infringements of copyrights owned by its wholly-owned subsidiary, Eleksylum Music, Inc ("Eleksylum"). (See Def. SUF Resp. ¶¶ 271-273.) A parent corporation may not sue for infringement of copyrights owned by its subsidiary. See Big East Entm't, Inc. v. Zomba Enters., Inc., 453 F. Supp. 2d 788, 797 (S.D.N.Y. 2006).

In their Reply submissions, Plaintiffs state that their original submission was in error. Plaintiffs have now determined that Eleksylum does not hold the copyright to the 55 sound recordings in question, but rather holds the copyrights to the compositions embodied in those sound recordings. (Palerm Further Dec. ¶¶ 2-3.) The copyrights in the sound recordings were registered to Elektra/Asylum Records, which was itself a division of Warner Communication, Inc. Plaintiffs submit evidence showing that Warner Communications, Inc. assigned all of the copyrights held by Elektra/Asylum Records to Plaintiff Elektra Entertainment Group. (See Palerm Dec. Ex. 8.)

In light of this documentary evidence, there is no genuine issue of material fact as to Plaintiff Elektra's ownership of the 55 sound recordings registered in the name of Elektra/Asylum Records. Summary judgment on the issue of ownership of those recordings is GRANTED to Plaintiffs.

### 2. Category Two: Sufficiency of Evidence Showing Chain of Title

Defendants argue that for 182 post-1972 sound recordings, and 121 pre-1972 sound recordings, Plaintiffs have submitted insufficient evidence to establish chain of title to show ownership by a named Plaintiff. In particular, Defendants argue that Plaintiffs improperly rely on affidavit testimony to establish facts critical to chain of title. As to these sound recordings, Plaintiffs' Motion is GRANTED in part and DENIED in Part.

#### a. Sufficiency of Evidence Establishing Corporate Name Change

Defendants challenge Plaintiffs' evidence showing chain of title for 96 pre-1972 sound recordings claimed by Plaintiff UMG Recordings, Inc. ("UMG") where the original agreements with the recording artists were with the Mercury Record label. (See SUF ¶¶ 237-241.)[3] Plaintiff UMG submits evidence that in 1960, Philips Electronics purchased Mercury Record Corporation and changed the name to Mercury Record Productions, Inc.; in or about 1972, Mercury Record Productions, Inc. changed its name to Phonogram, Inc.; in 1980, Phonogram, Inc. changed its name to Polygram Records, Inc.; and UMG owns the sound recordings of Polygram Records, Inc. (Id.) Defendants concede nearly all of these facts, but dispute Plaintiffs' ownership on the theory that "Plaintiffs have failed to produce reliable evidence establishing that Mercury Records Productions, Inc. changed its name to Phonogram, Inc." (Defs. SUF Resp. ¶¶ 237-241.)

---

[3] The actual signatories to these agreements included Mercury Record Corporation, Mercury Record Corporation / Fair Deal Records, Mercury Record Corporation / Wing Record Corp., Mercury Record Productions, Inc., and Mercury Records, Inc.

6

Plaintiffs did not support this name change with documentation, as it had with other name changes, but did submit declaration testimony from JoAn Cho, who is employed in the Business and Legal Affairs Department of UMG as Senior Director – Litigation Counsel. (Cho. Dec. ¶ 1.) Ms. Cho states that, in connection with her job responsibilities, she has "become and [is] familiar with the nature and scope of the UMG Plaintiffs' business, including but not limited to their copyrights, business records, and business relationships." (Id.) Ms. Cho testifies in her Declaration that "[i]n or about 1972, Mercury Record Productions, Inc. changed its name to Phonogram, Inc." (Id. ¶ 71.) Defendants did not move to strike this witness as incompetent, and do not cite to any evidence that suggests that Ms. Cho's testimony is false, inaccurate or otherwise not credible.

Plaintiff has submitted competent evidence, in the form of unrefuted affidavit testimony, establishing chain of title to these sound recordings. Defendants' unsupported denials in its Response to Plaintiffs' Statement of Undisputed Facts cannot, without citation to any evidence in the record, create a genuine issue of fact. See AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Services Inc., No. 06 Civ. 2142, 2007 WL 4302514, *4-5 (S.D.N.Y. Dec. 7, 2007) (citing Fed. R. Civ. P. 56(e); U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union No. 3, No. 00 Civ. 4763, 2006 WL 2136249, at *4 (S.D.N.Y. Aug. 1, 2006) ("To the extent the [nonmovant] proclaim[s] factual assertions to be in dispute without identifying evidence in the record, the [nonmovant] thwart[s] the basic purpose of [Local Rule 56.1]."); id. (A tactic where the nonmovant "dispute[s] the factual assertions in the [moving party's] corresponding paragraphs with objections alone" and fails to cite evidence "directly violates" Rule 56.1.)).

