REDACTED VERSION
-COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC, fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., | 06 Civ. 05936 (KMW) ECF CASE |
| Plaintiffs, | |
| v. | |
| LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* #2 TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING DEFENDANT MARK GORTON'S NET WORTH AND SOURCES OF INCOME UNRELATED TO LIME WIRE PRIOR TO ANY DETERMINATION THAT PUNITIVE DAMAGES ARE APPROPRIATE**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Jonathan H. Blavin (*pro hac vice*)
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
*Attorneys for Plaintiffs*

Date: April 6, 2011

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................. 3

    A.   Three days after the Supreme Court's decision in Grokster, Gorton created the M.J.G. Lime Wire and M.J. Gorton family limited partnerships and transferred his interests in Lime Wire and Lime Group into the partnerships, over which he retained control as general partner ........................... 3

    B.   Gorton also created four other family limited partnerships – and transferred his ownership interests in five other businesses into these partnerships ........................................................................... 4

    C.   Gorton's personal assets prior to the transfers differ significantly from Gorton's personal assets following the transfers .................................. 5

III. ARGUMENT .................................................................................... 6

    A.   The evidence Defendants seek to exclude is directly relevant to the badges of fraud – which, courts have explained, usually provide the only evidence of actual intent to defraud – and exclusion of this evidence will severely prejudice Plaintiffs' ability to prove their fraudulent conveyance claim .............. 6

        1.   Gorton's ownership interests in business other than Lime Wire – and his contemporaneous transfers of these interests into other family limited partnerships – are circumstantial evidence of Gorton's fraudulent intent ...................................................... 7

        2.   Because the jury must consider Gorton's financial condition before and after Gorton's June 30, 2005, transfer of Lime Wire into the Lime Wire FLP – one of the agreed-upon "badges of fraud" – the jury must necessarily consider the value of Gorton's family members' interests in family limited partnerships other than the Lime Wire FLP ...................................................... 10

    B.   The Court has already found Defendants liable for intentional inducement of copyright infringement – a finding that satisfies the "willful and intentional misdoing" finding that supports punitive damages – and Defendants therefore cannot claim prejudice ........................................ 11

        1.   New York law permits punitive damage awards upon a finding of "willful and intentional misdoing" – and the Court has already specifically so found .......................................................... 11

        2.   The cases cited by Defendants are inapposite .......................... 13

**TABLE OF CONTENTS**
**(continued)**

**Page**

C.  Further bifurcation of this case is unworkable given Plaintiffs' need to show evidence of Gorton's financial condition to prove fraudulent conveyance, and the procedural and logistical burdens on the Court, the jurors and the parties – as well as the potential delay – weigh in favor of a unitary damages phase ........................................................................................... 15

IV.  CONCLUSION............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Dallas v. Goldberg,*
143 F. Supp. 2d 312 (S.D.N.Y. 2001)...............................................................2, 16

*Dent v. United States Tennis Ass'n,*
No. CV-08-1533, 2010 WL 1286391 (E.D.N.Y. Mar. 30, 2010)...........................15

*Getty Petroleum Corp. v. Island Transp. Corp.,*
862 F.2d 10 (2d Cir. 1988)...................................................................................15

*In re Baker,*
18 B.R. 243 (Bankr. W.D.N.Y. 1982) ..............................................................2, 12

*In re Chadborne Industries, Ltd.,*
71 B.R. 86 (Bankr. S.D.N.Y. 1987)........................................................................9

*In re Kaiser,*
722 F.2d 1574 (2d Cir. 1983)...........................................................................7, 10

*In re Weeden,*
306 B.R. 449 (Bankr. W.D.N.Y. 2004) ................................................................10

*Kakeh v. United Planning Organization, Inc.,*
587 F. Supp. 2d 125 (D.D.C. 2008) ....................................................................16

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Group, N.V.,*
No. 94 CIV 4725 (CSH), 1999 WL 11553 (S.D.N.Y. Jan. 13, 1999) ...................13

*Laurin v. Pokoik,*
No. 02 Civ. 1938, 2005 WL 2230457 (S.D.N.Y. Sept. 13, 2005) .........................14

*Lennon v. Seaman,*
No. 99 Civ. 2664, 2002 WL 109525 (S.D.N.Y. Jan. 28, 2002)..............................16

*Lippe v. Bairnco Corp.,*
249 F. Supp. 2d 357 (S.D.N.Y. 2003)....................................................................3

*Loussier v. Universal Music Group, Inc.,*
No. 02 Civ 2447 (KMW), 2005 WL 5644421 (S.D.N.Y. July 14, 2005)...............14

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.,*
545 U.S. 913 (2005).............................................................................1, 3, 6, 9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Orr v. Kinderhill Corp.*,
 991 F.2d 31 (2d Cir. 1993)......................................................................................8, 9

*Rosa v. Town of East Hartford*,
 No. 3:00CV1367, 2005 WL 752206 (D.C. Conn. Mar. 31, 2005) ..........................................16

