UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC, fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* #3 TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING CERTAIN NON-PARTIES' INVOCATION OF THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Jonathan H. Blavin (*pro hac vice*)
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
*Attorneys for Plaintiffs*

Date: April 6, 2011

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .......................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 2

III.    ARGUMENT ................................................................................................................. 6

      A.      EVIDENCE OF EMPLOYEES' USE OF USE OF P2P SERVICES
            *INCLUDING LIMEWIRE ITSELF* TO SHARE FILES ILLEGALLY IS
            RELEVANT TO THE DEFENDANTS' CONDUCT, ATTITUDE, AND
            STATE OF MIND, AND IS NOT UNFAIRLY PREJUDICIAL ........................ 6

      B.      THE CIRCUMSTANCES OF THE EMPLOYEES' INVOCATION
            PLAINLY SATISFY THE SECOND CIRCUIT'S TEST FOR
            APPLYING THE ADVERSE INFERENCE TO DEFENDANTS ...................... 9

IV.     CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Akinyemi v. Napolitano*,
  No.8-4094-cv, 2009 WL 2488079 (2d Cir. Aug. 17, 2009) ................................................11, 12

*Arista Records, LLC v. Lime Wire, LLC*,
  715 F. Supp. 2d 481 (S.D.N.Y. 2010) .................................................................................1, 6

*Banks v. Yokemick*,
  144 F. Supp. 2d 272 (S.D.N.Y. 2001) ......................................................................................10

*Brink's Inc. v. City of New York*,
  717 F.2d 700 (2d Cir. 1983)...............................................................................................8, 10

*Bryant v. Media Right Productions, Inc.*,
  603 F.3d 135 (2d Cir. 2010)................................................................................................1, 6

*In re Worldcom, Inc.*,
  377 B.R. 77 (Bankr. S.D.N.Y. 2007) .......................................................................................11

*In re Worldcom, Inc. Securities Litig.*,
  No. 02 Civ 3288 DLC, 2005 WL 375315 (S.D.N.Y. Feb. 17, 2005) .....................................12

*LiButti v. United States*,
  107 F.3d 110 (2d Cir. 1997)..........................................................................................2, 8, 9, 12

*Park West Radiology v. CareCore Nat'l LLC*,
  675 F. Supp. 2d 314 (S.D.N.Y. 2009).......................................................................................8

*RAD Services, Inc. v. Aetna Casualty & Surety Co.*,
  808 F.2d 271 (3d Cir. 1986)..............................................................................................9, 10

*United States v. Al-Moayad*,
  545 F.3d 139 (2d Cir. 2008)......................................................................................................7

*United States v. Miller*,
  626 F.3d 682 (2d Cir. 2010)......................................................................................................7

*Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*,
  936 F.2d 1364 (1st Cir. 1991) ...................................................................................................7

*Wechsler v. Hunt Health Systems, Ltd.*,
  No. 94 Civ. 8294, 2003 WL 21998980 (S.D.N.Y. Aug. 22, 2003) ..........................................9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

STATE CASES

*Le Mistral, Inc. v. Columbia Broadcasting Sys.*,
   402 N.Y.S.2d 815 (N.Y. App. 1978) ........................................................................7

*TRW, Inc. v. Superior Court*,
   25 Cal. App. 4th 1834 (Cal. App. 1994) ...............................................................7

FEDERAL RULES

Fed. R. Evid. 401 ..............................................................................................................7

Fed. R. Evid. 402 ..............................................................................................................7

Fed. R. Evid. 403 ..............................................................................................................7

CONSTITUTIONAL PROVISIONS

Fifth Amendment ..................................................................................................... passim

OTHER AUTHORITIES

Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases*,
   91 YALE L.J. 1062, 1119 n.214 (1982) .............................................................10

I.    **INTRODUCTION**

For nearly a decade and throughout this litigation, Defendants repeatedly have claimed

that they had no idea that LimeWire users were engaged in massive infringement.  There is

nothing more compelling in showing the falsity of this claim[1] than the fact that LimeWire's ***own***

***employees***, including its future Director of Compliance, were so concerned about the prospect of

***criminal liability*** for their own infringing use of LimeWire that they invoked the Fifth

Amendment at their depositions.   That LimeWire's own employees effectively admitted at their

depositions that they were personally engaged in infringing activity using LimeWire and

believed that activity to be illegal, while Defendants time and again claimed ignorance of the

rampant infringement facilitated by LimeWire, even after these employees' depositions, is highly

relevant to Defendants' "state of mind" and "conduct and attitude," two factors the jury should

consider in setting a statutory damages award, *see Bryant v. Media Right Productions, Inc.*, 603

F.3d 135, 144 (2d Cir. 2010), and in determining the amount of punitive damages available

under state law.  Defendants should not be allowed to hide this critical, damning fact from the

jury.

