UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTA RECORDS LLC; ATLANTIC
RECORDING CORPORATION; ARISTA
MUSIC, fka BMG MUSIC; CAPITOL
RECORDS, LLC, fka CAPITOL RECORDS,
INC.; ELEKTRA ENTERTAINMENT
GROUP INC.; INTERSCOPE RECORDS;
LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY
RECORDS LLC; SONY MUSIC
ENTERTAINMENT, fka SONY BMG
MUSIC ENTERTAINMENT; UMG
RECORDINGS, INC.; VIRGIN RECORDS
AMERICA, INC.; and WARNER BROS.
RECORDS INC.,

                     Plaintiffs,

          v.

LIME WIRE LLC; LIME GROUP LLC;
MARK GORTON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                   Defendants.

06 Civ. 05936 (KMW)
ECF CASE

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* #4 TO PRECLUDE MITCH BAINWOL AND TERESA LABARBERA WHITES FROM TESTIFYING AT TRIAL

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Jonathan H. Blavin *(pro hac vice)*
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
*Attorneys for Plaintiffs*

Date: April 6, 2011

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

    A.    Mitch Bainwol ...................................................................................... 1

    B.    Teresa LaBarbera Whites...................................................................... 2

II.    BACKGROUND ............................................................................................. 4

    A.    Mitch Bainwol ...................................................................................... 4

    B.    Teresa LaBarbera Whites...................................................................... 8

III.    ARGUMENT ................................................................................................. 9

    A.    Witness Preclusion is a "Drastic Remedy" that Must be Justified Under
        the Rule and the Second Circuit's Four Factor Test .............................. 9

    B.    Mitch Bainwol Must be Allowed to Testify .......................................... 9

        1.    Plaintiffs Did Not Have to Disclose a Witness Who Had Been
                Included on Defendants' Own Initial Disclosures and Subpoenaed
                for Deposition ............................................................................ 9

        2.    Both Sides Recognized Mr. Bainwol's Importance as a Witness........... 12

        3.    Any Prejudice to Defendants Results From Their Failure to Depose
                Mr. Bainwol When They Had the Chance – Not Once, Not Twice,
                But Many Times .......................................................................... 12

        4.    The Phantom "Documents" Defendants Speculate About Cannot
                Justify A Continuance ................................................................. 14

    C.    Teresa LaBarbera Whites Should Be Allowed to Testify.................................... 14

        1.    Plaintiffs' failure to disclose Ms. LaBarbera Whites is justified ............. 15

        2.    Ms. LaBarbera Whites will offer important testimony........................... 15

        3.    Allowing Ms. LaBarbera Whites to testify will not prejudice
                Defendants or require a continuance....................................................... 16

IV.    CONCLUSION................................................................................................. 17

13638568.2

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Design Strategy v. Davis*,
    469 F.3d 284 (2d Cir. 2006)...................................................................................1, 2

*Joy v. Hay Group, Inc.*,
    No. 02 C 4989, 2004 WL 719389 (N.D. Ill. Mar. 31, 2004), rev'd in part on other
    grounds, 403 F.3d 875 (7th Cir. 2005).......................................................................10, 11, 13

*L-3 Communications Corp. v. OSI Systems, Inc.*,
    No. 02 Civ. 9144, 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006).............................................10

*Lintz v. Am. General Finance, Inc.*,
    No. Civ. A. 98-2213-JWL, 1999 WL 619045 (D. Kan. Aug. 2, 1999) ...................................11

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006)...................................................................................1, 9, 14

*S.E.C. v. Koenig*,
    557 F.3d 736 (7th Cir. 2009) (Easterbrook, J.)........................................................11

*Ventra v. United States*,
    121 F. Supp. 2d 326 (S.D.N.Y. 2000).........................................................................9

### FEDERAL RULES

Fed. R. Civ. P. 26....................................................................................4, 9, 10, 11

Fed. R. Civ. P. 37....................................................................................1, 9, 11, 13

