UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
ARISTA RECORDS LLC; ATLANTIC RECORDING
CORPORATION; ARISTA MUSIC, fka BMG
MUSIC; CAPITOL RECORDS, INC; ELEKTRA
ENTERTAINMENT GROUP INCw; INTERSCOPE
RECORDS; LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY RECORDS
LLC; SONY MUSIC ENTERTAINMENT, fka SONY
BMG MUSIC ENTERTAINMENT; UMG RECORDINGS,
INC; VIRGIN RECORDS AMERICA, INC.; and          06 CV 5936 (KMW)
WARNER BROS. RECORDS INC.,

                                                OPINION and ORDER
                        Plaintiffs,

        -against-

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; GREG BILDSON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                        Defendants.
----------------------------------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

**I.    Background**

On May 11, 2010, this Court granted summary judgment in favor of Plaintiffs on their claims against Defendants LimeWire LLC ("LW"), Lime Group LLC ("Lime Group"), and Mark Gorton (collectively, "Defendants") for secondary copyright infringement. The Court found that Defendants had induced multiple users of the LimeWire online file-sharing program ("LimeWire") to infringe Plaintiffs' copyrights. In the Court's Opinion and Order (as amended on May 25, 2010), the Court detailed this case's procedural and factual background, familiarity with which is assumed. (See Dkt. Entry No. 223.)

The litigation is now in the damage phase, with a trial on damages scheduled for May 2, 2011. Plaintiffs have identified approximately 11,205 sound recordings that have allegedly been

1

infringed through the LimeWire system.  Of those, approximately 9,715 are sound recordings as to which Plaintiffs have elected to seek statutory damages under Section 504(c)(1) of the Copyright Act.[1]  See 17 U.S.C. § 504(c)(1).  With respect to those 9,715 sound recordings, Plaintiffs have submitted competent evidence (1) that all of the sound recordings were infringed on the LimeWire system; and (2) that, with the exception of approximately 200 sound recordings, the sound recordings were owned by Plaintiffs.  (See Dkt. Entry No. 649.)

On March 18, 2011 (as amended on March 29, 2011), this Court held, pursuant to 17 U.S.C. § 412 ("Section 412"), that if an individual LimeWire user infringed a work prior to the registration of the copyright for that work, Plaintiffs are barred from recovering a statutory damage award from Defendants with respect to that work, unless registration was made within three months after the first publication of that work.  (See Dkt. Entry Nos. 630 & 646.)

Defendants now contend that, based on the Court's March 18, 2011 Order, Plaintiffs will be barred from seeking statutory damage awards with respect to approximately 1,322 late-registered sound recordings.  With respect to those 1,322 late-registered sound recordings, Defendants ask the Court to hold that Plaintiffs, having previously elected to recover statutory damage awards for those sound recordings, are now precluded from seeking to recover actual damages for those sound recordings.  (See Defendants' March 21, 2011 Letter.)

On March 29, 2011, the Court ordered Defendants to submit a letter describing any prejudice that they believe they would suffer if the Court permitted Plaintiffs to amend their election of remedies— i.e., "unelect" statutory damages and elect to recover actual damages— with respect to those works for which statutory damage awards are barred under Section 412.

---

[1] Plaintiffs are also seeking to recover actual damages for approximately 1,490 sound recordings from the pre-1972 period, for which statutory damages under the Copyright Act are concededly not available.

Defendants have submitted their letter, and Plaintiffs have responded, seeking to amend their election of remedies.  (See Plaintiffs' March 24, 2011 Letter.)

For the reasons that follow, the Court finds that Defendants would be unduly prejudiced if Plaintiffs were permitted to amend their election of remedies, just one month before trial, which is scheduled to commence on May 2, 2011.  Accordingly, Plaintiffs may not seek to recover actual damages for those sound recordings with respect to which they have already elected to recover statutory damages.

## II.    Relevant Law

Under Section 504 of the Copyright Act, a plaintiff may pursue "actual damages suffered by him or her as a result of the infringement" or, "an award of statutory damages for all infringements involved in this action."  17 U.S.C. § 504(b) and (c) (emphasis added).

