UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br> v. <br><br> LIME GROUP LLC; LIME WIRE LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | ECF Case <br><br> 06 CV 5936 (KMW)(DF) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* #2 TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING DEFENDANT MARK GORTON'S NET WORTH AND SOURCES OF INCOME UNRELATED TO LIME WIRE PRIOR TO ANY DETERMINATION THAT PUNITIVE DAMAGES ARE APPROPRIATE**

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKROUND........................................................................................................3

ARGUMENT..................................................................................................................................4

    A.    The Transfers of Unrelated Businesses Do Not Provide Circumstantial Evidence of Fraudulent Intent And Are Irrelevant To Plaintiffs' Fraudulent Conveyance Claim ....4

    B.    Plaintiffs Fail To Show That Net Worth Evidence Should Be Admitted Absent A Finding That Punitive Damages Are Warranted............................................................7

    C.    Precluding Evidence Of Net Worth Until After A Determination That Punitive Damages Are Warranted Would Not Be Unduly Burdensome Or Inefficient. .............9

CONCLUSION.............................................................................................................................10

## TABLE OF AUTHORITIES

**CASES**                                                                                                             **Page(s)**

*In re Chadborne Industries, Ltd.*,
  71 B.R. 86 (Bankr. S.D.N.Y. 1987) ............................................................................................... 6

*Dubroff v. First Nat'l Bank of Glens Falls (In re Dubroff)*,
  119 F.3d 75 (2d Cir. 1997) ........................................................................................................... 1

*In re Enron Corp.*,
  No. 04 Civ. 1367, 2005 WL 356985 (S.D.N.Y. Feb. 15, 2005) ................................................. 4

*First Fidelity Bank, N.A. v. Manzo*,
  250 A.D.2d 730, 673 N.Y.S.2d 196 (2d Dep't 1998) ................................................................. 7

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*,
  No. 94 CIV 4725, 1999 WL 11553 (S.D.N.Y. Jan. 13, 1999) ........................................ 7, 8, 10

*Laurin v. Pokoik*,
  No. 02 Civ.1938, 2005 WL 2230457 (S.D.N.Y. Sept. 13, 2005) ............................................... 7

*Le Mistral, Inc. v. Columbia Broad. Sys.*,
  61 A.D.2d 491, 402 N.Y.S.2d 815 (1st Dep't 1978) .................................................................. 9

*Lennon v. Seaman*,
  No. 99 CIV. 2664, 2002 WL 109525 (S.D.N.Y. Jan. 28, 2002) ................................................ 9

*Lippe v. Bairnco Corp.*,
  249 F. Supp. 2d 357 (S.D.N.Y. 2003) .................................................................................... 6, 7

*Loussier v. Universal Music Grp.*,
  No. 02 Civ 2447 (KMW), 2005 WL 5644421 (S.D.N.Y. July 14, 2005) .................................. 8

*Marine Midland Bank v. Murkoff* ,
  120 A.D.2d 122, 508 N.Y.S.2d 17 (1st Dep't 1986) .................................................................. 1

*Nardelli v. Stamberg*,
  44 N.Y.2d 500, 377 N.E.2d 975, 406 N.Y.S.2d 443 (N.Y. 1978) ............................................. 9

*Nonas v. Romantini*,
  271 A.D.2d 292, 706 N.Y.S.2d 109 (1st Dep't 2000) ................................................................ 6

*NPR, LLC v. Met Fin Mgmt., Inc.*,
  63 A.D.3d 1128, 882 N.Y.S.2d 253 (2d Dep't 2009) ................................................................. 7

*Orr v. Kinderhill Corp.*,
  991 F.2d 31 (2d. Cir. 1993) .................................................................................................... 5, 6

*Pauk v. Pauk*,
   232 A.D.2d 392, 648 N.Y.S.2d 134 (2d Dep't 1996) .............................................................. 1

*Rosa v. Town of E. Hartford*,
   No. 3:00CV1367, 2005 WL 752206 (D. Conn. Mar. 31, 2005) ......................................... 9, 10

*Smith v. Lightning Bolt Prods., Inc.*,
   861 F.2d 363 (2d Cir. 1988) .................................................................................................. 8

*Tyco Int'l Ltd. v. Walsh*,
   No. 02 Civ. 4633, 2010 WL 3000179 (S.D.N.Y. July 30, 2010) ............................................ 8

