UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ARISTA RECORDS LLC; ATLANTIC RECORDING
CORPORATION; ARISTA MUSIC, fka BMG
MUSIC; CAPITOL RECORDS, INC; ELEKTRA
ENTERTAINMENT GROUP INC; INTERSCOPE
RECORDS; LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY RECORDS
LLC; SONY MUSIC ENTERTAINMENT, fka SONY
BMG MUSIC ENTERTAINMENT; UMG RECORDINGS,
INC; VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,                              06 CV 5936 (KMW)

                                                        OPINION AND ORDER
                        Plaintiffs,

        -against-

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; GREG BILDSON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                        Defendants.
-------------------------------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

**I.      Introduction**

On May 11, 2010, this Court granted summary judgment in favor of Plaintiffs on their claims against Defendants LimeWire LLC ("LW"), Lime Group LLC ("Lime Group"), and Mark Gorton (collectively, "Defendants") for secondary copyright infringement. The Court found that Defendants had induced multiple users of the LimeWire online file-sharing program ("LimeWire") to infringe Plaintiffs' copyrights. In the Court's Opinion and Order (as amended on May 25, 2010), the Court detailed this case's procedural and factual background, familiarity with which is assumed. (See Dkt. Entry No. 223.)

A trial on damages for copyright infringement, and on Plaintiffs' remaining claims, is scheduled for May 3, 2011. Specifically, Plaintiffs will try their claims for (1) vicarious

1

copyright infringement; (2) fraudulent conveyance; and (3) unjust enrichment; as well as for (4) statutory damage awards with respect to post-1972 works; and (5) actual damages, punitive damages, and equitable relief under common law copyright infringement and unfair competition, with respect to pre-1972 works.[1]  (See Dkt. Entry No. 411-1.)

Defendants have moved *in limine* to preclude Plaintiffs from offering any argument or evidence at trial regarding Defendant Mark Gorton's net worth, or sources of income and financial condition unrelated to LimeWire, unless and until there has been a determination by the jury that punitive damages are awardable.  For the reasons that follow, Defendants' motion is DENIED.

## II.     Analysis

In their instant motion, Defendants concede that financial information <u>relating to LimeWire</u> may be relevant to the determination of statutory damage awards, with respect to "the expenses saved, and profits earned, by the infringer" factor listed in <u>Bryant v. Media Rights Productions, Inc.</u>, 603 F.3d 135 (2d Cir. 2010).  Defendants also concede that they are not seeking to preclude evidence concerning the single transfer of assets which is the subject of Plaintiffs' fraudulent conveyance claim.  Notwithstanding these two concessions, Defendants contend that <u>all other information</u> pertaining to <u>Gorton's</u> net worth is relevant only to Plaintiffs' common law claim for punitive damages, and that therefore, that evidence should be excluded unless and until the jury determines that punitive damages should be awarded to Plaintiffs for their common law copyright claims.  (Def. Mem. at 1.)

---

[1]  Plaintiffs have identified approximately 11,205 sound recordings that have allegedly been infringed through the LimeWire system.  Of those, approximately 9,715 are sound recordings as to which Plaintiffs have elected to seek statutory damages under Section 504(c)(1) of the Copyright Act.  See 17 U.S.C. § 504(c)(1).  Plaintiffs are also seeking to recover actual damages for approximately 1,490 sound recordings from the pre-1972 period, for which statutory damages under the Copyright Act are concededly not available.

A.     Evidence of a Defendants' Net Worth Generally

To advance their argument, Defendants cite to several decisions from this Circuit, finding that evidence of a defendant's net worth is highly prejudicial, and relevant only if there has been a finding that punitive damages should be awarded.  See e.g., Tyco Int'l Ltd. v. Walsh, No. 02 Civ. 4633, 2010 WL 3000179, at *1 (S.D.N.Y. July 30, 2010) ("A defendant's net worth is only relevant if there is a finding that punitive damages should be awarded."); Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 266 (2d Cir. 1999) ("Evidence of wealth . . . is generally inadmissible in trials not involving punitive damages." (citation omitted)).  As the Second Circuit has noted:

> Since it often would be prejudicial to a defendant to attempt to litigate its financial condition during the trial on the issues of liability and compensatory damages, the preferred method of accommodating the various interests is to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendant's conduct warrants any award of punitive damages at all.

Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 373-74 (2d Cir.1988).

Defendants are correct that courts have typically found that evidence of a defendant's net worth is too prejudicial to allow for its introduction during the liability phase of a trial, or with respect to the issue of compensatory damages.   However, in none of those cases was the defendant's overall financial condition relevant to a liability issue.

Here, however, certain evidence pertaining to Gorton's financial condition is relevant to Plaintiffs' effort to prove, by clear and convincing evidence, their fraudulent conveyance claim.

B.     Plaintiffs' Fraudulent Conveyance Claim

Plaintiffs' fraudulent conveyance claim, brought under New York Debtor and Creditor Law Section 276,  is admittedly based only on a transfer made in June of 2005: Gorton's transfer of Lime Group's interest in LimeWire (and any distributions that would have flowed from LimeWire to Lime Group) into M.J.G. LimeWire Family Limited Partnership (hereinafter

3

"LimeWire FLP").  See Pl. Opp. at 9 (stating that "Plaintiffs' fraudulent conveyance claim alleges only transfers related to LimeWire and Lime Group's interest in LimeWire into the LimeWire FLP" ).

