UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ARISTA MUSIC, fka BMG MUSIC; CAPITOL RECORDS, LLC, fka CAPITOL RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MOTOWN RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY MUSIC ENTERTAINMENT, fka SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIME WIRE LLC; LIME GROUP LLC; MARK GORTON; and M.J.G. LIME WIRE FAMILY LIMITED PARTNERSHIP, <br><br> Defendants. | 06 Civ. 05936 (KMW) <br> ECF CASE |

**PLAINTIFFS' FURTHER SUBMISSION REGARDING MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM ASSERTING PRIVILEGE OVER COMMUNICATIONS WITH FRED VON LOHMANN OR THE ELECTRONIC FRONTIER FOUNDATION**

Glenn D. Pomerantz *(pro hac vice)*
Kelly M. Klaus *(pro hac vice)*
Melinda E. LeMoine
Blanca F. Young (*pro hac vice*)
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
*Attorneys for Plaintiffs*

Date: April 21, 2011

13818142.1

At the April 14, 2011 Pretrial Conference, the Court directed Defendants to produce evidence from Fred von Lohmann to substantiate the claim "that there was a lawyer-client *relationship* between Mark Gorton and von Lohmann." *See* Apr. 14 Hr'g Tr. at 10:18-19 (emphasis added). The Court told Defendants that, in order to sustain their burden of showing privilege, Defendants would have to obtain from von Lohmann—and Plaintiffs would have to be allowed to test with a deposition—particular facts to substantiate the claim that von Lohmann was acting as Mark Gorton's lawyer.

In the afternoon of Tuesday, April 19, Defendants provided two nearly identical declarations—one from von Lohmann, another from EFF (respectively, Exs. A and B to the Supplemental Boyd Declaration). Defendants' counsel states that von Lohmann is in Europe this week and so cannot be deposed before the April 21 deadline for this submission. Even absent a deposition, the proffered declarations do not provide the information the Court directed Defendants to provide and they do not substantiate Defendants' claim that von Lohmann was acting as Mark Gorton's lawyer.

Plaintiffs respectfully submit that Defendants' failure to support the privilege claim with facts showing an actual attorney-client relationship is dispositive and that Plaintiffs' motion should be granted. *See In re Bonanno,* 344 F.2d 830, 833 (2d Cir. 1965) ("the burden of establishing the existence of the relationship . . . is not, of course, discharged by mere conclusory or ipse dixit assertions"). If the Court believes that further factual development is required, Plaintiffs respectfully request the opportunity to depose von Lohmann after his return from Europe.

The following are the questions the Court asked, and what the declarations say (and do not say) in response:

**1.**   ***"I would like to know, first of all, during what period of time [von Lohmann] thought he was acting as counsel to Mark Gorton."***  Apr. 14 Hr'g Tr. at 4:5-7.  ***"How did the lawyer-client relationship come about with Mr. Gorton and LimeWire?***  *Id.* at 11:23-24.

The declarations do not say anything about how the purported lawyer-client relationship between von Lohmann/EFF and Mark Gorton/LimeWire came about, or otherwise supply any *facts* that show they entered into a lawyer-client relationship.  Neither declaration says anything about who approached whom; what (even in general terms) the scope of the representation was; or any other facts showing that von Lohmann and Gorton believed they were entering into a lawyer-client relationship.  This is the entirety of what von Lohmann says about the claimed lawyer-client relationship in this case:

> EFF represented LimeWire, and its attorneys advised LimeWire as part of EFF's regular legal representation of clients.  I was the primary attorney at EFF providing legal services to LimeWire.  I believe the representation began sometime in 2002 and it continued as long as I worked at EFF.

Supp. Boyd Decl. Ex. A (von Lohmann Decl.) ¶ 8.  *Accord id.* Ex. B (McSherry-EFF Decl.) ¶ 10.

This paragraph raises more questions than it answers.  The fact that von Lohmann and EFF cannot identify when, exactly, they started representing their claimed client undercuts the claim of a privileged relationship, as does the absence of any document memorializing the start

of such a relationship. *See Heine v. Colton, Hartnick, Yamin & Sheresky,* 786 F. Supp. 360, 367 (S.D.N.Y 1992).[1]

