UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
ARISTA RECORDS LLC; ATLANTIC RECORDING
CORPORATION; ARISTA MUSIC, fka BMG
MUSIC; CAPITOL RECORDS, INC; ELEKTRA
ENTERTAINMENT GROUP INC; INTERSCOPE
RECORDS; LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY RECORDS
LLC; SONY MUSIC ENTERTAINMENT, fka SONY
BMG MUSIC ENTERTAINMENT; UMG RECORDINGS,
INC; VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,                                    06 CV 5936 (KMW)

                                                              OPINION AND ORDER
                        Plaintiffs,

        -against-

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; GREG BILDSON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                        Defendants.
---------------------------------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

I.      **Introduction**

On May 11, 2010, this Court granted summary judgment in favor of Plaintiffs on their claims against Defendants LimeWire LLC ("LW"), Lime Group LLC ("Lime Group"), and Mark Gorton (collectively, "Defendants") for secondary copyright infringement. The Court found that Defendants had induced multiple users of the LimeWire online file-sharing program ("LimeWire") to infringe Plaintiffs' copyrights. In the Court's Opinion and Order (as amended on May 25, 2010), the Court detailed this case's procedural and factual background, familiarity with which is assumed. (*See* Dkt. Entry No. 223; *Arista Records LLC v. Lime Group LLC*, 715 F

1

Supp. 2d 481, 507 (S.D.N.Y. 2010).)  The litigation is now in the damage phase, with a trial on damages scheduled for May 3, 2011.

Plaintiffs have identified 11,205 sound recordings that have allegedly been infringed through the LimeWire system. For the approximately 9,715 post-1972 sound recordings, Plaintiffs have elected to seek statutory damages under Section 504(c)(1) of the Copyright Act. For the approximately 1,490 pre-1972 sound recordings, Plaintiffs are seeking actual damages.

In connection with the damage phase, Defendants have offered expert testimony purporting to show that other illegal services would have induced infringement of Plaintiffs' copyrights had Lime Wire had not done so.  Plaintiffs have moved to preclude Defendants from submitting such evidence or making that argument (Dkt. Entry No. 690.)  For the following reasons, Plaintiffs' motion is GRANTED.

**II.    Analysis**

There is a dearth of case law on this precise question.  The closest guidance that has been presented to the Court is from a small handful of older patent law cases that Plaintiffs contend stand for the proposition that a court should not allow an infringer to escape liability (or reduce his liability) on the theory that even if <u>he</u> had not infringed, someone else would have done so.

In the patent context, damages may be based upon "the profits on sales [the patentholder] would have made absent the infringement, *i.e*., the sales made by the infringer." *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc*., 575 F.2d 1152, 1156 (6th Cir. 1978).  To obtain lost profits, a plaintiff must show (1) demand for the patented product, (2) the absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capacity to exploit the demand, and (4) the amount of profit he would have made.  *Id*.

In *Panduit*, the Sixth Circuit reversed the district court's calculation of lost profits, in part because that calculation took into account the presence of competitors who were selling infringing products, not "noninfringing substitutes." The court explained that the infringing defendant "cannot expect to pay a lesser royalty, as compensation for its infringement, on the ground that it was not the only infringer." *Id*. at 1160.  The court cited an earlier opinion from the Fifth Circuit, *Bros Incorporated v. W.E. Grace Manufacturing Company*, 320 F.2d 594 (5th Cir. 1963).  There, the Fifth Circuit overturned a district court's calculation of lost profits, where the district court had reduced the special master's award by two-thirds because there were two other businesses selling the same infringing product.  The district court had reasoned that, "had not the infringer wrongfully appropriated and sold the patented machines, 2/3rds of them would probably have been sold by these two [infringing] competitors." *Id*. at 598.  The Fifth Circuit stated that

> the consequence of the [District Court's] holding is strange.  In effect it is that an admitted infringer who has made substantial profits from purloining another's patent is not made to account for his acknowledged acts because had he not poached, another would, or, at any rate, sales of similar products would have been made, not by the patent owner, but by others.

*Id*. at 598.  The court overturned the district court's decision "to avoid such an anomaly." *Id*.

