1535ari1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ARISTA RECORDS, LLC. *et al.*,

4                  Plaintiffs,

5          v.                          06 Civ. 5936 (KMW)

6   LIME WIRE, LLC, et al.,

7                  Defendants.

8   ------------------------------x

9                                     May 3, 2011
                                      1:35 p.m.
10  Before:

11                    HON. KIMBA M. WOOD,

12                                     District Judge

13                    APPEARANCES

14  MUNGER, TOLLES & OLSON, LLP
         Attorneys  for Plaintiffs
15  BY:  GLENN POMERANTZ
         KELLY KLAUS
16       JENNIFER PARISER
         BLANCA YOUNG
17       HAILYN CHEN
         MELINDA E. LeMOINE
18
    WILLKIE, FARR & GALLAGHER, LLP
19       Attorneys for Defendants
    BY:  JOSEPH T. BAIO
20       TARIQ MUNDIYA
         JOHN OLLER
21       KATHARINE N. MONIN
         TODD COSENZA
22

23

24

25

1535ari1

```
 1        (Case called)

 2        THE COURT:  Good afternoon.

 3        Notwithstanding the careful arrangements we all made

 4   last night, the jurors are outside the door so they will be

 5   filing in.  Until they come in I want to tell you what I have

 6   handed out to you.  I have blended together your pretrial

 7   instructions, the ones that are post-jury selection, that's

 8   entitled Preliminary Jury Instructions and you will have time

 9   to look at it.  I just wanted you to know that it is a blending

10   of the two.  I am using almost exactly your same wording for

11   note taking, evidence, bench conferences and one other.

12        With respect to the instruction on experts, I think

13   the jury will take it in better if we give that instruction

14   right before the first expert testifies, so that's what I

15   propose.  I wanted you to see how I had blended the two

16   together.

17        Once the jurors have filled out the questionnaires,

18   counsel will be given a copy as soon as we've had a chance to

19   photocopy them upstairs and at that point you are welcome to go

20   into the jury room all together and review them as quickly as

21   you can for strikes for cause, not peremptories.  You will have

22   time to think about peremptories later.  Cause will of course

23   be largely bias and hardship.  In fact, hardship is probably

24   the one you want to go to first.

25        After you've had about 20 to 30 minutes doing that I
```

1535ari1

 1   will ask you to come into the robing room and I will hear you

 2   on the record on excuses for cause.  After that we will all

 3   come back here and we will have follow-up questions for jurors.

 4   We can formulate probably the first six of them while we are in

 5   the robing room and then move on from there.

 6         The jurors are now entering, we should stand.

 7         (venire panel present)

 8         THE COURT:  Members of the jury, we are taking a

 9   longer time than I expected.  If you would like to stand and

10   stretch or read, talk among yourselves, feel free to do that.

11   I just ask that you stay at your assigned seat.  And the

12   lawyers and spectators should feel free to sit down, so long as

13   you are not sitting among the jurors.

14         (pause)

15         THE COURT:  Members of the jury panel, can you hear

16   me?

17         PROSPECTIVE JURORS:  Yes.

18         THE COURT:  Please don't fill out the questionnaire

19   until I give you my five-minute preliminary remarks.

20         Would everyone please have a seat?  I am Judge Wood

21   and I am speaking to you without a microphone because we just

22   moved into this courtroom and the mics are not working.

23   They'll be working soon.  If any of you cannot hear me can you

24   raise your hand now?  Those who cannot hear me, would you come

25   forward?

1535ari1

1          Members of the jury, my microphone is now working.  If
2    you can go back to your seats?  This is a very active
3    courtroom.

4          I will begin again.  My name is Judge Wood.  Is there
5    anyone in the courtroom who has trouble hearing me?  All right.
6    We are here to select jurors in a civil case and I want to
7    first of all thank you very much for being here in court.

8          In this case an internet company, called Lime Wire, is
9    being sued for money damages by recording companies.  Lime Wire
10   made money by inducing individuals to engage in the copying and
11   distributing of musical sound recordings without the permission
12   of the recording companies who owned the copyrights to those
13   musical sound recordings.  That is called copyright
14   infringement.

15         The plaintiffs in this case are 13 for-profit record
16   companies.  Plaintiffs own the copyrights to the sound
17   recordings that are at issue in this case and that were
18   infringed on the Lime Wire system.

19         The defendants in this case include Lime Wire, LLC,
20   Lime Group, LLC, and an individual, Mark Gorton.  As I
21   mentioned, Lime Wire was an internet company that induced its
22   user to distribute and receive copies of musical sound
23   recordings over the internet.  Lime Group was the principal
24   investor in Lime Wire.  Mark Gorton was the founder and CEO of
25   both Lime Wire and Lime Group.

1535ari1

1        In an earlier court proceeding Lime Wire, Lime Group

2   and Mr. Gorton were found to be liable for copyright

3   infringement because they intentionally induced individual

4   users of the Lime Wire system to infringe plaintiffs'

5   copyrighted sound recordings.  Defendants intentionally induced

6   the infringement of thousands of plaintiffs' copyrighted sound

7   recordings.  The Court has ordered defendants to stop

8   distributing the Lime Wire software and Lime Wire is no longer

9   in operation.  Therefore, the jury's main role will be to

10  determine the amount of money damages that plaintiffs are

11  entitled to recover from defendants.

12       As part of the process of jury selection in this case

13  I'm going to first ask you to fill out a questionnaire which

14  will be anonymous.

15       Is there any juror in the room who does not yet have a

16  questionnaire?  All right.

17       The questionnaire will identify you only by number, it

18  will not identify you by your name.  The questions in the

19  questionnaire include whether you or a family member of yours

20  has used Lime Wire or another internet service like Lime Wire.

21  It is essential that you answer this question and all others

22  that I ask truthfully.  The answers you provide are going to be

23  used only -- I emphasize only -- for the purpose of selecting

24  the jury in this case.

25       If you are selected for possible seating on the jury I

1535ari1

1    may later ask you some additional questions.  If at any point

2    any of you would rather answer any questions up here at the

3    bench instead of in open court, just tell me that and that's

4    where we will question you.

5           My law clerk, Sarah Lajoie, and my interns, Britton

6    Nohe-Braun and Andrew Cheever, have passed out to each of you

7    the questionnaire and a pen.  Is there anyone without a pen?

8           Okay.  Could you please write your answer to each

9    question?  When you have all filled out your questionnaires,

10   the attorneys and I will take half an hour to one hour to

11   review your answers.  Afterwards, we will continue the process

12   of jury selection.

13          Thank you.  We will sit here while you fill out the

14   questionnaire.

15          If I could see counsel at the bench we might be able

16   to dispose of a few preliminary matters.

17

18

19

20

21

22

23

24

25

1535ari1

```
 1              (At side bar)
 2              THE COURT:  Could you state on the record what you
 3   told me?
 4              MS. NOHE-BRAUN:  That I know one of the attorneys who
 5   worked at -- which one?
 6              THE COURT:  No.  No, about the jury.
 7              MS. NOHE-BRAUN:  One juror, juror no. 17, said that
 8   she worked for one of the companies.
 9              THE COURT:  Is it a she?
10              MS. NOHE-BRAUN:  I told her to write that on the
11   questionnaire when it was asked.
12              THE COURT:  She's the next to the last in the last
13   row.
14              MR. POMERANTZ:  I told Mr. Baio I recognized somebody
15   in the jury pool who works for Universal Music.
16              THE COURT:  Okay.
17              MR. POMERANTZ:  He will fill it out on his form so we
18   will see it, and I told Mr. Baio about that.
19              THE COURT:  Okay.  I would suggest that we question
20   each of those jurors here now, just to use our time
21   productively --
22              MR. BAIO:  All right.
23              MR. POMERANTZ:  That's fine.
24              THE COURT:  -- on those two questions.  And if one of
25   you wants -- if any of you want an excuse for cause, just sort
```

1535ari1

1   of raise your hand.

2           MR. BAIO:  All right.

3           THE COURT:  And, if not, I will send the juror aside

4   and we will wait for the normal course.

5           MR. BAIO:  Very good.

6           THE COURT:  Is there going to be a response to the 412

7   letter that we got in this morning?

8           MR. POMERANTZ:  I think it is sent, your Honor.  I

9   think you have it by now.

10          LAW CLERK:  Was it by fax?

11          MR. POMERANTZ:  Yes.

12          MS. LeMOINE:  Yes, we faxed it.

13          LAW CLERK:  How long ago?

14          MS. LeMOINE:  Half hour, few minutes.  I can also

15  print a copy in the back of the courtroom.

16          LAW CLERK:  I will check the machine if it is there

17  then.

18          THE COURT:  Do you agree that we put off the expert

19  instruction until one testifies?

20          MR. POMERANTZ:  That's fine.

21          MR. BAIO:  Yes, your Honor.

22          MR. MUNDIYA:  Yes, your Honor.

23          THE COURT:  I guess then we should bring no. 17 over.

24          Would juror no. 1 come forward, please?  Juror no. 17.

25          THE COURT:  Good afternoon.

1535ari1

```
 1              JUROR:  Good afternoon.

 2              THE COURT:  Did you work for one of the companies in

 3     this case?

 4              JUROR:  I worked for Bertelman Music Group when it was

 5     merging with Sony.

 6              THE COURT:  Okay.  And what was your job?

 7              JUROR:  I was a telephone operator.  I was working

 8     through a temp agency and I worked with them for quite a few

 9     months.

10              THE COURT:  Did you become friendly with people there?

11              JUROR:  None of the CEOs or the upper level areas, but

12     the names I might recognize.

13              THE COURT:  Okay.  Do you feel that you could sit here

14     and listen to the evidence in this case and decide the case

15     only based on the evidence here?  Or would you be influenced by

16     that temp job you had?

17              JUROR:  It was a tumultuous time for the company and I

18     feel that I might not be fair and impartial.

19              THE COURT:  What would you lean toward?

20              JUROR:  I would lean against BMG and Sony.  I'm sorry.

21              THE COURT:  Excuse for cause.  Okay.

22              My deputy, Sarah, will explain what you do next.  You

23     won't be picked for this jury.

24              JUROR:  Okay, thank you.

25              MR. POMERANTZ:  Thank you.
```

1535ari1

1        THE COURT:  Juror no. 17 is excused for cause.

2             There was one other.

3        MR. POMERANTZ:  I don't know.  I know him but I don't

4    know the number.

5        THE COURT:  Do you know his name?

6        MR. POMERANTZ:  Yes.

7        THE COURT:  And who did he work for?

8        MR. POMERANTZ:  He still works for Universal Music.

9        MR. BAIO:  Can you identify where he is located and

10    maybe the clerks can figure out what number.

11        MR. POMERANTZ:  Yes.  He is on the right-hand side of

12    the courtroom on the aisle, inside aisle, third row back.

13        THE COURT:  Did you tell me you do or don't know his

14    name?

15        MR. POMERANTZ:  I do know his name.

16        THE COURT:  What is his name?

17        MR. POMERANTZ:  Peter, P-E-T-E-R, Lofromento.  I'm not

18    sure how to spell it.

19        MR. MUNDIYA:  Okay.  That's cause.

20        THE COURT:  Juror no. 58 come forward, please?

21        JUROR:  Yes, your Honor, hi.

22        THE COURT:  Is there a reason you should not sit on

23    this jury?

24        JUROR:  Yes, your Honor.  I work for one of the

25    plaintiffs.