A non-movant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon mere allegations or denials of the

7

nonmoving party's pleading." Ying Jing Gan v. City of New York, 996 F.2d 522, 532-33 (2d Cir. 1993) (internal citations and quotation marks omitted). To the extent that Defendants believe that Plaintiffs' affidavit testimony was not based on personal knowledge or is otherwise not competent, the remedy is a motion to strike; failure to do so waives any objection to that evidence. See In re Teltronics Services, Inc., 762 F.2d 185, 192 (2d Cir. 1985). See also AFL, 2007 WL 4302514, at *5 (citing Wojcik v. 42nd Street Dev. Project, 386 F. Supp. 2d 442, 448 (S.D.N.Y. 2005) ("[A]ny fact alleged in defendants' Rule 56.1 statement, supported in fact by the record, and not specifically and expressly contradicted by properly supported allegations in [an affidavit submitted by nonmovant], will be deemed admitted by plaintiff.")).

Plaintiffs bear the burden of establishing ownership. Having submitted competent affidavit testimony to that effect, Plaintiffs have met that burden. Defendants have not met their burden of rebutting that evidence or establishing that there is a genuine issue of fact as to Plaintiffs' ownership of these sound recordings.[4] Accordingly, the Court GRANTS summary judgment to Plaintiffs with regard to these recordings.

### b. Sufficiency of Evidence Establishing Transfers and Exclusive Licenses

For a number of recordings, Plaintiffs claim ownership based on assignments of, or grants of an exclusive license to, the sound recordings, but do not provide documents to substantiate these transfers. (See SUF ¶¶ 155, 181, 186-200, 218, 245, 247, 248, 284-286, 329,

---

[4] The decisions Defendants cite do not negate this conclusion. Defendants rely heavily upon Lucas Entertainment, 703 F. Supp. 2d at 464, for the proposition that "first hand testimony" is necessary to establish chain of title. Ms. Cho's testimony, based on personal knowledge of UMG's business structure, satisfies this requirement. In any event, in Lucas Entertainment, there was evidence suggesting that some of the key documents in the chain of title were forgeries, and Defendants presented evidence supporting an alternative chain of title. Here, Defendants have proffered no such contrary evidence, nor have they even asserted that the name change did not, in fact, take place.

330, 353, 355, 371.)  For these sound recordings, Plaintiffs' motion for summary judgment is DENIED.

Under the Copyright Act, "[a] transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a) (hereinafter "Section 204").  A "transfer of copyright ownership" includes "an assignment, mortgage, <u>exclusive license</u>, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright . . . ."  17 U.S.C. § 101 (emphasis added).  See <u>Davis v. Blige</u>, 505 F.3d 90, 100 n.10 (2d Cir. 2007) ("[E]xclusive license agreements must be in writing."); 3-10 Nimmer on Copyright, § 10.03 (2010).

Plaintiffs have attempted to claim ownership of 12 pre-1972 sound recordings that were originally owned by other entities, based on alleged transfers to Plaintiffs Arista Records LLC, (<u>see</u> SUF ¶¶ 329-30), and Sony Music Entertainment (<u>see</u> SUF ¶ 371).  Plaintiffs do not submit signed writings effectuating or memorializing these transfers.

Plaintiffs also claim ownership of a number of sound recordings originally owned by, or registered in the names of, various foreign affiliates of named Plaintiffs.  According to Plaintiffs, these affiliates have granted exclusive licenses to Plaintiffs based on various "intercompany agreements."  (<u>See</u> Leak Dec. ¶ 47; Palerm Dec. ¶ 30; Cho Dec. ¶ 54; SUF ¶¶ 155, 181, 186-200, 218, 245, 247, 248, 284-286, 353, 355.)  Plaintiffs do not submit copies of any writing signed by the purported licensors of the copyrights in these recordings.  Plaintiffs submit only affidavit testimony that alludes to the existence of the agreements.  (<u>See</u> Leak Dec. ¶ 47 ("Plaintiff Sony Music Entertainment has the exclusive right to exploit and enforce the copyrights in the Copyrighted Recordings at issue in the United States through various intercompany

9

agreements."); Palerm Dec. ¶ 30 ("Plaintiff Warner Bros. Records Inc. owns or controls the exclusive rights to distribute and enforce the copyrights in the sound recordings at issue in the United States pursuant to various intercompany agreements.");[5] Cho Dec. ¶ 54 ("UMG Recordings, Inc. is the exclusive licensee of these recordings pursuant to an inter-company licensing agreement.").[6])

This affidavit testimony is insufficient to satisfy the formal requirements for transfers and exclusive licenses under the plain language of the Copyright Act.