*Simpson v. Pittsburgh Corning Corp.*,
 901 F.2d 277 (2d Cir. 1990)..........................................................................................15

*Smith v. Lightning Bolt Productions, Inc.*,
 861 F.2d 363 (2d Cir. 1988)..........................................................................................14

*Softel, Inc. v. Dragon Medical and Scientific Comms Ltd.*,
 891 F. Supp. 935 (S.D.N.Y. 1995), cert. denied, 523 U.S. 1020 (1998) ................................11

*Tyco Int'l Ltd. v. Walsh*,
 No. 02 Civ. 4633 (DLC), 2010 WL 3000179 (S.D.N.Y. July 30, 2010)................................15

**STATE CASES**

*First Fidelity Bank, N.A. v. Manzo*,
 250 A.D.2d 730, 673 N.Y.S.2d 196 (N.Y. App. Div. 1998) ........................................1, 8, 10

*Laurie Marie M. v. Jeffrey T.M.*,
 159 A.D.2d 52, 559 N.Y.S.2d 336 (N.Y. App. Div. 1990) ........................................1, 12, 13

*Le Mistral, Inc. v. Columbia Broadcasting System*,
 61 A.D.2d 491, 402 N.Y.S.2d 815 (N.Y. App. Div. 1978) ................................................1, 11

*Marine Midland v. Murkoff*,
 120 A.D.2d 122, 508 N.Y.S.2d 17 (N.Y. App. Div. 1986) ....................................................7

*Nardelli v. Stamberg*,
 44 N.Y.2d 500, 377 N.E.2d 975, 406 N.Y.S.2d 443 (N.Y. 1978)...............................11, 12, 13

*Nonas v. Romantini*,
 271 A.D.2d 292, 706 N.Y.S.2d 109 (N.Y. App. Div. 2000) ..................................................8

*NPR, LLC v. Met Fin. Mgmt., Inc.*,
 63 A.D.3d 1128, 882 N.Y.S.2d 253 (N.Y. App. Div. 2009) ..................................................9

*Pen Pak Corp. v. LaSalle Nat'l Bank of Chicago*,
 240 A.D.2d 384, 658 N.Y.S.2d 407 (N.Y. App. Div. 1997) ..................................................7

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Rose v. Brown & Williamson Tobacco Corp.*,
   10 Misc.3d 680, 809 N.Y.S.2d 784 (N.Y. Sup. Ct. 2005) ......................................................11

*Wittemann Bros. v. Forman Bottling Co.*,
   178 A.D. 674, 165 N.Y.S. 811 (N.Y. App. Div. 1917) ..................................................8, 9, 10

**FEDERAL RULES**

Fed. R. Civ. P. 42(b) .............................................................................................................2

**STATE STATUTES**

New York Debtor & Creditor Law § 276 ...................................................................6, 7

## I.      <u>INTRODUCTION</u>

In a thinly-veiled attempt to undermine Plaintiffs' ability to prove Mark Gorton's

fraudulent conveyance, Defendants' cast their Motion In Limine #2 (Dkt. No. 655) as an effort to

avoid prejudice with respect to punitive damages.  Defendants' Motion In Limine #2 should be

denied for three reasons:

*First*, the evidence Defendants seek to exclude is directly relevant to fraudulent

conveyance, and Plaintiffs would be severely prejudiced by its exclusion.  As with most

fraudulent conveyance claims, Plaintiffs intend to show Gorton's fraudulent intent by

circumstantial evidence known as "badges of fraud" – for example, Gorton's financial condition

before and after his transfer of Lime Wire into a family limited partnership, and Gorton's pattern

of conduct in transferring $150 million worth of ownership interests in numerous different

businesses into six different family limited partnerships shortly after the Supreme Court's

decision in *Grokster*.  Defendants have offered no objection to Plaintiffs' proposed jury

instruction listing these very same badges of fraud and thus cannot with a straight face deny the

relevance of this evidence to Plaintiffs' fraudulent conveyance claim.  *See* Plaintiffs' Proposed

Jury Instruction No. 42.

*Second*, Defendants' claim of prejudice fails.  This Court has already specifically found

that Mark Gorton *intentionally* induced infringement of Plaintiffs' copyrighted works on a

massive scale.  The Court's determination of intentional inducement satisfies the predicate

finding of "willful and intentional misdoing" that New York law requires to permit recovery of

punitive damages.  *See, e.g.*, *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52, 59, 559 N.Y.S.2d

336, 341 (N.Y. App. Div. 1990) (a finding of liability for intentional wrongdoing serves as a

predicate for the award of punitive damages); *Le Mistral, Inc. v. Columbia Broadcasting System*,

61 A.D.2d 491, 495, 402 N.Y.S.2d 815, 817-18 (N.Y. App. Div. 1978) (recovery of punitive damages depends on finding that defendant acted "with a wilful and intentional misdoing"); *In re Baker*, 18 B.R. 243, 245 (Bankr. W.D.N.Y. 1982) (applying New York law).  Because the Court has specifically found intentional wrongdoing, the test for imposing punitive damages has already been satisfied, and Defendants cannot, as a matter of law, be prejudiced by the jury's consideration of net worth in determining the amount of punitive damages.  Defendants do not cite a single case that holds that a bifurcated punitive damages phase is required to avoid prejudice even after the court has already found liability for intentional wrongdoing.