Defendants' arguments for precluding Lime Wire employees' invocation of the Fifth

Amendment are meritless.  First, any purported prejudice caused by the introduction of this

evidence is outweighed by its highly probative nature.  This evidence demonstrates that

Defendants' own employees engaged in exactly the conduct that Defendants have denied any

knowledge of throughout this litigation, and believed that it was illegal.   Defendants state that

---

[1]  Indeed, the Court at summary judgment found that Defendants were "aware that LimeWire's
users commit a substantial amount of copyright infringement." *Arista Records, LLC v. Lime
Wire, LLC*, 715 F. Supp. 2d 481, 515 (S.D.N.Y. 2010).  As explained in Plaintiffs' motion *in
limine*, Doc. No. 538, Defendants should be precluded at trial from repeating yet again this false
belief that LimeWire was not used for infringement.

they would be prejudiced by a "transfer" of their employees' invocation of the Fifth Amendment to them (Defts' Mot. at 5), but that is a red herring.  Plaintiffs do not seek a "vicarious admission" that Gorton himself is liable for direct infringement because Lime Wire's employees are.  Rather, Plaintiffs simply seek to show that the downloading of copyrighted materials by Lime Wire's own employees directly undermines Defendants' contention that they had no *knowledge* that LimeWire was used for unlawful purposes.

Equally baseless is Defendants' contention that *LiButti v. United States,* 107 F.3d 110, 124 (2d Cir. 1997) precludes any "adverse inference" which can be drawn from these employees' invocation of the Fifth Amendment.  The "overarching concern" under *LiButti* is the "trustworth[iness]" of the inference sought, and whether the inference will "advance the search for the truth." *Id.*  Here, the adverse inference Plaintiffs seek is trustworthy and appropriate. These employees were loyal to Lime Wire, and there is no reason to believe that they would have falsely invoked the Fifth Amendment to prejudice Defendants.  Indeed, they invoked the Fifth *at the direction of and while represented by* Defendants' counsel.  Moreover, the inference sought is limited in nature and logical—that Defendants must have been aware that LimeWire (like its competitors' products) was used for illegal purposes when Lime Wire's own employees, who played key roles in the development of the Lime Wire software and the execution of the company's use policies, used LimeWire and other file-sharing services for infringement and understood that use to be illegal.  These facts plainly satisfy the Second Circuit's test under *LiButti*. *Id.*  Defendants' motion *in limine* should be denied.

## II.    <u>BACKGROUND</u>

The three individuals who took the Fifth were not strangers to Defendants.  They were Defendants' own employees.  And they were not fly-by-night employees passing through a multinational conglomerate: they were among a small group of people in a small company who

had important responsibilities for designing the software and dealing with end-users (the same people Defendants will claim they believed were using LimeWire for legitimate purposes). *See* Declaration of Kelly M. Klaus ("Klaus Decl.") Ex. 1 (March 2008 deposition of Kevin Faaborg) at 27:11–16, 28:2–9 (then a software developer), Ex. 3 (deposition of Christine Nicponski) at 19:10–20:19 (former technical/customer support representative), Ex. 4 (deposition of David Nicponski) at 9:12–16 (former software engineer); Ex. 5 (deposition of Mark Gorton) at 143:15–17 ███████████████████████████████████████████████████████