1993 Am. Adv. Comm. Notes .........................................................................1, 9, 10

2000 Am. Adv. Comm. Notes .........................................................................10

## I.    INTRODUCTION

Defendants seek to preclude Mitch Bainwol and Teresa LaBarbera Whites from testifying at trial because Plaintiffs did not list either in their Initial Disclosures in 2006.  But the Federal Rules do not require witness exclusion if the failure to list the witnesses was "substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  In such cases, witness exclusion is an "unduly harsh penalt[y]."  1993 Adv. Comm. Notes to Fed. R. Civ. P. 37(c)(1).  Although the factual background for each witness is different – and we discuss those differences below – in both cases the omission was "substantially justified" or "harmless."  Moreover, the Second Circuit recognizes that the Court has discretion in wielding this powerful sanction.  *Design Strategy v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).  The reasons for the omission, the importance of the witness, the prejudice to the opponent, and whether a continuance would be necessary all factor in the balance.  *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).  Defendants' Motion should be denied under the clear terms of the Rule and under the four-factor Second Circuit test governing the propriety of the exclusionary sanction.

### A.    Mitch Bainwol

Plaintiffs' failure to specifically identify Mr. Bainwol is both "substantially justified" *and* "harmless," within the explicit text of the Federal Rules.  Defendants *themselves* listed Mr. Bainwol as a potential witness *in their own* Initial Disclosures, so they obviously knew about him as a potential witness.  Witness exclusion would be "unduly harsh" in such circumstances.  Adv. Comm. Note to Fed. R. Civ. P. 37(c)(1).  Not only that, Defendants sought a deposition of both Mr. Bainwol and the RIAA itself as far back as September 2010, but completely failed to follow through.  Although Defendants make much of an initial objection from the RIAA's counsel, neither Plaintiffs nor their counsel *ever* contended that Mr. Bainwol's testimony would

be irrelevant at trial.  And the RIAA's separate counsel confirms that he informed Defendants *in October 2010* he would make Mr. Bainwol available at a mutually agreeable date.  Plaintiffs and the RIAA repeatedly offered an RIAA witness, but Defendants rebuffed the offer in favor of waiting until Judge Freeman ruled on their motion to compel.  The record reflects that Defendants simply put off the deposition for months until apparently electing to forego it in favor of attempting to block Mr. Bainwol from testifying.  Any prejudice to Defendants now – and there is none –  is not a result of Plaintiffs' failure to disclose Mr. Bainwol.  It is of Defendants' own making in delaying the deposition until the eve of trial.

Defendants' tactical decision to attempt to block one of Plaintiffs more important witnesses should denied.  Both sides recognized that Mr. Bainwol is a significant figure in the recorded music industry who has had a front-row seat at the decimation of Plaintiffs' business in the face of the rise of peer-to-peer systems like Defendants'.  He brings first-hand observations of the harm Plaintiffs have suffered, and can speak on behalf of the entire industry.  Considering Defendants' own disclosure of Mr. Bainwol, his importance as a witness, Defendants' multiple opportunities to depose him, and the absence of any need for a continuance now, this Court must deny Defendants' Motion under the Second Circuit's four-factor test.  *Design Strategy*, 469 F. 3d at 296-97.

**B.      Teresa LaBarbera Whites**

Plaintiffs did not list Ms. LaBarbera Whites in their disclosures in 2006.  But Plaintiffs' failure to list every single witness at the outset of this case cannot justify exclusion.  This case has been pending for nearly five years, and was subject to a bifurcation order.  Once the damages phase began, became at issue, it was clear that Defendants' relevant conduct has touched every part of Plaintiffs' business.  To adequately anticipate and list every witness with discoverable

knowledge about the harm to the music industry from peer-to-peer services would have been an impossible task.  Short of providing a list of all of Plaintiffs' employees – which would not have been of any real benefit – identifying all potential witnesses was impossible in light of the breadth of the harm Defendants have caused.  In such a case, the more reasonable approach is to identify which witnesses will be called and, if any have yet to be deposed, offer them for deposition.  Plaintiffs did that, but Defendants refused.