The question of whether a party who has elected to seek statutory damages as to all of their post-1972 sound recordings can later, but before trial, carve out a portion of sound recordings as to which it will seek actual damages, was addressed by the Ninth Circuit in 2010. See Lanard Toys Ltd. v. Novelty, Inc., 375 Fed. Appx. 705 (9th Cir. 2010).  There, the district court had found no prejudice to defendant, where plaintiff amended its election of remedies six months before trial, and defendant neither objected to the amendment nor sought additional discovery occasioned by the amendment, and apparently objected only at or near trial to the amended election.  The Ninth Circuit held that it was not an abuse of discretion for the district court to hold that defendant was not prejudiced by plaintiff's amended notice of election.  Id. at 712.  In the instant case, however, Plaintiffs have sought to amend their election of remedies just one month before trial.

## III.    Analysis

After reviewing the parties' submissions, the Court finds that Defendants will be unduly prejudiced if Plaintiffs were permitted to amend their election of remedies to seek actual (rather than statutory) damages for some subset of their post-1972 sound recordings.

Over six months ago, on July 2, 2010, Plaintiffs wrote to the Court stating that, "[a]s to the post-1972 works, Plaintiffs elect to pursue statutory damages. In light of this evidence, Plaintiffs do not believe that evidence of their actual damages is relevant." (Defendants' March 21, 2011 Letter, Ex. A, at 7.) Since that date, Plaintiffs have <u>reiterated</u> their intention to seek statutory damages for all of their post-1972 sound recordings. (<u>See, e.g.</u>, Dkt. Entry Nos 335 & 411, Ex. 1.) As recently as this month, Plaintiffs confirmed that they were seeking statutory damages with respect to all of their post-1972 works. (<u>See</u> Dkt. Entry No. 550.)

Further, since July 2, 2010, Plaintiffs have repeatedly argued that their election of statutory damages for their post-1972 works justifies a narrower scope of discovery than if they were seeking actual damages. As a result, Plaintiffs' July 2010 election of statutory damages has significantly impacted the course of fact discovery.

For example, during fact discovery, Defendants requested that Plaintiffs produce documents sufficient to show their profits earned and costs incurred, including but not limited to artists' royalties, in connection with all of Plaintiffs' copyrighted works at issue in this case. Defendants also sought internal documents concerning any profits that Plaintiffs may have lost on any works at issue. In opposition, Plaintiffs argued that profit and cost information was irrelevant, because Plaintiffs had elected to recover statutory damages for their post-1972 works, not actual damages. (Defendants' April 1, 2011 Letter, Ex. 2, at 9.) In response, the Undersigned ordered additional briefing on the issue of whether profit discovery was relevant to a statutory damage analysis. Plaintiffs again stated that "[t]here is no requirement that a

4

Plaintiffs' lost profits must be factored into the statutory damages analysis." (Dkt. Entry No. 379, at 1-2.) Plaintiffs further stated that allowing discovery into Plaintiffs' profits and costs "would be contrary to the very reason that Congress created statutory damages." (Id.) Based on those arguments, Magistrate Judge Freeman held that Plaintiffs had to produce royalty expenses for only a fraction of their post-1972 sound recordings. Had Plaintiffs been pursuing actual damages rather than statutory damages for their post-1972 sound recordings, Defendants likely would have been entitled to greater profits and cost-based discovery.[2]

There are multiple other examples of discovery requests made by Defendants that the Court denied on the ground that Plaintiffs were seeking statutory damages, not actual damages, for their post-1972 works. For example, Defendants requested discovery concerning Plaintiffs distribution of their works available for free, or without Digital Rights Management ("DRM") protection. In opposition, Plaintiffs argued that such discovery bore no relevance to the statutory damages inquiry. (See Defendants' April 1, 2011 Letter, Ex. 3, at 2-3.) Judge Freeman denied Defendants their requested discovery concerning the availability of Plaintiffs' works for free, and most of Defendants' requested discovery concerning the availability of Plaintiffs' works issued