*In re Weeden*,
   306 B.R. 449 (Bankr. W.D.N.Y. 2004) .................................................................................. 7

*Wittemann Bros. v. Forman Bottling Co.*,
   178 A.D. 674, 165 N.Y.S. 811 (2d Dep't 1917) ..................................................................... 7


**STATUTES**

CPLR 5205(c)(5) ............................................................................................................................ 1

**PRELIMINARY STATEMENT**

Plaintiffs' opposition to Defendants' Motion in Limine No. 2 does not challenge, and therefore acknowledges:

- ➢ Mark Gorton's retirement account, or IRA, is absolutely immune under New York law from any damage award — compensatory, punitive, or otherwise — and therefore cannot be used in calculating his net worth for damages purposes.  See CPLR 5205(c)(5); *Dubroff v. First Nat'l Bank of Glens Falls (In re Dubroff)*, 119 F.3d 75, 79 (2d Cir. 1997) (CPLR 5205 "broadly exempts IRAs from the reach of judgment creditors."); *Pauk v. Pauk*, 232 A.D.2d 392, 393, 648 N.Y.S.2d 134, 135 (2d Dep't 1996);

- ➢ The *sole* claim for fraudulent conveyance is against the M. J. G. Lime Wire Family Limited Partnership, not against any of the *unrelated* family limited partnerships (in which Mark Gorton, Jody Gorton (his wife), and their children have interests);

- ➢ The only remedy that is available to Plaintiffs, *even if* the jury adopts Plaintiffs' fraudulent conveyance theory, is limited to the repatriation of assets that would have been available to creditors had there been no conveyance to the M.J.G. Lime Wire Family Limited Partnership — that is, Lime Group's interest in Lime Wire and any distributions that would have flowed from Lime Wire to Lime Group (instead of the M.J.G. Lime Wire Family Limited Partnership). *Marine Midland Bank v. Murkoff* 120 A.D.2d 122, 508 N.Y.S.2d 17, 22 (1st Dep't 1986) (limiting fraudulent conveyance remedy to *assets that would have been available to the creditor absent the conveyance*); and

- ➢ The assets held by Jody Gorton and the Gorton children must be excluded in any calculation of Mark Gorton's net worth.

Plaintiffs nevertheless assert (Pl. Opp. at 10-11) that evidence of the assets held by Mr. Gorton that are unrelated to LimeWire will help the jury assess whether Mr. Gorton possessed the requisite fraudulent "intent" under New York law when the M.J.G. Lime Wire Family Limited Partnership was created.  Plaintiffs also assert that, in light of the Court's summary judgment opinion, the Court has *already* found the type of "intentional" wrongdoing required for punitive damages under New York law and, therefore, evidence of Mr. Gorton's net worth should *automatically* be admissible.  Plaintiffs never explain how their position squares

with their proposed jury instructions which (1) ask the jury whether Plaintiffs have satisfied their burden of showing that Defendants acted with the requisite conduct justifying punitive damages, and (2) inform the jury that they "may, but are not required to, award punitive damages."

Plaintiffs also fail to explain how evidence of Mr. Gorton's financial wherewithal on **May 2, 2011** will help the jury assess whether the creation of the M.J.G. Lime Wire Family Partnership **in 2005** was intended to hinder, delay, or defraud creditors. Moreover, although Plaintiffs cite Mr. Gorton's testimony at the asset freeze hearing regarding the value of his assets as of July 2010, they proffer no persuasive reason as to why the creation of *other* Family Limited Partnerships and the current value of the *other* businesses or assets held by the Family Limited Partnerships bear some relationship to Mr. Gorton's "intent" vis-à-vis the Plaintiff record companies when he created the M.J. G. Lime Wire Family Limited Partnership in 2005. Although Plaintiffs have known about other transactions involving the Family Limited Partnerships for several years, they have not challenged any transaction in which Mr. Gorton engaged beyond the creation of the M.J.G Lime Wire Family Limited Partnership. Not only would evidence and details of *other* Family Limited Partnerships that govern Mr. Gorton's myriad *other* businesses be irrelevant and unduly prejudicial, it would further confuse the jury in a case that is complicated enough.