However, even though Plaintiffs' fraudulent conveyance claim is based only on this transfer, Gorton transferred assets from other entities into five other family limited partnerships at the same time that he made his transfer into LimeWire FLP.  Moreover, all of these transfers were made just days after the Supreme Court's decision in Metro-Goldwyn Mayer Studios, Inc. v. Grokster Ltd., 545 U.S. 913 (2005).

Gorton's multiple transfers of assets into multiple family limited partnerships—including the value of those assets—are relevant to Plaintiffs' fraudulent conveyance claim, because they may provide evidence that the conveyance at issue "was part of a comprehensive scheme" to divest Gorton of assets reachable by future creditors.  Wittemann Bros. v. Forman Bottling Co., 178 A.D. 674, 675 (N.Y. App. Div. 1917).

Indeed, numerous courts have observed that a plaintiff seeking to prove fraudulent conveyance may have no way to prove the requisite fraudulent intent without circumstantial evidence from which intent to hinder, delay or defraud may be inferred (referred to as "badges of fraud").  As one court has observed, "[d]irect evidence of fraudulent intent is often elusive. Therefore, courts will consider 'badges of fraud,' which are circumstances that accompany fraudulent transfers so commonly that their presence gives rise to an inference of intent."  Pen Pak Corp. v. LaSalle Nat'l Bank of Chicago, 240 A.D.2d 384, 386 (N.Y. App. Div. 1997) (citations and quotations omitted).  See also In re Kaiser, 722 F.2d 1574, 1582 (2d Cir. 1983) ("Fraudulent intent is rarely susceptible to direct proof . . . [and so t]herefore, courts have

developed 'badges of fraud' to establish the requisite actual intent to defraud.") (citations and quotations omitted).

The Second Circuit has provided the following specific examples of "badges of fraud" from which intent to hinder, delay, or defraud may be inferred by a jury:

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

Id., 722 F.2d at 1582-83.

Citing to In re Kaiser, Plaintiffs assert that evidence of Gorton's multiple transfers of his assets will be relevant to three badges of fraud: Gorton's (1) "financial condition . . . before and after the transaction in question"; (2) "the existence or cumulative effect of a pattern or a series of transactions or course of conduct after the pendency or threat of suits by creditors"; and (3) "the general chronology of the events and transactions under inquiry."  (Pl. Opp. at 6-7.)

By permitting Plaintiffs to present evidence of Gorton's multiple transfers of assets that occurred at the same time as his transfer of Lime Group's interest in LimeWire into the LimeWire FLP, the Court is simply allowing Plaintiffs to present evidence that may be relevant to the "badges of fraud" that have been identified by the Second Circuit.  Indeed, one court has found that "[p]roof of contemporaneous conveyances, no matter to whom made, is always

relevant to the issue of a fraudulent conveyance." Wittemann Bros., 178 A.D. at 676 (emphasis added).

Accordingly, Plaintiffs are permitted to present evidence of Gorton's contemporaneous transfers of assets into six family limited partnerships, including the value of those assets transferred, because that evidence may be relevant to badges of fraud from which a jury may infer fraudulent intent.[2]

### C.  Assets of Gorton's Relatives

Along these same lines, evidence concerning the value of Gorton's family members' interest in these family limited partnerships is relevant.  Plaintiffs cannot show Gorton's financial condition before and after the transfer in question—one of the badges of fraud—without reference to the value of Gorton's family members' interest in the family limited partnerships, which resulted from the June 2005 transfers.[3]

### III.  Conclusion

In conclusion, Plaintiffs shall be permitted to introduce evidence and argument concerning Gorton's transfer of assets into all six family limited partnerships, and the value of those assets transferred, including those assets currently being held by Gorton himself, and the interest of Gorton's family members in the family limited partnerships.  However, this evidence

---

[2] For example, Gorton has argued that the $17 million in cash he holds outside of any family limited partnership is evidence of his lack of intent to hide assets from creditors.  (Klaus Decl. Ex. 3.)  It would be highly prejudicial to Plaintiffs if the Court were to allow Gorton to argue lack of fraudulent intent by citing to this $17 million figure, and then at the same time, exclude evidence that this $17 million is just a fraction of a larger amount of assets that Gorton has transferred into different family limited partnerships.

[3] The Court notes, and the parties appear to agree, that Mark Gorton's individual retirement account ("IRA") is immune under New York law from any damage award (compensatory or punitive), and therefore, cannot be used in calculating Gorton's net worth for damages purposes. See  N.Y. CPLR § 5205(c).

is relevant <u>only</u> (1) to Plaintiffs' fraudulent conveyance claim; and (2) if and when there has been a determination by the jury that punitive damages are warranted.[4]

Accordingly, the parties shall be prepared to discuss with the Court—at the pretrial conference on April 25, 2011— how evidence of Gorton's transfers into family limited partnerships should be presented to the jury in light of the Court's opinion.

SO ORDERED.

Dated: New York, New York
April 21 2011

Kimba M. Wood
United States District Judge

---

[4] Plaintiffs argue that evidence of Gorton's net worth would <u>not</u> be prejudicial with respect to their copyright infringement claims, because the Court has already found that Defendants engaged in "intentional wrongdoing" and so therefore, punitive damages are warranted.
   The Court rejects this argument outright. Only the jury can determine whether plaintiffs are entitled to punitive damages. Plaintiffs do not cite to any authority suggesting that a finding of intent at summary judgment mandates a punitive damages award. Indeed, Plaintiffs' own proposed jury instructions recognize that it is up to the jury to determine whether punitive damages are awardable.

7