Mr. von Lohmann says that the representation "continued as long as I worked at EFF." Supp. Boyd Decl. Ex. A (von Lohmann Decl.) ¶ 8. (There is no comparable statement in EFF's declaration about when that organization believes its claimed representation of these Defendants ended.) Although von Lohmann does not provide the end date in his declaration, he previously testified that he left EFF in July 2010. *See* von Lohmann Feb. 2, 2011 Depo. Tr. at 16:1-6 (Boyd Decl., Feb. 25, 2011, Ex. 5). Mr. von Lohmann's claim that he represented Mark Gorton and LimeWire continuously for this eight-year period is remarkable for two reasons. First, if Mark Gorton was a longstanding and continuous client of von Lohmann, one would have expected von Lohmann to tell Gorton he was leaving EFF and that the lawyer-client relationship was ending. But there is no evidence that von Lohmann or EFF told Gorton that. On the contrary, as of his February 2011 deposition, Gorton was not even aware that von Lohmann had left the EFF. Gorton Feb. 7, 2011 Depo. Tr. at 162:25 (Boyd Decl., Feb. 25, 2011, Ex. 1).

Second, von Lohmann's claim that he and EFF were Mark Gorton's and LimeWire's lawyers continuously from 2002 through July 2010 is in considerable tension with von Lohmann and EFF's claim *in September 2008* that they were a friend to the Court supporting neither party—not even their putative clients. *See* Doc No. 133 (amicus brief of EFF *et al.*). Nothing in that amicus brief disclosed the existence of the purported lawyer-client relationship. *Id*. Neither von Lohmann nor Gorton can claim that the purported representation was unrelated to this lawsuit, such that they would have had no reason to disclose the claimed relationship to the Court (if in fact there was such a relationship). Mr. von Lohmann and EFF are withholding on

---

[1] The declarations do *not* assert that EFF's general practice was to start representing clients without a retainer letter.

the basis of attorney-client privilege communications they were having with Gorton and Gorton's then-counsel of record (Charles Baker) "reflecting request[s] for and provision of legal advice re LimeWire/Arista Records litigation" as early as April 2008—three months before Defendants filed their opening summary judgment papers (and five months before EFF/von Lohmann filed the amicus brief)—through August 2008.  EFF Privilege Log, p.2, Entries 21-26 (Dugan Decl., Mar. 3, 2011, Ex. 8); von Lohmann Privilege Log, p. 1, Entries 5-16 (Boyd Decl., Feb. 25, 2011, Ex. 14).  We submit that the most plausible explanation for the fact that EFF and von Lohmann represented to the Court that they supported neither party was that EFF/von Lohmann and Mark Gorton/LimeWire were not actually in a lawyer-client relationship.

Nothing in Paragraph 8 of von Lohmann's declaration, or anything else, clarifies what von Lohmann and EFF mean when they say they represented LimeWire "as part of EFF's regular legal representation of clients."  Supp. Boyd Decl. Ex. A (von Lohmann Decl.) ¶ 8. *Accord id.* Ex. B (McSherry-EFF Decl.) ¶ 10.  Mr. von Lohmann cannot be referring to the inventory of cases that he and the EFF list in their declarations:  in those cases, von Lohmann and EFF appeared as counsel of record.  EFF discusses their role in litigation matters on their website.  *See* www.eff.org/cases (last visited Apr. 21, 2011).  Here, the EFF website describes the organization's role in the *Arista v. Lime Wire* litigation as that of an *amicus,* with no mention of EFF/von Lohmann's purported attorney-client relationship with Lime Wire.  *See* www.eff.org/cases/arista-v-lime-wire (last visited Apr. 21, 2011).  Moreover, in March 2007, von Lohmann was publicly quoted in an article by Bloomberg news as someone who "knows Gorton and is not involved in the [*Arista v. Limewire*] case[.]"  *See Lime's Gorton Trades Fast, Fights Suit, Seeks Car-Free Utopia*, Bloomberg News, Mar. 23, 2007,

www.bloomberg.com/apps/news?pid=newsarchive&refer=home&sid=aBrHO31LV2qc (last visited Apr. 21, 2011).

  2. *"I would also like to know if Mr. von Lohmann gave other companies legal advice while he was employed by EFF and whether he received any compensation from them for his legal advice."*  Apr. 14 Hr'g Tr. at 4:10-13.

Mr. von Lohmann and EFF's claimed answers here also raise more questions.  It is important to segregate out of the discussion of representing other companies von Lohmann's and EFF's representation of parties in litigation.  Supp. Boyd Decl. Ex. A (von Lohmann Decl.) ¶ 5; *id.* Ex. B (McSherry-EFF Decl.) ¶¶ 6-7.  That is not the basis of the privilege claim here.