This Court holds that, although the above-cited patent decisions themselves are not binding on this case, the principle underlying them—essentially a deterrence principle—applies with equal force here.  In copyright, as in patent, an infringer should not be able to escape or reduce his liability based on a theory that, had he not infringed, others would have caused similar losses by purveying infringing works.

The Court acknowledges that adherence to this principle requires a departure from "reality," as it did in the patent cases.  In those cases, the reality was that the plaintiff patent-

3

holders would have faced competition from other infringers, even if the Defendants had not infringed. Thus, their lost profits theoretically should have been adjusted to reflect that reality. Nevertheless, the courts determined that the public policy at issue outweighed the value of recognizing the presence of other infringers in the market. So too here, the Court finds that, notwithstanding the fact that other infringing services did exist that could have caused losses to Plaintiffs, Defendants should be accountable for losses traceable to Defendants' own infringement.

The Court emphasizes that this Order does not preclude the admission of evidence regarding other illegal services for _all_ purposes. Such evidence may be admissible to show (1) that a diminution in Plaintiffs' profits over time is only partially attributable to Defendants (because others caused some of Plaintiffs' actual losses), and (2) the extent to which a large award in this case is likely to deter other infringers. *See Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (holding that two of the factors to consider in calculating statutory damages are (1) the revenue lost by the copyright holder, and (2) the deterrent effect on the infringer and third parties).

As to lost revenue, Plaintiffs have stated that they do not object to Defendants introducing the historical fact that other illegal services existed, to show that not all illegal downloading took place through LimeWire. Other infringing services preceded LimeWire, and other infringing services existed alongside LimeWire. (Plaintiffs acknowledge that LimeWire did not command 100% of the file sharing market share, and have stated on the record that they do not object to Defendants' presentation of evidence showing these facts). What Defendants may not do is argue that they are not responsible for the infringement that _did_ take place through LimeWire because that same infringement _could_ have taken place through another system.

As to deterrence, Plaintiffs seek to submit evidence regarding other illegal services to show that a large award is needed to deter copyright infringement by others.  Defendants seek to show that large damage awards against similar infringers in the past (and the shutdown of LimeWire itself) have failed to deter infringement of Plaintiffs' copyrights.  Plaintiffs argue that Defendants should be precluded from offering such an argument because the Copyright Act itself demonstrates that Congress has determined that copyright infringement should be deterred through, among other things, monetary damage awards.

Because evidence of other illegal services will be used by Plaintiffs in arguing that a large damage award is needed to deter other infringers, Defendants should be permitted to rely upon similar evidence to counter Plaintiffs' arguments on the potential actual deterrent effect of a large damage award in this case.  This is not, as Plaintiffs assert, tantamount to encouraging juror nullification of Congress's intent to deter infringement.  It simply allows Defendants to present argument and evidence on how effective a deterrent a large damage award will be in this market.

Defendants claim that preclusion of the evidence and arguments at issue on this motion would "straightjacket" them from arguing to the jury that, for example, a download on LimeWire does not equate to a lost sale.  This is not so.  Defendants are not precluded from arguing that, as an economic matter, LimeWire's users would not have paid money for songs that they downloaded for free from LimeWire, and that downloads on LimeWire thus do not equal lost sales.  (There are many reasons why a customer would not have paid money for a product that she obtained for free, even if there were no other means of obtaining that product for free).  But Defendants may not argue that the reason that LimeWire users would not have paid money for the songs they obtained illegally through LimeWire is that they would have committed the same infringement through a different illegal service.  Although the Court acknowledges that this

5

involves a slight departure from "reality," this departure is no different than the departure by the courts in the above-cited patent cases.

### III. Conclusion

For the foregoing reasons, Plaintiffs' Motion in Limine to Preclude Defendants' Argument that Other Illegal Services Would Have Induced Infringement Of Plaintiffs' Copyrights if Lime Wire Had Not (Dkt. Entry No. 690) is GRANTED.

SO ORDERED.

Dated: New York, New York
April 29, 2011

*/s/ Kimba M. Wood*

Kimba M. Wood
United States District Judge