1535ari1

```
1              THE COURT:  You currently work for one of the
2    plaintiffs?
3              JUROR:  Yes.
4              THE COURT:  Who for whom do you work?
5              JUROR:  Universal Recording.
6              THE COURT:  Have you spoken to anyone in the courtroom
7    about the case?
8              JUROR:  In the courtroom?  Yes.
9              THE COURT:  Who did you speak to?
10             JUROR:  Our inside counsel, attorney, Harvey Geller.
11             THE COURT:  I see.  Anyone else?
12             PROSPECTIVE JUROR:  No.  Not in the courtroom.
13             THE COURT:  Any prospective jurors?
14             PROSPECTIVE JUROR:  No.
15             THE COURT:  Did you speak to any of the prospective
16   jurors outside the courtroom?
17             PROSPECTIVE JUROR:  No.
18             THE COURT:  Is there any other question I should ask
19   you to find out if you said something that the jurors would
20   have heard?
21             JUROR:  Absolutely nothing.
22             THE COURT:  We will excuse you for cause.
23             JUROR:  Thank you.  Appreciate that.
24             THE COURT:  You will need to go back down to the room
25   where you started.  My deputy will instruct you.
```

1535ari1

```
 1              We have just excused no. 58 for cause.  Is there
 2    anything you would like to bring up?
 3              MR. BAIO:  No, your Honor.
 4              MR. MUNDIYA:  No, your Honor.
 5              THE COURT:  We will just wait to see what happens
 6    next.
 7              (Pause)
 8              THE COURT:  Juror no. 28 is an attorney who has worked
 9    for a record company so we're about to bring him forward.
10              JUROR:  Good afternoon, your Honor.
11              THE COURT:  Good afternoon.  What is it you wanted to
12    tell me.
13              JUROR:  My name is Philip Hollis but Dan Hollis.  I'm
14    a practicing attorney with the firm of Shamberg, Marwell, Davis
15    & Hollis.  I represented Monte Lipman, who is the president of
16    Universal Records, in several personal matters.  That's number
17    one and so I think it might have a bias there.
18              Number two, my son-in-law is a recording artist and
19    he's under contract with French Kiss records and Mother
20    something-or-other, I can't remember the name of it, somebody
21    here might know, and he's in a group called the freelance
22    Whales, they're pretty successful.  His brother is a cast
23    member on Glee who is also successful and recording.  My
24    son-in-law to-be, Chuck Criss.  Darren Criss is his brother.
25              So, I think as I started filling this out there are
```

1535ari1

 1  too many yesses of people that are involved.

 2            THE COURT:  Let me ask you this.  You're an attorney?

 3            JUROR:  Yes.

 4            THE COURT:  Do you litigate?

 5            JUROR:  I do.  I do the trial work in our firm.

 6            THE COURT:  Okay.  So, you understand how one divorces

 7  oneself from personal predilections to serve clients in

 8  other --

 9            JUROR:  I do, but I have been party to conversations

10  about this case.

11            THE COURT:  This case?

12            JUROR:  Yes; and the views of family members and

13  family members to-be as to the one side or the other of it.

14            THE COURT:  And have you formed a view?

15            JUROR:  I have formed a view as -- yes, I have,

16  actually.

17            THE COURT:  Was your view?

18            JUROR:  My view was that I thought it was a little

19  rough that the companies, if I remember correctly, went after

20  some little users way back when.  I thought that was rough.  On

21  the other hand, since my son-in-law makes money recording, I

22  think he should be paid for it and I think that anybody that

23  doesn't compensate him for that is taking money out of his

24  pocket.

25            THE COURT:  Okay.  I will ask you to step aside.

1535ari1

```
 1              Could you step back?

 2              JUROR:  Sure.

 3              (Juror not present)

 4              THE COURT:  Counsel, I don't think this is a close

 5  call.

 6              MR. BAIO:  It is not.

 7              MR. POMERANTZ:  It is not a close call.

 8              MR. BAIO:  It is not, your Honor.

 9              THE COURT:  We will excuse him for cause.

10              MR. BAIO:  Thank you.

11              THE COURT:  Could you come forward?  Thank you.

12              (Juror present)

13              THE COURT:  We will excuse you from this case.  My

14  deputy will tell you where to go.

15              JUROR:  Okay.  Thank you, Judge.  Good luck to

16  everyone.

17              MR. BAIO:  Anyone want to raise anything while we are

18  here?

19              MR. MUNDIYA:  No, Judge.  Thank you.

20

21

22

23

24

25
```

1535ari1

1            (In open court)

2            THE COURT:  I'm going to address this question to

3    those of you who are in the jury box.  Is there anyone who

4    hasn't finished the questionnaire?  Okay.  When you are

5    finished, we will take yours for copying, as soon as you are

6    finished.

7            (pause)

8            Is there anyone in the jury box who needs to continue

9    filling out the questionnaire?  Then my law clerk will collect

10   them.  We need to copy them.

11           Feel free to read, stand, stretch talk among yourself.

12   I will just ask that you stay at your seats.  If at any point

13   any of you need to use the rest room, raise your hand and my

14   law clerk Mr. Snyder will tell you where to go.

15           From this point on I want to caution all prospective

16   jurors not to talk to anyone about this case -- not to talk

17   your fellow jurors, not to talk to the lawyers or me or my

18   staff about anything about this case.

19           Thank you.

20           (pause)

21           I'm now going to address jurors no. 19 through 32.

22   Are there any of you who have not finished filling out the

23   questionnaire?  All right.  My law clerk, Mr. Snyder, will come

24   collect the questionnaires from jurors 19 through 32.

25           (pause)  (Continued next page)

1           THE COURT:  I remind the jurors, you are free to talk

2    and stand and stretch, so long as you stay in the same place.

3    And if you need to use the restroom, you are free to do that.

4           Excuse me.  I am now going to address Jurors No. 33

5    through 44.  Is there anyone who has not finished filling out

6    his or her questionnaire?

7           All right.  My intern Mr. Cheever will come collect

8    those for copying.  Thank you.

9           May I have your attention.  Sometimes during trial I

10   estimate at what point we will get to certain jurors, and at

11   this point I know that it will be at least an hour before we

12   start questioning jurors No. 19 through 44.  Because we have

13   your questionnaires, there's no need for you to be in the

14   courtroom for the next hour.  If you would like to leave, you

15   may.  You don't have to leave.  Only if you would like to

16   leave.  If you leave, please be back at 3:45.  So that's jurors

17   No. 19 through 44.

18          I am now going to address jurors No. 45 through 64,

19   all of you in the section I'm pointing to.  My intern,

20   Mr. Cheever, will come collect your questionnaires.

21          Counsel may sit down if you wish.

22          I am addressing myself now to the jurors who just gave

23   their questionnaires to Mr. Cheever, that is, jurors No. 45

24   through 64.  We will not get back to you until 4:00, so you are

25   free to leave the courtroom if you wish until 4:00.  Please be

1    back in your regular seat at 4:00.  And, of course, if you wish

2    to stay, you may.

3           Once the jurors have left, counsel are free to go to

4    the jury room, which is underneath the clock.  Counsel, I

5    suggest that you now go to the jury room.

6           Addressing myself to the jurors in the jury box, I

7    know you have been kept here.  You will be questioned in about

8    15 to 20 minutes.  I want to leave you free to leave the

9    courtroom for 15 minutes in case you feel better if you're

10   outside, but please be back at 3:05.  Of course, you are free

11   to wait here if you like.  I remind everyone not to talk to

12   anyone about the case or the participants in it or the issues

13   in the case.

14          (In the robing room)

15          THE COURT:  Counsel, looking at Juror No. 1, question

16   31, he claims hardship because his being away would have a

17   negative impact on construction at a public school.  Should we

18   question him on that anything else?

19          MR. POMERANTZ:  Your Honor, we think because the

20   daughter uses LimeWire --

21          THE COURT:  That doesn't cut it, no.  That is not

22   enough.

23          MR. POMERANTZ:  OK, your Honor.  We do believe that

24   when a family member is jointly and severally liable with the

25   defendant in the case that it creates a presumed bias.

1      THE COURT:  We have spent a fair amount of time

2  talking about the issue of direct liability of any juror.

3      MR. POMERANTZ:  But this is a matter that the juror

4  will be sitting there hearing evidence and testimony and

5  knowing that here a family member is jointly and severally

6  liable.  We are not talking about whether we are going to sue

7  this person.  The point is what the juror is thinking.  He is

8  presumed to be biased under the law.

9      THE COURT:  I am temporarily speechless.

10      MR. BAIO:  I think that that would be a mistake, and I

11  think we should speak to the juror to determine whether he can

12  be -- is it a he?

13      THE COURT:  Yes.

14      MR. POMERANTZ:  He can be fair.

15      THE COURT:  I will call him in.

16      MR. BAIO:  Your Honor, just to be clear, we believe

17  that the law of torts states there are three different types of

18  biases.

19      THE COURT:  You have already been told me all three.

20  You have put it on the record.

21      No. 2, retired teacher shocked at amounts, No. 24,

22  amounts awarded to large corporations.  Do you want me to ask

23  her about that.

24      MR. POMERANTZ:  Yes.

25      MR. BAIO:  OK.

153nari2                    Voir Dire

1            THE COURT:  Four, hospital physical therapist, claims

2       hardship.

3            MR. POMERANTZ:  We would ask for inquiry on the

4       hardship, your Honor.

5            THE COURT:  I will.

6            No. 5 -- please raise anything you want.  No. 24

7       believes in a free music world and No. 31 says yes to hardship

8       but doesn't explain it.

9            MR. POMERANTZ:  We think No. 24 and again a current

10      LimeWire user should be excused for cause.

11           THE COURT:  Do defendants want to argue against the

12      answer to 24.

13           MR. BAIO:  Let me see what his answer was, your Honor,

14      for a moment.

15           THE COURT:  Sure.  Page 4.  No. 24.

16           MR. BAIO:  I think that you can question him and find

17      out whether he thinks that is going to affect his ability to do

18      his duty as a juror.

19           THE COURT:  I'll do that, and I will ask him about

20      hardship.

21           MR. BAIO:  Yes.

22           THE COURT:  Juror No. 8 works for the federal

23      government.

24           MR. POMERANTZ:  Your Honor, did we skip 6 and 7?

25           THE COURT:  Yes.  6 and 7 do you have anything to say

 1   on them?

 2               MR. POMERANTZ:  No, your Honor, not on 6.

 3               THE COURT:  I didn't see anything that seemed to

 4   require inquiry on 6 and 7.

 5               MR. BAIO:  I agree.

 6               THE COURT:  If you don't, we'll move to 8.

 7               No. 24, punishment of individuals for illegally

 8   downloading is too harsh.  I will question on that.

 9               MR. POMERANTZ:  Your Honor, also, on the LimeWire

10   usage if we can inquire on that.

11               THE COURT:  What do you want me to ask?

12               MR. POMERANTZ:  Who, how much, whether they approved

13   of it.

14               THE COURT:  I will ask whether there is anything about

15   the usage of LimeWire by a family member no later than 2007 --

16               MR. POMERANTZ:  Thank you, your Honor.

17               THE COURT:  -- would bias that juror.

18               No. 9

19               MR. MUNDIYA:  I thought there was a cause issue here,

20   your Honor.

21               THE COURT:  No. 9.

22               MR. MUNDIYA:  Yes, your Honor, Elektra.

23               THE COURT:  No. 27.

24               MR. MUNDIYA:  Question No. 28, your Honor.

25               THE COURT:  OK.  I'll inquire.  Sarah, I think what

153nari2                         Voir Dire

 1    we're going to do is line the jurors up and have them come in

 2    here.  Otherwise it's too hard for counsel and all the rest of

 3    us to go through the questionnaires.

 4              THE DEPUTY CLERK:  You want them one by one in here?

 5              THE COURT:  Yes.  We won't be very long with each one,

 6    so I think they can just be lined up.

 7              MR. POMERANTZ:  Your Honor, on No. 10?

 8              THE COURT:  Yes.

 9              MR. POMERANTZ:  No. 22, the son and daughter used

10    Kazaa one week ago.  I would ask for inquiry on that.

11              MR. BAIO:  Is there a legal Kazaa right now.

12              MR. POMERANTZ:  I don't know.

13              MR. BAIO:  I think there is.  But inquiry is fine.

14              THE COURT:  How are you going to strike for cause?

15              MR. POMERANTZ:  I have my clients here who will tell

16    me what -- let's hear what this person actually says as to what

17    her children are doing, and then I have my client who can tell

18    me whether that's illegal.

19              THE COURT:  We don't have the whole evening for the

20    clients to tell you that.  Somebody should go check with them.

21              MR. POMERANTZ:  All right.

22              Your Honor, on No. 10 there is a time issue that we

23    probably need inquiry on.