Plaintiffs cite to progeny of the Second Circuit's decision in Eden Toys, Inc. v. Florelee Undergarment Co., Inc., 697 F.2d 27 (2d Cir. 1982), for the proposition that Defendants, as third party infringers, do not have standing to challenge a transfer where there is no dispute between a licensor and licensee as to the validity of the transfer. See Pl. Mem. (Ownership) at 4 (citing X-IT Prods., L.L.C. v. Walter Kidde Portable Equipment, Inc., 155 F. Supp. 2d 577, 604 (E.D. Va. 2001) ("[W]hen there is no dispute between the original copyright owner and his licensee or assignee, 'it would be anomalous to permit a third party infringer to'" challenge the transfer.) (quoting Eden Toys, 697 F.2d at 37)). Defendants argue that Eden Toys was limited to the situation where a later writing was used to confirm an earlier oral transfer. See Def. Opp. at 3 (citing Davis, 505 F.3d at 101). There is, however, authority that the Eden Toys principle can be

---

[5] This testimony is directly contradicted by statements of Plaintiffs' counsel in a letter to Defendants' counsel that "[t]he inter-company licensing practices between Warner Bros. Inc and its foreign affiliates . . . are not memorialized in an inter-company licensing agreement." (Meloro Dec. Ex. 5 at 10.)

[6] UMG submits copies of its intercompany licensing agreements that outline the mechanics of the licensing of sound recordings owned by foreign affiliates. (See Cho Dec. Exs. 46-52.) These agreements, as further described by Ms. Cho in her Reply Declaration, provide for the licensing of sound recordings by various "Owners" through an entity that the agreements refer to as "the Centre," which, in turn, licenses the sound recordings to the "OpCo" in each territory. (See Cho Dec. Exs. 46-52 §§ 1, 4(a); Cho Reply Dec. ¶ 3.) The problem with this evidence is that nowhere in the agreements is there any identification of who each "Owner" actually is, nor is there any document actually signed by the purported licensors. These agreements are thus insufficient to meet the requirements of Section 204.

employed more broadly to preclude third party standing to challenge transferee ownership in any case where there is no dispute between transferor and transferee. See In re Napster, Inc. Copyright Litigation, 191 F. Supp. 2d 1087, 1099 (N.D. Cal. 2002).

Without resolving this question of standing, the Court concludes that, without the written agreements or other evidence establishing the validity of these transfers, Plaintiffs have failed to meet their burden on this motion to demonstrate that there is no issue of fact as to the validity of these transfers under Section 204. See Fed. R. Civ. P. 56(a). It is possible that these transfers were pursuant to written agreements, signed by the transferors. Plaintiffs have not submitted the agreements themselves, but could potentially submit evidence to establish the existence of a writing that would satisfy Section 204. But on the record before the Court on this motion, there are genuine issues of material fact as to Plaintiffs' ownership of these sound recordings. Thus, Plaintiffs' motion for summary judgment with regard to these sound recordings is DENIED.

### 3. Category Three: Timing of Ownership

For 39 post-1972 sound recordings, Defendants argue that Plaintiff did not hold the copyrights at the time of the alleged infringement. (Def. SUF Resp. ¶¶ 33, 39, 43, 52, 78, 83, 84, 85.) Defendants base this argument on the fact that the evidence that Plaintiffs have submitted to support their motion for summary judgment on direct infringement shows an actual download of these songs taking place during the summer of 2010, when Plaintiffs no longer held exclusive rights in these particular sound recordings. (See Def. Opp. at 8-12.)

Defendants are correct that the owner of an exclusive right under a copyright is entitled to bring actions only for infringements "occurring during the period of its ownership." ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991). If Plaintiffs are unable

11

to prove any infringement of a sound recording during the time period that a named Plaintiff owned the rights in that recording, then Plaintiffs cannot recover.