*Third*, the added procedural and logistical burdens on the Court, the jurors and the parties in preparing for and conducting a third phase of litigation – as well as the prejudice to Plaintiffs of encountering, on the eve of trial, further delay in the resolution of this case – outweigh any potential prejudice to Defendants, who have failed to carry their burden of proving that a separate punitive damages phase is necessary.  *See* Fed. R. Civ. P. 42(b);  *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) (observing that "bifurcation remains the exception rather than the rule," and "[t]he party seeking bifurcation bears the burden of establishing that bifurcation is warranted").

In sum, because the evidence Defendants seek to exclude is critical to proving Plaintiffs' fraudulent conveyance claim and because the Court has already found Defendants liable for intentional wrongdoing, any potential prejudice to Defendants is remote – and far outweighed by the prejudice Plaintiffs will suffer if forced to prove their fraudulent conveyance claim without reference to the value of the assets Gorton transferred into the partnerships owned by Gorton and his family members, Gorton's transfer of assets into various family limited partnerships, or to Gorton's financial condition.

## II.     FACTUAL BACKGROUND

Defendants' motion, by describing the evidence they seek to exclude in broad strokes, obscures the impact that exclusion of the evidence will have on Plaintiffs' ability to prove their fraudulent conveyance claim.[1] A short summary of the relevant facts illustrates the critical importance of this evidence to Plaintiffs' ability to prove their fraudulent conveyance claim:

### A.     <ins>**Three days after the Supreme Court's decision in *Grokster*, Gorton created the M.J.G. Lime Wire and M.J. Gorton family limited partnerships and transferred his interests in Lime Wire and Lime Group into the partnerships, over which he retained control as general partner**</ins>

On June 30, 2005, only three days after the Supreme Court's decision in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913 (2005), which Gorton told the *New York Times* threatened Lime Wire's very existence, Gorton transferred to the M.J.G. Lime Wire Family Limited Partnership ("Lime Wire FLP") his entire ownership interest in Lime Wire. *See* March 28, 2005, New York Time article (attached as Exhibit 1 to Declaration of Kelly Klaus ("Klaus Decl.") dated April 6, 2011, submitted herewith) (quoting Gorton as stating that "[i]f the Supreme Court says it is illegal to produce [P2P file-sharing] software, Lime Wire the company will cease to exist"); Gorton email (Klaus Decl. Ex. 2) ███████████████████████ ████████████████████████████████████ Asset Freeze Hearing Tr. (Klaus Decl. Ex. 3) at 27:21-23; Lime Wire FLP documents (Klaus Decl. Ex. 4) at LW F 000014; Elizabeth Weiner email (Klaus Decl. Exhibit 5).  Gorton is the general partner of the Lime Wire FLP, and his wife and children are the limited partners.  Asset Freeze Hearing Tr. (Klaus Decl. Ex. 3) at 28:4-25.

---

[1] Plaintiffs must prove their fraudulent conveyance claim, which requires proof of actual intent to hinder, delay or defraud, by clear and convincing evidence. *See Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 374 (S.D.N.Y. 2003) (discussing N.Y. Debt. & Cred. Law § 276).

Also three days after the *Grokster* decision was announced, Gorton transferred his 100 percent ownership interest in Defendant Lime Group, LLC into a different limited partnership, the  M.J. Gorton Family Limited Partnership, of which Gorton is the sole general partner, and his wife and children the limited partners.  *See* M.J. Gorton Family Limited Partnership documents (Klaus Decl. Ex. 6) at LW F 000167; Asset Freeze Hearing Tr. (Klaus Decl. Ex. 3) at 29:7-30:3. Gorton testified that he retains control of the assets in the family limited partnerships.  Asset Freeze Hearing Tr. (Klaus Decl. Ex. 3) at 28:4-29:6; 128:19-21.

**B.     Gorton also created four other family limited partnerships – and transferred his ownership interests in five other businesses into these partnerships**

At the same time, in addition to these two family limited partnerships, Gorton also created *three* additional family limited partnerships, also with Gorton as the sole general partner and his wife and children as the limited partners – for a total of five family limited partnerships. And, also on June 30, 2005, Gorton transferred into those family limited partnerships his ownership interests in Lime Brokerage, LLC; Tower Research Capital  LLC; Tower Research Capital Investments, LLC; and 377 Tower Realty LLC.  *See* Deposition of Kenneth Rubinstein ("Rubinstein Dep.") (Klaus Decl. Ex. 7) at 83:16-84:3, 84:13-18; Lime Brokerage FLP documents (Klaus Decl. Ex. 8) (transfer of ownership interest in Lime Brokerage); Rubinstein Dep. (Klaus Decl. Ex. 7) at 85:2-24, 86:10-18; Tower Research FLP documents (Klaus Decl. Ex. 9) (transfer of ownership interest in Tower Research entities); Rubinstein Dep. (Klaus Decl. Ex. 7) at 87:2-17, 88:5-9; Tower Realty FLP documents (Klaus Decl. Ex. 10) (transfer of 100 percent ownership interest in Tower Realty LLC).