███

    Ms. Nicponski  provided (among other tasks) technical support to LimeWire users, in connection with which she reviewed users' questions about the LimeWire software █████████ ████████████████████████████████████████████████ *See id.* Ex. 3 at 20:12–15; 114:3–124:13.  Mr. Nicponski and Mr. Faaborg each played significant roles in development of the LimeWire client  as a software engineer and software developer.  *See, e.g.*, *id.* Ex. 1 at 5:10–14, Ex. 4 at 9:12–16.  Mr. Faaborg, furthermore, was not a mere "low level" employee for the duration of his employment: Following his first deposition, he rose through the ranks to be promoted from software developer to "Director of Compliance," and played a key role in the litigation itself, submitting a declaration regarding Defendants' injunction-compliance efforts in opposition to Plaintiffs' motion for appointment of a receiver, ███████████████████ █████████████████████████████████████████████.  *See id.* Ex. 2 (December 2010 deposition of Kevin Faaborg) at 6:25–7:6, Ex. 6 (Declaration of Kevin Faaborg (Nov. 23, 2010), outlining "LimeWire's Compliance With Permanent Injunction").  And Mr. Faaborg was employed by Defendants at the time of his deposition when he invoked the Fifth Amendment.

    The loyalty of these employees to Defendants, and their control by Defendants, continued

through the time of their depositions.  Defendants provided their own counsel to all three

witnesses—then-lead Defendants' counsel Charles Baker—who *himself* instructed the witnesses

to invoke the Fifth Amendment in response to questions about their illegal file-sharing.  First in

Mr. Faaborg's deposition:

> Q:      **Have you ever used LimeWire to download music in a personal capacity?**
>
> A: For anything personal, again, **I'm going to have to reassert my rights under the Fifth amendment.**

*Id.* Ex. 1 at 63:4–8 (emphasis added); *see also id.* at 112:22–25 ("Q:  So just to make the record

clear, are you refusing to answer my question?  Mr. Baker: Based on advice of counsel, he is."),

114:14–18 ("Q: So prior to 2003—  Mr. Baker: Just keep answering the same way you have been

answering.  Q: —what kinds of files did you download using BitTorrent?").

Then in Mr. Nicponski's deposition:

> Q:      Did you use BearShare or the BearShare client while you were working for Free Peers?
> A:      Yes.
> Q:      What did you use it for?
>         A:      **On advice from counsel**, I would like to invoke my Fifth Amendment right and not answer that question.

*Id.* Ex. 4 at 15:9–15 (emphasis added).  And again, in that of Ms. Nicponski:

> Q:      And what did you use the BearShare Client for?
> A:      Can I talk to my lawyer or . . . ?
> **Mr. Baker:    Do you want to go ahead and invoke your Fifth Amendment right?**
> The Witness:  Yes.
> **Mr. Baker:    All right, go ahead and say it.**
> A:      I invoke my Fifth Amendment.
>
>                              . . .
>
> Q:      **Have you ever used the LimeWire file-sharing program to download copyrighted music works?**
>
> A:      **I plead the Fifth Amendment.**

. . .

> **Q:      Did you download musical works not authorized for distribution using the LimeWire filesharing client?**
>
> **A: I plead the Fifth Amendment**.

*Id.* Ex. 3 at 70: 9–18, 71, 18–21, 72:3–6 (emphasis added).

Although these witnesses invoked the Fifth Amendment and refused to answer questions about their personal use of LimeWire (and its competitors' products) to download copyrighted material, Defendants otherwise have insisted throughout this litigation that they had no reason to know of infringement using the LimeWire client.  *See id.* Ex. 7 (Defendants' Response to Statement of Material Facts and Additional Material Facts Pursuant to Local Rule 56.1(b) (filed Sept. 26, 2008)), at ¶ 530.  Defendants have insisted in particular that Mr. Gorton "does not know what Lime Wire users use the software for," *id.* ¶¶ 558–562, and that "[e]*very LimeWire employee* denies that LimeWire was designed for infringement," *id.* ¶ 669.  In support of these claims, Mr. Faaborg and Mr. Nicponski narrowly denied ever downloading copyrighted files on LimeWire *at work*.  Mr. Nicponski testified that he never searched for copyrighted music on LimeWire as part of a test at work because, ███████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ *Id.* Ex. 4 at 94:17–95:17

(emphasis added); *see also id. Ex.* 7 at ¶ 655 ("LimeWire Employees Tested the Software With Authorized Content").  Mr. Faaborg similarly testified ████████████████████████

████████████████████████████████████████████

███████████ *Id.* Ex. 1 at 64:5–7, 65:7–18.  This testimony paints a misleading and incomplete

-5-

picture of how Lime Wire's own employees used LimeWire.  As these employees' invocation of

the Fifth Amendment reflects, they used LimeWire and other file-sharing products for illegal

downloading, and they *knew* it was illegal.