Sanctioning Plaintiffs for failing to identify Ms. LaBarbera Whites  at the outset of this case would be an extreme penalty that would deprive Plaintiffs and the jury of a critical perspective on the core issues.  Plaintiffs identified Ms. LaBarbera Whites when compiling their witness list.  In putting the list together, Plaintiffs realized that it was missing the essential perspective of someone who works with artists making the music that is at the heart of this case.  Ms. LaBarbera Whites is a prominent artists and repertoire (A&R) executive who has worked with some of the most successful acts in the music business: Britney Spears, Beyonce, Destiny's Child, and Jessica Simpson.  She brings a unique perspective to the harm Plaintiffs have suffered in this case, because she works with the creative people who have lost out due to piracy and continue to lose out every day.  Ms. LaBarbera Whites should testify order for the jury to understand the concrete realities artists and labels face as a result of piracy – including the fact that piracy means fewer artists signed, decreased marketing budgets, and music left unheard.

This Court should reject Defendants' tactical maneuver to deprive Plaintiffs of the essential testimony of both of these witnesses.  This Motion should be denied.

## II.  <u>BACKGROUND</u>

### A.  <u>Mitch Bainwol</u>

Defendants misstate Mr. Bainwol's history as a potential witness in this case.

***Defendants <u>themselves</u> included Mr. Bainwol on their Rule 26(a) Initial Disclosures.***
Though Defendants now claim that they did not know until last month that Mr. Bainwol "had
any knowledge relevant to the issues to be tried in this case," Mot. at 1, their own prior
statements indicate that they identified Mr. Bainwol as a person with discoverable information as
long ago as 2006.  In their own initial disclosures provided in 2006 and then supplemented in
2008, Defendants themselves identified Mr. Bainwol as a person with relevant knowledge in this
lawsuit.  Declaration of Melinda LeMoine ("LeMoine Decl.") at Ex. 1 at 4 (Defendants' Initial
Disclosures), Ex. 2 at 4 (Defendants' First Supplemental Disclosures Pursuant to Federal Rule of
Civil Procedure 26(a)(1), served Feb. 22, 2008).

***Defendants themselves <u>declined to take</u> a deposition of Mr. Bainwol —despite the***
***RIAA's offer to produce him.***   As Defendants acknowledge, they served the RIAA with a
subpoena for Mr. Bainwol in October of 2010.  *See* Eaton Decl., Ex. G.  Contrary to Defendants'
suggestion, RIAA counsel did not refuse them outright.  The RIAA's counsel – George
Borkowski of Venable LLP – had a telephone conference with Defendants' counsel – Dan
Kozusko and Todd Cosenza of Willkie Farr.  On that call, RIAA counsel Mr. Borkowski
indicated that although Mr. Bainwol was not available on the date Willkie Farr had set and the
RIAA planned to serve objections to the deposition subpoena, the RIAA would produce Mr.
Bainwol for deposition at a mutually convenient date.  Declaration of George Borkowki
("Borkowski Decl.") ¶ 4.  Mr. Borkowski then sent objections, but never refused Defendants the
opportunity to depose Mr. Bainwol.  Borkowski Decl. ¶ 5.  Instead, Mr. Borkowski asked for
more particularized showing of a need for Mr. Bainwol's testimony, and informed Defendants
that Mr. Bainwol was not available on the date Willkie Farr had unilaterally chosen.  *Id*.
Although on the call Willkie Farr had acknowledged a willingness to change the date,

Defendants never sought the deposition of Mr. Bainwol again.  Borkowski Decl. ¶ 6. To the contrary, after the RIAA counsel's initial call with Messrs. Kozusko and Cosenza, Defendants began a *months-long* process of delaying their allegedly hard-sought deposition.

*Defendants themselves delayed the deposition they noticed of the RIAA's designee on a broad number of topics – who would have been Mr. Bainwol – for several months.*  At the time they served Mr. Bainwol, Defendants had already served several subpoenas on the RIAA.  Most recently, in September 2010, Defendants served a subpoena for a deposition of the RIAA's designee and documents relating to a broad range of topics.  Eaton Decl., Ex H.  In response to the subpoena, the RIAA produced tens of thousands of pages.  This was a continuation of the RIAA's previous response to a subpoena from Defendants sent in 2007, which contained 61 broad categories some with up to 30 subparts.  LeMoine Decl., Ex. 3.  Despite these discovery efforts, Defendants *twice* sought to compel additional documents from the RIAA in just the post-summary judgment period alone.  In November 2010, Defendants moved to compel more documents in a letter sent to Judge Freeman, but Judge Freeman denied the motion because she lacked jurisdiction.  The September 2010 subpoena, like the previous 2007 subpoena, had been issued out of the U.S. District Court for the District of Columbia, where the RIAA is located.  Defendants responded to Magistrate Judge Freeman's order regarding jurisdiction by issuing an identical subpoena for deposition testimony and documents out of the Southern District of New York in November 2010.  Eaton Decl., Ex. H at p. 18.  The RIAA continued to produce documents, in the end totaling more than 65,000 pages in just the post-summary judgment phase alone and nearly 100,000 total.  Nevertheless, Defendants at the end of January sought to compel further documents from Judge Freeman again in response to that second subpoena.  LeMoine Decl., Ex. 4 (1/24/2011 Ltr. from Mary Eaton re RIAA).