---

[2] Plaintiffs assert that Defendants have not suffered prejudice as a result of being denied royalty, profit, and cost information, because (1) Defendants have that information with respect to 360 of the 1,322 sound recordings; (2) there may be a later determination that certain costs cannot be deducted from lost revenues in computing Plaintiffs' lost profits; (3) information about Plaintiffs' costs is generally known; and (4) Plaintiffs need not establish their exact amount of damages, because a jury may speculatively determine actual damages. (See Plaintiffs' April 4, 2011 Letter.) The Court rejects all of these arguments. First, 360 sound recordings represents just over 25 percent of the 1,322 sound recordings for which Plaintiffs would be seeking actual damages. Second, the Court has not made a determination as to which costs may be deducted in computing lost profits. Third, as Defendants have explained, artist royalties can vary widely. Finally, Plaintiffs' claim that they need not establish exact losses ignores the prejudice that Defendants will suffer. In order to challenge Plaintiffs' claims of actual damages, Defendants would be entitled to rebut those claims with accurate information about Plaintiffs' true lost profits.

5

without "DRM" protection.³  Clearly, that information would have been viewed as having greater relevance had Plaintiffs been seeking actual damages for their post-1972 works.

Finally, Defendants sought discovery into Plaintiffs' internal communications referring to LimeWire and the impact of the LimeWire shutdown.  Relying on the factors set out in Bryant v. Media Rights Productions, Inc., 603 F.3d 135, 144 (2d Cir. 2010), for analyzing statutory damages, Judge Freeman ordered Plaintiffs to produce such communications from the files of only ten custodians.  (See Dkt. Entry No. 413.)  After Plaintiffs appealed Judge Freeman's order, the Undersigned reduced that number to only five custodians, noting the "tenuous connection" between the discovery sought and the "conduct and attitude" of the parties factor found in Bryant.  (See Dkt. Entry No. 554.)  The Undersigned would have permitted greater discovery had Plaintiffs been seeking actual damages.

## IV.  Conclusion

For the foregoing reasons, the Court finds that Defendants would be unduly prejudiced if Plaintiffs were permitted, just one month before trial, to amend their election of remedies to seek actual (rather than statutory) damages for some subset of their post-1972 sound recordings, particularly considering the fact that, for months, Defendants have been denied broader discovery precisely because Plaintiffs were seeking statutory, not actual damages.

As noted above, Defendants allege that Plaintiffs were late in registering the copyrights of 1,322 of their post-1972 sound recordings.  In keeping with Judge Freeman's earlier Report and Recommendation, the Undersigned ordered Plaintiffs to produce "documents or information

---

³ Plaintiffs have filed an *in limine* motion concerning whether Defendants can make arguments about the availability of Plaintiffs' works for free through other illegal online services.  However, any argument made by Plaintiffs in their *in limine* motion does not take away from the fact that Defendants may have been permitted greater discovery concerning the availability of Plaintiffs' works generally, had Plaintiffs been seeking actual damages for some subset of their post-1972 works.

sufficient to show the earliest dates that each of the allegedly 1,322 late-registered works was downloaded on the LimeWire system." (Dkt. Entry No. 630, at 8.) On April 1, Plaintiffs informed Defendants that they "do not have anything further to produce" beyond what they have already provided to Defendant. (Defendants' April 5, 2011 Letter, Ex. 2.) Defendants now contend that Plaintiffs do, in fact, have information regarding when their sound recordings first appeared on the LimeWire site. (Defendants' April 5, 2011 Letter, at 3.)

The parties are ordered to meet and confer in good faith with respect to any discovery necessary to determine which post-1972 sound recordings must now be omitted from Plaintiffs' final song list pursuant to this Court's ruling on Section 412. Any discovery disputes are hereby referred to Magistrate Judge Freeman. The Court reminds the parties that Plaintiffs shall submit their final list of sound recordings (final versions of Schedule A and Schedule B) by Friday, April 15, at 5:00 p.m.

SO ORDERED.[4]

Dated: New York, New York
April 11, 2011

_____
Kimba M. Wood
United States District Judge

---

[4] The parties shall file their letters concerning this instant issue of prejudice (submitted by the Defendants on April 1 and April 5, 2011, and by Plaintiffs on April 4, 2011) publicly on ECF.

7