Finally, the Court should also reject Plaintiffs' argument that deferring the admission of "net worth" evidence until the jury has found that Plaintiffs are entitled to punitive damages will be burdensome and inefficient. Courts routinely exclude net worth evidence during a trial, and then expeditiously admit it after there is a finding that punitive damages are appropriate. Thus, exclusion of such evidence is not only proper under the law, it is entirely workable in practice. It is not the cumbersome "trifurcation" that Plaintiffs suggest in their brief.

If the jury finds that punitive damages are appropriate, we submit that a day (or less) of testimony for financial testimony by Mr. Gorton and any related witnesses will be sufficient.

## FACTUAL BACKROUND

Plaintiffs' "short summary of the relevant facts" (Pl. Opp. at 5) omits some critically important ones.  The M.J.G. Lime Wire Family Limited Partnership transfer took place over a year before this action was filed and several months before Plaintiffs sent Lime Wire a cease and desist letter on September 13, 2005.  Here is Mr. Gorton's testimony in this case:

> "Let me just say that the entirety of the planning for the creation of the Family Limited Partnerships was done well in advance of the *Grokster* decision.  I mean as I said before, it took about a year to do this.  And somewhere in the earlier part of that time the structure was put in place."[1]

Indeed, Mr. Gorton met with lawyers six months before the Supreme Court reversed the Ninth Circuit's decision (which had held that *Grokster* did *not* violate the copyright laws).  The Court may recall that, at the July 29, 2010 asset freeze hearing, Defendants showed through contemporaneous emails that the June 30, 2005 date for the execution of the transfer documents for the Family Limited Partnerships was selected on June 20, 2005 — a week *prior to* the Supreme Court's issuance of the *Grokster* decision.  We attach the portion of the transcript that Plaintiffs did not provide the Court.[2]

The Family Limited Partnerships (other than the M.J.G. Lime Wire FLP) — in which Mr. Gorton owns a 48% interest (47% interest in the case of M.J.G. Lime Spot FLP) — contain a myriad assets and other businesses.  Introduction of evidence concerning the fluctuating value of

---

[1] Gorton Dep. (attached as Exhibit A to the Declaration of Tariq Mundiya ("Mundiya Reply Decl.") dated April 11, 2011, submitted herewith) at 79:16-22, April 14, 2008.

[2] Asset Freeze Hr'ng Tr. (Mundiya Reply Decl. Ex. B) at 101:7-20, 104:2-17, July 29, 2010; Rubinstein Dep. (Mundiya Reply Decl. Ex. C) at 82:4-15, February 9, 2011.

- 3 -

these businesses and assets is of tenuous relevance to the issues being tried, poses a great risk of undue prejudice, and creates the likelihood of juror confusion and should be excluded prior to a determination on the appropriateness of punitive damages.[3]

## ARGUMENT

A. The Transfers of Unrelated Businesses Do Not Provide Circumstantial Evidence of Fraudulent Intent And Are Irrelevant To Plaintiffs' Fraudulent Conveyance Claim

It is well-settled under New York law that any remedy for fraudulent conveyance under § 276 of N.Y. Debtor & Creditor Law for transfers made to hinder, delay or defraud creditors is limited *to the assets that would have been available to the creditor absent the conveyance. In re Enron Corp.*, No. 04 Civ. 1367, 2005 WL 356985, at *10 (S.D.N.Y. Feb. 15, 2005). Here, the subject of Plaintiffs' fraudulent conveyance claim is the transfer of Lime Group's interest in Lime Wire. Thus, if Plaintiffs succeed on that claim, the only assets that would be potentially available to creditors would be limited to Lime Group's interest in Lime Wire and any distributions that would have flowed from Lime Wire to Lime Group. Defendants do not seek to preclude evidence of such assets. Plaintiffs' explanations of why evidence of other assets, unrelated to their fraudulent conveyance claim, should be admissible ring hollow.

Plaintiffs assert that evidence of "Mark Gorton's net worth, his sources of income other than Lime Wire, the six family limited partnerships . . .and the value of the assets transferred are all highly relevant to Plaintiffs' fraudulent conveyance claim." (Pl. Opp. at 10).

---

[3] The businesses and assets held by the Family Limited Partnerships include, among others, a federally-regulated brokerage operation (Lime Brokerage LLC), a company that makes software to help doctors (Lime Medical LLC), and a condominium office at 377 Broadway (M.J.G. 377 Tower Realty FLP) as well as several investments in hedge funds (primarily the M.J. Gorton FLP). The principal assets held by Mr. Gorton outside the Family Limited Partnerships include cash (which has been primarily used to pay litigation-related expenses), a house on the Upper West Side (that is jointly owned by Mr. Gorton and his wife, Jody), and an IRA. (Gorton Decl., filed June 30, 2010, Dkt. No. 297 at ¶¶ 12-14, 31-33).