Mr. von Lohmann and EFF say they engage in non-litigation "counseling."  Supp. Boyd Decl. Ex. A (von Lohmann Decl.) ¶ 5; *id.* Ex. B (McSherry-EFF Decl.) ¶ 7 (same).  But von Lohmann and EFF do not say anything about the nature of this "counseling," citing purported privacy concerns of their clients.  *Id.* Ex. A (von Lohmann Decl.) ¶ 6; *id.* Ex. B (McSherry-EFF Decl.) ¶ 9 (same).  This blocks Plaintiffs (and the Court) from testing Defendants' claim of privilege.  Mr. von Lohmann and EFF could protect the identifies of those companies or individuals by describing the general type of work that this counseling involves.  Mr. von Lohmann and EFF instead describe their "counseling" amorphously:  "EFF also provides important, but less visible, private legal advice and assistance to individuals and companies regarding current and developing standards of the law that apply to a wide range of activities within EFF's zone of activity."  *Id.* Ex. A (von Lohmann Decl.) ¶ 3; *id.* Ex. B (McSherry-EFF Decl.) ¶ 3 (same).  This is essentially saying that, if EFF is interested in an area, then when someone on its staff who has a bar card talks to someone about it, the communication is privileged.  That is not the basis for a lawyer-client relationship.

As for compensation, von Lohmann and EFF say their "representations are *pro bono publico*." Supp. Boyd Decl. Ex. A (von Lohmann Decl.) ¶ 4; Ex. B (McSherry-EFF Decl.) ¶ 4 (same). They also say, however, that they will sometimes ask their clients "to assist with out-of-pocket costs." *Id.* Notably, they do not say that they ever made such a request of the obviously financially able Mark Gorton at any point during the claimed eight-year relationship. It seems highly unlikely that EFF and von Lohmann would not have incurred a dime of expenses out-of-pocket if they actually represented Mark Gorton continuously for an eight-year period.

> **3.** ***"It would be very helpful … if there were any record … of his having given purely legal advice to others, whether he was paid by others for that legal advice, whether his job description said that he was supposed to give legal advice to people in the trade."*** Apr. 14 Hr'g Tr. at 10:17-24.

The declarations do not describe or provide any records of the type that the Court described.[2] Nor do the declarations establish that the EFF was the trade association for the peer-to-peer industry, or any other industry. The declarations do not identify any written job description for von Lohmann, much less a job description that called on him to provide purely legal advice, in the context of a lawyer-client relationship, to people in any trade.

The record *does* show that von Lohmann regularly engaged in *non-privileged* communications with various peer-to-peer companies. We know this because of emails from von Lohmann that Defendants withheld for years based on the claim of privilege but ultimately produced in December 2010. In one previously withheld email, von Lohmann communicates with Mark Gorton, Mr. Bildson, Mike Weiss (Stream Cast), Matt Neco (StreamCast), Philip

---

[2] The declarations do say that EFF paid Mr. von Lohmann a salary, but that is not the same thing as putative clients paying him (or EFF) for legal "counseling." Supp. Boyd Decl. Ex. A (von Lohmann Decl.) ¶ 5; *id.* Ex. B (McSherry-EFF Decl.) ¶ 7.

Corwin (a lobbyist on behalf of Kazaa) and others regarding RIAA enforcement efforts *vis-a-vis* copying over peer-to-peer networks at college campuses.  *See* Supp. Boyd Decl. Ex. C (LW-SUPP-00000012).  Another von Lohmann email to Gorton, Bildson, Weiss and Vinnie Falco (of BearShare), from September 2002, discusses a group call and forwards briefing from the *Grokster* and *Aimster* litigations.  *See id.* Ex. D (LW-SUPP- 0000009).  Defendants continue to claim that when von Lohmann was speaking just to them, he was acting as their lawyer.  But these previously withheld documents, as well as the other record evidence (and evidence that Defendants have not placed into the record), tend to show something else:  that when von Lohmann was having conversations with peer-to-peer operators, including LimeWire, he was doing so not in the capacity as their lawyer but rather as (in the words of Defendants' counsel) "a player in the [peer-to-peer] industry."  Apr. 14, 2011 Hr'g Tr. at 10:3.

For these reasons, and those stated in the underlying in limine motion, Plaintiffs respectfully request that the Court grant their motion.

Dated:  April 21, 2011               Respectfully submitted


                                     *s/ Kelly M. Klaus*
                                     Kelly M. Klaus

                                     Attorney for Plaintiffs
                                     Munger, Tolles & Olson LLP
                                     355 South Grand Avenue, 35th Floor
                                     Los Angeles, CA 90071-1560
                                     (213) 683-9100
                                     (213) 687-3702 (Fax)