24              THE COURT:  No. 31.

25              MR. POMERANTZ:  Yes.

153nari2                    Voir Dire

1           THE COURT:  Juror No. 11 has a son at Yahoo and she

2   left her last two pages blank.  Should I inquire about anything

3   else?

4           MR. POMERANTZ:  Your Honor, I don't think Yahoo is, it

5   is not even a witness in the case.

6           THE COURT:  It doesn't matter?

7           MR. POMERANTZ:  I don't think it does.

8           THE COURT:  OK.  I'll ask about pages 7 to 8.

9           Juror No. 12.

10          MR. MUNDIYA:  I think there is a hardship issue, there

11  your Honor.  Question No. 31.

12          THE COURT:  Yes.

13          MR. POMERANTZ:  Your Honor, if we could ask a followup

14  question on 24 just to be see if we uncover any bias in what

15  she's reporting there.

16          THE COURT:  Yes.  No. 13.

17          MR. POMERANTZ:  I know nothing about this person.

18          THE COURT:  No employer, no nothing.

19          MR. BAIO:  Do you want to inquire as to what are you

20  doing?

21          THE COURT:  Juror No. 14.  Something about Atlantic

22  Records.

23          MR. BAIO:  I think we should inquire about that.

24          MR. MUNDIYA:  We should inquire about that, your

25  Honor.  There is also a vacation on question 31.

1          THE COURT:  Right.

2          MR. POMERANTZ:  If I could ask for inquiry, this

3    person is a current LimeWire user.

4          THE COURT:  OK.

5          MR. POMERANTZ:  I would ask for inquiry as to usage of

6    LimeWire.

7          MR. BAIO:  2009, I think, OK, if you want to ask him.

8          THE COURT:  Question No. 15 is a nurse home hospice,

9    thinks artists deserve to be paid for their work, No. 24.

10         MR. MUNDIYA:  There is also a hardship issue, question

11   31, your Honor.

12         THE COURT:  Yes.  It would leave her job short.  I'll

13   ask her about that.  No. 16, is an executor.  No. 24, told her

14   son not to steal music.  And No. 31, the hardship is that her

15   mother died three months ago and she is a coexecutor.  I'll

16   inquire about that.

17         No. 18 I will ask about No. 14 has a malpractice

18   lawsuit, and this juror cites hardship in that she cannot

19   afford to go more than two weeks because she won't be paid for

20   that.

21         MR. POMERANTZ:  Your Honor, if we could also ask for

22   inquiry on the usage of LimeWire and FrostWire where they say

23   they have use it recently.

24         THE COURT:  OK.  We're ready.

25         MR. POMERANTZ:  Your Honor, where is the juror going

1   to be sitting?

2          THE COURT:  Actually on the couch.

3          Thank you.

4          MR. BAIO:  Where would you like us, your Honor.

5          THE COURT:  Right where you are.

6          (Juror No. 1 present)

7          THE COURT:  Good afternoon.  You are an engineer and

8   at a school and apparently there's construction ongoing and

9   there's due to be a lot of work this summer, is that right?

10         JUROR:  Continuing work from last summer.  We are in

11  the middle of a $22 million bond.  In the school district

12  there's very few construction oriented people.

13         THE COURT:  If you were sick, would you be able to

14  handle your part of the job from home do you think?

15         JUROR:  Possibly with a phone, but not necessarily

16  likely.  The one time I had surgery for a month they hired a

17  replacement.

18         THE COURT:  OK.  If you were a juror here, what would

19  happen?

20         JUROR:  Good question.  It is up to them.

21         THE COURT:  OK.  Let me ask you to give them a call to

22  see if you can serve on this jury.  Because if you can serve,

23  we need people who are gainfully employed and who are

24  representative of citizens.  Would you be willing to make that

25  call now?

 1              JUROR:  Sure.

 2              THE COURT:  OK.  Thank you.  Sarah, could you indicate

 3     where he can make a phone call.  Maybe, Britton, you can take

 4     the juror to a phone.  And when he's done, come back, please.

 5              (Juror not present)

 6              THE COURT:  No. 2.

 7              MR. POMERANTZ:  On No. 22 if they used LimeWire we

 8     would ask for inquiry.

 9              THE COURT:  OK.

10              (Juror No. 2 present)

11              THE COURT:  Good afternoon.  You mentioned that you

12     have no opinion about lawsuits brought.

13              JUROR:  Yes.

14              THE COURT:  And you said no opinion, although I'm

15     usually unpleasantly shocked by the amounts awarded for damages

16     to large corporations.

17              JUROR:  Yes.

18              THE COURT:  Could you tell us more about that.

19              JUROR:  Just a general feeling I have.  I mean, even

20     though my husband worked for a large corporation, he and I have

21     discussed it.  I don't know.  I think there are caps that

22     should be put on damages.  I also think when you get awarded a

23     large amount, a percentage should go back into the court system

24     to help defray the costs.  I just have strong feelings about

25     that.

153nari2                        Voir Dire

1          THE COURT:  What do you think the cap should be?

2          JUROR:  It depends on the circumstances.

3          THE COURT:  When you say you are -- what would be an

4    unpleasantly shocking number in your mind?

5          JUROR:  I mean we are talking about multi-million

6    dollar settlements.  I just sometimes feel like we are -- it is

7    all about greed, sorry, corporate greed.  When I saw in Time

8    magazine today that the average person's salary went up like, I

9    think less than 5 percent, but CEOs are getting over 30

10   percent, I'm sorry, something wrong.  I know my husband worked

11   for a large corporation and I know he talked about lawyers and

12   I know the figures.  They're astronomical.  I'm sorry about --

13         THE COURT:  Which are astronomical?

14         JUROR:  Legal fees and everything else.  The whole

15   system.  It is beyond -- that's my opinion.

16         THE COURT:  Don't be sorry.  Please just step out for

17   a moment.  Thank you.  We will have you step out and bring you

18   back in.

19         (Juror not present)

20         THE COURT:  She might be angry at all of you.

21         MR. BAIO:  It might be balanced anger.

22         THE COURT:  Is there anyone who objects if she is

23   excused for cause?

24         MR. POMERANTZ:  No.

25         MR. BAIO:  I think she should be excused.

1           THE COURT:  Please tell her she's excused for cause.

2           (Juror No. 3 present)

3           THE COURT:  Good afternoon, please have a seat.

4           You are a physical therapist at a hospital?

5           JUROR:  I am.

6           THE COURT:  And you indicated in response to the last

7    question that you treat patients with injuries daily and that

8    this would interfere with their care?

9           JUROR:  Absolutely.

10          THE COURT:  Do you think you can't sit on any jury

11   because of that?

12          JUROR:  No, three, four weeks is -- three, four, five

13   weeks is a lot of time.

14          THE COURT:  Yes, it is.

15          JUROR:  It's a lot of time.  So I'm struggling with

16   one to two weeks, but willing to do that, you know, as they

17   said yesterday.  But four weeks would be tough.

18          THE COURT:  Let me ask you to step outside for a

19   moment?

20          JUROR:  Sure.  Thank you.

21          (Juror not present)

22          THE COURT:  The vehemence with which she spoke

23   convinced me that we should excuse for her cause.

24          MR. POMERANTZ:  Yes, your Honor.

25          MR. BAIO:  Yes, your Honor.

153nari2                        Voir Dire

```
 1              THE COURT:  No. 4 is excused.

 2              THE DEPUTY CLERK:  Juror No. 1 made the call.  Should

 3    he come in?

 4              THE COURT:  Yes.

 5              (Juror No. 1 present)

 6              THE COURT:  Thank you for making the call.

 7              JUROR:  I didn't expect to get through.  She said it

 8    would be an absolute disaster and our present school budget

 9    does not have the funds to hire a replacement.

10              THE COURT:  All right.  Let me ask you to step out for

11    a moment.

12              (Juror not present)

13              THE COURT:  Agree to strike for cause?

14              MR. BAIO:  Yes, your Honor.

15              MR. POMERANTZ:  Yes, your Honor.

16              THE COURT:  We are striking No. 1 for cause.  And

17    we're down to No. 5.  David, could you make sure that No. 5

18    comes right in.

19              (Continued on next page)

20

21

22

23

24

25
```

1           (In robing room)

2           (Juror no. 5)

3           THE COURT:  Hello.

4           JUROR:  Hi.  How are you.

5           THE COURT:  Very well.  Thank you.  Please have a

6    seat.

7           The last question asked you whether sitting on this

8    case would cause you serious hardship and your answer is yes.

9           JUROR:  Yes.  I didn't get a chance to fill out why.

10          I'm a professor and now is the end of the semester.  I

11   have already missed two days which would not be a problem, but

12   if I were to sit on any panel that would last pretty much past

13   this week, the rest of my semester would be gone; I wouldn't be

14   able to give finals.  We are talking five classes that would

15   not be able to be finished.  I don't have a TA or anybody that

16   could administer them.  Also, the exams are not prepared.  The

17   lectures have not been completed, the exams have not been

18   prepared so I'm sort of leaving my students in mid-air.

19          THE COURT:  I understand.  Let me ask you to step

20   outside for just a moment.

21          (Juror not present)

22          THE COURT:  Excuse for cause?

23          MR. POMERANTZ:  Yes, your Honor.

24          MR. BAIO:  Yes, your Honor.

25          THE COURT:  Juror no. 5 is excused for cause.

1           We are ready to see no. 8.

2           LAW CLERK:  Before we bring the next juror in,

3    counsel's colleagues outside wanted to know if it made sense

4    for them to start doing preliminary review of the next batch.

5           THE COURT:  Sure.

6           MR. POMERANTZ:  That's a good idea.

7           THE COURT:  Good idea.

8           (Juror present)

9           THE COURT:  Hello.  Please have a seat.

10          You work for the federal government?

11          JUROR:  No.  I'm a teacher.

12          THE COURT:  I'm sorry.

13          MR. BAIO:  This is no. 8.

14          JUROR:  No.  6.

15          THE COURT:  I'm so sorry.  You are a special needs

16   teacher.

17          JUROR:  Yes., I am.

18          THE COURT:  And you teach high functioning children

19   who have autism who are high functioning?

20          JUROR:  Right.

21          THE COURT:  And you indicated that it would not be a

22   hardship for you to serve.

23          JUROR:  I'm not quite sure.  It is grading time for

24   June, so.

25          THE COURT:  Yes.

1          JUROR:  It might be a hardship.  I'm not quite sure.

2          THE COURT:  Okay.

3          JUROR:  And three or four weeks is a long time.

4          THE COURT:  Yes, it is.

5          Let me ask you to go back into the room and consider

6    whether you could serve.  We really do need people who work.

7          JUROR:  I can call my job, if that's possible.

8          THE COURT:  That would be good.  Yes.  Please tell

9    them that we would like very much for you to be able to serve.

10          JUROR:  All right.  So, do I call with your assistant?

11          THE COURT:  Yes.  My intern will take you out.

12          No. 7 is a librarian.

13          (Juror present)

14          JUROR:  Hello.

15          THE COURT:  Hello.  Please have a seat.  As I

16    understand it you are a librarian?

17          JUROR:  Yes.

18          THE COURT:  And you would be able to serve in this

19    case if you're chosen?

20          JUROR:  Yes.

21          THE COURT:  Good.

22          You indicated in response to no. 24, you heard about a

23    woman who was found guilty of downloading music from the

24    internet and that you have no opinion about these lawsuits.

25          JUROR:  No.

1          THE COURT:  Okay.  Good.

2          Is there anything else you would want us to know?

3          JUROR:  No.

4          THE COURT:  Okay.  Thank you very much.

5          MR. POMERANTZ:  Thank you.

6          MR. BAIO:  Thank you.

7          THE COURT:  We are down to juror no. 8.

8          (Juror present)

9          THE COURT:  Please, have a seat, good afternoon.

10         You work for the federal government?

11         JUROR:  Yes.

12         THE COURT:  What part of it?

13         JUROR:  The Federal Environmental Protection Agency

14    right -- two blocks away.

15         THE COURT:  You indicated in response to question 24

16    that you think that some punishment handed down to individuals

17    who illegally downloaded and shared music files was too harsh

18    and I would like to just hear a little bit more about what you

19    think and then I would like to tell you how this case is

20    different.