The problem with Defendants' argument on <u>this</u> motion is that Plaintiffs have made clear that they do not allege that infringement took place only during the summer of 2010. Although the actual downloads of these sound recordings performed by Plaintiffs investigators took place during the summer of 2010, Plaintiffs maintain that they will offer evidence showing infringements that took place outside of that specific time period. Defendants do not dispute that Plaintiffs owned the copyrights in the sound recordings at issue <u>at some point</u> during the time period relevant to this lawsuit. Thus, summary judgment on the issue of <u>ownership</u> of these sound recordings is GRANTED.

Defendants may challenge (and have challenged) Plaintiffs' evidence of direct infringement, including that any infringement that did occur took place at a time when Plaintiffs did not own the copyrights in the sound recordings at issue. Defendants may also argue at trial that damages for the infringements that occurred during the more limited time period of a particular Plaintiff's ownership should be lessened based on the smaller volume of infringements. But none of these issues goes to whether there is a genuine issue of fact as to Plaintiffs' <u>ownership</u> of the sound recordings.

In any event, as to 16 particular sound recordings, Plaintiffs have shown that a named Plaintiff does in fact have standing to sue for infringements that took place throughout the period at issue, including the summer of 2010.

Defendants argue that Plaintiff Capitol Records LLC lost rights in 16 sound recordings by the band [Name Redacted],[7] between June 30, 2010 and September 13, 2010.[8] Defendants

---

[7] Plaintiffs have submitted briefing and evidence regarding this issue under seal. Accordingly, the name of the band in question has been redacted.

argue further that the evidence of direct infringement shows that downloads of these sound recordings took place during this period of non-ownership.  Plaintiffs, however, have submitted evidence demonstrating that on December 13, 2010, [Name Redacted] granted to EMI (of which Capitol Records LLC is a licensee) "all rights of action and all other rights of whatever nature (including all performers' property rights) in and to the Recordings, whether such rights are now known or in the future created."  (McMullan Reply Dec., Ex. 1 at § 4.1; McMullan Dec. ¶ 14(a) & Ex. 7)  The Second Circuit has held that a copyright holder may "convey his interest in prosecuting accrued causes of action for infringement."  Davis, 505 F.3d at 99.  Thus, even if Plaintiffs can establish direct infringement only during the period between June 30, 2010 and September 13, 2010, they have established that there is no genuine issue of material fact as to their rights to bring infringement claims for these particular 16 sound recordings.

## IV.     Analysis:  Motion for Summary Judgment Regarding Direct Infringement

On Plaintiffs' motion for summary judgment on liability for inducement of infringement, Plaintiffs submitted "documentation and electronic storage media data showing that LimeWire users share and download unauthorized digital copies of the Recordings through LimeWire," and submitted "hard drives that contain digital copies of the Recordings, with electronic evidence that establishes that the Recordings were downloaded by LimeWire users without authorization." Arista Records LLC, 715 F Supp. 2d at 507.  The Court held that this evidence established direct infringement.  Id.  The Court also noted that

> [a] conclusive determination of whether a particular audio file was downloaded through LimeWire may be made through analysis of its "hash." A hash is a property of a particular digital file that reflects all aspects of that file, including its content, quality and resolution, length, encoding, and any "ripping" software that has been used to transfer the file. Thus, two audio files with the same hash not only have the same sound content but also have been created using the same

---

[8] Defendants do not dispute that Plaintiff held the rights in these sound recordings prior to June 30, 2010 and after September 13, 2010.

13

> "ripping" software. Based on a hash-based analysis, it is clear that copyrighted digital recordings downloaded through LimeWire by Plaintiffs' investigators, were previously digitally shared and downloaded by *other LimeWire users*.

Id. at 507 n.21 (emphasis added).

In connection with that motion, Plaintiffs submitted evidence regarding 25 post-1972 sound recordings and 5 pre-1972 sound recordings. Plaintiffs now submit evidence regarding direct infringement of the approximately 9,715 post-1972 sound recordings, and 1,490 pre-1972 sound recordings. This evidence includes the same type of electronic media and other documentation showing that Plaintiffs' private investigators, DtecNet and Mediasentry, searched the Gnutella network for LimeWire users distributing audio files owned by Plaintiffs, filtered the results for users located in the United States, and downloaded the file from that user. (See Klaus Dec. ¶ 2 & Ex. 1.) As on Plaintiffs' prior motion for summary judgment, this evidence is sufficient to demonstrate direct infringement. Defendants do not cite any evidence that would create a genuine issue of fact as to whether these downloads took place. Thus, summary judgment for the Plaintiffs on the issue of direct infringement is GRANTED.