Then, in December 2006, Gorton created a sixth family limited partnership, the M.J.G. Lime Spot Family Limited Partnership, and transferred into this entity his 100 percent ownership

interest in Lime Spot LLC.  *See* Rubinstein Dep. (Klaus Decl.) at 88:17-89:21; Lime Spot FLP

documents (Klaus Decl. Ex. 11).

**C.**      **Gorton's personal assets prior to the transfers differ significantly from
         Gorton's personal assets following the transfers**

At the asset freeze hearing before this Court on July 29, 2010, Gorton testified that his

assets – including his family member's interests in the family limited partnerships following the

2005 transfers of Gorton's businesses – totaled around $270 million.  Gorton estimated that, at

the time, he personally – excluding his family members' partnership interests – had roughly $200

million in assets.  Asset Freeze Hearing Tr. (Klaus Decl. Ex. 3) at 7:11-30:3.  Gorton further

testified that his estimated $200 million in personal assets included about $95 million in an

individual retirement account – *and* roughly $70 million in assets held as Gorton's partnership

interest in his six family limited partnerships – but did not include his wife's interests in the

various family limited partnerships into which Gorton transferred his business interests.  *Id*. at

27:21-23.  Gorton testified that his wife's interests in the various family limited partnerships

totaled around $70 million and that altogether the total value of the six family limited

partnerships was around $150 million.  *Id*. at 22:13-25.

In a declaration filed to oppose an asset freeze, Gorton explained that he ███████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  Decl.

of Mark Gorton, June 30, 2010 (Klaus Dec. Ex. 12), ¶ 32.  At the asset freeze hearing, Gorton

argued that the $17 million he holds in cash outside of the family limited partnerships

demonstrated that he did not intend to hide his assets from creditors.  Gorton testified:

> I think the point I was making in paragraph 32 [of my declaration]
> was that I have $17 million in cash outside the family limited

> partnerships; and that if I was looking to hide my assets, ship them
> offshore, protect them, all sorts of things, the last thing in the
> world I would do would [be to] have 17 million in cash sitting
> around right out in the open.

Asset Freeze Hearing Tr. (Klaus Decl. Ex. 3) at 20:20-21:2.

Gorton claimed that the "primary benefit" of creating these family limited partnerships was estate planning – and that the family limited partnerships allowed Gorton "to start the process of transferring assets to [his children] over time while still maintaining control over the children's assets." *Id*. at 68:17-69:3.  Gorton also claimed that, even though the attorney he engaged to create the family limited partnerships advertised a particular expertise in "asset protection," Gorton's transfer of assets into the family limited partnerships had nothing to do with asset protection or concerns raised by the *Grokster* case.  *Id*. at 55:17-57:20.

## III.   ARGUMENT

### A.   The evidence Defendants seek to exclude is directly relevant to the badges of fraud – which, courts have explained, usually provide the *only* evidence of actual intent to defraud – and exclusion of this evidence will severely prejudice Plaintiffs' ability to prove their fraudulent conveyance claim

Mark Gorton's net worth, his sources of income other than Lime Wire, the six family limited partnerships into which he transferred his assets following the Supreme Court's decision in *Grokster*, *and the value of the assets transferred* are all highly relevant to Plaintiffs' fraudulent conveyance claim under section 276 of the New York Debtor & Creditor Law – specifically, to at least three of the key "badges of fraud" that the law holds give rise to an inference of fraudulent intent:

- Mark Gorton's "financial condition . . . before and after the transaction in question,"

- the existence or cumulative effect of a pattern or a series of transactions or course of conduct after the pendency or threat of suits by creditors, and

- the general chronology of the events and transactions under inquiry.

*See, e.g.*,  *In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983) (listing badges of fraud from which actual intent to hinder, delay or defraud may be inferred to find liability for fraudulent conveyance under N.Y. Debt. & Cred. Law § 276).  Even Defendants agree that Gorton's fraudulent intent may be shown by these categories of circumstantial evidence, for Defendants posed no objection to Plaintiffs' Proposed Jury Instruction No. 42, which lists these very same categories.  Defendants cannot plausibly deny that this evidence is highly relevant.