**III.   ARGUMENT**

> **A.   EVIDENCE OF EMPLOYEES' USE OF USE OF P2P SERVICES**
> ***INCLUDING LIMEWIRE ITSELF* TO SHARE FILES ILLEGALLY IS**
> **RELEVANT TO THE DEFENDANTS' CONDUCT, ATTITUDE, AND**
> **STATE OF MIND, AND IS NOT UNFAIRLY PREJUDICIAL**

During Lime Wire's near decade run and throughout this litigation, Defendants

repeatedly claimed that they believed that users were using the service for legal purposes, not

predominantly illegal ones.  The Court at summary judgment found this claim to be false, finding

that Defendants were in fact "aware that LimeWire's users commit a substantial amount of

copyright infringement." *Arista Records*, 715 F. Supp. 2d at 515.  The illegal use of LimeWire

and other P2P services by Defendants' own employees, including its future "Director of

Compliance," while Defendants repeatedly claimed ignorance of the massive infringing uses on

LimeWire, is highly relevant to Defendants' "state of mind" and "conduct and attitude," two

factors the jury should consider in setting a statutory damages award.  *See Bryant*, 603 F.3d at

144.

It is highly likely that Defendants were aware that LimeWire was used for illegal

purposes when Defendants' own employees, who played *key* roles in the development of the

LimeWire software and the execution of the company's use policies, used LimeWire for

infringement.  LimeWire's employees invoked the Fifth Amendment because they believed that

if they answered questions about whether they downloaded copyrighted material from LimeWire

or other P2P services they would be admitting ***to a crime***.  The evidence shows that everyone—

including so-called "low level" employees—knew that the use of LimeWire to download

-6-

copyrighted material was illegal, that LimeWire's own employees and engaged in such conduct. This evidence is highly relevant, as it goes directly to the credibility of Defendants' repeated claim that they had no idea that the predominant use of LimeWire to download copyrighted material was illegal, even after these employees' depositions.  Furthermore, that Mr. Faaborg was not (apparently) disciplined but rather *promoted to a Director of Compliance* following his invocation of the Fifth Amendment reflects the insincerity of Defendants' concerns for users'— and even their own employees—infringing behavior.  *Cf. TRW, Inc. v. Superior Court*, 25 Cal. App. 4th 1834, 1844 (Cal. App. 1994) (Fifth Amendment does not constrain private employers).

The standard for relevance is easily met here.  This evidence illuminates Defendants' conduct and attitude and state of mind.  It directly undermines their claims of innocence regarding the widespread illegal conduct that they induced.  *See United States v. Miller*, 626 F.3d 682, 691 (2d Cir. 2010) ("Under the 'very low standard' set by the Federal Rules of Evidence, evidence is relevant and therefore admissible if it has 'any tendency' to make 'any fact' in issue more or less probable than it would be without the evidence . . . .") (citing *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008); Fed. R. Evid. 401; Fed. R. Evid. 402) (internal citations omitted).  It likewise provides evidence relevant to the determination of a proper award of punitive damages under New York law.  *See, e.g.*, *Le Mistral, Inc. v. Columbia Broadcasting Sys.*, 402 N.Y.S.2d 815, 817–818 (N.Y. App. 1978) ("As recovery of punitive damages depends upon the defendant acting with evil or wrongful motive or with a wilful [sic] and intentional misdoing, or with a reckless indifference equivalent thereto, '[a]ll circumstances immediately connected with the transaction tending to exhibit or explain the motive of the defendant are admissible.'")

Defendants' employees' invocation of the Fifth Amendment has adverse consequences

for Defendants, but that does not justify Rule 403 exclusion.  "[I]t is only unfair prejudice, not prejudice per se, against which Rule 403 guards." *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1372 (1st Cir. 1991).  Defendants have cited no case supporting that their employees' illegal use of their own and competitors' software to engage in the exact conduct of which they claim ignorance is either irrelevant or unfairly prejudicial.  The one case they cite—*Park West Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314 (S.D.N.Y. 2009)—is entirely inapposite.  The court there held that fraud by nonparties was not relevant to demonstrating the relationship between certain corporate entities in an antitrust suit. *Id.* at 325.  The case does not remotely suggest that *employees'* use of the very software at issue in a case *for the very illegal uses that Defendants deny they intended* is unfairly prejudicial.  As Defendants' own witness's testimony indicates, such facts are highly relevant.  *See* Klaus Decl. Ex. 4 at 94:17–95:17.