The RIAA determined that Mr. Bainwol would be the appropriate designee to testify on the broad range of topics identified in Defendants' subpoena.  LeMoine Decl. ¶ 15.  But over and over again, from November 2010 through February 2011, Defendants repeatedly deferred that deposition, telling Plaintiffs and the Court they intended to depose the RIAA's designee "as soon as [the RIAA's] document production is complete."  *See* LeMoine Decl., Ex. 5 (11/19/2010 Ltr. from Mary Eaton to Hon. Debra Freeman), Ex. 4 (1/24/2011 Ltr. from Mary Eaton to Hon. Debra Freeman), Ex. 6 (2/9/2011 Ltr. from Mary Eaton to Hon. Debra Freeman).  The RIAA stated clearly its willingness to produce such a witness for deposition.  LeMoine Decl., Ex. 7 at p. 10.  (1/31/2011 Ltr. from Jennifer Pariser, RIAA counsel, to Hon. Debra Freeman).  But Defendants never sought a date or otherwise moved to take the promised deposition.

Finally, in February 2011, Plaintiffs' counsel sent Defendants' counsel (Tariq Mundiya) an unambiguous email seeking clarification of their plans to depose an RIAA witness:

> I just hung up with you, but I forgot to ask about an RIAA depo.
> Although you asked for the depo of an RIAA witness last fall, you
> have not done so this year.  Given that the fact discovery ends next
> Monday, is it your plan to forgo [sic] taking the depo of an RIAA
> witness?  If not, please call to discuss.

LeMoine Decl., Ex. 8 (2/4/2011 email from Glenn Pomerantz to Tariq Mundiya).  Mr. Bainwol, the RIAA's chosen designee, was the only "RIAA witness" Defendants had subpoenaed by name.  Defendants never called and asked about this deposition, nor did they respond to Mr. Pomerantz's email.  *Id.* ¶ 9.

The last Plaintiffs heard from Defendants on an RIAA deposition was on February 9. That week, the parties had scheduled depositions of the three investigators who had collected downloads at issue in the case––Thomas Sehested of DtecNet, Chris Connelly of MediaSentry, and Mark McDevitt of the RIAA—who had all been identified in September 2010 as witnesses

who would testify on that limited issue.  LeMoine Decl., Ex. 9.  In light of the small number of

works that had been downloaded by Mr. McDevitt and the relative cost in time and money

sending him and counsel to New York for a deposition, Plaintiffs instead decided to drop the

small number of works Mr. McDevitt had downloaded, obviating the need for his deposition.

Defendants responded to the email cancelling that deposition, again stating that they reserved

their rights as to an RIAA deposition once the Court decided their motion to compel.  LeMoine

Decl., Ex. 10 (2/9/2011 email from Mary Eaton to Jonathan Blavin et al.).[1]

Finally, on February 18, 2011, Judge Freeman denied Defendants' motion to compel

more documents from the RIAA at a hearing with Your Honor and the parties.  She held that the

application to her was untimely, and was largely moot because the RIAA had already produced

considerable amounts of material.  LeMoine Decl., Ex. 11 (Feb. 18, 2011 Tr. of Hrg.).  Despite

this record of repeated averments that they would take the RIAA's deposition once the motion to

compel had been decided, Defendants did not seek at that time to take a deposition of the RIAA.

Instead, Defendants said nothing.

**_Plaintiffs again offered Defendants the opportunity to depose Mitch Bainwol – and_**

**_they refused._**  When the parties exchanged their witness lists, Defendants stated they intended to

object to Mitch Bainwol because they had not had an opportunity to depose him.