They assert that such evidence (i) will provide circumstantial evidence of Mr. Gorton's fraudulent intent (Pl. Opp. at 8-9), and (ii) that "evidence concerning the value of Gorton's family members' interests in these six family limited partnerships" is necessary because without such evidence Plaintiffs cannot show the value of Mr. Gorton's financial condition before and after the transfers and that the jury will be unable to test Mr. Gorton's estate planning motives. (Pl. Opp. at 10).  None of these reasons are persuasive.

The fact that unrelated businesses and investments were transferred into non-defendant Family Limited Partnerships will not assist the jury in assessing whether the transfer at issue in *this* case involved the requisite fraudulent intent.  Plaintiffs are free to examine Mr. Gorton about the M.J.G. Lime Wire Family Limited Partnership, the reasons for that transfer, and the value of assets transferred into the M.J.G. Lime Wire Family Limited Partnership, including all of the distributions that have been made from Lime Wire LLC to M.J.G. Lime Wire Family Limited Partnership since June 2005.  Their Amended Complaint makes clear that their fraudulent conveyance claim is based on these facts and nothing more. *See. e.g.*, First Amended Complaint ¶ 62 ("[i]n September 2005, the M.J.G. Lime Wire Family Limited Partnership became the majority shareholder of Lime Wire LLC.  Financial distributions previously made to Lime Group LLC were henceforth made to the M.J.G. Lime Wire Family Limited Partnership."); *see also* id. ¶¶ 59, 112.  There are no allegations about the creation of the other Family Limited Partnerships in the Amended Complaint and, in fact, they have nothing to do with the fraudulent conveyance claim at issue in this litigation.

The cases Plaintiffs rely on to argue the relevancy of "other" transactions are inapposite.  They demonstrate that those "other" transactions are relevant only if they were integral to the fraudulent conveyance being challenged in the litigation.  For example, in *Orr v.*

*Kinderhill Corp.*, 991 F.2d 31, 35-36 (2d. Cir. 1993), the Second Circuit affirmed the district court's examination of the distribution of corporate shares in conjunction with fraudulent transfer of property to the corporation because both "constituted a single, integrated transaction" under attack.  Similarly, in *Nonas v. Romantini*, 271 A.D.2d 292, 293, 706 N.Y.S.2d 109, 110-11 (1st Dep't 2000), the First Department held that in a claim involving a fraudulent transfer of cash it was entirely appropriate to consider the loan transaction that was used to obtain the cash and the apartment purchase that was made using the cash.  And in *In re Chadborne Indus., Ltd.*, 71 B.R. 86, 89 (Bankr. S.D.N.Y. 1987), the court properly considered the valuation of property that was directly affected by the alleged fraudulent transfer.  By contrast, there is no allegation, let alone evidence, that there was some integral connection between the transfer of Lime Group's interest in Lime Wire LLC to the M.J.G. Lime Wire Family Limited Partnership and the transactions related to the creation of the other Family Limited Partnerships that would justify inquiry into those other transfers.

    Plaintiffs assert that there needs to be examination of these other contemporaneous  transfers because the jury needs to assess Mr. Gorton's financial condition before and after the one transfer at issue.  (Pl. Opp. at 9).  This, too, is misplaced.  Because the transfer under scrutiny is Mr. Gorton's transfer of Lime Group's interest in Lime Wire, the relevant question is whether *that transfer* impacted Mr. Gorton's financial condition, namely, whether the transfer rendered him insolvent or unable to discharge his debts.  *See, e.g.*, *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 375 (S.D.N.Y. 2003) ("it is hornbook law that '[a] conveyance cannot be fraudulent as to creditors if the debtor's solvency is not affected thereby, that is, if the conveyance does not deplete or otherwise diminish the value of the assets of the debtor's estate remaining available to creditors.'" (quoting 30 N.Y. Jur.2d Creditors' Rights &