21         JUROR:  Sure.

22         I just happened to see on the news that some woman who

23    looked like she didn't have much in the way of means was caught

24    downloading music and the fine was thousands of dollars.  And

25    it didn't even seem like she knew what was going on.  So, I

1    thought that was a little over the top.  That's all.  I really

2    didn't delve into it.  It wasn't much of any interest to me but

3    I thought, oh, that's crazy.

4            THE COURT:  Did you hear what company was involved?

5            JUROR:  No.  No.

6            THE COURT:  Or what downloading service was involved?

7            JUROR:  No.

8            THE COURT:  This case doesn't involve a little lady.

9            JUROR:  Yes, I understand.  It is corporate.

10           THE COURT:  So, I just want to be sure that your views

11   about the individual would not spill over into this case.  I

12   would be instructing you that this is not that kind of case.

13   This is a very different case.

14           JUROR:  Yes, I understand.

15           THE COURT:  In your view can you serve in this case?

16           JUROR:  Yes.

17           THE COURT:  Okay.

18           You indicated that a member of your immediate family

19   used Lime Wire last in about 2007?

20           JUROR:  Yeah.  That's a real rough guess.  I know

21   before all this became problematic to the record industry that

22   my children were using Napster and Lime Wire and the other one,

23   Kazaa, I remember that name, and now we have moved on to

24   iTunes.

25           THE COURT:  Okay.  Is there anything about the fact

1   that someone in your family used Lime Wire or any other music

2   sharing file that would interfere with your being fair in this

3   case?

4                 JUROR:  No.  No.  Not at all.

5                 THE COURT:  Good.  Is there anything else we should

6   know?

7                 JUROR:  No.

8                 THE COURT:  Okay.

9                 JUROR:  Yes.  I didn't fill out one question about

10  whether it would be a hardship for me.

11                THE COURT:  Yes.

12                JUROR:  Personally, no, but in terms of my job it

13  might be somewhat of a hardship but I have to check into that.

14  Probably not really, but --

15                THE COURT:  Without naming a name, what position does

16  the decision-maker have?

17                JUROR:  My immediate supervisor?

18                THE COURT:  Yes, the person who would decide.

19                JUROR:  He's the director of the Emergency and

20  Remedial Response Division.

21                THE COURT:  Okay.

22                JUROR:  In the SuperFund Program.

23                THE COURT:  I understand.  I would be glad to speak to

24  him or her, he or she.

25                JUROR:  He.

1535ARI3                      Jury Selection

 1          THE COURT:  I would be glad to speak to your

 2   supervisor to make sure that it is all right.

 3          JUROR:  Okay.

 4          THE COURT:  So, I would like to ask you to go back

 5   into the pool and we will talk about this a little later.

 6          JUROR:  So go downstairs to the first floor?

 7          THE COURT:  No, I'm sorry, into the courtroom.  Stay

 8   with the jury.  Thank you.

 9          (Juror not present)

10          THE COURT:  I'm sure he can serve.

11          MR. BAIO:  Yes.  I think your call may assist in that.

12          THE COURT:  Sometimes it does, sometimes it doesn't.

13          (Juror present)

14          THE COURT:  Please have a seat.  Good afternoon.

15          JUROR:  Right here?

16          THE COURT:  Yes.

17          You're a musician -- you are a personal assistant to a

18   concert violinist.  I would like to talk to you about your

19   answers to questions 27 and 28 which have to do with any

20   relationship or experience you or anyone close to you has had

21   with certain companies.  You mentioned that you work with an

22   artist who has recorded with Sony, EMI and Universal.  Is there

23   anything about that that would cause you to side with recording

24   companies in this case?

25          JUROR:  Honestly, I don't know.  I really don't know.

1    THE COURT:  I will tell you a little more about the

2    case.  And, you mentioned in response to 28 you mentioned the

3    same companies.  Is it the same point that the person for whom

4    you are an assistant recorded for those companies?

5            JUROR:  He recorded for those companies.  I work with

6    them with royalty statements and things like that.  Yeah.  More

7    administrative kind of --

8            THE COURT:  All right.  I will be instructing those

9    who sit as jurors here that their job is to listen to all of

10   the evidence in court, to read any exhibits, and to put out of

11   your mind anything you have learned outside the courtroom;

12   listen to all the evidence, listen to my instructions, and

13   decide the case fairly after you have deliberated with other

14   jurors.

15           Do you believe you could do that?

16           JUROR:  I don't, actually.

17           THE COURT:  And why is that?

18           JUROR:  I think I would have a hard time separating it

19   because -- separating -- I think I might be a little bit

20   biased, actually.

21           THE COURT:  In what direction?

22           JUROR:  I actually don't know, I can't really put

23   myself in that position.

24           THE COURT:  Okay.  Let me ask you to go outside and

25   think about whether you could be a fair juror here because if

1    you don't now know which side you would favor, it bears more

2    thinking.

3            THE WITNESS:  Okay.

4            THE COURT:  Okay.  Thank you very much.

5            (Juror not present)

6            THE COURT:  No. 10, hardship is the main question.

7            Does anyone know what?

8            THE DEPUTY CLERK:  Judge, this is juror 6 who made the

9    phone call.

10           THE COURT:  Yes.

11           JUROR:  They just had a few questions if it is going

12   to be like every day for the three to four weeks and if there

13   is any way I can have a day to do my grading or do lesson plans

14   or anything like that.

15           THE COURT:  You will have May 23 off and of course you

16   will have the weekends off.

17           JUROR:  Wait.  May 23rd is the holiday?

18           THE COURT:  No.  You will have the 31st off which is

19   the holiday but the 23rd is not a holiday.  You will have that

20   off anyway.

21           JUROR:  Just May 23rd is the only day?

22           THE COURT:  Right, but we won't start trial until

23   10:00 in the morning and we will generally finish at 5:00 in

24   the evening.  And you will have an hour plus for lunch and you

25   will have a break in the morning, a break in the afternoon.

1    So, a lot of people find they can do what is essential from

2    here.

3              THE WITNESS:  Okay.  I guess you can add me on but the

4    only thing I have off is the 23rd, right?  Because I'm a new

5    teacher so I'm still learning as well.

6              THE COURT:  Okay.

7              JUROR:  So, I will let them know that May 23rd is the

8    only day that I will be coming in.

9              THE COURT:  The only day that you would be coming in

10   to your job, yes.

11             JUROR:  For three to four weeks.

12             THE COURT:  Three to four weeks, right.

13             JUROR:  If it is May 3rd -- like June 3rd?

14             THE COURT:  About that.

15             JUROR:  Thank you.

16             THE COURT:  Thank you very much.

17             (Juror not present)

18             THE COURT:  We are down to no. 10.

19             Good afternoon.  Please have a seat.

20             (Juror present)

21             THE COURT:  You mentioned that you will be paid for

22   only two weeks.

23             JUROR:  I was talking to somebody at work and they

24   said two weeks.  It was just, you know, I have to go to jury

25   duty and nothing totally official but it was somebody from the

1   personnel department, so.

2               THE COURT:  And you have two children going to

3   college?

4               JUROR:  Yes.

5               THE COURT:  And you're paying their tuition?

6               JUROR:  Yes.

7               THE COURT:  And you have no other income?  Or your

8   wife works part-time.

9               JUROR:  My wife works part-time, yeah.

10              THE COURT:  And if you had to serve here for two weeks

11  without compensation, would that be a hardship?

12              JUROR:  Two weeks?

13              THE COURT:  In other words if trial went for four

14  weeks would that be a hardship for you?

15              JUROR:  Probably -- well, my wife works part-time and

16  college tuition, my daughter is going for her masters and my

17  son -- he will be in his junior year in the fall so it probably

18  would be.

19              THE COURT:  Do you know how much money you would lose

20  if you served for those two weeks without pay?

21              JUROR:  I net probably, two weeks take home pay,

22  $1,600.

23              THE COURT:  Okay.

24              JUROR:  I think.

25              THE COURT:  I would like to ask you to call your

1      employer to find out for sure how much time you would be paid

2      for.

3               JUROR:  Okay.

4               THE COURT:  Thank you very much.

5               JUROR:  Yes.

6               (Juror not present)

7               THE COURT:  We are on to no. 11.

8               (Juror present)

9               THE COURT:  Hello.  Please have a seat.

10              You were asked whether it would be a hardship for you

11     to sit on this trial and there is no answer here.

12              JUROR:  Oh, I'm sorry.  No, not specifically.  I don't

13     work, I'm a housewife, so there isn't something outstanding

14     like that.

15              THE COURT:  Okay.  Is there anything else we should

16     know about you?

17              JUROR:  I think whatever is written there basically

18     states it.  I am home, my daughter is a single mother and she

19     has a 2-year-old and I help a lot with that kind of at home.

20     So, that being said, not that she could not handle it alone

21     without me, my husband is there, he has his office in the

22     house.

23              THE COURT:  Oh, I appreciate that.  We do need jurors

24     who can serve notwithstanding having some other commitment, so

25     thank you very much.  You may sit back where you were before.

1    JUROR:  Okay.

2    THE COURT:  Thank you.

3    (Juror not present)

4    THE COURT:  Sarah, we are ready for no. 12.

5    (Juror present)

6    THE COURT:  Good afternoon.  Please have a seat

7    wherever you like.

8    You indicated that you're the sole office person for

9    your husband's three-person construction company.

10    JUROR:  Right.

11    THE COURT:  And that if you are not there the office

12    is unattended.

13    JUROR:  Exactly.

14    THE COURT:  Trial will be from only 10:00 in the

15    morning until 5:00 in the afternoon and then you will have an

16    hour and a quarter off for lunch and you will have two breaks

17    during the day, so a lot of jurors find that they can take care

18    of their work from the court house.

19    JUROR:  Mine is somewhat tough.  I don't have a smart

20    phone for one thing and just -- we run a construction company

21    so a lot of times you have to deal with the insurance companies

22    to get insurance certificates to straighten things out.  There

23    is a lot of legalese that I have to talk to them about so it's

24    kind of tough being I'm the only one.

25    THE COURT:  Right.

1        And what would happen if you were sick?

2        JUROR:  If I'm sick I still usually work.  It is me,

3  my husband, and his helper.

4        For instance today he is not around, he is in Ulster

5  County looking at a job to see if we can get some work, so.

6        THE COURT:  Do you think you could do the work well

7  enough in the evening?

8        JUROR:  No.  That's what I was saying.  I can do some

9  paperwork at night, that's fine, but like right now I am even

10 waiting to meet with my accountant.  There is a lot of things

11 that go on just 9:00 to 5:00 that I need to be there for.

12       THE COURT:  Okay?  If you could step out for a moment.

13       JUROR:  Thank you.

14       (Juror not present)

15       THE COURT:  Excuse for cause.

16       MR. BAIO:  Yes.

17       MR. POMERANTZ:  Yes.

18       THE COURT:  We are excusing juror no. 12 for cause and

19 we are ready for 13.

20       (Juror present)

21       THE COURT:  Good afternoon.

22       JUROR:  Good afternoon.

23       THE COURT:  Please have a seat on the sofa.

24       I want to thank you for being here and ready to serve

25 as a juror.  Is there anything that you think we need to know

1535ARI3                      Jury Selection

1    about you before we go forward with selection?

2                JUROR:  I have a doctor appointment tomorrow and I

3    have one on the 19th and it is important for the one on the

4    19th because for my kidney, they want to check my kidney.

5                THE COURT:  I'm sorry.  Because?

6                JUROR:  My kidneys.

7                THE COURT:  Yes.

8                JUROR:  The one on the 19th I cannot miss.

9                THE COURT:  Okay.  May 19th.  And what will happen at

10   that doctor's appointment?

11               JUROR:  Well, I need to go and have them monitor and

12   check up, and for this month he wanted to check the kidney

13   properly.

14               THE COURT:  And tomorrow your doctor's appointment?

15               JUROR:  Yeah.

16               THE COURT:  What is that?

17               JUROR:  That's just a regular checkup.

18               THE COURT:  So perhaps that could be put off?

19               JUROR:  Yeah.

20               THE COURT:  And how long have you been having monthly

21   check-ups for your kidneys?