Defendants argue that, because Plaintiffs did not include hash analysis with regard to the sound recordings at issue on this motion, Plaintiffs have not shown any downloads by LimeWire users beyond the single download performed by Plaintiffs' investigators.[9] Cf. Arista Records LLC, 715 F Supp. 2d at 507 n.21 ("Based on a hash-based analysis, it is clear that copyrighted digital recordings downloaded through LimeWire by Plaintiffs' investigators, were previously digitally shared and downloaded by other LimeWire users."). Defendants argue further that, because the only downloads that Plaintiffs have established were performed by their own investigators, Plaintiffs have not met their burden to show "unauthorized copying" of Plaintiffs'

---

[9] Plaintiffs argue only that the evidence from their investigators "establishes that Plaintiffs' works were infringed at least once by LimeWire users." Pl. Mem. (Infringement) at 12 n.9.

14

works. Repp v. Webber, 132 F. 3d 882, 889 (2d Cir. 1997) (emphasis added). This argument has been uniformly rejected by courts. Courts have consistently relied upon evidence of downloads by a plaintiff's investigator to establish both unauthorized copying and distribution of a plaintiff's work. See Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 149-150 n.16 (S.D.N.Y. 2009) ("Defendants' argument that [downloads by Plaintiffs' investigators] are not proof of unauthorized copying because Plaintiffs had 'authorized' the downloads by their investigators is without merit. Courts routinely base findings of infringement on the actions of plaintiffs' investigators." (collecting cases)); see also Warner Bros. Records Inc. v. Walker, 704 F. Supp. 2d 460, 467 (W.D. Pa. 2010) (holding that downloads by MediaSentry "establish[ed] unauthorized distribution as to those nine recordings"); Capitol Records, Inc. v. Thomas, 579 F. Supp. 2d 1210, 1216 (D. Minn. 2008) ("[D]istribution to MediaSentry can form the basis of an infringement claim."); Atlantic Recording Corp. v. Howell, 554 F. Supp. 2d 976, 985 (D. Ariz. 2008) (holding that MediaSentry downloads could form the basis of infringement claim because "the recording companies obviously did not intend to license MediaSentry to authorize distribution or to reproduce copies of their works. Rather, the investigator's assignment was part of the recording companies' attempt to stop Howell's infringement, and therefore the 12 copies obtained by MediaSentry are unauthorized" (citing Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345, 1348 (8th Cir. 1994)). Defendants fail to identify meaningful distinctions between the instant case and the cases cited above.

While Plaintiffs' evidence is sufficient to establish liability for infringement of the sound recordings at issue, Plaintiffs retain the burden to show broader downloading by LimeWire's users in order to establish actual damages and/or to satisfy the various factors for calculating damages as outlined in Bryant v. Media Right Productions, Inc., 603 F.3d 135, 144 (2d Cir.

2010) (holding that courts are to consider, <u>inter alia</u>, "the expenses saved, and profits earned, by the infringer; [and] the revenue lost by the copyright holder").

**V.     Conclusion**

For the foregoing reasons,

(a) Plaintiffs' motion for partial summary judgment on Plaintiffs' ownership or control of the works at issue (Dckt. Entry No. 420) is (1) GRANTED as to the 55 disputed sound recordings referenced in SUF ¶¶ 271-273; (2) GRANTED as to the 96 disputed sound recordings referenced in SUF ¶¶ 237-241; (3) DENIED as to the 207 disputed sound recordings referenced in SUF ¶¶ 155, 181, 186-200, 218, 245, 247, 248, 284-286, 329, 330, 353, 355, 371; and (4) GRANTED as to the 39 disputed sound recordings referenced in SUF ¶¶ 33, 39, 43, 52, 78, 83, 84, 85.

(b) Plaintiffs shall have the opportunity to submit any further evidence with regard to ownership of the sound recordings for which summary judgment has been denied.  Plaintiffs shall submit such evidence (and any related legal argument) no later than April 4, 2011.  Defendants shall submit any briefing regarding this evidence no later than April 7, 2011.  Plaintiff's Reply, if any, shall be due at the close of business on April 8, 2011.  Initial briefs on this issue are limited to no more than eight (8) pages.  The reply, if any, is limited to five (5) pages.

The parties will be permitted to supplement the Pre-Trial Order with any evidence and witnesses who become relevant only by virtue of the Court's order regarding these submissions.  Any such supplementation will be permitted within 48 hours of any such order.

17

    (c) Plaintiffs' motion for partial summary judgment on direct infringement (Dckt. Entry No. 430) is GRANTED.

SO ORDERED.

Dated: New York, New York
       March 29 2011

                                            Kimba M. Wood
                                            United States District Judge