      **1.**      **Gorton's ownership interests in business other than Lime Wire – and his contemporaneous transfers of these interests into other family limited partnerships – are circumstantial evidence of Gorton's fraudulent intent**

Defendants fail in their attempt to cast Gorton's transactions involving businesses *other than Lime Wire* as irrelevant.  Courts have repeatedly observed that, without circumstantial evidence from which actual intent to hinder, delay or defraud may be inferred, a plaintiff alleging fraudulent conveyance may be left with no way to prove fraudulent intent.  For example, in *Pen Pak Corp. v. LaSalle Nat'l Bank of Chicago*, 240 A.D.2d 384, 386, 658 N.Y.S.2d 407, 408 (N.Y. App. Div. 1997), the court reasoned: "Direct evidence of fraudulent intent is often elusive. Therefore, courts will consider 'badges of fraud' which are circumstances that accompany fraudulent transfers so commonly that their presence gives rise to an inference of intent." *Id*. at 386.  *See Marine Midland v. Murkoff*, 120 A.D.2d 122, 128, 508 N.Y.S.2d 17 (N.Y. App. Div. 1986) (observing that fraudulent intent, by its very nature, is rarely susceptible to direct proof and must be established by inference from the circumstances surrounding the allegedly fraudulent act).

Thus, courts recognize – and Gorton's self-serving testimony at the asset freeze hearing demonstrates – that a defendant sued for fraudulent conveyance will virtually never provide

direct testimony admitting to fraudulent intent.   Instead, a factfinder must base its determination

of intent on the circumstances surrounding the alleged fraudulent transfer – including other

transactions and transfers that are not themselves part of the specific, alleged fraudulent transfer.

As the court in *Wittemann Bros. v. Forman Bottling Co.*, 178 A.D. 674, 676, 165 N.Y.S. 811,

813 (N.Y. App. Div. 1917), explained:

> Proof of contemporaneous conveyances, no matter to whom made,
> is *always relevant* to the issue of a fraudulent conveyance . . . .
> They often furnish convincing evidence that the conveyance in
> question was part of a comprehensive scheme to divest the debtor
> of all his property in fraud of his creditors.  Not only is evidence of
> the circumstances under which they are made and the
> consideration paid therefor is also relevant to the issue of
> fraudulent invent.  This rule extends to all conveyances so nearly
> related in time as to permit the inference that they arose from the
> same source of intent.

*Id*. (emphasis added).  The court concluded that exclusion of evidence of the contemporaneous

conveyances was material error, for which judgment must be reversed.  *See also Orr v.

Kinderhill Corp.,* 991 F.2d 31, 35 (2d Cir. 1993) ("[A]n allegedly fraudulent conveyance must be

evaluated in context; where a transfer is only a step in a general plan, the plan must be viewed as

a whole with all its composite implications.") (internal quotations and citations omitted); *Nonas

v. Romantini*, 271 A.D.2d 292, 292-93, 706 N.Y.S.2d 109, 110 (N.Y. App. Div. 2000) (analyzing

the circumstances surrounding the allegedly fraudulent transaction, including entirely separate

transactions); *First Fidelity Bank, N.A. v. Manzo*, 250 A.D.2d 730, 730-731, 673 N.Y.S.2d 196,

197 (N.Y. App. Div. 1998) (finding that actual fraudulent intent was supported by evidence that

defendant had engaged in this same type of transfer previously, in other situations involving

different properties and creditors).

Obviously, evidence of Gorton's contemporaneous transfers of entities other than Lime

Wire will be meaningful to the jury's determination of fraudulent intent only if the jury

understands *the value* of the entities transferred – for it is also the impact the transfers have on

Gorton's financial condition before and after the transfers, not just the fact of the transfers

themselves, that provides circumstantial evidence of intent to hinder, delay or defraud creditors.

*See, e.g.*, *Orr*, 991 F.2d at 35 (requiring analysis of the "implications" of the allegedly fraudulent

transfer and other transactions that show the general context of the transfer); *In re Chadborne

Industries, Ltd.*, 71 B.R. 86, 89 (Bankr. S.D.N.Y. 1987) (valuation of property before and after

the allegedly fraudulent transfer is relevant to the issue of actual intent to hinder, delay or

defraud).  *See also NPR, LLC v. Met Fin. Mgmt., Inc*., 63 A.D.3d 1128, 1129, 882 N.Y.S.2d 253,

254 (N.Y. App. Div. 2009) (recognizing that the transfer of assets sufficient to pay a potential

obligation is one indicia of fraudulent intent).  This is especially true where Gorton has already

argued – and is certain to argue at trial – that the $17 million in cash he holds outside of family

limited partnerships is evidence of his lack of intent to hide assets from creditors.  It would be

highly prejudicial to permit Gorton to argue his lack of fraudulent intent based on this specific

amount of money – about which Gorton noted, "I would say $17 million or $19 million is real

money," Asset Freeze Hearing Tr. (Klaus Decl. Ex. 3) at 128:14 – and then exclude evidence

about the $150 million value of assets Gorton transferred into family limited partnerships.