While Defendants contend that they would be prejudiced by a "transfer" of their employees' invocation to them (Defts' Mot. at 5), that entirely misses the point.  Although "ex-employees' refusals to testify c[an] appropriately be conceptualized as 'vicarious admissions of their former employer,'" *LiButti*, 107 F.3d at 121, Plaintiffs do not seek to "transfer" these employees' invocation to Defendants, and thereby seek a "vicarious admission" of liability for *direct* infringement.  Indeed, Defendants already have been found liable for secondary infringement.  Rather, Plaintiffs simply seek to argue that the downloading of copyrighted materials by Lime Wire's own employees directly demonstrates the falsity of Defendants' repeated contention that they had no *knowledge* that LimeWire was used for illegal purposes. The only conceivable prejudice Defendants could suffer here is that the jury believes that Lime Wire's employees used LimeWire and other P2P services to engage in illegal file-sharing, and

-8-

understood that conduct to be illegal.  This evidence is plainly admissible:  it is "not prejudicial in the sense of being inflammatory . . . , even though it is prejudicial in the sense of giving support to a party's position, *i.e.*, it is 'damning.'"  *Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983).

**B.    THE CIRCUMSTANCES OF THE EMPLOYEES' INVOCATION PLAINLY SATISFY THE SECOND CIRCUIT'S TEST FOR APPLYING THE ADVERSE INFERENCE TO DEFENDANTS**

Defendants' contention that *LiButti*, 107 F.3d at 124, precludes any "adverse inference" against Defendants based on these non-party employees' invocation of the Fifth Amendment is baseless.  The "overarching concern" under *LiButti* is the "trustworth[iness]" of the adverse inference sought, and whether the inference will "advance the search for the truth." *Id.*  Here, it is clear that the adverse inference sought is trustworthy and appropriate.

In determining the "trustworth[iness]" of applying an adverse inference in a particular case, courts are particularly concerned with whether the non-party had a reason to lie—thus, courts will examine the relationship and control of the parties, because such elements demonstrate the party's ability to "guide" witnesses' testimony, indicate that the witnesses' and party's "interests coincide," and suggest that the witness may "seek ways to protect" the party through his or her own testimony.  *Id.* at 290; *see also Wechsler v. Hunt Health Systems, Ltd.*, No. 94 Civ. 8294, 2003 WL 21998980, at *3 (S.D.N.Y. Aug. 22, 2003) (looking to evidence that the witness may "identif[y] with the plaintiff," and thus "support the conclusion that [the witness] acted in conjunction with or on behalf of the plaintiff" in his testimony).

Here, there is strong evidence demonstrating continuing "loyalty" by these witnesses to Defendants, eliminating any reasonable chance that the witnesses would have "falsely claim[ed]" to have engaged in criminal conduct to implicate Defendants.  *RAD Services, Inc. v. Aetna Casualty & Surety Co.*, 808 F.2d 271, 275-76 (3d Cir. 1986) (discussed and relied upon by

*LiButti*, 107 F.3d at 121–22).  Mr. Faaborg was employed at LimeWire at the time of his invocation of the Fifth Amendment, and was subsequently promoted to a position of authority with regards to this very lawsuit, Director of Compliance.  Moreover, Defendants provided *these witnesses with counsel* to defend their depositions, who *himself* instructed all three of them to plead the Fifth Amendment.  *See* Klaus Decl. Ex. 1 at 61:25–62:18l, Ex. 4 at 14:9–15; Ex. 3 at 70: 9–18.  As courts have held, "factors suggesting that a former employee retains some loyalty to his former employer" include that "the employer is paying for his attorney."  *RAD*, 808 F.2d at 275–76 (quoting Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases*, 91 Yale L.J. 1062, 1119 n.214 (1982)); *see also Brink's*, 717 F.2d at 710 (citing same).