Notwithstanding Defendants' abandonment of any RIAA deposition, Plaintiffs *again* offered

---

[1]  Defendants suggested during the meet and confer on this Motion that they would contend
Plaintiffs only offered McDevitt as an "RIAA witness," not Bainwol.  That is not so.  From
Plaintiffs' September 2010 correspondence and February 8, 2010 email, it was clear the parties
understood that McDevitt was only testifying as to a limited number of works he downloaded,
which is why Plaintiffs cancelled his deposition.  LeMoine Decl., Exs. 9-10.  Defendants
cannot seriously contend that Mr. Borkowski, Ms. Pariser, and Mr. Pomerantz were all referring Mr.
McDevitt when offering deposition dates for Mr. Bainwol and an RIAA designee.  *See*
Borkowski Decl. ¶4; LeMoine Decl., Exs. 7 at p. 10 and Ex. 8.¶

Defendants the opportunity to depose Mr. Bainwol at that time.  *See* LeMoine Decl., Ex. 12

(3/22/2011 email from Glenn Pomerantz to Tariq Mundiya) ("we are willing to make Mr.

Bainwol available for a deposition (as we were previously willing to do as the RIAA

designee).").  Again, Defendants refused.  LeMoine Decl. ¶ 13.  Rather than scheduling and

preparing for their long-delayed deposition, Defendants filed the present motion.

### B.      Teresa LaBarbera Whites

This case has been pending for nearly five years.  Judge Lynch bifurcated damages and

liability over three years ago.  When the damages phase began in June, neither side

supplemented their initial disclosures despite the personnel changes and issues changes that the

case had undergone.  In fact, Defendants have put forward a trial witness – George Searle – who

was never listed on their own Initial Disclosures.

Plaintiffs identified Ms. LaBarbera Whites when compiling their witness list.  Plaintiffs

realized that their witnesses did not include the essential perspective of someone who works with

artists daily making the music that is at the heart of this case.  Ms. LaBarbera Whites fills that

gap, as a prominent artists and repertoire (A&R) executive who has worked with some of the

most successful acts in the music business: Britney Spears, Beyonce, Destiny's Child, and

Jessica Simpson.  She brings a unique perspective to the harm Plaintiffs have suffered in this

case, because she works with the creative people who have lost out due to piracy and continue to

lose out every day.  Ms. LaBarbera Whites should testify  order for the jury to understand the

concrete realities artists and labels face as a result of piracy – including the fact that piracy

means fewer artists signed, decreased marketing budgets, and music left unheard.

III.    <u>ARGUMENT</u>

      A.      <u>Witness Preclusion is a "Drastic Remedy" that Must be Justified Under the Rule and the Second Circuit's Four Factor Test</u>

Federal Rule 37(c) provides that "If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at trial, *unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added). The Rule's interpretive notes specifically recognize as harmless the failure to disclose a witness that was included in an opponent's own disclosures. 1993 Adv. Comm. Notes. In the Second Circuit, "courts recognize that preclusion is a drastic remedy and therefore exercise discretion and caution." *Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000). The appropriateness of the sanction depends on four factors: (1) the party's explanation for the failure to comply with the disclosure requirement, (2) the importance of the testimony of the precluded witness, (3) the prejudice suffered by the opposing party as a result of the new testimony, and (4) the possibility of a continuance. *Patterson*, 440 F.3d at 117.

      B.      <u>Mitch Bainwol Must be Allowed to Testify</u>

The four-factor analysis requires the Court to deny Defendants' Motion to exclude Mr. Bainwol. All four factors weigh decidedly against his exclusion.