Remedies § 305 (2003))).  There is no allegation or assertion that the transfer involving M.J.G. Lime Wire Family Limited Partnership rendered Mr. Gorton insolvent or unable to meet his obligations. And, Plaintiffs cite no authority for the proposition that the "financial condition" factor under the "badge of fraud" test requires a detailed examination into all unrelated businesses where there is no contention that the challenged transaction rendered the defendant insolvent or unable to meet his debts.[4]  Quite the contrary: Plaintiffs want to introduce evidence of net worth to show that Mr. Gorton *is* solvent and capable of satisfying a damages award.[5]

### B. Plaintiffs Fail To Show That Net Worth Evidence Should Be Admitted Absent A Finding That Punitive Damages Are Warranted

As set forth in Defendants' initial brief, net worth evidence is irrelevant and prejudicial absent a finding that punitive damages are warranted.  *See, e.g.*, *Laurin v. Pokoik*, No. 02 Civ.1938, 2005 WL 2230457, at *4 (S.D.N.Y. Sept. 13, 2005); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, No. 94 CIV 4725, 1999 WL 11553, at *12 (S.D.N.Y. Jan. 13,

---

[4]   The authority upon which Plaintiffs rely (Pl. Opp. at 8-9) is distinguishable.  In *Wittemann Bros. v. Forman Bottling Co.*, 178 A.D. 674, 676, 165 N.Y.S. 811, 813 (2d Dep't 1917) the Second Department held that contemporaneous transfers were relevant because they were made "to divest the debtor of all his property" so that his creditors could not access it.  In *First Fidelity Bank, N.A. v. Manzo*, 250 A.D.2d 730, 730, 673 N.Y.S.2d 196, 197 (2d Dep't 1998), the previous transfers were examined because defendant's "corporation had defaulted on one note and was about to default on another." And in *NPR, LLC v. Met Fin Mgmt., Inc.*, 63 A.D.3d 1128, 1129, 882 N.Y.S.2d 253, 254 (2d Dep't 2009), the Second Department considered the financial circumstances of a defendant whose alleged fraudulent transfer "rendered the [defendant] insolvent."

[5]   Despite Plaintiffs' assertions to the contrary (Pl. Opp. at 10), the value of the interests held by Jody Gorton and the Gorton children have nothing to do with the value of the interests held by Mr. Gorton.  Plaintiffs' reliance on *In re Weeden*, 306 B.R. 449, 463 (Bankr. W.D.N.Y. 2004) (Pl. Opp. at 10) is misplaced.  In *In re Weeden* (a case involving bankruptcy discharge proceedings), a debtor transferred her house to her parents with the intent to defraud the lender and subsequently lied about it. The bankruptcy court, denying discharge, held that the bankruptcy trustee was entitled to file a judgment against the debtor's parents because they were involved in a "greater and ongoing fraudulent scheme" to help their daughter keep her assets beyond the reach of her creditors. *Id*. at 462.

1999).[6]  Plaintiffs argue that evidence of Mr. Gorton's net worth is not prejudicial because this Court has already found "as a matter of law" that Defendants engaged in "intentional wrongdoing." (Pl. Opp. at 12-13.)

        Plaintiffs are wrong.  Only the jury can determine whether Plaintiffs have met their burden to establish whether, and the extent to which, Plaintiffs are entitled to punitive damages.  Plaintiffs' own proposed jury instructions — based on pattern instructions in New York — explain that it is up to the jury to make the punitive damages determination.  Plaintiffs' jury instruction provides  "[y]ou may, but are not required to, award punitive damages for infringement of the pre-1972 sound recordings if you find that the acts of Defendants were wanton and reckless, or malicious."[7]  *See* Plaintiffs' Proposed Jury Instruction No. 36 (Mundiya

---

[6]    *See also Tyco Int'l Ltd. v. Walsh*, No. 02 Civ. 4633, 2010 WL 3000179, at *1 (S.D.N.Y. July 30, 2010) ("A defendant's net worth is only relevant if there is a finding that punitive damages should be awarded"); *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373-74 (2d Cir. 1988) ("the preferred method . . . is to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensatory damages have been tried.").