22               JUROR:  Since 2005.

23               THE COURT:  And do you think that could be scheduled

24   for 8:00 or 9:00 in the morning if I call the doctor?

25               JUROR:  No call doctor.  He don't work at that time in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1535ARI3                          Jury Selection

```
 1    the morning.  He start from 10:00.
 2                THE COURT:  He starts at 10:00 and when does he end?
 3                JUROR:  He ends like probably maybe after 6:00.
 4                THE COURT:  So, maybe you could schedule it for about
 5    5:00 that day if I call him?
 6                JUROR:  Yes.
 7                THE COURT:  Okay.
 8                Anything else I should know?
 9                JUROR:  No.  Not really.
10                THE COURT:  Thank you very much.
11                JUROR:  Yes.
12                THE COURT:  I hope things go well with your kidneys.
13                (Juror not present)
14                THE COURT:  On to No. 14.
15                (Juror present)
16                THE COURT:  Good afternoon.
17                JUROR:  Hi.
18                THE COURT:  You're currently unemployed.  Are you
19    looking for a job now?
20                JUROR:  Yes.
21                THE COURT:  What kind of job?
22                JUROR:  Anything.
23                THE COURT:  Okay.
24                JUROR:  I'm not going to be picky.  I had worked for
25    Merrill Lynch and got laid off and I found another job at a
```

1   local oil company and then that ended in March.

2           THE COURT:  And you have been looking for a job since

3   then?

4           JUROR:  Yes.

5           THE COURT:  Will serving as a juror interfere at all

6   with your looking for a job?

7           JUROR:  Probably.  I can't -- I probably wouldn't be

8   able to start looking again until after.

9           THE COURT:  How are you looking?  Have you sent

10  resumes out?

11          JUROR:  Resumes, Craig's List, Penny Savers, local

12  ads.

13          THE COURT:  And would you be able to check all of

14  those in the morning or in the evening and respond?

15          THE WITNESS:  Yeah.

16          THE COURT:  And still serve as a juror?

17          JUROR:  I would believe so.

18          THE COURT:  And you are going to Europe on --

19          JUROR:  The 27th.

20          THE COURT:  The 27th.  Do you already have your plane

21  tickets?

22          JUROR:  Yes.

23          THE COURT:  And how long will you be gone?

24          JUROR:  Until June 8.

25          THE COURT:  Is there anything else you think we should

 1    know about you?

 2              JUROR:  No.  I don't believe so.

 3              THE COURT:  Okay.

 4              JUROR:  Okay?

 5              THE COURT:  Thank you very much.

 6              JUROR:  Sure.

 7              (Juror not present)

 8              THE COURT:  I don't think we need to excuse her for

 9    cause yet.  She sounds as if she could be a good juror and we

10    will have to deal with May 27 when we get closer to that.

11              MR. POMERANTZ:  Your Honor, at the next break, if we

12    can speak then?

13              THE COURT:  Sure.

14              (Juror present)

15              THE COURT:  Good afternoon.  You are a nurse doing

16    home hospice work?

17              JUROR:  Correct.

18              THE COURT:  And you said as a hardship you would leave

19    your job very short as two nurses are on vacation this month

20    and we only have a staff of seven.

21              JUROR:  Correct.

22              THE COURT:  How many homes do you visit a week?

23              JUROR:  I carry a caseload of anywhere from 11 to 15

24    patients.

25              THE COURT:  And are they all cancer parents?

 1              JUROR:  No.  End of life care, though.

 2              THE COURT:  Okay.

 3              JUROR:  Could be congestive heart failure, cancer

 4     patients.  End stage dementia.  All different diagnoses are

 5     appropriate for hospice.

 6              THE COURT:  And what is the minimum staffing for your

 7     unit?

 8              JUROR:  I would say we need at least four to five

 9     nurses on at that time.

10              THE COURT:  Okay.  So, if you are the only other

11     person away in May they would still have enough to cover?

12              JUROR:  Well, it would probably cause them some

13     hardship because that would be three people away, but.

14              THE COURT:  Yes, but could they cope?

15              JUROR:  They would have to.

16              THE COURT:  And would you be willing to serve if

17     chosen?

18              JUROR:  Yes.

19              THE COURT:  Okay.  Thank you very much.

20              JUROR:  Okay.

21              (Juror not present)

22              THE COURT:  Sorry.  I forgot to ask her about 24.

23              MR. POMERANTZ:  On no. 15, your Honor?

24              THE COURT:  Yes.

25              MR. POMERANTZ:  And on No. 14, she --

1          MR. KLAUS:  Used Lime Wire in 2009.

2          THE COURT:  You are not on 14 -- oh, juror 14.

3          MR. POMERANTZ:  Juror 14; and we had already gone past

4     that.

5          THE COURT:  Let's go back to 14 after we finish the

6     others and we will go back to 15.

7          We are ready for 16.

8          (Juror present)

9          THE COURT:  Good afternoon.

10          JUROR:  Hi.

11          THE COURT:  Please have a seat.

12          I understand that you have a hardship that your mother

13     died three months ago and --

14          JUROR:  Right.

15          THE COURT:  -- and you are cleaning out.

16          JUROR:  I'm in the process of cleaning the apartment

17     out.

18          THE COURT:  Right.

19          JUROR:  And the estate is the apartment, so if the

20     apartment doesn't sell we can't pay the maintenance.

21          THE COURT:  Right.

22          JUROR:  So, the faster we move things, and she was a

23     very nice little old lady but 10 rooms with a lot of stuff.

24          THE COURT:  I know what you mean.

25          You say you are the co-executor, who is co-executor?

1535ARI3                    Jury Selection

1           JUROR:  A partner with Sullivan & Cromwell where my

2    father worked.

3           THE COURT:  Can that partner be involved in cleaning

4    out the apartment or is it just you?

5           JUROR:  I have to do the physical work.

6           THE COURT:  Okay.

7           JUROR:  He's not going to leave the office and clean

8    out shopping bags.

9           THE COURT:  I will ask you to step aside for a moment.

10          (Juror not present)

11          MR. BAIO:  Hardship?

12          THE COURT:  Yes.

13          MR. BAIO:  Sounds like it to me.

14          THE COURT:  We will excuse no. 16 for hardship.

15          This is juror no. 18?

16          THE DEPUTY CLERK:  18.

17          THE COURT:  Okay.

18          (Juror present)

19          THE COURT:  You mentioned that you don't know whether

20   your employer pays you.  Would it be possible -- oh, and you

21   also say you're not sure you can afford $40 a day to get down

22   here.  Where do you come from?

23          JUROR:  I live in Mt. Carmel but I have to take the

24   Southeast train station down here.

25          THE COURT:  And it costs $40 back and forth?

1            JUROR:  It is $32.50 for a round trip and I have to

2     pay for the metro card for subways and stuff.

3            THE COURT:  Okay.

4            JUROR:  It was $37.

5            THE COURT:  Okay.  Could you check to see if your

6     employer pays and I will check to see that we make sure that

7     transportation costs are covered.

8            JUROR:  All right.

9            THE COURT:  Thank you.

10            Sarah, do you know the answer on transportation costs?

11            THE DEPUTY CLERK:  I don't.

12            THE COURT:  I think they're covered but I'm not sure

13     whether there is a cap.

14            MR. KLAUS:  Your Honor.

15            THE COURT:  Used Lime Wire.  We will get to her when

16     she comes back.

17            MR. POMERANTZ:  Thank you.

18            THE COURT:  So, we have qualified jurors 6, 7, 8, 11

19     and 13.  We are waiting to hear from --

20            (Juror present)

21            THE COURT:  Hello.  Remind me of your number, please?

22            JUROR:  10.

23            THE COURT:  Thank you.

24            JUROR:  I just called my employer, they said 10 days.

25     It is 10 days.  In extenuating circumstances I would have to

1  get it approved by my boss and human resources.

2              THE COURT:  Okay.  If I could get that approval, could

3  you serve?

4              JUROR:  Yeah.  Truthfully, I don't know if my boss is

5  going to actually approve it, honestly.  I'm the only one that

6  does my job, nobody really covers for me.  We split divisions

7  and I'm the only one that does my division.

8              THE COURT:  And what is your division?

9              JUROR:  I handle mainly the graphics part, graphics of

10  Fuji film.

11              THE COURT:  How would it be if I called your employer

12  and find out what the answer is?

13              JUROR:  You can call him.  I don't have any problem.

14  916-749-36 -- no, 8623.  Wait.

15              THE COURT:  8623.

16              JUROR:  8336.

17              THE COURT:  What is his name?

18              JUROR:  Peter DeNicola.

19              I also have a concern I'm taking a water pill and have

20  to use the mens room often.

21              THE COURT:  Okay.  Looking at it in terms of every

22  three hours, how many times do you need a break?

23              JUROR:  I usually, honestly visit the mens room from

24  once when I get in in the morning and about three other times

25  before lunchtime, so that's about four times in the morning

1   alone.

2              THE COURT:  Okay.  All right.  Let me ask you to step

3   outside for a minute.

4              (Juror not present)

5              THE COURT:  Views, counsel?

6              MR. BAIO:  I would not use him.  I think that the

7   whole combination of effect is cause.

8              MR. POMERANTZ:  That's fine.

9              THE COURT:  You agree?

10             MR. POMERANTZ:  That's fine.

11             THE COURT:  We will excuse juror no. 10.

12             So, we are on -- we need to question jurors 9, 14, 15

13   and 18.  Is that right?

14             THE DEPUTY CLERK:  We have juror no. 18.

15             THE COURT:  Yes.

16             (Juror present)

17             JUROR:  They don't pay for jury duty.

18             THE COURT:  They won't pay you beyond the two weeks?

19             JUROR:  Yes.

20             THE COURT:  Let me ask you to step outside for a few

21   minutes.

22             MR. BAIO:  Excused.

23             MR. POMERANTZ:  Excused.

24             THE COURT:  Excused for cause, juror no. 18.

25             Is there anyone else waiting?  We are looking for

 1  jurors 9, 14 and 15.

 2          THE DEPUTY CLERK:  You need 9 back, Judge.

 3          THE COURT:  She doesn't know we need her back but I

 4  forgot to ask her a question --

 5          MR. MUNDIYA:  I thought juror no. 9 was the one who is

 6  going to go out and reflect on the bias.

 7          THE COURT:  You're right, I was thinking of 15.

 8          Let's put no. 9 to the end and see juror No. 14.  We

 9  were going ask about Lime Wire usage.

10          THE DEPUTY CLERK:  Bring No. 14 back?

11          THE COURT:  Please.

12          (Juror present).

13          JUROR:  Hi.

14          THE COURT:  Please have a seat again.  I'm sorry to

15  bring you back.  It is my fault, I forgot to ask you a

16  question.

17          You have used Lime Wire?

18          JUROR:  Yes.  In the past.

19          THE COURT:  Can you tell me roughly how often you use

20  it and for what?

21          JUROR:  Not anymore.

22          THE COURT:  In the past.

23          JUROR:  It was like, I think it was 2009.  I don't

24  remember.  Only, you know, I have iTunes as well so, for like a

25  couple songs.  Usually with artists I like to buy the CDs, I

1535ARI3                    Jury Selection

 1   like to support the artist, but if it was a song on the radio

 2   wasn't going to buy the whole CD for it, it would be one song

 3   here and there.

 4          THE COURT:  Is there anything that would cause you

 5   concern if you were to sit as a juror in this case?

 6          JUROR:  The fact that I have used it?

 7          THE COURT:  Yes.

 8          JUROR:  Not that I can think of right now.

 9          THE COURT:  Okay.  All right.  Good.

10          Any other questions, counsel?

11          MR. BAIO:  No, your Honor.

12          MR. KLAUS:  No.

13          THE COURT:  Thank you.

14          JUROR:  I did want to mention before, I know someone

15   that works at Atlantic Records too so that's on there.  I don't

16   know how that would affect.

17          MR. BAIO:  Oh.

18          THE COURT:  Can you tell us anything about that?

19          JUROR:  A good friend of mine, he does work there.

20          THE COURT:  What kind of work does he do?

21          JUROR:  I will have to ask him specifically.

22          THE COURT:  Oh, don't do that.  There is no need to do

23   that.