Thus, even though Plaintiffs' fraudulent conveyance claim alleges only transfers related

to Lime Wire and Lime Group's interest in Lime Wire into the Lime Wire FLP, Gorton's

transfers of his other entities into still other family limited partnerships shortly after the *Grokster*

decision – *and the value of those assets*, which Gorton testified totaled around $150 million – are

nevertheless highly relevant and material to Plaintiffs' fraudulent conveyance claim – and may

provide, as the court implicitly recognized in *Wittemann*, the only evidence that the conveyance

at issue "was part of a comprehensive scheme" to divest Gorton of assets reachable by future

creditors.  *See Wittemann*, 178 A.D. at 676.

> **2.    Because the jury must consider Gorton's financial condition before and after Gorton's June 30, 2005, transfer of Lime Wire into the Lime Wire FLP – one of the agreed-upon "badges of fraud" – the jury must necessarily consider the value of Gorton's family members' interests in family limited partnerships other than the Lime Wire FLP**

Evidence concerning the value of Gorton's family members' interests in these six family limited partnerships is likewise highly relevant circumstantial evidence of fraudulent intent:

*First*, as previously noted, *the value of assets* held in Gorton's name before – and after – the June 30, 2005, transfers of Lime Wire and other entities into various family limited partnerships constitute one of the badges of fraud from which a jury may infer fraudulent intent. *See In re Kaiser*, 722 F.2d at 1582-83 ("financial condition of the party sought to be charged both before and after the transaction in question").  Plaintiffs cannot meaningfully show Gorton's financial condition before and after the transfer in question without reference to the value of Gorton's family members' interests in the family limited partnerships, which resulted from the June 30, 2005, transfers.

*Second*, Gorton has testified –  and will claim at trial –  that these transfers were made solely for estate planning purposes and not for the purpose of asset protection.  *See* Asset Freeze Hearing Tr. (Klaus Decl. Ex. 3) at 55:17-57:20, 68:17-69:3.   Without knowing the value of Gorton's family members' interests in the family limited partnerships, the jury cannot meaningfully test Gorton's proffered innocent motive of estate planning.  *See In re Weeden*, 306 B.R. 449, 463 (Bankr. W.D.N.Y. 2004) (engaging in detailed analysis of specific asset values and outcomes to test defendant-debtor's claim that the alleged fraudulent transfer was done for innocent tax planning purposes).  It would be highly prejudicial to permit Gorton to proffer an innocent explanation for his transfer of Lime Wire and then exclude evidence that would allow the jury to test that explanation.

**B.** **The Court has already found Defendants liable for *intentional* inducement of copyright infringement – a finding that satisfies the "willful and intentional misdoing" finding that supports punitive damages – and Defendants therefore cannot claim prejudice**

Of course, Defendants attempt to obscure the key relevance of the evidence they seek to exclude by focusing their argument almost exclusively on the issue of punitive damages. But even there the law does not provide, as Defendants suggest, that a defendant's net worth is too prejudicial to be introduced in the damages phase where the defendant *already has been found liable* for intentional inducement of infringement.[2]

**1.** **New York law permits punitive damage awards upon a finding of "willful and intentional misdoing" – and the Court has already specifically so found**

Defendants argue that a jury first must determine whether punitive damages are warranted before it may properly consider Gorton's net worth – but neglect to mention that the predicate finding for punitive damages required by New York law has already been made by this Court.

New York law requires a finding of "willful and intentional misdoing" or "reckless disregard of the plaintiff's rights" to permit recovery of punitive damages. *See, e.g.*, *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503, 377 N.E.2d 975, 977, 406 N.Y.S.2d 443, 445 (N.Y. 1978) (punitive damages may be awarded if defendant acted in reckless disregard of plaintiff's rights); *Le Mistral, Inc. v. Columbia Broadcasting System*, 61 A.D.2d 491, 495, 402 N.Y.S.2d 815, 817-18 (N.Y. App. Div. 1978) (recovery of punitive damages depends on finding that defendant acted

---

[2] Defendants do not – and indeed cannot – dispute the well-established rule that Defendants' net worth is "highly" relevant to the issue of determining how large a punitive damages award is needed to deter and punish the defendant. *See, e.g.*, *Rose v. Brown & Williamson Tobacco Corp.*, 10 Misc.3d 680, 708-709, 711, 809 N.Y.S.2d 784, 805-807 (N.Y. Sup. Ct. 2005); *Softel, Inc. v. Dragon Medical and Scientific Comms Ltd.*, 891 F. Supp. 935, 945 (S.D.N.Y. 1995), *cert. denied*, 523 U.S. 1020 (1998).