Moreover, the inference sought is limited in nature and logical, and would hardly require a quantum leap on the jury's behalf—that Defendants were aware that LimeWire was used for illegal purposes when its own employees, who played *key* roles in the development of the LimeWire software and the execution of the company's use policies, used LimeWire and other P2P services for infringement and understood that use to be illegal.  *See Banks v. Yokemick*, 144 F. Supp. 2d 272, 290 (S.D.N.Y. 2001) ("Krumm and Geraghty were key figures in the litigation because they were at the scene and presumably held discussions with [defendant] at the time of the events at issue.").  Ms. Nicponski, Mr. Nicponski, and Mr. Faaborg were not minor employees, hidden away in the mail room.  Rather, they all plainly were involved in the underlying events that form the basis for this litigation.  Mr. Nicponski and Faaborg contributed to building the LimeWire client *itself*.  *See* Klaus Decl. Ex. 1 at 5:10–14, Ex. 4 at 9:12–16. Furthermore, Mr. Faaborg is a key figure in this litigation:  he has submitted a declaration in his promoted role as Defendants' "Director of Compliance," ███████████████████████████ ███████████████████████ *See* Klaus Decl. Ex. 2 at 6:25–7:6, Ex. 6 at 1.

The above facts demonstrate that drawing an adverse inference based on former employees' testimony in Defendants' case would be trustworthy.  Furthermore, the trustworthiness of the adverse inference is reflected in the record before the Court: which has *already found* that Defendants (despite their intent to argue to the contrary) "intentionally encouraged direct infringement by LimeWire users," and specifically was "aware[] of substantial infringement by users."  *See* Amended Opinion & Order, Doc No. 223, at 29, 31.  The adverse inference in this case serves the purpose of aiding the quest for the truth, and exposing the insincerity of Defendants' head-in-the-sand defense.

No case cited by Defendants remotely supports their claim to the contrary.  In *In re Worldcom, Inc.*, 377 B.R. 77 (Bankr. S.D.N.Y. 2007) (Defts' Mot. at 4 –5), the court declined to grant summary judgment to a party seeking an adverse inference based on the testimony of former employees—but where the party did "not provide counsel" for such witnesses, and where some were found to have pleaded the Fifth only in response to questions "about . . . matters having nothing to do with" the relevant claims.  *Id.* at 108 (citation omitted).   Even in these circumstances—in light of drastically weaker relationships between the parties than is reflected here—the court did not definitively deny the claimant's request for adverse inference, but found only that it could not so "at [that] moment," absent "sufficient information regarding the 'compatibility of the parties' interests' and the degree of control the party retained over the Fifth Amendment invoking non-party."  *Id.* at 109–10 (citation omitted).

The conclusory, unpublished opinion in *Akinyemi v. Napolitano*, No.8-4094-cv, 2009 WL 2488079 (2d Cir.  Aug. 17, 2009) (Defts.' Mot. at 6) similarly provides no analysis supportive of Defendants.  There, the court found, without detailed analysis, that there was simply "no error" in the district court's refusal to allow the jury to draw an adverse inference against the defendant

in an employment discrimination suit, based on the invocation of the Fifth Amendment by a low-level employee who, inter alia (and for reasons the Court did not explain) had "no control over the key facts and issues in the litigation" and where evidence was insufficient to establish that an adverse inference would have been "trustworthy under all of the circumstances."  *Id.* at *2 (quoting and applying *LiButti*, 107 F.3d at 123–24).  The final case cited by Defendants, *In re Worldcom, Inc. Securities Litig.*, No. 02 Civ 3288 DLC, 2005 WL 375315 (S.D.N.Y. Feb. 17, 2005), provides no analysis and makes no adverse-inference holding at all, simply reciting the *LiButti* standard before reserving its ruling until trial.  *Id.*

In short, neither precedent nor the facts support Defendants' motion.  Given the employment relationship between Defendant and the witnesses, Defendants' continued and profound control over those witnesses during their deposition, the witness's involvement in facts leading up to the litigation, and the high degree of relevance of the witnesses' testimony to the issues remaining to be tried, the law entitles Plaintiffs to an adverse inference against Defendants at trial.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion *in Limine* #3 and allow Plaintiffs to introduce evidence and argument concerning the invocation of the Fifth Amendment by Defendants' employees regarding their illegal use of peer-to-peer services.

Dated:  April 6, 2011                    Respectfully submitted,


                                          _____ /s/ Kelly M. Klaus _____
                                                Kelly M. Klaus

                                          Attorney for Plaintiffs
                                          Munger, Tolles & Olson LLP
                                          355 South Grand Avenue, 35th Floor
                                          Los Angeles, CA 90071-1560
                                          (213) 683-9100
                                          (213) 687-3702 (Fax)