      1.      **Plaintiffs Did Not Have to Disclose a Witness Who Had Been Included on Defendants' Own Initial Disclosures and Subpoenaed for Deposition**

Precluding Plaintiffs from calling Mitch Bainwol – a witness disclosed on Defendants' own initial disclosures, and whose deposition Defendants sought but abandoned after months of delay –must be denied as an "unduly harsh" penalty. 1993 Am. Adv. Comm. Notes (Subdivision (c)). As the Notes to Rule 37 explicitly state: "the failure to list as a trial witness a person so listed by another party" (as well as the "inadvertent omission . . . of a potential witness known to

all parties") is harmless under the terms of the Rule, and thus no grounds for preclusion.  *L-3 Communications Corp. v. OSI Systems, Inc.*, No. 02 Civ. 9144, 2006 WL 988143, at *4 & n.8 (S.D.N.Y. Apr. 13, 2006) ("The examples cited by the Advisory Committee Notes of instances in which courts should avoid 'unduly harsh penalties' include 'the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties' and 'the failure to list as a trial witness a person so listed by another party.'"); *id.* at *4 ("[T]he failure is 'harmless' so long as [the party seeking preclusion] is provided an opportunity to depose these witnesses.").

       The Advisory Notes explain that the rule constrains the remedy Defendants seek:

> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," *is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party*; or the lack of knowledge of a pro se litigant of the requirement to make disclosures.

1993 Am. Adv. Comm. Notes (Subdivision (c)) (emphasis added).  As the Notes explain, sanctioning a party for failing to disclose "the name of a potential witness known to all parties" would be an "unduly harsh penalt[y]." *Id.*; *see also* 2000 Am. Adv. Comm. Notes (Subdivision (c)(1)) ("sanction power only applies when the failure to supplement was 'without substantial justification.' Even if the failure was not substantially justified, a party should be allowed to use the material that was not disclosed if the lack of earlier notice was harmless.").

       Not surprisingly in light of this clear text in the Notes, cases reviewing similar circumstances as those here hold preclusion unwarranted.  For example, *Joy v. Hay Group, Inc.*, No. 02 C 4989, 2004 WL 719389 (N.D. Ill. Mar. 31, 2004), *rev'd in part on other grounds*, 403

F.3d 875 (7th Cir. 2005) is directly on point.  There, the Plaintiff (Joy) sued Hay Group, Inc.

(HGI) and HG (Bermuda) Limited (HGB) for breach of contract.  *Id.* at *1. Joy sought to strike

the affidavit of a defense witness under Rule 37(c)(1), arguing that the witness (Barker) had not

been disclosed under Rule 26.  Relying on the 1993 Amendment Advisory Committee Note, the

court rejected Plaintiffs' motion:

> Although HGB failed to list Barker as a witness, HGI and even Joy
> herself listed her as one. More importantly, Joy served on all
> counsel of record a notice of deposition demanding that each
> produce Barker for a deposition to take place on March 29, 2003,
> but she then opted not to depose Barker. Thus, Joy knew of, and
> had an opportunity to depose, Barker. Joy had her chance to
> depose Barker and forwent it. Accordingly, the Court holds that
> HGB's use of Barker's affidavit results in no prejudice or surprise
> to Joy. In addition, the Court finds no bad faith or willfulness on
> HGB's part in not disclosing Barker at an earlier date. Therefore,
> the Court in its discretion will not strike Barker's affidavit in its
> entirety.

*Id.* at *11.  *See also S.E.C. v. Koenig*, 557 F.3d 736, 743–44 (7th Cir. 2009) (Easterbrook, J.)

(holding that a party's delay in alerting an opponent that a witness from opponent's list might

testify was "as harmless as they come"); *Lintz v. Am. General Finance, Inc.*, No. Civ. A. 98-

2213-JWL, 1999 WL 619045, at *6-*7 (D. Kan. Aug. 2, 1999) (holding that 1993 Amendment

Advisory Committee note should be equally applicable to "inadvertent omission from disclosure

of documents known to all parties," and on that basis denying request for preclusion where "[a]ll

parties except plaintiff . . . knew of the document," and Plaintiff "alleges no prejudice . . . from

the untimely disclosure.").

Plaintiffs have found no case deeming preclusion appropriate where the allegedly non-

disclosed witness *was included on the complaining party's own disclosures.*  And yet that is

exactly what Defendants seek here.  On this ground alone, Defendants' motion should be

rejected because the omission was clearly "harmless."  At a minimum, this factor weighs

decisively in favor of permitting Mr. Bainwol to testify.