[7]    Plaintiffs try to distinguish *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group, N.V.*, No. 94 CIV 4725, 1999 WL 11553 (S.D.N.Y. Jan. 13, 1999), by arguing that that the court excluded net worth evidence because there had been no finding of intent.  That same logic applies here.  Plaintiffs' own jury instructions have shown that findings of intent on summary judgment (or even after the damages trial by the jury) do not mandate a punitive damages award.  Plaintiffs also argue that *Loussier v. Universal Music Group, Inc.* is "easily distinguishable" because the Court excluded net worth evidence "during the liability phase."  Plaintiffs ignore the fact that the court also excluded the defendants' net worth during the damages phase, noting that net worth might be admitted on damages in limited circumstances – "if, for example, Defendants seek to deduct company overhead or other general corporate costs from their [] Album profits."  No. 02 Civ 2447 (KMW), 2005 WL 5644421, at *2-*3 (S.D.N.Y. July 14, 2005).  And nothing Plaintiffs say about the posture of *Smith v. Lightning Bolt Prods., Inc.* detracts from its central message: net worth evidence should be admitted only after a jury finds that punitive damages are warranted.  861 F.2d 363, 373-74. (2d Cir. 1988).

- 8 -

Decl. Ex. D) at 73-74. By Plaintiffs' own admission, whether punitive damages will be awarded is an open issue that will be decided only by a jury in its own discretion.[8]

Even if a jury finds "intentional wrongdoing," an award of punitive damages would not, as Plaintiffs suggest, follow as a matter of law. The cases they cite provide no support for that argument. *See, e.g.*, *Nardelli,*, 44 N.Y.2d at 503, 377 N.E.2d at 977, 406 N.Y.S. 2d at 445 (holding that jury's finding of malice sufficiently justified its punitive damages award, but that "exemplary damages [need not] be awarded in every such action, for the trier of facts is not required to make such an award simply because it may do so"); *Le Mistral*, 61 A.D.2d at 495, 402 N.Y.S. 2d at 817 (recognizing "intentional misdoing" as a basis for punitive damages, but noting that "the award of punitive damages under circumstances warranting the allowance of same rests in the discretion of the jury").

### C. Precluding Evidence Of Net Worth Until After A Determination That Punitive Damages Are Warranted Would Not Be Unduly Burdensome Or Inefficient.

Plaintiffs' assertion that there will be "unworkable procedural and logistical challenges" (Pl. Opp. at 15) if net worth evidence is admitted after the jury finds an entitlement to punitive damages is misplaced. The cases Plaintiffs cite involved denial of bifurcation requests to try *different claims separately*. *See Lennon v. Seaman*, No. 99 CIV. 2664, 2002 WL 109525, at *10 (S.D.N.Y. Jan. 28, 2002) (denying motion to bifurcate copyright claim from conversion claim); *Rosa v. Town of E. Hartford*, No. 3:00CV1367, 2005 WL 752206, at *5 (D.

---

[8] The very cases cited in Plaintiffs' opposition (at pages 11-12) are inconsistent with their position. *See, e.g.*, *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503, 406 N.Y.S.2d 443, 445) (N.Y. 1978) ("Whether to award punitive damages in a particular case, as well as the amount of such damages, if any, are primarily questions which reside in the sound discretion of the original trier of the facts . . . in this case the jury."); *Le Mistral, Inc. v. Columbia Broad. Sys.*, 61 A.D.2d 491, 495, 402 N.Y.S.2d 815, 817 (1st Dep't 1978) ("The award of punitive damages under circumstances warranting the allowance of same rests in the discretion of the jury.").

Conn. Mar. 31, 2005) (denying motion to bifurcate claims against separate defendants).  Courts routinely preclude net worth evidence absent a finding that punitive damages are warranted, and (2) admit net worth evidence immediately upon such a finding.  *Kidder, supra,* No. 94 CIV 4725, 1999 WL 11553, at *12.  If the jury finds punitive damages are warranted, one day of trial testimony (or less) will provide ample time for the parties to present the net worth evidence necessary for the jury to determine the amount of punitive damages. This will not be burdensome or inefficient.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion in Limine #2.

Dated:  New York, NY  
April 11, 2011

WILLKIE FARR & GALLAGHER LLP


    /s/ Tariq Mundiya  
Tariq Mundiya (tmundiya@willkie.com)  
Joseph T. Baio (jbaio@willkie.com)  
John R. Oller (joller@willkie.com)  
Todd G. Cosenza (tcosenza@willkie.com)  
787 Seventh Avenue  
New York, New York  10019  
Phone:  (212) 728-8000  
Fax:  (212) 728-8111

*Attorneys for Lime Group LLC, Lime Wire LLC, Mark Gorton, and M.J.G. Lime Wire Family Limited Partnership*