24          JUROR:  I just -- I just know that he does work there.

25          THE COURT:  Would anything about that friendship cause

1    you to tilt one way or the other if you were a juror?

2            JUROR:  That's the only thing that I was worrying

3    about, that's why I didn't want to mention that.

4            THE COURT:  Would that cause you to be unfair in this

5    case?

6            JUROR:  Possibly.  I don't want to say yes or no but I

7    did want to mention that.

8            THE COURT:  Normally what I ask a juror to do is sit

9    in court, listen to the evidence, watch the witnesses, read the

10   exhibits, listen to the Judge's instructions and then

11   deliberate with the other jurors putting out of your mind any

12   friendships that you may have.

13           Do you think you could do that?  Do you think you

14   could put out of your mind this friendship and not affect your

15   judgment in the case.

16           JUROR:  I would like to think so but he does talk

17   about, you know, his job a lot, so that's the only thing I

18   don't want to --

19           THE COURT:  Okay.  Could you, for three to four weeks

20   that you would sit as a juror, not talk about his job?

21           JUROR:  I could definitely try to, yes.

22           THE COURT:  If you're chosen I will be asking you if

23   you are sure that you can.

24           JUROR:  Okay.  All right.

25           THE COURT:  Thank you very much.

1            JUROR:  Thank you.

2            (Juror not present)

3            MR. BAIO:  Whom else do we have left?

4            MR. KLAUS:  9 and 15.

5            THE COURT:  9 was the one who didn't know which way

6       his bias went.  15 I neglected to ask about question 24.

7            MR. POMERANTZ:  Question?

8            THE COURT:  24.

9            MR. BAIO:  Is this a hardship issue too, your Honor,

10      or are we past that?

11           THE COURT:  I think we are past that because they'd

12      still have full.

13           (Juror present)

14           THE COURT:  Hi.  Thank you for coming back.  I wanted

15      to ask you a question that I failed to follow up on before.

16           You mentioned that artists are concerned because they

17      do not receive royalties from sales of music when it is

18      distributed free over the internet and I understand that.  If

19      you sit as a juror in this case you will be asked to listen to

20      the evidence that comes in, the witnesses through the exhibits,

21      listen to my legal instructions, and then deliberate with the

22      other jurors without letting your deliberations be rendered in

23      any way unfair because of preconceptions that you might have

24      going in.  So, I would like you to look inside yourself, if you

25      can, you're the only one who could answer this question, and

1  the question would be do you think you can put aside any

2  thoughts you have about what you know, any concerns you have

3  about artists being paid and could you simply listen to the

4  evidence and decide this case based on the evidence that you

5  hear here?

6          And if you would like more time to think about it, I

7  will give you that time.

8          JUROR:  Okay.  I think I could.

9          THE COURT:  Okay.

10         JUROR:  I don't have a whole lot of knowledge about,

11  you know, the industry and whatever.  My feelings are that I

12  think that people need to be rewarded for their work so my

13  understanding, when you gave instructions to us earlier, I had

14  the sense that that part of the case was already decided as

15  well.

16         THE COURT:  A large part of it is decided.

17         JUROR:  Okay.

18         THE COURT:  Okay.  Well, if as we go along you have

19  any concerns that you haven't voiced, feel free to raise them.

20         JUROR:  Okay.

21         THE COURT:  Now you may return to the courtroom.

22         JUROR:  Thank you.

23         (Juror not present)

24         THE COURT:  We are down to no. 9.

25         (Juror present)

1          MR. BAIO:  Good afternoon again.

2          JUROR:  Hi again.

3          THE COURT:  Have you had enough time to think about

4    what we are talking about?

5          JUROR:  I have.  I'm a little nervous so you have to

6    excuse me.  I think my loyalty would be with the artist, quite

7    honestly.  Working for an artist this long I definitely think

8    that would be the case.

9          THE COURT:  When you say your loyalty would be with

10   the artist that is not what is at issue here.  I can understand

11   how you might think that could infect your thinking but in this

12   case you will be asked to listen to evidence in the courtroom,

13   put out of your mind the violinist for whom you work and your

14   views about artists generally and just listen to the evidence

15   that you hear in the courtroom, read the exhibits, hear my

16   instructions at the end of the evidence and then decide the

17   case after fair, impartial deliberation with your fellow

18   jurors.

19         Do you think you could do that?

20         JUROR:  I would certainly try to but I'm not so

21   certain.  As I said, I just think that being on the artist's

22   side of things that it would kind of, like, flavor my thinking.

23   That's just what I think.

24         THE COURT:  Okay.

25         Any questions, counsel?

1           MR. BAIO:  No, your Honor.

2           MR. POMERANTZ:  No.

3           THE COURT:  I will ask you to step outside for a

4      moment.

5           JUROR:  Okay.

6           (Juror not present)

7           THE COURT:  I think he would be preoccupied.

8           MR. BAIO:  I do as well.

9           MR. MUNDIYA:  Sure.

10          MR. POMERANTZ:  I think, your Honor, because of the

11     liability issues that have already been decided and the

12     instructions that your Honor has already given on that, that

13     while certainly his occupation brings some perspective, I'm not

14     sure it rises to the level of the kind of bias that would

15     justify excusing him for cause.

16          THE COURT:  I understand what you are saying.  I

17     believe that this juror quite genuinely went back for whatever

18     it has been -- 15, 20 minutes -- and considered whether he

19     would be biased in this case.  And I believe he reluctantly

20     came to the conclusion that he would be biased, otherwise I

21     think he would have served.  So, I'm going to excuse him for

22     cause over your objection.

23          I will now leave you alone to look at the next

24     section.  I will be in the courtroom.

25          MR. BAIO:  I think our colleagues have looked, your

1535ARI3                          Jury Selection

1    Honor, so maybe we can join them and it might move quicker.

2              THE COURT:  And move into the jury room.

3              MR. POMERANTZ:  I guess we can keep the ones we

4    already have.

5              Can I make sure that we are all on the same page?

6              THE COURT:  We will recapitulate who is in the pool:

7    6, 7, 8, 11, 14, 15.

8              THE DEPUTY CLERK:  13.

9              THE COURT:  13.

10             So, 6, 7, 8, 11, 13, 14, 15; so we have qualified

11   seven.

12             MR. POMERANTZ:  We need to have eight more?

13             THE COURT:  Yes.

14             MR. POMERANTZ:  All right.  Thank you, your Honor.

15             (Continued next page)

16

17

18

19

20

21

22

23

24

25

 1              (In the robing room)

 2              THE COURT:  With respect to No. 19, do you want me to

 3      ask about anything in addition to 24 and 31?

 4              MR. KLAUS:  Those are the questions we would ask, your

 5      Honor.

 6              THE COURT:  Would you bring in No. 19.

 7              (Juror present)

 8              THE COURT:  Good afternoon.

 9              JUROR:  Hi.

10              THE COURT:  You indicated that besides work, which

11      would be difficult for you if you served as a juror here, that

12      you need May 13 off because you have a wedding.  If we were to

13      take May 13 off, could you serve?

14              JUROR:  Yes.

15              THE COURT:  OK.  Good.

16              I am moving to question No. 24, which asks you about

17      lawsuits by record companies against people who downloaded and

18      shared music files over the Internet.

19              You said you heard that individuals were taken to

20      court by record companies, but it sounded more like the

21      companies did so to make an example and that it didn't seem

22      fair to pick on a couple of people when so many get away with

23      it.  I understand that.

24              JUROR:  Yes.  That was a few years back, the whole

25      Napster thing.

1           THE COURT:  OK.  In this case it is not a situation

2     involving individuals being taken to court by record companies.

3     If you were a juror here, you would hear evidence in this case

4     and you would hear my instructions and then you would

5     deliberate with the other jurors based on the evidence in this

6     case and putting out of your mind anything outside of Court,

7     such as what may have happened with individuals in the past.

8           Do you think you can do that?

9           JUROR:  Yes.

10          THE COURT:  Do counsel have any other questions?

11          MR. POMERANTZ:  No, your Honor.

12          MR. BAIO:  I'm sorry.  We covered -- I am on a

13    different one.  Sorry, your Honor.

14          THE COURT:  OK.  Thank you very much.  You may go back

15    to the courtroom.

16          (Juror not present)

17          THE COURT:  On No. 20, I have 25 and 31.  This person

18    has a 13-day old child.  I thought this was quite a hardship to

19    serve.  Do you agree this person should be excused.

20          MR. BAIO:  Yes.  13 days, one day too short of two

21    weeks.

22          THE COURT:  Would you let No. 20 know that he is

23    excused.

24          (Juror present)

25          THE COURT:  Oh, thank you very much for appearing

1  here.  I understand you have a 13-day old child.  This is not a
2  the right week for you to serve on a jury.
3          JUROR:  No.
4          THE COURT:  We will excuse you for cause.
5          Thank you for being here.
6          JUROR:  Thank you.
7          THE COURT:  My deputy will explain to you what to do
8  next.
9          (Juror not present)
10         THE COURT:  We are ready to see Juror No. 21.  Plane
11 tickets June 2.  I don't think we need to excuse this person
12 based on that.
13         Any other questions?  You can give me the numbers.
14         (Juror present)
15         THE COURT:  Please have a seat.  I understand you have
16 plane tickets to go away June 2.  And if you serve, we would
17 find a way to accommodate that.  Where are you going?
18         JUROR:  Italy.  It is a lifelong dream, and a cousin
19 that I was supposed to go with has passed away, so it's like
20 now or never, get my act together.  She was a very healthy
21 person.
22         THE COURT:  Oh, I'm sorry.  Is there any reason you
23 could not serve if your service was finished by June 2?
24         JUROR:  No.  I could serve, but --
25         THE COURT:  With that caveat?

1          JUROR:  Yes, definitely.

2          THE COURT:  OK.

3          Anything else, counsel?

4          MR. BAIO:  No, your Honor.

5          MR. KLAUS:  No.

6          THE COURT:  OK.  Thank you very much.

7          (Juror not present)

8          THE COURT:  We're ready for 22.  I show again No. 24,

9   page 5, knowledge of Sony, and hardship.

10         MR. KLAUS:  Sorry, your Honor?

11         THE COURT:  Hardship.  No. 31.

12         MR. POMERANTZ:  And 24.

13         MR. KLAUS:  And 24, thank you.

14         THE DEPUTY CLERK:  Juror No. 9 just told Britton she

15  has a class at 6:00.  If we qualified her, I didn't know what

16  you wanted to do.

17         (Juror present)

18         THE COURT:  I think everyone who we qualified should

19  come back in the morning.  Do you agree counsel.

20         MR. BAIO:  Yes.

21         THE COURT:  Excuse me I didn't realize you were

22  sitting here.

23         THE COURT:  You are Juror No. 22?

24         JUROR:  Yes.

25         THE COURT:  You play as a drummer?

153nari4                    Voir Dire

 1              JUROR:  Yes.

 2              THE COURT:  In a rock band, you have frequent shows,

 3      one CD for sale?

 4              JUROR:  Yes.

 5              THE COURT:  You believe that users should be able to

 6      try before they buy?

 7              JUROR:  Yes.

 8              THE COURT:  Now I am showing some ignorance here,

 9      counsel.  Can users try before they buy?

10              MR. POMERANTZ:  I think we should ask what he means.

11              THE COURT:  Tell us what you think people should be

12      able to do and whether they now can.

13              JUROR:  They should be able to listen to it before

14      they buy it, before they invest in it.

15              THE COURT:  Right.  Is there a way to do that now?

16              JUROR:  For my band I have set that up on the

17      Internet, the ability to do that.  I don't know if anybody can

18      do that, but that's just my opinion on how we do business.

19              THE COURT:  You live in Westchester.  What town?

20              JUROR:  Croton-on-Hudson.

21              THE COURT:  You get paid -- how much a mile?

22              THE DEPUTY CLERK:  50 cents.

23              THE COURT:  50 cents a mile from the Court.  Would

24      that be a hardship for you?