- 11 -

"with a wilful and intentional misdoing"); *In re Baker*, 18 B.R. 243, 245 (Bankr. W.D.N.Y. 1982) (applying New York law).  New York courts have reasoned that certain *liability* determinations satisfy this predicate finding for punitive damages.  In *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503, 377 N.E.2d 975, 977, 406 N.Y.S.2d 443, 445 (N.Y. 1978), the New York Court of Appeals reasoned that the jury's finding of liability for malicious prosecution precludes – "as a matter of law" – a determination that punitive damages are improper, "for the actual malice necessary to support an action for malicious prosecution also serves to justify an award of exemplary damages." *Id.* (noting that punitive damages for malicious prosecution may be awarded if the defendant was motivated by actual malice or acted in reckless disregard of plaintiff's rights).  The court further noted that, "(I)n torts which, like malicious prosecution, require a particular anti-social state of mind, the improper motive of the tortfeasor is both a necessary element in the cause of action and a reason for awarding punitive damages." *Id.* (quoting Restatement, Torts, Comment c, § 908).  Similarly, in *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52, 59, 559 N.Y.S.2d 336, 341 (N.Y. App. Div. 1990), the court reasoned that the jury's finding of liability for intentional infliction of emotional distress and the court's judgment as a matter of law regarding battery "necessarily encompassed findings that the defendant committed reckless or intentional acts certain to cause severe emotional distress." *Id.* at 59.  The court concluded that "[t]hose findings may also be a predicate for the award of punitive damages." *Id.*

Just as the factfinders in *Laurie Marie M*. found liability for intentional wrongdoing, this Court has already found that the Lime Wire Defendants, including Gorton, "engaged in purposeful conduct that fostered infringement, with the intent to foster such infringement" and "*intentionally* encouraged direct infringement by LimeWire users."  May 25, 2010, Opinion and

Order (Dkt. No. 223) at 29, 41 (emphasis added).   The Court found that Defendants:  knew that
Lime Wire users commit a substantial amount of infringement, ensured that Lime Wire enabled
infringement and assisted users committing infringement, relied on Lime Wire's enabling of
infringement for the success of its business, and failed to take meaningful steps to mitigate
infringement.  *Id*. at 41.

Because the Court has specifically found intentional wrongdoing, the standard for
imposing punitive damages has already been met, and Defendants cannot – as a matter of law –
complain that a punitive damages award is unwarranted and that they will be prejudiced by the
jury's consideration of net worth.  *See Nardelli*, 44 N.Y.2d at 503 (finding of liability for
malicious prosecution precludes – as a matter of law – a determination that punitive damages are
improper).

### 2.      The cases cited by Defendants are inapposite

Defendants' prejudice argument relies on wholly distinguishable cases, in which the
factfinder had not yet determined  liability or intent or in which the defendant sought to invoke
his financial circumstances to *limit* the size of the punitive damage award.  The facts here are just
the opposite.  The Court here has already determined liability – and indeed, has already found
that Defendants' inducement of infringement on a massive scale was intentional – and Gorton
has testified that he personally has a net worth of around $200 million, and certainly will not
attempt to use his net worth to *limit* the size of a punitive damages award.

In *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group, N.V*., No. 94 CIV 4725 (CSH),
1999 WL 11553 (S.D.N.Y. Jan. 13, 1999), unlike in this case, neither the court nor the jury had
made any relevant finding regarding intent, and the court therefore excluded the net worth of
plaintiff's parent companies as irrelevant until the jury found the requisite intent to support
punitive damages.  *Id*. at *12.  Here, the Court has already found Defendants acted intentionally

- 13 -

and purposefully, and there is no risk of prejudice.  This Court's decision in *Loussier v. Universal Music Group, Inc*., No. 02 Civ 2447 (KMW), 2005 WL 5644421 (S.D.N.Y. July 14, 2005) is likewise easily distinguishable.  In *Loussier*, liability had not yet been decided, and the Court granted a motion *in limine* to exclude evidence of the defendant's net worth during the liability phase – while explicitly recognizing that evidence of defendant's wealth and financial condition "may become necessary during the *damage* phase of the trial."  *Id*. at *3 (emphasis in original).  *See Laurin v. Pokoik*, No. 02 Civ. 1938, 2005 WL 2230457, at *4 (S.D.N.Y. Sept. 13, 2005) (concluding that evidence of defendant's net worth is not admissible in liability phase of workplace harassment case).

 *Smith v. Lightning Bolt Productions, Inc*., 861 F.2d 363 (2d Cir. 1988), is similarly inapposite, for in *Smith*, defendants sought consideration of their financial circumstances to *reduce* the jury's punitive damages award.  *Id*. at 373.  The court noted that the record on defendants' financial circumstances was incomplete –  because, although "it often would be prejudicial to a defendant to attempt to litigate its financial condition during the trial *on the issues of liability* and compensatory damages," defendants did not seek a separate punitive damages trial at which they could present evidence of their financial condition – and therefore were stuck with the consequences of not developing a more fulsome record.  *Id*. at 373-74 (emphasis added).