### 2.     Both Sides Recognized Mr. Bainwol's Importance as a Witness

As Defendants themselves recognized in disclosing his name and seeking to depose him, Mr. Bainwol is a very important witness who brings a unique perspective to the core issue of Plaintiffs' harm.  He has had first-hand involvement in anti-piracy for the recording industry for nearly a decade, including the entire time at issue in this action.  He can speak on behalf of the industry about what Defendants have done to decimate the music business.  Indeed, Defendants' own arguments in their Motion acknowledge Mr. Bainwol's significance, describing him as "the mastermind" behind record industry anti-piracy strategy who has taken a "vocal stance regarding file sharing generally and . . . about this litigation in particular."  Mot. at 5-6.  Although Defendants attempt to rely on a statement from Mr. Borkowski in response to the subpoena sent months ago to contend Mr. Bainwol must not be important, their own statements and disclosures reveal the truth.  This factor also weighs in Plaintiffs' favor

### 3.     Any Prejudice to Defendants Results From Their Failure to Depose Mr. Bainwol When They Had the Chance – Not Once, Not Twice, But Many Times

Although Defendants do not tell the Court they identified Mr. Bainwol in their initial disclosures, they acknowledge that they served him with a deposition subpoena in October 2010. Mr. Borkowski told Defendants they would need to find a mutually agreeable date.  Borkowski Decl. ¶ 4.  After conferring with Mr. Borkowski about that deposition, Defendants never followed up on deposing Mr. Bainwol.  That in enough is sufficient to lay any prejudice at Defendants' feet.

But that was not Defendants' only opportunity to depose Mr. Bainwol.  In response to the subpoena Defendants served on the RIAA containing a host of broad topics on which they

sought documents and testimony, the RIAA planned to designate Mr. Bainwol for deposition. LeMoine Decl. ¶ 15.  However, Defendants never sought the deposition they had noticed, repeatedly deferring it until discovery had closed after they lost two motions to compel. Although it was not Plaintiffs' obligation to do so, Plaintiffs here went above and beyond their obligations of disclosure and attempted to *remind* Defendants of their desire to take an RIAA witness towards the close of discovery.  Defendants said nothing.

This is exactly the circumstance addressed by the court in *Joy*:  Defendants, like Joy, "had [their] chance to depose" Mr. Bainwol "and forewent it."  *Joy*, 2004 WL 719389, at *11. Defendants provide no justification for this failure, and it is not Plaintiffs' obligation to do so on their behalf.  The truth remains that the only prejudice Defendants claim to suffer is prejudice of their own making.  And they continue to make it:  Notwithstanding Defendants' previous abandonment of their pursuit of any RIAA witness (including Mr. Bainwol), Plaintiffs offered Defendants an *additional* opportunity to depose Mr. Bainwol in March.  *See* LeMoine Decl., Ex. 12 (3/22/2011 email from Glenn Pomerantz to Tariq Mundiya) ("we are willing to make Mr. Bainwol available for a deposition").  Defendants, however, have again refused.

Defendants contend that Mr. Bainwol presents a "textbook" case for exclusion under Rule 37.  However, the Rule states that witnesses disclosed by an opposing party should not be excluded.  Nonetheless, Defendants claim this is an inadequate answer to the failure to disclose Mr. Bainwol on Plaintiffs' Initial Disclosures, and that the failure to disclose would result in tremendous prejudice to Defendants if they were forced to depose Mr. Bainwol at this late date. But Defendants did not forego Mr. Bainwol's deposition because Plaintiffs failed to disclose him.  They knew about him, noticed his deposition, and pursued the RIAA through two rounds of motions to compel to get more documents before they would take the deposition they sought.

Both of those motions failed.   When the motions failed, instead of approaching Plaintiffs about

taking the deposition they had deferred, Defendants simply elected to roll the dice on this

preclusion motion instead.  This third factor also weighs in Plaintiffs' favor, because Defendants'

claims of prejudice ring hollow.

### 4.      The Phantom "Documents" Defendants Speculate About Cannot Justify A Continuance

The fourth factor considers whether a continuance would be necessary in the event the

witness is not excluded.  *Patterson,* 440 F.3d at 117.  Here, there is no need for such a

continuance.  Defendants could have deposed Mr. Bainwol numerous times and never did so.