25              JUROR:  Well, the issue is more that I'm running

1    really tight financially now.  And having to wait to get

2    reimbursed, I got bills that have to be paid.  The train ticket

3    is $24, plus both ways on the subway going back.

4              THE COURT:  Right.

5              JUROR:  I really don't have that money to lay out for

6    the extended period of time and then wait to get reimbursed

7    after the fact.  That's the difficulty.

8              THE COURT:  Does reimbursement happen every Friday?

9              THE DEPUTY CLERK:  I think it is at the end.  I am not

10   positive.

11             THE COURT:  We will ask you to step out for a moment.

12             JUROR:  OK.

13             THE COURT:  Thank you.

14             (Juror not present)

15             THE COURT:  It is a very tight budget here.  I think

16   we should let him go.

17             MR. KLAUS:  We agree, your Honor.

18             THE COURT:  We will excuse No. 22.  We're ready for

19   23.

20             (Juror present)

21             THE COURT:  Sarah, we have been excusing those whom

22   we've qualified.  Did you tell them what time to come back in

23   the morning?

24             THE DEPUTY CLERK:  I just excused the one woman that

25   had the class.  Would you like me to tell the rest that are

 1  qualified that they can go?

 2           THE COURT:  I don't think we need to yet.  Let's wait

 3  until 5:00.

 4           (Juror present)

 5           THE COURT:  Sorry.

 6           Thank you for waiting.  You have three children and

 7  you have to get them all to be ready for school before 8:30?

 8           JUROR:  I have a fourth grader and a fifth grader.

 9  This week they have state exams so I had my parents helping me

10  out in the morning.

11           THE COURT:  Good.  Where do you live.

12           JUROR:  In Scarsdale.

13           THE COURT:  OK.

14           You also have a work situation.  You work for a not

15  for profit?

16           JUROR:  I'm assistant director for a foster care

17  program.

18           THE COURT:  Are there people that can basically cover

19  for you if you're out?

20           JUROR:  There is a director that's there.  If it is a

21  month I am not sure how to answer that question.

22           THE COURT:  If I spoke to the director and if I got

23  the OK for you to serve, would that be all right with you?

24           JUROR:  I would have no reason not to.

25           THE COURT:  This assumes that your mother can help out

1    with the children?

2              JUROR:  Yes.

3              THE COURT:  Does that seem like a fair assumption?

4              JUROR:  I mean she works as well.  So there's some

5    mornings that she goes to work later.  So, Tuesdays and

6    Wednesdays are her later days, so she is going to help me.  The

7    other days are a little tighter.

8              THE COURT:  If the children are off to school by 8:30

9    I think you could be here by 10:00 if we start at 10:00.  Does

10   that sound reasonable?

11             JUROR:  Yes.

12             THE COURT:  OK.  Any questions, counsel?

13             MR. BAIO:  No, your Honor.

14             MR. KLAUS:  No.

15             THE COURT:  OK.  Thank you very much.  You may go back

16   to the courtroom.

17             (Juror not present)

18             THE COURT:  No. 24.  I show 24 used LimeWire and 31.

19             MR. BAIO:  Also -- which number is that?  No. 28, page

20   2.

21             THE COURT:  OK.  Right.

22             MR. BAIO:  I'm sorry, page 5.

23             (Juror present)

24             THE COURT:  I would like to begin at the end, where

25   you say that you had a full-time job but that it doesn't pay

153nari4                    Voir Dire

1    you for attending jury duty?

2              JUROR:  They don't pay me anything.

3              THE COURT:  Really?

4              JUROR:  Nothing.

5              THE COURT:  Who is your employer?

6    A.  I work for Westchester Center for Educational and Emotional

7    Development.  It is a small early intervention program.

8              THE COURT:  Right.  Would that interfere with your

9    doing any jury service at all?

10             JUROR:  Probably, yes.

11             THE COURT:  OK.  I'll ask you to step outside for a

12   moment.

13             JUROR:  Sure.

14             (Juror not present)

15             THE COURT:  I think she is sincere.  Excuse for cause?

16             MR. KLAUS:  Yes, your Honor.

17             MR. BAIO:  Yes, your Honor.

18             THE COURT:  No. 24 is excused for cause.

19             No. 25 I show LimeWire, question 24 and 31.  I have to

20   admit that is as far as I got.

21             (Juror present)

22             THE COURT:  Good afternoon.

23             JUROR:  Good afternoon, your Honor.

24             THE COURT:  Please have a seat.  I understand you are

25   a busy lawyer.

153nari4                    Voir Dire

1              JUROR:  Yes, your Honor.

2              THE COURT:  What kind of law do you practice?

3              JUROR:  Commercial litigation and securities

4     arbitration.

5              THE COURT:  What work are you doing in the next month?

6              JUROR:  A lot of document reviews, production,

7     electronic document reviews, responses to discovery requests.

8     I'm not doing any trials or depositions.  I'm doing a lot of

9     discovery-related things.

10             THE COURT:  How big is -- your firm is 15 lawyers you

11    say?

12             JUROR:  Yes, your Honor.

13             THE COURT:  When one of you is out on vacation or is

14    out sick, can the others cover?  How do you handle that

15    situation?

16             JUROR:  To the extent one can cover for another one,

17    that gets done.  There are other litigators at the firm, so

18    there is the possibility of coverage.

19             THE COURT:  OK.  I will ask you to step out for just a

20    moment.

21             (Juror not present)

22             MR. POMERANTZ:  We think he should be excused, your

23    Honor.

24             THE COURT:  You think so?

25             MR. BAIO:  I agree.  I think so, too.

1        THE COURT:  We will excuse No. 25 for cause.  His

2   affect was very labored and I'm sure he didn't want to serve.

3        No. 26.

4        THE COURT:  Counsel, a trip to Hawaii.

5        (Juror present)

6        THE COURT:  Good afternoon.

7        JUROR:  Hi.

8        THE COURT:  I understand that you have a long-planned

9   trip to Hawaii in two weeks.

10        JUROR:  Yes.

11        THE COURT:  And you say the airline tickets are

12   nonrefundable.  If I could get the airlines to refund that,

13   could you reschedule the vacation?

14        JUROR:  Well, we have many other hotel reservations,

15   reservations within Hawaii for flights.  I mean, it's a trip we

16   have been planning for a long time.  It would be very difficult

17   to reschedule everything.

18        THE COURT:  I'll ask you to step out for a moment.

19        (Juror not present)

20        THE COURT:  We will excuse No. 26 for cause.  She is

21   very concerned about her trip.

22        Juror No. 27.

23        MR. KLAUS:  I'm sure when she is in Hawaii she'll wish

24   she was here.

25        THE COURT:  Let's hope.

1          MR. MUNDIYA:  And we'll wish we were there.

2          THE COURT:  This is the correction officer that can't

3     be fair.

4          (Juror present)

5          THE COURT:  Good afternoon.

6          JUROR:  Good afternoon.

7          THE COURT:  You work for Westchester County

8     Corrections as a corrections officer?

9          JUROR:  Yes, your Honor.

10          THE COURT:  If you were asked to serve in this case,

11     do you think you could be a fair juror?

12          JUROR:  No, I don't.

13          THE COURT:  I'm sorry?

14          JUROR:  No, I don't, ma'am.

15          THE COURT:  Why is that?

16          JUROR:  I think I -- I think they're guilty.  I work

17     in an environment where --

18          THE COURT:  If this were a criminal case, you might be

19     assuming that anyone against whom a prosecution is brought is

20     guilty.  Is that what you are thinking?

21          JUROR:  Yes, ma'am.

22          THE COURT:  This is not a criminal case.  This is a

23     civil case, so no one is going to go to jail after this case.

24     It's a question of money damages.

25          Is there any reason you could not serve in this case?

153nari4                         Voir Dire

1           JUROR:  Just what my answer is.  You know, I see it as
2    the guilty are guilty.
3           THE COURT:  Do you understand that --
4           JUROR:  Yes, ma'am, I do.
5           THE COURT:  What is on your mind?
6           JUROR:  Nothing is on my mind.  I just, you gave me a
7    question, I followed up on an answer.
8           THE COURT:  Do you understand that in this case nobody
9    will be found guilty?
10          JUROR:  Yes.
11          THE COURT:  So would it bother you to sit on this
12   case?
13          JUROR:  Yes, it would.
14          THE COURT:  Why is that?
15          JUROR:  I mean, if somebody breaks the law, obviously
16   it was a civil case, he broke the law, to me, he broke the law.
17          THE COURT:  Well, the question is not necessarily so
18   much that as a question of damages.  You would be listening to
19   the evidence in this case, considering the evidence, and then
20   with the other jurors deliberating in the case.
21          Do you think you could do that fairly?
22          JUROR:  No, ma'am.
23          THE COURT:  I'll ask you to step out for a moment.
24          (Juror not present)
25          MR. BAIO:  He certainly doesn't want to serve.

1           THE COURT:  No kidding.

2           MR. POMERANTZ:  Exactly.

3           THE COURT:  OK.  No. 27 is excused for cause.  Make

4    sure he goes back to the jury assembly room and comes in

5    tomorrow.

6           We're ready for No. 29.

7           Is there no 28, Sarah?

8           THE DEPUTY CLERK:  28 was already excused.

9           THE COURT:  Thank you.  So we are down to 29.  OK.

10   Another business travel.

11          (Juror present)

12          THE COURT:  Good afternoon.  How are you?

13          JUROR:  Hi.  Good.  Thank you.

14          THE COURT:  I understand that you are scheduled to

15   travel out of state on business?

16          JUROR:  Yes.

17          THE COURT:  How often do you travel out of state on

18   business?

19          JUROR:  Not that often.  This one time I'm scheduled.

20   I may not be traveling again until the summer.

21          THE COURT:  What is this travel for?

22          JUROR:  I manage clinical studies, and we are just

23   kicking off a new study, a new study program, and during this

24   phase we need to go out to our doctors and train them.

25          THE COURT:  How many people do your kind of work at

1    your employer?

2              JUROR:  Three of us.

3              THE COURT:  And if one of you is sick, do the rest of

4    you fill in?

5              JUROR:  Yes.

6              THE COURT:  If you were to serve as a juror in this

7    case, could the others fill in for you in a pinch?

8              JUROR:  It's possible, yes.

9              THE COURT:  If you were selected, that's something we

10   would ask you to look into.

11             JUROR:  OK.

12             THE COURT:  You indicate in response to No. 23 that

13   you have heard that LimeWire and Napster were great ways to get

14   and share music and that you have heard there is a lot of

15   debate around copyrights of music and that record companies are

16   going after people to try to keep the money.  You think that

17   record companies need to change with the times and are clinging

18   to an old way of doing business.  They need to change their

19   business model.

20             If you were to sit as a juror in this case, you would

21   be looking at the past and you would be looking at whether --

22   well, I need to ask you.  Do you think you would be able to put

23   out of your mind what you think the record companies ought to

24   be doing and instead listen to the evidence here and my

25   instructions on what the law is?

1          JUROR:  I certainly would try.  But honestly, I have

2    to be honest that I do have a bias because I have heard a lot

3    of stories about record companies going after people, you know,

4    even individuals in very ridiculous ways and trying to penalize

5    people.

6          I feel that some of it has to do with the fact that

7    they are sort of behind the times and somebody like LimeWire,

8    who was ahead of the times and ahead of like one of the big

9    companies, what Sony or one of the companies would be able to

10   do, they are sort of more like more visionary and now they are

11   being penalized for that vision.

12         THE COURT:  I understand your take, your personal

13   take.

14         JUROR:  I do have that opinion.  I need to be honest

15   that I do have that opinion.  I don't know that I would

16   necessarily be unbiased in making any kind of decisions about

17   whether or not LimeWire should be punished for this.

18         THE COURT:  Do counsel have other questions?

19         MR. POMERANTZ:  No.

20         MR. BAIO:  No, your Honor.  Thank you.

21         (Juror not present)

22         THE COURT:  I think we could have asked her a lot more

23   questions, but I think we should have just -- we will excuse

24   No. 29 for cause.

25         We are down to No. 30.  Not quite yet, Sarah.

153nari4                       Voir Dire

1        MR. POMERANTZ:  I don't know that it is anything, but

2   22C.