 Finally, in each of the cases cited by Defendants, evidence of defendant's financial condition was not relevant to any liability issues – unlike here, where the evidence is highly relevant to Plaintiffs' proof, by clear and convincing evidence, of their fraudulent conveyance

claim against Gorton.[3]   Defendants fail to cite a single case in which liability for intentional

wrongdoing has already been found, and their prejudice argument should be rejected.

> **C.    Further bifurcation of this case is unworkable given Plaintiffs' need to show evidence of Gorton's financial condition to prove fraudulent conveyance, and the procedural and logistical burdens on the Court, the jurors and the parties – as well as the potential delay – weigh in favor of a unitary damages phase**

Under Second Circuit law, bifurcation of the amount of punitive damages is left to the

sound discretion of the trial court.  *Simpson v. Pittsburgh Corning Corp*., 901 F.2d 277, 283 (2d

Cir. 1990); *Getty Petroleum Corp. v. Island Transp. Corp*., 862 F.2d 10, 14 (2d Cir. 1988).  The

Court should exercise its sound discretion here to deny Defendants' last-minute request for

further bifurcation of a case that has already been bifurcated into liability and damages phases.

By seeking to excise evidence relevant to punitive damages from the damages phase,

Defendants essentially seek trifurcation of a case that was already bifurcated once.  Although

Defendants have known about the trial of Plaintiffs' fraudulent conveyance claim since – at the

latest – the Court's summary judgment opinion issued on May 25, 2010, and even though

Defendants were ordered to produce documents related to Gorton's financial condition in August

2010, *see* August 9, 2010, Order (Dkt. No. 302), at 8-9, Defendants have waited until the eve of

---

[3]   Two of the cases relied on by Defendants decided *discovery* issues – not admissibility issues – that were raised prior to any finding of liability.  In *Tyco Int'l Ltd. v. Walsh*, No. 02 Civ. 4633 (DLC), 2010 WL 3000179 (S.D.N.Y. July 30, 2010), the court concluded that, because "it is not clear that the defendant will invoke his financial circumstances as a defense . . . . it would be premature to force the defendant to produce his net worth information at this time."  *Id*. at *1. Likewise, in *Dent v. United States Tennis Ass'n*, No. CV-08-1533, 2010 WL 1286391 (E.D.N.Y. Mar. 30, 2010), the plaintiff moved to compel the reappearance of the defendant for further deposition testimony concerning his net worth.  *Id*. at *1.  The court reasoned that discovery on net worth was premature.  *Id*.  Here, the Court has already determined that discovery of Gorton's net worth was appropriate in light of the Court's finding of liability.  August 9, 2010, Order (Dkt. No. 302), at 8-9.  Neither of these cases has any bearing on the issues here.

trial to claim prejudice from the lack of trifurcation.  At this point, in light of the fact that Defendants have already been found liable for intentional wrongdoing, further bifurcation would only serve to delay resolution of this matter and would pose unworkable procedural and logistical challenges, especially given the critical relevance of Gorton's financial condition to Plaintiffs' fraudulent conveyance claim.  *See, e.g.*, *Kakeh v. United Planning Organization, Inc.*, 587 F. Supp. 2d 125, 131 (D.D.C. 2008) ("[I]t is far too late in the very lengthy history of this litigation to make a serious request for bifurcation; trial is scheduled to begin in less than two weeks."); *Lennon v. Seaman*, No. 99 Civ. 2664, 2002 WL 109525, at *10 (S.D.N.Y. Jan. 28, 2002) (denying motion for bifurcation because issues were interrelated, involved identical testimony and documentary evidence and thus would fail to achieve the goal of judicial economy).  *See also Rosa v. Town of East Hartford*, No. 3:00CV1367, 2005 WL 752206, at *5 (D.C. Conn. Mar. 31, 2005) (reasoning that there are less burdensome ways than bifurcation to deal with potential prejudice to the defendants, including the use of a special verdict form, a well-adapted jury charge, and carefully crafted limiting instructions);

Defendants have not carried their burden of proving that bifurcation is warranted. *Dallas*, 143 F. Supp. at 315 (observing that "bifurcation remains the exception rather than the rule," and "[t]he party seeking bifurcation bears the burden of establishing that bifurcation is warranted").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion *In Limine* #2 and allow Plaintiffs to introduce: (1) evidence and argument concerning Mark Gorton's net worth and sources of income other than Lime Wire, (2) Gorton's transfer of assets other than Lime Wire into family limited partnerships, and (3) the value of the assets transferred by Gorton to the various family limited partnerships, regardless of whether the

- 16 -

partnership interests in those transferred assets are currently held by Mark Gorton or other members of his family.

    Dated:  April 6, 2011                 Respectfully submitted,

                                     */s/ Kelly M. Klaus*
                                   Kelly M. Klaus

                                 Attorney for Plaintiffs
                                 Munger, Tolles & Olson LLP
                                 355 South Grand Avenue, 35th Floor
                                 Los Angeles, CA 90071-1560
                                 (213) 683-9100
                                 (213) 687-3702 (Fax)