They certainly would not be deserving of a continuance in these circumstances.  Although

Defendants raise a specter of a massive email search they would supposedly require, that is

unfounded. Defendants' subpoena to Mr. Bainwol did not include any request for documents –

their subpoena to the RIAA did.  And the RIAA produced nearly one hundred thousand pages of

documents in response to those subpoenas.  LeMoine Decl. ¶ 14.  Indeed, although Defendants

twice moved to compel further documents, Judge Freeman denied both motions.  Defendants

speculation about Mr. Bainwol's status as a witness somehow requiring even more documents

and searches of Mr. Bainwol's files conflicts with Judge Freeman's rulings.  Defendants'

subpoena never asked for documents from him in the first place and their two previous motions

to compel failed entirely to address him.

Because all four factors decidedly weigh in Plaintiffs' favor, Mr. Bainwol must be

permitted to testify.

### C.      <u>Teresa LaBarbera Whites Should Be Allowed to Testify</u>

Defendants' demanded exclusion of Ms. LaBarbera Whites also amounts to an excessive

remedy.  Applying the Second Circuit's four-factor test, this Court should reject Defendants'

effort to exclude Ms. LaBarbera Whites.

### 1. Plaintiffs' failure to disclose Ms. LaBarbera Whites is justified.

In the particular context of this case, Plaintiffs' failure to disclose Ms. LaBarbera Whites

was understandable and justified.  When litigation remains pending for several years, personnel

changes may necessitate late-disclosed witnesses.  Defendants have done the same type of late-

disclosure with George Searle.   Defendants did not list Mr. Searle on their Initial Disclosures or

the supplement thereto, yet they intend to present him as a trial witness.

For Plaintiffs' part, it would have been impossible to list every potential witness or

person with knowledge in any disclosure who may have relevant testimony about the harm

Defendants have caused.  Defendants' conduct touched every part of the recorded music

industry.  To successfully and exhaustively list every single witness with discoverable

knowledge of Defendants' harm would have required Plaintiffs to turn over employee rosters for

all of the Plaintiff companies – a useless exercise.  The much more reasonable, common-sense

approach is to prepare the best approximation of one's trial witness list in initial disclosures and

allow the other side to depose anyone who is inadvertently not included once witnesses are

disclosed for trial.

### 2. Ms. LaBarbera Whites will offer important testimony.

Ms. LaBarbera Whites will be a very important witness who will offer a singular

perspective at trial – that of the creative professional.  The jury will want and expect to hear from

someone intimately involved in making music, signing bands, and nurturing talent.  Ms.

LaBarbera Whites provides that unique perspective.  She has discovered and nurtured successful

musical acts like Beyonce, Jessica Simpson, and Britney Spears.  Ms. LaBarbera Whites can

speak to the damage that Defendants have done to the music business not just in terms of numbers, but in terms of lost artists, lost opportunities to market music, and lost opportunities for musicians to succeed.  The importance of her testimony cannot be downplayed.

> **3.      Allowing Ms. LaBarbera Whites to testify will not prejudice Defendants or require a continuance.**

Plaintiffs' failure to disclose Ms. LaBarbera Whites does not cause Defendants any prejudice.  Plaintiffs offered Defendants the opportunity to depose her several weeks ago, and Defendants refused.  Although Defendants now claim it is "too late" to take Ms. LaBarbera Whites' deposition as they are preparing for trial, that is not true.  Defendants' counsel are a large, able firm that has tasked a large team of lawyers to handle this case.  They could certainly spare the time for a brief deposition that would eliminate their claim of prejudice.  Nor would Ms. LaBarbera Whites' inclusion or deposition somehow necessitate a continuance.  Defendants refusal to take the brief time required to conduct a deposition and to bank instead on excluding Ms. LaBarbera Whites is a cynical ploy to keep the truth about the effect of Defendants' conduct on the music industry away from the jury's consideration.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion *in Limine* #4 and allow Plaintiffs to present the testimony of Mitch Bainwol and Teresa

LaBarbera Whites at trial.

Dated:  April 6, 2011                          Respectfully submitted

                                              */s/ Melinda E. LeMoine*
                                              Melinda E. LeMoine

                                              Attorney for Plaintiffs
                                              Munger, Tolles & Olson LLP
                                              355 South Grand Avenue, 35th Floor
                                              Los Angeles, CA 90071-1560
                                              (213) 683-9100
                                              (213) 687-3702 (Fax)

13638568.2