3        THE DEPUTY CLERK:  Are you ready, Judge?

4        THE COURT:  I would like to talk to counsel for just a

5   minute.

6        No. 31.  Normally if someone works freelance -- this

7   is Juror No. 30, question No. 31.  This is a freelancer who

8   would not be available for work.  Usually I let freelancers go.

9   Would there be any objection to my excusing this juror for

10  cause?

11       MR. POMERANTZ:  No, your Honor.

12       MR. KLAUS:  No, your Honor.

13       THE COURT:  We will excuse Juror No. 30 for cause, and

14  we are ready to see No. 31.

15       MR. BAIO:  This juror has I think a lot of

16  relationships, your Honor, on No. 28.

17       THE COURT:  Sarah, could you ask them to wait for a

18  minute while I discuss this.

19       MR. BAIO:  And the response to 31 invites follow-up I

20  think.

21       MR. POMERANTZ:  I can't read that.

22       MR. BAIO:  I can't read this either.

23       THE COURT:  I would rather not --

24       MR. KLAUS:  -- sit on a trial as long as this since

25  my --

153nari4                         Voir Dire

1              THE COURT:  Starting work on a campaign.

2              MR. BAIO:  With MTV.

3              MR. KLAUS:  With MTV.

4              THE COURT:  Counsel, how do you feel about this juror?

5              MR. BAIO:  I think she's going to not want to serve.

6              MR. POMERANTZ:  We would think that would at least

7    deserve inquiry to see if there is a bias there.

8              THE COURT:  I will be glad to inquire.  Juror No. 31.

9              (Juror present)

10             THE COURT:  Good afternoon.

11             JUROR:  Good afternoon.

12             THE COURT:  I understand you are a bond manager?

13             JUROR:  Sorry.  I am a brand manager.

14             THE COURT:  OK.

15             JUROR:  I have very messy writing.

16             THE COURT:  No, it's actually quite good.  I should

17   have read it better than that.  You said you would rather not

18   serve for this long.

19             What is on your mind?

20             JUROR:  I just have work responsibilities.

21             THE COURT:  Right.  In the next month what will you be

22   doing at work?

23             JUROR:  We're kicking off -- I manage two deodorant

24   brands, so we're just kicking off a big campaign with MTV.

25   It's a music-related thing.

153nari4                          Voir Dire

1          THE COURT:  How long have you been there?

2          JUROR:  Five and a half years.

3          THE COURT:  Is there anything that would make serving

4    in May, this May more difficult than serving any other time?

5          JUROR:  No.  Just what I mentioned.

6          THE COURT:  You mentioned a familiarity with Forrester

7    Research, Inc.

8          Would you tell me about that.

9          JUROR:  I work in marketing.  That's just one of the

10   companies we've used in the past for research.

11         THE COURT:  And you also mentioned a familiarity with

12   a number of recording companies, Sony, Universal, Virgin,

13   Warner.

14         JUROR:  Right.  It is the nature of my business.  We

15   do a lot of music-related things, also for marketing and

16   advertising.  Vevo is a company my company has a relationship

17   with.  They come to our office, we go to events, we do content

18   relationships with them, all business-related relationships.

19         THE COURT:  If you were to serve as a juror in this

20   case, could you put those business relationships out of your

21   mind and listen to the evidence in this case?

22         JUROR:  I think so.

23         THE COURT:  And consider it without regard to the

24   contacts you have had with recording companies or Forrester?

25         JUROR:  I think so, yes.

1           THE COURT:  Is this same true for Vevo?

2           JUROR:  Yes.

3           THE COURT:  Is there anything else you think we should

4    know about whether you can be a fair and unbiased juror here.

5           JUROR:  I don't think so, other than what I have laid

6    out in my questionnaire.

7           MR. BAIO:  No. 24, I can't read it.

8           JUROR:  I'm sorry.  I have really messy handwriting.

9           MR. BAIO:  That's all right.  I am not criticizing

10   you.

11          THE COURT:  I will hand it to you so you can read it

12   to us.

13          JUROR:  No. 24.

14          THE COURT:  If you could read it loud enough so that

15   the court reporter can get it down.

16          JUROR:  Obviously, because -- I'm not going to read

17   it, should I read it directly or just explain?

18          THE COURT:  Whatever you would like.

19          JUROR:  Part of my job is being up on media and just

20   in general I come, like I consume mounds of media, tons of

21   magazines, tons of TV, tons of newspapers, internet,

22   everything.  Obviously the Napster case, being someone who is

23   involved in media I know about specifically.

24          So I said as a consumer, of course, I like the idea of

25   free content, everyone does, right?  But as a business person I

1   know that copyright infringement is wrong and unfair to the

2   recording artists and record companies.

3             THE COURT:  Do you believe you could be fair in this

4   case?

5             JUROR:  No.

6             THE COURT:  Why is that?

7             JUROR:  I don't know.  Because I mean I have

8   downloaded free music before.  I understand it is not right.

9   But as a consumer, I mean, it's -- I don't know -- good.

10            THE COURT:  I will ask you to step outside for a

11   moment.

12            JUROR:  OK.

13            (Juror not present)

14            THE COURT:  It sounds to me as if she cannot divorce

15   her personal situation from the case.

16            MR. BAIO:  Yes, your Honor.

17            MR. MUNDIYA:  Yes, your Honor.

18            THE COURT:  I will excuse her for cause.  That brings

19   us to Juror No. 32.

20            THE DEPUTY CLERK:  We have qualified 10.

21            (Juror present)

22            THE COURT:  Good afternoon.  You are a schoolteacher

23   in high school.  Where is that?

24            JUROR:  New Rochelle High School in New Rochelle.

25            THE COURT:  Have you served as a juror before?

1           JUROR:  Yes.  In White Plains probably in the late

2    '80s twice.  One was a civil case which was settled after a

3    couple of days.  The other was a criminal case for which I was

4    excused.

5           THE COURT:  You have used music sharing services and

6    you say that, in No. 23, you say you have heard of certain

7    programs, Kazaa, Rhapsody, and that you are aware that they are

8    more music downloading sites, nothing beyond that.  And then in

9    No. 24 you say you have heard of the Napster case that once you

10   realized you would be denying musicians the means of making

11   their livelihood you never considered using it.  Do you mean

12   Napster or something else?

13          JUROR:  Napster.

14          THE COURT:  You never used LimeWire.

15          JUROR:  Negative, no.

16          THE COURT:  If the trial lasts three to four weeks,

17   can you serve?

18          JUROR:  Yes, I could.

19          THE COURT:  OK.

20          JUROR:  I could.  It would be difficult, but I could.

21          THE COURT:  I appreciate that.  I appreciate that.  Is

22   there anything else you think we should know about you?

23          JUROR:  Well, that I am a part-time musician.  I do

24   little coffee house gigs maybe once a month up in Westchester

25   there.  And I have a CD that I made a couple of years ago

1    that's available on iTunes and cdbaby.com.

2            I don't know if that would be pertinent or not.

3            THE COURT:  If you were to serve as a juror in this

4    case, I would be asking you to put aside your own personal

5    experiences and just listen to the evidence that you hear in

6    court and the exhibits that you see and then deliberate with

7    the other jurors after I instruct you on the law.

8            Could you do that?

9            JUROR:  Sure.

10           THE COURT:  Do counsel have any questions?

11           MR. BAIO:  No, your Honor.

12           MR. KLAUS:  No, your Honor.

13           THE COURT:  Thank you very much.

14           (Juror not present)

15           MR. BAIO:  That was 32.

16           MR. POMERANTZ:  I have five that I have qualified.  I

17   have 19, 20, 21, 23, and 32.

18           MR. MUNDIYA:  I have 19, 21, 23, 32.

19           MR. POMERANTZ:  I didn't know if we did No. 20.

20   You're right.

21           THE COURT:  We have now qualified 12 I think -- no.  4

22   and 7.

23           THE DEPUTY CLERK:  11.

24           THE COURT:  11.

25           Well, counsel, what is your preference?  Do you want

1    to march on?

2              MR. POMERANTZ:  Have our teams been looking at the

3    next set?

4              THE DEPUTY CLERK:  You sent the 33 through 64 home to

5    report in the morning to call in.

6              THE COURT:  I see.  That answers that.

7              MR. MUNDIYA:  I think we're done.

8              THE COURT:  We're done.  I will go say good night to

9    the jurors.

10             MR. POMERANTZ:  Your Honor.

11             MS. NOHE-BRAUN:  They're gone.

12             THE COURT:  Everyone is gone.  OK.  When are they

13   coming back, Sarah?

14             MS. NOHE-BRAUN:  I told them 9:45 so we could start at

15   10:00.

16             THE COURT:  OK.  So what we should do is you should

17   take with you the next sets, all of them.  Let me ask you to

18   look at them together here in court, since we are ending early

19   for us, look at them in court, see if you agree on excuses.  I

20   will be here to hear any disagreement, but if you both agree on

21   an excuse for cause, I will OK it.

22             MR. POMERANTZ:  How far should we go?  We have another

23   30 it sounds like that are out there.  Should we do all 30 or

24   should we just --

25             THE COURT:  I would think 20 would be enough, unless

1    everyone has a hardship excuse.

2              MR. POMERANTZ:  Why don't we go through 20, your

3    Honor.

4              In terms of the schedule, just given where we are, and

5    we contemplate tomorrow, trying to get our witnesses lined up,

6    can we agree that tomorrow we will finish picking the jury and

7    we'll do our openings and I call the first witness Thursday

8    morning?

9              THE COURT:  Wait a second.  How long do you expect to

10   be in your opening?

11             MR. POMERANTZ:  With your guidance, I think I am going

12   to try to get it to an hour or less.

13             THE COURT:  Less.

14             MR. POMERANTZ:  But it is in that range.

15             THE COURT:  We are looking at, let's say 45 minutes,

16   so an hour and a half for openings.  Questioning jurors another

17   hour.  I think we would get to the first witness tomorrow.  I

18   know that's optimistic, but I think we would.

19             MR. POMERANTZ:  The only thing I guess, because of the

20   mediation today and Mr. Bainwol's son's bar mitzvah, I think we

21   will have three other witnesses, Mr. Horowitz we've already

22   discussed.  Ms. LaBarbera-White, she will be a fairly brief

23   witness.  And then our expert, our first expert Professor

24   Horowitz.  We have two Horowitzes in our first three witnesses.

25   We don't have a fourth witness this week now because of

1    Mr. Bainwol's situation with the bar mitzvah.

2              THE COURT:  Then you would need to have the next

3    witness after that.

4              Do you mean that's the end of your witnesses?

5              MR. POMERANTZ:  Because of the travel schedule.  No,

6    we obviously have more witnesses.

7              THE COURT:  You need to fill them.  You have to fill

8    them in.  We can't impose on jurors so much as to say they are

9    working from 10:00 to 5:00 and then --

10             MR. POMERANTZ:  I understand.  Let me just make some

11   phone calls and see what we can do.

12             THE COURT:  OK.  Good.  I will be upstairs waiting to

13   hear from you on the next 20.

14             MR. BAIO:  We will agree if there is hardship we will

15   send those up to you; that is, if we agree that they are cause

16   or whatever other reasons.

17             THE COURT:  Yes.

18             MR. BAIO:  And the other ones will be questioned

19   tomorrow.

20             THE COURT:  Tonight we might go over what the

21   questions are just so we don't waste a lot of time tomorrow.

22             THE DEPUTY CLERK:  My concern is people in the jury

23   department are leaving shortly and they need to set up that

24   phone message saying who's coming in tomorrow and who is not

25   when they call in.

153nari4                         Voir Dire

1          THE COURT:  I think that everyone we've qualified
2   needs to come in.
3          THE DEPUTY CLERK:  They are coming back already.  Of
4   the 33 through 64?
5          THE COURT:  I think they all have to come back.
6          THE DEPUTY CLERK:  All have to come back?
7          THE COURT:  Right.  And we should try to get through
8   all of them tonight.  We're losing so many for hardship.
9          OK.  Thank you very much.
10         May I also remind you, as I will every evening, it's
11  never too late to settle.
12         (Adjourned to Wednesday, May 4, 2011, at 10:00 a.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25